UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| GRANDE COMMUNICATIONS | ) | |
| NETWORKS LLC and PATRIOT MEDIA | ) | No. **1:17-cv-00365** |
| CONSULTING, LLC, | ) | |
| | ) | |
| Defendants. | ) | **ORAL HEARING REQUESTED** |
| | ) | |
| | ) | |

**<u>GRANDE COMMUNICATIONS NETWORKS LLC'S</u>**
**<u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................1

I.  FACTUAL BACKGROUND......................................................................3

    A.  Grande's Internet Services.................................................................3

    B.  Plaintiffs' Flawed Approach to Monitoring Internet Traffic and
        Generating Notices of "Infringement"...............................................4

II.  LEGAL STANDARD...................................................................................5

III.  PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR
      SECONDARY COPYRIGHT INFRINGEMENT.....................................5

    A.  The Complaint Fails to Plead Instances of Actual Copyright
        Infringement......................................................................................6

    B.  Provision of a "Staple Article of Commerce" Cannot Give Rise to
        a Claim for Secondary Liability........................................................8

    C.  The Complaint Fails to Plead a Viable Claim for Contributory
        Infringement....................................................................................11

    D.  The Complaint Fails to Plead a Viable Claim for Vicarious
        Infringement....................................................................................13

        1.  *The Complaint fails to plausibly allege that Grande has
            any direct financial interest in its subscribers' alleged
            infringing conduct*........................................................13

        2.  *The Complaint fails to plausibly allege that Grande has
            the ability to supervise and control the purported
            infringement*.................................................................15

IV.  CONCLUSION...........................................................................................18

Grande Communications Networks LLC ("Grande") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Complaint.

## INTRODUCTION

Through this lawsuit, Plaintiffs allege that Grande, an Internet service provider (or "ISP"), should be held liable for copyright infringement simply because it provides Internet connectivity to its customers. *See generally* Compl., ECF No. 1. Plaintiffs do not allege that Grande maintains systems that store copyrighted works, that it encourages anyone to download copyrighted works, that it has control over the materials its customers access, or that it has any way to distinguish between legitimate and infringing activity on its network.

Despite the fact that Grande provides only wires and connectivity, and does not participate in or profit from alleged copyright infringement taking place on its network, Plaintiffs accuse Grande of numerous specific acts of copyright infringement. Compl., ¶¶ 54, 56, 58, 59. Plaintiffs wrongly are seeking damages from Grande for these alleged acts of infringement. Compl., § VI.

To substantiate their allegations, Plaintiffs assert that Grande is on notice of alleged infringements due to Rightscorp's history of inundating Grande's email server with millions of automated notifications purportedly reflecting instances of subscriber infringement. Compl., ¶¶ 4, 47-49. These notices are so numerous and so lacking in specificity, that it is infeasible for Grande to devote the time and resources required to meaningfully investigate them. Moreover, the system that Rightscorp employs to generate its notices is incapable of detecting *actual* infringement and, therefore, is incapable of generating notices that reflect real infringement. Compl., ¶ 48. To merely treat these allegations as true without investigation would be a disservice to Grande's subscribers, who would run the risk of having their Internet service

1

permanently terminated despite using Grande's services for completely legitimate purposes.

Without question, digital copyright infringement is a genuine problem in the United States, but Grande is a victim of this problem, not a perpetrator.  Compl., ¶ 38.  Grande does not profit or receive any benefit from subscribers that may engage in such infringing activity using its network.  To the contrary, Grande suffers demonstrable losses as a direct result of purported copyright infringement conducted on its network.   To hold Grande liable for copyright infringement simply because "something must be done" to address this growing problem is to hold the wrong party accountable.   Compl., ¶¶ 38-39.   Grande provides legitimate communication facilities that are neither intended nor designed to be used to infringe copyrights. The facilities Grande provides are available for, and have, substantial non-infringing uses.  Given that Grande does not do anything to actively encourage infringement, the law is clear that it cannot and should not be held liable for indirect copyright infringement.

The specific digital infringement that Plaintiffs complain of involves the use of peer-to-peer file sharing applications like BitTorrent, which allow users to identify and share copyrighted material.   Compl., ¶¶ 4, 38, 39, 43, 45, 48.   Because Grande does not operate BitTorrent applications, Grande has no way to control how those applications function or to stop them from being used to commit copyright infringement.   Grande also has no ability to prevent its subscribers from using BitTorrent applications.   Even if Grande were able to devote the extraordinary resources it would require to identify subscribers who use these programs to engage in infringing activities, the most Grande can do is terminate those subscribers, who would simply continue the same infringing activities through a different Internet conduit.

Grande does not sanction, approve, or profit from—let alone advertise or encourage—the use of BitTorrent or other applications that enable copyright infringement.  Without any realistic

basis for alleging that Grande is complicit in the copyright infringement that Plaintiffs claim is taking place, Plaintiffs' allegations that Grande is liable for secondary copyright infringement lack any merit and should be dismissed.

## I.    FACTUAL BACKGROUND

### A.   Grande's Internet Services

Grande is one of many competing companies that offer Internet services to the residential and business customers located within the geographic areas it serves.  Grande's high-speed Internet service provides subscribers with the ability to connect to the Internet in order to share information with other connected individuals and businesses.  Subscribers may purchase Grande's high-speed Internet services on an *a la carte* basis or they may choose to purchase a bundle that also includes video programming, voice services, or both.

Grande does not charge its subscribers on a per-download basis and it does not charge subscribers based on the volume of data that a subscriber downloads or uploads in a given period of time.  Plaintiffs' Complaint does not allege otherwise.

Like any mainstream Internet provider, Grande's high-speed Internet service merely provides Internet connectivity.  Plaintiffs do not allege that Grande monitors or otherwise controls the manner in which its subscribers utilize the Internet.  Nor do Plaintiffs allege that Grande has any ability to determine which files are stored on its subscribers' private home computers and networks or to determine whether any file-sharing or other programs running on those private computers and networks are being used to conduct copyright infringement.

Indeed, due to the large number of users connected to the Internet, the relatively high competition that exists among providers, and the relatively low margins that result from such competition, it would be impossible for Grande to devote the immense resources required to

monitor all of the activity on its network to identify potentially infringing activity.

 B.  Plaintiffs' Flawed Approach to Monitoring Internet Traffic
 and Generating Notices of "Infringement"

Plaintiffs employ a notification system developed and operated by Rightscorp to monitor peer-to-peer file sharing activities.  Compl., ¶ 43.  The claimed purpose of the Rightscorp system is to detect and document instances of illegal duplication of copyrighted works.  *Id*.  According to the Complaint, when Rightscorp's system detects infringement, it generates an "infringement notice" which is forwarded to the Internet service provider whose network is being used to conduct the infringement.  Compl., ¶ 48.

Plaintiffs rely extensively on these "infringement notices" to substantiate the allegations of their Complaint.  For example, the notices are the sole support for Plaintiffs' allegations of direct infringement by subscribers, Grande's knowledge of that infringement, and Grande's purported obligation to take action to terminate those subscribers.  Compl., ¶¶ 4, 5, 43, 47-49, 52-54, 59.  As a result, these notices represent a linchpin that, if pulled, causes Plaintiffs' entire infringement case to collapse.

The Complaint suggests that these "infringement notices" reflect instances of actual infringement, but in truth they do not.  A careful reading of the Complaint reveals the admission that the Rightscorp system generates "infringement notices" whenever it detects copyrighted content that is "*available*" for download.  Compl., ¶ 48 (emphasis added).  The system does not, in fact, have any way to detect whether that "available" content was actually requested or ever downloaded by a third-party.[1]  The distinction between a copyrighted work being "available"

_____

[1] There are a numerous flaws in the Rightscorp system that are relevant to this dispute.  Because the Complaint admits that the Rightscorp system is incapable of detecting instances of legitimate infringement, that flaw is appropriate for discussion in the context of the present motion pursuant

4

and "downloaded" is vitally important, because the former is not copyright infringement while the latter can be.[2]  The fact that Rightscorp's system is incapable of distinguishing between legal and infringing conduct renders the "infringement notices" it generates wholly illegitimate.

## II.    LEGAL STANDARD

A federal claimant is not required to detail all of its factual allegations; however, the complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above a speculative level."  *Id.*  A court need not accept as true any legal conclusions set forth in the Complaint.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In addition, a plaintiff must set forth a *plausible* claim for relief, a *possible* claim for relief will not do.  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.*

## III.   PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM FOR SECONDARY COPYRIGHT INFRINGEMENT

Plaintiffs do not accuse Grande of infringing their copyrights directly.  Rather, they allege only "secondary" liability—meaning they seek to hold Grande responsible for the purported infringement of Grande's subscribers.  Compl., ¶¶ 60-72.

For at least two reasons, Plaintiffs' pleadings against Grande are insufficient under any

---

to Fed. R. Civ. P. 12(b)(6).

[2] *See, e.g., BWP Media USA, Incorporated v. T&S Software Associates, Incorporated*, 852 F.3d 436, 439 (5th Cir. 2017); *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993) ("[I]nfringement of the distribution right requires an actual dissemination of either copies or phonorecords.") (citation & alterations omitted); *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981-85 (D. Ariz. 2008) (collecting cases and secondary sources).

theory of secondary liability.  First, the Complaint fails to legitimately plead that any Grande subscriber ever engaged in direct copyright infringement, which is a necessary prerequisite to secondary liability.  Second, Plaintiffs' allegations rely exclusively on Grande's provision of Internet services to its subscribers, which cannot form the basis for secondary liability under Supreme Court precedent because the Internet is a "staple article of commerce."

As discussed in detail below, Plaintiffs' individual pleadings for contributory and vicarious liability also suffer from a number of additional fatal flaws.  For the reasons articulated below and throughout this Motion, Plaintiffs' allegations against Grande are insufficient and should be dismissed.

### A.   The Complaint Fails to Plead Instances of Actual Copyright Infringement

To plead a claim for secondary copyright infringement, Plaintiffs must necessarily identify instances of actual direct infringement committed by Grande's subscribers.  This is because "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party."  *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001).  To adequately plead direct infringement, Plaintiffs must demonstrate (1) that they own valid copyrights in the works claimed to have been infringed, and (2) that an infringer actually "copied" the material.  *BWP Media USA*, 852 F.3d at 439; *see also Geophysical Serv., Inc. v. TGS-NOPEC Geophysical Co.*, 850 F.3d 785, 791 (5th Cir. 2017); *Perfect 10, Inc. v. Giganews, Inc.*, No. 2:11-cv-07098, 2013 WL 2109963 (C.D. Cal. Mar. 8, 2013), aff'd, 847 F.3d 657 (9th Cir. 2017).

Despite this requirement, Plaintiffs' Complaint lacks any plausible allegation of direct infringement committed by even one of Grande's subscribers relating to even one of the affected copyrights.  For this reason, Plaintiffs' claim of secondary infringement against Grande fails and

should be dismissed.

Plaintiffs claim that they have notified Grande of more than one million acts of direct infringement.  Compl., ¶ 4.  Despite these claims, however, the Complaint is noticeably devoid of any specific facts regarding *even a single instance of direct infringement* committed by one of Grande's subscribers relating to the copyrights in suit.

Plaintiffs do not present any details regarding the "more than one million" infringements in the Complaint because the Rightscorp system *is incapable of tracking or recording instances of actual copyright infringement*.  Even assuming Plaintiffs did transmit "infringement notices" to Grande, the Rightscorp system is only capable of detecting when copyrighted content is "available for distribution," which does not constitute evidence that any infringement has taken place.  This fundamental flaw in the Rightscorp system fatally undermines Plaintiffs' allegations of direct infringement.

Instead of actually identifying any instances of direct infringement, Plaintiffs formulaically allege that "users of the Grande service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce, distribute, and publicly perform their Copyrighted Sound Recordings."  Compl., ¶ 61.  It is well established that such "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not establish facial plausibility" and do not adequately plead a claim for relief.  *United States ex rel. Spicer v. Westbrook,* 751 F.3d 354, 365 (5th Cir. 2014) (citing *Iqbal,* 556 U.S. at 678).  Plaintiffs cannot rely on the broad notion that "infringement happens on the Internet" to support specific allegations of infringement against Grande and its subscribers.  Instead, Plaintiffs must present allegations that "allows the court to draw the reasonable inference that the *defendant* is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (emphasis added).  Broad allegations that "users

7

of the Grande service are engaged in repeat and pervasive infringement" cannot be sufficient—a similarly vague and unsupported allegation could be levied against every Internet service provider operating in the United States today.  *See Iqbal,* 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context.").

Whether traceable to the fundamental flaws in the Rightscorp system or for some other reason, the fact remains that Plaintiffs fail in their Complaint to identify a single instance of direct infringement by a Grande subscriber.  In the absence of any such concrete allegation of direct infringement relating to a single asserted copyright—let alone allegations supporting infringement of the over 1,500 copyrights generally asserted in the Complaint—Plaintiffs' claims for relief lack plausibility and should be dismissed.

B.  Provision of a "Staple Article of Commerce" Cannot
    Give Rise to a Claim for Secondary Liability

To plead its claims for secondary liability, Plaintiffs allege that Grande provided Internet services while "ignoring [] repeat infringement notifications and refusing to take action against repeat infringers."  Compl., ¶ 53.  These allegations cannot support a claim because providing a staple article of commerce, like Internet service,[3] cannot give rise to a claim for secondary copyright infringement.  Plaintiffs' allegations also fail because they focus solely on Grande's *failure to act* with regard to the provision of those services, which contradicts the Supreme Court's precedent requiring affirmative, active conduct in furtherance of infringement to invoke secondary liability.

_____

[3] It is beyond dispute that Internet service has numerous non-infringing uses and, therefore, constitutes a staple article of commerce.  *See, e.g., Dallas Buyer's Club, LLC v. Doughty*, No. 3:15-cv-00176, 2016 WL 1690090, at *9 (D. Or. Apr. 27, 2016); *Liberty Media Holdings, LLC v. Tabora*, No. 1:12-cv-02234, 2012 WL 2711381, at *2 (S.D.N.Y. July 9, 2012).

In *Sony,* the Supreme Court explained that a party who provides a staple article of commerce that is capable of both non-infringing and infringing uses cannot be held liable for secondary infringement when it makes that article available to consumers. *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 442 (1984).  In the later *Grokster* case, the Supreme Court reaffirmed the holding in *Sony* and further explained that a party offering a staple article can only be held liable for secondary infringement if it takes "*active steps* []to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use . . . ." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 915 (2005) (emphasis added).  The Supreme Court reasoned that only in those limited circumstances does a party evidence "an *affirmative intent* that the product be used to infringe, [which] overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use." *Id.* (emphasis added)*; see also In re Aimster Copyright Litigation*, 334 F.3d 643 (7th Cir. 2003) (recognizing the applicability of the *Sony* doctrine to both contributory and vicarious infringement claims).

Relying on this Supreme Court precedent, numerous courts have refused to hold a party that offers a staple article liable for secondary infringement without evidence that the party *actively* encouraged others to use its products or services in an infringing way.  For example, in *Cobbler Nevada*, the district court refused to hold the defendant liable for contributory infringement after he was notified that others were using his Internet connection to infringe copyrights and did not take steps to curb the infringement.  As the court explained, "the Supreme Court was clear in *Grokster* that contributory infringement liability does not arise merely based on a failure to take affirmative steps to prevent infringement, if the device otherwise was capable of substantial noninfringing uses." *Cobber Nevada, LLC v. Gonzales*, No. 3:15-cv-00866, 2016

9

WL 3392368, at *2-3 (D. Or. June 8, 2016).  The court concluded that because the "[p]laintiff [had] not alleged that Gonzales promoted, encouraged, enticed, persuaded, or induced another to infringe any copyright … [and] [had] alleged only that Gonzales failed to reasonably secure, police and protect the use of his Internet service … Plaintiff's theory of contributory infringement is foreclosed by the Supreme Court's opinions in *Grokster* and *Sony*."  *Id.*

Other courts have similarly dismissed contributory infringement claims on this same basis.  *See, e.g., Luvdarts LLC v. AT&T Mobility,* LLC, No. 2:10-cv-05442, 2011 WL 997199, at *2 (C.D. Cal. March 17, 2011) ("Plaintiffs have not alleged that Defendants' network was designed with the object of promoting infringement of Plaintiffs' copyright; nor have Plaintiffs alleged a clear expression, other affirmative steps, or specific acts taken by Defendants that actively encourage or induce infringement . . . *this court is unable to find contributory infringement liability merely based on a failure to take affirmative steps to prevent infringement*.") (emphasis added); *Dallas Buyers Club, LLC v. Doughty*, No. 3:15-cv-00176, 2016 WL 1690090, at *9 (D. Or. April 27, 2016) ("As the court in *Grokster* stated, however, contributory liability arises when the defendant actively encourages infringement, *not by mere knowledge of infringing activity and failure to take affirmative steps to prevent infringement*. This is especially true here given the Internet is capable of substantial noninfringing uses.") (emphasis added).

Here, Plaintiffs' allegations of secondary liability align directly with the allegations analyzed—and rejected—in *Sony, Grokster,* and their progeny.  The Complaint alleges that Grande is liable for inducing and encouraging infringement solely by offering Internet services and by failing to take affirmative steps to prevent infringement allegedly occurring on its network.  *See, e.g*., Compl, ¶ 52.  Plaintiffs' allegations, therefore, fail to state a claim for relief

because, as the above-cited cases make clear, Grande's provision of a staple article of commerce and alleged *inaction* cannot form the basis for secondary infringement under *Sony* and *Grokster*.

Indeed, the Court's analysis in *Grokster* makes abundantly clear that affirmative conduct is an absolute prerequisite to holding an ISP liable for secondary copyright infringement based on its provision of internet access:

> [J]ust as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability.
>
> ***
>
> Evidence of active steps taken to encourage direct infringement, such as advertising an infringing use or instructing how to engage in an infringing use, show an affirmative intent that the product be used to infringe, and a showing that infringement was encouraged overcomes the law's reluctance to find liability when a defendant merely sells a commercial product suitable for some lawful use.
>
> ***
>
> [M]ere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves. *The inducement rule, instead, premises liability on purposeful, culpable expression and conduct*, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful purpose.

*Grokster*, 545 U.S. at 936-37 (emphasis added).

Because Plaintiffs' secondary infringement claim is based exclusively on Grande's failure to take affirmative steps to prevent infringement by limiting provision of a staple article, it does not state a plausible claim for relief and should be dismissed.

### C.   The Complaint Fails to Plead a Viable Claim for Contributory Infringement

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Grokster*, 545 U.S. at 930.  In addition to pleading the direct infringement and

11

active inducement elements addressed above, Plaintiffs must plausibly allege that Grande had *knowledge* of actual infringement taking place on its network.  *Id.*  Plaintiffs' claim for contributory infringement should also be dismissed because the Complaint fails to plausibly allege that Grande had knowledge of any infringement taking place on its network.

To plead knowledge, Plaintiffs rely exclusively on Grande's receipt of "infringement" notices generated by the Rightscorp BitTorrent monitoring system.  Compl., ¶¶ 4, 5, 43, 47-49, 52-54, 59.  As discussed above, those allegations cannot support Plaintiffs' claim because the Rightscorp notices do not reflect instances of actual copyright infringement and, therefore, cannot put Grande on notice of actual infringement.  *See, e.g., Compl.,* ¶ 48.

Even if the Rightscorp notices did represent instances of actual copyright infringement— which they do not—those notices also could not form the basis for an adequate pleading of knowledge against Grande, *or give rise to an alleged duty to act*, because the notices only identify an Internet Protocol address (or "IP address") and, therefore, cannot resolve that the subscriber—as opposed to someone else with unapproved access to the subscriber's network— conducted the alleged infringement.   *See* Compl., ¶ 43 ("Rightscorp has developed a technological system that identifies actual infringements and the perpetrators of these infringements (*by IP address,* port number, time, and date.") (emphasis added); *compare with Cobbler Nevada*, 2016 WL 3392368, at *1 ("While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct.  This Court agrees with the Magistrate Judge that Plaintiff has failed to allege sufficient facts to state a plausible claim 'tending to exclude the possibility that an alternative explanation is true.'") (citing *Twombly*, 550 U.S. at 554).

These fatally deficient allegations require dismissal:

> When faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*.

*In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).

Because the only basis for Plaintiffs' allegation that Grande knew of infringement taking place on its network is the receipt of the illegitimate Rightscorp notices, Plaintiffs' pleadings are flawed and cannot properly support a claim for contributory infringement.  Compl., ¶¶ 4-5.

D.   The Complaint Fails to Plead a Viable Claim for Vicarious Infringement

To plead vicarious infringement, Plaintiffs must plausibly allege, among other things, that (1) Grande has a right and ability to supervise the direct infringers, and (2) Grande directly profits from the direct infringement.  *See BWP Media USA, Inc. v. T&S Software Assocs., Inc.*, No. 3:13-cv-02961, 2015 WL 3406536, at *2 (N.D. Tex. May 27, 2017).  Because the Complaint fails to plausibly allege either of these elements, Plaintiffs' claim for vicarious infringement should be dismissed.

1.     *The Complaint fails to plausibly allege that Grande has any direct financial interest in its subscribers' alleged infringing conduct*

In order to plead vicarious liability, the Complaint must plausibly allege that Grande derived a *<u>direct</u>* financial benefit from the infringement purportedly conducted by its subscribers.  *See, e.g., Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004); *AutoOpt Networks, Inc. v. GTL, USA Inc.*, No. 3:14-cv-01252, 2015 WL 407894 (N.D. Tex. Jan. 30, 2015); *Broad. Music, Inc. v. Tex. Border Mgmt., Inc.*, 11 F. Supp. 3d 689, 693-94 (N.D. Tex. 2014).

In the context of an ISP, this direct financial benefit element requires that the Complaint allege more than the mere receipt of "flat periodic payments for service." *Ellison*, 357 F.3d at 1079. Rather, courts require a claimant to establish that the ISP "attracted or retained subscriptions because of the infringement or lost subscriptions because of [the] eventual obstruction of the infringement." *Id.* Thus, the relevant inquiry "is whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Id.*; *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1117-18 (9th Cir. 2007).

Plaintiffs' allegations plainly fail to satisfy these standards. Plaintiffs' only basis for alleging a direct financial benefit is Grande's receipt of flat monthly Internet service subscription fees. *Compl.*, ¶¶ 44, 45, 51 and 53. Based on the foregoing case law, however, these bare allegations regarding monthly subscription fees do not—and cannot—plausibly allege a sufficient direct relationship between alleged infringing activity and Grande's pecuniary interests.

Importantly, the Complaint fails to allege—and Plaintiffs have no factual basis to allege—that Grande gained or lost customers based on the purported infringement. *Id.* Without alleging those facts, the Complaint fails to plead a claim for vicarious liability. *See Ellison,* 357 F.3d at 1078-79; *Perfect 10*, *Inc.*, 488 F.3d at 1118 ("Perfect 10 only alleges that 'CWIE hosts websites for a fee.' This allegation is insufficient to show that the infringing activity was 'a draw' as required by *Ellison.*"); *see also Parker v. Google, Inc.,* 422 F. Supp. 2d 492, 499-500 (E.D Pa. 2006) (finding pleadings insufficient when they vaguely and conclusorily alleged that "Google's advertising revenue is directly related to the number of Google users and that the number of users is dependent directly on Google's facilitation of and participation in the alleged infringement.") (quoting *Nimmer on Copyright* § 12B.01[A][1] (2005) ("Large, commercial ISPs

14

derive insufficient revenue from isolated infringing bits, in the context of the billions of bits that cross their servers to characterize them as financially benefitting from the conduct of which complaint is made.")).

Plaintiffs cannot rely on the mere receipt of subscription fees as a basis to allege that Grande directly benefits from infringing activity allegedly occurring on its network.  Instead, "[t]o establish liability for vicarious infringement, a plaintiff must show that customers either subscribed because of the available infringing material or canceled subscriptions because it was no longer available.  It is insufficient to merely show that a defendant's customers themselves value the ability to infringe."  *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1110 (N.D. Cal. 2008).  Because the Complaint lacks any plausible allegation that Grande gained or lost subscribers based on the allegedly infringing activity, its pleadings are defective and should be dismissed.

> 2.    *The Complaint fails to plausibly allege that Grande has the ability to supervise and control the purported infringement*

Vicarious liability is premised on a party's ability to stop a third-party from conducting directly infringing activities.  *See, e.g., Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1175 (9th Cir. 2007).  "[A] defendant exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so."  *Id.* at 1173 (citing *Grokster*, 545 U.S. at 930).

The Complaint alleges that Grande is vicariously liable because it has the ability to terminate subscribers that are suspected of engaging in repeated copyright infringement.  *See, e.g.*, Compl., ¶ 4.  This allegation does not support a vicarious infringement claim because Grande's ability to terminate subscribers does not translate into an ability to stop alleged infringers from committing acts of infringement.  Courts recognize a division between entities

that have a genuine ability to directly control infringing conduct, and those whose ability to curb infringement is so attenuated or *de minimis* that they cannot actually control the infringement. Because Grande squarely falls into the latter category, Plaintiffs' allegation of vicarious infringement should be dismissed.

In *Perfect 10, Inc. v. Amazon.com, Inc*., Perfect 10 accused Google of vicarious infringement for providing search services that directed users to websites containing infringing copyrighted material.  The court determined that because Google lacked any control over the actual websites that housed the copyrighted material, Google's ability to remove those websites from its search results did not constitute sufficient control of the infringement to support a claim for vicariously liability.  508 F.3d at 1173 ("Perfect 10 has not shown that Google has contracts with third-party websites that empower Google to stop or limit them from reproducing, displaying, and distributing infringing copies of Perfect 10's images on the Internet.").

In reaching this conclusion, the court distinguished Google's limited role in the infringement from companies like Napster, which stored volumes of copyrighted works *on their own servers* and could control infringement by simply blocking access to the copyrighted works residing on its systems.  *Id.* at 1174 ("Because Napster had a closed system requiring user registration, and could terminate its users' accounts and block their access to the Napster system, Napster had the right and ability to prevent its users from engaging in the infringing activity of uploading file names and downloading Napster users' music files through the Napster system.").  The court came to a similar conclusion in the related case of *Perfect 10, Inc. v. Visa*.  There, the court determined that "[j]ust like Google, Defendants could likely take certain steps that may have the *indirect effect* of reducing infringing activity on the Internet at large.  However, neither Google nor Defendants has any ability to *directly control* that activity, and the mere ability to

withdraw a financial 'carrot' does not create the 'stick' of 'right and ability' to control that vicarious infringement requires."). *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 803 (9th Cir. 2007) (emphasis added).

Like Google and Visa, Grande has no ability to directly control the allegedly infringing conduct that is taking place on the Internet. Plaintiffs do not allege that Grande can block access to the peer-to-peer software used by third parties to share infringing materials. *See, e.g., A&M Records,* 239 F.3d at 1023. Plaintiffs also do not allege that Grande houses on its own servers any of the materials that are purportedly being copied, or that it has the attendant right to block access to those materials. *Id.*; *see also David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (C.D. Cal. July 13, 2012) (dismissing vicarious infringement claim because "[d]efendants control whether infringing third-parties can access the P2P software [used to commit direct infringement] through their site, but do not have the right to stop users from using the software to download copyrighted material illegally. . . . This does not equate to control over direct infringement.").

Moreover, while it is true that Grande has the ability to terminate subscriber accounts, Plaintiffs do not plead that such termination would actually prevent an alleged direct infringer from gaining access to the Internet. Plaintiffs cannot make such an allegation, because a trip to the nearest coffee shop would allow that individual to immediately continue its infringing behavior through yet another conduit to the Internet. In other words, while Grande may be able to exert "some indirect effect on the infringing activity . . . so might any number of actions by any number of actors. For vicarious liability to attach, however, the defendant must have the right and ability to *supervise* and *control* the infringement, not just affect it." *See Perfect 10*, 494 F.3d at 805 (dismissing allegations of vicarious infringement for failure to plead sufficient

supervision and control) (emphasis added).

Because Grande lacks the ability to supervise or control the alleged infringement identified in the Complaint, Plaintiffs' allegations of vicarious liability lack merit and should be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint.

WHEREFORE, for the foregoing reasons, Plaintiff Grande Communications Networks LLC respectfully requests that the Court grant this Motion, dismiss Plaintiffs' claim for failure to state a claim, and grant any additional relief that the Court finds appropriate.

By:  /s/ Richard L. Brophy
    Richard L. Brophy (pro hac vice)
    Zachary C. Howenstine (pro hac vice)
    Margaret R. Szewczyk (pro hac vice)
    ARMSTRONG TEASDALE LLP
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Tel:  (314) 621-5070
    Fax:  (314) 621-5065
    Email: rbrophy@armstrongteasdale.com
          zhowenstine@armstrongteasdale.com
          mszewczyk@armstrongteasdale.com

    J. Stephen Ravel (State Bar No. 16584975)
    J.R. Johnson (State Bar No. 240700000)
    Diana L. Nichols (State Bar No. 00784682)
    KELLY HART & HALLMAN LLP
    303 Colorado, Suite 2000
    Austin, Texas 78701
    Tel: (512) 495-6429
    Fax: (512) 495-6401
    Email: steve.ravel@kellyhart.com
          jr.johnson@kellyhart.com
          diana.nichols@kellyhart.com

    Attorneys for Defendants GRANDE
    COMMUNICATIONS NETWORKS LLC
    and PATRIOT MEDIA CONSULTING,
    LLC

**CERTIFICATE OF SERVICE**

The undersigned certifies that on June 19, 2017 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy

Richard L. Brophy