# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

UMG RECORDINGS, INC., *et al.*,

      Plaintiffs,

vs.

GRANDE COMMUNICATIONS
NETWORKS LLC and PATRIOT MEDIA
CONSULTING, LLC.,

      Defendants.

§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 1:17-cv-00365

## PLAINTIFFS' OPPOSITION TO DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC's MOTION TO DISMISS

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
1100 Connecticut Avenue, NW Suite 1100
Washington, DC 20036
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400 Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ................................................................................................... iv

INTRODUCTION ..................................................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 2

LEGAL STANDARD ................................................................................................................ 3

ARGUMENT .............................................................................................................................. 4

    I.     GRANDE'S MOTION VIOLATES THE RULE 12(B)(6) DISMISSAL STANDARD
           AND MUST BE DENIED ON THAT BASIS ALONE ...................................................... 4

    II.    GRANDE'S KNOWING PROVISION OF THE FACILITIES ENABLING ITS USERS
           TO INFRINGE CONSTITUTES CONTRIBUTORY INFRINGEMENT ................................. 7

         A.    Plaintiffs' Detail Grande Users' Direct Infringement of Plaintiffs'
               Works ........................................................................................................... 8

         B.    Knowledge of Direct Infringement Sufficient to Support
               Contributory Liability Can Be Actual, Constructive, or Willful
               Blindness ..................................................................................................... 9

               1.    The Notices Grande Received from Rightscorp Satisfy
                       Even the Most Stringent Actual Knowledge Standard ................. 10

               2.    Plaintiffs Need Only Show Constructive Knowledge .................. 11

               3.    Willful Blindness Is Sufficient to Establish Even Actual
                       Knowledge ................................................................................. 11

          C.    Grande's Provision of Internet Services Constitutes Material
               Contribution Under Well-Settled Precedent ............................................. 12

    III.   GRANDE'S PROFITING FROM ITS REFUSAL TO TERMINATE INFRINGERS
           CONSTITUTES VICARIOUS INFRINGEMENT ............................................................ 13

    IV.   OTHER COURTS HAVE REJECTED GRANDE'S MISAPPLICATION OF THE
           SUPREME COURT'S SONY AND GROKSTER DECISIONS IN SIMILAR CASES. ............ 15

         A.    The Supreme Court's Holding in Sony Addresses Imputing Intent
               Solely Based on the Design of A Device Sold at Arm's Length .............. 15

B.    *Grokster* and Its Progeny Expressly Reject the Application of *Sony* Immunity Claimed by Grande ................................................................. 16

C.    Grande's Claim that Contributory Liability Depends on an ISP's "Active Encouragement" Misreads *Grokster* and Is Rejected by Grande's Own Cases .................................................................................. 17

1.    *Grokster* Addressed Only One Type of Contributory Liability – for Inducement of Infringement – and the Other Alternative Types of Liability Remained Unaffected ................... 17

2.    An ISP that Knows of Infringing Material Available on Its Network and Continues to Provide Access Materially Contributes as a Matter of Law ..................................................... 19

CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ........................................................................... passim

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
  166 F.3d 772 (5th Cir. 1999) .................................................................................. 9, 14

*Arista Records LLC v. Lime Grp. LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y.2011) ........................................................................ 17

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009) ...................................................................... 21

*Arista Records, LLC v. Greubel*,
  453 F. Supp. 2d 961 (N.D. Tex. 2006) .................................................................... 10

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 4, 11

*Baker v. Putnal*,
  75 F.3d 190 (5th Cir. 1996) ....................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................... 4, 11

*Berg v. Symons*,
  393 F. Supp. 2d 525 (S.D. Tex. 2005) ..................................................................... 15

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
  149 F. Supp. 3d 634 (E.D. Va. 2015) ................................................... 10, 12, 16, 19

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
  902 F.2d 829 (11th Cir. 1990) .................................................................................. 15

*City of Pontiac Gen. Employees' Ret. Sys. v. Dell Inc.*,
  No. A-15-CV-374-LY, 2016 WL 6075540 (W.D. Tex. Sept. 16, 2016) ........................ 3, 5, 8

*Cobbler Nevada, LLC v. Gonzales*,
  2016 WL 3392368 (D. Or. June 8, 2016) ................................................................. 26

*Dallas Buyers Club, LLC v. Doughty*,
  2016 WL 1690090 (D. Or. Apr. 27, 2016) ............................................................... 26

*Ellison v. Robertson*,
  357 F.3d 1072 (9th Cir. 2004) ........................................................................... 14, 18

*EMI Christian Music Grp., Inc. v. MP3tunes*, LLC,
844 F.3d 79 (2d Cir. 2016) .................................................................................... 15

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ............................................................................. 16, 17

*Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*,
443 F.2d 1159 (2d Cir. 1971) ........................................................................... 14, 23

*Gershwin Publishing Corporation v. Columbia Artists Management, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .............................................................................. 24

*Gershwin*.  *See e.g. Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*,
No. CIV.A. 3:08-CV-1658-, 2009 WL 3075205 (N.D. Tex. Sept. 25, 2009) ........................ 14

*Goldstein v. Metro. Reg'l Info. Sys., Inc.*,
No. CV TDC-15-2400, 2016 WL 4257457 (D. Md. Aug. 11, 2016) ................................ 12, 25

*Hishon v. King & Spalding*,
467 U.S. 69 (1984) ................................................................................................ 5

*In re Aimster Copyright Litig.*,
334 F.3d 643 (7th Cir. 2003) ................................................................................. 15

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ............................................................................... 11

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
No. 3:16-CV-1651-L, 2016 WL 4944370 (N.D. Tex. Sept. 16, 2016) .................................. 9

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
591 F. Supp. 2d 1098 (N.D. Cal. 2008) ................................................................ 13, 18

*Luvdarts LLC v. AT&T Mobility, LLC*,
No. 2:10-cv-05442, 2011 WL 997199 (C.D. Cal. Mar. 17, 2011) .................................... 25

*Luvdarts, LLC v. AT & T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) ............................................................................... 16

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) ....................................................................................... 11, 21

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) ............................................................................ 22, 25

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d at 796 (9th Cir. 2007) ............................................................................. 24

*Playboy Enterprises, Inc.  v. Webbworld, Inc.*
    168 F.3d 486 (5th Cir. 1999). ............................................................ 10

*Playboy Enterprises, Inc. v. Webbworld, Inc.*,
    991 F. Supp. 543 (N.D. Tex. 1997) ..................................................... 10

*Robertson v. EMI Christian Music Grp., Inc.*,
    No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017) ........................ 16

*Sony Corporation of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ............................................................................ 20

*Spitzberg v. Hous. Am. Energy Corp.*,
    758 F.3d 676 (5th Cir. 2014) ................................................................ 4

*Swallow Turn Music v. Wilson*,
    831 F. Supp. 575 (E.D. Tex. 1993) ...................................................... 18

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ................................................................ 4

*Trustees of the Texas Carpenters & Millwrights Health & Welfare Fund v. Delancey*,
    No. A-10-CA-537 LY, 2010 WL 4918737 (W.D. Tex. Nov. 23, 2010) ................................. 4, 8

*Variant Displays, Inc. v. Absolute Exhibits, Inc.*,
    2016 WL 7486281 (C.D. Cal. Feb. 12, 2016) ....................................... 14

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012) .................................................................. 15

*Warner Bros. Records v. Payne*,
    No. CIV.A. W-06-CA-051, 2006 WL 2844415 (W.D. Tex. July 17, 2006) ........................... 10

*YETI Coolers, LLC v. RTIC Coolers, LLC*,
    2016 WL 3951223 (W.D. Tex. July 19, 2016) ........................................ 8

## INTRODUCTION

Grande knowingly facilitates its customers' widespread infringement of Plaintiffs' valuable copyrights and reaps direct financial benefit from its infringing users, despite its plain ability to control the infringing use of its service.  Based on well-settled secondary infringement law, Grande is contributorily and vicariously liable for this wrongful conduct.  Plaintiffs' complaint alleges the facts underlying these allegations in detail and exceeds the pleading standard that the Federal Rules of Civil Procedure require.  In its Motion to Dismiss, Grande effectively admits that it materially contributes to its users' infringement of Plaintiffs' valuable copyrights while remaining – at best – willfully blind to this infringement. Grande attempts to avoid its liability by distorting or disputing the facts alleged in Plaintiffs' complaint, and by misstating the law applicable to Plaintiffs' claims.  The Court should deny Grande's motion.

*First*, Grande fails even to cite – let alone satisfy – the applicable standard of review for a motion to dismiss under Rule 12(b)(6).  Instead, Grande's motion consists largely of bald denials of, or quarrels with, Plaintiffs' factual allegations, alongside additional factual assertions found nowhere in the complaint.  Grande's tactic is a tacit admission that the facts as pleaded state a claim for relief and its disregard of the Rule 12(b)(6) standard alone warrants denial of its motion.

*Second*, Grande misstates the applicable legal standards governing Plaintiffs' claims of secondary copyright infringement.  In particular, Grande distorts Supreme Court precedent addressing the innocent arms-length sale of *products*, in an unavailing attempt to immunize Grande's ongoing – and knowing – provision of internet *services* used to infringe Plaintiffs' copyrights.  Yet courts routinely reject precisely the argument advanced by Grande here.  Plaintiffs plead the requisite elements of secondary copyright infringement liability more than plausibly.

For the reasons stated here and in Plaintiffs' Opposition to Patriot's Motion to Dismiss (incorporated herein), Plaintiffs respectfully request that the Court deny the motion in all respects.

1

## FACTUAL BACKGROUND

Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country.  Apr. 21, 2017 Plaintiffs' Complaint (Dkt. No. 1) ("Compl.") ¶ 2.  Defendant Grande Communications Networks, LLC ("Grande") is an internet service provider ("ISP") based in Texas.  Plaintiffs' case against Grande is straightforward: Grande allows users of its internet service free rein to infringe Plaintiffs' copyrighted recordings on a massive scale, using BitTorrent peer-to-peer file sharing networks, despite receiving more than a million notices of infringement.  *Id.* ¶ 4.

These notices were generated by Rightscorp, using a sophisticated system that "identifies specific actual infringements of various copyrighted works and the users of BitTorrent networks who infringe these copyrighted works."  *Id*. ¶ 48.  The Rightscorp system "has the capability to acquire entire files from the infringing host computers. Using this system, Rightscorp has notified ISPs, including Grande, of specific instances of first-time and repeat copyright infringement committed by their account holders and has requested that the ISPs, including Grande, notify their account holders of these infringements."  *Id*. ¶ 43. Plaintiffs allege that "neither Grande nor its management company Patriot has taken any meaningful action to discourage this continuing theft, let alone suspend or terminate subscribers who repeatedly commit copyright infringement through its network, as required by law … even where Defendants have specific and actual knowledge of those subscribers' blatant, repeat infringement."  *Id.*

Defendants profit greatly by allowing repeat infringers to continue using Grande's service, through significant revenue from its many infringing subscribers.  *Id.* ¶ 5, 45.  "[F]or those subscribers who want to pirate more and larger files at faster speeds, Grande obliges them in return for higher fees. The greater the bandwidth its subscribers require for pirating content, the more money Grande receives."  *Id*. ¶ 45.  "By ignoring the repeat infringement notifications and refusing

to take action against repeat infringers, Defendants … continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth." *Id.* ¶ 53.

Plaintiffs allege that Defendants "purposefully ignore notice of repeat infringers sent from copyright owners (through Rightscorp), who are tracking the repeat infringers on the Grande network and providing Defendants with actual knowledge of those repeat infringers on a daily basis." Compl. ¶ 52. Grande admits that it receives these notices – and apparently does nothing: "it is infeasible for Grande to devote the time and resources required to meaningfully investigate them." Mot. at 1. Grande further admits that it could identify and terminate repeat infringers, and apparently chooses not to: "[e]ven if Grande were able to devote the extraordinary resources it would require to identify subscribers who use these programs to engage in infringing activities, the most Grande can do is terminate those subscribers . . ." Mot. at 2. Thus, the Court need not merely assume Plaintiffs' allegations to be true – Grande freely admits that they are. These admissions show that Plaintiffs state actionable claims against Grande for secondary infringement.

## LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'" *City of Pontiac Gen. Employees' Ret. Sys. v. Dell Inc.*, No. A-15-CV-374-LY, 2016 WL 6075540, at *2 (W.D. Tex. Sept. 16, 2016) (Yeakel, J.) (denying motion to dismiss) (quoting *Test Masters Educ. Servs., Inc. v. Singh,* 428 F.3d 559, 570 (5th Cir. 2005)). "This court 'must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). While a plaintiff must plead specific facts, rather than conclusory allegations, "the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support its claims." *Id.* (citations omitted).

"[T]he court must also draw all reasonable inferences in the plaintiff's favor." *Id.* And "[t]he Fifth Circuit has consistently held that a court may not go outside of a plaintiff's complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss." *Trustees of the Texas Carpenters & Millwrights Health & Welfare Fund v. Delancey*, No. A-10-CA-537 LY, 2010 WL 4918737, at *2 (W.D. Tex. Nov. 23, 2010) (Austin, M.J.).

The Fifth Circuit summarizes this "strict standard of review" as follows: ". . whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Id.* "Thus, this court may dismiss for failure to state a claim only if the court can determine with certainty that the plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint." *City of Pontiac Gen. Employees' Ret. Sys.*, 2016 WL 6075540, at *2 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENT

### I. GRANDE'S MOTION VIOLATES THE RULE 12(B)(6) DISMISSAL STANDARD AND MUST BE DENIED ON THAT BASIS ALONE

Grande does not even cite, much less follow, the motion to dismiss standard of review mandating its motion accept as true all well-pleaded allegations, and refrain from introducing facts outside Plaintiffs' complaint. Instead, Grande's entire motion relies on 1) denials of central factual allegations supporting Plaintiffs' claims and 2) unsupported factual allegations extraneous to the complaint. Both are improper in a motion to dismiss under Rule 12(b)(6) and each provides a sufficient basis to deny Grande's motion.

Grande's arguments depend largely on its baseless assertion that the Rightscorp system is "incapable of detecting *actual* infringement." Mot. at 1 (emphasis in original). This improperly contradicts numerous factual allegations in Plaintiffs' complaint:

| **GRANDE'S CONTENTIONS** | **PLAINTIFFS' FACTUAL ALLEGATIONS** |
|---|---|
| "Moreover, the system that Rightscorp employs to generate its notices is <u>incapable of detecting actual infringement</u> and, therefore, is incapable of generating notices that reflect real infringement."  Mot. at 1.<br><br>". . .the Rightscorp system <u>is incapable of tracking or recording instances of actual copyright infringement.</u>"  *Id.* at 7. | "Rightscorp has developed a technological system that ***identifies actual infringements*** and the perpetrators of these infringements (by IP address, port number, time, and date)."  Compl. ¶ 43.[1]<br><br>"This system identifies ***specific actual infringements*** of various copyrighted works and the users of BitTorrent networks who infringe these copyrighted works."  *Id.* ¶ 48. |
| "The system does not, in fact, have any way to detect whether that 'available' content <u>was</u> <u>actually requested</u> or ever downloaded by a third-party."  *Id.* at 4. | "A non-exhaustive, illustrative list of Plaintiffs' federally copyrighted sound recordings that Defendants have illegally reproduced, distributed, and/or publicly performed for their users is attached hereto as Exhibit A (the "Copyrighted Sound Recordings")." *Id.* at ¶ 37. |
| "The system does not, in fact, have any way to detect whether that 'available' content was actually requested <u>or ever downloaded by a third-party.</u>"  *Id.* at 4. | "Rightscorp's system also has the capability ***to acquire entire files*** from the infringing host computers. ***Using this system***, Rightscorp has notified ISPs, including Grande, of ***specific instances*** of first-time and repeat copyright infringement committed by their account holders and has requested that the ISPs, including Grande, notify their account holders of these infringements."  *Id.* ¶ 43. |
| "These notices are so numerous and so <u>lacking in specificity</u>, that it is infeasible for Grande to devote the time and resources required to meaningfully investigate them."  *Id.* at 1. | ". . . the software will log certain identifying information ***(e.g., the IP address and port number of the host computer, the date and time the host computer offered the content, the name of the host computer's ISP, and information about the infringing file)***. Upon collecting this information, Rightscorp sends a notice of infringement to Grande, detailing the exact nature of the infringement(s)." *Id.* ¶ 48. |

Grande further ignores the operative standard of review by including unsupported factual assertions that are completely extrinsic to the complaint.  Grande goes to great length to insist that it is helpless to investigate the sheer volume of infringement its users admittedly commit.  Mot. at 3-4.  Grande also claims that even terminating users may not successfully limit the users' future infringement – thus admitting that it ***does not*** terminate repeat infringers.  Mot. at 15.  In similar

---

[1] Emphasis added throughout unless otherwise indicated.

fashion, Grande makes naked factual assertions contradicting Plaintiffs' well-pleaded allegations that Grande and Patriot financially benefit from known repeat infringers' subscription fees and additional payments: "Grande does not profit or receive any benefit from subscribers that may engage in such infringing activity using its network.  To the contrary, Grande suffers demonstrable losses as a direct result of purported copyright infringement conducted on its network."  Mot. at 2.  Grande provides no support for these claims regarding the infringement that Grande effectively admits is occurring.  Nor would it matter, because such self-serving factual assertions are prohibited in support of a Rule 12(b)(6) motion.

The Fifth Circuit has held it to be reversible error for a court even to entertain a motion to dismiss argument premised on contradicting the facts pleaded in the complaint.  In *Baker v. Putnal*, 75 F.3d 190, 197 (5th Cir. 1996), for example, the plaintiff's civil rights claim alleged that the deceased had not pointed a gun at the defendant police officer.  *Id* at 196-97.  The district court credited the defendant's contention in dismissing the claim.  *Id.*  The Fifth Circuit reversed, citing to the clear and mandatory standard of review applicable to 12(b)(6) motions:  "In effect, the trial court adopted portions of the defendants' claims as fact without acknowledging any contradiction with the complaint. . . .  In so doing, the court failed to apply the standards of Rule 12(b)(6).  Dismissal under these circumstances was error."  *Id*. at 197.

This Court should decline Grande's invitation to embrace the same error by crediting Grande's efforts to dispute the central facts of Plaintiffs' complaint.  Grande's arguments regarding the existence of direct infringement, Mot. at 6-7, and Grande's knowledge of contributory infringement, *id*. at 12, each depends on Grande's rejection of the facts alleged in Plaintiffs' complaint.  These arguments also misstate the law, *see infra* Section II, but the Court need not reach the legal flaws because of the improper factual components to Grande's arguments.

This Court's adoption of the holding in *Trustees of the Texas Carpenters & Millwrights Health & Welfare Fund v. Delancey*, is instructive.  2010 WL 4918737 (W.D. Tex. Nov. 23, 2010). There, the defendant sought to dismiss the claims based on facts proffered in an affidavit.  *Id*. at *2.  Recognizing that "[t]he Fifth Circuit has consistently held that a court may not go outside of a plaintiff's complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss," Magistrate Judge Austin denied the motion.  *Id*.  Here, Grande does not even bother to support its factual assertions with any evidence (likely because it ***has*** no such evidence).  Instead, it asks the Court to dismiss Plaintiffs' claims based entirely on its naked denials or disputes of, and additions to, the facts Plaintiffs have pleaded.  Rule 12(b)(6) forbids such arguments. *See also City of Pontiac Gen. Employees' Ret. Sys.*, 2016 WL 6075540, at *4 ("Defendants' arguments are fact-based and are insufficient to support a motion to dismiss."); *YETI Coolers, LLC v. RTIC Coolers, LLC*, 2016 WL 3951223, at *3 (W.D. Tex. July 19, 2016) (denying motion to dismiss "[b]ecause the Court is bound to accept as true the facts presented in YETI's Complaint and cannot consider the facts alleged in a defendant's responsive filings") (internal citations and punctuation omitted).

## II.   GRANDE'S KNOWING PROVISION OF THE FACILITIES ENABLING ITS USERS TO INFRINGE CONSTITUTES CONTRIBUTORY INFRINGEMENT

Grande's arguments fail for an independent reason: they misstate the well-settled law of copyright infringement.  "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another."  *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *11 (N.D. Tex. Sept. 16, 2016) (*quoting Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999).  Plaintiffs have alleged more than sufficient facts to demonstrate Grande's liability for contributory infringement.

**A.  Plaintiffs' Detail Grande Users' Direct Infringement of Plaintiffs' Works**

Grande's assertions regarding direct infringement are twofold.  **First**, Grande repeats its mischaracterization of Plaintiffs' allegations by insisting that Rightscorp cannot detect actual infringement. Mot. at 6-7.  As addressed *supra*, Plaintiffs plead that Rightscorp's system recorded actual downloads of infringing files, Compl. ¶ 43, and Exhibit A to the Complaint details a representative list of Plaintiffs' Copyrighted Works infringed by Grande's users.  These facts plainly constitute direct infringement.[2]  In *Arista Records LLC v. Greubel*, for example, the court denied the defendant's motion to dismiss because "[p]laintiffs assert that Greubel made the copyrighted recordings available to others without permission and actively reproduced and/or distributed the copyrighted recordings as well."  453 F. Supp. 2d 961, 971 (N.D. Tex. 2006).

**Second**, Grande speculates that the million-plus infringements could all have been generated on Grande's system by other than Grande subscribers.  "[T]he notices only identify an Internet Protocol address (or 'IP address') and, therefore, cannot resolve that the subscriber—as opposed to someone else with unapproved access to the subscriber's network—conducted the alleged infringement."  Mot. at 12.  However, it is well-established that a plaintiff "may establish direct infringement using circumstantial evidence that gives rise to an inference that [the ISP] account holders or other authorized users accessed its service to directly infringe."  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 663 (E.D. Va. 2015).  Further, the Supreme Court recognizes that secondary liability exists in large part to address the difficulty of

---

[2] Grande is also mistaken in its suggestion that the download or upload of a file is necessary for infringement to have occurred. "'Copying' is a judicial shorthand for the infringement of any of a copyright owner's exclusive rights."  *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 550–51 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999).  This Court, like others, has held that offering to distribute a copyrighted works can constitute infringement. *See, e.g., Warner Bros. Records v. Payne*, No. CIV.A. W-06-CA-051, 2006 WL 2844415, at *4. (W.D. Tex. July 17, 2006) (Smith, C.J.) Every single Rightscorp notice reflects a BitTorrent user on the Grande system offering for download a specific copyrighted work.  Compl. ¶ 48.

enforcing a copyright holder's rights against direct infringers.  "When a widely shared product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, so that the only practical alternative is to go against the device's distributor for secondary liability on a theory of contributory or vicarious infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005).  "While identity is a key issue in many individual infringement suits, *it has little relevance in a large-scale secondary liability suit.*"  *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 664.

Grande cites *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104 (9th Cir. 2013) (a Securities Act case that does not even mention the word "copyright"), in support of its assertion that a complaint must plead "facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible within the meaning of *Iqbal* and *Twombly*."  *Id.* at 1108.  Defendants do not even attempt to explain how it is possible, let alone a reasonable inference, that 100% of the more than one million notices it received reflect non-subscriber internet activity.  The scale of infringement on Grande's network alleged by Plaintiffs here excludes any such possibility, and the only reasonable inference is that Grande's subscribers are infringing.  Grande's suggestion to the contrary is frivolous.

**B. Knowledge of Direct Infringement Sufficient to Support Contributory Liability Can Be Actual, Constructive, or Willful Blindness**

Proof of the knowledge of the party liable for contributory copyright infringement can be "met by a showing of actual or constructive knowledge or by evidence that a defendant took deliberate actions to willfully blind itself to specific infringing activity."  *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 671.  *See also Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. CV TDC-15-2400, 2016 WL 4257457, at *4 (D. Md. Aug. 11, 2016) (". . .a plaintiff must allege facts that, taken as

9

true, establish that the defendant knew or had reason to know of the infringing activity . . .").

Pleading one of these three kinds of knowledge suffices.  Plaintiffs allege all three.

### 1.  The Notices Grande Received from Rightscorp Satisfy Even the Most Stringent Actual Knowledge Standard

Grande's sole argument regarding its knowledge depends on mischaracterizing Rightscorp's ability to detect actual infringement.  As addressed *supra*, this argument is improper on a motion to dismiss and must be rejected.  Grande makes this argument because it knows that detailed notice of specific infringing material available on its system demonstrates Grande's actual knowledge of infringement by its users as a matter of law.  In fact, the cases Grande cites establish that Plaintiffs' complaint alleges facts satisfying the actual knowledge standard.

For example, the court in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, relied on the Ninth's Circuit opinion in *A&M Records, Inc. v. Napster, Inc.*, that, "if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator ***knows of*** and contributes to direct infringement."  591 F. Supp. 2d 1098 (N.D. Cal. 2008) (*quoting Napster,* 239 F.3d 1004 (9th Cir. 2001)).  In *Napster*, also cited by Grande, the Ninth Circuit upheld the district court's determination of actual knowledge based on notices received by Napster from the RIAA alerting Napster to numerous copyrighted works available for download over Napster's system.[3] 239 F.3d at 1020 n.5.  Here, Grande received more than a million notices detailing demonstrable infringement of Plaintiffs' copyrighted works.  Compl. ¶ 49.  The notices Grande received, which detailed the IP address, the work infringed, and the date and time, satisfy even the most demanding actual knowledge standard.

---

[3] Grande misstates the facts of *Napster* in claiming that Napster stored the infringing content on its system.  Napster was in fact a peer-to-peer service.  *See id. at 1011.*

### 2.  Plaintiffs Need Only Show Constructive Knowledge

Although Plaintiffs have pleaded facts sufficient to show that Grande had actual knowledge, even constructive knowledge would establish Grande's liability.  In the seminal case of *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, the Second Circuit made clear that a defendant may "be held liable as a 'contributory' infringer if it were shown to have had knowledge, or reason to know, of the infringing nature of the records."  443 F.2d 1159, 1162 (2d Cir. 1971). Courts have since repeatedly reaffirmed the holding in *Gershwin*.  *See, e.g., Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. CIV.A. 3:08-CV-1658-, 2009 WL 3075205, at *15 (N.D. Tex. Sept. 25, 2009) (*quoting Alcatel USA, Inc. v. DGI Techs., Inc.,* 166 F.3d 772, 790 (5th Cir.1999) (*quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971)); *Variant Displays, Inc. v. Absolute Exhibits, Inc.*, 2016 WL 7486281, at *2 (C.D. Cal. Feb. 12, 2016) (*quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("the knowledge requirement for contributory copyright infringement [includes] both those with *actual knowledge* and those who *have reason to know* of direct infringement . . .") (emphasis in original); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990).

Here it is beyond dispute that a million notices providing specific information regarding the IP address, date, time, and work infringed gave Grande "reason to know" that widespread infringement was occurring by its users over its services.

### 3.  Willful Blindness Is Sufficient to Establish Even Actual Knowledge

Willful blindness to infringement also satisfies the knowledge requirement for contributory infringement.  *See, e.g., In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law as it is in the law generally.") (internal citations omitted); *Berg v. Symons*, 393 F. Supp. 2d 525, 539 (S.D. Tex. 2005) (*citing In re Aimster*); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012); *EMI Christian Music Grp., Inc. v. MP3tunes*,

LLC, 844 F.3d 79, 91 (2d Cir. 2016), *cert. denied sub nom. Robertson v. EMI Christian Music Grp., Inc.*, No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017) ("[A]t trial the plaintiffs could prevail by demonstrating that MP3tunes's failure to track users who created links to infringing content identified on takedown notices or who copied files from those links evidenced its willful blindness to the repeat infringing activity of its users."); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996).  Grande's own cases acknowledge as much.  *See Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) ("Willful blindness of specific facts would establish knowledge for contributory liability.")

"A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 673.  Grande has already ***admitted*** it consciously avoided confirming the infringement information provided by Rightscorp, and therefore was ***at best*** willfully blind to the infringement occurring over its service: "[I]t is infeasible for Grande to devote the time and resources required to meaningfully investigate [these notices]." Mot. at 1.  Accepting Plaintiffs' allegations as true, Plaintiffs plainly satisfy the requirement to plead plausibly that Grande was willfully blind to its subscribers' infringement.

## C.  Grande's Provision of Internet Service Constitutes Material Contribution Under Well-Settled Precedent

Grande's motion does not contest well-settled law that providing the facilities that enable infringement constitutes material contribution.  "[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).  *See also Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 422 (S.D.N.Y. 2011).  In the context of computer system operators, courts hold that services which enable infringement materially contribute for purposes of contributory

liability.  *See Napster,* 239 F.3d at 1021 ("[I]f a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of ***and contributes to*** direct infringement.").

Another ISP was recently found liable for contributory infringement based on facts on all fours with the instant case.  In *Cox Commc'ns, Inc.*, the jury found the ISP defendant liable for contributory infringement for its users' direct infringement of music copyrights over BitTorrent networks.  199 F. Supp. 3d at 958.  BMG alleged what Plaintiffs allege here, that the ISP "ignored specific notices of infringing activity and continued to provide material support to its users' infringement of [Plaintiffs'] works despite its ability to suspend or terminate customers with the push of a button."  *Id*.  The court left no doubt that such conduct gives rise to contributory liability.  "***There can be no question*** that the provision of high-speed internet service materially contributes to infringement via BitTorrent . . . ."  *Id* at 979.  Taken as true, Plaintiffs' allegations of Grande's knowing and willful continued provision of high-speed internet to users actively engaged in widespread and repeated infringement establishes contributory liability as a matter of law.

## III.   GRANDE'S PROFITING FROM ITS REFUSAL TO TERMINATE INFRINGERS' ACCOUNTS CONSTITUTES VICARIOUS INFRINGEMENT

As Plaintiffs' Opposition to Patriot's Motion to Dismiss details[4], the parties agree on the two elements to establish a claim for vicarious liability: "one may be held vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities."  *Crabshaw Music*, 744 F. Supp. at 767-68.  *See also Swallow Turn Music v. Wilson*, 831 F. Supp. 575, 579 (E.D. Tex. 1993).  Plaintiffs allege that Grande meet both.

---

[4] Considering the overlapping issues, Plaintiffs rely here on the authorities and arguments addressing vicarious liability in the Opposition to Patriot's Motion to Dismiss, and only discuss in detail the specific arguments Grande raises in its motion.

Grande first argues that Plaintiffs must prove that "customers either subscribed because of the available infringing material or canceled subscriptions because it was no longer available." Mot. at 15 (quoting *Louis Vuitton Malletier,* 591 F. Supp. 2d at 1110) (quoting *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir.2004). This selective citation from *Ellison* is not an accurate statement of the scope of vicarious liability, as Plaintiffs' Opposition to Patriot's Motion makes clear. Regardless, the *Louis Vuitton* decision was on summary judgment with a full factual record. Here, Plaintiffs have pleaded, and will prove, that the ability to infringe over BitTorrent networks "acts as a powerful draw for users of Grande's service . . ." Compl. ¶ 66. Plaintiffs' allegations are sufficient to support their vicarious liability claims.

Having admitted that it can – and apparently refuses to – terminate repeated infringers, Grande claims that such terminations might be ineffective to stop all infringement. This argument has support in neither fact nor law. ***First***, it is a simple and reasonable inference – mandatory in Plaintiffs' favor at this stage – that terminating an infringer's internet access will limit that user's ability to infringe. "There cannot be any serious dispute that internet service is an essential component of the infringing activity alleged by BMG. . . . It is therefore a reasonable inference that the result of an internet service provider exercising its ability to suspend or terminate account holders stops or limits infringement." *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 674.

***Second***, as a matter of law, to avoid vicarious liability, an ISP must do ***what it can*** to stop infringement, not remain idle while lamenting the limits of the good it could do. "To escape imposition of vicarious liability, the reserved right to police must be exercised to its fullest extent. ***Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability.***" *Napster*, 239 F.3d at 1023. Grande effectively admits that it turned a blind eye to the notices it received and refused to terminate its infringing users. Plaintiffs allege it did so to protect the

14

valuable revenue stream it received from their subscription fees.  Well-settled case law (relied on by Grande) supports liability for vicarious infringement on these facts.

## IV.   OTHER COURTS HAVE REJECTED GRANDE'S MISAPPLICATION OF THE SUPREME COURT'S *SONY* AND *GROKSTER* DECISIONS IN SIMILAR CASES.

Recognizing its secondary infringement liability under the facts as alleged, Grande attempts to immunize its conduct through misapplying the Supreme Court's holdings in *Sony* and *Grokster.*  As explained below, other courts have rejected the gloss on these decisions that Grande advances here.  This Court should do so as well.

### A.   The Supreme Court's Holding in *Sony* Addresses Imputing Intent Solely Based on the Design of A Device Sold at Arm's Length

In *Sony Corp. of Am. v. Universal City Studios, Inc.*, the Supreme Court examined the secondary copyright infringement liability generated by Sony's sale of Betamax video recorders. 464 U.S. 417 (1984).  Because Sony had no ongoing relationship with purchasers – and thus no basis to know of specific infringing uses – liability rested solely on the design of the device as evidencing "constructive knowledge of the fact that their customers *may* use that equipment to make unauthorized copies of copyrighted material." *Id.* at 439.  The Supreme Court analogized these claims to the concept of staple articles of commerce in patent law, and held that the arm's-length sale of a device "capable of substantial non-infringing uses" does not *alone* demonstrate liability for contributory copyright infringement. *Id.* at 442.

Grande's reliance on *Sony* is misplaced.  First, this is not a case about the design of a product placed in the stream of commerce.  Grande provides high-speed internet *services* to subscribers for a monthly fee.  Unlike end purchasers of video recorders or other products, Grande's customers have an ongoing relationship with the company.  This fact alone renders *Sony* inapposite. *See, e.g., Cox Commc'ns, Inc.*, 199 F. Supp. at 976  (discussing *Sony*: "[a]n ongoing relationship between a defendant and direct infringers presents a potential for culpability quite

beyond distribution or design."); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009) (". . .Defendants maintain an ongoing relationship with their users; thus, Defendants' service is quite unlike *Sony* . . .").

Moreover, Plaintiffs' claims do not depend on the design of Grande's service to impute constructive knowledge to Grande that its customers "may" infringe.  Rather, Plaintiffs plead that Grande has independent knowledge of ongoing infringement, and chooses to continue to provide the facilities that enable such infringement.  The very cases that Grande cites hold that *Sony* is inapposite to the kind of allegations Plaintiffs make here.  *See e.g. Napster* 239 F.3d at 1023 ("We observe that Napster's actual, specific knowledge of direct infringement renders *Sony*'s holding of limited assistance to Napster.")  Plaintiffs have alleged evidence of Grande's knowledge aside from the design of its service.  *Sony* does not apply.

## B. *Grokster* and Its Progeny Expressly Reject the Application of *Sony* Immunity Claimed by Grande

The Supreme Court made clear in *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005), that *Sony* affords Grande no protection.  Grokster offered peer-to-peer software that enabled widespread copyright infringement and the Ninth Circuit held that, because the software was capable of non-infringing uses, *Sony* foreclosed contributory liability.

The Supreme Court reversed, and in doing so rejected the exact reading of *Sony* that Grande proposes.  The Court explained that "*Sony* barred secondary liability based on presuming or imputing intent to cause infringement *solely from the design or distribution* of a product capable of substantial lawful use . . ."  *Id.* at 933.  The limited holding in *Sony* addressing imputed intent cannot be stretched to negate the broad liability for contributory infringement recognized by the common law.  "*Sony's* rule limits imputing culpable intent as a matter of law from the characteristics or uses of a distributed product.  But nothing in *Sony* requires courts to ignore

evidence of intent if there is such evidence, and the case was never meant to foreclose rules of fault-based liability derived from the common law." *Id.* at 934-35. *Grokster* thus left undisturbed the fundamental elements of contributory liability and the methods of proving that the material contribution was furnished with knowledge of the ongoing infringement.

Numerous courts have recognized that *Grokster* rejects the theory of immunity from secondary liability Grande proposes, including (again) the very cases Grande cites. *See, e.g. Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ("Perfect 10 has not based its claim of infringement on the design of Google's search engine and the *Sony* rule does not immunize Google from other sources of contributory liability.") The same is true here. Plaintiffs do not base their allegations of Grande's culpable knowledge on the "design" of Grande's internet service. Rather, Plaintiffs allege that Grande continued to provide the facilities for infringement over peer-to-peer networks despite possessing independent knowledge of massive ongoing infringement by its customers. *Sony* is equally inapplicable here.

## C. Grande's Claim that Contributory Liability Depends on an ISP's "Active Encouragement" Misreads *Grokster* and Is Rejected by Grande's Own Cases

Grande further seeks to rely on *Grokster* by claiming that "affirmative conduct is an absolute prerequisite to holding an ISP liable for secondary copyright infringement based on its provision of internet access." Mot. at 11. This claim badly misreads *Grokster*.

### 1. *Grokster* Addressed Only One Type of Contributory Liability – for Inducement of Infringement – and the Other Alternative Types of Liability Remained Unaffected

In *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, the Second Circuit provided the black letter definition of contributory copyright infringement: "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." 443 F.2d 1159, 1162 (2d Cir. 1971). The

*Grokster* Court cited *Gershwin*, noting that "these doctrines of secondary liability emerged from common law principles and are well established in the law." 545 U.S. at 930. The Court then addressed the inducement prong, explaining that "[t]he rule on inducement of infringement as developed in the early cases is no different today" and requires "[e]vidence of active steps taken to encourage direct infringement . . ." *Id.* at 936. Nowhere did the Court hold that inducement was now the ***only*** kind of contributory liability. In fact, the Court expressly limited the scope of its holding to inducement claims: "Because *Sony* did not displace ***other theories of secondary liability***, and because we find below that it was error to grant summary judgment to the companies on MGM's ***inducement claim***, we do not revisit *Sony* further . . ." *Id.* at 934.

Grande's own cases hold that the elements of contributory liability remain the standard post-*Grokster*. In *Perfect 10, Inc. v. Amazon.com, Inc.*, for example, the Ninth Circuit held: "[o]ur tests for contributory liability are consistent with the rule set forth in *Grokster*. We have adopted the general rule set forth in *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.*, namely: one who, with knowledge of the infringing activity, ***induces, causes or materially contributes*** to the infringing conduct of another, may be held liable as a 'contributory' infringer." 508 F.3d 1146, 1171 (9th Cir. 2007) (internal citations omitted). Disclaiming Grande's "active encouragement" argument, the court reiterated that "the Supreme Court in *Grokster* did not suggest that a court must find inducement in order to impose contributory liability under common law principles." *Id.* at n.11. *See also Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d at 796 (9th Cir. 2007) (recognizing the *Grokster* court "focused primarily on an 'inducement' theory and holding: "[t]o state a claim of contributory infringement, Perfect 10 must allege facts showing that Defendants ***induce, cause, or materially contribute to*** the infringing conduct.").

Plaintiffs allege that Grande both induced and materially contributed to the infringement accomplished by its users over its internet service. Each claim, backed by well-pleaded factual averments, is sufficient to support contributory liability under *Grokster* and its progeny.

### 2. An ISP that Knows of Infringing Material Available on Its Network and Continues to Provide Access Materially Contributes as a Matter of Law

Grande concludes its attempt to distort *Grokster* by arguing that it cannot be liable as a matter of law for its "failure to take affirmative steps to prevent infringement by limiting provision" of internet services. Mot. at 11. The very cases Grande cites hold unequivocally (before and after *Grokster*) that precisely this failure gives rise to contributory liability. In the 2001 *Napster* decision, prior to *Grokster*, the Ninth Circuit held that "if a computer system operator learns of specific infringing material available on his system and ***fails*** to purge such material from the system, the operator knows of and contributes to direct infringement." *Napster,* 239 F.3d at 1021. Two years after *Grokster*, in *Perfect 10 v. Google*, the court reaffirmed this rule: "Accordingly, we hold that a computer system operator can be held contributorily liable if it has actual knowledge[5] that specific infringing material is available using its system and ***can take simple measures to prevent further damage to copyrighted works yet continues to provide access to infringing works***." 508 F.3d 1146, 1172 (9th Cir. 2007) (internal citations and punctuation omitted). The continued provision of internet services to known infringers is exactly the "affirmative conduct" Grande insists must be present to impose liability on an ISP. Mot. at 11.

Grande's other cited cases both reaffirm this holding and are distinguishable on their facts. Grande cites the district court opinion in *Luvdarts LLC v. AT&T Mobility, LLC,* No. 2:10-cv-

---

[5] As discussed in Section II.B.2, the Ninth Circuit has at times applied an actual knowledge standard (which Plaintiffs satisfy), but the weight of authority holds that constructive knowledge remains sufficient to support liability for contributory liability. *See, e.g., Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. CV TDC-15-2400, 2016 WL 4257457, at *4 (D. Md. Aug. 11, 2016).

05442, 2011 WL 997199 (C.D. Cal. Mar. 17, 2011), but Ninth Circuit affirmed dismissal (citing *Napster*) because the notices there "failed to notify the Carriers of any meaningful fact"; they were "150–page–long lists of titles, apparently just a transcription of every title copyrighted by Luvdarts. . ." *Id.* at 1072-73. Here, Grande received detailed and individualized notices for each infringement. Compl. ¶ 48. *Luvdarts* supports Plaintiffs, not Grande.[6]

Grande's reliance on *Dallas Buyers Club, LLC v. Doughty,* 2016 WL 1690090 (D. Or. Apr. 27, 2016) is equally misplaced. That case involved direct infringement claims against an internet subscriber for his own infringement, and contributory infringement claims for his roommates' infringement. *Id*. The decision was a summary judgment disposition, which allowed the direct infringement claims to proceed and disposed of the contributory infringement claims. The court's determination that *Grokster* requires inducement for contributory liability is inconsistent with clear Ninth Circuit precedent, including *Perfect 10 v. Google*. The case has only ever been cited one time, and never for mistaken application of *Grokster*. This Court should not give any weight to the holding, considering the distinguishable facts and flawed analysis.

Plaintiffs allege – and Grande's motion admits – that Grande received more than a million notices that infringement was occurring over its system, and did not take simple measures to prevent further infringement. Such allegations support contributory liability under the express holdings in Grande's own cited precedent and its motion should be denied.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Grande's motion in its entirety.

---

[6] The same holds for *Cobbler Nevada, LLC v. Gonzales*, 2016 WL 3392368 (D. Or. June 8, 2016). The plaintiff in *Cobbler* 1) failed to plead that the defendant ever received a notice and 2) did not even allege that the notices sent related to the lone copyrighted work at issue. *Id*. at *3 n.2.

Dated: July 21, 2017                          Respectfully submitted,


                          By:  */s/ Philip J. O'Beirne*
                          Pat A. Cipollone, P.C. (admitted *pro hac vice*)
                          Jonathan E. Missner (admitted *pro hac vice*)
                          Robert B. Gilmore (admitted *pro hac vice*)
                          Philip J. O'Beirne (admitted *pro hac vice*)
                          **Stein Mitchell Cipollone Beato & Missner LLP**
                          1100 Connecticut Avenue, NW Suite 1100
                          Washington, DC 20036
                          Telephone: (202) 737-7777
                          Facsimile: (202) 296-8312
                          pcipollone@steinmitchell.com
                          jmissner@steinmitchell.com
                          rgilmore@steinmitchell.com
                          pobeirne@steinmitchell.com

                          Daniel C. Bitting (State Bar No. 02362480)
                          Paige A. Amstutz (State Bar No. 00796136)
                          **Scott Douglass & McConnico LLP**
                          303 Colorado Street, Suite 2400
                          Austin, TX 78701
                          Telephone: (512) 495-6300
                          Facsimile: (512) 495-6399
                          dbitting@scottdoug.com
                          pamstutz@scottdoug.com

                          ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 21, 2017 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

<div align="center" style="margin-left:40%">

*/s/ Daniel C. Bitting*
Daniel C. Bitting

</div>