**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. 1:17-cv-00365 |
| GRANDE COMMUNICATIONS | § | |
| NETWORKS LLC and PATRIOT MEDIA | § | |
| CONSULTING, LLC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
PATRIOT MEDIA CONSULTING, LLC's MOTION TO DISMISS**

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
1100 Connecticut Avenue, NW Suite 1100
Washington, DC 20036
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ............................................................................... 2

LEGAL STANDARD ......................................................................................... 4

ARGUMENT ....................................................................................................... 5

    I.     PLAINTIFFS DO NOT SEEK TO IMPOSE "TERTIARY" LIABILITY ON PATRIOT. .......... 5

    II.    PLAINTIFFS MORE THAN ADEQUATELY PLEAD A CLAIM AGAINST PATRIOT FOR SECONDARY COPYRIGHT INFRINGEMENT. ......................................... 9

        A.    Plaintiffs Plead An Actionable Contributory Infringement Claim Against Patriot. ................................................................. 10

            1.    Given Patriot's role in performing management functions for Grande, Plaintiffs properly plead facts establishing Patriot's knowledge of the infringing conduct............................. 10

            2.    Patriot's leadership role with Grande is sufficient to establish material contribution. ..................................... 12

        B.    Plaintiffs Properly Plead That Patriot is Vicariously Liable for Infringement. .......................................................... 14

            1.    Plaintiffs plead that Patriot has the right and ability to supervise the infringing activity.................................. 14

            2.    Plaintiffs more than adequately plead that Patriot had a direct financial interest in allowing known repeat infringers continued access to Grande's internet service. ........................... 16

    III.    PATRIOT'S OTHER DISMISSAL ARGUMENTS SIMILARLY ARE UNAVAILING........... 19

    IV.    PLAINTIFFS WOULD PLEAD ADDITIONAL FACTS AS TO PATRIOT'S CONDUCT AND LIABILITY IF THE COURT FINDS THAT NECESSARY. ..................... 19

CONCLUSION.................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ...................................................................... 15

*A&M Records, Inc. v. Napster, Inc.*,
    284 F.3d 1091 (9th Cir. 2002) ...................................................................... 15

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999) ........................................................................ 10

*Arista Records LLC v. Lime Grp. LLC*,
    784 F. Supp. 2d 398 (S.D.N.Y. 2011).............................................................. 8

*Arista Records LLC v. Usenet.com, Inc.*,
    633 F. Supp. 2d 124 (S.D.N.Y. 2009)............................................................ 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................ 4

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    149 F. Supp. 3d 634 (E.D. Va. 2015) ...................................... 10, 12, 15, 18

*Broad. Music, Inc. v. Armstrong*,
    No. EP-13-CV-32-KC, 2014 WL 2440556 (W.D. Tex. May 30, 2014) ................. 5, 16

*Broad. Music, Inc. v. Hobi, Inc.*,
    20 F.3d 1171 (5th Cir. 1994) ........................................................................ 16

*Capitol Records, Inc. v. MP3tunes, LLC*,
    48 F. Supp. 3d 703 (S.D.N.Y. 2014).......................................................... 7, 8

*Capitol Records, Inc. v. Wings Digital Corp.*,
    218 F. Supp. 2d 280 (E.D.N.Y. 2002) ............................................................ 9

*City of Pontiac Gen. Employees' Ret. Sys. v. Dell Inc.*,
    No. A-15-CV-374-LY, 2016 WL 6075540 (W.D. Tex. Sept. 16, 2016)..................... 4, 5

*Crabshaw Music v. K-Bob's of El Paso, Inc.*,
    744 F. Supp. 763 (W.D. Tex. 1990)....................................................... 12, 14, 16

*David v. CBS Interactive Inc.*,
    No. CV 11-9437 DSF (JCX), 2012 WL 12884914 (C.D. Cal. July 13, 2012).................. 6

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ...................................................................... 17

*EMI Apr. Music Inc. v. Know Grp., LLC*,
  No. 3:05-CV-1870-M, 2006 WL 3203276 (N.D. Tex. Nov. 6, 2006).............................. 16

*EMI April Music, Inc. v. Jet Rumeurs, Inc.*,
  632 F. Supp. 2d 619 (N. D. Tex. 2008) .................................................................... 14, 16

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
  840 F.3d 69 (2d Cir. 2016)........................................................................................ 7, 8

*Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*,
  712 F. Supp. 1257 (S.D. Tex.1989) ......................................................................... 5, 16

*Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.,*
  915 F.2d 1567 (5th Cir. 1990) ...................................................................................... 5

*Fonovisa, Inc. v. Cherry Auction, Inc.,*
  76 F.3d 259 (9th Cir. 1996) .................................................................................. 16, 17

*Goldstein v. Metro. Reg'l Info. Sys., Inc.*,
  No. CV TDC-15-2400, 2016 WL 4257457 (D. Md. Aug. 11, 2016) .............................. 10

*Hishon v. King & Spalding*,
  467 U.S. 69 (1984)........................................................................................................ 5

*In re Aimster Copyright Litig.*,
  334 F.3d 643 (7th Cir. 2003) ...................................................................................... 11

*In re Napster Inc. Copyright Litig.*,
  No. 3:00-md-1369, 2001 WL 36593841 (N.D. Cal. July 9, 2001)................................... 6

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
  No. 3:16-CV-1651-L, 2016 WL 4944370 (N.D. Tex. Sept. 16, 2016)........................... 10

*Metered Music, Inc. v. Powell Meredith Commc'ns Co.*,
  No. Civ. A. 1:04–CV–015–C, 2005 WL 525224 (N.D. Tex. Mar. 2, 2005) ................... 16

*Perfect 10, Inc. v. Amazon.com, Inc.,*
  508 F.3d 1146 (9th Cir. 2007) .............................................................................. 13, 15

*Perfect 10, Inc. v. Giganews, Inc.,*
  847 F.3d 657 (9th Cir. 2017) ...................................................................................... 17

*Playboy Enterprises, Inc. v. Webbworld*, Inc.,
  968 F. Supp. 1171 (N.D. Tex. 1997) ............................................................................ 18

*Red Giant, Inc. v. Molzan, Inc.*,
  No. H–07–2657, 2009 WL 2242349 (S.D. Tex. July 24, 2009)..................................... 16

*Robertson v. EMI Christian Music Grp., Inc.*,
   No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017) ...................................................... 7

*Spitzberg v. Hous. Am. Energy Corp.*,
   758 F.3d 676 (5th Cir. 2014) ............................................................................................ 4

*Test Masters Educ. Servs., Inc. v. Singh*,
   428 F.3d 559 (5th Cir. 2005) ............................................................................................ 4

*Trustees of the Texas Carpenters & Millwrights Health & Welfare Fund v. Delancey*,
   No. A-10-CA-537 LY, 2010 WL 4918737 (W.D. Tex. Nov. 23, 2010) ........................... 5

*UMG Recordings, Inc. v. Bertelsmann AG*,
   222 F.R.D. 408 (N.D. Cal. 2004) ............................................................................. 7, 8, 9

**Other Authorities**

Benjamin H. Glatstein, *Tertiary Copyright Liability*,
   71 U. Chi. L. Rev. 1605, 1612–13 (2004) ...................................................................... 11

## INTRODUCTION

Defendant Patriot Media Consulting, LLC ("Patriot") is wrong on the law governing Plaintiffs' claims, and on the facts that Plaintiffs have pleaded to support those claims.  Plaintiffs more than adequately plead that Patriot actively directs and manages Grande Communications Networks, LLC ("Grande"), and in particular creates and implements the policies and practices that give rise to Defendants' secondary liability for infringing Plaintiffs' copyrighted works. Patriot, therefore, is jointly and severally liable with Grande under well-settled copyright law. Patriot's arguments in its Motion to Dismiss (Dkt. No. 29) ("Mot.") are without merit.

*First*, Plaintiffs do not plead an impermissible claim for "tertiary" infringement liability against Patriot, as Patriot wrongly asserts.  Rather, Plaintiffs more than plausibly plead claims against Patriot based on established principles that all participants in secondary infringement are jointly and severally liable.  The two cases that Patriot musters as sparse support for its argument are readily distinguishable on their facts, and have been rejected by more relevant, and reasoned, decisions that confirm the legal validity of Plaintiffs' claim against Patriot.

*Second*, Plaintiffs plead more than sufficient facts that Patriot both knowingly and materially contributes to, and is vicariously liable for, the infringement of Grande's users.  Patriot manages Grande, directs its policies and practices regarding responses – or lack of responses – to notices of infringing activity, and benefits from what Defendants have admitted is their wholesale and knowing disregard of the infringement notices that Rightscorp sent to Grande.  Plaintiffs were not required to plead more; their allegations state a claim against Patriot for secondary infringement under contributory and vicarious liability theories.

For these reasons, as more fully explained below, as well as those set forth in Plaintiffs' Opposition to Grande's Motion to Dismiss (which Plaintiffs incorporate by reference), the Court should deny Patriot's motion to dismiss in its entirety.

## FACTUAL BACKGROUND

Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country.  Apr. 21, 2017 Plaintiffs' Original Complaint (Dkt. No. 1) ("Compl.") ¶ 2.  Defendant Grande is an internet service provider based in Texas; Patriot provides management services to Grande.  *Id.* ¶ 3.

The crux of Plaintiffs' case against Grande and Patriot is that Defendants allowed subscribers of Grande's internet service free rein to infringe Plaintiffs' copyrighted music on a massive scale, using BitTorrent peer-to-peer file sharing networks, despite receiving numerous notices of those subscribers' infringement.  *Id.* ¶ 4.  Plaintiffs allege that "neither Grande nor its management company Patriot has taken any meaningful action to discourage this continuing theft, let alone suspend or terminate subscribers who repeatedly commit copyright infringement through its network, as required by law … even where Defendants have specific and actual knowledge of those subscribers' blatant, repeat infringement."  *Id.*  Defendants profit greatly from their continued tolerance of repeat infringers using Grande's service, through significant revenue from its many infringing subscribers.  *Id.* ¶ 5.  In sum:

> Defendants' effective acquiescence in this wholesale violation of Plaintiffs' rights, coupled with their failure to adopt and reasonably implement a policy to stop repeat infringers, excludes Defendants from the safe harbor protections of the Digital Millennium Copyright Act ("DMCA").  As a result, Defendants' knowledge of repeat infringements by identified subscribers occurring on Grande's service, along with their material contribution to, participation in, enablement of, and profiting from such infringement, renders Defendants liable for contributory and vicarious copyright infringement, and inducement of copyright infringement.

2

*Id.* Given the nature of Plaintiffs' claims, Patriot's presence and liability as a Defendant is wholly appropriate and warranted. Patriot "provid[es] executive and general counsel services to Grande at and through its corporate headquarters." Compl. ¶ 10. "Upon information and belief, during the relevant period, Patriot was responsible for management of Grande, including performing executive, legal, and compliance responsibilities." *Id.* ¶ 75.

By performing these management services for Grande, Patriot, like Grande itself, knew of, directed, and joined in, the action and inaction that gives rise to both Defendants' infringement liability. Compl. ¶ 55. Like Grande, Patriot "has actual and ongoing specific knowledge of the[] repeat infringements [Plaintiffs identify in their Complaint], including as a result of Rightscorp's notifications." *Id.* ¶ 50. Defendants "cannot have any meaningful, effective repeat infringer policy, let alone one that is reasonably implemented as required by the DMCA, if [Grande] and its management services provider, Patriot, purposefully ignore notice of repeat infringers sent from copyright owners (through Rightscorp), who are tracking the repeat infringers on the Grande network and providing Defendants with actual knowledge of those repeat infringers on a daily basis." *Id.* ¶ 52. And, as Plaintiffs plead, Patriot, like Grande, profits from the infringement: "[b]y ignoring the repeat infringement notifications and refusing to take action against repeat infringers, ***Defendants*** … continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth." *Id.* ¶ 53.[1]

While these allegations must be accepted as true for purposes here, in fact Defendants ***have admitted many of them already***. In its motion, Grande admitted that it does not "monitor all of the activity on its network to identify potentially infringing activity," does not "identify subscribers who use these [BitTorrent] programs to engage in infringing activities," and does not "devote the

---

[1] Emphasis added throughout unless otherwise indicated.

time and resources required to meaningfully investigate" the infringement notices that Plaintiffs, through Rightscorp, has sent to Defendants.  Grande Mot. to Dismiss (Dkt. No. 28) at 1, 2, 3-4.

These admissions confirm Patriot's liability.  "Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices that provide repeat infringers with continued internet service through Grande, without consequence." *Id.* ¶ 55.  Plaintiffs plead that "Patriot has the right and ability to supervise and control the infringing activities that occur using the Grande service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights" but "has refused to take any meaningful action to prevent the widespread infringement by Grande's subscribers." *Id.* ¶ 80.

## LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) 'are viewed with disfavor and are rarely granted.'"  *City of Pontiac Gen. Employees' Ret. Sys. v. Dell Inc.*, No. A-15-CV-374-LY, 2016 WL 6075540, at *2 (W.D. Tex. Sept. 16, 2016) (Yeakel, J.) (denying motion to dismiss) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).  "This court 'must assess whether the complaint contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Spitzberg v. Hous. Am. Energy Corp.*, 758 F.3d 676, 683 (5th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).  While a plaintiff must plead specific facts, rather than conclusory allegations, "the issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support its claims."  *Id.* (citations omitted). "[T]he court must also draw all reasonable inferences in the plaintiff's favor."  *Id.*  And "[t]he Fifth Circuit has consistently held that a court may not go outside of a plaintiff's complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss."  *Trustees of the Texas Carpenters*

*& Millwrights Health & Welfare Fund v. Delancey*, No. A-10-CA-537 LY, 2010 WL 4918737, at *2 (W.D. Tex. Nov. 23, 2010) (Austin, M.J.).   As the Fifth Circuit has explained, this "strict standard of review may be summarized as follows: . . . whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief." *Id.*   "Thus, this court may dismiss for failure to state a claim only if the court can determine with certainty that the plaintiff cannot prove any set of facts that would allow relief under the allegations in the complaint." *City of Pontiac Gen. Employees' Ret. Sys.*, 2016 WL 6075540, at *2 (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

As explained below, Plaintiffs' allegations more than plausibly plead a claim against Patriot for secondary copyright infringement under contributory and vicarious liability theories.

## ARGUMENT

### I.   PLAINTIFFS DO NOT SEEK TO IMPOSE "TERTIARY" LIABILITY ON PATRIOT.

Patriot's lead argument is that the "[c]omplaint purports to assert what courts have rejected as an impermissible 'tertiary theory' of liability."   Mot. at 3.   But Patriot's argument mischaracterizes Plaintiffs' pleading and the applicable law.   Plaintiffs do not allege another layer of causation or relationship that somehow distances Patriot from the infringing conduct giving rise to secondary liability.   Rather, Patriot's active involvement with and direction of the wrongful activity renders it liable along with Grande, under well-established law that "'[a]ll participants in copyright infringement are jointly and severally liable as tortfeasors.'"   *Broad. Music, Inc. v. Armstrong*, No. EP-13-CV-32-KC, 2014 WL 2440556, at *8 (W.D. Tex. May 30, 2014) (quoting *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1262 (S.D. Tex. 1989) (citations omitted), *aff'd* 915 F.2d 1567 (5th Cir. 1990)).

The only two cases Patriot cites to support its claim that Plaintiffs impermissibly allege "tertiary liability" – a single district court decision in the sprawling *Napster* litigation, *In re Napster Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841 (N.D. Cal. July 9, 2001), and *David v. CBS Interactive Inc.*, No. CV 11-9437 DSF (JCX), 2012 WL 12884914 (C.D. Cal. July 13, 2012) – both involve very different facts from those here, and are at odds with more relevant, and persuasive, case law that supports secondary liability against Patriot.

***First***, the facts in *Napster* and *David*, which go almost entirely unexamined in Patriot's motion, demonstrate why those cases are inapposite.  The *Napster* decision involved claims that individual investors / owners of Napster were themselves liable for Napster's infringing activity. 2001 WL 36593841, at *1.  Analyzing both vicarious and contributory liability theories, the Court found that the plaintiffs simply had not alleged any conduct – either affirmative activity or a failure to act when required – that supported imposing liability on the individual defendants, whether such liability was described as traditional secondary liability or cast as "tertiary" liability.  *Id.* at **2-4.

The plaintiffs in *David* alleged that the website CNET made available for download a variety of different types of software, including peer-to-peer file sharing software (such as BitTorrent).  The Court characterized this allegation, standing alone, as tantamount to a "tertiary" liability assertion, which failed to state a claim.  2012 WL 12884914, at *4.  However, Patriot leaves unmentioned that *David* concluded CNET ***could be*** liable for copyright infringement under an inducement theory, because Plaintiffs also alleged that CNET offered explanations and evaluations of how software such as BitTorrent operated and could be used to share music files illegally.  *Id.* at *5.

At most, these two decisions stand for the unremarkable proposition that a passive third-party who has not itself taken any action contributing to infringement, is not directing or

controlling the infringing activity, and has no other duty to act which it has failed to meet, cannot be held secondarily liable for copyright infringement. But that is a far cry from Plaintiffs' allegations against Patriot. Patriot affirmatively performs executive, general counsel, and management functions for Grande, and thus is ***directly involved*** in the actions and inactions of Grande that give rise to infringement activity. Patriot formulates and implements the policies and practices as to how Grande responds, or fails to respond, to notice of infringing activity by its internet service subscribers. *See supra* Factual Background. Patriot is at the center of this suit.

***Second***, more relevant and persuasive decisions have rejected the "tertiary liability" label that defendants have tried to slap on garden-variety secondary infringement claims. Plaintiffs' suit against Patriot is far more similar to these cases, such as *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) and *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 713 (S.D.N.Y. 2014),[2] where the courts denied defendants' attempts to recast proper claims of secondary infringement as so-called "tertiary" liability.

*Bertelsmann*, decided after the *Napster* decision Patriot cites, involved claims against the upstream owner of the Napster company. The defendants there, like Patriot here, argued that the plaintiffs supposedly sought impermissible tertiary liability: "[a]ccording to defendants, plaintiffs thus state claims for what this court has termed 'tertiary infringement'—vicarious or contributory assistance to a vicarious or contributory infringer, here Napster—and towards which this court has previously expressed disfavor." 222 F.R.D. at 412. But the *Bertelsmann* court soundly rejected that argument:

---

[2] *aff'd in part, rev'd in part and remanded sub nom. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 840 F.3d 69 (2d Cir. 2016), *withdrawn from bound volume, and aff'd in part, rev'd in part and remanded sub nom. EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016), *cert. denied sub nom. Robertson v. EMI Christian Music Grp., Inc.*, No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017).

> ***Defendants have not properly characterized plaintiffs' complaints.*** Rather than alleging that defendants merely supplied Napster with necessary funding (serving as a "but for" cause of Napster's subsequent activities)—or accusing defendants of contributory and vicarious infringement in purely conclusory fashion—***plaintiffs have specifically accused defendants of assuming control over Napster's operations and directing the infringing activities that gave rise to the original Napster litigation.***

*Id.* The court concluded that "[u]nder well-established Ninth Circuit law, such allegations state a viable claim for relief under theories of both contributory and vicarious liability." *Id.* at 414.

*MP3tunes* further confirms that Plaintiffs' liability claims against Patriot are actionable. There, the district court granted a number of favorable rulings for the defendants, a file-sharing website and its individual owner and operator, which the Second Circuit subsequently reversed. 844 F.3d at 86. But even the district court, receptive as it was to many of the defendants' arguments, rejected the individual's assertion that "there is no legal basis for 'tertiary liability'— that is, Robertson's secondary liability for MP3tunes' secondary liability," concluding that "***an individual defendant can be held personally liable for claims of direct and secondary liability of a corporation***." (emphasis added except for "and" which is in original). *MP3tunes*, 48 F. Supp. 3d at 713. The district court explicitly distinguished the very same *Napster* decision that Patriot cites, finding that "more recent and persuasive authorities" rejected the crabbed reading of secondary liability that the individual defendant urged. *Id.* The Second Circuit reviewed, and affirmed, the district court judgment in this regard. 844 F.3d at 86.

The *MP3tunes* court relied on *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011), another precedent that supports Plaintiffs' case against Patriot. *Arista Records*, examining numerous cases, observed, "[i]t is well established that '[a]ll persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers.'" *Id.* at 437 (citing cases). The *Arista Records* court went on to state that "***[t]hese principles apply equally to claims of direct infringement and claims based on***

*secondary liability.*" *Id.* at 438 (citing *Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 284-85 (E.D.N.Y. 2002) (finding that CEO of defendant corporation could be individually liable for contributory and vicarious infringement committed by corporation)).

Patriot is liable, just like the supposedly "tertiary" defendants in *Bertelsmann*, *MP3tunes*, and *Arista Records*, under traditional secondary infringement law.  Plaintiffs here have asserted that Patriot exercises "control over [Grande's] operations and direct[s] the infringing activities." *Bertelsmann*, 222 F.R.D. at 412.  Patriot performs the key functions that dictate how Grande conducts its business with regard to the copyright-infringing activities of its subscribers. *See supra* Factual Background.  These persuasive authorities, which Patriot's motion elides, demonstrate why Patriot's tertiary liability argument is without merit,[3] and are consistent with authorities from courts in the Fifth Circuit (and elsewhere) that broadly recognize liability for all participants in secondary copyright infringement, as discussed *infra*.

## II.   PLAINTIFFS MORE THAN ADEQUATELY PLEAD A CLAIM AGAINST PATRIOT FOR SECONDARY COPYRIGHT INFRINGEMENT.

Tacitly admitting that its "tertiary liability" argument is a nonstarter, Patriot proceeds to take on Plaintiffs' claims under the traditional secondary liability infringement rubric.  But these arguments fare no better.  Plaintiffs more than sufficiently plead both contributory and vicarious infringement liability against Patriot.

---

[3] Even if the Court accepts Patriot's "tertiary liability" construction of Plaintiffs' claims, that theory would still support liability.  "While the Napster court rejected the tertiary theory of liability, other copyright cases provide support for the extension of copyright liability to tertiary parties, if only by implication. Indeed, the seminal contributory copyright liability case, *Gershwin Publishing Corp v Columbia Artists Management, Inc,* implies that the degree of separation between primary infringers and liable parties is not a material factor in the analysis." Benjamin H. Glatstein, *Tertiary Copyright Liability*, 71 U. Chi. L. Rev. 1605, 1612–13 (2004).

**A.**     **Plaintiffs Plead An Actionable Contributory Infringement Claim Against Patriot.**

"A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another." *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-CV-1651-L, 2016 WL 4944370, at *11 (N.D. Tex. Sept. 16, 2016) (*quoting Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). This requires only that a plaintiff plead a defendant's (1) knowledge of the infringement, and (2) material contribution to the infringement.[4] Plaintiffs plausibly plead both.

**1.**     **Given Patriot's role in performing management functions for Grande, Plaintiffs properly plead facts establishing Patriot's knowledge of the infringing conduct.**

Numerous courts have held that a copyright plaintiff can establish the knowledge element for contributory infringement by proving a defendant's ***actual*** or ***constructive*** knowledge, and that "willful blindness" satisfies the knowledge requirement. *See, e.g., BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 671 (E.D. Va. 2015) (ISP could be secondarily liable for its users' infringing conduct; "[t]he knowledge requirement is met by a showing of actual or constructive knowledge or by evidence that a defendant took deliberate actions to willfully blind itself to specific infringing activity."); *see also Goldstein v. Metro. Reg'l Info. Sys., Inc.*, No. CV TDC-15-2400, 2016 WL 4257457, at *4 (D. Md. Aug. 11, 2016) (denying motion to dismiss) ("To state a viable claim for contributory copyright infringement, a plaintiff must allege facts that, taken as true, establish that the defendant knew or had reason to know of the infringing activity and either induced, caused, or materially contributed to that infringing activity."); *In re Aimster*

---

[4] Patriot argues in passing that "material contribution" is too lenient a standard under *Grokster*. Mot. at 10. But Patriot's own cited cases, post-dating *Grokster*, all discuss and analyze contributory infringement under the "material contribution" rubric, as Patriot's discussion of those cases shows. *Id.* Plaintiffs incorporate by reference their arguments against Patriot's and Grande's misplaced *Grokster* arguments, set forth in Plaintiffs' Opposition to Grande's Motion to Dismiss.

*Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003) ("Willful blindness is knowledge, in copyright law as it is in the law generally.") (internal citations omitted).

Patriot only addresses the question of its actual knowledge, *see* Mot. at 9, ignoring that constructive knowledge or willful blindness suffices for contributory liability. Regardless, Plaintiffs satisfy all three. Plaintiffs allege that Rightscorp sent Grande notices of infringing activity by thousands of Grande subscribers, Compl. ¶¶ 48-49, and "***through its role in providing management services to Grande, Patriot, too, has actual and ongoing specific knowledge of these repeat infringements, including as a result of Rightscorp's notifications***," *id.* ¶ 50. Further, "[Grande] and its management services provider, ***Patriot***, purposefully ignore notice of repeat infringers sent from copyright owners (through Rightscorp), who are tracking the repeat infringers on the Grande network and ***providing Defendants*** with actual knowledge of those repeat infringers on a daily basis." *Id.* ¶ 52. These allegations belie Patriot's assertion, Mot. at 9, that "Plaintiffs allege no facts showing that Patriot had any knowledge whatsoever of Rightscorp's notices."

But putting aside that Plaintiffs allege Patriot's actual knowledge, Plaintiffs also have pleaded that Patriot had constructive knowledge of, and was willfully blind to, the Rightscorp infringement notices and the infringing conduct they identified. *See* Compl. ¶ 79 (pleading Patriot's "constructive knowledge"); *see also id.* ¶ 52 ("[Grande] and its management services provider, Patriot, purposefully ignore notice of repeat infringers sent from copyright owners (through Rightscorp) …."). Given Patriot's role in providing executive management, general counsel, and compliance functions for Grande, there can be no real doubt that Patriot either knew, or should have known but "purposefully ignored," notice of infringing conduct. In *Crabshaw Music v. K-Bob's of El Paso, Inc.*, the Court rejected an individual executive's arguments against contributory liability due to a lack of knowledge similar to those Patriot makes. 744 F. Supp. 763,

768 (W.D. Tex. 1990).  The Court reasoned that "even if [the individual defendant] did not actually view the ASCAP [infringement notice] letters sent to his office, such letters were mailed to his business address putting him on notice of the matter.  Further, his manager … was aware of ASCAP's grievances and therefore this Court shall not absolve [the individual defendant] on notice grounds."  *Id.*

The Court should similarly sustain Plaintiffs' allegations of Patriot's constructive knowledge or willful blindness here.  It simply is not plausible, as Patriot asserts, that it neither knew, nor should have known, of the infringing activity that Rightscorp identified.  Patriot's direction and management of Grande, in the specific areas relevant to this suit (executive, legal, and compliance functions, and in particular the responsibility for formulating and implementing Grande's policies and practices with regard to subscribers' infringing activity, *see* Compl. ¶¶ 10, 55-56, 75-77), ensured such knowledge.  And Patriot could not, ostrich-like, bury its head in the sand (as it and Grande appear to have done, by their own admission), by simply disregarding the Rightscorp notices; willfully blinding themselves to the users' infringing conduct in no way shields Patriot from secondary infringement liability.  *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 671.

### 2. Patriot's leadership role with Grande is sufficient to establish material contribution.

Plaintiffs also more than satisfy the material contribution element.  Patriot was providing management services – in other words, providing executives to direct Grande's business in key executive, legal, and compliance functions.  "Courts have traditionally held the corporate officer will be liable as a joint tortfeasor with the corporation in a copyright infringement case where the officer was the dominant influence in the corporation, ***and determined the policies which resulted in the infringement***."  *Crabshaw Music*, 744 F. Supp. at 767.  That is precisely what Patriot has done here to contribute to the infringement:  Patriot has "determined the policies which resulted in

the infringement" by knowingly allowing repeat infringers to have continued access to Grande's internet service without terminating them or taking other measures to combat their unlawful acts. Compl. ¶¶ 52-53, 55.  What is more, it is well-settled that internet services that enable infringement materially contribute for secondary liability purposes.  In *Perfect 10, Inc. v. Amazon.com, Inc.*, for example, a case on which Patriot relies, the Ninth Circuit rejected the district court's conclusion that "Google did not materially contribute to infringing conduct because it did not undertake any substantial promotional or advertising efforts to encourage visits to infringing websites, nor provide a significant revenue stream to the infringing websites."  508 F.3d 1146, 1172 (9th Cir. 2007).  Describing "[t]his analysis [a]s erroneous" the court of appeals found that "[t]here is no dispute that Google substantially assists websites to distribute their infringing copies to a worldwide market and assists a worldwide audience of users to access infringing materials." Likewise, Patriot substantially assists Grande customers who are known repeat infringers to access infringing materials, by developing and administering the policies and practices that allow such customers unfettered and continued access to Grande's service, even in the wake of Grande and Patriot receiving notices from Rightscorp of those users' wrongful conduct.

Trying in vain to dispute its material contribution to its subscribers' unlawful infringement, Patriot simply contradicts the allegations in Plaintiffs' complaint, revealing the weakness of its argument.  Patriot claims that "Plaintiffs do not allege any specific facts regarding the substance of any of the alleged 'policies, procedures, and practices' vaguely attributed to Patriot," Mot. at 11, but that is not so.  Plaintiffs plead that "Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices *that provide repeat infringers with continued internet service through Grande, without consequence*." Compl. ¶ 55.  Likewise, Patriot asserts "nor do Plaintiffs claim that Patriot actually provided or

operated the internet service infrastructure allegedly used by Grande's subscribers to commit acts of infringement," Mot. at 11, but ignores what Plaintiffs actually plead: "[i]n addition to providing the site and facilities for the infringement, *Defendants* materially contribute to subscribers' direct infringement by providing continued access to account holders they know to be repeat infringers," Compl. ¶ 56.

**B.   Plaintiffs Properly Plead That Patriot is Vicariously Liable for Infringement.**

The parties agree on the two elements to establish a claim for vicarious liability: "one may be held vicariously liable if he has the right and ability to supervise the infringing activity and also has a direct financial interest in such activities." *Crabshaw Music*, 744 F. Supp. at 767-68. *See also BMI*, 2014 WL 2440556, at *8 ("Generally speaking, 'liability for copyright infringement falls not only on the person who actually performed the copyright[ed] music, but also on those who: (1) had the right and ability to control the infringing activity; and (2) had a direct financial interest in that activity.'") (quoting *EMI April Music, Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 623 (N. D. Tex. 2008)).  Plaintiffs' allegations easily meet this standard.

**1.   Plaintiffs plead that Patriot has the right and ability to supervise the infringing activity.**

Plaintiffs plead that Patriot controls and directs Grande's activities, and thus has the right and ability to stop the infringing conduct of Grande's subscribers.  Patriot asserts that Plaintiffs allege Patriot's control in merely conclusory fashion, Mot. at 7 (quoting Compl. ¶ 80), but once again, Patriot ignores the facts that Plaintiffs plead:

- Patriot runs the key executive management functions for Grande, Compl. ¶¶ 10, 55, 75;

- Patriot "formulat[es] and implement[s] the business policies, procedures, and practices that provide repeat infringers with continued internet service through Grande, without consequence", *id.* ¶ 55;

14

- "[d]espite its knowledge that infringing material is made available to Grande's subscribers by means of the Grande service, Patriot has failed to take reasonable steps to minimize the infringing capabilities of the service," *id.* ¶ 78; and

- "neither Grande nor its management company Patriot has taken any meaningful action to … suspend or terminate subscribers who repeatedly commit copyright infringement through [Grande's] network," *id.* ¶ 5.

Patriot's own authority, *Perfect 10 Inc.*, held that "vicarious liability is based on the defendant's failure to cause a third party to stop its directly infringing activities." 508 F.3d at 1175. *See* Mot. at 8. The Ninth Circuit also has held that "[t]he ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).[5] *See also Usenet.com, Inc.*, 633 F. Supp. 2d at 157 (quoting *Napster*). And in *Cox*, a case brought by music copyright owners against another ISP for conduct similar to Grande's and Patriot's, the court observed that "Cox also provides a crucial service to the infringements alleged in this case, which gives Cox the practical ability to stop or limit infringement." *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 675. The court concluded that "[i]t is therefore a reasonable inference that the result of an internet service provider exercising its ability to suspend or terminate account holders stops or limits infringement." *Id.* at 674. That is precisely what Plaintiffs have alleged. Rather than terminating infringing Grande subscribers, Patriot allowed known repeat infringers to continue to use the internet service, and took no steps to minimize those repeat infringers' ability to use the service for their infringing activity. This action, and inaction, gives rise to Patriot's liability.

In analogous situations, numerous courts in the Fifth Circuit have imposed vicarious liability on defendants who had control over the day-to-day activities of the infringing entity, finding such conduct shows the existence of control for vicarious liability purposes. *See*

---

[5] *As amended* (Apr. 3, 2001), *aff'd sub nom.* 284 F.3d 1091 (9th Cir. 2002).

*Armstrong*, 2014 WL 2440556, at *8 (individual owner and manager who ran business was vicariously liable); *Jet Rumeurs, Inc.*, 632 F. Supp. at 623 (upstream company and individual manager that owned and operated infringing entity were vicariously liable); *Crabshaw Music*, 744 F. Supp. at 767 (individual defendant retained the right and ability to supervise restaurants and thus was vicariously liable); *Fermata*, 712 F. Supp. at 1262 (individual defendant was in charge of the day-today operations, including hiring and firing of staff, and thus was vicariously liable); *Metered Music, Inc. v. Powell Meredith Commc'ns Co.*, No. Civ. A. 1:04–CV–015–C, 2005 WL 525224 (N.D. Tex. Mar. 2, 2005) (similar); *Red Giant, Inc. v. Molzan, Inc.*, No. H–07–2657, 2009 WL 2242349, at *6 (S.D. Tex. July 24, 2009) (similar).  In sum, Plaintiffs plead Patriot's "right and ability to supervise the infringing activity."

### 2. Plaintiffs more than adequately plead that Patriot had a direct financial interest in allowing known repeat infringers continued access to Grande's internet service.

The direct financial interest element for vicarious liability is a low bar to clear.  Courts have held that a defendant need not actually make a profit derived from the unlawful conduct.  *See Broad. Music, Inc. v. Hobi, Inc.*, 20 F.3d 1171 (5th Cir. 1994).  Rather, merely an "entitle[ment] to participate in the profits of the business" suffices.  *EMI Apr. Music Inc. v. Know Grp., LLC*, No. 3:05-CV-1870-M, 2006 WL 3203276, at *3 (N.D. Tex. Nov. 6, 2006).

Further, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit rejected the district court's conclusion that the financial benefit must be "directly tied to the sale of particular infringing items."  76 F.3d 259, 263 (9th Cir. 1996).  The court of appeals found that "[t]he facts alleged by Fonovisa, however, reflect that the defendants reap substantial financial benefits from admission fees, concession stand sales and parking fees, all of which flow directly from customers who want to buy the counterfeit recordings at bargain basement prices.  The plaintiff has sufficiently alleged direct financial benefit."  Plaintiffs make similar, sufficient, allegations here:

Grande and Patriot "reap[] the substantial financial benefits in the form of subscription fees and fees for higher bandwidth." Compl. ¶ 53; *see also id.* ¶ 57 ("subscribers who frequently upload copyrighted content often pay higher monthly premiums for higher bandwidth").

*Fonovisa* also emphasized "the continuing line of cases, starting with the dance hall cases, imposing vicarious liability on the operator of a business where infringing performances enhance the attractiveness of the venue to potential customers." 76 F.3d at 263. Plaintiffs, too, allege that Grande's internet service is a "draw" for its infringing customers:

- "***Grande touts an internet service that provides its subscribers 'with an online experience that delivers unlimited access to a wealth of resources'*** – 'with speeds up to 1 GB' -- which Grande advertises as 'the fastest Internet speeds in town to support your entire family online at once.' ***It makes these representations while knowing that many of its subscribers use its service for copyright infringement.***" Compl. ¶ 58;

- "Patriot has the right and ability to supervise and control the infringing activities that occur using the Grande service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights***. Indeed, the availability of music – and particularly Plaintiffs' music – acts as a powerful draw for subscribers to Grande's service who use that service to download infringing music files using BitTorrent protocols.***" *Id.* ¶ 80.

And while Plaintiffs describe Patriot and Grande's tolerance of repeat infringers as a "***powerful*** draw" for infringing users, "[t]here is no requirement that the draw be 'substantial.'" *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Instead, "[t]he essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Id.* (emphasis in original).[6] *See also Arista Records*

---

[6] A recent Ninth Circuit case, *Perfect 10, Inc. v. Giganews, Inc.*, held, contrary to a long line of precedent, that to establish direct financial benefit, plaintiffs must show that at least some of their own works specifically attracted infringing users to a defendant's service. 847 F.3d 657, 674 (9th Cir. 2017). Even were that the law in this Circuit, which it is not, Plaintiffs' complaint satisfies this criterion. Plaintiffs specifically plead that their own works are a powerful draw. Compl. ¶ 80. Plaintiffs comprise the leading record labels in the music industry, *id.* ¶ 2, and their copyrighted recordings (including the infringed works listed in Exhibit A to the Complaint) are among some

*LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) ("the law is clear that to constitute a direct financial benefit, the 'draw' of infringement need not be the primary, or even a significant, draw—rather, it need only be 'a' draw."). Texas cases have followed the reasoning of case such as *Fonovisa* and *Robertson* in concluding that where infringement made a service more attractive for the defendants' customers, plaintiffs have pleaded the financial interest element for vicarious liability. *See, e.g.*, *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1177 (N.D. Tex. 1997) (citing *Fonovisa* and finding that infringing content "enhanced the attractiveness of the [defendants'] website to potential customers."). And in *Cox*, the district court found that "[a] reasonable trier of fact could conclude that some percentage of Cox customers were drawn to Cox's internet service at least in part to download music, including BMG's copyrighted works, using BitTorrent." *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 676. In short, Plaintiffs' allegations establish the causal relationship between the direct infringement and the benefits that Patriot and Grande receive, through their policies that knowingly allow repeat infringing customers to remain as fee-paying subscribers.

Attempting to salvage its argument against direct financial benefit, Patriot argues that Plaintiffs only plead that element as to Grande. Mot. at 6-7. But as it does throughout its motion, Patriot mischaracterizes Plaintiffs' complaint. Plaintiffs allege expressly that "[b]y ignoring the repeat infringement notifications and refusing to take action against repeat infringers, ***Defendants*** have made an affirmative decision to contribute to known copyright infringement and to ***continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth.***"

---

of the most popular songs, both currently and of all time, *id.* ¶¶ 34, 37. It is more than plausible that repeat infringing users are attracted to Grande's internet service for access to Plaintiffs' vast catalog of music, including the works in suit here.

Compl. ¶ 53.  Under the relevant case law, that allegation suffices for Plaintiffs to plead the financial benefit element for Patriot's vicarious infringement liability.

## III.     PATRIOT'S OTHER DISMISSAL ARGUMENTS SIMILARLY ARE UNAVAILING.

Patriot's other arguments for dismissal lack any merit.

- Plaintiffs more than plausibly plead numerous underlying instances of direct infringement by Grande customers.  Defendants mischaracterize Plaintiffs' pleadings as to Rightscorp's infringement detection and notices.

- Defendants' *Sony-Betamax* and *Grokster* arguments are wholly misplaced.  The internet service that Grande offered is not a "staple article of commerce," Plaintiffs are not challenging its "design" nor imputing intent based on that design, and Grande and Patriot have a continuing relationship with their customers.  All of these factors render Defendants' curious argument entirely inapplicable to this case.

Plaintiffs incorporate by reference the arguments and authorities set forth in their Opposition to Grande's Motion to Dismiss.

## IV.     PLAINTIFFS CAN PLEAD ADDITIONAL FACTS AS TO PATRIOT'S CONDUCT AND LIABILITY IF THE COURT FINDS THAT NECESSARY.

As explained above, Plaintiffs firmly believe they have pleaded more than sufficient factual allegations to support their claims against Patriot.  In the event the Court disagrees, however, Plaintiffs would amend their complaint (which they have not yet done) to allege additional facts as to Patriot's conduct and liability, including among other things, (1) the identities of specific executives of Grande who themselves are Patriot employees; (2) a description of those executives' responsibilities giving rise to Patriot's liability for the wrongful conduct; (3) a description of the policies and procedures that Patriot formulates and administers; and (4) the fact that Jeff Kramp, the General Counsel and Secretary of Grande who also is a Patriot executive, is identified by

19

Grande as the point of contact for reports of infringement, further underscoring that Patriot is at the center of the wrongful conduct involved in this case.

## CONCLUSION

Plaintiffs more than sufficiently plead their secondary infringement claims against Patriot. Plaintiffs respectfully submit that the Court should deny Patriot's motion in its entirety. In the alternative, the Court should allow Plaintiffs to amend their Complaint to buttress any allegations against Patriot that the Court finds insufficient.

Dated: July 21, 2017                    Respectfully submitted,

                                        By:  */s/ Robert B. Gilmore*
                                        Pat A. Cipollone, P.C. (admitted *pro hac vice*)
                                        Jonathan E. Missner (admitted *pro hac vice*)
                                        Robert B. Gilmore (admitted *pro hac vice*)
                                        Philip J. O'Beirne (admitted *pro hac vice*)
                                        **Stein Mitchell Cipollone Beato & Missner LLP**
                                        1100 Connecticut Avenue, NW Suite 1100
                                        Washington, DC 20036
                                        Telephone: (202) 737-7777
                                        Facsimile: (202) 296-8312
                                        pcipollone@steinmitchell.com
                                        jmissner@steinmitchell.com
                                        rgilmore@steinmitchell.com
                                        pobeirne@steinmitchell.com

                                        Daniel C. Bitting (State Bar No. 02362480)
                                        Paige A. Amstutz (State Bar No. 00796136)
                                        **Scott Douglass & McConnico LLP**
                                        303 Colorado Street, Suite 2400
                                        Austin, TX 78701
                                        Telephone: (512) 495-6300
                                        Facsimile: (512) 495-6399
                                        dbitting@scottdoug.com
                                        pamstutz@scottdoug.com

                                        ***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on July 21, 2017 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting
