UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  1:17-cv-00365 |
| | ) | |
| GRANDE COMMUNICATIONS | ) | **ORAL HEARING REQUESTED** |
| NETWORKS LLC and PATRIOT MEDIA | ) | |
| CONSULTING, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**<u>DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S
REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Plaintiffs' case against Grande is impossible to reconcile with Rule 8 or the Copyright Act. Plaintiffs seek to lower their pleading burden by vaguely asserting <u>thousands</u> of copyrights, where it is beyond dispute that Plaintiffs would be obligated to provide far more concrete factual allegations if only a limited number of copyrights were at issue. Plaintiffs completely fail to connect any cognizable act of direct infringement to a Grande subscriber <u>or</u> to an asserted copyright, and they ignore that direct infringement requires actual distribution of protected material, not merely the act of making a file available for download. There is no legal, factual, or equitable reason why Grande's provision of Internet access, which can be used for a multitude of purposes, the vast majority of which are perfectly legal, should subject it to wide-ranging secondary copyright liability—particularly given that Grande cannot control its subscribers' actions, and does not provide or control the BitTorrent software used for the alleged infringement. Such a result would improperly force Grande and every other ISP to act as a de facto, unpaid enforcement agent of the recording industry.

Plaintiffs also cannot avoid the effect of the Supreme Court's decisions in *Sony* and *Grokster*, which establish that a defendant who provides a product with substantial non-infringing uses cannot be liable for secondary infringement absent culpable intent shown through affirmative acts to promote infringement. Whether Grande provides a product or service, or has an ongoing relationship with its subscribers, is beside the point. Plaintiffs cannot escape the crucial, undisputed facts that Grande has engaged in no affirmative acts to promote infringement and has no control over the BitTorrent service which facilitates the alleged direct infringement.

Finally, Plaintiffs' contention that Grande relies on matters outside the pleadings is simply incorrect. Grande's Motion is based solely on the deficiencies in Plaintiffs' Complaint. Grande provided additional information about the Rightscorp system to illustrate <u>why</u> Plaintiffs'

claims lack a sufficient factual basis—i.e., because Rightscorp is unable to accurately identify acts of copyright infringement by Grande's subscribers.  Grande has no need to resort to extraneous materials to demonstrate that the Court should dismiss Plaintiffs' claims.

For these reasons, and incorporating by reference the Motion to Dismiss and Reply of co-defendant Patriot, the Court should dismiss Plaintiffs' claims against Grande under Rule 12(b)(6) with prejudice.  Plaintiffs do not request leave to amend.

### I.   Plaintiffs have not alleged a single instance of direct infringement.

Plaintiffs do not dispute that they must allege underlying acts of direct copyright infringement in order to state a claim against Grande for secondary infringement.  *See, e.g.*, *Mapp v. UMG Recordings, Inc.*, 208 F. Supp. 3d 776, 794-95 (M.D. La. 2016); *Kryptek Outdoor Grp., LLC v. Salt Armour, Inc.*, No. 1:15-cv-348, 2016 WL 3460774, at *2 (E.D. Tex. Feb. 22, 2016).  Plaintiffs have utterly failed to meet this burden.

First, the Court should reject Plaintiffs' suggestion that their Rule 8 burden is lower because they are alleging infringement of thousands of different copyrights.  If Plaintiffs were alleging secondary infringement of one or ten or twenty copyrights, there is no question that they would be obligated to plead facts which plausibly show direct infringement of each of those copyrights.  There is no reason a different standard should apply here.  Plaintiffs seek to recover damages for infringement of thousands of copyrights—presumably tens of millions of dollars, if not more[1]—and the law therefore obligates them to allege facts which plausibly show direct infringement of each of those copyrights.  Anything less is inconsistent with Rule 8.  *See, e.g.*,

---

[1] Plaintiffs have not provided any computation of their alleged damages in their Initial Disclosures, despite numerous requests that they do so and despite the fact that they are requesting a patently over-aggressive discovery, motion, and trial schedule.

*Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81, 128 (S.D.N.Y. 2015) (direct infringement claims dismissed for failure to allege the specific infringing conduct of each infringer).

Second, Plaintiffs plainly have not met this burden because they have not alleged that any Grande subscriber actually distributed or copied any of their copyrighted works. In their Response, Plaintiffs incorrectly claim to have alleged "that Rightscorp's system recorded actual downloads of infringing files," citing paragraph 43 of their Complaint. Resp. at 8. In fact, paragraph 43 only alleges that Rightscorp "has the <u>capability</u> to acquire entire files" from host computers. (emphasis added). As Plaintiffs admit, however, Rightscorp's notices are generated when certain files are <u>made available</u> for download, not when those files are actually distributed (i.e., copied and downloaded). *See* Compl., ¶ 48. Importantly, Plaintiffs do not allege that Rightscorp has *ever* recorded an instance of a Grande subscriber actually distributing even one of Plaintiffs' copyrighted works. Plaintiffs certainly have not alleged any concrete facts regarding such an act.

Plaintiffs cannot state a claim in the absence of allegations of actual distribution of copyrighted material. *See, e.g.*, *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir. 2017) (direct copyright infringement claim requires proof of "copying of constituent elements of the work that are original") (quotations & citation omitted). The Eighth Circuit has recognized this principle even more definitively, holding that "infringement of the distribution right requires an actual dissemination of either copies or phonorecords." *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993). While Plaintiffs cite a non-binding district court opinion permitting claims based on a mere offer to proceed, other district courts have recognized that "the great weight of authority" holds that a copyright owner's distribution right under 17 U.S.C. § 106(3) "is not violated unless the

defendant has actually distributed an unauthorized copy of the work to a member of the public."
*Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008); *see also London-Sire Records, Inc. v. Doe 1*, 542 F. Supp. 2d 153, 168 (D. Mass. 2008) ("It is a 'distribution' that the statute plainly requires."); *In re Napster Copyright Litig.*, 377 F. Supp. 2d 796, 803 (N.D. Cal. 2005) (the view "that a mere offer to distribute a copyrighted work gives rise to liability under section 106(3)" is contrary to the weight of authority and "inconsistent with the text and legislative history of the Copyright Act").  Plaintiffs' allegations are therefore insufficient to state a claim for secondary copyright infringement.[2]

Third, Plaintiffs are simply wrong to suggest that their allegations concerning Rightscorp's notices are sufficient to allege direct infringement.  In addition to Plaintiffs' failure to connect any alleged infringement to a Grande subscriber (Mot. at 6-8), there is no allegation tying any Rightscorp notice (or any corresponding underlying conduct) to any copyright owned by any Plaintiff.  While Plaintiffs' Exhibit A is a list of copyrights they claim to own, Plaintiffs do not allege that a Grande subscriber infringed any of those copyrights—Plaintiffs' "non-exhaustive, illustrative list" of "Copyrighted Sound Recordings."  *See* ¶ 37.  Instead, Plaintiffs generally allege that Rightscorp has sent notices regarding "various copyrighted works," encompassing all of the notices sent by Rightscorp on behalf of entities other than Plaintiffs.  *See, e.g.*, Compl., ¶ 47.  Plaintiffs cannot allege direct infringement without alleging concrete facts which show that a Grande subscriber actually infringed one of Plaintiffs' copyrights.

---

[2] Plaintiffs' claim that direct infringement may be shown through circumstantial evidence ignores their failure to plead any such additional facts.  As the *Howell* court recognized, evidence that material was made available to the public, standing alone, cannot support a direct infringement claim, and Plaintiffs have not alleged anything beyond that here.  *See* 554 F. Supp. 2d at 983-84 (such evidence "only shows that the defendant attempted to distribute the copy, and there is no basis for attempt liability in the statute").

For this reason, it is incredibly misleading for Plaintiffs to repeatedly refer to Grande having received "millions" of notices of alleged infringement, as if those notices all pertained to Plaintiffs' asserted copyrights. *See, e.g.*, Resp. at 8 ("Grande speculates that the million-plus infringements could all have been generated on Grande's system by other than Grande subscribers."). Because Plaintiffs fail to tie any Rightscorp notice to an asserted copyright, it is impossible to know which, if any, of Plaintiffs' copyrights are actually at issue in this case.[3] *See, e.g.*, *Bob Daemmrich Photography, Inc. v. McGraw-Hill Global Educ. Holdings, LLC*, No. 1:15-cv-1098, 2017 WL 2544046, at *4 (W.D. Tex. June 12, 2017) (plaintiff may not "base an infringement claim on overly-inclusive lists of copyrighted works that amount to vague and expansive allegations regarding which works are the subject of plaintiff's claims").

The Court should therefore dismiss Plaintiffs' secondary infringement claims for failure to sufficiently allege underlying direct infringement.

## II. Plaintiffs offer no basis for avoiding the *Sony* rule.

The Supreme Court's decision in *Sony Corp. of Am. v. Universal City Studios, Inc.* "bar[s] secondary liability based on presuming and imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 933 (2005). This is the prototypical case for application of that principle, where Plaintiffs seek to base Grande's intent <u>solely</u> on Grande's alleged knowledge that its subscribers used Grande's Internet service to engage in copyright infringement.

---

[3] It appears that Plaintiffs may not know the answer to this question. Despite Defendants' repeated complaints about Plaintiffs' Initial Disclosures, Plaintiffs continue to refuse to disclose the number of alleged instances of copyright infringement for which they are seeking damages. And in written discovery, Plaintiffs have asked <u>Grande</u> to identify and produce any Rightscorp notices which pertain to Plaintiffs' copyrights.

First, Plaintiffs are wrong to suggest that this case is distinguishable because Grande has ongoing relationships with its subscribers, or because this case concerns a service instead of a product. Plaintiffs ignore the attenuated nature of Grande's relationship to the alleged infringement, in that Grande is not alleged to control the BitTorrent service used for the alleged infringement—if anyone could be held secondarily liable for subscriber infringement, it would be the one who provides the tool which enables the alleged infringement, the BitTorrent software. *See Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (a "computer system operator" may be liable for secondary infringement if, *inter alia*, it "continues to provide access to infringing works").[4] Whether Grande's Internet access is a product or a service, Plaintiffs do not allege that Grande has direct control over BitTorrent or access to any copyrighted material on its subscribers' computers. Thus, the fact that Grande has an ongoing relationship with its subscribers does not place it any better position to police their infringement. Grande's after-the-fact ability to terminate a subscriber's Internet access does not make *Sony* inapplicable. *See Elf-Man, LLC v. Brown*, 996 F. Supp. 2d 1056, 1059 (E.D. Wash. 2014) ("*Sony* holds that vicarious liability for another's infringement cannot arise from the mere distribution of a product that is 'widely used for legitimate, non-infringing purposes.' There can be no serious dispute that internet access meets this description. Thus, under *Sony*, the mere act of making internet access available to a third party (whether permissively or inadvertently)

---

[4] *See also David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012) (no secondary liability for website operators because the direct infringement was not being conducted through their websites); *In re Napster, Inc.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001) ("[C]ourts have consistently held that liability for contributory infringement requires substantial participation in a specific act of direct infringement."); Patriot's Mot. to Dismiss, § III.A; Patriot's Reply, § I.A.

cannot give rise to vicarious liability for copyright infringement as a matter of law.").[5]

Plaintiffs are only able to offer a single, non-binding district court opinion in support of their position—*BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 199 F. Supp. 3d 958 (E.D. Va. 2016), which is currently on appeal.  Significantly, the *Cox* court recognized that its application of copyright law to hold an ISP liable for contributory infringement "magnifies the uncertainties in this area of the law and raises the specter of undesirable consequences that may follow," and that the ultimate resolution of the case (i.e., appeal) "may provide the vehicle for consideration of those questions."  *Id.* at 980.  Plaintiffs offer <u>no other authority</u> authorizing such broad copyright infringement liability based on the mere provision of Internet access.[6]

Second, Plaintiffs wrongly assert that under *Grokster*, only a claim for induced infringement requires affirmative conduct by the defendant—and that *Sony* therefore does not bar claims based on the defendant "materially contributing" to the direct infringement.  Resp. at 17-19.  If this were the law, then the *Sony* rule would never come into play because plaintiffs would always allege a material contribution theory instead of inducement.  Indeed, there is seemingly no scenario where the facts necessary to support an inducement claim would not also support an allegation of material contribution.  Grande respectfully submits that it would be nonsensical to conclude that, on the one hand, a defendant's knowledge of direct infringement is irrelevant where the plaintiff alleges inducement, such that the *Sony* rule bars liability unless the

---

[5] Moreover, because Plaintiffs' allegations make clear that Rightscorp's notices are not based on actual instances of infringement, those notices cannot confer actual knowledge of infringement on Grande (*see infra* Section III), which is what Plaintiffs claim establishes Grande's intent.

[6] In all the other cases Plaintiffs rely on, the defendant had direct control over the infringers' access to infringing material.  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1011 (9th Cir. 2001) (defendant's software enabled users to engage in peer-to-peer file sharing); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 129-30 (S.D.N.Y. 2009) (defendant operated online bulletin boards through which users shared copyrighted material).

defendant is directly promoting infringement (*see Grokster*, 545 U.S. at 936-37), but on the other hand, where the plaintiff alleges the defendant materially contributed to infringement, the defendant's knowledge of direct infringement <u>precludes</u> application of the *Sony* rule.

Moreover, the rule stated in *Sony* and *Grokster* is simply not limited to claims for induced contributory infringement—it applies generally to all secondary copyright infringement claims, including those based on a material contribution theory.  *See Grokster*, 545 U.S. at 933 (the *Sony* rule, where applicable, "bar[s] <u>secondary liability</u>") (emphasis added); *BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7 (S.D.N.Y. July 15, 2016) ("[E]ven assuming that Polyvore had knowledge of the infringing activity and materially contributed to copyright infringement, the *Sony-Betamax* rule shields Polyvore from liability.").

In short, *Grokster* conclusively refutes Plaintiffs' suggestion that "[t]he continued provision of internet services to known infringers is exactly the 'affirmative conduct' [which] must be present to impose liability on an ISP."  Resp. at 19.  Because Plaintiffs' allegations do not "go[] beyond [the internet's] characteristics or the knowledge that it may be put to infringing uses, and show[] <u>statements or actions directed to promoting infringement</u>," the *Sony* rule precludes liability in this case.[7]  *See Grokster*, 545 U.S. at 935 (emphasis added).

### III.   Plaintiffs have not alleged the requisite <u>facts</u> needed to support the knowledge element of contributory copyright infringement.

Irrespective of whether Plaintiffs are obligated to plead actual knowledge, constructive knowledge, or willful blindness, their allegations are insufficient to state a claim.[8]

---

[7] To be clear, there is no allegation in this case that Grande has done <u>anything</u> to actively promote copyright infringement by its subscribers.

[8] It does not appear that the Fifth Circuit has directly addressed which standard applies.  The Ninth Circuit, however, has squarely held that only actual knowledge is sufficient.  *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013).

Plaintiffs' deficient allegations regarding Rightscorp's notices are their sole basis for actual knowledge.  As discussed above, because Rightscorp fails to identify a Grande subscriber as the direct infringer and fails to identify any actual distribution of copyrighted material, its notices cannot confer actual knowledge of infringement.  Plaintiffs' cited case law is inapposite because it pertains to entities which <u>store content</u> and, therefore, have the ability to confirm that there is infringing material on their systems after receiving notice of potential infringement.  *See, e.g.*, Resp. at 10.  Plaintiffs do not allege that Grande has any such ability, and in fact it does not.

Plaintiffs' claim that they have alleged constructive knowledge likewise fails. Rightscorp's notices cannot confer constructive knowledge for the reasons discussed above. And every copyright case cited by Plaintiffs for the notion that Grande "had reason to know" of infringing activity relates to an ISP which could investigate such claims because it had direct access to the allegedly infringing material.  *See, e.g.*, *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004) ("AOL knew or had reason to know of the infringing activity taking place on its USENET servers."); *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.,* 443 F.2d 1159, 1163 (2d Cir. 1971) ("CAMI was in a position to police the infringing conduct of its artists").

In a last-ditch effort to validate its pleadings, Plaintiffs argue that Grande is "willfully blind" to direct infringement, which would require Plaintiffs to show that Grande "took active steps to avoid acquiring knowledge."  *See, e.g., Luvdarts*, 710 F.3d at 1073.  Plaintiffs have not alleged that Grande took any such active steps—instead, Plaintiffs' allegations make clear that Rightscorp's notices do not constitute credible notice of infringement, and Plaintiffs do not allege that Grande has any ability to verify Rightscorp's questionable allegations.

Because Plaintiffs have failed to allege knowledge under any potentially applicable standard, the Court should dismiss their contributory infringement claims under Rule 12(b)(6).

**IV.    Plaintiffs have not alleged the requisite <u>facts</u> needed to state a claim for vicarious copyright infringement.**

First, Plaintiffs fail to identify any factual allegation which plausibly supports the inference that Grande directly profits from subscriber infringement.  As set forth in Grande's Motion to Dismiss, the fact that Grande collects monthly subscription fees from <u>all</u> its customers is not enough.  *See* Grande's Mot. to Dismiss, § III.D.1.  The only relevant allegation Plaintiffs identify in their response is the claim that "the availability of music—and particularly Plaintiffs' music—acts as a powerful draw for users of Grande's service."  Compl., ¶ 66.  This is plainly insufficient because it merely regurgitates the Ninth's Circuit's articulation of the relevant standard.  *See Ellison*, 357 F.3d at 1079 ("[T]he central question . . . is whether the infringing activity constitutes a draw for subscribers, not just an added benefit."); *Iqbal*, 556 U.S. at 678 ("a formulaic recitation of the elements of a cause of action will not do").  Moreover, Plaintiffs do not allege any facts indicating that "the value of [Grande's] service lies in providing access to infringing material."  *Ellison*, 357 F.3d at 1079.  Plaintiffs have therefore failed to adequately allege this element of a vicarious infringement claim.

Second, Plaintiffs offer no meaningful response to the authorities which make clear that Grande, as an ISP, lacks the right and ability to supervise and control the alleged direct infringement.  *See* Mot. to Dismiss, § III.D.2.  This is because Grande lacks control over the tool which facilitates the alleged infringement—BitTorrent.  *See id.*  Plaintiffs' inability to plead this element is fatal to their vicarious infringement claims.

<u>CONCLUSION</u>

For the foregoing reasons, and incorporating by reference Patriot's Motion to Dismiss and Reply, the Court should dismiss Plaintiffs' claims against Grande under Rule 12(b)(6) with prejudice.  Plaintiffs do not request leave to amend.

Respectfully submitted,

Dated:  August 4, 2017

By:  /s/ Richard L. Brophy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
State Bar No. 16584975
J.R. Johnson
State Bar No. 240700000
Diana L. Nichols
State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6529
Fax: (512) 495-6401
steve.ravel@kellyhart.com
jr.johnson@kellyhart.com
diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE
COMMUNICATIONS NETWORKS LLC
and PATRIOT MEDIA CONSULTING,
LLC,

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 4, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy