UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:17-cv-00365 |
| GRANDE COMMUNICATIONS | ) |
| | ) **ORAL HEARING REQUESTED** |
| NETWORKS LLC and PATRIOT MEDIA | ) |
| | ) |
| CONSULTING, LLC, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT PATRIOT MEDIA CONSULTING, LLC'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

Plaintiffs' response to Patriot's Motion to Dismiss confirms that Plaintiffs have no legal or factual basis to support a claim of secondary copyright infringement liability against Patriot. They fail to identify any facts in the Complaint to support their tortured theories of liability, which are based on nothing more than smoke and mirrors—vague allegations about Patriot's management services untethered to the direct infringement allegedly committed by Grande's subscribers. The vague and conclusory nature of Plaintiffs' allegations cannot be cured.

Plaintiffs acknowledge they have no viable contributory or vicarious infringement claim against Patriot based on a tertiary theory of liability, which the overwhelming weight of authority demonstrates is impermissible. The law simply does not permit a secondary liability claim against Patriot, based upon Grande's alleged secondary liability. Nothing in Plaintiffs' response shows otherwise.

Unable to formulate a legal theory which piggybacks Patriot's liability on top of its relationship to Grande, Plaintiffs fare no better arguing that Patriot's own conduct renders it secondarily liable for the alleged direct infringement. Plaintiffs improperly conflate their allegations against both Grande and Patriot, but in the end, they have not plausibly alleged that Patriot has any relationship with Grande's subscribers or to their alleged infringement. Without plausible allegations of Patriot's financial benefit or control, there can be no vicarious infringement claim. Also, with respect to their contributory infringement claim, Plaintiffs' allegations of knowledge are improperly based on notices to Grande, not Patriot, and Plaintiffs' wholly conclusory allegation that Patriot "formulat[ed] and implement[ed] business policies, procedures, and practices" cannot establish the required material contribution. Furthermore, because the alleged infringers are not customers of Patriot, which itself is not an Internet service provider, Plaintiffs are simply incapable of plausibly alleging Patriot's liability.

Based on these deficiencies, and incorporating by reference Grande's Motion to Dismiss and Reply, Plaintiffs' claims against Patriot must be dismissed.[1]

## I. PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST PATRIOT

### A. Plaintiffs admit the Complaint does not state a claim against Patriot based on "tertiary" liability.

To the extent the vague and conclusory secondary copyright infringement claims against Patriot in Count Two of Plaintiffs' Complaint are premised on Grande's conduct, rather than Patriot's own conduct,[2] Plaintiffs' claims against Patriot must be dismissed. The law does not recognize such a "tertiary" theory of copyright liability. *See* Patriot Mot. to Dismiss, § III.A (citing *In re Napster Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001) (rejecting claims against "tertiary infringers") & *David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012) (acknowledging that "[t]he courts have yet to find contributory liability based on a tertiary actor's conduct.")).[3]  Because the Complaint relies almost exclusively on factual allegations

---

[1] To avoid repetition, certain arguments raised in Grande's Motion and Reply are not restated here, such as Plaintiffs' failure to adequately allege direct infringement and the bar on secondary liability set forth in the Supreme Court's decisions in *Sony* and *Grokster*.

[2] *See* Compl., ¶ 55 ("Patriot is equally liable for Grande's failure to comply with its legal responsibilities and for the copyright infringement that results from those failures.").

[3] In *Napster*, plaintiffs argued that the defendants were secondarily liable for the liability of the service provider, Napster, "on the basis of their relationship to Napster," but the court found that secondary liability "requires substantial participation in a specific act of direct infringement." 2001 WL 36593841, at * 2.  In other words, the defendants were responsible only for their *own* conduct related to the direct infringement.  Likewise, in *David*, the defendants were "tertiary actors" to the allegedly infringing service (P2P software that could be downloaded from the defendants' website), and the court found that the defendants' own "services do not allow for direct infringement."  *David*, 2012 WL 12884914, at *4.  Plaintiffs' Complaint is replete with admissions that Patriot is *not* an ISP and does not provide Internet service.  Therefore, like the *Napster* and *David* defendants, Patriot's alleged role as a "management services provider" renders it a tertiary party with a relationship too far removed from the alleged infringement to establish liability as a matter of law.

2

regarding Grande and lacks plausible factual allegations that Patriot's own conduct gives rise to secondary liability,[4] Plaintiffs' claims against Patriot should be dismissed.

Plaintiffs admit they "do not seek to impose 'tertiary' liability on Patriot." Resp. at 5. Instead, Plaintiffs argue that their claim "against Patriot is far more similar" to the claims against the operators of certain file-sharing websites, including Napster and MP3tunes.com. Resp. at 7-9 (citing *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408 (N.D. Cal. 2004) & *Capitol Records, Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703, 713 (S.D.N.Y. 2014)). These cases are readily distinguishable. Unlike Plaintiffs' vague allegations about Patriot,[5] the complaints against the defendants in *Bertelsmann* and *MP3tunes* had allegations directly connecting them to the underlying infringement. In *Bertelsmann*, for example, the court found that the complaint alleged that the defendants were "directly responsible for the infringing activity perpetrated by Napster's online users; more than merely *knowing of* and *contributing to* the infringing activity, they are alleged to have specifically *ordered* that such activity take place." 222 F.R.D. at 413 (emphasis in original). *See also MP3tunes*, 48 F. Supp. 3d at 710 (defendant was owner/operator of website who encouraged users to copy music files onto the website's servers).

Unlike in these cases, Plaintiffs' Complaint lacks any allegation that Patriot was directly

---

[4] *See, e.g.*, Compl., ¶¶ 1, 3, 10, 44-45, 48, 58 (alleging that Grande is the ISP that provides Internet service to users); ¶¶ 5, 10, 44-45, 51, 57 (alleging Grande as the recipient of a revenue stream and payments derived from Internet services); ¶¶ 43, 47-49 (alleging that Rightscorp notices are sent to Grande and that Grande was put on notice of infringement and failed to terminate repeat infringers); ¶¶ 46, 54-55 (alleging Grande must implement a repeat infringer policy to rely on the DMCA safe harbor and that it failed to do so); ¶¶ 58-59 (alleging that infringement is achieved by Grande's subscribers).

[5] These allegations state that Patriot provided "executive and general counsel services to Grande" including "formulating and implementing business policies, procedures, and practices," but the specific actions are never identified or connected to any instances of direct infringement by Grande's subscribers. Compl., ¶¶ 10, 33, 55.

involved in, or controlled, the underlying infringement.[6]  Thus, inasmuch as it relies upon a tertiary theory of liability against Patriot, Plaintiffs' Complaint should be dismissed.[7]

### B. Plaintiffs' vague allegations do not state a claim premised on Patriot's own alleged conduct.

Plaintiffs concede that Patriot's alleged liability must be premised on its own conduct. *See* Resp. at 5.  But the Complaint's references to Patriot lack any specific allegations demonstrating a direct connection with or control over the underlying infringement. *See* Compl., ¶¶ 1, 10, 33, 52, 55, 75-86.  As a result, the Complaint does not plausibly establish Plaintiffs' entitlement to the relief they seek. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The law is clear that Plaintiffs cannot rely on general allegations against "Defendants" to cure their failure to allege specific facts regarding Patriot's conduct.[8]  *See Joint Stock Co. Channel One Russia Worldwide v. Informir LLC*, No. 16-cv-1318, 2017 WL 696126, at *7 (S.D.N.Y. Feb. 15, 2017) (quotations & citation omitted) (Rule 8 cannot be satisfied ""[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct"); *Ranieri v. Adirondack Dev. Grp., LLC*, No. 1:11-cv-1013, 2013 WL 1292010, at *6 (N.D.N.Y. Mar. 27, 2013) (dismissing claims where the plaintiff's "use of the term 'defendants,' collectively [was] either confusing, vague, or inconsistent, or [was] used to assert a

---

[6] Plaintiffs also make no attempt to address the unprecedented and absurd result of expanding liability to a tertiary actor in a manner not contemplated by the DMCA safe harbor.  *See* Patriot's Mot. to Dismiss at 4-5.

[7] Although Plaintiffs expressly deny relying on a tertiary theory of liability, they also suggest such a "theory would still support liability."  Resp. at 9, n.3 (citing Benjamin H. Glatstein, *Tertiary Copyright Liability*, 71 U. Chi. L. Rev. 1605, 1612–13 (2004)).  However, more recent commentary recognizes that tertiary liability—i.e., the copyright liability of "parties who assist secondary infringers"—"has no support in case law."  Truan Savage, *Avoiding the Next Napster: Copyright Infringement and Investor Liability in the Age of User Generated Content*, 4 Mich. Bus. & Entreprenuerial L. Rev. 261, 271 (2015) (citations omitted).

[8] *See, e.g.*, Resp. at 3 (citing Compl., ¶ 53); *id.* at 11 (citing Compl., ¶ 52); *id.* at 14 (citing Compl., ¶ 56); *id.* at 18-19 (citing Compl., ¶ 53).

4

legal conclusion, not a factual allegation"); *Live Face on Web, LLC v. Megapreventionrx, LLC*, No. 1:15-cv-7143, 2016 WL 3561770, at *4 (D.N.J. June 29, 2016) (plaintiff failed to "plead sufficient facts as to [the defendant's] alleged role in the copyright infringement" where allegations were not individualized and instead referred collectively to "defendants").

Separately, because Plaintiffs do not allege that Patriot has any direct relationship with allegedly infringing subscribers, and admit that Patriot is merely a management company and not an ISP (Compl., ¶ 33), they necessarily fail to state a claim that rises "above the speculative level." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Complaint posits the completely unsubstantiated conclusion that "Patriot knowingly and intentionally induced, enticed, persuaded, and caused Grande's subscribers to infringe Plaintiffs' copyrights . . . ." Compl., ¶ 76. The Complaint is noticeably devoid of any pleaded <u>facts</u> showing that Patriot had or has any relationship with Grande's subscribers. *See Iqbal*, 556 U.S. at 678 (complaint should be dismissed "if it tenders naked assertions devoid of further factual enhancement").

Absent factual allegations of a direct relationship between Patriot and the alleged direct infringers, there can be no claim for secondary liability. *See, e.g. Brought to Life Music Inc. v. MCA Records, Inc.*, No. 02-cv-1164, 2003 WL 296561, at *2 (S.D.N.Y. Feb. 11, 2003) (acts of contributory infringement "must bear a direct relationship to the infringing acts, and the contributory infringer must have acted in concert with the direct infringer."); *Infomir*, 2017 WL 696126, at *17 ("Vicarious liability 'rests not on the defendant's relationship to the direct infringement but rather on the defendant's relationship to the direct infringer.") (citation omitted). As a result, Plaintiffs' implausible theory that Patriot is secondarily liable for the direct infringement of Grande's subscribers must be dismissed.

1. <u>Vicarious Infringement</u>

   i. *Plaintiffs fail to plausibly allege direct financial benefit*

Plaintiffs effectively concede that their only allegation regarding a direct financial benefit to Patriot is the following bald conclusion: Patriot "at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights." Compl., ¶ 80. This bare assertion, unsupported by any facts, cannot satisfy Rule 8. Moreover, there is no plausible, factual allegation of a "causal relationship between the infringing activity and any financial benefit [Patriot] reaps." *See Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). Thus, Plaintiffs have failed to plead this essential element of their vicarious infringement claims.

In a clear admission regarding the paucity of their allegations, Plaintiffs argue that the financial benefit requirement is a "low bar to clear," and that the mere potential for illegal downloading is a "draw" to Grande's service. *See* Resp. at 16, 18. Yet Plaintiffs' Complaint does not tie this alleged "draw" to Patriot in any way, much less connect the underlying infringement to a *direct* financial benefit to Patriot, as the law requires.

The cases Plaintiffs rely on do not support their position. Unlike Patriot, the defendant in *Broadcast Music, Inc. v. Hobi, Inc.* was a sole shareholder and president who had "ultimate authority to police the conduct" of the infringing parties and had a *direct financial interest* in the infringing activities, regardless of profit. 20 F.3d 1171, at *2 (5th Cir. 1994). Likewise, in *EMI Apr. Music Inc. v. Know Grp., LLC*, the defendants were managing members of a limited liability company who were entitled to participate in the profits of the business. No. 3:05-cv-1870, 2006 WL 3203276, at *3 (N.D. Tex. Nov. 6, 2006). By contrast, Plaintiffs do not allege that Patriot has <u>any</u> direct financial interest in Grande's subscribers' alleged infringement.

Plaintiffs rely on *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), for

the proposition that a financial benefit does not have to be tied to the sale of an infringing item. Resp. at 16. In *Fonovisa*, the court found the defendants—who operated a venue where counterfeit recordings were sold by independent vendors—financially benefited from rental fees, admission fees, food sales, and other services provided to customers who purchased infringing recordings. 76 F.3d at 263. Unlike the *Fonavisa* defendants, however, Patriot is not alleged to receive <u>any</u> remuneration or other financial benefit (regardless of its type or amount) from Grande or its subscribers that is connected to or affected by the alleged direct infringement. *See also, e.g.*, *BMG v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 676 (E.D. Va. 2015) ("Cox's [an Internet service provider] receipt of monthly fees is only evidence of direct financial benefit if some portion of those fees is generated from subscribers that are drawn to Cox's service at least in part because of the infringing activity alleged in this case. Without that evidence, the requisite causal connection between the benefit and the infringing activity is not established"). Again, Plaintiffs do not allege any connection or relationship, financial or otherwise, between Patriot and Grande's subscribers.

For these reasons, Plaintiffs' vicarious infringement claims should be dismissed.

      ii.  *Plaintiffs fail to plausibly allege the right and ability to supervise the allegedly infringing activity*

Vicarious liability for copyright infringement also requires that the liable party "exercise the requisite control over the direct infringer." *MDI, Inc. v. Lowder*, No. 5:08-cv-900, 2009 WL 10669793, at *3 (W.D. Tex. Aug. 13, 2009). This requires the "legal right to stop or limit the directly infringing conduct as well as the practical ability to do so." *Perfect 10 Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). The Complaint lacks any non-conclusory allegation regarding Patriot's management services and therefore fails to sufficiently allege that Patriot has the power and right to stop any Grande subscriber from conducting alleged

7

copyright infringement. Plaintiffs' response ignores this deficiency, focusing instead on Patriot's alleged generic management services, formulation of unspecified policies, and performance of other vague responsibilities for Grande. Resp. at 14-15 (citing Compl., ¶¶ 10, 55, 75). These arguments fail to address the relevant issue, and none of Plaintiffs' cited cases lend support for their patently deficient allegations.

As alleged in the Complaint, Patriot merely provides generic management services to Grande—services which are never specified or linked to the alleged infringement. The Complaint does not allege that Patriot controls subscribers or that it can stop their alleged infringement, unlike the owner/operators in the cases Plaintiffs rely on. *See* Resp. at 16. Because Plaintiffs' allegations do not support any plausible inference that Patriot has control over Grande's subscribers' alleged infringing activity, their vicarious infringement claims should be dismissed.

    2. <u>Contributory Infringement</u>

      i. *Plaintiffs' vague and conclusory allegations do not plausibly demonstrate sufficient knowledge*

Contributory infringement requires "knowledge of the infringing activity" on the part of the party to be held secondarily liable. *See Lowder*, 2009 WL 10669793, at *3. Plaintiffs do not claim that Rightscorp sent notices of alleged infringement[9] to Patriot. Although Plaintiffs claim that they are not relying on an impermissible tertiary liability theory, their arguments prove otherwise. Plaintiffs attempt to support their allegations that Patriot had constructive knowledge or was willfully blind of the alleged infringement by piggybacking on notices purportedly

---

[9] Even if Plaintiffs were entitled to impute Grande's knowledge to Patriot, their claims would still fail because Rightscorp's notices cannot confer knowledge of infringement. *See* Grande's Mot. to Dismiss, §§ III.A, III.C; Grande's Reply, §§ I, III.

8

transmitted to Grande. Resp. at 12. The Complaint only pleads constructive knowledge by Patriot in a conclusory fashion and with no factual predicate. *See* Compl., ¶ 79. Indeed, while Plaintiffs baldly assert that Patriot ignores Rightscorp notices, Plaintiffs also specifically allege that notices are provided only to Grande. *See* Compl., ¶ 47. Plaintiffs offer no authority that would permit them to pursue a contributory infringement claim against Patriot based solely on its vaguely alleged relationship with Grande—a wholly separate legal entity.

> ii. *Plaintiffs' vague and conclusory allegations of "formulating and implementing business policies, procedures, and practices" do not plausibly establish material contribution*

Plaintiffs argue that "Patriot's leadership role with Grande is sufficient to establish material contribution" to direct infringement. Resp. at 12. But, Plaintiffs' Complaint does not contain any factual allegation of a relationship between Patriot's management service and any alleged direct infringer, much less any affirmative act by Patriot that induced, encouraged, or materially contributed to any direct infringer's conduct as the law requires.

The cases Plaintiffs rely on cannot shore up the fatal flaws in their Complaint. *Crabshaw Music v. K-Bob's of El Paso, Inc.* stands only for the proposition that a corporate officer who is "the dominant influence" over the corporation may be a joint tortfeasor. 744 F. Supp. 763, 767 (W.D. Tex. 1990). *Crabshaw* does not address the material contribution element of contributory infringement at all, much less consider whether the provision of unspecified management services by a separate corporate entity can constitute material contribution. *See id.* at 767-78.

Plaintiffs also rely on *Perfect 10, Inc. v. Amazon., Inc.*, in which the court indicated that "a computer system operator" can be held liable for contributory infringement if (1) it has "actual knowledge" that specific infringing material is available using its system, (2) can take "simple measures" to prevent further damage to the copyrighted works", and (3) nevertheless

9

"continues to provide access" to the infringing works. 508 F.3d at 1172. Plaintiffs do not explain how Patriot meets any of the elements of that standard. First and foremost, Patriot is not alleged to "operate" Grande's Internet service. Moreover, Plaintiffs' vague allegations fail to explain how it was on notice of any alleged infringement, what "simple measures" Patriot could take to prevent infringement, and/or what "access" Patriot continued to (or ever could) offer to Grande's subscribers.

Finally, Plaintiffs fail to address the lack of any pleaded facts demonstrating that Patriot's role in the allegedly infringing conduct was "substantial." Patriot's Mot. to Dismiss at 11. For all of these reasons, Plaintiffs' vicarious infringement claims should be dismissed.

## II. PLAINTIFFS FAIL TO SHOW HOW THEY COULD CURE THEIR FAILURE TO STATE A CLAIM AGAINST PATRIOT

Plaintiffs offer the Court no reason to believe that they could cure the defects in their Complaint with additional allegations. *See* Resp. at 19-20. Plaintiffs fail to identify any specific, relevant facts that would address any of the deficiencies in their claims. Accordingly, Plaintiffs' request to amend the Complaint is futile and should be rejected.

## CONCLUSION

For the reasons stated above and in Grande's contemporaneously-filed Reply in Support of Motion to Dismiss, as well as in Defendants' Motions to Dismiss, the Court should dismiss Plaintiffs' claim against Patriot under Rule 12(b)(6).

Respectfully submitted,

Dated: August 4, 2017

By: /s/ Richard L. Brophy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
State Bar No. 16584975
J.R. Johnson
State Bar No. 240700000
Diana L. Nichols
State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6529
Fax: (512) 495-6401
steve.ravel@kellyhart.com
jr.johnson@kellyhart.com
diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC,

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on August 4, 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy_____
Richard L. Brophy
