**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> GRANDE COMMUNICATIONS § <br> NETWORKS LLC and PATRIOT MEDIA § <br> CONSULTING, LLC, § <br> § <br> Defendants. § | Civil Action No. 1:17-cv-00365-LY |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO MAINTAIN DOCUMENTS AS ATTORNEYS' EYES ONLY**

**INTRODUCTION**

There is no basis for Defendants' blunderbuss approach to marking *every single one* of the documents they have produced to date as Attorneys' Eyes Only ("AEO"). Defendants' tactic is inconsistent with the Protective Order, and fundamentally unfair to Plaintiffs, who are deprived of the ability to consult with their attorneys regarding these documents in aid of prosecuting this litigation.

Defendants' paltry production to date comprises a hodgepodge of emails involving discussions among Grande employees and two business customers. The documents do not contain sensitive personal information, nor do they reflect any sort of trade secrets or proprietary business information warranting a level of confidentiality such that only Plaintiffs' outside counsel and experts should be allowed to see them. What the documents *do* contain is evidence supporting Plaintiffs' claims—evidence that Defendants fall woefully short of taking steps to

prevent known infringement by Grande's internet service customers. *See, e.g.,* Ex. A, Grande's Document Production, at GRANDE000001.[1]

It is not surprising that Defendants seek to shield these types of damaging internal documents from Plaintiffs. But, obviously, that is no valid ground to maintain the documents as AEO. The documents do not reflect sensitive customer information or Defendants' proprietary information that is "unknown" to Plaintiffs. To the contrary, the documents confirm what Plaintiffs have alleged, and what Defendants already have admitted in their publicly-filed motions to dismiss: Defendants do not meaningfully respond to notices of infringement, but instead let their customers continue to use Grande's internet service to copy and disseminate Plaintiffs' music illegally. *See* Complaint, Dkt. No. 1, ¶ 43 ("[N]either Grande nor its management company Patriot has taken any meaningful action to discourage this continuing theft, let alone suspend or terminate subscribers who repeatedly commit copyright infringement through its network, as required by law … even where Defendants have specific and actual knowledge of those subscribers' blatant, repeat infringement."); *see also* Grande Mot. to Dismiss, Dkt No. 28, at 1 ("[I]t is infeasible for Grande to devote the time and resources required to meaningfully investigate them.").

For these reasons, as more fully explained below, the Court should deny Defendants' motion for a protective order, and order the 36 documents be de-designated from AEO to Confidential.

**FACTUAL BACKGROUND**

On August 18, 2017, Defendants made their first, and thus far only, production of documents in response to Plaintiffs' document requests (which were served on June 6, 2017).

---

[1] Emphasis added throughout unless otherwise indicated. Plaintiffs are filing Exhibit A under seal only to comply with the Protective Order until the Court rules on Defendants' motion.

Defendants' production consisted of a mere 36 documents, totaling 144 pages. The 36 documents all are emails, mainly among Defendants' employees, and some correspondence with two customers. *See* Ex. A. In prior discussions among counsel during the negotiation of the agreed Protective Order, counsel for Defendants indicated their intent to initially designate *every* document they produced as AEO. Counsel for Plaintiffs objected to this approach as unfair and inconsistent with the Protective Order. Nevertheless, Defendants evidently have adopted the approach they previewed, because they marked each of the 36 documents as AEO.

On August 23, 2017, counsel for Plaintiffs objected to Defendants' designating all 36 documents of their initial production as AEO, and asked that the parties resolve the issue through informal means if possible. *See* Dkt. 49-1, Ex. 1 to Defs.' Mot. for Prot. Order. Defendants' counsel did not respond other than to say he was too busy to discuss the matter until the next week. *See id.* But Defendants' counsel did not follow-up with Plaintiffs' counsel. Plaintiffs' counsel then formally challenged the AEO designations. *See id.* Defendants thereafter responded by moving to maintain their AEO designations, asserting that every single document needs to be withheld, in its entirety, from Plaintiffs (other than their outside counsel and litigation consultants).

## LEGAL STANDARD

The Agreed Confidentiality and Protective Order provides that "[t]he designation Attorneys' Eyes Only Information shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, nonpublic financial information, pricing information, customer identification data, and certain study methodologies." Dkt. No. 41, Confidentiality and

3

Protective Order ¶ 3(c).  *See also Jaster-Quintanilla & Assocs., Inc. v. Tellez*, No. A-13-CV-775-LY, 2014 WL 1681327, at *2 (W.D. Tex. Apr. 25, 2014) (Austin, M.J.) ("The Protective Order only permits documents to be designated as AEO if they contain "information that is believed to be unknown to the opposing party or parties, or any employees of a corporate party," such as "product formula information, customer identification data, and certain study methodologies.").

The Protective Order further provides that in the event of a confidentiality challenge, "*[t]he designating party*"—here, Defendants—"shall then have 14 days to move the court for an order preserving the designated status of the disputed information."  Prot. Order ¶ 12(a).  "When the parties agree to a protective order, signed by a judge, without an initial showing of good cause and a party later challenges the protections accorded documents by an opposing party, ***the burden of showing good cause is on the party seeking continued confidentiality protection***."  *Oncology Tech., LLC v. Elekta, Inc.*, No. 5:12-cv-00314, 2013 WL 12169359, at *5 (W.D. Tex. Feb. 5, 2013).  Defendants have utterly failed to meet their burden here.

## ARGUMENT

### I. PLAINTIFFS PROPERLY CHALLENGED DEFENDANTS' DESIGNATION OF THE 36 DOCUMENTS AS AEO.

As an initial matter, Defendants' claim that somehow Plaintiffs did not properly challenge Defendants' AEO designations is specious.  Plaintiffs complied with the Protective Order's process for challenging AEO designations, as the sequence of events set forth above makes clear, and none of Defendants' arguments to the contrary has any merit.

*First,* Defendants cannot plausibly claim that they lack sufficient notice of which documents Plaintiffs are challenging: Plaintiffs challenge *each of* the 36 documents Defendants produced, all of which Defendants marked AEO.  The circumstances here, then, are a far cry from *United Biologies, LLC v. Allergy & Asthma Network/Mothers of Asthmatics, Inc.*, Case No.

4

5:14-cv-00035, 2015 WL 12864258, at *2 (W.D. Tex. Oct. 19, 2015), on which Defendants rely, where the defendants produced "1,301 documents, pursuant to the Protective Order, 741 of which were designated as AEO," but the plaintiffs had not indicated which specific documents they challenged, *id.* at *4.  Here, only 36 documents are before the Court, and Plaintiffs challenge Defendants' AEO designation as to *all* of them.

*Second,* Defendants argue that meet and confer discussions (which Plaintiffs initiated) could have obviated the need for motion practice.  However, neither before filing their motion, nor in the motion itself, did Defendants indicate their willingness to withdraw or modify any of their AEO designations.  This issue thus is ripe for the Court to resolve.

*Finally*, it is fundamentally unfair and prejudicial to Plaintiffs for Defendants to mark every document they produce AEO, and then sit back and wait for *Plaintiffs* to perform the review Defendants themselves should have conducted, in order to identify the documents that Defendants wrongly included in their bulk AEO designation.  Defendants' position (which they incorrectly claim is supported by *United Biologies*[2]) that Plaintiffs bear the burden to review and identify each document incorrectly marked AEO, turns on its head the parties' obligation under the Protective Order to make a reasoned, "good faith," determination as to confidentiality.  Prot. Order ¶ 3(b).  *See Oncology Tech.*, 2013 WL 12169359, at *5 (designating party bears burden of showing good cause to keep documents designated).  Defendants have not satisfied this obligation, as explained below.

---

[2] Unlike the designating party in *United Biologies*, Defendants here have indicated their intent to mark every document they produce as AEO in the first instance, thus ensuring that they will engage in overbroad confidentiality assertions.

5

4842-3293-3457

## II. DEFENDANTS HAVE NOT SHOWN THAT THE 36 DOCUMENTS WARRANT AEO PROTECTION.

Defendants simply are incorrect that all information "believed to be unknown to the opposing party"—the language from the Protective Order here, which reflects the template order's language—properly can be withheld as AEO. This Court rightly rejected that stance in *Oncology Tech*:

> The well-understood over-all goal of discovery is to find facts, witnesses, and other matters which may aid a party in the preparation or presentation of his case. Defendants' broad interpretation of what should constitute attorneys eyes only information—all information believed to be unknown to the opposing party— would appear to describe much of what properly may be sought through discovery and … would thwart the discovery process by preventing the opposing party from obtaining facts and evidence necessary to evaluate the pluses and minuses of their respective litigation positions.

2013 WL 12169359, at *8 (internal quotations and citations omitted). Rather, the Court reasoned, this general language "must be associated with the more specific types of information referenced in the sentence that follows … product formula information, design information, non-public financial information, pricing information, customer identification data, and certain study methodologies." *Id.* at *9. Neither of the two categories of documents Defendants have marked as AEO justify their designation under these standards.

**Defendants have not shown that emails about or with customers warrant AEO designation.** Defendants appear to argue that any document referencing a customer is information that constitutes "customer identification information" under paragraph 3(c) of the Protective Order, and thus can be marked as AEO. But that overbroad assertion is not supported by the case law that Defendants themselves cite. In *Oncology Tech*, for example, this Court rejected the defendants' assertion that correspondence with customers, absent more, justified designating documents as AEO. 2013 WL 12169359, at *9. The documents that Defendants

6

claim fall within this category comprise (1) emails with anodyne automated notices from Grande in which the company informed customers that it has received a notice of copyright infringement, (2) questions back from customers regarding the notices, and (3) internal discussions among employees regarding the notices and the customers' responses. *See, e.g.,* Ex. A at GRANDE0000026-42, 55-63. The email exchanges all appear to have been precipitated by communications from third parties indicating that the customers had engaged in infringing conduct. More importantly, they do not reflect any of the sort of sensitive information that the Protective Order, and this Court in *Oncology Tech*, indicate must be present for an AEO designation to apply. And while Defendants cite, without elaboration, confidentiality terms in Grande's customer use policy, Mot. at 6 & fn. 6, such garden variety provisions do not justify the heightened protections—and concomitant burdens to the other side—of AEO designations, as opposed to ordinary confidentiality treatment. *See Oncology Tech*, 2013 WL 12169359, at *9.

**Defendants' documents do not involve "confidential internal processes" warranting AEO designations.** Defendants claim that they properly marked the remaining document as AEO because they all "concern Grande's confidential methodologies for handling issues under the DMCA" and supposedly involve "'design information, non-public financial information . . . and study methodologies,'" categories of AEO-protectible information under the Protective Order. Mot. at 6. That claim has no merit.

*First,* the manner in which Defendants treat notices of infringement is a critical issue in the case, and Plaintiffs are entitled to learn in discovery the answer to that question. Plaintiffs' personnel involved in prosecuting this litigation ought to be afforded the opportunity to review and analyze Defendants' documents on this central topic, and to confer with Plaintiffs' counsel

7

and consultants about those documents, in an unfettered manner, so that Plaintiffs properly can prepare their case.

*Second*, the documents do not reflect Defendants' "confidential methodologies" at all. They at most reveal (1) Defendants' *lack* of a methodology for properly responding to notices of infringement and *failure* to take action to stop repeat infringers from using Grande's service, and (2) what other companies are doing in response to such notices. *See* Ex. A at GRANDE0000001–25.  These documents do not contain information that is "unknown" to Plaintiffs in the way that term is intended, because, as discussed *supra*, Plaintiffs allege, and Defendants effectively admit (in public filings, no less), that Defendants *do not* meaningfully respond to the voluminous number of infringement notices they receive, particularly with respect to known repeat infringing customers.

Defendants' naked assertion that disclosure of these materials "could prove harmful to Defendants from a competitive standpoint," Mot. at 7, should not be credited.  Defendants do not explain this contention, let alone support it with, for example, an affidavit from a knowledgeable corporate employee, addressing how Defendants would be harmed if the documents were no longer designated as AEO.  Plaintiffs are not competitors of Defendants.  And, rather than disclose competitively sensitive information, the documents contain damaging admissions.  That fact is not "good cause" for limiting Plaintiffs' review of these documents to outside counsel and experts.

Finally, Defendants' stated concern about public disclosure is a red herring.  Plaintiffs are not seeking to disclose the 36 challenged documents publicly.  They merely want the documents to be de-designated from AEO to Confidential, so that personnel involved in the conduct of the litigation can see the documents and discuss them with Plaintiffs' attorneys.

8

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' motion, and order that the 36 documents in Exhibit A be de-designated from AEO to Confidential under the Protective Order.

Dated: September 29, 2017          Respectfully submitted,

By: */s/ Robert B. Gilmore*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
1100 Connecticut Avenue, NW Suite 1100
Washington, DC 20036
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

# **CERTIFICATE OF SERVICE**

The undersigned certifies that on September 29, 2017 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting