**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

UMG RECORDINGS, INC., *et al.*,

     Plaintiffs,

vs.

GRANDE COMMUNICATIONS
NETWORKS LLC and PATRIOT MEDIA
CONSULTING, LLC,

     Defendants.

§
§
§
§
§
§
§
§
§
§

Civil Action No. 1:17-cv-00365-LY

**PLAINTIFFS' AMENDED OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS**

**INTRODUCTION**

Plaintiffs respectfully submit the following objections to the Magistrate Judge's Report and Recommendation (Feb. 28, 2018) [Dkt. 72] ("Report").  The Magistrate Judge correctly concludes that Grande's motion to dismiss Plaintiffs' claim for contributory infringement should be denied.  However, Plaintiffs object to the Magistrate Judge's recommendation that Plaintiffs' vicarious liability claims and their claims against Patriot should be dismissed for failure to state a claim.  As set forth below, the Court should reject these portions of the Report because the Magistrate Judge misapplies well-established secondary copyright infringement law and misreads Plaintiffs' factual allegations.  Moreover, new evidence has emerged in discovery to date demonstrating that Grande's and Patriot's conduct is even more egregious than Plaintiffs previously alleged.

***First***, the Report's conclusion that Plaintiffs failed to allege a direct financial benefit sufficient to establish vicarious liability ignores both the facts Plaintiffs have pleaded and the law

of vicarious liability.   In the Complaint, Plaintiffs allege that Defendants receive a direct financial benefit from (1) the draw that the ability to steal Plaintiffs' copyrighted works provides to its customers, and (2) the substantial profits Defendants retain by failing to terminate copyright infringers.  Those allegations are sufficient to state a claim.  As for the first benefit, the Report departs from well-settled case law by interpreting what constitutes a "draw" far too narrowly.   Indeed, the Report's interpretation conflicts with the very same cases on which it relies.  The Report also ignores the second type of direct financial benefit that Plaintiffs allege: the substantial profits Grande reaps from refusing to terminate copyright infringers.   This oversight alone warrants rejection of the recommendation to dismiss Plaintiffs' claim for vicarious infringement.

But even if this Court were to accept the conclusion that Plaintiffs do not adequately plead a direct financial benefit (which it should not), then the Court should allow Plaintiffs to re-plead the claim in an Amended Complaint, as facts recently adduced in discovery establish beyond all doubt that Defendants receive a direct financial benefit from Grande's customers' infringing activity.

***Second***, instead of accepting Plaintiffs' factual allegations as true for purposes of the motion to dismiss, the Report improperly credits Defendant Patriot's extrinsic factual claims about Patriot's role in the copyright infringement.   In the Complaint, Plaintiffs allege that "Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices that provide repeat infringers with continued internet service through Grande, without consequence."   Plaintiffs' Original Complaint [Dkt. 1] ("Compl.") ¶ 55.  Defendants' motion to dismiss contested the truth of this allegation, which of course conflicts with the requirement in Rule 12(b)(6) that the Court accept well-pleaded

allegations as true.  Defendants repeated the improper factual dispute at oral argument.[1]  The Report acknowledges Plaintiffs' allegations, but evidently credits Defendants' factual assertions, finding as a factual matter (contrary to Plaintiffs' allegations) that "whatever decisions Grande made that might impose liability on it, they were made by Grande, not Patriot."  Report at 20. Because Rule 12(b)(6) and clear Fifth Circuit precedent require the Magistrate Judge to accept as true Plaintiffs' well-pleaded allegations, the Magistrate Judge erred by basing his conclusion on disputed facts outside the pleadings raised by Defendants.

That error is significant because the Magistrate Judge recommends dismissing the claims against Patriot **_with prejudice_**.  Again, however, if the Court were to conclude that the allegations against Patriot are insufficient to state a claim (which it should not), Plaintiffs should be allowed to re-plead them.  The dismissal with prejudice is particularly unwarranted because the recent deposition testimony of Defendants' witnesses directly contradicts Defendants' factual assertions in their motion to dismiss (and at the hearing) about Patriot's role—the very assertions that the Magistrate Judge appears to have credited.  Indeed, the deposition testimony shows that Patriot plays an even more central role in the formation and implementation of Grande's policies than Plaintiffs originally alleged. Simply put, as Plaintiffs have consistently alleged, Patriot controls Grande and is jointly and severally liable for Grande's copyright infringement.

For these reasons, and as explained more fully below, Plaintiffs respectfully request that the Court reject the Report's conclusions on vicarious liability and Patriot's dismissal.  In the alternative, Plaintiffs request that the Court grant leave to amend their Complaint as mandated by Rule 15(a).

---

[1] "Where's the knowledge? Where's the ability to control? Where's the ability to supervise? Where is the affirmative act? None of those things exist. They don't even provide the service. They, at best, help Grande understand how to provide the service."  Ex. A, Hr'g Tr. at 46.

## STANDARD OF REVIEW

In accordance with Federal Rule of Civil Procedure 72(b), Plaintiffs submit these specific objections to the Magistrate Judge's Report and Recommendation within the time allowed by the Court.[2]   Under Rule 72(b), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b).  *See also Koetting v. Thompson*, 995 F.2d 37, 40 (5th Cir. 1993) ("Because [the party] filed written objections to the magistrate judge's findings, he was entitled to a de novo review by the district court.").

## LEGAL AUTHORITY AND ARGUMENT

### I.   PLAINTIFFS PLEADED TWO INDEPENDENTLY SUFFICIENT BASES TO SATISFY THE DIRECT FINANCIAL BENEFIT ELEMENT OF VICARIOUS INFRINGEMENT

Plaintiffs object to the Magistrate Judge's conclusion that Plaintiffs' claim for vicarious liability should be dismissed based on Plaintiffs' alleged failure to plead facts showing that Grande receives a direct financial benefit from its subscribers' infringing conduct.  Report at 18.

"The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004).  As the Ninth Circuit has plainly stated: "Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to

---

[2]  Plaintiffs filed their original PLAINTIFFS' OBJECTIONS TO THE REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS within 14 days of the issuance of the Report as required under Rule 72.  Because the original Objections contained information currently designated as Defendants' Classified Information under the Confidentiality and Protective Order, Plaintiffs sought leave to file the Objections and exhibits under seal.  The Court accepted the exhibits, but denied leave to file the Objections under seal and gave Plaintiffs until March 23, 2018 to file revised objections that would not need to be filed under seal.

liability." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001), *as amended* (Apr. 3, 2001), *aff'd sub nom. A&M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091 (9th Cir. 2002).

Plaintiffs' allegations meet this standard.  Plaintiffs allege that Grande's subscribers paid for internet services in part to infringe Plaintiffs' copyrighted works **and** that Defendants failed to terminate these infringers in order to continue reaping profits from the fees they paid in order to continue infringing.  Compl. ¶¶ 5, 44-45, 51-53, 57-58, 66.  "With respect to the second element of a claim for vicarious liability, a financial benefit exists where there is evidence of a direct financial gain **or** that the availability of infringing material acts as a draw for customers." *GC2 Inc. v. Int'l Game Tech. PLC*, 255 F. Supp. 3d 812, 825 (N.D. Ill. 2017).[3]  Taken as true, either allegation is sufficient to constitute a direct financial benefit.  Plaintiff alleged both here, and the Court should reject the recommendation to dismiss Plaintiffs' claim for vicarious liability against Grande.

### A.  The Magistrate Judge's Interpretation of the Requisite Draw Plaintiffs Must Allege Contradicts Well-Settled Precedent

The Report holds that to sustain a claim for vicarious liability, Plaintiffs would have had to plead that "***Grande's actions*** in failing to adequately police their infringing subscribers is a draw to subscribers to purchase its services, so that they can then use those services to infringe on [Plaintiffs'] (and others') copyrights."  Report at 18.  But neither the cases Defendants cite nor those on which the Magistrate Judge relies support this narrow view.  Rather, the case law is clear that direct financial benefit exists where ***the availability of the infringing material*** acts as a draw.  Grande's refusal to police its system speaks to the right and ability to control element of vicarious infringement.  Requiring a plaintiff to prove that the failure to exercise the right and

---

[3] Emphasis is added throughout unless otherwise indicated.

ability to control is also the draw demonstrating a direct financial benefit collapses the two separate (and well-settled) elements of vicarious infringement.  Such a result is inconsistent with the very precedents on which the Report claims to rest and which Plaintiffs' allegations satisfy.

> **1. Plaintiffs Have Pleaded Sufficient Evidence of a Draw to Grande Subscribers Under the Most Demanding Pleading Standard**

The Magistrate Judge relies on the Ninth Circuit decision in *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 674 (9th Cir. 2017), to support the conclusion that "in order to adequately allege vicarious copyright infringement, [Plaintiffs] in this case must plead that customers subscribed to Grande's services ***because*** of the specific infringing material at issue."  Report at 18.  But that overstates the holding of *Giganews*.  In that case, the plaintiff argued that it could satisfy the direct financial benefit prong by showing that access to infringing material *in general* was a draw to the Defendants' customers.[4]  The Ninth Circuit rejected this argument, in part on standing grounds, and affirmed the district court's holding that "Perfect 10 must prove with competent evidence that at least some of Giganews' customers were 'drawn' to Giganews' services, ***in part***, to obtain access to infringing Perfect 10 material."  *Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB SHX, 2014 WL 8628031, at *4 (C.D. Cal. Nov. 14, 2014), *aff'd*, 847 F.3d 657 (9th Cir. 2017).  At the same time, the Ninth Circuit reiterated its holding in *Ellison v. Robertson* that "there is no requirement that the draw be substantial."  357 F.3d 1072, 1079 (9th Cir. 2004).

In *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.* (elsewhere relied on by the Magistrate Judge), the court recognized the limited nature of the holding in *Giganews*, citing it

---

[4] "Here, Perfect 10 argues for a rule that would allow a court to hold Giganews liable under a theory of vicarious liability by showing only that Giganews benefits financially from the infringement of *another's* works, regardless of whether Giganews received any financial benefit from the specific infringement alleged."  847 F.3d at 674.

alongside its conclusion that "[t]o show users' attraction, a plaintiff must only establish that the availability of infringing material acts as a 'draw' for customers.  The law is clear that to constitute a direct financial benefit, the 'draw' of infringement need not be the primary, or even a significant, draw—rather, it only need be 'a' draw."  149 F. Supp. 3d 634, 675–76 (E.D. Va. 2015), *aff'd in part, rev'd in part*, 881 F.3d 293 (4th Cir. 2018).  Thus, the Magistrate Judge's holding departs from settled precedent, including *Giganews*.[5]

Plaintiffs' Complaint satisfies *Giganews*.  Plaintiffs, the largest music companies in the country, produce and distribute the great majority of all legitimate commercial sound recordings sold in the United States.  Comp. ¶ 2.  Exhibit A to Plaintiffs' Complaint details more than 1,500 of Plaintiffs' copyrighted works, including works of the most popular recording artists in history, of every genre, that Grande's subscribers infringed using Grande's internet service.[6]  Plaintiffs allege that "the availability of music—***and particularly Plaintiffs' music***—acts as a powerful draw for users of Grande's service, who use that service to download infringing music files using BitTorrent protocols."  Compl. ¶ 66.  The fact that Grande's "internet customers have engaged in more than one million infringements of copyrighted works over BitTorrent systems . . . including tens of thousands of blatant infringements by repeat infringers of Plaintiffs' copyrighted works" (*id*. ¶ 4) is evidence of the specific draw Plaintiffs' works provide.

---

[5]  Plaintiffs have pleaded facts sufficient to satisfy the standard advanced in *Giganews*. Nonetheless, as Plaintiffs noted in their opposition, the balance of authority does not accept the *Giganews* requirement that the specific works in suit must have constituted the draw.  Instead, numerous courts have held that if customers are attracted by the general ability to infringe offered by the product or service, a direct financial benefit exists.  *See, e.g., Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 435 (S.D.N.Y. 2011); *Arista Records, Inc. v. Flea World, Inc.*, No. CIV.A. 03-2670(JBS), 2006 WL 842883, at *13 (D.N.J. Mar. 31, 2006) ("Thus, anything that serves as a 'draw' for customers will necessarily serve to increase revenues generated by the Market and thereby financially benefit all Defendants.").

[6]  These artists include 2Pac, Adele, Bob Marley, Bruno Mars, Ed Sheeran, the Eagles, Jay-Z, Kanye West, Michael Jackson, One Direction, Phil Collins, Pink Floyd, and Sting, to name just a few.

Notably, in *Cox*, plaintiffs were afforded the opportunity to develop their vicarious liability claim through discovery and expert reports. The claim survived summary judgment, as the court, with the benefit of a full evidentiary record, held that "[a] reasonable trier of fact could conclude that some percentage of Cox customers were drawn to Cox's internet service at least in part to download music, including BMG's copyrighted works, using BitTorrent." 149 F. Supp. 3d at 676. Plaintiffs' allegation in the instant case—by rule taken as true at this stage[7]—is that some percentage of Grande's customers were drawn to Grande's service in part to download music, including Plaintiffs' copyrighted works. This is sufficient to satisfy the direct financial benefit element of vicarious infringement. Plaintiffs should be afforded the same opportunity as the plaintiff in *Cox* to proceed with this claim.

### 2. Grande's Own Documents Demonstrate the Draw That Copyright Infringement Presents to Its Customers

But if this Court were to conclude that Plaintiffs failed to sufficiently plead the direct financial benefit prong of the test for vicarious liability (which it should not), then the Court should allow Plaintiffs an opportunity to re-plead their claims to include newly discovered evidence. Limited discovery in this case has already demonstrated that the ability to infringe copyrighted works—including Plaintiffs' works in suit—is a draw to Grande's customers.[8] As discussed more fully below, "Fed. R. Civ. P. 15(a) evinces a bias in favor of granting leave to amend. Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). The Court should grant Plaintiffs leave to amend the Complaint to add

---

[7] *See, e.g.,* Plaintiffs' Opposition to Grande's Motion to Dismiss [Dkt. 33] pp. 4-7.
[8] Representative examples of such documents were previously filed under seal as Exhibits B, C, E, F and G.

facts adduced in discovery, namely that Plaintiffs' copyrighted works are a powerful draw to Grande's repeat infringers.

**B.   Grande's Refusal to Terminate Infringers in Order to Continue to Profit from Their Infringing Use Is an Independently Sufficient Basis for Direct Financial Benefit Warranting Rejection of the Magistrate Judge's Recommendation**

The Magistrate Judge analyzed only one of the direct financial benefits that Plaintiffs alleged.  The Report fails to address the other alleged benefit:  the substantial profits Grande reaps from refusing to terminate copyright infringers.  But the case law is clear that fees received from infringing users can constitute direct financial benefit wholly apart from an alleged draw posed by the infringement.

In *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit held that the defendants, who owned a swap meet, could be liable for vicarious infringement because "the defendants reap substantial financial benefits from admission fees, concession stand sales and parking fees, all of which flow directly from customers who want to buy the counterfeit recordings at bargain basement prices."  76 F.3d 259, 263 (9th Cir. 1996).  The same is true here.  As Plaintiffs allege, "Grande collects significant fees from its subscribers, and subscribers who frequently upload copyrighted content often pay higher monthly premiums for higher bandwidth."  Compl. ¶ 57. *See also id.* ¶ 53 ("By ignoring the repeat infringement notifications and refusing to take action against repeat infringers Defendants have made an affirmative decision to contribute to known copyright infringement and to continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth.").

Thus, even if the Court were to accept the Magistrate Judge's recommendation regarding infringement acting as a draw—and it should not—the Court should not dismiss Plaintiffs' vicarious infringement claim against Grande, because the direct profit Grande reaps from not

terminating repeat infringers satisfies the direct financial benefit element for vicarious liability. Here too, if the Court were to conclude that Plaintiffs have not sufficiently pleaded this theory of direct financial benefit, then Plaintiffs should be allowed to re-plead to include facts adduced in discovery.  For these reasons, the Court should reject the Magistrate Judge's recommendation to dismiss Plaintiffs' claim of vicarious infringement.

## II.   PLAINTIFFS' CLAIMS AGAINST PATRIOT ARE VALID AS PLEADED, AND THE FACTS EMERGING IN DISCOVERY FURTHER ESTABLISH PATRIOT'S LIABILITY FOR SECONDARY INFRINGEMENT

Plaintiffs object to the Magistrate Judge's conclusion that Plaintiffs' claims against Patriot should be dismissed for failure to state a claim.  That conclusion rests on a misreading of Plaintiffs' allegations.  In addition, the Report contradicts well-settled precedent—referenced by the Magistrate Judge at oral argument—in recommending that Patriot's dismissal should be with prejudice.  This Court should reject both conclusions.

### A.   The Report Errs in Finding That Plaintiffs Did Not Plead Actionable Secondary Infringement Claims Against Patriot

In a single paragraph, without citation to any supporting law, the Report concludes that the claims against Patriot should be dismissed because, supposedly, "nowhere does the Complaint allege that Patriot itself, as an entity, was involved in the decisions or actions on which [Plaintiffs] bases [their] claim.  Instead, it only alleges that employees of Patriot, who were also employees of Grande, may have assisted in formulating Grande's policies in dealing with the underlying infringement a[t] issue here."  Report at 20.

These statements cannot be squared with what Plaintiffs actually plead in the Complaint. Indeed, as the Report itself recites earlier in its background section:

> [Plaintiffs alleged that] *Patriot is a management consulting firm which provides certain management services to Grande*.  *Id.* at ¶¶ 4, 52. In addition to seeking to hold Grande secondarily liable for infringement, [Plaintiffs] also sue[] Patriot,

> contending that '***Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices that provide repeat infringers with continued internet service through Grande***.' *Id.* at ¶ 55.

Report at 2.  This allegation alone reveals that the Magistrate Judge's characterization of the Complaint was in error.   But Plaintiffs actually pleaded even more regarding Patriot's culpability:

- Patriot "provid[es] executive and general counsel services to Grande at and through its corporate headquarters." Compl. ¶ 10;

- "Upon information and belief, during the relevant period, Patriot was responsible for management of Grande, including performing executive, legal, and compliance responsibilities." *Id.* ¶ 75;

- "Upon information and belief, through its role in providing management services to Grande, Patriot, too, has actual and ongoing specific knowledge of these repeat infringements, including as a result of Rightscorp's notifications."  *Id.* ¶ 50;

- Defendants "cannot have any meaningful, effective repeat infringer policy, let alone one that is reasonably implemented as required by the DMCA, if [Grande] and its management services provider, Patriot, purposefully ignore notice of repeat infringers sent from copyright owners (through Rightscorp), who are tracking the repeat infringers on the Grande network and providing Defendants with actual knowledge of those repeat infringers on a daily basis." *Id.* ¶ 52; and

- "Patriot has the right and ability to supervise and control the infringing activities that occur using the Grande service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights" but "has refused to take any meaningful action to prevent the widespread infringement by Grande's subscribers." *Id.* ¶ 80.

Thus, Plaintiffs plainly allege numerous facts that Patriot itself engaged in conduct giving rise to secondary infringement liability.   Again, as the Magistrate Judge himself summarizes: "[Plaintiffs] maintain[] that ***Patriot*** formulates and implements the policies and practices as to how Grande responds, or fails to respond, to notices of infringing activity."  Report at 20.  It is precisely these policies and practices that are at the heart of this lawsuit.

Compounding this error, the Report then opines, without any citation to case law or relevant principles, that "[Plaintiffs'] claims against Patriot are a very poorly disguised attempt to ignore Grande's corporate form, and to impose liability on Patriot solely because it provides services to Grande."  Report at 20.  But this statement ignores the law in this Court and the Fifth Circuit that ***"[a]ll participants in copyright infringement are jointly and severally liable as tortfeasors."***  *Broad. Music, Inc. v. Armstrong*, No. EP-13-CV-32-KC, 2014 WL 2440556, at *8 (W.D. Tex. May 30, 2014) (quoting *Fermata Int'l Melodies, Inc. v. Champions Golf Club, Inc.*, 712 F. Supp. 1257, 1262 (S.D. Tex. 1989) (citations omitted), *aff'd* 915 F.2d 1567 (5th Cir. 1990)).  Indeed, "[i]t is well established that '[a]ll persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers.'" *Arista Records LLC v. Lime Grp., LLC,* 784 F. Supp. 2d 398 (S.D.N.Y. 2011) (collecting cases).

Nor does the Complaint assert that it was merely Patriot employees acting as Grande employees who may have assisted Grande.  To the contrary, Plaintiffs allege that Patriot—***the company***—formulated and implemented the actual policies and practices that allowed Grande internet subscribers to infringe on Plaintiffs' copyrighted music with impunity.  Compl. ¶ 55.  The Report offers no justification for its reinvention of Plaintiffs' allegations.  But even if Plaintiffs had alleged only that Patriot personnel acting as Grande executives were the true targets of Plaintiffs' claims, such an allegation would be actionable.  *See Capitol Records, Inc. v. Wings Digital Corp.*, 218 F. Supp. 2d 280, 284-85 (E.D.N.Y. 2002) (finding that CEO of defendant corporation could be individually liable for contributory and vicarious infringement committed by corporation).  In their opposition brief, Plaintiffs cited numerous cases imposing secondary infringement liability on upstream parent companies, executives, and other individuals

or entities that played a part in the infringing conduct.  *See* Pls.' Opp. to Patriot Mot. to Dismiss [Dkt. 34], at 15-16.  The Report fails to mention, let alone analyze, these precedents.  For these reasons, this Court should reject the Report's recommendation to dismiss all claims against Patriot.

### B.   The Report Errs in Concluding That Plaintiffs' Claims Against Patriot Should Be Dismissed with Prejudice

Putting aside that the Complaint's allegations are more than sufficient to sustain Plaintiffs' claims against Patriot, the Report further errs by dismissing those claims with prejudice, improperly denying Plaintiffs the opportunity to re-plead against Patriot with additional facts.  Inexplicably, the Magistrate Judge does so despite having observed at the oral argument on the motions to dismiss that "the law is pretty clear in the Fifth Circuit and I think across the country, that if -- if you think a pleading is maybe not sufficient to state a claim, the Court probably abuses its discretion to not permit amendment before dismissing the case under 12(b)(6)."  Ex. A, Hr'g Tr. at 32:11-16.

Leave to amend should be freely given, *see* Fed. R. Civ. P. 15(a)(2), and "[a]lthough a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 675-76 (2d Cir. 1991)). *See also Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 872 (5th Cir. 2000) ("In the context of motions to amend pleadings, 'discretion' may be misleading, because Fed. R. Civ. P. 15(a) evinces a bias in favor of granting leave to amend.  Unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial.") (internal citations omitted); *U.S. ex rel. Adrian v. Regents of Univ. of California*, 363 F.3d 398,

403 (5th Cir. 2004) ("Leave to amend should be freely given, Fed. R. Civ. P. 15(a), and outright refusal to grant leave to amend without a justification such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. is considered an abuse of discretion.").

Thus, if the Court does not reject the Report's proposed dismissal of Patriot, the Court at the least should give Plaintiffs leave to amend their Complaint against Patriot. Indeed, through discovery, Plaintiffs have adduced significant evidence establishing Patriot's liability even beyond what Plaintiffs alleged in the Complaint. This evidence concerning Patriot's role directly contradicts representations made by Defendants regarding Patriot in their motion to dismiss briefing and at oral argument. The chart previously filed as Exhibit I to these Objections details the conflicting statements made by Defendants in characterizing Patriot's role in the conduct giving rise to Plaintiffs' claims.

Plaintiffs allege, and the facts will show, that Patriot actively set the policies and implemented the practices whereby Grande's internet subscribers were allowed to remain active even when Patriot and Grande received hundreds of thousands of notices of the customers' infringing activities. At a minimum, Patriot shared the decision-making role regarding Grande's polices during the relevant period, precisely as Plaintiffs allege. The law dictates that Patriot share the liability for those decisions as well.

## CONCLUSION

For the reasons stated herein, Plaintiffs object to the Report's conclusions that the claims for vicarious liability should be dismissed and that the claims against Patriot should be dismissed with prejudice. Plaintiffs respectfully request that the Court reject those portions of the Report

and Recommendation, and rule instead that Defendants' motions to dismiss should be denied in their entirety.   In the alternative, Plaintiffs request that the Court grant leave to amend the Complaint with respect to both the vicarious liability claims and all claims against Patriot, as mandated by Rule 15(a).

March 22, 2018

Respectfully submitted,

By:  */s/ Philip J. O'Beirne*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
1100 Connecticut Avenue, NW Suite 1100
Washington, DC 20036
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on March 22, 2018 all counsel of record who are deemed to have consented to electronic service are being served with through the Court's ECF system.


*/s/ Daniel C. Bitting*
Daniel C. Bitting