UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| Plaintiffs, | ) |
| vs. | ) No. 1:17-cv-00365 |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC, | ) |
| Defendants. | ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS, LLC'S**
**OPPOSED MOTION TO AMEND SCHEDULING ORDER**

Defendant Grande Communications Networks, LLC moves to amend the Scheduling Order (ECF No. 66) to continue the pre-trial conference and trial month by at least 90 days, in order to ensure that it has a full and fair opportunity to conduct discovery in this matter. With deadlines for fact discovery, expert disclosures, and dispositive motions looming, Plaintiffs and their copyright enforcement agent, Rightscorp, have failed to satisfy basic discovery obligations, preventing Grande from conducting any depositions in this matter, and from working with its experts to analyze the weighty and complex copyright and technological issues in this case. Due to the severe prejudice Grande faces in preparing its case for dispositive motions and trial, Grande is now forced to move for a 90-day extension.

Grande does not bring this motion lightly, recognizing the Court's strong preference for the parties to resolve these sorts of issues by agreement. However, as detailed below, Grande respectfully submits that the instant case is one in which an opposed motion is necessary and appropriate.

1

**I.     THE PARTIES' MEET AND CONFER EFFORTS**

Grande has gone to extreme lengths to avoid filing the present motion. Due to Plaintiffs' repeated failure to meet their discovery obligations, set forth in Section III, the parties have already twice modified the existing Scheduling Order by agreement, without impacting the pretrial conference date (December 14, 2018) or trial month (January 2019). *See* ECF No. 66 at 3. The original deadlines and subsequent modifications are set out in the table below (*see also* Brophy Decl., ¶ 4):

|  | **Scheduling Order** | **2/16/18 Agreement** | **3/19/18 Agreement** |
|---|---|---|---|
| **Fact Discovery** | March 16, 2018 | April 20, 2018 | June 1, 2018 |
| **Plfs.' Expert Reports** | March 23, 2018 | April 27, 2018 | June 8, 2018 |
| **Def.'s Expert Reports** | May 7, 2018 | June 1, 2018 | July 1, 2018 |
| **Plfs.' Rebuttal Reports** | 30 days after Def.'s Expert Reports | June 15, 2018 | July 16, 2018 |
| **Expert Discovery** | June 26, 2018 | July 6, 2018 | August 6, 2018 |
| **Dispositive Motions** | July 20, 2018 | July 20, 2018 | August 10, 2018 |

The parties met and conferred on multiple occasions, in good faith, in an attempt to reach an agreement on the requested relief. On March 27, after previously raising concerns several times about the need for a lengthier extension that would impact the trial date, Grande asked Plaintiffs to join in the present request for a 90-day extension and requested an answer by March 28. Brophy Decl., ¶ 5 & Ex. 2. On March 29, the parties met and conferred about this issue by telephone, and Plaintiffs indicated that they were unable at that time to join in the request. *Id.*, ¶¶ 6, 8. On April 4 and April 5, the parties met and conferred about the issue several more times by telephone, but were unable to reach an agreement. *Id.*, ¶ 9. As of the filing of this motion,

2

Plaintiffs had not presented any potential compromise solution concerning the length of the requested extension. *Id.* Instead, on April 4 and 5, Plaintiffs for the first time proposed conditions, as a prerequisite to any agreement on an extension, that are unrelated to the issues before the Court, including the execution of tolling agreements concerning claims against other related entities. *Id.*

Having met and conferred in good faith, and faced with the urgent need to protect its interests in this matter, Grande now moves for relief from the Court. It is not possible to adjust the schedule any further without impacting the pretrial conference or trial month, while also preserving Grande's ability to be heard on a dispositive motion and prepare its case for trial.

## II. NATURE OF THE CASE AND SCOPE OF DISCOVERY

Plaintiffs are record companies who claim to have rights in "the great majority of all legitimate commercial sound recordings in this country," and they seek to hold Grande, a Texas-based Internet service provider ("ISP"), secondarily liable for copyright infringement allegedly committed by Grande's customers through the file-sharing software BitTorrent. *See generally* Compl., ECF No. 1; Amended Order on Report and Recommendation, ECF No. 78 (granting in part Grande's Motion to Dismiss); Report and Recommendation, ECF No. 72.

Plaintiffs allege that their copyright enforcement agent, Rightscorp, Inc., "has developed a technological system that identifies actual infringements and the perpetrators of these infringements . . . by monitoring BitTorrent systems and extracting information about the infringing activity." Compl., ¶ 43. Plaintiffs further claim that Rightscorp has detected acts of copyright infringement by users of Grande's network, and that based on this information, Rightscorp's system has sent millions of automatically-generated email notices of alleged copyright infringement to Grande. *See id.* at ¶¶ 43, 47-49.

Plaintiffs contend that Grande is liable for willful contributory copyright infringement because it did not terminate the Internet access of alleged "repeat infringers" identified by Rightscorp. *See, e.g.*, *id.* at ¶ 59. Thus far, Plaintiffs have identified over 1,500 registered copyrights that they contend were so infringed. *See* Ex. A to Compl., ECF No. 1-1. Based on their allegations, Plaintiffs seek "the maximum amount" of statutory damages available under the Copyright Act (in the case of willful infringement, up to $150,000 per work) or, in the alternative, actual damages. Compl., ¶¶ 69-70.

Thus, at a very high level, relevant issues in discovery include:

- The functionality and capabilities of the Rightscorp system in terms of identifying actual instances of copyright infringement;

- Identification of the actual instances of alleged repeat copyright infringement at issue in this case (i.e., identification of each underlying act of direct infringement, tied to a specific copyright that a Plaintiff is entitled to enforce);

- When Plaintiffs first knew or should have known of the factual basis of their claims against Grande, for purposes of the statute of limitations and/or laches; and

- Facts related to statutory and actual damages, including plaintiffs' alleged lost revenues and the value of the copyrighted works at issue (as shown by, for example, licensing activity).

To date, Plaintiffs have not produced ***a single document*** regarding any of these issues.

### III. PLAINTIFFS' REPEATED AND CONTINUING FAILURE TO PARTICIPATE IN DISCOVERY

Plaintiffs have stonewalled Grande's attempts to obtain relevant, necessary discovery in this case, in a number of different ways. Grande has attempted to be cooperative and accommodating to minimize unnecessary motion practice before the Court, but at this point Plaintiffs' failures pose a real and substantial risk of prejudicing Grande's ability to prepare its case for dispositive motions and trial.

***First***, more than six months have passed since Grande served requests for production on

Plaintiffs, yet Plaintiffs still have not produced any documents responsive to the vast majority of Grande's requests—despite indicating their intention to do so. To date, the only documents Plaintiffs have produced are (1) copyright registrations for various asserted copyrights; and (2) automated email notices of alleged copyright infringement from Rightscorp (which Plaintiffs claim were all sent to Grande before this case was instituted). Brophy Decl., ¶ 13. Thus, Plaintiffs have *not* produced, among other things, any documents concerning Rightscorp's work for Plaintiffs, any documents concerning the functionality or operation of the Rightscorp system, any documents concerning their knowledge of potential copyright infringement claims against Grande, any documents concerning Plaintiffs' alleged lost revenues, or any documents otherwise related to the value of Plaintiffs' asserted copyrights. Plaintiffs have not offered and cannot offer any legitimate excuse for these deficiencies.

Grande has repeatedly brought this issue to Plaintiffs' attention, and Plaintiffs have repeatedly delayed. *See, e.g.*, Brophy Decl., Ex. 1 (1/30/18 Email). Most recently, the parties held a meet and confer by telephone last week, and counsel for Plaintiffs claimed that they were still in the process of reviewing potentially responsive documents, and said they would "probably" produce additional documents on April 2. Brophy Decl., ¶ 6. No such production occurred, without any explanation from Plaintiffs. *See id.*

***Second***, by agreement, Grande provided Plaintiffs with a list of search terms for email discovery more than two months ago, and yet Plaintiffs still have not produced a *single* responsive email. Grande originally intended to serve email requests targeted at specific document custodians, who Grande would identify through review of Plaintiffs' other document production. However, because Plaintiffs did not produce—and still have not produced—documents from which Grande could identify any relevant custodians, Grande was forced to

5

serve a general set of email search terms directed to all of the individuals identified in Plaintiffs' Initial Disclosures. *See* Brophy Decl., Ex. 1 (1/30/18 Email).

Incredibly, Plaintiffs objected to performing the requested email searches on grounds of burden and overbreadth, *even though Grande's proposed email search terms were **the same as Plaintiffs'***. Brophy Decl., ¶ 3 & Ex. 1. Using essentially the same search terms, Grande has completed its email production in this case, including supplemental productions as Plaintiffs identified additional document custodians based on their review of documents Grande produced. Brophy Decl., ¶ 3. Moreover, Plaintiffs' claims of burden lack merit—the purpose of using search terms for e-discovery is to minimize the burden on the responding party, because it eliminates the need to expend effort collecting and reviewing potentially responsive documents. Instead, the responding party simply obtains all of the custodian's emails, runs the search terms, screens out privileged and work product material, and produces whatever is left.

Nevertheless, Plaintiffs have slowed discovery to a crawl by subjecting Grande to round after protracted round of negotiations regarding email search terms, refusing to agree to any search terms until *after* they run the requested searches and manually review the resulting documents. Brophy Decl., ¶ 7. These negotiations are continuing, yet even where the parties have reached agreement on certain search terms, Plaintiffs still have not produced a single responsive email. *Id.* During the parties' meet and confer last week, Plaintiffs stated that they "would like to think" they will be able to make some partial production of emails by April 6. *Id.*

***Third***, Rightscorp—Plaintiffs' copyright enforcement agent, which is represented by Plaintiffs' counsel—has been similarly dilatory in responding to discovery. Because Plaintiffs claim that Rightscorp detected and notified Grande of the alleged direct copyright infringement on Grande's network, the functionality and operation of Rightscorp's system is obviously a key

issue in the case.  Thus, faced with Plaintiffs' failure to produce any documents concerning Rightscorp, Grande served a third-party subpoena on Rightscorp in early January.  Brophy Decl., ¶ 10.  After a series of unfulfilled promises to produce documents, Rightscorp finally produced a limited set of documents last week, consisting almost entirely of irrelevant materials, and nothing about how the Rightscorp system functions.[1]  Plaintiffs/Rightscorp admitted that this was only a partial production, but they have refused to commit to completing their production by a date certain.[2]  Brophy Decl., ¶ 11.

*Fourth*, and finally, as a result of Plaintiffs' failure to produce relevant, responsive documents, Grande has been unable to conduct any depositions in this matter, or to work with its experts on analyzing the complex issues in this case surrounding proof of infringement and Plaintiffs' alleged damages.  Indeed, based on Plaintiffs' extremely limited document production to date—only copyright registrations and automated Rightscorp notices—Grande lacks the information it would need to even *identify* potential deponents, let alone prepare for and conduct those depositions.  And without information about the Rightscorp system or the value of Plaintiffs' asserted copyrights (among other things), Grande's technical and damages experts have been unable even to begin conducting their analyses.

---

[1] The production consisted of roughly 1,100 documents, of which more than 1,000 are irrelevant form-letter emails from Rightscorp to Grande *on behalf of copyright holders other than Plaintiffs*, which on their face do not appear to be responsive to any document request.  Brophy Decl., ¶ 11.  The remainder is documents related to a previous attempt by Rightscorp to enforce a third-party subpoena against Grande for customer information, and a series of PowerPoint presentations regarding the general nature of Rightscorp's business, presumably prepared for potential customers or investors.  *Id.*

[2] Grande has also sought information regarding the Rightscorp system through a third-party subpoena to BMG Rights Management (US) LLC, the plaintiff in similar copyright infringement litigation against Cox Communications, another ISP.  *See, e.g.*, Report & Recommendation at 8-9, 16 (discussing the Fourth Circuit's recent decision in that litigation).  Although that subpoena was served in early February, BMG has not yet produced any responsive documents, although it claims that it intends to do so.  Brophy Decl., ¶ 12.

## IV. GRANDE'S REQUESTED 90-DAY CONTINUANCE OF PRETRIAL CONFERENCE AND TRIAL MONTH

Good cause exists to continue the December 14, 2018 pretrial conference and January 2019 trial month by at least 90 days. This would make the presumptive trial month April or May of 2019, which is consistent with Grande's recommendation at the initial pretrial conference. *See* ECF No. 71 at 9-10.

For the reasons set forth above, Grande's ability to prepare its case for dispositive motions and trial will be severely compromised if the case proceeds under the current schedule. Under the current, amended version of the schedule (set forth in the previous section), the parties have less than two months remaining to complete all fact discovery in this matter, and yet Plaintiffs' and Rightscorp's document production is not only incomplete—it is virtually non-existent. Once they do substantially complete their production, Grande will need an appreciable amount of time to review and analyze those documents. And even then, the parties will still need to schedule and complete a number of depositions that is likely to be substantial.

Moreover, this case presents highly complex issues at the intersection of copyright law and Internet technology that will require significant attention from the parties and their experts. As a result of Plaintiffs' discovery failures, Grande has not been able to even *begin* addressing these issues. It appears that Plaintiffs intend to base their infringement claims on file-sharing activity allegedly detected by Rightscorp, which raises complex technical questions regarding the functionality of the Rightscorp system and the proof necessary to establish the alleged underlying instances of direct infringement by users of Grande's network. These questions are made even more complex by the fact that Plaintiffs allege infringement of more than 1,500 distinct copyrights, over a period of at least three years prior to the filing of the Complaint. Furthermore, analysis of Plaintiffs' alleged damages—whether based on the statutory measure or

actual damages—will necessarily also involve a complicated assessment of the volume of alleged infringement at issue, how to identify so-called "repeat" infringers, and how to assess the relative value of more than 1,500 different copyrighted works—among other things. Given Plaintiffs' failure to produce any documents regarding these issues, it would be unreasonable to expect or require Grande to complete all fact discovery by June 1, 2018.

As a result, Grande respectfully submits that the requested modification of the Scheduling Order is both necessary and appropriate. Grande is and has been committed to litigating this dispute efficiently and expeditiously, but Plaintiffs' repeated discovery failures have simply made it impossible for Grande to do so under the existing case schedule.

## CONCLUSION

For the foregoing reasons, the Court should grant Grande's Motion to Amend Scheduling Order and continue the pretrial conference and trial month by at least 90 days.

Dated:  April 5, 2018

By: /s/  Richard L. Brophy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
State Bar No. 16584975
J.R. Johnson
State Bar No. 240700000
Diana L. Nichols
State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Tel: (512) 495-6529
Fax: (512) 495-6401
steve.ravel@kellyhart.com
jr.johnson@kellyhart.com
diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 5, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy