**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § § | |
| Plaintiffs, § § | |
| vs. § | Civil Action No. 1:17-cv-00365-LY |
| § § | |
| GRANDE COMMUNICATIONS § NETWORKS LLC and PATRIOT MEDIA § CONSULTING, LLC, § § | |
| Defendants. § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC's MOTION TO AMEND SCHEDULING ORDER**

**INTRODUCTION**

There is no good reason for the Court to grant Grande's request that the trial date be postponed by 90 days or more. At the January 3, 2018 pretrial scheduling conference, Grande unsuccessfully argued for a late spring 2019 trial date. Ex. A, Jan. 3, 2018 Hr'g Tr. at 13:16-17. Now Grande has taken another run at the trial setting the Court denied it, by claiming—incorrectly—that Plaintiffs have refused Grande discovery on key issues in the case. Plaintiffs have worked with Grande to accomplish the necessary discovery and resolve disputes over Grande's late-served and overly broad email search terms. As Grande's motion acknowledges, the parties already agreed to extend the cut-off date for fact discovery to June 1, 2018 (and to extend the later interim dates in the schedule accordingly), and Plaintiffs do not oppose an additional 30-day extension of these interim dates. That extension would allow ample time for the parties to complete discovery, and would have the parties file dispositive motions on September 10, 2018, three months before the December 14, 2018 pretrial conference for the existing January 2019 trial setting.

1

Plaintiffs and non-party Rightscorp have not been "dilatory" in discovery, as Grande wrongly alleges. Plaintiffs and Rightscorp have already produced more than one million pages of documents, many of which go to the heart of Plaintiffs' claims. In addition, despite Grande's months-long delay in propounding search terms, Plaintiffs have collected and are reviewing tens of thousands of emails and electronic documents, which Plaintiffs expect to yield a relatively small collection of responsive, non-privileged documents (given that Grande's search terms were overly broad and thus located numerous irrelevant, non-responsive documents). Plaintiffs anticipate their production will be substantially complete by the end of this month. Grande did not make its initial production of emails until more than four months after receipt of Plaintiffs' proposed search terms; by comparison, Plaintiffs are on track to produce emails in approximately three months.

And even as Grande's motion complains about alleged discovery delays, Grande itself has recently served new rounds of discovery, all of which could have been served months ago, and Grande (and Patriot Media Consulting, LLC) have not completed their own document productions. Nevertheless, Plaintiffs are confident that discovery can and should be completed while preserving the January 2019 trial date.[1]

---

[1] Grande's counsel asserts that Plaintiffs insisted on "the execution of tolling agreements concerning claims against other related entities" as "a prerequisite to any agreement on an extension[.]" Mot. at 3. The tolling agreements referenced relate to RCN Telecom Services, LLC, and WaveDivision Holdings, LLC, two internet services providers that apparently have combined with Grande since the onset of this litigation. *See* Jan. 24, 2018, "RCN/Wave Closes Acquisition of Wave Broadband," *available at* https://www.businesswire.com/news/home*/20180124006207/ en/RCNGrande-Closes-Acquisition-Wave-Broadband.* Ex. B, Declaration of Philip J. O'Beirne ("O'Beirne Decl.") ¶ 28. But these entities had, through Grande's counsel, already indicated they would enter into tolling agreements with Plaintiffs prior to the parties' April 4-5, 2018 meet and confer. *Id.* ¶ 29. While Plaintiffs did indicate that they might be amenable to the 90-day trial continuance if Plaintiffs and Grande agreed to enter into mediation (which might warrant

The Court, therefore, should deny Grande's motion.

## ARGUMENT

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order may only be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The Fifth Circuit has explained that "[t]he good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,* 315 F.3d 533, 535 (5th Cir.2003) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed.1990)). As explained below, Grande cannot meet this standard.

> **A.    Plaintiffs And Non-Party Rightscorp Have Produced More Than One Million Pages Of Highly Relevant Documents, And Rightscorp Has Made Its Software Code Available For Grande To Inspect.**

Grande's motion fails, first and foremost, because Plaintiffs and non-party Rightscorp already have produced substantial volumes of the most relevant documents and expect to complete their productions this month. Rightscorp also already has offered to make its software code available for inspection. Thus, Grande has not suffered and will not suffer any prejudice preventing it from being prepared for the January 2019 trial.

The parties conducted their Rule 26(f) conference on May 24, 2017. O'Beirne Decl. ¶ 2. Grande and Patriot did not serve affirmative discovery requests on Plaintiffs until September 28, 2017, *four months later*. *Id.* ¶ 14. And Grande and Patriot did not serve Rightscorp with a document subpoena until January 5, 2018. *Id.* ¶ 24. Despite Defendants' delays in serving their discovery requests, Plaintiffs and non-party Rightscorp made substantial productions comprising

---

extending the trial date given the time needed for mediation, and the opportunity to avoid further time and expense incurred in litigation), Grande has not yet agreed to a mediation. *Id.* ¶ 30.

3

the most relevant documents in Plaintiffs' and Rightscorp's possession: (1) the copyright registrations, which evidence Plaintiffs' ownership of the works in suit, and (2) the notices that Rightscorp sent to Grande, which evidence Grande's customers' infringement of those works (and many others). *Id.* ¶ 15. Plaintiffs and Rightscorp produced those documents in November 2017. At Plaintiffs' request, Rightscorp did so even in the absence of a subpoena.

Beyond those documents, Plaintiffs are undertaking a substantial effort to locate any additional non-privileged documents, even though Plaintiffs believe (and have communicated on multiple times to Grande) that it is unlikely there will be many, if any, such documents of relevance. O'Beirne Decl. ¶ 22. Rightscorp has produced documents in response to the subpoena, as Grande acknowledges, and expects to complete what is likely to be a small volume of additional documents in the next two weeks. *Id.* ¶ 24. Moreover, Rightscorp also has told Grande repeatedly that Rightscorp will make available its software code for Grande to inspect. *Id.* ¶ 25.

Given that Plaintiffs' and Rightscorp's productions have been substantial and are ongoing, Grande is left to argue that, supposedly, it has not received documents concerning four issues: (1) "[t]he functionality and capabilities of the Rightscorp system in terms of identifying actual instances of copyright infringement;" (2) "[i]dentification of the actual instances of alleged repeat copyright infringement at issue in this case (i.e., identification of each underlying act of direct infringement, tied to a specific copyright that a Plaintiff is entitled to enforce);" (3) "[w]hen Plaintiffs first knew or should have known of the factual basis of their claims against Grande, for purposes of the statute of limitations and/or laches;" and (4) "[f]acts related to statutory and actual damages, including plaintiffs' alleged lost revenues and the value of the

4

copyrighted works at issue (as shown by, for example, licensing activity)." Mot. at 4. But Grande mischaracterizes the discovery it has received from Plaintiffs and Rightscorp.

The notices and other documents that Rightscorp has produced, along with its software code that it has told Grande is available for inspection, squarely answer issues 1 and 2. Plaintiffs previously answered an interrogatory stating that they became aware of the infringement by Grande's users asserted in the Complaint in January 2016, which addresses issue 3. As for issue 4, Plaintiffs currently intend to seek statutory damages or, in the alternative, actual damages, including damages related to Grande's profits from its infringing activity. Plaintiffs intend to present expert testimony in support of their claim for damages, which Plaintiffs will disclose in accordance with the Court's scheduling order (as modified by agreement of the parties). To the extent that Plaintiffs seek damages related to Grande's profits, *see* 17 U.S.C. § 504(b), the information related to such a claim is in Grande's possession, not Plaintiffs'. Plaintiffs' own documents are, for the most part, not relevant. Nevertheless, Plaintiffs are producing documents reflecting harm they suffer from copyright infringement.

It should also be noted that Grande was extremely untimely in serving some of its discovery requests. For example, Grande complains that it has not received documents from non-party BMG Rights Management (US) LLC (the plaintiff in the *Cox* case), in response to Grande's document subpoena. Mot. at 7 fn. 2. Putting aside the question of why such documents are relevant, Grande can offer no explanation why it waited until February 1, 2018 to serve a subpoena on BMG. O'Beirne Decl. ¶ 26. Grande also served a new round of twenty-one document requests on each of the Plaintiffs on March 8, 2018—more than eight months after fact discovery began. *Id.* ¶ 23. And even more recently—on March 15, 2018 and April 5, 2018—

5

Grande served document and deposition subpoenas on four other non-parties. *Id.* ¶ 27. Grande could have served these requests many months ago; it has only itself to blame for its delays.

In short, while Grande itself delayed pursuing party and non-party document discovery, Plaintiffs and Rightscorp have produced a large volume of important documents already, and expect to complete their productions this month.

> **B. Despite Defendants' Significant Delay In Propounding Email Search Terms, Plaintiffs Are Reviewing And Producing Relevant, Non-Privileged Emails, And Expect To Complete Their Production This Month.**

Grande also complains that Plaintiffs have yet to produce emails in the two months since receiving Grande's search terms. But that is not a basis to extend the trial date. Plaintiffs expect to complete their email production by approximately the end of this month. The timing of Plaintiffs' email production has been driven by Grande's months-long delay in proposing search terms.

The parties agreed that email review and production would occur through the use of search terms and, at Defendants' express insistence, the propounding party would be the one to propose terms. O'Beirne Decl. ¶¶ 4-6. Plaintiffs proposed search terms for review of Defendants' emails on July 26, 2017. *Id.* ¶ 7; Ex. C, O'Beirne Ltr. to Brophy. Yet Grande delayed proposing search terms to Plaintiffs, or otherwise demanding that Plaintiffs begin their production of emails, until January 30, 2018, ***seven months later.*** Dkt. 79-2, Ex. 1 to Brophy Decl.; O'Beirne Decl. ¶ 16.

Grande now claims that it was waiting for Plaintiffs' production of other documents prior to serving the search terms. Mot. at 5. But this after-the-fact excuse is not credible. In the more than seven months between the parties' agreement on a process for email discovery and Grande's proposal of search terms on January 30, 2018, Grande never once told Plaintiffs that it was

6

awaiting any information from Plaintiffs in order to propose terms. O'Beirne Decl. ¶ 17. In fact, Plaintiffs inquired when Grande planned on proposing search terms, and Grande never said it was delayed in doing so based on any fault of Plaintiffs. *Id.* And at the January 3, 2018 scheduling conference, Grande made no mention of any difficulty in proposing search terms or the resultant delays that difficulty would cause in discovery, despite advocating then for the same later trial date that it now seeks. *See generally* Ex. A. The Motion lacks any support for the claim that somehow Plaintiffs are responsible for Grande's seven-month delay in serving search terms.

When Grande finally did propose search terms, it used essentially the same terms that Plaintiffs had propounded to Defendants many months earlier. Mot. at 6. But using reciprocal terms in the context of this case makes no sense. It is one thing to ask Grande, a regional internet service provider, to search for emails discussing the infringement of music copyrights. Common sense indicates that substantially all documents discussing or referring to copyright infringement in Grande's possession would likely be relevant to this matter. But asking Plaintiffs—the largest recording companies in the world, whose primary assets are their copyrighted musical works—to search for all emails referring to music copyrights or copyright infringement is vastly overbroad and unduly burdensome, and would defeat the purpose of search terms at all. Plaintiffs will have tens of thousands of emails relating to copyrights that have nothing to do with this case.[2]

---

[2] Courts, including within the Fifth Circuit, recognize that overly broad terms not designed to target responsive documents impose an undue burden on the responding party. In *Shaw Grp. Inc. v. Zurich Am. Ins. Co.*, No. CIV.A. 12-257-JJB, 2014 WL 4373210 (M.D. La. Sept. 3, 2014), for example, the court held that in an insurance dispute, generic search terms such as "settlement", "claims" and "deductible" were unreasonable because they would "generate too many non-responsive documents. . . . [Defendant] refused to explore alternative search terms or their results. Accordingly, the court finds that [Defendant's] search terms would subject [Plaintiff] to undue burden and expenses." *Id.* at *5.

For these reasons, Plaintiffs promptly objected to employing Grande's terms on these grounds. O'Beirne Decl. ¶ 18; Ex. D, Jan. 31, 2018 P. O'Beirne Email to R. Brophy. The parties thereafter engaged in multiple meet and confer efforts, as Grande concedes. *Id.* ¶ 19. Plaintiffs proposed properly limited terms designed to target likely relevant evidence and avoid the massively overbroad and irrelevant responses certain to follow Grande's proposed terms. *Id.* Grande refused these reasonable counter-proposed terms without explanation. Rather, Grande insisted that Plaintiffs respond on a per term basis to its overbroad proposal, including (if possible) with preliminary search results evidencing the overbreadth. *Id.* ¶ 20. This process has taken substantial time and effort. Grande now refers to this preliminary review—which it requested—as somehow demonstrating Plaintiffs' failure to work diligently in discovery. Just the opposite: it reflects Plaintiffs' good faith effort to work cooperatively with Grande. While a number of Grande's proposed terms were vastly overbroad, yielding hundreds of thousands of hit results, Plaintiffs are running certain of Grande's search terms, have proposed modifications of other terms, and expect to make rolling productions of responsive emails and attached documents with a targeted completion date by the end of this month. *Id.* ¶ 21.

However, it bears emphasis that in this case, Plaintiffs' emails are unlikely to be relevant. Unlike the parties in many lawsuits, Plaintiffs and Grande did not have a relationship or course of dealing with each other before this lawsuit was filed. This case is about Grande's conduct in relationship to copyright infringement, not its relationship or communications with Plaintiffs. Furthermore, to the extent that Plaintiffs do have emails responsive to Grande's document requests, many of those emails are very likely to be privileged.

Despite the minimal relevance and likely privileged nature of their emails, Plaintiffs have always indicated that they would search for and produce relevant, non-privileged, emails that

they possess, if any, in response to appropriately tailored requests. But given the nature of the documents, Plaintiffs are undertaking a careful review to screen out privileged and non-responsive materials. It is not the case that, as Grande asserts, using search terms "eliminates the need to expend effort collecting and reviewing potentially responsive documents." Mot. at 6. Plaintiffs did not agree to dispense with reviewing the search hit results; from the outset, Plaintiffs explained that they intended to review documents, not merely produce everything that hit on a term. O'Beirne Decl. ¶ 5. That Grande apparently dispensed with document review may account for the high volume of irrelevant documents in its production. Even so, despite receiving Plaintiffs' search terms on July 26, 2017, Grande did not make its initial production of custodian emails in response to those terms until ***December 12, 2017*** (more than four months later), and made its most recent production of emails on March 23, 2018. *Id.* ¶¶ 8, 13. In comparison, Plaintiffs are on track to produce emails in approximately three months after Grande proposed search terms.

> **C.    Despite The Fact That Grande (And Patriot) Have Been Dilatory In Serving And Responding To Discovery, Plaintiffs Are Confident That A January 2019 Trial Date Can Be Achieved.**

Finally, Plaintiffs feel compelled to correct Grande's wholly inaccurate claim that "Grande is and has been committed to litigating this dispute efficiently and expeditiously." Mot. at 9. As explained above, Grande has been extremely dilatory in seeking the discovery it claims it needs. Grande and Patriot have been equally dilatory in providing discovery that Plaintiffs have sought.

*First*, Grande continues to make substantial email productions, with the latest just two weeks ago, more than nine months after Plaintiffs served their document requests in June 2017 and more than eight months after Plaintiffs propounded search terms in July 2017. And as noted

above, Grande has continued to serve discovery requests to parties and non-parties alike, including as recently as last week.

*Second*, Grande still has a number of documents left to produce. This includes, among other things, documents reflecting their registered copyright agent over time, draft policies, and other relevant documents.

*Third*, Patriot has not produced most of its documents. Defendants repeatedly had indicated that they had already, or were going to, produce Patriot documents. O'Beirne Decl. ¶¶ 8-12. Yet Patriot's production remains substantially incomplete. Regardless of its status, Patriot possesses and should produce highly relevant documents that it currently is withholding, particularly given that the discovery to date has confirmed Patriot's central role in directing Grande's policies and practices on copyright infringement by Grande customers.

Nevertheless, Plaintiffs remain confident that the parties can finish their document productions and other discovery to meet the existing trial setting. January 2019 is still nine months away. As discussed above, Plaintiffs already agreed to extend the interim case dates, in a good faith effort to reach a compromise with Grande, and are amenable to an additional 30-day extension. Plaintiffs submit that this will afford the parties more than sufficient time to complete discovery, brief summary judgment, and achieve the current trial date.

## CONCLUSION

For the foregoing reasons, the Court should deny Grande's motion, and maintain the current January 2019 trial date.

Respectfully submitted,

By: */s/ Philip J. O'Beirne*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)

Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
1100 Connecticut Avenue, NW Suite 1100
Washington, DC 20036
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on April 12, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

　　　　　　　　　　　　　　　　　　*/s/ Daniel C. Bitting*
　　　　　　　　　　　　　　　　　　　Daniel C. Bitting