IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> vs. § <br> § Civil Action No. 1:17-cv-00365-LY <br> § <br> GRANDE COMMUNICATIONS § <br> NETWORKS LLC and PATRIOT MEDIA § <br> CONSULTING, LLC, § <br> § <br> Defendants. § | |

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT TO ALLEGE FACTS BASED ON NEWLY-DISCOVERED EVIDENCE**

Pursuant to Federal Rules of Civil Procedure 15(a)(2) and 16(b)(4), Plaintiffs move to amend their Complaint to state additional, previously unavailable facts supporting their claim for vicarious copyright infringement against Grande Communications Networks LLC ("Grande") and infringement claims against Patriot Media Consulting, LLC ("Patriot"). The Court dismissed these claims with prejudice. However, good cause exists to allow Plaintiffs to amend the Complaint to replead these claims. Plaintiffs respectfully request a hearing.

*First*, in recommending dismissal of Plaintiffs' vicarious infringement claim, the Magistrate Judge concluded that Plaintiffs "failed to plead facts showing that Grande receives a direct financial benefit from its subscribers' infringing conduct." Magistrate Judge Report and Recommendation (Feb. 28, 2018) [Dkt. 72] ("Report") at 18. But based on recent discovery, Plaintiffs now can plead additional facts further showing that Grande and Patriot (1) had the right and ability to control their infringing subscribers, yet (2) knowingly refused to do so, and thereby (3) directly benefitted from the infringing subscribers. Specifically, the evidence shows that during the relevant time period, Grande and Patriot tracked Grande's infringing customers (who

overwhelmingly are among Grande's most profitable customers), did not terminate a single one for copyright infringement, and continued to accept payment from them even after Grande received dozens and, in some cases, hundreds of notices of infringement for a given subscriber.

***Second,*** in recommending dismissal of the claims against Patriot, Judge Austin apparently accepted Patriot's assertions that (1) its involvement with the infringement was "extremely attenuated[,]" (2) it didn't know about the infringement, and (3) it had no ability to control the infringement. The Magistrate Judge concluded that Patriot was not "an active participant in the alleged secondary infringement," that decisions were "made by Grande, not Patriot," and that Plaintiffs were seeking to "impose liability on Patriot solely because it provides services to Grande." Report at 20-21. Recent discovery, however, has disproven Patriot's assertions. Grande's own witnesses have testified that Patriot had and has full control over Grande's policies, including Grande's policy of not terminating known infringers. And contrary to Patriot's statement to the Court, Patriot owns an equity interest in Grande, meaning Patriot directly benefits from the substantial fees that Grande collects from known infringing subscribers. It is now clear, as Plaintiffs originally alleged, that Patriot was central in the decisions that make both Grande and Patriot liable to Plaintiffs for copyright infringement.

Plaintiffs should be allowed to amend the Complaint to replead claims that were dismissed based on Defendants' assertions that have now been proven untrue. Granting the motion will serve justice by ensuring that Plaintiffs have the opportunity to obtain full relief from both parties responsible for the rampant infringement of Plaintiffs' copyrighted works.

## LEGAL STANDARD

"When a plaintiff's complaint fails to state a claim, the court should generally give the plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with

prejudice."[1] *Royalty Clearinghouse, Ltd. v. CTS Properties, Ltd.*, 2017 WL 5071340, at *21 (W.D. Tex. July 12, 2017) (Lane, M.J.), *report and recommendation adopted,* 2017 WL 5127241 (W.D. Tex. Aug. 4, 2017) (Yeakel, J.).  A motion for leave to amend filed after the deadline for amendment in a scheduling order must show good cause under Rule 16(b)(4). *Bd. of Regents, The Univ. of Texas Sys. v. Tower Car Wash, Inc.*, 2011 WL 13234685, at *2 (W.D. Tex. Nov. 16, 2011).[2]  "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave." *S&W Enterp., L.L.C. v. SouthTrust Bank of Al., NA*, 315 F.3d 533, 536 (5th Cir. 2003).

Under Rule 15(a)(2), "[l]eave to amend should be freely given and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." *U.S. ex rel. Adrian v. Regents of Univ. of California*, 363 F.3d 398, 403 (5th Cir. 2004).  "Although a court may dismiss the claim, it should not do so without granting leave to amend, unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n. 6 (5th Cir. 2000) (citing *O'Brien v. Nat'l Prop. Analysts Partners,* 936 F.2d 674, 675-76 (2d Cir. 1991)).

---

[1] Plaintiffs do not intend in this motion to revisit the Magistrate Judge's conclusions regarding the sufficiency of the allegations as pled in Plaintiffs' original Complaint.  However, to the extent the Court has adopted the recommendation that the dismissal of Plaintiffs' vicarious liability and claims against Patriot be with prejudice, this motion is also a motion for reconsideration.  *See* F.R.C.P. 54 ("Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."); *Onofre v. C.R. England, Inc.*, No. 5:15-CV-425-DAE, 2017 WL 4082366, at *2 (W.D. Tex. July 24, 2017).

[2] "Four factors are relevant to good cause: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *Id.*

**ARGUMENT**

Good cause exists to allow Plaintiffs to amend, because the facts that form the basis of the amendment were not available to Plaintiffs before the December 1, 2017 amended pleading deadline (Dkt. 47 and 51).  Grande first produced emails to Plaintiffs on December 12, 2017.  The depositions of Grande witnesses (during which Plaintiffs learned facts upon which this motion is based) took place on February 21 and 22, 2018.

In seeking dismissal, Grande and Patriot denied many of the allegations in the Complaint and made various representations about Patriot's role.  But discovery has proven Defendants' denials and representations to be false.  This motion to amend raises important issues:  it seeks to ensure that Patriot cannot escape liability for its conduct based on misinformation, and to ensure that Plaintiffs can pursue legal claims that are supported by the facts.  Granting the motion will not prejudice Patriot or Grande in any way.  Patriot has been on notice of these claims since the filing of this suit and has been subject to party discovery until now.  Neither discovery nor other aspects of the case will be delayed by allowing Plaintiffs to replead.

**I.   GRANDE'S AND PATRIOT'S WILLFUL REFUSAL TO TERMINATE A SINGLE CUSTOMER FOR COPYRIGHT INFRINGEMENT FOR MORE THAN FIVE YEARS IN ORDER TO PROFIT FROM INFRINGING USERS CONSTITUTES VICARIOUS COPYRIGHT INFRINGEMENT.**

Two elements establish a claim for vicarious liability: "the right and ability to supervise the infringing activity" and "a direct financial interest in such activities."  *Crabshaw Music v. K-Bob's of El Paso, Inc.*, 744 F. Supp. 763, 767-68 (W.D. Tex. 1990).  The Magistrate Judge held that Grande satisfies the first element.  Report at 17.  But the Report found that Plaintiffs supposedly failed to plead the direct financial benefit element.  Plaintiffs' original Complaint alleged both that copyrighted works were a draw to Grande's users and that Grande directly profited from its users' infringement.  Discovery in this case reveals that Plaintiffs were correct:

***Grande refused to terminate a single user for copyright infringement from at least 2011 through 2016, while continuing to profit from the fees paid by infringing users.*** See Ex. A, Rohre Dep. at 203-206.  Patriot continued this total refusal to terminate infringers after assuming management responsibilities over Grande in 2013.

The case law supports holding Grande and Patriot liable for vicarious liability on these facts.  In *Fonovisa, Inc. v. Cherry Auction, Inc.*, the Ninth Circuit held that swap meet owners could be liable for vicarious infringement because "the defendants reap substantial financial benefits from admission fees, concession stand sales and parking fees, all of which flow directly from customers who want to buy the counterfeit recordings at bargain basement prices."  76 F.3d 259, 263 (9th Cir. 1996).  Similarly, Grande's own witnesses have now confirmed that Grande reaps substantial profits from failing to terminate infringing subscribers.  For example, the evidence shows that (1) Grande identifies and tracks its infringing customers (Ex. B., Horton Dep., at 76:1-8); (2) those infringing customers are overwhelmingly "a la carte" internet customers—meaning that the customer purchases only internet service from Grande, but not cable or phone service (Ex. A., Rohre Dep., at 199:9-20); (3) Grande's profit margin on "a la carte" internet customers is the highest of any of its business lines (*id.* at 58:16-19); (4) Grande did not terminate ***a single user for copyright infringement from 2011-2016*** (*id.* at 97:15-21); and (5) in each of those years Grande continued to accept payment from users regardless of how many notices of infringement Grande received for a given user (*id.* at 204:13-18).  "Turning a blind eye to detectable acts of infringement for the sake of profit gives rise to liability." *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001).  That is exactly what Grande has done for years; its conduct renders it liable for vicarious copyright infringement.

Documents Grande recently produced contain facts supporting Plaintiffs' claims for vicarious liability. But Grande has designated these documents as "Classified Information" under the Court's Protective Order [Dkt. 41], and thus they must be filed under seal. *See* Plaintiffs' Motion for Leave to File Under Seal (filed herewith).

## II.   DISCOVERY CONFIRMS PATRIOT'S CENTRAL ROLE IN THE INFRINGING CONDUCT.

"All participants in copyright infringement are jointly and severally liable as tortfeasors." *Broad. Music, Inc. v. Armstrong*, 2014 WL 2440556, at *8 (W.D. Tex. May 30, 2014) (internal citation omitted). Indeed, "[i]t is well established that '[a]ll persons and corporations who participate in, exercise control over or benefit from an infringement are jointly and severally liable as copyright infringers.'" *Arista Records LLC v. Lime Grp., LLC,* 784 F. Supp. 2d 398 (S.D.N.Y. 2011) (collecting cases). The facts adduced in discovery, which Plaintiffs should be permitted to replead in their Amended Complaint, establish beyond doubt that Patriot "participate[d] in, exercise[d] control over or benefit[ted] from [the] infringement" of Plaintiffs' copyrights.

### A.   Grande Has Admitted That Patriot Sets Grande's Policies—Including Grande's Policy of Never Terminating Subscribers for Copyright Infringement.

Plaintiffs' Complaint alleged that (1) Grande chose not to terminate repeat infringers and (2) Patriot is jointly liable for that choice because of its role in setting Grande's policies. Complaint [Dkt. 1] ¶ 55. In moving to dismiss, Patriot claimed it had "extremely attenuated involvement in the alleged infringement," and argued that Plaintiffs' claims against Patriot fail because they "focus[] on Patriot's alleged generic management services, formulation of unspecified policies, and performance of other vague responsibilities for Grande." Patriot Reply [Dkt. 38] at 1, 7. Patriot reiterated this argument at the motion to dismiss hearing: "Where's the knowledge? Where's the ability to control? Where's the ability to supervise? Where is the affirmative act? None of those things exist." Ex. C, Hr'g Tr. at 46: 22-24. The Magistrate Judge appeared to credit

Patriot's description of the facts in his assessment that "whatever decisions Grande made that might impose liability on it, they were made by Grande, not Patriot." Report at 20.

Discovery has since revealed Patriot's central role in the alleged infringement, directly contrary to Defendants' assertions in their motion to dismiss briefing and at oral argument. In fact, as the Amended Complaint reflects, discovery has confirmed Plaintiffs' allegations and refuted Patriot's characterizations made to the Court:

| **DEFENDANTS' ASSERTIONS** | **ADMISSIONS IN DISCOVERY** |
|---|---|
| **PATRIOT'S ROLE IN SETTING GRANDE'S POLICIES** ||
| **Patriot's Motion to Dismiss [Dkt. 29 at 3]** "Due to Patriot's extremely attenuated involvement in the alleged infringement, Plaintiffs' necessarily vague and conclusory allegations fail to state such a claim for secondary copyright infringement." <br><br> **Patriot Reply ISO Motion to Dismiss [Dkt. 38 at 7]** "The Complaint lacks any non-conclusory allegation regarding Patriot's management services and therefore fails to sufficiently allege that Patriot has the power and right to stop any Grande subscriber from conducting alleged copyright infringement. Plaintiffs' response ignores this deficiency, focusing instead on Patriot's alleged generic management services, formulation of unspecified policies, and performance of other vague responsibilities for Grande." <br><br> **Oral Argument (Ex. C, Hr'g Tr. at 46:19-25).** "MR. BROPHY: Okay. So then the question is, if they're going to be -- alleged to be a secondary infringer, where are the pleadings of all the various elements that need to be in place? Where's the knowledge? Where's the ability to control? Where's the ability to supervise? Where is | **Matt Rohre (Grande GM) Ex. A at 35:17-36:2.** Q. What services does Patriot handle for Grande from a management standpoint? *A. They handle overall strategy.* It's basically all of our C-level executives, CFO, CEO, COO. They handle some marketing oversight, legal functions, regulatory functions and programming negotiation support. *Q. So Patriot sets your policy? A. In many cases, yes.* Q. Policies I meant to say. That's a yes? *A. Correct.* <br><br> **Lamar Horton (Grande DMCA Agent) Ex. B at 299:25-300:7** Q. So since 2015, at the weekly staff meetings, the subject of the DMCA process at Grande has never been discussed to your recollection? A. Not that I recall. And if it was, it was not a -- there was no details or making decisions or policy-type discussions. *Our perspective is that what we're doing or not doing was started with ABB and transitioned to Patriot.* <br><br> **Lamar Horton Dep., Ex. B at 267:23-268:3.** "[T]hat direction would only come from Patriot, meaning, if there was a project to be executed and Patriot wanted Grande to, for example, do the same thing that RCN's doing and let one of RCN's employees help manage it for us, that would be at the direction of Patriot." <br><br> **Matt Rohre (Grande GM) Ex. A, p. 119:2-24** |

| | |
|---|---|
| the affirmative act? None of those things exist. They don't even provide the service. They, at best, help Grande understand how to provide the service."<br><br>**Oral Argument (Ex. C, Hr'g Tr. at 75:7-10).**<br>"MR. HOWENSTINE: And, you know, again, as Mr. Brophy talked about, in the context of the claims against Patriot, we have Patriot which is just really far removed from the actual conduct that is at issue here." | Q. Because Grande concluded that its previous policies did not entitle it to the DMCA safe harbor, Grande changed its DMCA policy in February 2017; is that correct?<br>A. I don't know that it was specifically because of the safe harbor, but I do know that we changed our policies in the beginning of 2017.<br>20 Q. Why?<br>[…Objection…]<br>A. I don't -- I don't know that I did and I wasn't part of the decision-making process on changing the policy. ***That was done with Patriot employees and folks that actually operationalize it every day.***<br>Q. You're the most senior person in the Grande operation, correct?<br>A. Correct. |

**B. Grande Has Admitted Patriot's Direct Financial Benefit.**

Plaintiffs' original Complaint alleged that Patriot and Grande "made an affirmative decision to contribute to known copyright infringement and to continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth." Complaint [Dkt. 1] ¶ 53. Courts have held that an ownership interest in another entity is sufficient to establish direct financial benefit for vicarious infringement: an "entitle[ment] to participate in the profits of the business" suffices to establish direct financial benefit. *EMI Apr. Music Inc. v. Know Grp., LLC*, No. 3:05-CV-1870-M, 2006 WL 3203276, at *3 (N.D. Tex. Nov. 6, 2006) (*citing Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002)).

Patriot's motion disclaimed "any direct financial benefit from the alleged direct infringement of Grande's subscribers." Patriot Mot. to Dismiss [Dkt. 29] at 7. At oral argument, Patriot went further and denied that Patriot has an ownership interest in Grande. But Grande's General Manager refuted this claim under oath.

| **DEFENDANTS' ASSERTIONS** | **ADMISSIONS IN DISCOVERY** |
|---|---|
| *"THE COURT: Does Patriot have an ownership interest in these ISPs?* | Q. Does Patriot have any ownership of Grande?<br>A. Yes. |

| | |
|---|---|
| MR. BROPHY: No.[3]<br>THE COURT: Just a standalone business that says we'll help run your ISP?<br>MR. BROPHY: That's exactly right. That's exactly right.<br>THE COURT: That's their business?<br>MR. BROPHY: That's their business.<br><br>**Ex. C, Hr'g Tr. at 45:17-25.** | Q. Do you know how much?<br>A. Not specifically, no.<br>Q. Minority shareholder?<br>A. Yes.<br>. . .<br>Q. So when they were first hired, part of their compensation was ownership as well, some ownership in Grande?<br>A. Yes, I believe so.<br>Q. Okay.<br>A. I don't know the specifics.<br>***Q. Okay. But you think, to the best of your knowledge, in 2013 when Patriot came in, they had some ownership starting in 2013?***<br>***A. Correct. Defined as equity interest.***<br><br>**Matt Rohre (Grande GM) Ex. A, pp. 33:13-34:23** |

This "equity interest" in Grande constitutes a direct financial benefit to Patriot from increased profits Grande enjoys by refusing to terminate infringing subscribers. *See Nelson-Salabes, Inc.*, 284 F.3d at 514 (parent company directly benefitted from infringement by virtue of its ownership). In short, there is ample evidence that Patriot participated in, exercised control over, and benefited from the infringing conduct. That gives rise to Patriot's secondary infringement liability as a matter of law. The Court should allow Plaintiffs to replead Patriot as a defendant.

### III.   GOOD CAUSE EXISTS TO ALLOW PLAINTIFFS TO AMEND.

Plaintiffs plainly satisfy the standard for receiving leave to amend under Rules 16(b)(4) and 15(a). Plaintiffs are filing the motion after the amendment deadline simply because Defendants did not produce the relevant facts in discovery until after that deadline passed. And those facts are critical, because they contradict Defendants' claims to the Court in moving to

---

[3] During a May 2, 2018 teleconference, Grande's counsel expressed the belief that Defendants' counsel was mistaken in denying Patriot's ownership stake in Grande at oral argument in response to Magistrate Judge Austin's question. Defendants have taken no action to correct the record of their inaccurate statement to the Court regarding Patriot's ownership of Grande, despite having knowledge of this fact since at least February 22, 2018, when Mr. Rohre was deposed.

9

dismiss.  Moreover, given that both Patriot and Grande have been participating in discovery until the dismissal, allowing Plaintiffs to replead their claims against them will not prejudice Defendants in any way.  Nor will it cause any delay in the litigation of this case.  Repleading will not require the parties to exchange new discovery requests (in fact, Patriot was prepared to produce documents until it was dismissed from the case), nor require additional time for summary judgment or trial.

With good cause established, the permissive standard of Rule 15(a) applies.  Plaintiffs seek leave to amend their Complaint (for the first time) to plead facts (1) admitted by Defendants that (2) refute the stated bases for dismissing Plaintiffs' vicarious liability claim against Grande and both claims against Patriot.  As set forth above, the new allegations state a claim for which relief can be granted; the amendment is for a proper purpose, and is not futile.  Indeed, courts routinely allow amendment under Rules 16(a) and 15(b) in less compelling circumstances.  *See Bd. of Regents, The Univ. of Texas Sys. v. Tower Car Wash, Inc.*, 2011 WL 13234685, at *1 (W.D. Tex. Nov. 16, 2011) (Yeakel, J.) (allowing amendment despite finding that the moving party could have discovered the facts earlier, because there was sufficient time left in the case schedule and the party being added had been participating in discovery); *see also Wells Fargo Bank, N.A. v. Farkas*, 2016 WL 7655787 (W.D. Tex. Aug. 12, 2016) (permitting amendment despite no justification for the timing of the request and discovery having already closed); *Markel Am. Ins. Co. v. Verbeek*, 2015 WL 5511242, at *5 (W.D. Tex. Sept. 17, 2015) (Lane, M.J.) (permitting amendment even after dispositive motions deadline), *report and recommendation approved* 2015 WL 11439067 (W.D. Tex. Oct. 21, 2015) (Yeakel, J.), *aff'd*, 657 F. App'x 305 (5th Cir. 2016).

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant leave to amend to replead Plaintiffs' vicarious liability claims and all claims against Patriot.

Dated: May 3, 2018                                     Respectfully submitted,


                                                       By:  */s/ Daniel C. Bitting*

                                                       Daniel C. Bitting (State Bar No. 02362480)
                                                       Paige A. Amstutz (State Bar No. 00796136)
                                                       **Scott Douglass & McConnico LLP**
                                                       303 Colorado Street, Suite 2400
                                                       Austin, TX 78701
                                                       Telephone: (512) 495-6300
                                                       Facsimile: (512) 495-6399
                                                       dbitting@scottdoug.com
                                                       pamstutz@scottdoug.com

                                                       Pat A. Cipollone, P.C. (admitted *pro hac vice*)
                                                       Jonathan E. Missner (admitted *pro hac vice*)
                                                       Robert B. Gilmore (admitted *pro hac vice*)
                                                       Philip J. O'Beirne (admitted *pro hac vice*)
                                                       **Stein Mitchell Cipollone Beato & Missner LLP**
                                                       1100 Connecticut Avenue, NW Suite 1100
                                                       Washington, DC 20036
                                                       Telephone: (202) 737-7777
                                                       Facsimile: (202) 296-8312
                                                       pcipollone@steinmitchell.com
                                                       jmissner@steinmitchell.com
                                                       rgilmore@steinmitchell.com
                                                       pobeirne@steinmitchell.com

                                                       ***Attorneys for Plaintiffs***

## CERTIFICATE OF CONFERENCE

I certify that counsel for Plaintiffs, Philip J. O'Beirne, conferred with counsel for Defendants regarding the foregoing Motion for Leave. Defendants oppose the requested relief.

By: */s/ Philip J. O'Beirne*
Philip J. O'Beirne

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 3, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting