**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., CAPITOL RECORDS, LLC, WARNER BROS. RECORDS INC., SONY MUSIC ENTERTAINMENT, ARISTA RECORDS LLC, ARISTA MUSIC, ATLANTIC RECORDING CORPORATION, CAPITOL CHRISTIAN MUSIC GROUP, INC., ELEKTRA ENTERTAINMENT GROUP INC., FONOVISA, INC., FUELED BY RAMEN LLC, LAFACE RECORDS LLC, NONESUCH RECORDS INC., RHINO ENTERTAINMENT COMPANY, ROADRUNNER RECORDS, INC., ROC-A-FELLA RECORDS, LLC, TOOTH & NAIL, LLC, and ZOMBA RECORDING LLC, | § § § § § § § § § § § § § § § § § § § | Civil Action No. 1:17-cv-365<br><br>Jury Trial Demanded |
|      Plaintiffs, | § § | |
| vs. | § § | |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC, | § § § § § | |
|      Defendants. | § | |

## <u>PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Plaintiffs file their First Amended Complaint against Defendants and would respectfully show the Court as follows:

## I.   <u>INTRODUCTION</u>

1.     This is a case about the ongoing infringement of Plaintiffs' copyrights by Grande Communications Networks LLC ("Grande"), its management company Patriot Media Consulting, LLC ("Patriot," and together with Grande, "Defendants"), and its internet service users, and Defendants' failure and refusal to prevent these users from repeatedly infringing those copyrights.

2.     Plaintiffs are record companies that produce, manufacture, distribute, sell, and license the great majority of all legitimate commercial sound recordings in this country.

3.     Defendant Grande is a Texas Internet Service Provider ("ISP") that provides internet services to customers in Austin, Dallas, San Antonio, and other locations throughout the state.  Defendant Patriot is a company that has provided, and continues to provide, management services to Grande.  Patriot manages Grande's overall strategy and sets its policies, including policies regarding copyright infringement.

4.     Defendants have been notified that their internet customers have engaged ***in more than one million infringements*** of copyrighted works over BitTorrent systems (as described herein), including ***tens of thousands of blatant infringements by repeat infringers of Plaintiffs' copyrighted works***.  Despite their knowledge of repeat infringements, Defendants have permitted repeat infringers to use the Grande service to continue to infringe Plaintiffs' copyrights without consequence.  Grande and Patriot took no meaningful action to discourage this continuing theft, let alone suspend or terminate subscribers who repeatedly commit copyright infringement through its network, as required by law.

5.     The evidence in this case reveals that, until 2010, Grande actually suspended and may even have terminated known repeat infringing customers.  But then, from 2011 to 2016, Defendants made the conscious decision ***not to terminate*** a single Grande subscriber for copyright infringement, regardless of how much proof they received, from any source, of those subscribers'

2

blatant, repeat infringement.  It was not until after this lawsuit was filed in April 2017 that Grande resumed terminating known repeat infringers (thus acknowledging implicitly that its prior conduct was unlawful).  Still, Grande has failed to terminate the overwhelming majority of repeat infringing customers about whom it has received infringement notices, even in the past year.

6.     Defendants' policy of refusing to take meaningful action against repeat infringers (a practice that did not end until after this lawsuit was filed) protects a significant revenue stream that Grande receives every month from its many infringing subscribers.  Grande's infringing customers are largely "a la carte" internet customers, Grande's most profitable customers by profit margin—a fact that Defendants track and know.

7.     Defendants' effective acquiescence in this wholesale violation of Plaintiffs' rights, coupled with their failure to adopt and reasonably implement a policy to stop repeat infringers, excludes Defendants from the safe harbor protections of the Digital Millennium Copyright Act ("DMCA").  As a result, Defendants' knowledge of repeat infringements by identified subscribers occurring on Grande's service, along with their material contribution to, participation in, enablement of, and profiting from such infringement, renders Defendants liable for contributory and vicarious copyright infringement, and inducement of copyright infringement.

8.     Plaintiffs invest significant amounts of money, time, and effort to discover and develop recording artists, and to create, manufacture, advertise, promote, sell, and distribute sound recordings embodying their performances.  Defendants' actions, including their refusal to prevent their users' repeat infringement of Plaintiffs' works, have caused — and continue to cause — Plaintiffs significant and irreparable harm.  Defendants' acts of infringement have eroded the legitimate sales and distribution of Plaintiffs' copyrighted sound recordings through physical and digital channels.  Plaintiffs are entitled to preliminary and permanent injunctive relief to stop

Defendants' ongoing violation of Plaintiffs' rights, as well as damages resulting from Defendants' egregious infringing conduct.

## II.     JURISDICTION AND VENUE

9.     This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).

11.     This Court has personal jurisdiction over Grande because Grande resides in and does systematic and continuous business in Texas and in this judicial district.  Grande provides a full slate of services in Texas, including internet, TV, and phone service, among others.  Grande's corporate headquarters are located at 401 Carlson Circle, San Marcos, Texas, within this judicial district and division.  Grande also has stores and service centers within this judicial district and division, including one at 911 W. Anderson Lane, Suite 123, Austin, TX 78757.

12.     This Court has personal jurisdiction over Patriot because Patriot does systematic and continuous business in Texas and in this judicial district and division, including providing executive and general counsel services to Grande at and through its corporate headquarters.

13.     In addition, many of the acts complained of herein occurred in Texas and in this judicial district.  For example, many of the most egregious repeat infringers on Grande's network reside in Texas and in this judicial district.  Plaintiffs have identified hundreds of accounts of Grande subscribers suspected of residing in Texas who have repeatedly infringed one or more of Plaintiffs' copyrighted works.

14.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)-(c), and/or 28 U.S.C. § 1400(a).  A substantial part of the acts of infringement complained of herein occurs or has occurred in this judicial district, where Grande resides or may be found.

### III.   THE PARTIES

**A.   Plaintiffs**

15.   Plaintiff UMG Recordings, Inc. is a Delaware corporation with its principal place of business in Santa Monica, California.

16.   Plaintiff Capitol Records, LLC is a Delaware limited liability company with its principal place of business in Santa Monica, California.

17.   Plaintiff Warner Bros. Records Inc. is a Delaware corporation with its principal place of business in Burbank, California.

18.   Plaintiff Sony Music Entertainment is a Delaware partnership with its principal place of business in New York, New York.

19.   Plaintiff Arista Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

20.   Plaintiff Arista Music is a New York partnership with its principal place of business in New York, New York.

21.   Plaintiff Atlantic Recording Corporation is a Delaware corporation with its principal place of business in New York, New York.

22.   Plaintiff Capitol Christian Music Group, Inc. is a California corporation with its principal place of business in Santa Monica, California.

23.   Plaintiff Elektra Entertainment Group Inc. is a Delaware corporation with its principal place of business in New York, New York.

24.   Plaintiff Fonovisa, Inc. is a California corporation with its principal place of business in Santa Monica, California.

25.   Plaintiff Fueled by Ramen LLC is a Delaware limited liability company with its principal place of business in New York, New York.

26.     Plaintiff LaFace Records LLC is a Delaware limited liability company with its principal place of business in New York, New York.

27.     Plaintiff Nonesuch Records Inc. is a Delaware corporation with its principal place of business in New York, New York.

28.     Plaintiff Rhino Entertainment Company is a Delaware corporation with its principal place of business in Burbank, California.

29.     Plaintiff Roadrunner Records, Inc. is a New York corporation with its principal place of business in New York, New York.

30.     Plaintiff Roc-A-Fella Records, LLC is a New York limited liability company, with its principal place of business in New York, New York.

31.     Plaintiff Tooth & Nail, LLC is Delaware corporation with its principal place of business in Santa Monica, California.

32.     Plaintiff Zomba Recording LLC is a Delaware limited liability company with its principal place of business in New York, New York.

33.     Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Warner Bros. Records Inc., Sony Music Entertainment, Arista Records LLC, Arista Music, Atlantic Recording Corporation, Capitol Christian Music Group, Inc., Elektra Entertainment Group Inc., Fonovisa, Inc., Fueled by Ramen LLC, LaFace Records LLC, Nonesuch Records Inc., Rhino Entertainment Company, Roadrunner Records, Inc., Roc-A-Fella Records, LLC, Tooth & Nail, LLC, and Zomba Recording LLC are collectively referred to herein as "Plaintiffs."

**B.     Defendants**

34.     Upon information and belief, Grande is a limited liability company organized and existing under the laws of the State of Delaware, with its headquarters at 401 Carlson Circle, San Marcos, TX 78666.

35.     Upon information and belief, Patriot is a limited liability company organized and existing under the laws of the State of New Jersey, with its headquarters at 650 College Road East, Suite 3100, Princeton, NJ 08540.  Patriot has provided, and continues to provide, management services to Grande, including developing Grande's overall strategy and setting its policies, including policies regarding copyright infringement.

## IV.   FACTUAL BACKGROUND

### Plaintiffs' Extensive and Valuable Copyrights

36.     Plaintiffs are the copyright owners of, or owners of exclusive rights with respect to, the great majority of copyrighted sound recordings sold in the United States, including sound recordings embodying the performances of some of the most popular and successful recording artists of all time, from Aerosmith to ZZ Top, Michael Jackson to Pink Floyd, Kanye West to Tony Bennett, Rihanna to Carrie Underwood, and many more.  Plaintiffs have invested, and continue to invest, significant money, time, effort, and creative talent to create, promote, sell, and license their sound recordings.

37.     Plaintiffs distribute and sell their sound recordings in the form of CDs and other tangible media throughout the United States, including in Texas.  Plaintiffs also sell, distribute, publicly perform and/or license their sound recordings in the form of digital audio files through legitimate and authorized digital services, such as iTunes, Amazon, Apple Music, Napster (formerly Rhapsody), and Spotify, which are available throughout the United States, including in Texas.

38.     Under the Copyright Act, Plaintiffs have the exclusive rights, among other things, to "reproduce the copyrighted work[s]," to "distribute copies or phonorecords of the copyrighted work[s] to the public," to "perform the copyrighted work publicly by means of a digital audio transmission," as well as to authorize or license such activities.  17 U.S.C. § 106.

39.     A non-exhaustive, illustrative list of Plaintiffs' federally copyrighted sound recordings that Defendants have illegally reproduced, distributed, and/or publicly performed for their users is attached hereto as Exhibit A (the "Copyrighted Sound Recordings").  Plaintiffs have received Certificates of Copyright Registration from the Register of Copyrights for each of these Copyrighted Sound Recordings and/or have submitted complete applications for such registrations to the Copyright Office.

**Copyright Infringement Accomplished Over BitTorrent Systems**

40.     Massive online infringement of copyrighted music and other digital works is a significant problem for the record industry, as well as for other content-owning industries. Historically, infringement occurred largely by an internet user downloading an entire copyrighted work from a website.  Then peer-to-peer (P2P) services, such as Napster and Grokster, enabled internet users to obtain copyrighted works directly from another internet user, limiting the effectiveness of measures taken against websites hosting copyrighted works for download on the internet.  Now infringement frequently occurs over BitTorrent networks that distribute the copyrighted works in small pieces using many users' computers working together.  BitTorrent systems allow users to join a "swarm" of collaborating host computers to download and upload copyrighted works from each other simultaneously.  When a file is requested, BitTorrent software identifies multiple computers hosting the identical file, takes small pieces of the requested file from each of those host computers, and downloads them simultaneously onto the requester's computer where they will be reassembled into one file.  These pieces become immediately available for further distribution and download to other infringing users.

41.     BitTorrent allows large files, such as entire catalogs of recordings, to be transferred quickly and efficiently, all for free and without authorization from the owner of that content.

Moreover, the BitTorrent systems are designed so that the more files a user offers for download to others, the faster the user's own downloads become.  In this manner, BitTorrent systems reward the users who make the most copyrighted works available for download.  This results in a much more efficient system for unauthorized copying – speeding up the process and shrinking the internet connection bandwidth for uploading and downloading.  In a 2013 report, NetNames estimated that 99.97% of non-pornographic files distributed by BitTorrent systems infringe copyrights, and there is no evidence that this figure has changed since.

42.     The Copyright Act of 1976 ("Copyright Act") imposes liability not only on those that directly infringe copyrights, but also on those that induce or contribute to such infringement, or are vicariously liable for its occurrence.  This is the case whether the infringement pertains to physical product or digital files over the internet.

43.     When infringement occurs via the use of services provided by ISPs, the DMCA offers a safe harbor from secondary copyright infringement liability to innocent ISPs that satisfy certain statutory conditions.  As a threshold matter, to be eligible for the safe harbor, an ISP is required, among other things, to adopt and reasonably implement a policy that provides for the termination of subscribers and account holders that are repeat copyright infringers.

44.     As noted above, Plaintiffs are well-known record companies.  They are in the business of producing, manufacturing, distributing, selling, licensing, and facilitating the distribution, sale, public performance, and other authorized uses of sound recordings (*i.e.*, recorded music) to which they own or control exclusive rights in copyright in the United States.  The considerable artistic quality of Plaintiffs' sound recordings is well-known in Texas, and throughout the United States and the world.

45.     In an effort to combat the massive pirating of their copyrighted works, certain rights holders have engaged Rightscorp, Inc. ("Rightscorp"). Rightscorp has developed a technological system that identifies actual infringements and the perpetrators of these infringements (by IP address, port number, time, and date). It does so by monitoring BitTorrent systems and extracting information about the infringing activity, including, *inter alia,* the IP address, the ISP, the infringing content, and the suspected location of the host computer accessing BitTorrent networks. Rightscorp's system also has the capability to acquire entire files from the infringing host computers. Using this system, Rightscorp has notified ISPs, including Grande, of specific instances of first-time and repeat copyright infringement committed by their account holders and has requested that the ISPs, including Grande, notify their account holders of these infringements. Rightscorp's system has acquired from the infringing host computers of Grande's users at least one full copy of each of the Copyrighted Sound recordings listed in Exhibit A.

### Defendants' Knowledge of Extensive and Continuing Copyright Infringement by Grande's Subscribers

46.     Grande provides its subscribers with high-speed internet service. It claims that "Grande Internet service provides you with an online experience that delivers unlimited access to a wealth of resources." *See* http://mygrande.com/internet. And, "with speeds up to 1 GB, Grande offers the fastest Internet speeds in town to support your entire family online at once." *Id.* In exchange for this service, Grande charges its subscribers monthly fees ranging from approximately $29.99 for 50 Mbps download speeds and 5 Mbps upload speeds, to approximately $64.99 for 400 Mbps download speeds and 20 Mbps upload speeds. *Id.*

47.     Patriot performs the functions of Grande's CEO, CFO, and COO; develops Grande's overall business strategy; and handles various marketing, legal, regulatory, and other functions for Grande. In particular, Patriot sets Grande's policies, including policies relating to

copyright infringement. Patriot also has an ownership interest in Grande and has had such an interest since at least 2013.

48. After purchasing high-speed internet access from Grande, subscribers can access BitTorrent networks and upload and download copyrighted works with ease and increasing speed, depending upon the level of Grande service that the subscribers purchase. Thus, Grande provides its subscribers with a fully functioning system that allows them to engage in copyright infringement on a massive scale using BitTorrent networks. And for those subscribers who want to pirate more and larger files at faster speeds, Grande obliges them in return for higher fees. The greater the bandwidth its subscribers require for pirating content, the more money Grande receives.

49. Customers can purchase various combinations of services from Grande, including phone, television, and internet services. Customers that purchase only one service, such as internet service, are referred to as "a la carte" customers. Internet-only a la carte customers are Grande's most profitable customers by margin.

50. Having created and (for a monthly fee) provided its subscribers with the site and facilities to engage in copyright infringement, Defendants are required to implement a policy that effectively addresses repeat infringers if it desires safe harbor protection under the DMCA. However, Defendants have chosen not to adopt or reasonably implement such a policy.

51. Prior to late 2010, Grande actually suspended and terminated infringing users for whom it had received a notice of the users' wrongful activity. But beginning in late 2010, and continuing at least through early 2017, Grande changed course: it consciously refused to terminate a single subscriber for copyright infringement, regardless of how many notices of infringement Grande received concerning a given subscriber, from any source whatsoever. In fact, Grande did not resume terminating infringing customers until *after this suit was filed*—a telling implicit

admission that its prior conduct violated the law. But even in the past year, Grande has allowed the overwhelming majority of known infringing users to remain as paying subscribers, free to continue to use Grande's internet service to infringe on Plaintiffs' Copyrighted Sound Recordings.

52.     Documents produced by Grande and Patriot in this case reflect this failure to terminate infringing subscribers. Attached to this Amended Complaint as Exhibit B (filed under seal pursuant to this Court's Protective Order) are examples of such documents reflecting Grande's failure to terminate infringing subscribers.

53.     Rightscorp has provided Grande with notice of specific infringers using Grande's internet service to infringe various copyrighted works. Rightscorp also requested that Grande terminate the "subscribers and account holders" who are repeat infringers of copyrighted works. Despite its knowledge of specific repeat infringers of copyrighted works, Grande refused to do so: ***Grande's general manager admitted that the company did not terminate a single subscriber for copyright infringement in 2011, 2012, 2013, 2014, 2015, or 2016***. This was the case no matter how many notices of copyright infringement Grande received, from any source, pertaining to any given customer.

54.     The notifications Grande received were based upon a software system Rightscorp developed and employed. This system identifies specific actual infringements of various copyrighted works and the users of BitTorrent networks who infringe these copyrighted works. At its most basic level, the software searches for specific copyrighted content. When it communicates with a host computer using BitTorrent that acknowledges it has specific copyrighted content available for unauthorized distribution, the software will log certain identifying information (*e.g.*, the IP address and port number of the host computer, the date and time the host computer offered the content, the name of the host computer's ISP, and information

about the infringing file).  Upon collecting this information, Rightscorp sends a notice of infringement to Grande, detailing the exact nature of the infringement(s).  Each notice requests that Grande forward the notice to the corresponding Grande subscriber, because only Grande, as the ISP, can identify and contact the account holder.  Thereafter, Grande's network is continuously monitored to determine if the same subscriber is a repeat infringer who continues to infringe copyrighted works.  If repeat infringement is detected, Grande is further notified.

55.    Through this process, Grande has been put on notice and informed of more than one million infringements, and that thousands of subscriber accounts have engaged in repeated acts of copyright infringement.  Prior to April 2017, Grande received notice that 1,840 of its customers had each engaged in infringement *at least one hundred times*.  At least 456 of Grande's customers had generated 500 notices of infringement.   More than 208 customers each generated at least 1,000 notices of infringement.  And some of Grande's customers generated more than 2,000 notices of infringement each.  Because Rightscorp can only observe a small percentage of the overall activity of Grande subscribers, upon information and belief, the infringement Rightscorp reported to Grande likely is merely a small fraction of the infringing activity occurring over Grande's network.

56.    Grande has had actual and ongoing specific knowledge of the repeat infringements by its subscribers of the Copyrighted Sound Recordings occurring through the use of its service for years.  Through the role it plays for Grande, including performing all senior management functions, Patriot, too, has actual and ongoing specific knowledge of these repeat infringements, including as a result of Rightscorp's notifications.

57.    Documents produced by Grande and Patriot in this case reflect (1) Patriot's knowledge of infringement notices provided to Grande, and (2) Patriot's central role in setting

Grande's policies, including policies addressing copyright infringement. Attached to this Amended Complaint as Exhibit C (filed under seal pursuant to this Court's Protective Order) are examples of such documents reflecting Patriot's knowledge of, and involvement, in Grande's actions regarding copyright infringement committed by its users and its relevant policies.

58.     Nonetheless, Defendants have refused to take any meaningful action to discourage this wrongful conduct, let alone suspend or terminate the accounts of repeat infringers. The reason that Defendants have not done so is obvious—it would cause Grande to lose revenue from the subscription fees that these infringing customers pay to Grande, and also impact Patriot's financial benefit it receives by virtue of Patriot's ownership interest in Grande.

59.     By their actions, Defendants have intentionally ignored and continue to ignore the overwhelming evidence that provides them with actual knowledge of repeat copyright infringers on Grande's network. Grande cannot have any meaningful, effective repeat infringer policy, let alone one that is reasonably implemented as required by the DMCA, if it and its management services provider, Patriot, purposefully ignore notice of repeat infringers sent from copyright owners (through Rightscorp), who are tracking the repeat infringers on the Grande network and providing Defendants with actual knowledge of those repeat infringers on a daily basis.

60.     By ignoring the repeat infringement notifications and refusing to take action against repeat infringers, Defendants have made an affirmative decision to contribute to known copyright infringement and to continue reaping the substantial financial benefits in the form of subscription fees and fees for higher bandwidth. Defendants' conduct renders them ineligible for safe harbor immunity from copyright liability under the DMCA.

61.     Grande intentionally circumvented the DMCA's requirements by ignoring infringement notices and failing to take action against users it knew repeatedly and blatantly

committed copyright infringement.  Thus, Grande cannot as a matter of law avail itself of the safe harbor provided for by the DMCA, and is fully liable for these acts of infringement.

62.     Because it provided executive and general counsel services to Grande, Patriot is equally liable for Grande's failure to comply with its legal responsibilities and for the copyright infringement that resulted from those failures.  Patriot's infringing conduct includes, among other things, formulating and implementing the business policies, procedures, and practices that provide repeat infringers with continued internet service through Grande, without consequence.

63.     Defendants' infringing conduct includes providing the facilities and products necessary for its subscribers to commit direct infringement by delivering uninhibited access to the internet, as well as the system and technology that allow for the storage and transmission of data constituting the infringing files that comprise the Copyrighted Sound Recordings.  In addition to providing the site and facilities for the infringement, Defendants materially contribute to subscribers' direct infringement by providing continued access to account holders they know to be repeat infringers.

64.     Grande directly profits from repeat infringers.  Grande collects significant fees from its subscribers, and subscribers who frequently upload copyrighted content often pay higher monthly premiums for higher bandwidth.  Grande tracks the repeat infringers for whom it has received multiple notices.  And Grande also tracks that infringing customers in fact are, predominantly, internet-only a la carte subscribers—Grande's most profitable customers.  Thus, from 2011 until June 2017, a period when Grande refused to terminate a single infringing customer no matter how many notices of infringement Grande received relating to a customer, Grande purposefully reaped substantial profits from knowingly allowing infringing customers to continue to use Grande's internet service for their unlawful conduct.

65.     Grande has been notified of thousands of repeat infringers on the Grande network. Plaintiffs believe the total number of actual repeat infringers on the Grande network not known to Plaintiffs is drastically higher.

66.     Grande touts an internet service that provides its subscribers "with an online experience that delivers unlimited access to a wealth of resources"—"with speeds up to 1 GB"—which Grande advertises as "the fastest Internet speeds in town to support your entire family online at once."  It makes these representations while knowing that many of its subscribers use its service for copyright infringement.  Yet it willfully takes no action to prevent repeat infringement.  By these acts and omissions, Grande induces the infringement of Plaintiffs' copyrights by Grande's subscribers.

67.     Although it failed to terminate any subscribers for copyright infringement from 2011 until June 2017, Grande has tracked and continues to track information received alleging copyright infringement by its users.  Grande's own records reveal that the company knew the specific musical works that its infringing customers were downloading, including specifically Plaintiffs' Copyrighted Sound Recordings.  This evidence demonstrates that Plaintiffs' Copyrighted Sound Recordings were a draw to Grande's infringing customers, including customers Grande has identified as repeat infringers.

68.     Documents produced by Grande in this case reflect the draw presented to its customers specifically by Plaintiffs' Copyrighted Sound Recordings.  Attached to this Amended Complaint as Exhibit D (filed under seal pursuant to this Court's Protective Order) are examples of such documents.

69.     Despite the continuous and frequent notifications to Defendants of specific instances of infringement and repeat infringement committed by Grande's subscribers, and

Defendants' knowledge thereof, Defendants have refused to take action against any meaningful number of Grande subscribers who are repeat infringers, and Grande continues to collect substantial money in subscription fees from accounts of known repeat infringers.  Therefore, Defendants materially contribute to, financially benefit from, and induce the direct copyright infringement of Grande's subscribers.

## V.   <u>CAUSES OF ACTION</u>

### Count One – Secondary Copyright Infringement Against Grande
### 17 U.S.C. § 101 *et seq.*

70.   Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 69 as if fully set forth herein.

71.   As detailed herein, users of the Grande service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce, distribute, and publicly perform their Copyrighted Sound Recordings.

72.   Through its conduct, Grande knowingly and intentionally induced, enticed, persuaded, and caused its subscribers to infringe Plaintiffs' Copyrighted Sound Recordings, and continues to do so, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

73.   Through its activities, Grande knowingly and intentionally takes steps that are substantially certain to result in direct infringement of Plaintiffs' Copyrighted Sound Recordings, and that have resulted in such direct infringement, including but not limited to the direct infringement of those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

74.     Despite its knowledge that infringing material is made available to its subscribers by means of the Grande service, Grande has failed to take reasonable steps to minimize the infringing capabilities of its service.

75.     Grande is liable as a contributory copyright infringer for the infringing acts of its subscribers.  Grande has actual and constructive knowledge of the infringing activity of its subscribers.  Grande knowingly caused and otherwise materially contributed to these unauthorized reproductions and distributions of Plaintiffs' Copyrighted Sound Recordings, including but not limited to those sound recordings listed in Exhibit A hereto, and continues to do so.

76.     Grande is vicariously liable for the infringing acts of its subscribers.  Grande has the right and ability to supervise and control the infringing activities that occur through the use of its service, and at all relevant times has derived a direct financial benefit from the infringement of Plaintiffs' copyrights.

77.     Grande has refused to take any meaningful action to prevent the widespread infringement by its subscribers.  Indeed, the availability of music – and particularly Plaintiffs' music – acts as a powerful draw for users of Grande's service, who use that service to download infringing music files using BitTorrent protocols.

78.     Grande made the express decision in 2010 to cease terminating any subscriber for copyright infringement, regardless of the number of notices of copyright infringement Grande received regarding any particular user.  After Patriot assumed management responsibilities for Grande in 2013, Patriot directed Grande to continue this policy from 2013 onwards.  Thus, from 2011 through June 2017 (two months after Plaintiffs filed this suit), Grande failed to terminate a single user for copyright infringement.

79.     During that same period, Grande continued to accept payment from its subscribers regardless of the number of copyright infringement notices received.  Many of these repeat infringing subscribers were internet-only a la carte subscribers, Grande's most profitable customers—a fact that Grande specifically tracked and knew.

80.     Grande and Patriot purposefully ignored acts of infringement in order to continue to profit from fees from infringing users, and refused to terminate any infringing users from 2011 until June 2017 in order to avoiding losing those fees.

81.     Grande is therefore vicariously liable for the unauthorized reproduction, distribution, and public performance of Plaintiffs' Copyrighted Sound Recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

82.     Grande's infringement of Plaintiffs' rights in each of their Copyrighted Sound Recordings constitutes a separate and distinct act of infringement.

83.     Grande's acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

84.     As a direct and proximate result of Grande's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to up to the maximum amount of statutory damages, pursuant to 17 U.S.C. § 504(c), with respect to each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

85.     In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Grande's profits from infringement, in amounts to be proven at trial.

86.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

87.     Grande's conduct has caused, is causing, and, unless enjoined by this Court, will continue to cause Plaintiffs irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

**Count Two – Secondary Copyright Infringement Against Patriot**
**17 U.S.C. § 101 *et seq.***

88.     Plaintiffs repeat and reallege every allegation contained in paragraphs 1 through 87 as if fully set forth herein.

89.     As described above, users of the Grande service are engaged in repeat and pervasive infringement of Plaintiffs' exclusive rights to reproduce, distribute, and publicly perform their Copyrighted Sound Recordings.

90.     Upon information and belief, during the relevant period, Patriot was responsible for management of Grande, including performing executive, legal, and compliance responsibilities.

91.     Patriot knowingly and intentionally induced, enticed, persuaded, and caused Grande's subscribers to infringe Plaintiffs' copyrights in their sound recordings, and continues to do so, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.

92.     Through its management of Grande, Patriot knowingly and intentionally takes steps that are substantially certain to result in direct infringement of Plaintiffs' Copyrighted Sound Recordings, including but not limited to those sound recordings listed in Exhibit A hereto, in violation of Plaintiffs' copyrights.  These steps include, but are not limited to, developing Grande's overall strategy and setting Grande's policies and practices regarding copyright infringement,

including Grande's longtime refusal to terminate any subscriber for copyright infringement, regardless of the number of notices Grande received regarding a subscriber.

93.     Despite its knowledge that infringing material is made available to Grande's subscribers by means of the Grande service, Patriot has failed to take reasonable steps to minimize the infringing capabilities of the service.

94.     Patriot is liable as a contributory copyright infringer for Grande subscribers' infringing acts.  Patriot has actual and constructive knowledge of Grande subscribers' infringing activity.  Patriot knowingly caused and otherwise materially contributed to these unauthorized reproductions and distributions of Plaintiffs' Copyrighted Sound Recordings, including but not limited to those sound recordings listed in Exhibit A hereto, and continues to do so.

95.     Grande made the express decision in 2010 to cease terminating any subscriber for copyright infringement, regardless of the number of notices of copyright infringement Grande received regarding any particular user.  Patriot directed Grande to continue this policy from 2013 onwards.  From 2010 until June 2017, Grande failed to terminate a single user for copyright infringement.  During that same period, Grande continued to accept payment from its subscribers regardless of the number of copyright infringement notices received from any source.  Many of these subscribers were internet-only a la carte subscribers, Grande's most profitable customers.

96.     Grande and Patriot purposefully ignored acts of infringement in order to continue to profit from fees from infringing users, and refused to terminate any users in order to avoiding losing those fees.

97.     Patriot is vicariously liable for the infringing acts of Grande's subscribers.  Patriot has the right and ability to supervise and control the infringing activities that occur using the Grande service, and at all relevant times has derived a direct financial benefit from the

infringement of Plaintiffs' copyrights. Indeed, the availability of music—and particularly Plaintiffs' music—acts as a powerful draw for subscribers to Grande's service who use that service to download infringing music files using BitTorrent protocols.

98.     Moreover, Patriot's ownership interest in Grande provides Patriot a direct financial benefit from Grande's increased profitability stemming from the refusal to terminate infringing subscribers.

99.     Patriot has refused to take any meaningful action to prevent the widespread infringement by Grande's subscribers. Patriot is therefore vicariously liable for the unauthorized reproduction, distribution, and public performance of Plaintiffs' Copyrighted Sound Recordings, including but not limited to those sound recordings listed in Exhibit A hereto.

100.     Patriot's infringement of Plaintiffs' rights in each of their Copyrighted Sound Recordings constitutes a separate and distinct act of infringement.

101.     Patriot's acts of infringement are willful, intentional and purposeful, in disregard of and indifferent to the rights of Plaintiffs.

102.     As a direct and proximate result of Patriot's infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled up to the maximum amount of statutory damages, pursuant to 17 U.S.C. § 504(c), for each work infringed, or such other amounts as may be proper under 17 U.S.C. § 504(c).

103.     In the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs are entitled to their actual damages, including Patriot's profits from infringement, in amounts to be proven at trial.

104.     Plaintiffs are entitled to their costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

105.    Patriot's conduct has caused, is causing, and, unless enjoined by this Court, will continue to cause, Plaintiffs irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs have no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiffs are entitled to a preliminary and permanent injunction prohibiting infringement of Plaintiffs' copyrights and exclusive rights under copyright.

## VI.        REQUEST FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, and each of them, as follows:

a.  For statutory damages pursuant to 17 U.S.C. § 504(c), in an amount up to the maximum, per infringed work, arising from Defendants' violations of Plaintiffs' rights under the Copyright Act or, in the alternative, at Plaintiffs' election pursuant to 17 U.S.C. § 504(b), Plaintiffs' actual damages, including Defendants' profits from infringement, in amounts to be proven at trial;

b.  For a preliminary and permanent injunction enjoining Defendants and their respective officers, agents, servants, employees, attorneys, successors, licensees, partners, and assigns, and all persons acting in concert or participation with each or any of them, (1) from directly or indirectly infringing in any manner any of Plaintiffs' respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the Copyrighted Sound Recordings, (2) from causing, contributing to, enabling, facilitating, or participating in the infringement of any of Plaintiffs' respective copyrights or other exclusive rights (whether now in existence or hereafter created), including without limitation, copyrights or exclusive rights under copyright in the Copyrighted Sound Recordings, and (3) to promptly send infringement notices to Grande's infringing subscribers.

c.  For prejudgment and post-judgment interest according to law;

d.  For Plaintiffs' attorneys' fees, and full costs and disbursements in this action; and

e.  For such other and further relief as the Court may deem proper and just.

## VII.    JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand trial by jury of all issues triable by right of jury.


Dated: May 3, 2018

Respectfully submitted,

By:   /s/ Daniel C. Bitting
       Daniel C. Bitting
       State Bar No. 02362480
       Paige A. Amstutz
       State Bar No. 00796136
       **Scott Douglass & McConnico LLP**
       303 Colorado Street, Suite 2400
       Austin, TX 78701
       Telephone: (512) 495-6300
       Facsimile: (512) 495-6399
       dbitting@scottdoug.com
       pamstutz@scottdoug.com

       Pat A. Cipollone, P.C. (admitted *pro hac vice*)
       Jonathan E. Missner (admitted *pro hac vice*)
       Robert B. Gilmore (admitted *pro hac vice*)
       Philip J. O'Beirne (admitted *pro hac vice*)
       **Stein Mitchell Cipollone Beato & Missner LLP**
       1100 Connecticut Avenue, NW Suite 1100
       Washington, DC 20036
       Telephone: (202) 737-7777
       Facsimile: (202) 296-8312
       pcipollone@steinmitchell.com
       jmissner@steinmitchell.com
       rgilmore@steinmitchell.com
       pobeirne@steinmitchell.com

       ***Attorneys for Plaintiffs***