IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC,<br><br>    Defendants. | §§§§§§§§§§§  Civil Action No. 1:17-cv-00365-LY |

**PLAINTIFFS' OPPOSITION TO GRANDE'S MOTION TO AUTHORIZE SERVICE OF THIRD-PARTY SUBPOENA BY U.S. MARSHAL**

## INTRODUCTION

This Court should deny Grande's motion to authorize the U.S. Marshals to serve a third-party subpoena on IP-Echelon. On a procedural level, Grande cites no authority for requiring a U.S. Marshal to serve its discovery. Nor could it on the facts presented by this case. More importantly, the subpoena to IP-Echelon seeks information that is irrelevant to this case, and it would be a waste of resources to require the U.S. Marshals to attempt service of the subpoena.

## ARGUMENT

### I. FED. R. CIV. P. 4 DOES NOT PROVIDE FOR USING U.S. MARSHALS TO SERVE DISCOVERY REQUESTS.

Grande makes its request under Federal Rule of Civil Procedure 4. But Rule 4 governs the service of a summons, not discovery subpoenas. It provides that a court may, at a plaintiff's request, order service of a summons by a U.S. Marshal, Deputy Marshal or other person appointed by the court. *See* Fed. R. Riv. P. 4(c)(3). The rule governing subpoenas—Rule 45—does not provide for service by a U.S. Marshal. Grande fails to cite any authority for requiring a

1

U.S. Marshal to serve a discovery subpoena on a non-party on the facts here. The only case Grande cites (*Yelland v. Abington Heights School District*) involved a court's decision to allow the Marshal to serve a subpoena on a child witness over the express objection of the child's parents. That is a far cry from the instant case. More on point are the other courts that have held that "while service of process—that is, the complaint and summons—may be effectuated by the United States Marshals Service…service of discovery subpoenas may not…." *Peterson v. Equifax Info Servs. LLC,* No. 1:16-cv-3528-RWS-LTW, 2017 WL 2999038, at *1 (N.D. Ga. May 3, 2017).

> II. THERE IS NO BASIS TO WASTE THE U.S. MARSHALS' LIMITED TIME AND RESOURCES ON SERVING NON-PARTY DISCOVERY SOLELY DESIGNED TO FISH FOR IRRELEVANT FACTS AND DISTRACT FROM GRANDE'S CONDUCT AT ISSUE HERE.

"When a nonparty is the subject of discovery, heightened restriction on such discovery is warranted to protect the nonparty from 'harassment, inconvenience, or disclosure of confidential documents.' … Therefore, to obtain discovery from a nonparty, a party must establish that its need for discovery outweighs the nonparty's interest in nondisclosure." *Keller v. Cox Radio, Inc.*, No. SA-08-CA-00284-OLG, 2009 WL 10700193, at *2 (W.D. Tex. Apr. 6, 2009) (citations omitted). Grande cannot come close to satisfying this standard.

This lawsuit is about Grande's and its subscribers' infringement of Plaintiffs' copyrighted works. Grande was put on notice of that infringement by notices that Rightscorp (a company that monitors internet traffic for copyright violations) sent to Grande. Plaintiffs sue based on evidence from the Rightscorp notices. IP-Echelon appears to provide services similar to Rightscorp's services. But IP-Echelon is not a party to this litigation. Plaintiffs have not retained IP-Echelon in connection with this litigation or in connection with Grande in any way. Instead, Grande seeks to serve its subpoena because IP-Echelon was apparently the victim of a

"phishing" scam in which certain ISPs, including Grande, received fake infringement notices related to copyrighted movies purporting to be from IP-Echelon.

But that alleged phishing scam has nothing to do with this case. Grande's subpoena for evidence about this phishing scam is itself a fishing expedition. Grande's motion does not even suggest—let alone offer any evidence—that (1) any Rightscorp notice received by Grande was part of a phishing scam, or (2) Grande's response to any Rightscorp (or other) notices turned on some contemporaneous concern about the authenticity of those notices. In fact, the evidence shows that Grande expressed no concerns about the authenticity of the Rightscorp notices. Grande's witnesses have acknowledged that (1) Rightscorp offered to provide Grande additional information about its notices to address any questions Grande may have had;[1] (2) Grande never accepted Rightscorp's invitation;[2] and (3) Grande never made any effort to investigate any Rightscorp notice.[3] To the extent Grande wants to explore the authenticity of the Rightscorp

---

[1] *See* Ex. A, Dep. Of Matt Rohre (Grande's General Manager), 165:25-166:16 ("[quoting 2015 letter from Rightscorp to Grande] Q. **'We understand, however, that you have a supremely valid interest in responding only to accurate allegations of infringement. That is one of the reasons we want to have a face-to-face meeting.** We can play for you the songs and the movies that came from the infringer's computers, eliminating any doubt that the infringements we allege occurred exactly as we have stated. We can do this on a massive scale.' **Did anyone meet with Rightscorp or contact them so that they could do this for you? A. I did not.**")(emphasis added).

[2] *See* Ex. A, Dep. Of Matt Rohre, 167:11-19. ("Q. Did anyone at Grande, to the best of your knowledge, meet with Rightscorp regarding this letter? A. Not that I'm aware of. Q. You're not aware of any communication between Rightscorp and Grande? A. I am not.").

[3] *See* Ex. B, Dep. Of Lamar Horton (Grande's DMCA Agent), 117:17-118:9 ("Q. You've never investigated, for example, the circumstances that gave rise to a particular notice received from some outside source? A. I'm not sure I understand. Q. So you've never called somebody who sent a notice and said, "Hey, please explain to me, you know, what's the information reflected in this notice"? A. No. We expect the notice, as a matter of policy, to state the infringement and the details required to process it. Q. All right. So my question's a little different. I'm not asking what you expect to be in the notice. **I'm confirming my understanding that you have never reached out to somebody sending a notice and asked them for information. A. I have not,**

notices, it can do that through discovery directed to Rightscorp. But whatever phishing scam IP-Echelon may have been involved in has no bearing on Rightscorp, or on Plaintiffs' claims.[4]

Grande's motion also fails to explain the relevance of the subpoena to this lawsuit, except to claim (without proof) that IP-Echelon's "role in investigating and sending infringement notices" is similar "to the role played by Rightscorp for Plaintiffs in this case." Mot. at 2. Even if true, that similarity is plainly insufficient. The fact that other companies may provide services similar to Rightscorp's does not automatically expose all such companies to the burdens of non-party discovery. In short, Grande cannot justify pursuing documents and information from IP-Echelon, let alone demanding the Court's and the U.S. Marshals' time and resources in aid of doing so.

Finally, Grande's subpoena to IP-Echelon is the latest in a series of non-party subpoenas it has served designed to shift the focus of this case away from Grande's conduct. Given the overwhelming evidence of infringement and the incontrovertible fact that Grande knowingly failed to terminate any repeat infringers from 2011 until June 2017, it is understandable that Grande wants to change the subject. But that is not a valid basis for seeking non-party discovery. Moreover, Grande's motion is unjustifiably late. Grande concedes that IP-Echelon surfaced in the *Cox* case more than two years ago. The discovery period in this case began in June 2017, a year ago. Nothing prevented Grande from seeking this subpoena (and the other third-party subpoenas it has recently served) many months ago. Whether through lack of

---

**no. Q. Are you aware that people at Grande do that? A. Not to my knowledge.**") (emphasis added).

[4] That Grande also received copyright infringement notices from IP-Echelon reinforces the fact that Grande knew of infringement on its internet service. While the fact of Grande's knowledge of infringement is relevant to this case, Grande does not need the requested discovery from IP-Echelon to explore the extent of Grande's own knowledge.

diligence or for tactical reasons, the irrelevant non-party discovery that Grande is pursuing at the very end of the fact discovery period needlessly diverts the Court and the parties from the core, relevant discovery that needs to be completed. The subpoena to IP-Echelon will not lead to the discovery of any admissible evidence; it will only cause the Court and the parties to waste time on pointless discovery that will not aid resolution of the issues in this case.

For these reasons, the Court should deny the motion.

Dated: June 1, 2018                                    Respectfully submitted,


By: */s/ Daniel C. Bitting*

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
1100 Connecticut Avenue, NW Suite 1100
Washington, DC 20036
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 1, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting