# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 1:17-cv-365 |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC, | § § § § § § | Jury Trial Demanded |
| Defendants. | | |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND
THINGS TO DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs serve their Second Set of Requests for Production of Documents and Things to Defendant Grande Communications Networks LLC. Plaintiffs request that Defendant respond in accordance with the Federal Rules of Civil Procedure and Local Rules of this Court, and produce the documents hereinafter described at the offices of Stein Mitchell Cipollone Beato & Missner LLP, 1100 Connecticut Ave. N.W., Suite 1100, Washington, D.C. 20036, or at such other time and place as the parties may agree upon.

**DEFINITIONS**

Unless otherwise indicated, the following definitions apply to these requests:

1.     The term "Plaintiffs" refers collectively to Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Warner Bros. Records Inc., Sony Music Entertainment, Arista Records LLC, Arista Music, Atlantic Recording Corporation, Capitol Christian Music Group, Inc., Elektra Entertainment

1

Group Inc., Fonovisa, Inc., Fueled by Ramen LLC, LaFace Records LLC, Nonesuch Records Inc., Rhino Entertainment Company, Roadrunner Records, Inc., Roc-A-Fella Records, LLC, Tooth & Nail, LLC, and Zomba Recording LLC. "Plaintiff" means any one or more of the Plaintiffs, as defined herein.

2.      The terms "you," "your," "Grande" and "Defendant" refer to Grande Communications Networks LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

3.      The term "Patriot" refers to Patriot Media Consulting, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

4.      The term "Rightscorp" refers to Rightscorp, Inc., its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

5.      The term "TPG" refers to Texas Pacific Group, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

6.      The term "ABRY Partners" refers to ABRY Partners, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

7.      The term "Complaint" refers to the Complaint filed by Plaintiffs on April 21, 2017, in this lawsuit.

8.      The term "ISP" means any business or organization that is an internet service provider.

9.     The term "Customer" refers to any account holder or subscriber of internet services.

10.    The term "User" refers to any person that uses internet services.

11.    The term "DMCA" refers to the Digital Millennium Copyright Act.

12.    The term "Notice" refers to a notice, including but not limited to a notice under the DMCA, that one or more of Grande's Customers or Users allegedly infringed a copyright.

13.     The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Customers or Users relating to, the DMCA.

14.    The term "Plaintiffs' Copyrighted Work" means any one or more of the works listed in Exhibit A to the Complaint, including any future addition or revisions to Exhibit A in subsequent pleadings or discovery responses.

15.    The term "Repeat Infringer Policy" refers to any policy contemplated by 17 U.S.C. § 512(i).

16.    The term "Registered Copyright Agent" refers to any person or entity Grande has designated to receive notifications of alleged copyright infringement pursuant to the DMCA.

17.    The term "Acceptable Use Policy" refers to any policy concerning the obligations, rules, and limitations of Customers' or Users' use of internet services offered by Grande.

18.    The term "Cox Litigation" refers to the litigation captioned as *BMG Rights Management (US) LLC, et al. v. Cox Enterprises, Inc., et al.* in the United States District Court for the Eastern District of Virginia (Case 1:14-cv-01611-LO-JFA).

19.    The term "BitTorrent" refers to the BitTorrent communications protocol for Peer-to-Peer file sharing used to distribute data and electronic files over the internet.

20.     The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server.

21.     The terms "person" or "persons" is defined as any natural person or business, legal or governmental entity or association.  Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions.  Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

22.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft of a nonidentical copy is a separate document within the meaning of this term.  "Document" specifically includes electronically stored information as defined in Rule 34(a).

23.     The term "communication" means the transmittal of the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons, but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal.

24.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

25.     "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

26.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

27.     The use of the singular form of any word shall include the plural and vice versa.

## **INSTRUCTIONS**

1.      These requests shall be deemed to be continuing to the extent permitted by Rule 26(e) of the Federal Rules of Civil Procedure.

2.      Defendant is to produce documents comprising electronically stored information pursuant to the Protocol Governing The Production Of Electronically Stored Information And Paper Documents (the "ESI Protocol"), attached hereto as Exhibit A.

3.      Defendant is to produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices.

4.      In response to each request, Defendant shall affirm whether responsive documents exist and have been, or shall be, produced.

5.      If Defendant deems any information, document, or communication requested by any of the following requests to be protected from disclosure by the attorney-client privilege, work-product doctrine, or any other privilege, doctrine, or immunity, please identify or describe: (a) the information, document, or communication you claim to be so protected by author, subject matter, date, number of pages, attachments, and appendices; (b) the names and job titles of all recipients of the information, document, or communication, including blind copy recipients and any individual to whom the information, document, or communication was distributed, shown, or explained; (c) the information, document, or communication's current custodian; and (d) all bases, factual and legal,

5

upon which such protection allegedly rests.  If you contend that only a portion of the information contained in a document is privileged, provide the portion that you do not contend is privileged.

6.     If any document identified in response to any of these discovery requests was, but is no longer in the possession, custody or subject to the control of Defendant, or is no longer in existence, state whether it:

      a.     is missing or lost;

      b.     has been destroyed;

      c.     has been transferred, voluntarily or involuntarily, to others;

      d.     state the identity of those persons to whom it has been transferred;

      e.     has been otherwise disposed of, and in each instance, explain the circumstances surrounding such disposition, state the date or approximate date thereof, and the identity of the persons with knowledge of such circumstances; or

      f.     identify the writings that are missing, lost, destroyed, transferred, or otherwise disposed of, by author, date, subject matter, addressee, and the number of pages.

7.     If a document identified in response to any request has been destroyed, then Defendant must state the reason for its destruction, identify the date the document was destroyed, identify the person(s) having any knowledge of its destruction, and identify each person responsible for its destruction.

8.     To the extent Defendant alleges that the meaning of any term in these requests is unclear, Defendant is to assume a reasonable meaning for such term, state that assumed reasonable meaning, and answer the requests on the basis of that assumed meaning.

9.     If Defendant elects to specify and produce business records in answer to any request, the specification shall be in sufficient detail to permit Plaintiffs to locate and identify, as readily as Defendant can, the business records from which the answer may be ascertained.

10.     In the event that more than one copy of a document exists, Defendant shall produce the original and each non-identical copy of each document or other tangible thing requested herein, which is in Defendant's possession, custody, or control, or that of persons or entities under the control of Defendant.

11.     Each discovery request shall be fully responded to unless it is in good faith objected to, in which event the reasons for your objection shall be stated in detail. If an objection pertains only to a portion of a discovery request, or a word phrase, or clause contained within it, you are required to state your objection to that portion only and to respond to the remainder of the discovery request, using your best efforts to do so.

## REQUESTS FOR PRODUCTION

**Request No. 1.**     Documents sufficient to show Grande's IP internet address protocol identified in response to Plaintiffs' Interrogatory No. 23, from 2011 to the present.

**Request No. 2.**     Documents sufficient to show Patriot's ownership interest in Grande, from 2013 to the present.

**Request No. 3.**     All documents provided to any expert you designate or intend to designate as a testifying expert in this action.

Dated: May 7, 2018                    Respectfully submitted,

By:     */s/ Robert B. Gilmore*
        Pat A. Cipollone, P.C. (admitted *pro hac vice*)
        Jonathan E. Missner (admitted *pro hac vice*)
        Robert B. Gilmore (admitted *pro hac vice*)
        Philip J. O'Beirne (admitted *pro hac vice*)
        **Stein Mitchell Cipollone Beato & Missner LLP**
        1100 Connecticut Avenue, NW Suite 1100
        Washington, DC 20036
        Telephone: (202) 737-7777
        Facsimile: (202) 296-8312

pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting
State Bar No. 02362480
Paige A. Amstutz
State Bar No. 00796136
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

8

**EXHIBIT A**

**PROTOCOL GOVERNING THE PRODUCTION OF ELECTRONICALLY
STORED INFORMATION AND PAPER DOCUMENTS**

1. **General Format of Production**. Defendant shall produce documents either (i) as electronic images with associated text files, metadata, and objective coding, or (ii) in native format, as further described herein.

2. **ESI Production**. With respect to production of Electronically Stored Information ("ESI"):

   a. E-mail will be produced as image files with related searchable text, metadata (to the extent it exists) and bibliographic information, as described in the Metadata & Requested Field Names set forth in the table below.

   b. Electronic documents including word-processing documents, spreadsheets, presentations and all other non-database electronic documents not specifically discussed elsewhere in this Protocol will be produced as image files with related searchable text, metadata (to the extent it exists) and bibliographic information as described in the Metadata & Requested Field Names except for:

      i. Excel files will be produced in native format with related searchable text, metadata (to the extent it exists) and bibliographic information;

      ii. PowerPoint files will be produced in native format with related searchable text, metadata (to the extent it exists) and bibliographic information;

      iii. Access databases will be produced in native format with related searchable text, metadata (to the extent it exists) and bibliographic information;

      iv. Other types of files that do not image properly (*e.g.*, audio or video files) will be produced in native format;

      v. The parties shall meet and confer to agree on the form of production of ESI (*e.g.* proprietary or unique databases) other than the foregoing.

   c. If specialized software that is not generally commercially available is required to access any produced ESI, Defendant shall make available such ESI for inspection through its own electronic systems.

3. **Hard Copy (or Paper) Documents**. Defendant shall produce hard-copy documents as image files with related OCR text to the extent such documents are converted into electronic

format. All hard-copy documents shall be converted into electronic images for production purposes.

4. **Form and Manner of Production**. All production document images will be provided as single-page Tagged Image File Format ("TIFFs" or ".tiff format"). All images generated from hard copy documents shall be scanned as black and white images at 300 DPI resolution and shall be saved and produced in a Group 4 compression single-page "TIFF" format and reflect, without visual degradation, the full and complete information contained on the original document. Defendant shall produce a "load file" that is compatible with a commercially available document management software, such as Relativity, to accompany the images, which load file shall include information about where each document begins and ends to facilitate the use of the produced images through a document management or litigation support database system.

5. **Document Unitization**. Defendant shall apply unitization practices consistent with the following description. Each page of a hard copy document shall be scanned into an image and if a document is more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image file. For documents that contain affixed notes, the pages will be scanned both with and without the notes and those pages will be treated as part of the same document. The relationship of documents in a document collection (e.g., cover letter and enclosures, email and attachments, binder containing multiple documents, or other documents where a parent-child relationship exists between the documents) shall be maintained through the scanning or conversion process. If more than one level of parent-child relationship exists, documents will be kept in order, but all will be treated as children of the initial parent document. Such information shall be produced in the load file, as hereafter defined, in a manner to enable the parent-child relationship among documents in a document collection to be reconstituted by the receiving party in commercially available document management software, such as Relativity.

6. **Color**. Where an original document contains color, the Parties shall honor reasonable requests for the production of a color image of the document.

7. **De-Duplication**. Where a single document has more than one identical copy of a document (i.e., the documents are visually the same and contain the same electronic text), the Parties need only produce a single copy of that document; however, the production load file for that

single copy must indicate all custodians/locations from which identical copies of that document existed and were collected prior to de-duplication. ESI may be de-duplicated across custodians using industry standard hash values. If a duplicate document exists that is part of a document family, the duplicate will only be removed, pursuant to the terms of this paragraph, if the entire family is removed as a duplicate, i.e. a single document will not be removed from a family even if it is a duplicate.

8. **Bates Numbering**. Defendant shall produce imaged documents with a legible, unique page identifier ("Bates Number") electronically "burned" onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend (consistent with any confidentiality protective orders agreed to in the future), redactions (where applicable) and the Bates Number identified above. Any confidential legend shall be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document. With respect to the identification of files produced in their native format, the Bates Number and confidentiality designations, if any, shall be included in the load file accompanying the production of such native files. Bates Numbered slip sheets shall be provided for each native file produced.

9. **File Naming Conventions**. Each page image file shall be named with the unique Bates Number of the page of document, followed by the extension ".TIF". In the event the Bates Number contains a symbol and/or character that cannot be included in a file name, the symbol and/or character will be omitted from the file name.

10. **Production Media**. Defendant shall produce documents on CD-ROM, DVD, external hard drive, an FTP site, or such other readily accessible computer or electronic media (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the production volume (e.g., "-001"; "-002"). Additional information that shall be identified on the Production Media or in an accompanying letter shall include: (1) the case number of the case in which it is produced, (2) the producing party's name, and (3) the production date. The type of materials on the media (e.g., "Documents", "OCR Text", "Objective Coding", etc.) and the Bates Number range(s) of the materials on the Production Media shall also be contained on the Production Media, and where not practicable to do so may be provided in an accompanying letter.

11. **Meta-Data and Objective Coding**. Defendant shall produce associated metadata and objective coding consistent with the description set forth below.

12. **OCR/Extracted Text**. Defendant shall produce corresponding Optical Character Recognition ("OCR") text files for all hard-copy documents and any electronic documents that require redaction prior to production.  For documents that exist natively in electronic format that have not been redacted and that are produced as images, Defendant shall produce extracted text files reflecting the full text that has been electronically extracted from the original, native electronic files.  The OCR and extracted text files shall be produced in ASCII text format and shall be labeled and produced on Production Media in accordance with the provisions of paragraph 10. These text files will be named with the unique Bates Number of the first page of the corresponding document followed by the extension ".txt." The OCR and extracted text files shall be produced in a manner suitable for importing the information into commercially available document management or litigation support software such as Concordance.

13. **Decryption.** Defendant shall take reasonable efforts to ensure that all documents produced in native format are decrypted.

**Metadata And Requested Field Names**

| Field Name | Field Description | Email/ Calendar Items | Other ESI | Hard Copy |
|---|---|---|---|---|
| Custodian / Source | Name of custodian(s) or source(s) from which documents/ESI were obtained | X | X | X |
| DocID | Unique value for the document | X | X | X |
| Beg Doc# | Start Bates Number (including prefix) | X | X | X |
| End Doc # | End Bates Number (including prefix) | X | X | X |
| Number of Pages | Page count | X | X | X |
| Parent ID | Parent's Start Bates Number (including prefix); only parent/child files | X | X | X |
| Attach ID | Child/children Start Bates Number (including prefix) for each child.  This field will be blank if the record is a stand-alone document. | X | X | X |
| Record Type | Email, Email attachment, E-Doc; E-Doc attachment, Calendar Appointment etc. | X | X | X |
| Confidentiality | Confidentiality Designation | X | X | X |
| MD5/SHA1 Hash | Document MD5 or SHA1 has value | X | X | |
| From | Author of email or calendar item | X | | |
| To | Names of recipients of the email | X | | |
| CC | Names of individuals copied on the email | X | | |

| BCC | Names of individuals blind copied on the email | X | | |
|---|---|---|---|---|
| Subject | Email or calendar subject | X | | |
| Sent Date | Date email was sent (format YYYYMMDD) | X | | |
| Time Sent | Time email was sent (format YYYYMMDD) | X | | |
| Received Date | Date email was received (format YYYYMMDD) | X | | |
| Time Received | Time email was received | X | | |
| Author | Author value extracted from file metadata | | X | |
| Last Author | Name of last author to modify the document | | X | |
| File Name | File name of native document | X | X | |
| Doc Title/Subject | Subject field value extracted from file metadata | | X | |
| File Extension | File extension of native file (format YYYYMMDD) | X | X | |
| File Create Date | Date native file was created (format YYYYMMDD) | | X | |
| File Last Modified Date | Date native file was last modified (format YYYYMMDD) | | X | |
| File Path | File path to native file as it existed in original environment | X | X | |

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 7th day of May, 2018, upon counsel of record.

Dated: May 7, 2018

/s/   Robert B. Gilmore