# EXHIBIT I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC | § § § § § § | Civil Action No. 1:17-cv-365 Jury Trial Demanded |
| Defendants | § § | |

## PLAINTIFFS' NOTICE OF DEPOSITION OF GRANDE COMMUNICATIONS NETWORKS LLC PURSUANT TO RULE 30(b)(6)

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 30(b)(6), Plaintiffs will take the deposition upon oral examination of the Defendant Grande Communications Networks LLC ("Grande"). The deposition will take place at such time and place as the parties may agree upon, or as otherwise set by Plaintiffs absent agreement.

The testimony will be taken before a notary public or other office authorized by law to administer oaths, will be recorded by stenographic means and by audiotape and videotape. Pursuant to Rule 30(b)(6), Grande is required to designate one or more persons to testify on its behalf as to matters known or reasonably available to it, relating to the matters for examination outlined below.

## DEFINITIONS

Unless otherwise indicated, the following definitions apply to these requests:

1.      The term "Plaintiffs" refers collectively to Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Warner Bros. Records Inc., Sony Music Entertainment, Arista Records LLC, Arista

Music, Atlantic Recording Corporation, Capitol Christian Music Group, Inc., Elektra Entertainment Group Inc., Fonovisa, Inc., Fueled by Ramen LLC, LaFace Records LLC, Nonesuch Records Inc., Rhino Entertainment Company, Roadrunner Records, Inc., Roc-A-Fella Records, LLC, Tooth & Nail, LLC, and Zomba Recording LLC. "Plaintiff" means any one or more of the Plaintiffs, as defined herein.

  2. The terms "you," "your," "Grande" and "Defendant" refer to Grande Communications Networks LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

  3. The term "Patriot" refers to Patriot Media Consulting, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

  4. The term "Rightscorp" refers to Rightscorp, Inc., its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

  5. The term "TPG" refers to Texas Pacific Group, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

  6. The term "ABRY Partners" refers to ABRY Partners, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

7. The term "RCN" refers to RCN Telecom Services, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

8. The term "Wave" refers to WaveDivision Holdings, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

9. The term "Complaint" refers to the Complaint filed by Plaintiffs on April 21, 2017, in this lawsuit.

10. The term "ISP" means any business or organization that is an internet service provider.

11. The term "Customer" refers to any account holder or subscriber of internet services.

12. The term "User" refers to any person that uses internet services.

13. The term "DMCA" refers to the Digital Millennium Copyright Act.

14. The term "Notice" refers to an oral or written notice, including but not limited to a notice under the DMCA, that one or more of Grande's Customers or Users allegedly infringed a copyright.

15. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Customers or Users relating to, the DMCA.

16. The term "Plaintiffs' Copyrighted Work" means any one or more of the works listed in Exhibit A to the Complaint, including any additions or revisions to Exhibit A in subsequent pleadings or discovery responses.

17. The term "Repeat Infringer Policy" refers to any policy contemplated by 17 U.S.C. § 512(i).

3

18.     The term "Registered Copyright Agent" refers to any person or entity Grande has designated to receive notifications of alleged copyright infringement pursuant to the DMCA.

19.     The term "Acceptable Use Policy" refers to any policy concerning the obligations, rules, and limitations of Customers' or Users' use of internet services offered by Grande.

20.     The term "Cox Litigation" refers to the litigation captioned as *BMG Rights Management (US) LLC, et al. v. Cox Enterprises, Inc., et al.* in the United States District Court for the Eastern District of Virginia (Case 1:14-cv-01611-LO-JFA).

21.     The term "BitTorrent" refers to the BitTorrent communications protocol for Peer-to-Peer file sharing used to distribute data and electronic files over the internet.

22.     The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server.

23.     The terms "person" or "persons" is defined as any natural person or business, legal or governmental entity or association.  Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions.  Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

24.     The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a).  A draft of a nonidentical copy is a separate document within the meaning of this term.  "Document" specifically includes electronically stored information as defined in Rule 34(a).

25.     The term "communication" means the transmittal of the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time

4

or place under any circumstances. The definition is not limited to transfers between persons, but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal.

26.     The term "concerning" means relating to, referring to, describing, evidencing or constituting.

27.     "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

28.     The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

29.     The use of the singular form of any word shall include the plural and vice versa.

## TOPICS FOR EXAMINATION

**Topic No. 1.** Communications, information, and documents concerning copyright infringement of sound recordings through your Customers' or Users' use of your internet service.

**Topic No. 2.** Grande's knowledge of its Customers' or Users' use of Grande's internet service to infringe copyrighted sound recordings, including but not limited to the timing and circumstances of Grande's acquiring such knowledge (through Notices or otherwise).

**Topic No. 3.** Your Customers' or Users' use of BitTorrent or other Peer-to-Peer file exchange systems.

**Topic No. 4.** Grande's ability to communicate with its Customers, and limit Customers' access to its internet service, temporarily or permanently.

**Topic No. 5.**  Communications, information, and documents concerning Grande's terms of use or terms of service relating to copyright infringement.

**Topic No. 6.**  Any research, studies, focus groups or surveys concerning: (a) your Customers or Users or potential Customers or Users who use or have used BitTorrent or other Peer-to-Peer file sharing, (b) alleged copyright infringement by your Customers or Users, or (c) alleged copyright infringing activity through your internet service.

**Topic No. 7.**  Communications, information, and documents exchanged between Grande and Patriot concerning any of the following topics:  copyright infringement, Grande's or Patriot's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 8.**  Communications, information, and documents exchanged between Grande and ABRY Partners concerning any of the following topics:  copyright infringement, Grande's or Patriot's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 9.**  Communications, information, and documents exchanged between Grande and TPG concerning any of the following topics:  copyright infringement, Grande's or Patriot's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance

6

with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 10.** Communications, information, and documents exchanged between Grande and RCN concerning any of the following topics:  copyright infringement, Grande's or Patriot's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 11.** Communications, information, and documents exchanged between Grande and Wave concerning any of the following topics:  copyright infringement, Grande's or Patriot's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 12.** Communications between you and any other ISP, including via mail, email, message board, listserv, or any other means of communication, concerning the following topics: Plaintiffs, copyright infringement, the DMCA, repeat infringer policies, BitTorrent, Peer-to-Peer file sharing, customer monitoring, and the Cox Litigation.

**Topic No. 13.** The factual basis (or bases) for Grande's assertion to entitlement to the DMCA safe harbor from copyright infringement liability (referenced in Grande's response to Plaintiffs' Interrogatory 11), to include each "policy that provides for the termination of subscribers and account holders who are repeat copyright infringers" Grande references, the effective date and period of

7

application of such a policy, the implementation of such a policy, and the number of repeat infringers terminated under that policy.

**Topic No. 14.** The factual basis (or bases) of any claim that Plaintiffs do not own the Copyrighted Sound Recordings listed in Exhibit A to the Complaint.

**Topic No. 15.** Grande's corporate structure relating to the business of providing internet services, including the relationship between any parent corporations, subsidiaries, or any affiliates engaged in your business of providing internet services, and any changes to that structure, from 2012 through the present, including but not limited to the impact of the transactions involving Grande, Patriot, RCN, and Wave.

**Topic No. 16.** Grande's marketing of its residential internet service to prospective or existing Customers or Users, including but not limited to Grande's communications with prospective or existing Customers or Users concerning the bandwidth and speed its residential internet service offers for downloading or accessing music or videos, or concerning different prices (if any) at which Grande sold its residential internet service at higher levels of bandwidth or at faster speeds.

**Topic No. 17.** The gross revenues Grande received from the provision of residential internet access, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 18.** The gross revenues Grande received from the provision of residential television, cable, and/or video services, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 19.** The gross revenues Grande received from the provision of residential phone service, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 20.** The gross revenues Grande received from the provision of internet service to Customers or Users for whom Grande received Notices, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 21.** The financial costs to Grande to obtain each new customer and the financial benefit to Grande to keep any existing customer.

**Topic No. 22.** The corporate entities that provide internet services to your Customers or Users, the geographic area of such service, and the relationship between and among those entities and/or you.

**Topic No. 23.** The contracts, business arrangements, policies, practices and procedures under which Patriot provides Grande with executive, management, or any other services.

**Topic No. 24.** Patriot's roles and responsibilities with respect to its provision of executive, management, or any other services to Grande.

**Topic No. 25.** The drafting, formulation, implementation, and dissemination to Customers, Users or other third parties, of any policy referred to in Grande's response to Plaintiffs' Interrogatory 11.

**Topic No. 26.** Grande's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Customers, Users or other third parties, any DMCA Policy.

**Topic No. 27.** Grande's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Customers, Users or other third parties, any Repeat Infringer Policy.

**Topic No. 28.** Grande's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Customers, Users or other third parties, any Acceptable Use Policy.

**Topic No. 29.** Grande's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Customers, Users or other third parties, any Notice.

9

**Topic No. 30.** Communications, information, and documents concerning Rightscorp, including communications exchanged between Grande and Rightscorp.

**Topic No. 31.** Any litigation or disputes between or involving Grande and Rightscorp prior to this lawsuit.

**Topic No. 32.** The Rightscorp "dashboard", including access provided to Grande by Rightscorp and any effort by Grande at any time to access the dashboard or obtain any information from the dashboard.

**Topic No. 33.** Grande's understanding of Rightscorp's policies, practices, and capabilities for identifying instances of copyright infringement, including the basis (or bases) of any such understanding, the timing of acquiring such understanding, and any efforts engaged in to investigate the accuracy of any such understanding.

**Topic No. 34.** Grande's understanding of the policies, practices, and capabilities for identifying instances of copyright infringement of any entity other than Rightscorp from which it received notices of alleged copyright infringement by its customers or users, including the basis (or bases) of any such understanding, the timing of acquiring such understanding, and any efforts engaged in to investigate the accuracy of any such understanding.

**Topic No. 35.** The factual basis (or bases) for Grande's or Patriot's assertion that the Rightscorp system is not capable of detecting actual copyright infringement.

**Topic No. 36.** Grande's identification, registration, and disclosure of a Registered Copyright Agent(s), or lack of same, during the period from 2012 through the present.

**Topic No. 37.** Any policy, practice or capability that Grande considered, formulated, or adopted in response to or as a result of receiving Notices.

10

**Topic No. 38.** Any policy, practice or capability that Grande considered, formulated, or adopted for taking adverse action (including without limitation, terminating or suspension of internet service) against Grande Customers or Users who you believe may have infringed copyrights or who have been accused of infringing copyrights, including any repeat infringers.

**Topic No. 39.** Communications, information, and documents concerning the effectiveness of any DMCA Policy, Repeat Infringer Policy, Acceptable Use Policy, or any other policy, practice or capability for addressing, limiting or ending copyright infringement through the use of your internet services.

**Topic No. 40.** Communications between you and any Customers or Users concerning any of the following: copyright infringement; Grande's practices and policies related to infringement; or the Customers' or Users' infringing activity, including their access to, use of, sharing or dissemination of, alleged or actual infringement of (or need to refrain from infringement of), copyrighted works, information, or materials (including, without limitation, sound recordings).

**Topic No. 41.** Communications between you and any Customers or Users in response to Notices.

**Topic No. 42.** Allegations of copyright infringement by your Customers or Users that Grande received or learned of, and any investigation or response by Grande into any such allegations.

**Topic No. 43.** Any policy, practice or capability that Grande considered, formulated, or adopted for tracking or determining the identity of your Customers or Users associated with an IP address.

**Topic No. 44.** Any policy, practice or capability that Grande considered, formulated, or adopted for determining the identity of a Grande Customer or User who is the subject of a copyright infringement allegation.

11

**Topic No. 45.** Any actions you took in response to any Notices or to address a violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, including but not limited to warnings, suspensions of accounts, and termination of accounts of your Customers or Users.

**Topic No. 46.** The number of Customers or Users whose accounts you suspended or terminated for violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, and the basis (or bases) for their suspension or termination, and the number you removed from suspension, re-activated or re-instated, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 47.** The number of warnings you sent to Customers or Users for violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 48.** The reactivation of any Grande Customer or User previously suspended or terminated for a violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, including the number of previously-suspended and previously-terminated Customers or Users reactivated, and the basis (or bases) for their reactivation, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 49.** Communications, information, and documents concerning any policy, practice or capability that Grande considered, formulated, or adopted for terminating internet service to your Customers or Users arising from repeated allegations of copyright infringement.

**Topic No. 50.** Any technological barriers or other means or mechanisms implemented by Grande to address, limit or prevent copyright infringement by your Customers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems, or any technological barriers or other means or

mechanisms that prohibit Grande from addressing or limiting copyright infringement by your Customers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems.

**Topic No. 51.** Grande's document retention and/or destruction policies, from 2012 through the present, including but not limited to the policies governing this lawsuit.

**Topic No. 52.** Grande's preservation and/or failure to preserve documents relevant to this lawsuit.

**Topic No. 53.** Grande's organizational charts and structure, and executive titles and job occupants, from 2012 through the present.

**Topic No. 54.** Communications, information, and documents concerning the Cox Litigation.

**Topic No. 55.** Communications, information, and documents concerning any pending, threatened, or concluded lawsuit, arbitration, dispute resolution proceeding, investigation, or other matter involving Grande or Patriot, concerning Grande's Customers' or Users' copyright infringement relating to the downloading of sound recordings.


Dated: February 23, 2018                    Respectfully submitted,


                                            By:    */s/ Robert B. Gilmore*
                                            Pat A. Cipollone, P.C. (admitted *pro hac vice*)
                                            Jonathan E. Missner (admitted *pro hac vice*)
                                            Robert B. Gilmore (admitted *pro hac vice*)
                                            Philip J. O'Beirne (admitted *pro hac vice*)
                                            **Stein Mitchell Cipollone Beato & Missner LLP**
                                            1100 Connecticut Avenue, NW Suite 1100
                                            Washington, DC 20036
                                            Telephone: (202) 737-7777
                                            Facsimile: (202) 296-8312
                                            pcipollone@steinmitchell.com
                                            jmissner@steinmitchell.com
                                            rgilmore@steinmitchell.com
                                            pobeirne@steinmitchell.com

                                            Daniel C. Bitting

State Bar No. 02362480
Paige A. Amstutz
State Bar No. 00796136
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com


*Attorneys for Plaintiffs*

14

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing was served via Electronic Mail on the 23rd day of February, 2018, upon counsel of record.

Dated: February 23, 2018

/s/   *Robert B. Gilmore*