# EXHIBIT R

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

| UMG RECORDINGS, INC., et al., | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) Civil Action No. 1:17-cv-365 |
| GRANDE COMMUNICATIONS NETWORKS, LLC | ) |
| *Defendant* | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To: Patriot Media Consulting, LLC, 650 College Rd. E, Suite 3100, Princeton, NJ 08540

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:
See Attachment A

| Place: Regus Business Centers<br>103 Carnegie Center, Suite 300<br>Princeton, NJ 08540 | Date and Time:<br>07/27/2018 9:30 am |
|---|---|

The deposition will be recorded by this method: _____

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

| *CLERK OF COURT* | |
|---|---|
| | OR |
| | /s/ Robert B. Gilmore |
| *Signature of Clerk or Deputy Clerk* | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* **Plaintiffs UMG Recordings et al.** , who issues or requests this subpoena, are:
Robert B. Gilmore, 901 15th St., NW, Suite 700, Washington, DC 20005, rgilmore@steinmitchell.com; 202 661-1589

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 1:17-cv-365

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
  (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## ATTACHMENT A

## DEFINITIONS

Unless otherwise indicated, the following definitions apply to these requests:

1. The term "Plaintiffs" refers collectively to Plaintiffs UMG Recordings, Inc., Capitol Records, LLC, Warner Bros. Records Inc., Sony Music Entertainment, Arista Records LLC, Arista Music, Atlantic Recording Corporation, Capitol Christian Music Group, Inc., Elektra Entertainment Group Inc., Fonovisa, Inc., Fueled by Ramen LLC, LaFace Records LLC, Nonesuch Records Inc., Rhino Entertainment Company, Roadrunner Records, Inc., Roc-A-Fella Records, LLC, Tooth & Nail, LLC, and Zomba Recording LLC. "Plaintiff" means any one or more of the Plaintiffs, as defined herein.

2. The terms "you," "your," "Patriot" and "Defendant" refer to Patriot Media Consulting LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

3. The term "Grande" refers to Grande Communications Networks LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

4. The term "Rightscorp" refers to Rightscorp, Inc., its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

5. The term "TPG" refers to Texas Pacific Group, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

6. The term "RCN" refers to RCN Telecom Services, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

7. The term "Wave" refers to WaveDivision Holdings, LLC, its parents, subsidiaries, affiliates, officers, directors, agents, consultants, employees, attorneys and accountants, and/or any other person or entity currently or previously acting or purporting to act on its behalf.

8. The term "Complaint" refers to the Complaint filed by Plaintiffs on April 21, 2017, in this lawsuit.

9. The term "ISP" means any business or organization that is an internet service provider.

10. The term "Customer" refers to any account holder or subscriber of internet services.

11. The term "User" refers to any person that uses internet services.

12. The term "DMCA" refers to the Digital Millennium Copyright Act.

13. The term "Notice" refers to an oral or written notice, including but not limited to a notice under the DMCA, that one or more of Grande's Customers or Users allegedly infringed a copyright.

14. The term "DMCA Policy" refers to any policy concerning your obligations under, compliance with, business practices and communications with Customers or Users relating to, the DMCA.

15. The term "Plaintiffs' Copyrighted Work" means any one or more of the works listed in Exhibit A to the Complaint, including any future addition or revisions to Exhibit A in subsequent pleadings or discovery responses.

16. The term "Repeat Infringer Policy" refers to any policy contemplated by 17 U.S.C. § 512(i).

17. The term "Registered Copyright Agent" refers to any person or entity Grande has designated to receive notifications of alleged copyright infringement pursuant to the DMCA.

18. The term "Acceptable Use Policy" refers to any policy concerning the obligations, rules, and limitations of Customers' or Users' use of internet services offered by Grande.

19. The term "Cox Litigation" refers to the litigation captioned as *BMG Rights Management (US) LLC, et al. v. Cox Enterprises, Inc., et al.* in the United States District Court for the Eastern District of Virginia (Case 1:14-cv-01611-LO-JFA).

20. The term "BitTorrent" refers to the BitTorrent communications protocol for Peer-to-Peer file sharing used to distribute data and electronic files over the internet.

21. The term "Peer-to-Peer" refers to computer networks in which each computer can act as a server for the others, allowing shared access to files and peripherals without the need for a central server.

22. The terms "person" or "persons" is defined as any natural person or business, legal or governmental entity or association. Unless otherwise stated, "person" or "persons" shall also include any individuals and entities which are separately defined in these Definitions. Any reference to a person shall also include that person's successors, assigns, personal representatives, and heirs, by operation of law or otherwise.

23. The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Federal Rule of Civil Procedure 34(a). A draft of a nonidentical copy is a separate document within the meaning of this term. "Document" specifically includes electronically stored information as defined in Rule 34(a).

24. The term "communication" means the transmittal of the transmittal of information (in the form of facts, ideas, inquiries or otherwise) by any means, written, oral, or otherwise, at any time or place under any circumstances. The definition is not limited to transfers between persons, but also includes other transfers, such as records and memoranda to file; any written letter, memorandum, or other document that was sent by one or more individuals to another or others; any telephone call between one or more individuals and another or others, whether such call was by chance or prearranged or not, formal or informal; and any conversation or meeting between one or more individuals and another, whether such contact was by chance or prearranged or not, formal or informal.

25. The term "concerning" means relating to, referring to, describing, evidencing or constituting.

26. "Any" should be understood to include and encompass "all," "all" should be understood to include and encompass "any," "or" should be understood to include and encompass "and," and "and" shall be understood to include and encompass "or."

27. The use of a verb in any tense shall be construed as the use of the verb in all other tenses.

28. The use of the singular form of any word shall include the plural and vice versa.

## TOPICS FOR EXAMINATION

**Topic No. 1.** Communications, information, and documents concerning copyright infringement of sound recordings through Grande Customers' or Users' use of Grande's internet service.

**Topic No. 2.** Patriot's knowledge of Grande Customers' or Users' use of Grande's internet service to infringe copyrighted sound recordings, including but not limited to the timing and circumstances of Patriot's acquiring such knowledge (through Notices or otherwise).

**Topic No. 3.** Grande's Customers' or Users' use of BitTorrent or other Peer-to-Peer file exchange systems.

**Topic No. 4.** Grande's or Patriot's ability to communicate with Grande Customers, and limit Customers' access to Grande's internet system, temporarily or permanently.

**Topic No. 5.** Grande's or Patriot's marketing of its residential internet service to prospective or existing Grande Customers or Users, including but not limited to Grande's or Patriot's communications with prospective or existing Grande Customers or Users concerning the bandwidth and speed its residential internet service offers for downloading or accessing music or videos, or concerning different prices (if any) at which Grande sold its residential internet service at higher levels of bandwidth or at faster speeds.

**Topic No. 6.** Communications, information, and documents concerning Grande's terms of use or terms of service relating to copyright infringement.

**Topic No. 7.** Any research, studies, focus groups or surveys concerning: (a) Grande's Customers or Users or potential Customers or Users who use or have used BitTorrent or other Peer-to-Peer file sharing, (b) alleged copyright infringement by Grande's Customers or Users, or (c) alleged copyright infringing activity through Grande's internet service.

**Topic No. 8.** Communications, information, and documents between Patriot and Grande concerning any of the following topics: copyright infringement, Grande's or Patriot's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 9.** Communications, information, and documents between Patriot and TPG concerning any of the following topics: copyright infringement by Grande or Grande's Customers or Users, Grande's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 10.** Communications, information, and documents between Patriot and ABRY Partners concerning any of the following topics: copyright infringement by Grande or Grande's Customers or Users, Grande's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 11.** Communications, information, and documents between Patriot and RCN concerning any of the following topics: copyright infringement by Grande or Grande's Customers or Users, Grande's potential legal exposure for copyright infringement, the DMCA, any DMCA

Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 12.** Communications, information, and documents between Patriot and Wave concerning any of the following topics: copyright infringement by Grande or Grande's Customers or Users, Grande's potential legal exposure for copyright infringement, the DMCA, any DMCA Policy, any Acceptable Use Policy, any Repeat Infringer Policy, Notice(s) (in draft or final as-sent form), Grande's or Patriot's compliance with the DMCA, Grande's or Patriot's entitlement or lack of entitlement to the DMCA statutory safe harbor provisions, BitTorrent, Peer-to-Peer file sharing, and/or the Cox Litigation.

**Topic No. 13.** Communications between you and any ISP, including via mail, email, message board, listserv, or any other means of communication, concerning the following topics: Plaintiffs, copyright infringement, the DMCA, repeat infringer policies, BitTorrent, Peer-to-Peer file sharing, customer monitoring, and the Cox Litigation.

**Topic No. 14.** The factual basis (or bases) for Grande's assertion to entitlement to the DMCA safe harbor from copyright infringement liability (referenced in Grande's response to Plaintiffs' Interrogatory 11), to include each "policy that provides for the termination of subscribers and account holders who are repeat copyright infringers" Grande references, the effective date and period of application of such a policy, the implementation of such a policy, and the number of repeat infringers terminated under that policy.

**Topic No. 15.** The factual basis (or bases) for any assertion by Patriot to entitlement to the DMCA safe harbor from copyright infringement liability to include any applicable policy, the

effective date and period of application of such a policy, the implementation of such a policy, and the number of repeat infringers terminated under that policy.

**Topic No. 16.** The factual basis (or bases) of any claim that Plaintiffs do not own the Copyrighted Sound Recordings listed in Exhibit A to the Complaint.

**Topic No. 17.** The gross revenues Grande received from the provision of residential internet access, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 18.** The gross revenues Grande received from the provision of residential television, cable, and/or video services, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 19.** The gross revenues Grande received from the provision of residential phone service, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 20.** The gross revenues Grande received from the provision of internet service to Customers or Users for whom Grande received Notices, as well as the profits Grande realized from those revenues and the corresponding profit margins, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 21.** The financial costs to Grande to obtain each new customer and the financial benefit to Grande to keep any existing customer.

**Topic No. 22.** All revenue and profits received by Patriot for any services provided by Patriot to Grande for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 23.** The contracts, business arrangements, policies, practices and procedures under which Patriot provides Grande with executive, management, or any other services.

**Topic No. 24.** Patriot's roles and responsibilities with respect to its provision of executive, management, or any other services to Grande.

**Topic No. 25.** Patriot's roles and responsibilities with respect to its provision of executive, management, or any other services to any ISP (including but not limited to Grande) concerning copyright infringement or the DMCA.

**Topic No. 26.** The drafting, formulation, implementation, and dissemination to Customers, Users or other third parties, of any policy referred to in Grande's response to Plaintiffs' Interrogatory 11.

**Topic No. 27.** Grande's or Patriot's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Grande Customers, Users or other third parties, any DMCA Policy.

**Topic No. 28.** Grande's or Patriot's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Grande Customers, Users or other third parties, any Repeat Infringer Policy.

**Topic No. 29.** Grande's or Patriot's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Grande Customers, Users or other third parties, any Acceptable Use Policy.

**Topic No. 30.** Grande's or Patriot's receiving, forwarding, developing, conceiving, drafting, implementing, or disseminating to Grande Customers, Users or other third parties, any Notice.

**Topic No. 31.** Any policy, practice or capability that Patriot considered, formulated, or adopted in response to or as a result of Grande or Patriot receiving Notices concerning Grande Customers or Users.

**Topic No. 32.** Any Grande policy, practice or capability that Patriot took part in considering, formulating, or adopting for taking adverse action (including without limitation, terminating or suspension of internet service) against Grande Customers or Users who Grande believe may have infringed copyrights or who have been accused of infringing copyrights, including any repeat infringers.

**Topic No. 33.** Communications between you and any Grande Customers or Users concerning any of the following: copyright infringement; Grande's practices and policies related to infringement; or the Customers' or Users' infringing activity, including their access to, use of, sharing or dissemination of, alleged or actual infringement of (or need to refrain from infringement of), copyrighted works, information, or materials (including, without limitation, sound recordings).

**Topic No. 34.** Communications between you and any Grande Customers or Users in response to Notices.

**Topic No. 35.** Communications, information, and documents concerning Rightscorp, including communications exchanged between Grande and Rightscorp or Patriot and Rightscorp.

**Topic No. 36.** Any litigation or disputes between or involving Grande and Rightscorp or Patriot and Rightscorp prior to this lawsuit.

**Topic No. 37.** The Rightscorp "dashboard", including access provided to Grande or Patriot by Rightscorp and any effort by Grande or Patriot at any time to access the dashboard or obtain any information from the dashboard.

**Topic No. 38.** Patriot's understanding of Rightscorp's policies, practices, and capabilities for identifying instances of copyright infringement, including the basis (or bases) of any such understanding, the timing of acquiring such understanding, and any efforts engaged in to investigate the accuracy of any such understanding.

**Topic No. 39.** Patriot's understanding of the policies, practices, and capabilities for identifying instances of copyright infringement of any entity other than Rightscorp from which it received notices of alleged copyright infringement by its customers or users, including the basis (or bases) of any such understanding, the timing of acquiring such understanding, and any efforts engaged in to investigate the accuracy of any such understanding.

**Topic No. 40.** The factual basis (or bases) for Grande's or Patriot's assertion that the Rightscorp system is not capable of detecting actual copyright infringement.

**Topic No. 41.** Allegations of copyright infringement by Grande's Customers or Users that Grande received or learned of, and any investigation or response by Grande or Patriot into any such allegations.

**Topic No. 42.** Any Grande policy, practice or capability that Patriot took part in considering, formulating, or adopting for tracking or determining the identity of your Customers or Users associated with an IP address.

**Topic No. 43.** Any Grande policy, practice or capability that Patriot took part in considering, formulating, or adopting for determining the identity of a Grande Customer or User who is the subject of a copyright infringement allegation.

**Topic No. 44.** Any actions you took in response to any Notices concerning Grande or Grande Customers or Users, or to address a violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement by Grande or Grande Customers or Users, including but not limited to warnings, suspensions of accounts, and termination of accounts of Grande Customers or Users.

**Topic No. 45.** The number of Grande Customers or Users whose accounts Grande or Patriot suspended or terminated for violation of any provision of any DMCA Policy, Acceptable

Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, and the basis (or bases) for their suspension or termination, and the number removed from suspension, re-activated or re-instated, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 46.** The number of warnings Grande or Patriot sent to Grande Customers or Users for violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 47.** The reactivation of any Grande Customer or User previously suspended or terminated for a violation of any provision of any DMCA Policy, Acceptable Use Policy, Repeat Infringer Policy, and/or for allegations of copyright infringement, including the number of previously-suspended and previously-terminated Customers or Users reactivated, and the basis (or bases) for their reactivation, for the years 2012, 2013, 2014, 2015, 2016, and 2017.

**Topic No. 48.** Communications, information and documents concerning any Grande policy, practice or capability that Patriot took part in considering, formulating, or adopting for terminating internet service to your Customers or Users arising from repeated allegations of copyright infringement.

**Topic No. 49.** Any technological barriers or other means or mechanisms implemented by Grande to address, limit or prevent copyright infringement by your Customers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems, or any technological barriers or other means or mechanisms that prohibit Grande from addressing or limiting copyright infringement by your Customers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems.

**Topic No. 50.** Communications to Grande Customers or Users concerning the Customers' or Users' access to, use of, sharing or dissemination of, or need to refrain from infringement of, copyrighted works, information, or materials (including, without limitation, sound recordings).

**Topic No. 51.** Any technological barriers or other means or mechanisms implemented by Patriot or Grande to address, limit or prevent copyright infringement by Grande Customers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems, or any technological barriers or other means or mechanisms that prohibit Patriot or Grande from addressing or limiting copyright infringement by Grande Customers or Users through the use of BitTorrent or Peer-to-Peer file sharing systems.

**Topic No. 52.** Patriot's document retention and/or destruction policies, from 2012 through the present, including but not limited to the policies governing this lawsuit.

**Topic No. 53.** Patriot's preservation and/or failure to preserve documents relevant to this lawsuit.

**Topic No. 54.** Patriot's organizational charts and structure, and executive titles and job occupants, from 2012 through the present.

**Topic No. 55.** Communications, information and documents concerning the Cox Litigation.

**Topic No. 56.** Communications, information and documents concerning any pending, threatened, or concluded lawsuit, arbitration, dispute resolution proceeding, investigation, or other matter involving Grande or Patriot, concerning Grande's Customers' or Users' copyright infringement relating to the downloading of music.