# Exhibit 6

# FILED UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.* | § § § § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| GRANDE COMMUNICATIONS NETWORKS LLC | § § | Civil Action No. 1:17-cv-365 |
| and PATRIOT MEDIA CONSULTING, LLC | § § § | Jury Trial Demanded |
| Defendants | § § § | |

### WARNER PLAINTIFFS' OBJECTIONS AND RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES

Pursuant to Federal Rules of Civil Procedure 26 and 33, and the Protective Order entered in this matter, Warner Bros. Records Inc., Atlantic Recording Corporation, Elektra Entertainment Group Inc., Fueled by Ramen LLC, Nonesuch Records Inc., Rhino Entertainment Company, and Roadrunner Records, Inc. (together the "Warner Plaintiffs" or "Plaintiffs") serve their Objections and Responses to Defendants' Second Set of Interrogatories.  Plaintiffs reserve the right to supplement or modify these Objections and Responses based on further information adduced during discovery.

**INTERROGATORY NO. 13:**

For each copyright that Plaintiffs assert Grande infringed, identify the complete basis for that assertion, which includes providing, in table form, (1) the specific copyrighted work infringed; (2) the owner of the specific copyrighted work; (3) the subscriber (or IP address) responsible for directly infringing that work; (4) the specific act of direct infringement; (5) the date and time on which the act of

direct infringement occurred; (6) the specific information provided to Grande that provided notice of that instance of direct infringement; (7) the specific right the subscriber violated (*e.g.* the distribution right, performance right, etc.); (8) the specific right the Plaintiffs hold for that specific work under 17 U.S.C. § 106; and (9) the conduct Grande engaged in that contributed to that direct infringement.

**ANSWER:**  Plaintiffs object to this Interrogatory on the ground that it seeks for Plaintiffs to marshal all of their evidence in support of their case, even while discovery is ongoing, only two depositions have occurred, document production is not complete, and expert reports have yet to be served. Through the discovery process, Plaintiffs are continuing to collect evidence that shows Defendants' infringement of Plaintiffs' copyrighted sound recordings.  Plaintiffs further object to this Interrogatory as seeking information protected by the attorney-client privilege and work product doctrine.  In addition, Plaintiffs object to this Interrogatory's instruction to answer the Interrogatory in chart form, on the ground that such an instruction is inconsistent with and exceeds the requirements of Federal Rules of Civil Procedure 26 and 33.

Subject to and without waiving these objections, Plaintiffs answer this Interrogatory as follows:

In response to parts 1 and 2, and in accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to Exhibit A to the Complaint, and to documents produced at WBR_00000001 through WBR_00001820.

In response to parts 3, 4, 5, and 6, and in accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to the documents produced at RC-D_00000001 through RC-D_01350635.  These documents are notices from Rightscorp to Grande, reflecting use of BitTorrent systems by users of the Grande internet services that constitute the infringement of Plaintiffs' copyrighted works, and contain information sought by these parts of the Interrogatory.

In response to parts 7 and 8, Plaintiffs state that users of the Grande internet services through the use of BitTorrent systems infringe, at a minimum, on Plaintiffs' exclusive rights under 17 U.S.C. §106(1), (3) and (6).

In response to part 9, Plaintiffs' Complaint sets forth in detail the ways in which Grande has engaged in conduct that contributes to direct infringement.  *See* Complaint ¶¶ 4-6, 37-72.  Through ongoing discovery, Plaintiffs expect to uncover additional evidence showing the ways in which Grande contributed to direct infringement.  Nonetheless, information produced in discovery to date confirms that Grande has contributed to direct infringement.

First, the evidence from discovery confirms that Grande had actual knowledge that thousands of its customers were engaging in over a million instances of copyright infringement.  Grande has produced what appear to be thousands of notices of infringement of copyrighted works that Grande received from rights holders, dating back more than a decade.  For example, at Bates GRANDE0002352 through GRANDE0002425, Grande produced notices of copyright infringement received as early as 2003.

Moreover, Grande also received more than one million notices of infringement from Rightscorp, including numerous notices regarding the specific copyrighted works referenced in Exhibit A to the Complaint.  In accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to the documents that Plaintiffs have produced at Bates RC-D_00000001 through RC-D_01350635.

For example, Grande produced an internal tracker reflecting the number of notices of copyright infringement it received from Rightscorp in 2015, by customer account number.  GRANDE1438199. In 2015 alone, by Grande's own count, almost 400 Grande customers each received more than 100 notices from Rightscorp for copyright infringement.  *Id.*  More than a thousand Grande customers each

received a dozen notices or more.  *Id.*  Grande also produced internal reports that track customers with—in Grande's own words—"excessive violations."  GRANDE0000155.  Grande's DMCA agent, Lamar Horton, confirmed that Grande generates these reports, containing information about customers that Grande has determined have received an excessive number of copyright infringement notices.  *See* Lamar Horton Deposition, at 76:1-8, and related exhibits.  For example, in the report for January 2017 (three months prior to the filing of the Complaint), Grande listed 5,337 Grande accounts as having excessive violations.  GRANDE0000155.  Similarly, the report for October through December 2016 listed 9,014 Grande accounts as having excessive violations.  GRANDE0000195.

Grande's own documents also show that the users engaging in these "excessive violations" are infringing Plaintiffs' works in suit.  A Grande tracker for June 8, 2017, GRANDE0000197, for example, reflects (based on a notice from Rightscorp) infringement of Pat Benatar's "Love is a Battlefield," one of the works in suit (Dkt. 1, Compl., Ex. A, at 6.):

| 10 | 6/8/17 19:24 | 1981010 | ############# | 6/8/17 19:16 | Disc 207.Georgia On My Mind.mp3 | Rightscorp, Inc. |
|----|--------------|---------|---------------|--------------|--------------------------------|------------------|
| 11 | 6/8/17 19:34 | 1981016 | ############# | 6/8/17 19:31 | Disc 104 - The Human League - Love Action (I Believe in Love).mp3 | Rightscorp, Inc. |
| 12 | 6/8/17 19:34 | 1981017 | ############# | 6/8/17 19:31 | Disc 117 - Pat Benatar - Love Is a Battlefield.mp3 | Rightscorp, Inc. |
| 13 | 6/8/17 19:34 | 1981018 | ############# | 6/8/17 19:31 | Disc 118 - Roxy Music - Avalon.mp3 | Rightscorp, Inc. |
| 14 | 6/8/17 19:49 | 1981021 | ############# | 6/8/17 19:40 | 11 Under Pressure.mp3 | Rightscorp, Inc. |
| 15 | 6/8/17 20:04 | 1981031 | ############# | 6/8/17 19:02 | 05_johnny_cash_-_i_walk_the_line.mp3 | Rightscorp, Inc. |

Grande has also produced communications involving Grande's employees acknowledging the use of Grande's internet services to commit copyright infringement, including for example at GRANDE0000055 (Email from Grande employee Colin Bloch states "and believe me, they know they downloaded the referenced content each time").

Second, at all times Grande had the ability to control its subscribers' use of its internet service to infringe on sound recordings, including Plaintiffs' copyrighted works, by, at a minimum, suspending or terminating such users.  Despite this extensive and indisputable knowledge that

Grande's users were engaging in infringing conduct through Grande's service, from at least 2011

through 2016, Grande took no action to suspend or terminate any Grande users who were identified,

through Rightscorp notices or otherwise, as engaging in infringement.  *See* Matt Rohre Deposition,

at 97:15-21, and related exhibits.  Instead, Grande continued to accept payment from known

infringing customers.  *See* Matt Rohre Deposition, at 204:13-18, and related exhibits.  In fact,

Grande's own records reflect express inducement to commit copyright infringement.  For example,

at GRANDE0000055, a Grande employee advised that a customer "find a more secure source to

download copyrighted materials and don't show up on their radar again."  Furthermore, with the

foregoing knowledge of rampant infringement, Grande continued to advertise the fastest available

download speeds, in order to target customers seeking to download massive amounts of likely

copyrighted material (for example, as reflected at GRANDE0000365 through GRANDE0001471).

Discovery in this matter is ongoing and Plaintiffs reserve the right to update and/or

supplement this response.

**INTERROGATORY NO. 14:**

For each individual infringement identified in response to Interrogatory No. 13, identify all

evidence supporting each of the nine enumerated elements by production Bates range.

**ANSWER:**  Plaintiffs object to this Interrogatory on the ground that it seeks for Plaintiffs to marshal

all of their evidence in support of their case, even while discovery is ongoing, only two depositions

have occurred, document production is not complete, and expert reports have yet to be served.

Plaintiffs further object to this Interrogatory as seeking information protected by the attorney-client

privilege and work product doctrine.  Through the discovery process, Plaintiffs are continuing to

collect evidence that shows Grande's infringement of Plaintiffs' copyrighted sound recordings.

Subject to and without waiving this objection, Plaintiffs answer this Interrogatory as follows:

In response to parts 1 and 2, and in accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to Exhibit A to the Complaint, and to documents produced at WBR_00000001 through WBR_00001820.

In response to parts 3, 4, 5, and 6, and in accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to the documents produced at RC-D_00000001 through RC-D_01350635.  These documents are notices from Rightscorp to Grande, reflecting use of BitTorrent systems by users of the Grande internet services that constitute the infringement of Plaintiffs' copyrighted works, and contain information sought by these parts of the Interrogatory.

In response to parts 7 and 8, Plaintiffs state that unauthorized upload or download of Plaintiffs' copyrighted works by users of the Grande internet services through the use of BitTorrent systems infringes, at a minimum, on Plaintiffs' exclusive rights under 17 U.S.C. §106(1), (3) and (6).

In response to part 9, Defendants have produced what appear to be thousands of notices of infringement of copyrighted works that Grande received from rights holders, dating back more than a decade.  For example, at Bates GRANDE0002352 through GRANDE0002425, Grande produced notices of copyright infringement received as early as 2003.

Moreover, Grande also received more than one million notices of infringement from Rightscorp, including numerous notices regarding the specific copyrighted works referenced in Exhibit A to the Complaint.  In accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to the documents that Plaintiffs have produced at Bates RC-D_00000001 through RC-D_01350635.

For example, Grande produced an internal tracker reflecting the number of notices of copyright infringement it received from Rightscorp in 2015, by customer account number.  GRANDE1438199. In 2015 alone, by Grande's own count, almost 400 Grande customers each received more than 100

notices from Rightscorp for copyright infringement. *Id.* More than a thousand Grande customers each received a dozen notices or more. *Id.* Grande also produced internal reports that track customers with—in Grande's own words—"excessive violations." GRANDE0000155. Grande's DMCA agent, Lamar Horton, confirmed that Grande generates these reports, containing information about customers that Grande has determined have received an excessive number of copyright infringement notices. *See* Lamar Horton Deposition, at 76:1-8, and related exhibits. For example, in the report for January 2017 (three months prior to the filing of the Complaint), Grande listed 5,337 Grande accounts as having excessive violations. GRANDE0000155. Similarly, the report for October through December 2016 listed 9,014 Grande accounts as having excessive violations. GRANDE0000195.

Grande's own documents also show that the users engaging in these "excessive violations" are infringing Plaintiffs' works in suit. A Grande tracker for June 8, 2017, GRANDE0000197, for example, reflects (based on a notice from Rightscorp) infringement of Pat Benatar's "Love is a Battlefield," one of the works in suit (Dkt. 1, Compl., Ex. A, at 6.):

| | | | | |
|---|---|---|---|---|
| 10 | 6/8/17 19:24 | 1981010 ############# | 6/8/17 19:16  Disc 207.Georgia On My Mind.mp3 | Rightscorp, Inc. |
| 11 | 6/8/17 19:34 | 1981016 ############# | 6/8/17 19:31  Disc 104 - The Human League - Love Action (I Believe in Love).mp3 | Rightscorp, Inc. |
| 12 | 6/8/17 19:34 | 1981017 ############# | 6/8/17 19:31  Disc 117 - Pat Benatar - Love Is a Battlefield.mp3 | Rightscorp, Inc. |
| 13 | 6/8/17 19:34 | 1981018 ############# | 6/8/17 19:31  Disc 118 - Roxy Music - Avalon.mp3 | Rightscorp, Inc. |
| 14 | 6/8/17 19:49 | 1981021 ############# | 6/8/17 19:40  11 Under Pressure.mp3 | Rightscorp, Inc. |
| 15 | 6/8/17 20:04 | 1981031 ############# | 6/8/17 19:02  05_johnny_cash_-_i_walk_the_line.mp3 | Rightscorp, Inc. |

Grande has also produced communications involving Grande employees acknowledging the use of Grande's internet services to commit copyright infringement, including for example at GRANDE0000055 (Email from Grande employee Colin Bloch states "and believe me, they know they downloaded the referenced content each time").

Patriot provides management services for Grande, and the two entities share several senior corporate officers. For years, Grande's Acceptable Use Policy listed the email address of Patriot's

General Counsel Jeff Kramp as the contact information to report suspected copyright infringement.
As a result of Patriot providing such services to Grande, Patriot necessarily would have been privy to
notices of actual infringement.  Grande has produced documents reflecting its employees contacting
Patriot personnel in connection with notices of infringement occurring on its network.  *See, e.g.,*
GRANDE0000115.

At all times, Grande and Patriot had the ability to control Grande's subscribers' use of
Grande's internet service to infringe sound recordings, including Plaintiffs' copyrighted works, by,
at a minimum, suspending or terminating such users.  Despite this extensive and indisputable
knowledge that Grande users were engaging in infringing conduct through Grande's service, Grande
took no action to suspend or terminate any Grande users who were identified, through Rightscorp
notices or otherwise, as engaging in infringement.  *See* Matt Rohre Deposition, at 97:15-21, and
related exhibits.  Instead, Grande continued to accept payment from known infringing customers.
*See* Matt Rohre Deposition, at 204:13-18, and related exhibits.  In fact, Grande's own records reflect
express inducement to commit copyright infringement.  For example, at GRANDE0000055, a
Grande employee advised that a customer "find a more secure source to download copyrighted
materials and don't show up on their radar again."  Furthermore, with the foregoing knowledge of
rampant infringement, Grande continued to advertise the fastest available download speeds, in order
to target customers seeking to download massive amounts of likely copyrighted material (for
example, as reflected at GRANDE0000365 through GRANDE0001471).

Discovery in this matter is ongoing and Plaintiffs reserve the right to update and/or
supplement this response.

**INTERROGATORY NO. 15:**

Articulate Plaintiffs' position regarding an Internet service provider's proper response to DMCA notices generated and transmitted by Rightscorp.

**ANSWER:**  Plaintiffs object to this Interrogatory to the extent that it seeks a legal conclusion regarding an ISP's obligations under federal law.  Plaintiffs also object to this Interrogatory as premature, as discovery is ongoing and Defendants have yet to produce substantially all of their internal documents responsive to Plaintiffs' requests, and most of Defendants' witnesses have not been deposed.  Plaintiffs further object to this Interrogatory as seeking information protected by the attorney-client privilege and work product doctrine.  Plaintiffs further object to this Interrogatory as vague and confusing, as it poses a general and incomplete hypothetical without regard to relevant facts and employs vague and undefined terms such as "proper."

Subject to and without waiving these objections, Plaintiffs answer this Interrogatory as follows:

As a general matter, an internet service provider's obligations in responding to DMCA notices are a question of law.  Those obligations are set forth in the DMCA, 17 U.S.C. § 512 and in the case law interpreting and applying the DMCA.  In this case, through, among other means, the Rightscorp notices, Defendants knew of copyright infringement being committed by users of the Grande system.  Furthermore, Defendants materially contributed to that infringement by providing service to known repeat infringing customers.  Indeed, Grande did not terminate a single user for copyright infringement in 2011, 2012, 2013, 2014, 2015, or 2016, despite receiving more than a million notices of copyright infringement from Rightscorp (and many notices from other sources) during this period.  Thus, for all intents and purposes, Grande did not have a repeat infringer policy in place.  Accordingly, Defendants failed to respond properly to the DMCA notices and are liable for infringement.  Defendants' insufficient response to these notices also renders them ineligible for the

safe harbor of the DMCA, which includes as a requirement that an ISP have adopted and reasonably

implemented, and informed subscribers and account holders of the service provider's system or

network of, a policy that provides for the termination in appropriate circumstances of subscribers

and account holders of the service provider's system or network who are repeat infringers.

Discovery in this matter is ongoing and Plaintiffs reserve the right to update and/or

supplement this response.

**INTERROGATORY NO. 16:**

Identify each copyright infringement detection or notification system or organization with

which each Plaintiff has been affiliated or involved.

**ANSWER:**  Plaintiffs object to this Interrogatory as vague and undefined, as it fails to define

"copyright infringement detection or notification system or organization," and what it would mean

for Plaintiffs to be "affiliated or involved" with such a system or organization.  Plaintiffs also object

to this Interrogatory as overbroad, as it encompasses a wide range of materials that are not relevant

and not proportional to the needs of the case, and thus not discoverable under Federal Rule of Civil

Procedure 26.  In particular, Plaintiffs object to the request for information concerning any copyright

infringement detection or notification systems with which each Plaintiff has "been affiliated or

involved" as not all such systems (however defined) are relevant to the claims, defenses, and issues

in this case.  Plaintiffs further object to this Interrogatory as seeking information protected by the

attorney-client privilege and work product doctrine.

Subject to and without waiving these objections, Plaintiffs have relied in this case on data

from Rightscorp, which is an entity that monitors internet traffic for copyright infringement.

**INTERROGATORY NO. 17:**

Identify by year each Internet service provider that the Rightscorp system has identified as failing to properly terminate repeat infringing subscribers.

**ANSWER:**  Plaintiffs object to this Interrogatory as overbroad, as it encompasses a wide range of materials that are not relevant and not proportional to the needs of the case, and thus not discoverable under Federal Rule of Civil Procedure 26.  The only ISP at issue in this case is Grande. The failure of other internet service providers to terminate repeat infringers is irrelevant to the legal questions in this case related to Defendants' conduct.  In addition, Plaintiffs object to this Interrogatory on the ground that it seeks information not within Plaintiffs' possession, custody, or control.  Plaintiffs further object to this Interrogatory as seeking information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving these objections, Plaintiffs state that they are aware that Rightscorp's system has identified Grande, as well as internet service providers RCN and Wave (which Plaintiffs understand to be affiliates of Grande), as failing to terminate repeat infringing subscribers since 2011.

**INTERROGATORY NO. 18:**

Identify all of the ways in which Grande is capable of verifying the accuracy of an allegation of subscriber infringement set forth in a Rightscorp notice.

**ANSWER:**  Plaintiffs object to this Interrogatory on the ground that it seeks for Plaintiffs to marshal all of their evidence in support of their case, even while discovery is ongoing, only two depositions have occurred, document production is not complete, and expert reports have yet to be served. Through ongoing discovery, Plaintiffs expect to uncover additional information that may relate to Grande's ability to verify the accuracy of allegations of infringement.  In addition, Plaintiffs object to this Interrogatory on the ground that it seeks information not within Plaintiffs' possession,

custody, or control; Grande presumably possesses information about its own capabilities, and Plaintiffs may not be familiar with all of the verification methods that Grande may have at its disposal. Plaintiffs further object to this Interrogatory as seeking information protected by the attorney-client privilege and work product doctrine.

Subject to and without waiving these objections, Plaintiffs answer this Interrogatory as follows: The notices received by Grande from Rightscorp contain detailed information, including the IP address, date and time of the infringement, and the infringing file. Grande has produced documents reflecting its present ability to track infringements by customer. Rightscorp provided Grande with access to a dashboard containing all infringements, sorted by the identifying information included in the notices. The dashboard also enabled Grande to listen to each file that was the subject of a notice. Moreover, Rightscorp offered to meet with Grande to discuss the information Rightscorp was providing to Grande regarding the use of Grande's internet service to engage in infringing activity. Grande could have requested, and would have received from Rightscorp, extensive information concerning the nature of the infringing conduct that Rightscorp detected as well as the identities of the Grande subscribers involved in the infringing activity. *See, e.g.,* RIGHTSCORP00003832 through RIGHTSCORP00004480 and GRANDE1435474. Furthermore, Grande could have communicated to its subscribers whom Rightscorp identified as involved in the infringing activity, to ask those subscribers about the infringing activity that Rightscorp had identified. In fact, however, Grande did not doubt that the Rightscorp notices it received identified actual infringing conduct by Grande's subscribers. *See* Lamar Horton and Matt Rohre Depositions.

Discovery in this matter is ongoing and Plaintiffs reserve the right to update and/or supplement this response.

12

**INTERROGATORY NO. 19:**

Identify the total number of alleged instances of infringement for which Plaintiffs are seeking

to recover damages, and for each such instance, identify by Bates production number any evidence

Plaintiffs may rely on to demonstrate actual damages pursuant to 17 U.S.C. § 504(b), or to

demonstrate Plaintiffs' entitlement to statutory damages in a specific amount within the statutory

range set forth in 17 U.S.C. § 504(c)(1).

**ANSWER:**  Plaintiffs object to this Interrogatory on the ground that it seeks for Plaintiffs to marshal

all of their evidence in support of their case, even while discovery is ongoing, only two depositions

have occurred, document production is not complete, and expert reports have yet to be served.

Through ongoing discovery, Plaintiffs expect to uncover additional information supporting their

claims for damages.  Plaintiffs further object to the extent this Interrogatory seeks information that

will be the subject of expert reports, which have not yet been exchanged.  In addition, Plaintiffs

object to this Interrogatory on the ground that it seeks information in Defendants' possession that is

not within Plaintiffs' possession, custody, or control.  Plaintiffs also object to the extent this

Interrogatory seeks information about damages that may be derived from documents that Defendants

have produced and have designated as Attorneys' Eyes Only, which prevents Plaintiffs from

reviewing them.  Plaintiffs further object to this Interrogatory as seeking information protected by

the attorney-client privilege and work product doctrine.

Subject to and without waiving these objections, Plaintiffs answer this Interrogatory as

follows:

Plaintiffs seek the maximum amount of statutory damages for willful infringement for each

of the copyrighted works identified in Exhibit A to the Complaint.  Alternatively, Plaintiffs may seek

actual damages.  Discovery is ongoing and expert reports have not yet been exchanged.  Based on

the discovery produced to date, and in accordance with Federal Rule of Civil Procedure 33(d),

Plaintiffs direct Defendants to the documents produced at RC-D_00000001 through RC-

D_01350635, which reflect the repeat infringement of Plaintiffs' copyrighted works by users of the

Grande internet services.  As those documents show, Grande's users engaged in over 1 million

instances of copyright infringement.  Plaintiffs further direct Defendants to the evidence identified in

response to Interrogatories Nos. 13 and 14.  In addition, Plaintiffs may support their claims for

damages with reference to information such as Defendants' revenues and profits, the valuation of

Defendants' businesses, and the amount of Defendants' improper profits from the infringing activity,

including but not limited to the amount of profit Grande earned from subscriber fees from repeat

infringers.  However, Defendants have designated documents containing such information as

Attorneys' Eyes Only, which prevents Plaintiffs from reviewing them.  A precise calculation of

damages may be performed after discovery is complete, and may be the subject of expert testimony

that Plaintiffs present, at the times and in the manner provided by the Court's scheduling order (as

may be amended by the Court or modified by the Parties' agreement).

Discovery in this matter is ongoing and Plaintiffs reserve the right to update and/or

supplement this response.

Dated:  April 12, 2018              Respectfully submitted,


                                  By:    /s/ *Robert B. Gilmore*


                                        Pat A. Cipollone, P.C. (admitted *pro hac vice*)
                                        Jonathan E. Missner (admitted *pro hac vice*)
                                        Robert B. Gilmore (admitted *pro hac vice*)
                                        Philip J. O'Beirne (admitted *pro hac vice*)
                                        **Stein Mitchell Cipollone Beato & Missner LLP**
                                        1100 Connecticut Avenue, NW Suite 1100
                                        Washington, DC 20036
                                        Telephone: (202) 737-7777
                                        Facsimile: (202) 296-8312
                                        pcipollone@steinmitchell.com

14

jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting
State Bar No. 02362480
Paige A. Amstutz
State Bar No. 00796136
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

It is hereby certified that a true copy of the foregoing was served via First Class Mail and Electronic Mail on the 12th day of April, 2018, upon counsel of record.

Dated: April 12, 2018

/s/ *Robert B. Gilmore*

## VERIFICATION FOR RESPONSES TO INTERROGATORIES

I, Megan Johnson, am authorized to make this verification on behalf of the Warner Plaintiffs. While I do not have personal knowledge of the facts recited in the foregoing responses, I am informed and believe that these responses are based on a diligent and reasonable effort to obtain information currently available, including information produced by defendants and third parties in this litigation. The Warner Plaintiffs reserve the right to make changes or additions to any of these Responses should additional information become available. Subject to these limitations, I hereby certify that the facts stated herein are true to the best of my knowledge, information, and belief.

I verify under penalty of perjury that the foregoing is true and correct.

Megan Johnson

Dated:  April 12, 2018