# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  1:17-cv-00365-LY |
| | ) | |
| GRANDE COMMUNICATIONS | ) | |
| NETWORKS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 2

SUMMARY JUDGMENT STANDARD ................................................................ 4

ARGUMENT ............................................................................................................ 4

I.      PLAINTIFFS CANNOT PROVE DIRECT INFRINGEMENT .......................... 4

        A.      Plaintiffs cannot prove "substantial similarity." ................................ 5

        B.      Plaintiffs cannot prove that any Grande subscriber violated
                the reproduction right using Grande's network. .................................. 6

        C.      Plaintiffs cannot prove that any Grande subscriber violated
                the distribution right through Grande's network. ............................... 7

                1.      *Plaintiffs Have No Evidence of Actual Distribution* ............................ 7

                2.      *Plaintiffs' Distribution Theory Impermissibly Invokes
                        Tertiary Liability* ................................................................................ 9

        D.      Plaintiffs must come forward with evidence of direct
                infringement with respect to each asserted copyright. ....................... 10

        E.      Plaintiffs cannot prove a that any Grande subscriber violated
                the public performance right using Grande's network. ...................... 11

II.     PLAINTIFFS CANNOT PROVE CONTRIBUTORY LIABILITY ................... 11

        A.      There is no genuine issue of material fact regarding
                inducement. ............................................................................................ 12

        B.      There is no genuine issue of material fact regarding material
                contribution. .......................................................................................... 13

        C.      There is no genuine issue of material fact regarding
                knowledge. .............................................................................................. 15

III.    PLAINTIFFS CANNOT PROVE WILLFUL COPYRIGHT
        INFRINGEMENT ................................................................................................ 18

IV.     PLAINTIFFS CANNOT PROVE THE "DISCOVERY RULE"
        EXPANDS THE STATUTORY DAMAGES PERIOD ....................................... 18

**V.     PLAINTIFFS CANNOT PROVE ACTUAL DAMAGES OR
         GRANDE'S PROFITS RESULTING FROM ANY ALLEGED
         INFRINGEMENT** ................................................................................ 19

**VI.    PLAINTIFFS CANNOT PROVE THEY OWN MANY OF THE
         ASSERTED COPYRIGHTS** .............................................................. 19

**CONCLUSION** .............................................................................................. 20

## **INTRODUCTION**

This case is an attempt by the U.S. recording industry to make Internet service providers, or ISPs, its de facto copyright enforcement agents.  Having given up on actually pursuing direct infringers due to bad publicity, and having decided not to target the software and websites that make online file-sharing possible, the recording industry has shifted its focus to fashioning new forms of copyright liability that would require ISPs to act as the copyright police.

Plaintiffs' legal theories represent an absurd expansion of copyright liability.  In essence, Plaintiffs want to require ISPs to terminate the accounts of subscribers based on nothing more than unsubstantiated and unverifiable allegations of copyright infringement.  To further this effort, the recording industry enlists a third party to bombard ISPs like Grande with hundreds of thousands of such allegations per year—more than any ISP could ever reasonably investigate and attempt to verify, even if it had the practical ability to do so.  These notices are sent by a company that shockingly does nothing to verify the registration or ownership of any of the songs for which it sends out millions of notices of infringement and collects monetary settlements. This puts ISPs in an impossible position: either terminate subscribers based on unverified allegations of infringement, or face litigation for the secondary infringement of thousands of copyrighted works.  Fortunately, the copyright law simply does not and cannot allow for secondary liability in these circumstances.

Plaintiffs' over-reaching is not limited to their legal theories. Plaintiffs' case against Grande is also riddled with fatal evidentiary flaws.  There are almost too many to list—from the lack of any evidence permitting the legally-required comparison of any copyrighted song to any infringed work, to the lack of any evidence that a Grande subscriber ever reproduced or distributed a copyrighted work on Grande's network, to the obvious and severe defects in the business practices of the company responsible for generating the notices of alleged infringement, to the lack of evidence that Plaintiffs even own all of the copyrights they assert in this case. These failures entitle Grande to summary judgment for numerous reasons.

1

**FACTUAL BACKGROUND**

Plaintiffs are a collection of record labels who are seeking to hold Grande, a Texas Internet service provider ("ISP"), secondarily liable for copyright infringement allegedly committed by Grande's subscribers using the peer-to-peer file-sharing protocol BitTorrent.  In other words, Plaintiffs want to make Grande responsible when its subscribers allegedly share copyrighted songs with others over the Internet.

Plaintiffs' evidence of infringement consists exclusively of a set of "infringement notices" generated by a computer system developed by non-party Rightscorp, Inc.  While Plaintiffs suggest in their Complaint that Rightscorp's system is capable of detecting actual infringement taking place on the Internet, in truth the Rightscorp system is only capable of detecting when a file is made <u>accessible</u>—the system cannot detect when, or even whether, a file has ever actually been copied.  *See* Frederiksen-Cross Report, ¶ 46 (3-4) (Ex. 1).

To conduct its monitoring activities, Rightscorp obtains a list of song titles and artist names from its clients.  *Id.* at ¶¶ 46, 47.  Rightscorp uses this limited information to scour the Internet for alleged "infringements" so that it can generate notices and possibly elicit monetary settlements from individual Internet subscribers.  Amazingly, Rightscorp conducts these notification and settlement activities without ever obtaining (1) a true copy of the song that could be compared to the "infringing" copy, (2) registration information that establishes the song is registered with the Copyright Office, or (3) documentation proving that the client is the true owner of the registered work.[1]  Sabec Dep. Tr. 1170:10-18; 1288:24-1289-21 (Ex. 3).

Each time Rightscorp identifies a computer it believes is offering to share a song from its list, Rightscorp identifies the ISP associated with that computer's Internet service and transmits

---

[1] Logically, this leads to circumstances in which Rightscorp must remove songs from its list of actively monitored songs when it subsequently learns that it does not have the right to monitor those songs.  *See, e.g.,* Exhibit to Boswell July 3, 2015 Dep. (Ex. 5).   In such cases, prior to removing those songs from its list, any notices Rightscorp sent for those songs were illegitimate and any settlements it collected for those songs were illegally obtained.

an email to the ISP accusing its subscriber of engaging in copyright infringement.   The email notice identifies the file name being shared, the time of the detection, and the IP address of the relevant home network to which the computer is connected.[2]   *See* Frederiksen-Cross Report, ¶¶ 18, 73 (Ex. 1).   Sometimes—not always—Rightscorp's notices include the name of the entity purporting to own the song to which the notice relates.   *See* Sample Rightscorp Notices (Ex. 4)

Despite the fact that Rightscorp's notices include a statement that its representatives "swear, under penalty of perjury, that [they] are authorized to act on behalf of the owner of the exclusive rights that have been infringed," Rightscorp in fact makes no effort to authenticate or verify any information relating to the allegations of infringement contained in the notices it sends.   Because Rightscorp does not possess any registration or ownership information pertaining to the songs it monitors, Rightscorp's notices do not include any such evidence.   *Id*.

Because Rightscorp's system cannot detect actual instances of a file being uploaded or downloaded by anyone, the notices it sends do not evidence any instance of actual infringement of a copyrighted work.   Even the date and time on the notice are misleading—they merely reflect the moment at which Rightscorp's system performed its scan and not any recorded instance of a work being copied.   If Rightscorp's system were to be run twice as often, Rightscorp would generate twice as many "infringement" notices, without any related change in the conduct of Grande's subscribers.   Sabec Dep. Tr. 1189:20-1193-11 (Ex. 3).   These notices would then be used by Rightscorp to attempt to collect twice as many settlements from affected subscribers.   *Id*.

Rightscorp has never sent notices of alleged copyright infringement to Grande on behalf of any of the Plaintiffs in this case.   *Id*. at 1149:12-1150:6 (Ex. 3).   Instead, the vast majority of the roughly 1.3 million notices Rightscorp sent to Grande, and that Plaintiffs rely on in this case,

---

[2] It is often the case that Internet subscribers employ home WiFi networks that allow various computers, televisions, gaming systems and other Internet-connected devices to talk to the Internet.  In these circumstances, each and every electronic device connected to the WiFi network communicates to the Internet through the single IP address assigned to that subscriber.

were sent to Grande on behalf of non-party BMG Rights Management (US) LLC ("BMG").[3]  In 2016, Rightscorp and the Recording Industry Association of America ("RIAA") entered into an agreement under which the RIAA acquired Rightscorp's Grande-related notices.  Sabec Dep. Tr. 1112:1-1114:25, 1305:5-1306:8 (Ex. 3).   Rightscorp also convinced the RIAA to pay Rightscorp's representatives hourly to testify in this matter.  *Id*. at 1115:1-14.

## SUMMARY JUDGMENT STANDARD

"[I]t has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017); *see also, e.g.*, *Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999) ("When a moving party alleges that there is an absence of evidence necessary to prove a specific element of a case, the nonmoving party bears the burden of presenting evidence that provides a genuine issue for trial.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

## ARGUMENT

### I.   PLAINTIFFS CANNOT PROVE DIRECT INFRINGEMENT

Plaintiffs allege that Grande's subscribers have infringed their exclusive rights to reproduce, distribute, and publicly perform the asserted copyrighted works, as set forth in 17

---

[3] In 2014, BMG sued a different ISP, Cox Communications, Inc., on very similar theories of secondary copyright infringement, relying on Rightscorp's notices.  BMG obtained a favorable jury verdict in that case, but earlier this year, the Fourth Circuit reversed and remanded for a new trial, which has yet to occur. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 310 (4th Cir. 2018).

U.S.C. § 106(1), (3), and (6), respectively.  Compl., ¶¶ 36-37 (ECF No. 1); Warner Plfs.' Obj. & Resp. to 2nd Interrogs. at 3 (Ex. 6).[4]  Plaintiffs cannot prove direct infringement under any of these provisions of the Copyright Act, for a number of separate and independent reasons.

### A.  Plaintiffs cannot prove "substantial similarity."

Every copyright infringement claim requires a side-by-side comparison of the copyrighted work and the allegedly infringing work, so that the factfinder can assess whether they are "substantially similar."  *Bridgman v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) ("[T]he law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the works."); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) ("To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'") (emphasis in original).

There is no evidence in this case that permits the factfinder to conduct a "substantial similarity" comparison between (1) a file allegedly reproduced, distributed, or publicly performed by a Grande subscriber and (2) a copyrighted song owned by any Plaintiff.  This failure of proof is fatal to Plaintiffs' claims because it means there is no genuine issue of material fact regarding direct infringement.  *See King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility.  King's failure to adduce evidence for such a comparison vitiates her claim.") (citation omitted); *Peel & Co. v. The Rug Market*, 238 F.3d 391, 398 (5th Cir. 2001) (summary judgment is proper on copyright infringement claim if the evidence does not permit a finding of substantial similarity); *Batiste v. Najm*, 28 F. Supp. 3d 595, 618-23 (E.D. La. 2014) ( "no reasonable juror could find substantial similarity—as to the constituent elements stated in the complaint, as to any combination of those elements, as to the songs taken as a whole, or as to any part(s) thereof").

---

[4] Warner Plaintiffs' interrogatory answers are in substance identical to those of the other two groups of Plaintiffs (Sony and Universal).

**B.**   **Plaintiffs cannot prove that any Grande subscriber violated the reproduction right using Grande's network.**

17 U.S.C. § 106(1) grants a copyright owner the exclusive right "to reproduce the copyrighted work in copies or phonorecords."  Thus, in order to prove an act of direct infringement under § 106(1) <u>for which Grande may be liable</u>, Plaintiffs must prove that a Grande subscriber actually copied copyrighted material—*i.e.*, downloaded it from another BitTorrent user—using Grande's network.  *See, e.g.*, *Maverick Recording Co. v. Harper*, 598 F.3d 193, 197 (5th Cir. 2010) (defendant directly infringed copyright "by downloading, and hence reproducing, the audio files"); *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) ("Both uploading and downloading copyrighted material are infringing acts.  The former violates the copyright holder's right to distribution, the latter the right to reproduction.").

There is no such evidence in this case.  Plaintiffs' claims are based entirely on Rightscorp's purported evidence that Grande subscribers made copyrighted material available for upload <u>to other BitTorrent users</u>—*i.e.*, alleged distribution under § 106(3).  There is no evidence that any Grande subscriber acquired any of the copyrighted materials at issue in this litigation by downloading those materials through Grande's network.

In fact, there is no evidence whatsoever concerning the origin of any of the songs that Rightscorp allegedly detected.  Those files could have been obtained by Grande subscribers through a legitimate online service such as iTunes Music, Google Play Music, or Amazon Music.  Even if the songs were originally obtained illegally—an assertion unsupported by any evidence produced in this case—Plaintiffs cannot show that the illegal conduct took place <u>through Grande's network</u>.  For example, the songs could have been downloaded through another ISP's network, through a school network or at a coffee shop with WiFi, been given to the subscriber by a friend on a flash drive, or been reproduced by the subscriber themselves from a compact disc, among many other possibilities.  Based on the evidence in this case, there is no way to know.  Indeed, Plaintiffs did not even attempt to obtain discovery from any Grande subscriber on this issue.

Ignoring the myriad issues plaguing Rightscorp's notices,[5] at best they could only possibly show that certain Grande subscribers possessed Plaintiffs' copyrighted works.  This evidence does not give rise to a genuine issue of material fact as to whether any Grande subscriber <u>reproduced</u> any of Plaintiffs' copyrighted materials (1) illegally or (2) using Grande's network.  The Court should therefore grant summary judgment to the extent Plaintiffs allege infringement of their § 106(1) reproduction right.

### C. <u>Plaintiffs cannot prove that any Grande subscriber violated the distribution right through Grande's network.</u>

#### 1. *Plaintiffs Have No Evidence of Actual Distribution*

Plaintiffs do not claim to rely on any evidence in this case that a Grande subscriber actually distributed any of Plaintiffs' copyrighted works to another BitTorrent user.  Warner Plfs.' Obj. & Resp. to 2nd Interrogs. at 1-8 (Ex. 6).  Instead, Plaintiffs' claims are based entirely on alleged evidence that Grande subscribers <u>made copyrighted works *available* to other BitTorrent users</u>.  *See id.*  According to Plaintiffs' own technical expert,[6] Rightscorp's BitTorrent monitoring system does not detect actual downloads, but rather sends notices of alleged infringement by searching BitTorrent for Peers offering copies of protected files and creating evidence records to document the offer to make protected works available via BitTorrent.  Frederiksen-Cross Report, ¶ 46 (3-4) (Ex. 1)

Courts consistently hold that merely making copyrighted works available to others does not violate the distribution right—actual dissemination is required.  *See, e.g.*, *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) ("The general rule, supported by the great weight of authority, is that 'infringement of the distribution right requires an actual dissemination of either copies or phonorecords.'") (quoting *Nat'l Car Rental Sys. v. Computer*

---

[5] One of these issues is the fact that Rightscorp sends its notices without first downloading the file residing on the subscriber's computer (to confirm it exists) or performing any audio comparison of that file with the song allegedly protected by Rightscorp's clients' copyright registrations.

[6] Grande does not concede that Ms. Frederiksen-Cross's proposed testimony is admissible.

*Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993) (alterations omitted)) (collecting cases); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1221 (D. Minn. 2008) ("Equating making available with distribution would undermine settled case law holding that merely inducing or encouraging another to infringe does not, alone, constitute infringement unless the encouraged party actually infringes.") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005)); *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 670 (E.D. Va. 2015) ("In sum, to establish a direct infringement of its distribution right, BMG must show an actual dissemination of a copyrighted work.").

Plaintiffs' alleged evidence of infringement does not include any evidence that any BitTorrent user actually downloaded one of Plaintiffs' alleged copyrighted works from a Grande subscriber through Grande's network.  Warner Plfs.' Obj. & Resp. to 2nd Interrogs. at 1-8 (Ex. 6).  While some courts have indicated that a plaintiff may prove actual dissemination through circumstantial evidence, Plaintiffs have similarly failed to identify any such circumstantial evidence.  To be actionable, circumstantial evidence of distribution must be something beyond mere evidence of an offer to distribute, because to conclude otherwise would impermissibly impose liability for an *attempt* to distribute.  *Howell*, 554 F. Supp. 2d at 984 (Evidence that files were made available for download "[o]n its own . . . does not prove that the copy changed hands. It only shows that the defendant attempted to distribute the copy, and there is no basis for attempt liability in the statute . . . .").

Moreover, Plaintiffs must prove infringement by establishing that the file distributed by a Grande subscriber was a "substantially similar" copy of the registered work.  *Bridgmon*, 325 F.3d at 577.  Even if Plaintiffs could show that a Grande subscriber engaged in a specific act of distribution—which they cannot—Plaintiffs cannot demonstrate that the disseminated material satisfies the "substantially similar" requirement.  This is at least because BitTorrent operates by breaking a file up into small pieces for transmission, and any Internet user who may download an allegedly copyrighted work would only take a small portion of any allegedly infringing work from a particular Grande subscriber.  *See* Frederiksen-Cross Report at pp. 14-18 (Ex. 1).  While

an Internet user may <u>reproduce</u> a work by downloading it from a BitTorrent swarm, a Grande subscriber who allegedly uploads one small piece of that work does not distribute a file "substantially similar" to the copyrighted work.  The small part of a file that may be contributed by a single participant in a BitTorrent swarm represents a small part of an overall song file and is not even capable of being performed without first being reassembled with multiple other parts of the file obtained by other members of the swarm.  *Id.*

Thus, Rightscorp's alleged evidence that Grande subscribers made files available for download through BitTorrent cannot, standing alone, give rise to a genuine issue of material fact regarding direct infringement of the distribution right.  The Court should therefore grant summary judgment due to Plaintiffs' inability to prove a necessary element of their claims.

   2. *Plaintiffs' Distribution Theory Impermissibly Invokes Tertiary Liability*

Even if Plaintiffs could come forward with evidence that a Grande subscriber actually transmitted a work protected by a copyright in this case to another BitTorrent user, such evidence would not give rise to a genuine issue of material fact regarding direct infringement.  Rather, such evidence could only support a <u>secondary liability claim *against the Grande subscriber*</u> for violation of the reproduction right.  *See Howell*, 554 F. Supp. 2d at 986 ("If the owner of the shared folder simply provides a member of the public with access to the work and the means to make an unauthorized copy, <u>the owner is not liable as a primary infringer of the distribution right, but rather is potentially liable as a secondary infringer of the reproduction right</u>.") (emphasis added); *Thomas*, 579 F. Supp. 2d at 1225.

There is no viable secondary infringement claim against Grande in these circumstances—*i.e.*, where Grande is allegedly enabling secondary, not direct, copyright infringement.  Courts reject attempts to impose this sort of "tertiary" liability.  *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001) ("Under this formulation, Napster uses are the direct infringers, Napster is the secondary infringer, and the individual defendants [with different alleged connections to Napster's operations] are tertiary infringers.  The Court finds no support for this legal proposition."); *David v. CBS Interactive*

*Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at \*4 (N.D. Cal. July 13, 2012) ("The courts have yet to find contributory liability based on a tertiary actor's conduct.").  This is a separate and independent basis for summary judgment, to the extent Plaintiffs allege that Grande is secondarily liable for infringement of Plaintiffs' distribution rights.

### D.  Plaintiffs must come forward with evidence of direct infringement with respect to each asserted copyright.

In addition to (and irrespective of) the failures of proof discussed above, Plaintiffs cannot simply point to the volume of notices Rightscorp sent—each purportedly corresponding to an instance of a file being made available for download—to prove it is more likely than not that actual unlawful reproduction or distribution occurred on Grande's network.  This would make a mockery of Plaintiffs' obligation to prove their case with respect to each asserted copyright.

There is no doubt that if Plaintiffs were alleging secondary infringement of only one copyrighted work, they would be required, in order to survive summary judgment, to come forward with evidence showing that a Grande subscriber actually reproduced or distributed that work over Grande's network.[7]  That same requirement must apply here.  In other words, Plaintiffs must come forward with specific evidence of direct infringement for each asserted copyright that they contend gives rise to a genuine issue of material fact on Grande's secondary infringement.[8]  Plaintiffs cannot simply wave their hands at a collection of Rightscorp notices—none of which were sent on Plaintiffs' behalf[9] and none of which represent an effort to enforce Plaintiffs' asserted copyrights[10]—to survive summary judgment.

---

[7] Such a plaintiff asserting a single work would not be permitted to prove its case by merely arguing that "infringement happens on the Internet" or by presenting evidence regarding the illegal copying of unrelated works.  The same principles hold true for Plaintiffs' allegations of infringement in this case.  Evidence relating to other, non-asserted copyrights cannot provide the necessary support for Plaintiffs' claims.

[8] Plaintiffs refused to identify this evidence in discovery.  *See* Grande's Mot. to Compel at 10-11 (ECF No. 110).

[9] *See* Sabec Dep. Tr. 1170:10-18; 1288:24-1289-21 (Ex. 3).

[10] *Id.*

Plaintiffs cannot legitimately argue that it would be too burdensome for them to present this evidence and to explain how it relates to each asserted copyright. That burden is the direct and unavoidable consequence of Plaintiffs' decision to bring a case involving over 1,500 different copyrighted songs. It would be perverse to permit Plaintiffs to <u>lessen</u> their summary judgment burden by <u>increasing</u> the number of copyrighted works at issue.

### E.   Plaintiffs cannot prove a that any Grande subscriber violated the public performance right using Grande's network.

Plaintiffs have no legitimate factual or legal basis for alleging direct infringement under 17 U.S.C. § 106(6), which sets forth the copyright owner's right "in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."[11]

Grande is entitled to summary judgment because there is no evidence that any Grande subscriber transmitted any copyrighted material "to the public." *See* 17 U.S.C. § 101 ("To perform or display a work 'publicly' means . . . to transmit or otherwise communicate a performance or display of the work to [a public place] or to the public . . . ."). Additionally, making a copyrighted work available for download—or even downloading a copyrighted work— is not a "performance." *See, e.g.*, *United States v. ASCAP*, 627 F.3d 64, 74 (2d Cir. 2010).

Performance through a digital audio transmission only occurs where "there is a playing of the song that is perceived simultaneously with the transmission." *Id.* (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 158 (1975)). There is no such evidence of simultaneous perception and transmission. The Court should therefore grant summary judgment in Grande's favor to the extent Plaintiffs' claims are premised on direct infringement under § 106(6).

## II.   PLAINTIFFS CANNOT PROVE CONTRIBUTORY LIABILITY

To prevail on its claim for contributory infringement, Plaintiffs must prove that Grande

---

[11] Indeed, there are not even any factual allegations in Plaintiffs' Complaint that plausibly demonstrate infringement of their public performance rights. *See* ECF No. 1.

(1) had knowledge of specific instances of infringement taking place on its network and (2) induced that infringing conduct.  Plaintiffs cannot present the evidence necessary to satisfy either of these elements of their claim.

<strong>A.      There is no genuine issue of material fact regarding inducement.</strong>

"One infringes contributorily by <u>intentionally</u> inducing or encouraging direct infringement . . . ."  *Grokster*, 545 U.S. at 930 (emphasis added).  The Supreme Court has "barred secondary liability based on presuming or imputing intent to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement."  *Id.* at 933.

Thus, under an inducement theory of contributory infringement, a defendant who distributes a product or service with substantial non-infringing uses is not liable unless they offer the product or service "with the object of promoting its use to infringe copyright, *<u>as shown by clear expression or other affirmative steps taken to foster infringement</u>*."  *Id.* at 936-37 (emphasis added).  This "purposeful, culpable expression and conduct" is the key for inducement liability— "mere knowledge of infringing potential or <u>of actual infringing uses</u>" is "<u>*not enough*</u>."  *Id.* at 937 (emphasis added).[12]  In other words, the claim requires proof of intent separate from proof of knowledge of infringement, and this intent cannot be presumed solely from knowledge of infringement, but rather requires independent evidence of "statements or actions directed to

---

[12] To the extent the Fourth Circuit suggested in *Cox* that knowledge of (or willful blindness to) infringement <u>can</u> demonstrate the necessary intent, that conclusion is erroneous and should not be followed.  *See Cox*, 881 F.3d at 310.  Such a conclusion contradicts *Grokster* by improperly conflating the question of knowledge with the separate question of intent, which is the actual focus of the inducement inquiry.  Put differently, knowledge alone is not sufficient to prove that a party is liable for inducing infringement.  *See, e.g., Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 2010, 1038 (9th Cir. 2013) ("First, as previously discussed, proper proof of the defendant's intent that its product or service be used to infringe copyrights is paramount. Mere knowledge of infringing potential or of actual infringing uses does not subject a product distributor or service provider to liability.") (internal citations omitted).  Indeed, prior to the 4th Circuit's decision in *Cox*, Plaintiffs attempted to distinguish *Grokster* on grounds that it is <u>only</u> applicable to claims alleging an inducement theory of contributory liability.  Plfs.' Opp. to Mot. to Dismiss at 17 (ECF No. 33).

12

promoting infringement." *See id.* at 935; *see also Dallas Buyers Club, LLC v. Doughty*, No. 3:15-cv-176, 2016 WL 1690090, at *9 (D. Or. Apr. 27, 2016) ("As the court in *Grokster* stated, however, contributory liability arises when the defendant actively encourages infringement, not by mere knowledge of infringing activity and failure to take affirmative steps to prevent infringement. This is especially true here given the Internet is capable of substantial non-infringing uses.").

There is no evidence whatsoever that Grande took affirmative steps to induce or encourage its subscribers to infringe Plaintiffs' copyrights. *See also Grokster*, 545 U.S. at 937 ("The classic instance of inducement is by advertisement or solicitation that broadcasts a message designed to stimulate others to commit violations."). Instead, Plaintiffs' evidence of intent is based entirely on Grande's alleged failure to act on the copyright notices it received from Rightscorp. *Grokster* makes clear that knowledge "of actual infringing uses"—giving Plaintiffs' evidence the benefit of the doubt—is "not enough." *Id.* at 937. Moreover, it is beyond dispute that the Internet access Grande provides to its subscribers has substantial non-infringing uses. Indeed, for these very reasons, BMG conceded in its litigation against Cox Communications that it could not prove that the defendant ISP induced its subscribers to commit copyright infringement. *BMG Rights Mgmt. (US) LLC. v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 977 n.18 (E.D. Va. 2016).

The Court should therefore grant summary judgment in Grande's favor to the extent Plaintiffs allege contributory liability based on inducement.

### B.    <u>There is no genuine issue of material fact regarding material contribution.</u>

Plaintiffs maintain that even if *Grokster* forecloses liability under an inducement theory, they may still prove contributory liability on a theory that Grande "materially contributed" to the alleged direct infringement of its subscribers. Plaintiffs are wrong.

First, neither *Grokster* nor any other Supreme Court case recognizes "material contribution" as a separate and independent basis for contributory infringement liability. *See Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) ("Liability under our jurisprudence may be

13

predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) <u>or</u> on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses.") (emphasis added). Indeed, if such a theory were viable, it is unclear why a plaintiff would ever attempt to satisfy the more stringent standard for inducement set out in *Grokster*.

Second, *Grokster* <u>does</u> clearly provide that proof of intent is necessary for <u>*any*</u> contributory infringement claim, and that such intent cannot be inferred solely from knowledge of actual infringing uses of the defendant's product or service. *See supra* Section II.A.; *Grokster*, 545 U.S. at 933. Thus, for the same reasons Plaintiffs cannot prove contributory infringement based on inducement, they also cannot prove contributory infringement based on material contribution. *See BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7 (S.D.N.Y. July 15, 2016) ("[E]ven assuming that Polyvore had knowledge of the infringing activity and materially contributed to copyright infringement, the *Sony-Betamax* rule shields Polyvore from liability."). There is logical reason why *Grokster*'s holding should be limited to contributory infringement claims alleging inducement.

Third, even if Plaintiffs are permitted to pursue a material contribution theory, there is no genuine issue of material fact as to whether Grande "substantially assists" its subscribers in committing direct infringement. *See, e.g.*, *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 943 (9th Cir. 2011) ("Material contribution turns on whether the activity in question 'substantially assists' direct infringement."). Such "substantial assistance" requires the defendant to have a direct role in contributing to the infringement. *See, e.g.*, *Louis Vuitton*, 658 F.3d at 943 ("providing direct infringers with server space" for use in hosting websites used for infringing transactions is material contribution); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001). There is no such evidence here, because Grande's sole "contribution" to its subscribers' alleged infringement is the mere provision of Internet access. As an ISP, Grande has no access to its subscribers' computers or to any infringing content they may attempt to share over the

14

Internet.  Thus, Grande's role is like that of a credit card company facilitating transactions, which the Ninth Circuit has held insufficient to establish material contribution.  *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 799-800 (9th Cir. 2007).

To Grande's knowledge, the district court in *BMG v. Cox* is the only court to conclude that an ISP may materially contribute to the copyright infringement of its subscribers.  However, the district court did not consider material contribution on summary judgment, and it offered little meaningful discussion of the issue in post-trial motions.  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 671 n.25 (E.D. Va. 2015) (declining to consider material contribution due to Cox's failure to properly raise the issue); *Cox*, 199 F. Supp. 3d at 979-80 (concluding that Cox materially contributed to infringement because it could terminate its subscribers' Internet access upon learning of infringement).  Moreover, the district court <u>did</u> expressly note that its ruling "magnifie[d] the uncertainties in this area of the law and raises the specter of undesirable consequences that may follow."  *Id.* at 980.

For these reasons, there is no genuine issue of material fact regarding whether Grande materially contributed to its subscribers' alleged direct infringement, and the Court should therefore grant judgment as a matter of law.

### C.   <u>There is no genuine issue of material fact regarding knowledge</u>.

Courts are split on whether a contributory infringement claim requires actual knowledge of direct infringement or may be based on willful blindness, and the Fifth Circuit has not directly addressed the issue.  *See Luvdarts LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (contributory liability requires "actual knowledge of specific acts of infringement"); *Cox*, 881 F.3d at 312 (contributory liability may be based on willful blindness to specific instances of direct infringement).  Under either standard, there is no genuine issue of material fact because the basis of Grande's actual knowledge or willful blindness—Rightscorp's notices—cannot satisfy either knowledge requirement.

First, even if all of the information set forth in Rightscorp's notices were always complete and accurate (it is not), these notices cannot confer knowledge of "specific instances"

of direct infringement for the simple reason that they are not generated upon an actual instance of direct infringement. Rightscorp generates notices when it detects that a Grande subscriber is "offering" a song for download. *See* Boswell Dep. Tr. 1261:16-23 (Ex. 2). Importantly, the Rightscorp system does <u>not</u> detect whether a song was ever actually reproduced or distributed. Frederiksen-Cross Report, ¶ 46, 70, 79, 97, 119 (Ex. 1). Plaintiffs have no evidence that Rightscorp's notices reflect—or that Rightscorp even has the ability to detect—actual instances of reproduction or distribution (or, for that matter, public performance). *See, e.g.*, *Howell*, 554 F. Supp. 2d at 981 (infringement of distribution right requires actual distribution). Because Rightscorp's notices do not correlate to any actual instance of infringement, there is no evidence from which a reasonable juror could conclude that Rightscorp's notices conveyed knowledge of specific instances of copyright infringement.

Second, as with the evidence of alleged direct infringement at issue in this case, Plaintiffs also have not produced any of the copyrighted works referenced in the Rightscorp notices produced in this case.[13] For that reason, there is no evidence that would allow a fact finder to compare any copyrighted work forming the basis for those notices to any file allegedly copied by a Grande subscriber to determine whether that file is actually an infringing copy. *Bridgmon*, 325 F.3d at 577; *Creations Unlimited, Inc. v. McCain*, 112 F.3d at 816. Without this evidence, there is no way for Plaintiffs to prove that Rightscorp notices impart knowledge to Grande.

Third, Grande cannot be "willfully blind" to the allegations of copyright infringement set forth in the Rightscorp notices because there is no evidence that Grande has the ability to "unblind" itself. In other words, there is no evidence that Grande has the ability to verify Rightscorp's allegations—*i.e.*, to confirm that a subscriber associated with the IP address

---

[13] Plaintiffs also failed to produce any other evidence regarding the provenance of the Rightscorp notices produced in this case. There is no evidence showing that any of the copyright owners identified in those notices actually own any of the identified songs, and there is no evidence that any copyright registrations exist for those songs. Without any evidence that would allow a Jury to evaluate the legitimacy of the Rightscorp notices, they do not constitute evidence of knowledge (or willful blindness).

identified on a Rightscorp notice actually engaged in copyright infringement. *See* Boswell Dep. Tr. 1332:3-1333:23 (Ex. 2). There is no evidence that Grande has access to its subscribers' computers to verify that a particular file exists, and because the date and time provided in Rightscorp notices do not correlate to actual instances of the uploading or downloading of a file, there is no way for Grande to "verify" that such an upload or download took place at the date and time specified in the notice.[14] Put simply, *allegations* simply cannot form the basis of willful blindness unless the recipient of the allegations has some means of verifying their accuracy— thereby "unblinding" themselves.

Fourth, leaving aside the deficiencies inherent in Rightscorp's methodology for detecting alleged infringement, Rightscorp's notices simply do not contain enough information to convey knowledge of direct infringement. Not one of the Rightscorp notices identifies a copyright registration number, let alone one of the copyright registrations asserted in this case. *See* Sample Rightscorp Notices (Ex. 4). They also do not provide a copy of the song residing on the subscriber's computer, do not provide a copy of the actual copyrighted work so that Grande can perform a comparison between the two files, and—by Plaintiffs' own admission—the notices do not reflect the date and time of any actual upload or download of a file. Frederiksen-Cross Report, ¶ 46, 70, 79, 97, 119 (Ex. 1). Grande would need to perform an independent assessment of each notice to determine whether it pertained to a legitimate copyrighted work. And even then, Grande would be <u>unable</u> to determine whether that copyrighted work had actually been copied by its subscriber. Accordingly, Plaintiffs have no evidence establishing that Grande had knowledge of (or was willfully blind to) infringements committed by its subscribers.

For at least these reasons, there is no genuine issue of material fact as to whether Grande had actual knowledge of, or was willfully blind to, any specific instance of direct copyright infringement by a Grande subscriber.

---

[14] More generally, there is no evidence that Grande has any way to identify whether any upload or download of the file ever took place.

**III.    PLAINTIFFS CANNOT PROVE WILLFUL COPYRIGHT INFRINGEMENT**

The Court should grant summary judgment on Plaintiffs' allegations of willful copyright infringement because there is no evidence from which a reasonable juror could conclude that Grande knew that its alleged conduct constituted secondary copyright infringement or acted with reckless disregard of Plaintiffs' rights.  *See Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 & n.7 (5th Cir. 2014).  Moreover, as detailed above in Section I.B., the deficiencies in Rightscorp's notices to Grande—the sole basis for Grande's alleged liability—preclude any conclusion that Grande willfully disregarded Plaintiffs' rights.  Additionally, Plaintiffs cannot show that Grande ever willfully violated their rights because none of the Rightscorp notices at issue were sent on behalf of a Plaintiff in this case.[15]  Frederiksen-Cross Report, ¶ 46, 70, 79, 97, 119 (Ex. 1).  The Court should therefore grant summary judgment on willful infringement.

**IV.    PLAINTIFFS CANNOT PROVE THE "DISCOVERY RULE" EXPANDS THE STATUTORY DAMAGES PERIOD**

Plaintiffs attempt to invoke the "discovery rule" to expand the relevant three-year period for damages in this case.  *See* Grande's Resp. to Mot. to Compel at 3-5 (ECF No. 119)[16]; 17 U.S.C. § 507(b).  The Court should grant summary judgment on this issue because there are no allegations in Plaintiffs' Complaint that would allow them to rely on the discovery rule.  *See TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008).  Moreover, Plaintiffs cannot offer any evidence to show that Plaintiffs were unaware of the factual basis of their claims until January 2016 (which appears to be their position).  *See* ECF No. 108-12; *Garden City Boxing Club, Inc. v. Johnson*, 522 F. Supp. 2d 611, 616 (N.D. Tex. 2008) (burden is on plaintiff to show discovery rule applies).  Accordingly, the Court should enter judgment as a matter of law that the relevant time period is limited to the three years preceding the filing of Plaintiffs' Complaint.

---

[15] All of the notices Plaintiffs rely on in this case were transmitted on behalf of other parties and relate to other copyright registrations.  As discussed above, Rightscorp has never monitored copyrights for any of the Plaintiffs in this case.

[16] As noted therein, it is unclear whether the discovery rule is still good law in copyright cases.

**V.   PLAINTIFFS CANNOT PROVE ACTUAL DAMAGES OR GRANDE'S PROFITS RESULTING FROM ANY ALLEGED INFRINGEMENT**

The Court should grant summary judgment that Plaintiffs cannot recover damages under 17 U.S.C. § 504(b), which gives a plaintiff the option to seek "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."

With respect to actual damages, there is no evidence of actual damages suffered by any individual Plaintiff as a result of the alleged infringement.  As for Grande's profits, Plaintiffs similarly lack any evidence of profits attributable to the alleged infringement.  While § 504(b) provides that the copyright owner is only required to present proof of gross revenues, "[i]n meeting its initial burden, . . . a copyright holder must show more than the infringer's total gross revenue from *all* of its profit streams."  *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) (emphasis in original).  "Rather, 'gross revenue' refers only to revenue *reasonably related* to the infringement.  *Id.* (emphasis in original).  Plaintiffs lack any evidence of Grande's revenues that are "reasonably related" to the alleged infringement, and accordingly the Court should grant judgment as a matter of law on damages under § 504(b).

**VI.   PLAINTIFFS CANNOT PROVE THEY OWN MANY OF THE ASSERTED COPYRIGHTS**

In order to prove copyright infringement, Plaintiffs must prove ownership of the asserted copyrights.  *See, e.g.*, *Bridgmon*, 325 F.3d at 576.  Grande is entitled to partial summary judgment because Plaintiffs cannot prove ownership of many of the copyrights asserted in their Complaint.  *See Austin*, 864 F.3d at 335 n.10 ("[A] movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* of the nonmovant's claim.") (emphasis in original).

Exhibit A to Plaintiffs' Complaint lists 1,582 copyrighted sound recordings, and 782 unique registered copyrights,[17] at issue in this case.  *See* ECF No. 1-1.  From Grande's detailed

---

[17] Grande does not concede that any of these asserted copyrights are valid or were properly

review of the relevant copyright registrations, a Plaintiff is the listed owner of 421 of these 782 registered copyrights.  For purposes of this Motion, Grande does not dispute Plaintiffs' ownership of these 421 registered copyrights, listed in the attached Exhibit 7.  This leaves 361 unique copyright registrations at issue that do <u>not</u> identify a Plaintiff as the owner, listed in the attached Exhibit 8 (Contested Registrations).[18]  Grande is therefore entitled to partial summary judgment with respect to the corresponding asserted copyrights unless Plaintiffs can come forward with evidence that they own these copyrights.

Plaintiffs have refused to identify the specific evidence that establishes ownership of each asserted copyright.  *See* Ex. 7 to Grande's Mot. to Compel at 1-2, 5-8 (ECF No. 112-1).  From what Grande <u>can</u> piece together, however, Plaintiffs lack the documentary evidence necessary to establish ownership of all of the asserted copyrights reflected in Exhibit 8.[19]  *See* 17 U.S.C. § 204(a) ("A transfer of copyright ownership, other by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent.").

## CONCLUSION

For the foregoing reasons, the Court should grant Grande's Motion for Summary Judgment and enter judgment as a matter of law in Grande's favor.

---

registered.  Exhibit A lists more individual sound recordings than registered copyrights because, as discussed below, many of the registered copyrights pertain to albums.

[18] This includes all registrations where the listed owner is not an exact match for a named Plaintiff.  In the vast majority of cases, the Contested Registrations identify an owner that is completely different from the information in Plaintiffs' Exhibit A (ECF No. 1-1).  In closer cases, however, Grande exercised some discretion in identifying matches.

[19] Relatedly, a copyright must be registered in order for the owner to institute a civil action for infringement.  17 U.S.C. § 411(a).  Exhibit 8 includes numerous copyright registrations that pertain to compilations of individual songs—*i.e.*, albums.  In order for Plaintiffs to pursue their claims for infringement of an individual song included within a compilation registration, Plaintiffs must come forward with evidence that they own the copyright for the individual song, not just for the compilation.  *See, e.g.*, *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick* 559 U.S. 154 (2010).

Dated:  August 18, 2018.

By:  /s/ Richard L. Brophy
   Richard L. Brophy
   Zachary C. Howenstine
   Margaret R. Szewczyk
   Armstrong Teasdale LLP
   7700 Forsyth Blvd., Suite 1800
   St. Louis, Missouri 63105
   Telephone:  314.621.5070
   Fax:  314.621.5065
   rbrophy@armstrongteasdale.com
   zhowenstine@armstrongteasdale.com
   mszewczyk@armstrongteasdale.com

   Attorneys for Defendant GRANDE
   COMMUNICATIONS NETWORKS LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 18, 2018, all counsel of record who are deemed

to have consented to electronic service are being served with a copy of this document via the

Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).


   /s/ Richard L. Brophy
   Richard L. Brophy