# Exhibit 12



# Transcript of Lars Christianson, Designated Representative

**Date:** June 26, 2018

**Case:** UMG Recordings, Inc., et al. -v- Grande Communications Networks, LLC, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
www.planetdepos.com

**Page 121**

1  his testimony and the document. Just caution the
2  witness not to speculate.
3  BY MR. O'BEIRNE:
4     Q. Do you have any doubt that your e-mail is
5  saying "The Court's decision is an interesting
6  read," with the link after it, is sending him the
7  link to the Court's decision?
8     A. No. I'm sending him the Court's decision.
9     Q. Right. Was it your practice at the time
10 to try to stay apprised of developments in the law
11 regarding the DMCA safe harbor?
12    A. No.
13    Q. Do you recall reading the Court decision?
14    A. I don't. I'm not even sure what this is
15 referring to.
16    Q. I take it, then, you don't recall this
17 exchange?
18    A. No. I mean, clearly it took place, but I
19 don't remember what it was even about.
20    Q. If you can flip back, just to orient
21 ourselves, we looked at a handful of e-mails this
22 morning that were from the February 2016 time
23 frame. Do you recall that?
24    A. Yes.
25    Q. So for example, if you turn back to PX178,

**Page 122**

1  which was the document you reviewed in your
2  preparations, it's an e-mail chain from
3  February 18th, 2016. Do you see that?
4     A. Yes.
5     Q. As is PX82, which was the
6  Rightscorp-specific count in your e-mail. Do you
7  see that?
8     A. Yes.
9     Q. And then February 22nd is PX107?
10    A. Uh-huh.
11    Q. Okay. Do you see that, right? Do you see
12 that?
13    A. PX82, PX178 and PX107.
14    Q. They're all February 2016?
15    A. Okay.
16    Q. You would agree with me, right?
17    A. Yes.
18    Q. Okay. And the last one I hand-marked is
19 178, right? There's no 179?
20    A. Yes, 178.
21       (Deposition Exhibit 179 marked for
22 identification.)
23 BY MR. O'BEIRNE:
24    Q. I'm handing you what I've just marked as
25 PX179. You would agree with me this is a document

**Page 123**

1  produced by Grande in this case, right?
2     A. Yes.
3     Q. Bates number ending 522 [sic]?
4     A. Yes.
5     Q. And it is an e-mail chain also
6  February 26, 2016. Do you see that?
7        MR. BROPHY: Sorry, Counsel. 522? Do you
8  mean 523? The document I have has Bates number
9  GRANDE1438523.
10       MR. O'BEIRNE: Sorry, let me see the top
11 of it. Thank you, Counsel. My apologies.
12 BY MR. O'BEIRNE:
13    Q. 523.
14    A. Yes.
15    Q. And PX179, ending in Bates 523, is also an
16 e-mail chain from February 2016, right?
17    A. Yes.
18    Q. From February 22nd, right?
19    A. Yes.
20    Q. And in your original e-mail to Mr. Quigley
21 and Mr. Horton, you have the subject "Digital
22 Rightscorp fixed." Do you see that?
23    A. Yes.
24    Q. Before we look at the e-mail in more
25 detail, do you recall a time where you fixed the

**Page 124**

1  abuse system's parsing of e-mails from Rightscorp?
2     A. Yes.
3     Q. Please describe what you remember about
4  that.
5     A. The -- at some point, the -- and I don't
6  know when, the e-mail format changed and the media
7  title was no longer getting added into the record.
8  It was still available in the body, but it wasn't
9  in the record. So I updated the system so that
10 the media title would be in the record.
11    Q. How would the absence of a media title
12 affect, if at all, the system's parsing of the
13 notice?
14    A. I would think it wouldn't. It was just
15 missing the title information in that table. So I
16 corrected it so that the title would -- the title
17 of the work would be included in the column row.
18    Q. So Grande was receiving the title of the
19 work information, it just wasn't making its way
20 through the parsing of the system?
21    A. As far as I understand, they were being
22 parsed correctly, it's just that the title of the
23 work was not being passed.
24    Q. But correct parsing would've included --
25    A. The title of the work.

**Page 125**

1  Q. -- the title of the work?
2  A. Yes.
3  Q. And the fix you made --
4  A. Added the title.
5  Q. -- added the title? But your testimony,
6  based on your recollection today, is that the
7  notices were getting parsed, just that the media
8  title field was blank after the parsing?
9  A. Yes.
10 Q. Do you recall how you became aware of
11 this?
12 A. I believe we became aware of it when we
13 started running some of the SQL queries around
14 that same time.
15 Q. The ones we've already looked at?
16 A. Yes.
17 Q. How many notices we get from Rightscorp at
18 a given time?
19 A. Yes.
20 Q. And so this was not something you noticed
21 otherwise in the normal course of just monitoring
22 the system; you recall this being precipitated by
23 the specific squirrel [sic] queries?
24 A. Yes.
25 Q. Did I say that right, squirrel? Is that

**Page 126**

1  the --
2  A. SQL.
3  Q. SQL. Squirrel. Sorry. SQL queries. So
4  just to clean that up, because squirrel doesn't
5  enter into this. It's your recollection that the
6  SQL queries that we've already looked at being run
7  for Rightscorp-specific information precipitated
8  this review of the glitch regarding the media
9  title and the parsing?
10 A. Yes.
11 Q. And you said in your e-mail, "I am now
12 adding the file name in question to the event."
13 A. Yes.
14 Q. Okay. How manually would you go about
15 doing that?
16 A. I wouldn't go about it manually. I
17 changed the -- okay. I went into the e-mails that
18 were not parsing properly and looked for what the
19 code was looking for, which is usually a term like
20 work, name of work or IP address or date time.
21 And I would correct to the new format, so that
22 when the SQL -- or when the scripts would run
23 against new e-mails as they would come through,
24 they would correctly grab that information and
25 parse it into the ticket.

**Page 127**

1  Q. So the information was there, you were
2  just updating Grande's system to correctly get the
3  information and parse it?
4  A. Yes.
5  Q. Did you reach out to Rightscorp at this
6  time to discuss with them the content of their
7  notices?
8  A. I don't know.
9  Q. Sitting here today, do you have any
10 recollection of reaching out to Rightscorp at any
11 time to discuss the contents of their notices?
12 A. That's a vague question. Do you mean me
13 or do you mean anybody at Grande?
14 Q. Let's start with you.
15 A. No, I did not reach out to Rightscorp.
16 Q. At any time --
17 A. No.
18 Q. -- in your life?
19 A. No.
20 Q. Do you know of anybody at Grande ever
21 reaching out to Rightscorp --
22 A. I do not, no.
23 Q. -- to discuss -- sorry, I paused and
24 enticed you to answer. Let's try again.
25    Do you recall -- strike that.

**Page 128**

1    Do you know of anybody at Grande ever
2  reaching out to Rightscorp to discuss the content
3  of Rightscorp's notices?
4  A. I don't know that information.
5  Q. Meaning you're not aware of that ever
6  happening?
7  A. I am not aware of that.
8  Q. Or to discuss the origin of any notice
9  claiming to be from Rightscorp?
10 A. I do not know that.
11 Q. By you don't know, you mean you're unaware
12 of any facts that any person at Grande ever
13 reached out to Rightscorp?
14    MR. BROPHY: Objection, vague.
15    You can answer.
16 A. I'm unaware of any contact to Rightscorp.
17 BY MR. O'BEIRNE:
18 Q. Bear with me for a second.
19    (Deposition Exhibit 180 marked for
20 identification.)
21 BY MR. O'BEIRNE:
22 Q. I'm handing you what I've just marked as
23 PX180. You would agree with me this is a document
24 produced by Grande in this case?
25 A. Yes.

**Page 129**

1  Q. And this one does end in Bates number 522?
2  A. Yes.
3  Q. And this is a response from Mr. Horton to
4  your e-mail regarding fixing the glitch, right?
5  A. Yes.
6  Q. And he asks you, "Can we tell when this
7  changed or when this issue started?"
8      Do you see that?
9  A. Yes.
10 Q. Do you recall being able to determine when
11 it had started?
12 A. I don't recall looking for that
13 information.
14     (Deposition Exhibit 181 marked for
15 identification.)
16 BY MR. O'BEIRNE:
17 Q. I'm handing you what I've just marked as
18 PX181. You'd agree this is a document produced by
19 Grande?
20 A. Yes.
21 Q. And it is your response to Mr. Horton's
22 e-mail from PX180. Do you see that?
23 A. Yes.
24 Q. And you explain to him, "Until the fix I
25 just implemented, I can't find a record where it

**Page 130**

1  worked."
2      Do you see that?
3  A. Yes.
4  Q. You go on to say, "I think when the system
5  was built, this flaw was present. Or, when these
6  e-mails were added to that parsing section of the
7  script, it wasn't vetted properly."
8      Do you see that?
9  A. Sure. Yes.
10 Q. That's an accurate description of what you
11 determined at the time, right?
12 A. Yes. Well -- yes, that is an accurate
13 description.
14 Q. Are you talking about just the media
15 title --
16 A. Yes.
17 Q. -- portion of the parsing --
18 A. Yes.
19 Q. -- right? Sitting here today, are you
20 aware of whether or not Grande was generating
21 letters as a result of the information parsed
22 through the abuse process for the Rightscorp
23 notices prior to this fix of the glitch?
24 A. I don't know either way.
25 Q. Did anybody ever ask you to figure that

**Page 131**

1  out?
2  A. Possibly.
3  Q. Do you recall trying to do so?
4  A. I mean, I remember fixing the glitch. I
5  don't remember really much what happened after it.
6  I mean...
7  Q. How would you go about determining
8  whether, prior to fixing the glitch in Grande's
9  system, letters were generated based on the
10 notices from Digital Rightscorp's e-mail address?
11 A. I would think we would have to talk to the
12 owner of that process.
13 Q. Who is that?
14 A. That would probably be the billing team at
15 that point. I don't know for sure.
16 Q. Whomever was in charge of the actual
17 sending of the letters?
18 A. Yes.
19 Q. But is it your understanding that's
20 information that Grande could determine if it went
21 to look for it?
22     MR. BROPHY: Objection, calls for
23 speculation.
24 A. I have no idea.
25

**Page 132**

1  BY MR. O'BEIRNE:
2  Q. You'd agree with me that's the response
3  you sent February 22nd, 2016? You see that,
4  right?
5  A. For 524?
6  Q. Yes.
7  A. Yeah, I agree.
8  Q. PX181.
9  A. Yes, I agree.
10     (Deposition Exhibit 182 marked for
11 identification.)
12 BY MR. O'BEIRNE:
13 Q. Handing you what I've just marked as
14 PX182. This is a document produced by Grande in
15 this case, right?
16     (Witness reviews document.)
17 BY MR. O'BEIRNE:
18 Q. Sir, this is a document produced by
19 Grande?
20 A. Yes.
21 Q. And if you look back at PX179, Mr. Horton
22 had sent an e-mail to you and Mr. Quigley asking,
23 "Jimmy - Matt wants to know how many letters we
24 have sent throughout 2015 and year-to-date 2016 by
25 DMCA Entity source."