**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 1:17-cv-00365-LY |
| | ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S MOTION FOR SANCTIONS AND TO EXCLUDE DOCUMENTS <u>PRODUCED AFTER THE FACT DISCOVERY DEADLINE</u>**

**INTRODUCTION**

More than a month after the extended fact discovery deadline, Plaintiffs produced over 1,000 pages of additional materials relating to ownership of certain copyrights asserted in this case. Plaintiffs made this production after receiving Grande's expert report, which highlighted significant deficiencies in Plaintiffs' ownership evidence. Plaintiffs' late production included a potpourri of corporate formation documents, transfer of ownership agreements, and other business materials spanning a period from 1965 until today. Then, three weeks later, *Plaintiffs made yet another late production*—this time 2,300 additional pages of materials. All of these late-produced materials should be excluded.[1]

These materials were directly responsive to Grande's discovery requests[2] and should have also been produced as evidence allegedly supporting Plaintiffs' affirmative case. Plaintiffs undoubtedly had possession of these documents when they initiated this lawsuit and must have reviewed them as part of their Rule 11 pre-filing investigation into ownership of the copyrights.

Earlier in the case, Plaintiffs vehemently opposed modification of the scheduling order by representing to the Court that they had conducted *multiple* comprehensive searches for documents and had satisfied their production obligations. Notwithstanding these assertions, Plaintiffs failed to produce nearly 4,000 pages of ownership material until (1) *after* the fact discovery cutoff, (2) *after* the parties exchanged expert reports, and (3) *after* the parties moved for summary judgment. In the intervening period, Grande relied on Plaintiffs' representations by

---

[1] A party's delayed knowledge of missing documents constitutes an exceptional circumstance justifying the filing of a discovery motion more than one week after the discovery deadline pursuant to Local Rule CV-16. *See, e.g., Robles v. Texas Tech University Health Sciences Center*, No. 14-CV-00321-FM, 2015 WL 12671891, at *3 (W.D. Tex. June 12, 2015).

[2] *See* Defs' 1st Interrogs. to Sony Plaintiffs at No. 1 and Defs' 1st RFPs to Sony Plaintiffs at Nos. 1-3 (Ex. 1) (these are in substance identical to those for the other two groups of Plaintiffs (Warner and Universal); Defs' 2nd Interrogs., Nos. 13-14 (ECF Nos. 112-1, 112-2, 112-3).

1

devoting significant resources to analyzing Plaintiffs' ownership materials[3] and then retaining an expert to opine on liability and damages using the record existing at the close of discovery. Grande also structured its discovery and summary judgment strategies based on the existing evidence regarding ownership of the asserted copyrights.

Grande's defense of this case would be fundamentally compromised if Plaintiffs were permitted to lie in wait for Grande's expert disclosures and summary judgment motion, and then backfill the record after Grande pointed out the deficiencies in their evidence. It would also be manifestly unjust to force Grande to redo its entire ownership analysis, after it has in good faith based its expert reports and summary judgment arguments on the record as it existed at the close of discovery.

During the parties' meet and confer on this issue, Plaintiffs were unable to provide any legitimate justification for their failure to timely produce these materials. Plaintiffs' only explanation was that a corporate representative identified the documents during their deposition preparation. This explanation defies credulity for a number of reasons and, in any event, does not provide legitimate justification for Plaintiffs' untimely production of materials that have been in their possession since the inception of this case.

In coordination with these untimely productions—and in an apparent failed attempt to dull Grande's prejudice—Plaintiffs recently cancelled almost all of their pending corporate depositions. These depositions were already severely delayed as a result of Plaintiffs' other

---

[3] Plaintiffs produced tens of thousands of pages of registration and ownership materials *en masse*, and then refused to answer interrogatories that sought to match those materials with individual asserted copyrights. Instead, Plaintiffs forced Grande to perform the difficult task of matching those materials. Now, Plaintiffs are attempting to supplement their production *after* Grande did the work of identifying the holes in Plaintiffs' case. This approach to litigation is wholly inappropriate and should not be permitted by the Court.

discovery violations. Further delaying these depositions only wreaks more prejudice on Grande.

In sum, Plaintiffs cannot offer any reasonable factual or legal justification for failing to timely produce these fundamental documents concerning ownership of the copyrights asserted in this case. These two late productions severely prejudice Grande, who Plaintiffs seek to put in the impossible position of relitigating significant portions of this case at the eleventh hour. The Court should not condone Plaintiffs' skate and shoot tactics and should prohibit Plaintiffs from relying on these late-produced documents for any purpose in this case.

## BACKGROUND

The Court held an Initial Pretrial Conference on January 3, 2018 during which it advised the parties that trial would occur in January 2019 and that its busy docket would make obtaining a continuance "almost impossible." *See* ECF No. 71 at 6:19-24. The Court thereafter issued its Scheduling Order, which set the fact discovery deadline as March 23, 2018. *See* ECF No. 66.

On September 28, 2017, Defendants served their first set of discovery requests, which included interrogatories and requests for the production of all evidence regarding Plaintiffs' ownership of the asserted copyrights. *See, e.g.,* Defs' 1st Interrogs. to Sony Plaintiffs at No. 1 and Defs' 1st RFPs to Sony Plaintiffs at Nos. 1-3 (Ex. 1).

On November 3, 2017, Plaintiffs made a production of copyright registration and ownership materials. In an attempt to better understand Plaintiffs' ownership evidence, Grande served follow-up interrogatories that sought to match specific ownership documents to the

asserted copyrights. Plaintiffs refused to meaningfully respond to those interrogatories.[4] *See* Defs' 2nd Interrogs., Nos. 13-14 (ECF Nos. 112-1, 112-2, 112-3).

In the months that followed, Grande was forced to repeatedly extend the fact discovery deadline to accommodate Plaintiffs' dilatory discovery practices. These delays became so significant that, after shifting the discovery deadline a number of times, Grande filed a motion to amend the case schedule and continue the January 2019 trial setting. *See* ECF No. 79. The Court denied that request. Thereafter, the parties agreed to once again postpone the close of fact discovery, this time until July 6, 2018. The parties also agreed to delay opening expert reports for Plaintiffs and Grande until July 13, 2018 and August 3, 2018, respectively. These dates were extended as far as possible, while still respecting the Court's stated need for 90 to 120 days to rule on dispositive motions and its firm trial date.

Plaintiffs argued against extending the trial date by representing that their productions were essentially complete: "Plaintiffs are undertaking a substantial effort to locate any additional non-privileged documents, even though Plaintiffs believe (and have communicated on multiple times to Grande) that it is unlikely there will be many, if any, such documents of relevance." Plaintiffs' Opp. to Defendant's Mot. to Am. Sched. Ord. at 3-4, ECF No. 81; *id. at 2* ("Plaintiffs anticipate their production will be substantially complete by the end of [April 2018]."); *id.* at 6 ("Plaintiffs and Rightscorp have produced a large volume of important documents already, and expect to complete their productions [April 2018].").

Relying on these representations, Grande proceeded with expert discovery. On August 3,

---

[4] It is not clear whether Plaintiffs refused to provide this information as an exercise in obfuscation or because Plaintiffs had not itself verified ownership of the copyrights asserted in this case. Either way, Plaintiffs' failure to respond forced Grande to expend significant resources conducting its own independent assessment of Plaintiffs' thousands of pages of ownership evidence.

4

2018, Grande served its rebuttal expert report on damages.[5]  In that Report, Grande's expert, Mr. Kemmerer, explained that Plaintiffs could not prove ownership of 361 of their asserted copyrights.  Kemmerer Report, Appendix D, ¶ 25 (ECF No. 147-7).  Shortly after Grande served this Report, Plaintiffs' counsel aggressively and urgently pursued its de-designation so they could share its contents with in-house counsel.[6]  At the time, this urgency was a mystery to Grande's counsel who explained that they were busy finalizing Grande's motion for summary judgment and preparing for depositions that week.[7]  On August 10, 2018, Plaintiffs threatened to call the Court if Grande did not *immediately* provide a redacted version of the Kemmerer Report.  Email from P. O'Beirne, Aug. 10, 2018 (Ex. 3).   Grande's counsel stepped away from its other activities and served a redacted version of the Kemmerer Report on the morning of August 10th.

    Less than eight hours after Grande served the redacted Report—and presumably now with legitimate permission to disclose the findings of that Report to their in-house counsel—Plaintiffs' counsel made its first late production of ownership materials.  Those materials dated as far back as the 1960s and comprise a myriad of corporate agreements including business formation documents, contribution agreements, fictitious name statements, merger agreements, stock certificates and operating agreements. Email from K. Attridge, Aug. 10, 2018 (Ex. 4); *see also* Compilation of Excerpts from Plts' Aug. 10, 2018 Production (Ex. 5).

---

[5] Plaintiffs' reports on damages did not even attempt to assess Plaintiffs' ownership evidence.  Instead, Plaintiffs' damage reports are improperly based on *all* infringement notices ever received by Grande—the vast majority of which do not pertain to the copyrights asserted in this case.  For at least this reason, Grande will be moving to exclude those opinions under Rule 702 after expert depositions are completed.

[6] During this period, Plaintiffs' counsel threatened to unilaterally de-designate the Kemmerer Report and share its contents with Plaintiffs in direct violation of the Court's protective order.  Email between R. Brophy and R. Gilmore, Aug. 6, 2018 (Ex. 2).

[7] Grande served its Motion for summary judgement on August 10, 2018, the same day it served the redacted Kemmerer Report and the same day Plaintiffs produced their first untimely set of 1,000 pages of additional ownership evidence.

Unaware of the contents of this production, that same day Grande also filed its motion for summary judgment. In that motion, Grande moved for summary judgment in part based on Plaintiffs' failure to produce ownership evidence for many of the asserted copyrights.

On August 11, 2018, Grande asked Plaintiffs to provide an explanation for their grossly late document production. Email from R. Brophy, Aug. 11, 2018 (Ex. 6). Plaintiffs only response was that "[d]uring the course of preparing our 30(b)(6) witnesses we identified additional information responsive to Defendants' requests for documents." Email from R. Gilmore, Aug. 14, 2018 (Ex. 7). That explanation did not meaningfully justify the delay, and Plaintiffs' counsel similarly failed to provide any meaningful justification during subsequent meet and confer sessions. Moreover, despite suggesting that these materials had been uncovered during corporate witness deposition preparation, there were no looming corporate depositions and Plaintiffs' counsel was unable to name the specific witness who had identified the late-produced materials. Even if Plaintiffs were able to identify such a person, doing so would not excuse Plaintiffs' clear obligation to timely produce its own ownership evidence in discovery.

On August 17, 2018, shortly after Plaintiffs made their first late production, Plaintiffs cancelled the corporate deposition scheduled to take place two days later, which Grande expected to address, among other things, copyright ownership issues. Email from R. Gilmore, Aug. 17, 2018 (Ex. 8). On August 23, 2018, Plaintiffs' counsel cancelled yet another corporate deposition. Email from R. Gilmore, Aug. 23, 2018 (Ex. 9). Again on August 28, 2018, Plaintiffs' counsel cancelled another corporate deposition. Email from R. Gilmore, Aug. 28, 2018 (Ex. 10). As a result of these cancellations, Plaintiffs have only produced witnesses on one or two of the nearly fifty topics Grande requested.

The day after Grande received the last of these cancellation notices, Plaintiffs produced

yet another huge collection of untimely ownership and registration materials. This second set of materials was over twice the size of its first production—over 2,300 page—and contained a similar hodgepodge of ownership materials including contribution agreements, fictitious name registrations, merger agreements, articles of incorporation, stock certificates, operating agreements and copyright registrations. *See generally* Compilation of Excerpts from Plts' Aug. 29, 2018 Production (Ex. 11).

All told, Plaintiffs have now produced almost 4,000 pages of complicated ownership documents after the close of fact discovery and have also cancelled corporate depositions for almost every one of Grande's 30(b)(6) topics.

## LEGAL STANDARD

The Federal Rules require litigants to conduct discovery in a way that "make[s] a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1346 (5th Cir. 1978).

"A failure to disclose under Rule 37 includes not only spoliation of evidence but also a party's untimely production of documents and information required to be produced." *Morin v. Chevron U.S.A. Inc*., No. 11-CV-00045-NJB-DEK, 2012 WL 2116368, at *6 (E.D. La. Jun. 11, 2012). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"Exclusion of the evidence [under Rule 37(c)(1)] is mandatory and automatic unless the party demonstrates substantial justification or harmlessness." *Red Dot Bldgs. v. Jacobs Technology, Inc*., No. 11-CV-01142-CJB-ALC, 2012 WL 2061904, at *3 (E.D. La. June 7,

2012) (citing *Caskey v. Man Roland, Inc.*, 83 F.3d 418 (5th Cir. 1996)); *see also Caskey v. Man Roland, Inc.*, 83 F.3d 418 (5th Cir. 1996) (finding the district court's failure to apply sanctions under Rule 37(c)(1) to be an abuse of discretion).

The Fifth Circuit applies the following four-factor test to determine whether the late production of material is substantially justified or harmless: "(1) the explanation for the party's failure to disclose; (2) the importance of the evidence; (3) the potential prejudice to the opposing party from including the evidence; and (4) the availability of a continuance." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563-64 (5th Cir. 2004).

## ARGUMENT

Plaintiffs cannot offer any legitimate justification for failing to produce their ownership evidence during fact discovery. These materials are part of Plaintiffs' affirmative case, should have been reviewed as part of their Rule 11 pre-filing investigation, and are directly responsive to discovery requests that Grande served a year ago. Instead of timely producing these materials, Plaintiffs represented to the Court that their productions were complete and simultaneously refused to answer interrogatories seeking to link ownership documents with asserted copyrights.[8]

As discussed below, allowing Plaintiffs to serve additional registration and ownership materials at this late stage of the case would severely prejudice Grande in a number of significant and irreparable ways.[9] Accordingly, Plaintiffs' late-produced materials should be excluded.

---

[8] Grande was ultimately forced to move to compel answers to these interrogatories. *See* Defs' 2nd Interrogs. at 13-14 (ECF Nos. 112-1, 112-2, 112-3); *see also* ECF No. 110. Plaintiffs also failed to amend any of their interrogatory responses at the close of fact discovery to identify these materials. This provides a separate basis for excluding these materials from trial.

[9] It is Plaintiffs' burden to show that both of their late disclosures were harmless. *Davidson v. AT&T Mobility, LLC*, No. 17-CV-00006-D, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018).

8

## I.   PLAINTIFFS' UNTIMELY PRODUCTION IS NOT SUBSTANTIALLY JUSTIFIED OR HARMLESS

Plaintiffs' late production lacks any plausible justification and would cause significant prejudice to Grande.  The Court should exclude Plaintiffs' late-produced materials.

### A.   Plaintiffs have no justification for failing to timely produce these materials.

Plaintiffs cannot offer any reasonable justification for their late production of ownership materials.  These materials have been in Plaintiffs' possession since the beginning of this case, should have been reviewed as part of any reasonable Rule 11 pre-filing investigation, and were directly responsive to numerous of Grande's discovery requests.

Plaintiffs' proffered justification, that one of their corporate representatives identified these documents while preparing for deposition, is wholly implausible.  No depositions were looming at the time of Plaintiffs purported preparation session and Plaintiffs could not name the individual who allegedly identified the late-produced materials in the parties' meet and confer.

Moreover, Plaintiffs cannot claim ignorance as a meaningful justification for failing to produce materials *in their own possession and necessary to their affirmative case*.  *See, e.g., Albemarle Corp. v. Chemtura Corp*., 251 F.R.D. 204, 207 (M.D. La. 2008) (granting sanctions, noting "[t]hese documents [produced weeks after the close of discovery] were created and/or maintained by the defendant's employees.  If the defendants were not aware of the existence of these documents, their ignorance was entirely self-imposed.  Defendants put on blinders and now seek to excuse their conduct because they cannot see.").

Finally, each of the belatedly-produced documents is directly responsive to the discovery requests Grande served a year ago.  Plaintiffs had a duty to conduct a comprehensive search for these documents and to produce them in a timely manner.  Plaintiffs represented to the Court that they had done just that.  Plaintiffs' Opp. to Defendant's Mot. to Am. Sched. Ord. at 3-4, ECF No.

9

81 at 2, 6. Plaintiffs therefore have no justification for failing to produce these clearly responsive materials early in the discovery process. *Morin*, 2012 WL 2116368, at *7 ("Once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by filing misleading or evasive responses, or by failing to examine records within its control.") (citation omitted).

### B.   The importance of Plaintiffs' belatedly produced documents is outweighed by Plaintiffs' failure to timely produce them.

If Plaintiffs considered these documents necessary to their case-in-chief, they should have included them in their original production of ownership and registration materials. Plaintiffs elected not to, suggesting these materials were unnecessary to their case. It is wholly inappropriate for Plaintiffs to attempt to backfill evidence into their case *after* Grande submitted its expert report and summary judgment motion identifying the defects in their case.

Even if Plaintiffs now claim that these ownership materials are vital to their case, the importance of these late-disclosed documents, standing alone, "cannot singularly override the enforcement of local rules and scheduling orders." *Red Dot Bldgs*., 2012 WL 2061904, at 5* (quoting *Rushing v. Kansas City Southern Ry. Co*., 185 F.3d 496, 509 (5th Cir. 1999)). Grande sought production of these documents a year ago and Plaintiffs represented they had conducted multiple exhaustive searches for responsive documents. It is not Grande's job to litigate Plaintiffs' case, and Plaintiffs should be accountable for their failure to produce responsive, relevant documents.[10]

---

[10] It is particularly ironic that Plaintiffs failed to produce documents evidencing their ownership of the asserted copyrights given the assertions they make in this case. Plaintiffs claim that Grande should take at face value the allegations of infringement it received from Rightscorp and—without hesitation—terminate its subscribers. Yet, Plaintiffs cannot even resolve ownership of their own copyrights with the help of a law firm specifically tasked with asserting

### C. Plaintiffs' untimely production of documents would significantly prejudice Grande.

Relying on the document production existing at the close of discovery, and on Plaintiffs' various representations to the Court, Grande devoted significant resources and hundreds of hours of attorney time to investigating ownership of the copyrights in suit. This analysis was performed for each copyright individually, required assessment of multiple linking documents and agreements spanning decades, and involved the detailed review of a vast array of registrations, assignments, corporate mergers, asset transfers and operating agreements.

In addition to counsel's detailed analysis, Grande also retained an expert, John Kemmerer, to assess and report on the legitimacy of Plaintiffs' ownership evidence. This extensive work culminated in the Kemmerer Report served on August 3, 2018, which undoubtedly spurred Plaintiffs' recent attempt to produce additional ownership materials. All of the foregoing work would be undone[11] if Plaintiffs were permitted to dump thousands of additional pages of complicated ownership material on Grande well after the close of fact discovery. *See, e.g., Promethean Insulation Technology LLC v. Sealed Air Corporation*, No. 13-CV-01113-JRG, 2015 WL 11027038, at *2 (E.D. Tex. Oct. 13, 2015) (plaintiff was prejudiced because it was deprived of the opportunity to have its expert opine about late-disclosed documents); *Godo Kaisha IP Bridge 1 v. Broadcom Limited*, No. 16-CV-00134-JRG-RSP, 2017

---

those copyrights in litigation. If Plaintiffs cannot prove ownership of their own copyrights based on the production of tens of thousands of pages of registration and ownership materials, why should Grande be charged with knowledge of that ownership based on the receipt of a single-page email from Rightscorp?

[11] A preliminary review of Plaintiffs' recent productions indicates that many of the new materials do not even name Plaintiffs in this lawsuit and would require a detailed investigation into how these puzzle pieces fit into the already complicated ownership mosaic painted by Plaintiffs' other ownership and registration documents. *See generally* Compilation of Excerpts from Plts' Aug. 10 and 29, 2018 Productions (Exs. 5 and 11).

WL 2869344, at *2 (E.D. Tex. Apr. 20, 2017) (answers to interrogatories provided after expert reports had been served and fact discovery closed resulted in "substantial" prejudice).

Grande has also already developed and executed a strategy for fact discovery, summary judgment, and defense at trial based on the state of Plaintiffs' ownership evidence. Fact discovery is now closed and Grande's summary judgment motion was filed the same day as Plaintiffs' first late production and three weeks before Plaintiffs' second late production.

Any of one these issues taken alone would demonstrate substantial prejudice to Grande. When combined, and considered in the context of the Court's firm trial setting, Plaintiffs' discovery violations present severe and irreparable prejudice to Grande that mandates exclusion of Plaintiffs' untimely-disclosed evidence.

### D.    A continuance is not available.

The Court has already made clear that continuing the trial date in this matter is not an option. *See* ECF No. 82. Grande was unable to extend the trial date based on Plaintiffs' discovery violations. In fact, Plaintiffs argued vehemently against that extension in its responsive briefing. A similar request by Plaintiffs now, *based on its own discovery violations*, would be wholly improper. Granting a continuance would also not undo the significant prejudice to Grande resulting from Plaintiffs' late disclosures. Grande has already incurred significant fees and expert costs to evaluate Plaintiffs' ownership evidence. Forcing Grande to conduct yet another exhaustive review of Plaintiffs' ownership documents—due entirely to *Plaintiffs'* blatant failure to comply with its discovery obligations—would only further harm Grande.

### CONCLUSION

The Court should grant Grande's Motion for Sanctions, preclude Plaintiffs from relying on its late-produced documents, and award Grande its fees for preparing this Motion.

| | |
|---|---|
| Dated: August 31, 2018 | By: /s/ Richard L. Brophy<br>Richard L. Brophy<br>Zachary C. Howenstine<br>Margaret R. Szewczyk<br>ARMSTRONG TEASDALE LLP<br>7700 Forsyth Blvd., Suite 1800<br>St. Louis, Missouri 63105<br>Telephone:  314.621.5070<br>Fax:  314.621.5065<br>rbrophy@armstrongteasdale.com<br>zhowenstine@armstrongteasdale.com<br>mszewczyk@armstrongteasdale.com<br><br>J. Stephen Ravel<br>Texas State Bar No. 16584975<br>J.R. Johnson<br>Texas State Bar No. 24070000<br>Diana L. Nichols<br>Texas State Bar No. 00784682<br>KELLY HART & HALLMAN LLP<br>303 Colorado, Suite 2000<br>Austin, Texas 78701<br>Telephone: 512.495.6429<br>Fax: 512.495.6401<br>Email: steve.ravel@kellyhart.com<br>         jr.johnson@kellyhart.com<br>         diana.nichols@kellyhart.com<br><br>Attorneys for Defendant GRANDE COMMUNICATIONS NETWORKS LLC |

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 31, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the

Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

                                                  /s/ Richard L. Brophy
                                                  Richard L. Brophy