**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 1:17-cv-00365-LY |
| | § | |
| GRANDE COMMUNICATIONS | § | |
| NETWORKS LLC and | § | |
| PATRIOT MEDIA CONSULTING, LLC, | § | |
| | § | |
| Defendants | § | |
| _____ | § | |

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO
GRANDE COMMUNICATIONS NETWORKS LLC'S
<u>DMCA SAFE HARBOR DEFENSE</u>**

## INTRODUCTION

Plaintiffs' motion addresses a discrete legal question that will narrow the issues for trial: whether Grande is entitled to assert the DMCA safe harbor defense.  To meet its burden of establishing eligibility for that defense, an ISP must adopt and reasonably implement a policy that provides for the termination of repeat infringers.  Grande has utterly failed to refute the evidence that it neither adopted nor implemented such a policy.  The facts could not be clearer.  Grande's own 30(b)(6) corporate representative testified that Grande failed to adopt a repeat infringer policy:

> "Q. You would agree with me that Grande did not have a policy that provided for the termination of subscribers and account holders who were repeat copyright infringers in 2010, right? A. To my knowledge, yes. Q. Same answer for 2011? A. Yes. Q. 2012?  A. Yes.  Q. 2013? A. Yes. Q. 2014? A. Yes. Q. 2015?  A. Yes.  Q. And 2016?  A. Yes."[1]

Grande also does not dispute – indeed, its witnesses concede – the fact that it did not terminate a single repeat infringer from October 2010 until June 2017, regardless of the number of infringement notices received or the content or source of the notices.[2]  Indeed, Grande purposefully implemented a policy that allowed ***unlimited infringement without consequenc*e.**  It is well settled that an ISP's failure to terminate any repeat infringers constitutes a failure to reasonably implement a repeat infringer policy as a matter of law.  *See* Mot. at 13.  Grande's admissions establish that Plaintiffs are entitled to summary judgment on Grande's safe harbor defense.

Grande knows this evidence is undisputed and makes no effort to rebut it.  Instead, Grande's opposition attempts to confuse the issue in two equally misleading but unavailing ways.

***First,*** Grande suggests that alleged flaws in the Rightscorp system somehow justified Grande's six-year policy of allowing unlimited infringement without the possibility of termination.

---

[1] Ex. B, S. Christianson 30(b)(6) Dep. at 322:22-323:14.  Exhibit references to Exhibits A through S are to those attached to Plaintiffs' Motion.
[2] Ex. G, S. Christianson 30(b)(6) Dep. at 32:10-33:4.

These criticisms of the Rightscorp system – which Grande never raised at any time before this litigation – are baseless and inaccurate.  But for purposes of this motion, they are beside the point. Grande has admitted that (1) if its current policy had been in effect in prior years, ***Grande would have terminated subscribers based on the Rightscorp notices it received***, and (2) under its pre-2017 policy, Grande was never going to terminate any subscriber for copyright infringement regardless of the evidence.  Moreover, after June 2017 (after this lawsuit was filed), Grande terminated 12 repeat infringers based on the same notices it had been receiving for years.  In fact, Grande terminated subscribers that Rightscorp had identified as repeat infringers.  These terminations discredit Grande's claim that the Rightscorp notices were somehow inadequate.  In short, the undisputed evidence shows that alleged flaws in the Rightscorp system have nothing to do with Grande's failure to terminate any subscribers from October 2010 until June 2017.

***Second,*** Grande argues that its termination of 12 subscribers for copyright infringement since June 2017 somehow creates a disputed issue of fact regarding its refusal to terminate any users for copyright infringement for the previous six years.  But Grande's termination of a handful of subscribers after this lawsuit was filed cannot resurrect the DMCA safe harbor defense for the prior time period.  Those terminations do not change the fact that Grande failed to adopt or reasonably implement a policy for the prior six years.  In fact, they were nothing more than a litigation-inspired attempt to manufacture an after-the-fact basis to claim the safe harbor that Grande knew its policies did not merit.  And even for the period from June 2017 to the present, Grande has not implemented its supposed policy as a matter of law.  Given that Grande admits it has tracked thousands of repeat infringers, the paltry 12 subscribers it has terminated since Plaintiffs filed this suit falls short of reasonable implementation.  *See* Mot. at 15.

Because Grande cannot meet its burden of establishing entitlement to the DMCA safe harbor, the Court should grant Plaintiffs' motion.

## ARGUMENT

**I.    GRANDE'S FAILURE TO DISPUTE THE CENTRAL MATERIAL FACTS SUPPORTING PLAINTIFFS' MOTION CONFIRMS THAT PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE SAFE HARBOR DEFENSE.**

As an initial matter, Grande has expressly declined to respond to Plaintiffs' statement of undisputed issues of material facts, instead providing a blanket denial.  Opp. 2 n.2.[3]  Because Grande has "fail[ed] to properly … address another party's assertion of fact as required by Rule 56(c)," the Court should consider the facts undisputed for purposes of Plaintiffs' Motion.  *See* Fed. R. Civ. P. 56(e)(4); *Mr. Elec. LLC v. Weiss*, No. W-14-CV-309, 2015 WL 12591359, at *2 (W.D. Tex. Apr. 21, 2015) ("[I]f the non-movant fails to respond to the movant's properly supported assertions of fact, the Court may consider those facts undisputed.").

The following dispositive and uncontradicted record evidence cited by Plaintiffs is undisputed:  (1) there was no possibility that a Grande subscriber would be terminated for copyright infringement between October 2010 and June 2017[4]; (2) Grande's actual policy was ***never*** to terminate any infringers regardless of how much infringement occurred[5]; (3) pursuant to this policy, Grande did not terminate any infringers until after the litigation was filed in 2017;

---

[3] Plaintiffs note that Grande's Opposition, as well as its affirmative Motion for Summary Judgment [Dkt. 140], violate the spacing requirements of the Local Rules.  This is plain when the spacing is compared to the normal double spacing in Grande's and Patriot's own Motions to Dismiss [Dkts. 28 and 29].  Properly spaced, these briefs would substantially exceed the page limits imposed by the Local Rules.

[4] SUMF, ¶ 20: "A. The final warning notifications started going out in June of 2017. That is when we started the view or, you know, assessment of whether we were going to terminate the customers. Q. That was when the possibility that Grande might terminate a customer for copyright infringement or alleged copyright infringement began? MR. BROPHY: Objection, vague. A. Yes." Ex. B, S. Christianson 30(b)(6) Dep. At 284:10-285:2.

[5] Ex. G, S. Christianson 30(b)(6) Dep. At 32:10-33:4.

despite (4) Grande's objective knowledge of sufficient bases to terminate users, including a massive volume of DMCA notices, which Grande concedes warrant termination because they have served as the basis for post-litigation terminations.[6]

Rather than contradict any of these facts, Grande first seeks shelter behind its Acceptable Use Policy ("AUP").  Gr. Opp. 9-10.[7]  But the Acceptable Use Policy cannot generate a genuine dispute regarding whether Grande adopted and implemented a repeat infringer policy for two independent reasons.

First, the theoretical prohibition on copyright infringement included in Grande's AUP was not *the real policy* regarding repeat infringers that Grande actually adopted.  As exhaustive witness testimony has established (and Grande has not contested), Grande's true policy was one that steadfastly refused to terminate any subscriber for copyright infringement no matter what.  *See e.g.* SUMF, ¶¶ 15, 16, and 20.  The AUP was nothing more than lip service to the DMCA.  Grande cannot cite *any* record evidence – or even supply a declaration – to support its lawyer-created argument that the AUP's reminder that Grande was technically allowed to terminate users for copyright infringement was actually a policy that provided for the termination of repeat infringers, as required by under the DMCA.

Second, and more importantly, there is no material issue of fact that Grande failed to implement its AUP *at all*, let alone reasonably.  Grande does not dispute that it *never* terminated

---

[6] Ex. G, S. Christianson 30(b)(6) Dep. at 109:7-12; Ex. I, Rohre Depo. at 141:8-16; Ex. I, Rohre Depo. at 142:12-17.

[7] Grande's Opposition refers to its AUP as its "DMCA Policy."  But the AUP and the DMCA Policy are two different policies.  The AUP was adopted in 2013.  SUF ¶ 14.  The DMCA Policy first appeared on Grande's web site in 2016.  SUF ¶ 18.  All 12 terminations occurred under the DMCA Policy after June 2017.  No terminations occurred before that date under the AUP.  *See* Ex. C, Horton Dep. at 141:20-142:7, 142:8-12; Ex. G, S. Christianson 30(b)(6) Dep. at 30:1-6; 35:2-13.

a single user's account for repeat copyright infringement under its AUP.  Mot. at 14; Gr. Opp. 19.

Terminations under the new DMCA policy in 2017 (after and only because of this litigation)

cannot show that Grande implemented the AUP from 2010 through 2016.

The case law squarely holds that an ISP that fails to enforce its repeat infringer policy is

not entitled to the DMCA safe harbor.  *See* Mot. at 13 (citing case law).  None of the cases Grande

cites support its claim that an ISP receives the benefit of the DMCA safe harbor by adopting a

"policy" that the ISP chooses not to enforce.  To the contrary, the cases Grande cites actually

support Plaintiffs' position.  Grande points to the district court opinion in *Perfect 10, Inc. v. CCBill,*

*LLC*, 340 F. Supp. 2d 1077, 1088-89 (C.D. Cal. 2004), which held that an ISP was entitled to the

safe harbor.  But Grande fails to inform the court that the Ninth Circuit ***reversed that exact holding***,

in the opinion cited by Plaintiffs. *See* Mot. at 10.  The Ninth Circuit held that implementation

"requires that a service provider terminate users who are 'repeat infringers'" and that, at a

minimum, an ISP must "terminate[] users who repeatedly or blatantly infringe copyright." *Perfect*

*10, Inc. v. CCBill LLC,* 488 F.3d 1102, 1109 (9th Cir. 2007).  Grande has admitted that its policy

for six years was ***never*** to terminate any user, no matter how repeated or blatant their infringement.

As a matter of law, this is not implementation of a repeat infringer policy.

The *Capitol Records, LLC v. Vimeo, LLC* opinion further undermines Grande's argument.

972 F. Supp.2d 500, 515 (S.D.N.Y. 2013) *aff'd in part, rev'd in part*, 826 F.3d 78 (2d Cir. 2016).

The district court found that Vimeo had implemented a repeat infringer policy ***because it***

***terminated users***:  "[U]ser accounts violating the Terms of Service were often terminated upon

the receipt of the first DMCA takedown notice, and as early as June 2007, Vimeo disabled user

accounts upon discovery of infringing conduct." *Id.* at 515 (internal citations omitted).  The

Second Circuit confirmed the well-settled requirement that implementation must involve

terminations.   "[An ISP] must have adopted and reasonably implemented a policy that, essentially, ***bans users who repeatedly infringe copyright***." *Capitol Records, LLC v. Vimeo, LLC*, 826 F.3d 78, 83 (2d Cir. 2016) (emphasis added), *cert. denied,* 137 S. Ct. 1374, (2017).  Adoption is merely one requirement; the statute also requires implementation, and that means terminations: "[T]he relevant question is whether [the ISP] actually terminates the uploading privileges of repeat infringers under appropriate circumstances." *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049 at *10 (S.D.N.Y. Mar. 25, 2015).

The summary judgment opinion in *BMG Rights Mgmt.* – affirmed by the Fourth Circuit – provides a persuasive and straightforward roadmap for granting Plaintiffs' motion.  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 658 (E.D. Va. 2015), *aff'd in part, rev'd on other grounds,* 881 F.3d 293 (4th Cir. 2018).  The only quibble Grande's opposition manages with the *BMG* holding is to claim that the court there did not exhaustively analyze the Rightscorp notices.  This is an odd claim, because as Grande well knows, BMG prevailed at trial, which included a searching examination of the Rightscorp system.  Regardless, Grande's claim misses the point.  The court in *BMG* held that Cox was not entitled to the DMCA safe harbor defense because its repeat infringer policy was a sham that Cox never had any intention of enforcing.  "[I]t was Cox's policy to intentionally circumvent the DMCA.  Despite having a repeat-infringer policy on the books, Cox's implementation rendered the policy an 'absolute mirage.'" *Id.* at 658.   The same is true here.  By its own admission, Grande was never going to terminate any user for copyright infringement under its AUP from 2010 through February 2017, and since that time has terminated only 12 repeat infringers as a fig leaf, despite tracking thousands of such repeat infringer subscribers.  This committed refusal to terminate was independent of any notices

it received, from Rightscorp or anyone else, and cannot constitute reasonable implementation of a repeat infringer policy as a matter of law.

## II.   GRANDE'S BASELESS ASSAULT ON THE RIGHTSCORP NOTICES FAILS TO CREATE GENUINE ISSUES OF FACT REGARDING GRANDE'S FAILURE TO IMPLEMENT A POLICY.

Unable to defend its policy of allowing unlimited infringement by its subscribers, Grande resorts to arguing that appropriate circumstances to terminate repeat infringers never arose because Rightscorp's notices are flawed.  As discussed above, this disingenuous argument misses the point entirely because Grande has already admitted it was not going to terminate ***under any circumstances***.  Regardless, Grande's argument cannot be squared with the evidence.

### A. The Contemporaneous Evidence Shows That Grande Did Not Doubt the Reliability of the Rightscorp Notices.

Rightscorp's system is accurate and reliable.[8]  Grande tries to claim otherwise, but contemporaneous evidence and Grande's own witnesses refute this self-serving litigation position. After Plaintiffs filed this lawsuit in April 2017, Grande decided to begin terminating a few subscribers for copyright infringement, starting with repeat infringers ***identified by Rightscorp***. Since June 2017, Grande has terminated just 12 subscribers – subscribers who were identified as repeat infringers by the very same Rightscorp notices that Grande received during the prior years. By way of example, the evidence shows that an account ending in 7589 was terminated on August 1, 2017.[9]  Grande's documents reveal dozens of Rightscorp notices sent to Grande in June 2017 regarding this subscriber, ***including for works in suit in this case*** (*i.e.,* "Rebel Yell" by Billy Idol and "Alive and Kicking" by Simple Minds).[10]  These undisputed facts demonstrate that Grande

---

[8] Plaintiffs have submitted expert testimony that confirms the reliability of the Rightscorp system, along with voluminous evidence from Rightscorp itself.  However, the court need not consider that evidence in order to grant Plaintiffs' motion.

[9] Ex. H, PX 60.

[10] Ex. T, PX 61 (GRANDE0000199).

understood that the Rightscorp notices were more than sufficient to establish appropriate circumstances to terminate repeat infringers.

The facts also show that Grande's failure to terminate repeat infringers was not based on any concerns that the Rightscorp notices were somehow flawed.  To the contrary, Grande's General Manager admitted that if Grande's current DMCA policy had been in place from 2010 through 2016, *Grande would have terminated subscribers based on Rightscorp notices.  See* Mot. at 15-17.  Grande's 30(b)(6) witness conceded that Grande never raised an issue to Rightscorp about its notices, and that Grande cannot point to a single instance in which a Rightscorp notice was inaccurate in any respect.[11]  Lawyer argument cannot create a disputed fact issue about whether any qualms about Rightscorp animated Grande's abject failure to terminate.  There is no such evidence.  In reality, Grande knew it had a DMCA problem given its knowing failure to terminate repeat infringers, as internal Grande documents show.  *See e.g.* Ex. M, PX 91.

### B. Grande's Reliance on Privileged Communications to Support Its Claims Is Improper – the Court Should Deem Grande to Have Waived Privilege and Should Order Production of the Documents.

Lacking any evidence to support its claims, Grande resorts to a desperation measure: it suggests that it may have privileged communications – which have not been produced (or even identified on a privilege log) – that show its reservations about Rightscorp.  Grande claims "it is misleading for Plaintiffs to claim that there is no evidence that Grande believed Rightscorp's notices were inaccurate or unreliable.  Plaintiffs are not privy to any of Grande's privileged communications or attorney work product concerning this issue."  Opp. at 17.  This argument is wholly improper.  Grande cannot rely on alleged evidence to support its position, and then refuse to produce that evidence.

---

[11] Ex G, S. Christianson 30(b)(6) Dep. at 70:13-21; 222:8-24.

Grande's gambit constitutes a waiver of privilege on this issue and Plaintiffs request immediate production of all allegedly privileged communications regarding Rightscorp.  Having claimed that it is entitled to the DCMA safe harbor affirmative defense based on communications that allegedly cast doubt on the Rightscorp notices, Grande cannot withhold those communications from discovery.  That tactic is patently unfair; and if the court were to credit Grande's argument without requiring production of the communications, it would be highly prejudicial to Plaintiffs.[12]  Regardless, vague reference to undisclosed communications not in the record cannot create a disputed issue of fact.  Clear record evidence demonstrates that Grande's failure to terminate was unrelated to Grande's assessment of Rightscorp notices.

### C. Grande's Failure to Terminate Repeat Infringers Identified by Companies Other Than Rightscorp Belies Grande's Argument That Criticisms of Rightscorp Explain the Total Lack of Terminations.

As Grande's Opposition is forced to admit, Rightscorp was not the only company that sent infringement notices to Grande.  Numerous other companies informed Grande of tens of thousands of instances of copyright infringement occurring on its network.  For example, an internal breakdown provided to senior Grande personnel listed almost two dozen other companies that sent notices to Grande, include several that sent more than 10,000 notices in 2015 alone.[13]  Yet Grande did not terminate any repeat infringers based on these notices, either.  There is no evidence that Grande's failure to terminate in response to these notices rested on assessments that each of these

---

[12] Equally prejudicial to Plaintiffs is Grande's apparent intention to introduce evidence on topics over which it has blocked discovery on the basis of privilege.  This use of the privilege as both a sword and shield is improper and Plaintiffs intend to seek relief from the Court to prevent Grande's misuse of the privilege.  *See e.g. Conkling v. Turner*, 883 F.2d 431, 434 (5th Cir. 1989) ("The great weight of authority holds that the attorney-client privilege is waived when a litigant places information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.").

[13] Ex. U, PX 107 (GRANDE1438324).

companies' systems was flawed – instead, as the evidence shows, it was based on Grande's blanket policy not to terminate repeat infringers.

Grande's only response is to argue that somehow Plaintiffs' are obliged at this stage to prove that "these non-Rightscorp notices are in any way reliable or actionable."  Opp. at 4, n 4. But it is ***Grande's burden*** to demonstrate entitlement to the DMCA safe harbor.  Its own witnesses have admitted it cannot meet this burden.  Grande has no contemporaneous evidence that the Rightscorp notices, or any of the other notices it received, were unreliable.  Its lawyers' unsupported after-the-fact attempt to gin up a dispute of fact by questioning the reliability of the notices and by claiming that privileged documents support its claims are insufficient to meet Grande's burden of establishing its entitlement to the DMCA safe harbor.

## CONCLUSION

The undisputed facts show that between October 2010 and June 2017 Grande did not terminate any repeat infringer subscribers for copyright infringement.  And even since June 2017, Grande has only terminated 12 subscribers despite tracking thousands of repeat infringers.  This failure to adopt and reasonably implement a repeat infringer policy renders Grande ineligible for the DMCA safe harbor.  The Court should grant Plaintiffs' motion for partial summary judgment and reject Grande's DMCA safe harbor defense as a matter of law.


September 5, 2018

Respectfully submitted,

By:  */s/ Philip J. O'Beirne*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**

901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

### CERTIFICATE OF SERVICE

The undersigned certifies that, on September 5, 2018, all counsel of record who are deemed to have consented to electronic service are being served with through the Court's ECF system.

*/s/ Daniel C. Bitting*
Daniel C. Bitting