**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | Civil Action No. 1:17-cv-00365 |
| | § | |
| GRANDE COMMUNICATIONS | § | |
| NETWORKS LLC and PATRIOT MEDIA | § | |
| CONSULTING, LLC., | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GRANDE COMMUNICATIONS**
**NETWORKS LLC's MOTION FOR SUMMARY JUDGMENT, AND**
**PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT AS TO LIABILITY**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION .............................................................................................................. 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ............................................................ 3

LEGAL STANDARD ......................................................................................................... 9

ARGUMENT .................................................................................................................. 10

I.   The Record Evidence Establishes Massive Direct Infringement By Grande
     Subscribers. ......................................................................................................... 10

     A.   Grande Received More Than One Million Notices From Rightscorp, Each
          Providing Evidence Of Direct Copyright Infringement ...................................... 10

     B.   Grande's Motion Wholly Ignores That Plaintiffs Produced Tens Of
          Thousands Of Full Audio Files Copied By Grande Subscribers, Including
          Each Of Plaintiffs' Copyrighted Recordings in Ex. A to the Complaint,
          Which Is Also Conclusive Evidence Of Direct Infringement. ........................... 13

     C.   Plaintiffs' Evidence Conclusively Demonstrates That The Infringing Files
          Rightscorp Identifies Are Plaintiffs' Copyrighted Recordings........................... 16

II.  Grande Is Liable For Contributory Infringement ............................................... 17

     A.   Grande's Knowledge of Its Users' Infringement Far Exceeds the
          Knowledge Required to Establish Secondary Liability. ..................................... 18

     B.   An ISP That Provides the Facilities Used to Infringe Materially
          Contributes to the Infringement of Plaintiffs' Copyrighted Recordings, As
          Well-Settled Precedent Establishes.................................................................... 23

     C.   Grande's Claim that Contributory Liability Requires Intent and
          Inducement Badly Misreads *Grokster* and Is Inconsistent with Settled
          Precedent.............................................................................................................. 24

III. The Evidence Shows That Grande's Infringement Was Willful. ........................ 27

IV.  Grande's Discovery Rule Arguments Are Unavailing. ...................................... 28

V.   Grande's Summary Judgment Arguments Regarding Actual Damages Are
     Misplaced; Plaintiffs Have Submitted Significant Evidence Raising Genuine
     Issues Of Material Fact. ...................................................................................... 29

VI.  Plaintiffs Conclusively Establish Their Ownership Of Or Exclusive Rights To
     Plaintiffs' Copyrighted Recordings. ................................................................... 29

CONCLUSION................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ...............................................................12, 19, 23

*In re Aimster Copyright Litigation*,
    334 F.3d 643 (7th Cir. 2003) .........................................................................18, 21

*Alcatel USA, Inc. v. DGI Techs., Inc.*,
    166 F.3d 772 (5th Cir. 1999) ..............................................................................17

*American Broadcast. Co., Inc. v. Aereo, Inc.*,
    134 S. Ct. 2498 (2014)........................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)...............................................................................................9

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010)................................................................................18

*Arista Records LLC v. Greubel*,
    453 F. Supp. 2d 961 (N.D. Tex. 2006) ...............................................................12

*Arista Records LLC v. Lime Wire LLC*,
    No. 06 Civ. 05936 (KMW), 2010 WL 10031251 (S.D.N.Y. Aug. 9, 2010) ..........17

*Arista Records LLC v. Myxer Inc.*,
    No. 08 Civ 03935 (GAF) (JCX), 2011 WL 11660773 (C.D. Cal. Apr. 1, 2011) ..................17

*Atlantic Recording Corp. v. Howell*,
    554 F. Supp. 2d 976 (D. Ariz. 2008) .............................................................13, 14

*Berg v. Symons*,
    393 F. Supp. 2d 525 (S.D. Tex. 2005) .................................................................21

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    149 F. Supp. 3d 634 (E.D. Va. 2015) *aff'd in part, rev'd in part on other*
    *grounds,* 881 F.3d 293 (4th Cir. 2018) ............................................12, 15, 18, 19, 21

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
    199 F. Supp. 3d 958 (E.D. Va. 2016), *aff'd in part, rev'd in part on other*
    *grounds,* 881 F.3d 293 (4th Cir. 2018) ....................................................15, 23, 27

*Busti v. Platinum Studios, Inc.*,
    No. A-11-CA-1029-SS, 2013 WL 12121116 (W.D. Tex. Aug. 30, 2013).............................15

*BWP Media USA, Inc. v. Polyvore, Inc.*,
No. 1:13-cv-7867, 2016 WL 3926450 (S.D.N.Y. July 15, 2016)............................................26

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*,
852 F.3d 436, 439 (5th Cir.), *cert. denied*, 138 S. Ct. 236 (2017)......................................10, 11

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*,
902 F.2d 829 (11th Cir. 1990) ......................................................................................18, 22

*Capitol Records, Inc. v. Thomas*,
579 F. Supp. 2d 1210 (D. Minn. 2008)..........................................................................13, 14

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
No. 12-CV-6646 AJN, 2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015)....................................17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)......................................................................................................9

*Clear Skies Nevada, LLC v. Kainu*,
No. 3:16-cv-811-AC, 2017 WL 4021121 (D. Or. Aug. 21, 2017), *report and recommendation adopted*, 2017 WL 4012960 (D. Or. Sept. 12, 2017)..................................15

*Columbia Pictures Indus., Inc. v. Fung*,
710 F.3d 1020 (9th Cir. 2013) ....................................................................................10, 15

*EMI Christian Music Grp., Inc. v. MP3tunes,*
LLC, 844 F.3d 79 (2d Cir. 2016), *cert. denied sub nom. Robertson v. EMI Christian Music Grp., Inc.*, No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017) .................................................................................................................21, 26, 30

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
76 F.3d 259 (9th Cir. 1996) ........................................................................................21, 23

*Frame v. City of Arlington*,
657 F.3d 215 (5th Cir. 2011) ...........................................................................................28

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971)...............................................................................22, 25, 26

*Graper v. Mid-Continent Cas. Co.*,
756 F.3d 388 (5th Cir. 2014) ...........................................................................................27

*Imperial Homes Corp. v. Lamont*,
458 F.2d 895 (5th Cir. 1972) ...........................................................................................15

*Interscope Records v. Leadbetter*,
No. C05–1149, 2007 WL 1217705 (W.D. Wash. Apr. 23, 2007) ..........................................14

*Jaso v. The Coca Cola Co.*,
  435 F. App'x 346 (5th Cir. 2011) ...........................................................................17

*Joseph Paul Corp. v. Trademark Custom Homes, Inc.*,
  No. 3:16-CV-1651-L, 2016 WL 4944370 (N.D. Tex. Sept. 16, 2016)...................................17

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
  591 F. Supp. 2d 1098 (N.D. Cal. 2008) ...................................................................19

*Luvdarts, LLC v. AT&T Mobility, LLC*,
  710 F.3d 1068 (9th Cir. 2013) ...........................................................................21

*Malibu Media, LLC v. Bui*,
  No. 1:13-CV-162, 2014 WL 12469955 (W.D. Mich. July 21, 2014)......................................15

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
  724 F.2d 357 (2d Cir. 1983)..............................................................................15

*Maverick Recording Co. v. Harper*,
  No. 5:07-CV-026-XR, 2008 WL 11411855 (W.D. Tex. Sept. 16, 2008), *aff'd*
  *in part and rev'd in part*, 598 F.3d 193 (5th Cir. 2010) ....................................12, 14

*MDI, Inc. v. Lowder*,
  NO. SA-08-CA-900-FB, 2009 WL 10669793, at *3 (W.D. Tex. Aug. 13,
  2009), *report and recommendation adopted*,
  2009 WL 10669899 (W.D. Tex. Sept. 3, 2009)............................................................25

*Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*,
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) ...................................................................17

*Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*,
  545 U.S. 913 (2005).............................................................................24, 25, 26

*Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*,
  No. 3:08–CV–1658–D, 2009 WL 3075205 (N.D. Tex. Sept. 25, 2009) ...............................22

*Motown Record Co. v. DePietro*,
  No. 04–CV–2246, 2007 WL 576284 (E.D. Pa. Feb. 16, 2007)..............................................12

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...........................................................................26

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
  494 F.3d (9th Cir. 2007) ................................................................................26

*Playboy Enterprises, Inc. v. Webbworld, Inc.*,
  991 F. Supp. 543 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999)..............................11

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)....................................................................................................27

*Sony BMG Music Entm't v. Cuellar*,
    No. CV CC-07-58, 2008 WL 11398942 (S.D. Tex. July 24, 2008) ........................30

*Sony Corp. of America v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)........................................................................................10, 24, 25

*TIG Ins. Co. v. Aon Re, Inc.*,
    521 F.3d 351 (5th Cir. 2008) ...................................................................................28

*Turner v. Baylor Richardson Med. Ctr.*,
    476 F.3d 337 (5th Cir. 2007) .................................................................................9, 10

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) .................................................................................17

*Universal City Studios Prods. LLLP v. Bigwood*,
    441 F. Supp. 2d 185 (D. Me. 2006) .........................................................................12

*Variant Displays, Inc. v. Absolute Exhibits, Inc.*,
    No. SACV 15–01685–CJC(JCGx),
    2016 WL 7486281 (C.D. Cal. Feb. 12, 2016)....................................................18, 22

*Viacom Int'l, Inc. v. YouTube, Inc.*,
    676 F.3d 19 (2d Cir. 2012)........................................................................................21

*Warner Bros. Entm't v. X One X Prods.*,
    644 F.3d 584 (8th Cir. 2011) ...................................................................................30

*Warner Bros. Records, Inc. v. Walker*,
    704 F. Supp. 2d 460 (W.D. Penn. 2010)...................................................................14

*Warner Bros. Records v. Payne*,
    No. W-06-CA-051, 2006 WL 2844415 (W.D. Tex. July 17, 2006).................................11, 12

**Statutes**

17 U.S.C. 504.................................................................................................................27

**Rules**

Fed. R. Civ. P. 30(b)(6).........................................................................................7, 8, 20

Fed. R. Civ. P. 33(d) ...............................................................................................13

Fed. R. Civ. P. 56(a) ................................................................................................9

## INTRODUCTION

For years, Defendant Grande Communications Networks LLC ("Grande") has knowingly facilitated, and greatly profited from, its internet service subscribers' massive infringement of sound recordings through the BitTorrent peer-to-peer platform—including specifically Plaintiffs' copyrighted recordings identified in Exhibit A to Plaintiffs' Complaint (the "Copyrighted Recordings").[1]   The record evidence and relevant law conclusively establish Plaintiffs' entitlement to summary judgment that Grande is liable for contributory copyright infringement.[2]

In the face of the overwhelming evidence and authorities against it, Grande's own summary judgment motion resorts to mischaracterizations of the record, misstatements of the law, and unsupported pronouncements that Plaintiffs supposedly lack evidence.   None of Grande's summary judgment arguments has any merit.

*First*, **Rightscorp, Inc. ("Rightscorp") detected, and notified Grande of, a massive number of instances of direct infringement by Grande's subscribers through Grande's network.**  The Rightscorp system works.  Grande never questioned its operation in the ordinary course of business.  Indeed, when Grande terminated a handful of users as repeat copyright infringers in an unavailing effort to salvage the safe harbor defense after this lawsuit was filed, Grande terminated subscribers *whom Rightscorp identified as repeat infringers in its notices to Grande*.  Grande's litigation position now depends on ignoring these facts, as well as the

---

[1] Because Grande did not adopt, let alone reasonably implement, a policy of terminating repeat infringing subscribers, Grande cannot meet the DMCA's stringent safe harbor requirements, and thus has no DMCA safe harbor defense to Plaintiffs' claims.  *See* Plaintiffs' Motion for Partial Summary Judgment & Reply in Support [Dkt. 127, 167].

[2] Plaintiffs will establish Grande's willfulness, and Plaintiffs' damages, at trial.  Granting Plaintiffs' Cross-Motion will significantly streamline the remaining pretrial proceedings and narrow the scope of the trial. To avoid duplication of evidence and arguments, Plaintiffs have combined their opposition to Grande's summary judgment motion, and Plaintiffs' own affirmative motion, into a single pleading that does not exceed the combined page limits that would have applied to two briefs.

extensive data and technical information provided in discovery.  All of this evidence confirms that Rightscorp's technology—which was already analyzed extensively, and confirmed as reliable, by the courts and jury in *BMG Rights Management (US) LLC v. Cox Communications, Inc.*—effectively detects online infringement.  Unable to show any flaws in the Rightscorp system, Grande is forced to mischaracterize the system's operation, asserting, wrongly, that it does not detect the actual distribution of Plaintiffs' Copyrighted Recordings.  The opposite is true, as fact and expert discovery demonstrate.

Grande fares no better in arguing that Plaintiffs cannot demonstrate their works were the ones that Rightscorp detected were being infringed.  Both Rightscorp and the Recording Industry Association of America ("RIAA") (Plaintiffs' trade association) confirmed that the audio files Rightscorp obtained from infringing Grande subscribers were identical infringing copies of Plaintiffs' Copyrighted Recordings.

Finally, Grande's claim that peer-to-peer file sharing somehow does not amount to infringement verges on the frivolous.  Numerous courts have held otherwise and Grande fails to identify a single court that has adopted Grande's argument.

*Second*, **the law and the facts establish that Grande is liable for contributory infringement through Grande's continued provision of internet service to subscribers whom Grande knew were downloading and sharing sound recordings (including Plaintiffs' Copyrighted Recordings).**  The undisputed evidence—including the Rightscorp notices, Grande's contemporaneous emails, and its witnesses' testimony—confirm that, for years, Grande has known of its subscribers' infringing activity.  And Grande has facilitated that conduct, by providing the internet service used to infringe Plaintiffs' Copyrighted Recordings. Grande's rehashing of failed legal arguments and its incorrect claims that Plaintiffs lack evidence to

support their case fall far short of rebutting Plaintiffs' entitlement to relief or satisfying Grande's own summary judgment burden.

**_Third_, Grande's hodgepodge of other undeveloped arguments provides no basis for granting it summary judgment or for denying Plaintiffs summary judgment.**

- Plaintiffs have adduced abundant evidence that Grande's contributory infringement was **willful** (which includes both intentional and reckless conduct)—including its wholesale failure to terminate **any** repeat infringing customer before this lawsuit was filed, and its possible spoliation of inculpatory internal emails in the wake of the _Cox_ verdict.

- Grande's argument as to Plaintiffs' **actual damages** is misplaced. While Plaintiffs most likely will elect to seek statutory damages, Plaintiffs have more than sufficient evidence for a jury to award Plaintiffs the ill-gotten profits that Grande has made from providing internet service to known repeat infringing subscribers.

- Although Plaintiffs do not need the **discovery rule** for liability purposes—because Plaintiffs can show each Copyrighted Recording was illegally shared on Grande's network in the three years preceding Plaintiffs' filing suit—the discovery rule remains good law for copyright infringement, and Plaintiffs have evidence entitling them to its application with respect to the extent of Plaintiffs' damages.

- Grande's unsupported assertions notwithstanding, Plaintiffs' evidence conclusively proves **ownership of or exclusive rights to** each of the Copyrighted Recordings.

For these reasons, as more fully explained below, the Court should deny Grande's motion in its entirety and grant Plaintiffs' cross-motion as to liability.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiffs' evidence establishing their entitlement to summary judgment, and defeating Grande's summary judgment motion, includes: (1) documents, data, and testimony from Rightscorp, the online detection company that played a central role in _Cox_ on nearly identical facts; (2) Grande's own documents and witnesses; (3) the expert analyses and opinions of Plaintiffs' experts—Barbara Frederiksen-Cross, Robert Bardwell, Terrence McGarty, and William Lehr—all of whom testified on behalf of the plaintiff in _Cox_; and (4) Plaintiffs'

executives testifying as to the evidence demonstrating Plaintiffs' ownership of or exclusive rights to Plaintiffs' Copyrighted Recordings.

1.      Plaintiffs are the leading music companies in the world.  Their business depends on developing and protecting their copyrighted works.  Plaintiffs own, or have the exclusive rights to, each of Plaintiffs' Copyrighted Recordings.[3]  Ex. A, Declaration of Alasdair McMullan (Universal Plaintiffs); Ex. B, Declaration of Wade Leak (Sony Plaintiffs); Ex. C, Declaration of Steve Poltorak (Warner Plaintiffs).[4]

2.      For nearly two decades, Plaintiffs and the music industry as a whole have been under assault from internet piracy, in a variety of forms.  As Plaintiffs' expert, Dr. William Lehr, a telecommunications and music industry economist at MIT, explains, online infringement of sound recordings, including through peer-to-peer file sharing systems such as BitTorrent, is widely recognized as a massive and persistent problem for record companies, who have seen dramatic declines in their revenues since the advent of internet piracy.  Ex. D, Expert Report of Dr. William Lehr ¶¶ 13, 19-26; Ex. E, Deposition of Neil Carfora at 29:3-29:20 and 101:21-106:19; Ex. F, Rebuttal Expert Report of Dr. William Lehr; Ex. G, Deposition of David Benjamin (rough draft), 164-169.

3.      For years, Grande, an internet service provider ("ISP"), has facilitated the massive online infringement of Plaintiffs' works by Grande's subscribers.  Rightscorp uncovered Grande's misconduct.  Rightscorp deploys a technology designed to monitor BitTorrent peer-to-peer file sharing networks and websites and to collect and verify evidence of online file sharing of its customers' copyrighted works.  Ex. H, Expert Report of Barbara Frederiksen-Cross ¶ 44; Ex. I, Declaration of Greg Boswell ¶¶ 12-14.

---

[3] *See* Compl. Ex. A [Dkt. 1]
[4] By agreement with Grande, Mr. Poltorak's declaration will be filed later this week.

4.      Rightscorp collects information from rightsholders regarding the copyrights being monitored, including at a minimum the name of the copyrighted work, the artist or writer (depending on whether it is a sound recording or musical composition), and other identifying information, including copyright registration numbers and Internet Standard Recording Code (ISRC) numbers.  Ex. J, Deposition of Christopher Sabec, 177:21-178:18.  Rightscorp then obtains examples of torrent files being exchanged through BitTorrent that contain these copyrighted works, using digital verification technology and manual quality control confirmation.  Ex. J, Sabec Dep., 176:12-177:12; Ex. I, Boswell Decl. ¶¶ 3, 7-9.

5.      After collecting and verifying the evidence, the Rightscorp system prepares and sends notices to the offender's ISP to notify the ISP of the claimed infringing activity.  Ex. H, Frederiksen-Cross Report ¶ 44.  Each notice provides detailed information about the infringing activity, including IP addresses, port numbers, time stamps, song titles, artist names, and copyright holders.  Ex. H, Frederiksen-Cross Report ¶ 72-73; Ex. I, Boswell Decl. ¶ 11.  The Rightscorp system also provides ISPs a web-based "Dashboard" that permits review of the evidence Rightscorp collects and the notices it produces.  Ex. H, Frederiksen-Cross Report ¶¶ 78-86; Ex. I, Boswell Decl. ¶ 11.

6.      Using this system, Rightscorp detected, and sent notices to Grande about, more than 1.35 million instances of copyright infringement by Grande subscribers.  Ex. I, Boswell Decl. ¶ 12.  Dr. Robert Bardwell analyzed the Rightscorp notices and confirmed that at least 344,450 of these notices relate to Plaintiffs' Copyrighted Recordings.  Ex. K, Expert Report of Dr. Robert Bardwell, p. 9.

7.      In addition, for each of Plaintiffs' Copyrighted Recordings listed in Exhibit A to the Complaint, Rightscorp has obtained a full copy of the infringing file, downloaded directly from a Grande subscriber who shared the file through BitTorrent, and about whom Rightscorp

sent Grande a notice of infringement.  Ex. I, Boswell Decl. ¶¶ 13-14; Ex. H, Frederiksen-Cross Report ¶¶ 46, 60-62.

8.     Rightscorp provided those infringing audio files to the RIAA.  The RIAA then used the Audible Magic digital fingerprinting technology to determine that those files are an exact match with Plaintiffs' Copyrighted Recordings.  Audible Magic is an automatic content recognition technology that scans the perceptual characteristics of a sound recording.  The tool compares the characteristics of the sound recording to the content that has been registered in Audible Magic's database (what Audible Magic calls its "Global Content Registry").  If the tool returns a "match" condition, that indicates that the sound recording contains copyrighted content that has been registered with Audible Magic by the copyright owner.  Using the Audible Magic tool, the RIAA confirmed that each of Plaintiffs' Copyrighted Recordings is reflected in at least one .mp3 audio file that Rightscorp downloaded from at least one Grande internet service subscriber.  Ex. L, Declaration of Jeremy Landis.  For more than two-thirds of the works in Exhibit A, Plaintiffs have produced multiple whole infringing copies obtained by Rightscorp from Grande subscribers.  Ex. L, Landis Decl., Ex. 1.  In fact, for more than one-third of the works in suit, Rightscorp obtained (and Plaintiffs have produced) at least 10 full copies of infringing files that have been matched to the master copy using Audible Magic.  *Id*.

9.     Grande's own documents and witness testimony further demonstrate the copyright infringement occurring on Grande's network.  Grande's internet systems manager testified that the company has known for years of its customers' copyright infringement, both through notices from companies like Rightscorp, as well as by examining customers' bandwidth usage.  Ex. M, Deposition of Colin Bloch, 46:11-49:18.

10.    Numerous internal documents reflect Grande employees' discussions with its customers, or with each other, about the customers' online infringement.  Internal documents

also reveal Grande's knowledge that the company continued to provide service to numerous customers for whom Grande had received multiple infringement notices.  Ex. N, PX 69, Ex. O, PX 137, Ex. P, PX 140, Ex. Q, PX 169.

11. Numerous companies other than Rightscorp informed Grande of tens of thousands of instances of copyright infringement occurring on its network.  For example, an internal breakdown provided to senior Grande personnel listed almost two dozen other companies that sent notices to Grande, including several that sent more than 10,000 notices in 2015 alone. Ex. R, PX 107 (GRANDE1438324).  And Grande's internal discussion of these notices reflect Grande's actual knowledge of what the notices reflect:  "This is a notice that someone at that facility using the Grande provided data connection (GMAN), *__has illegally downloaded copyrighted content__*." Ex. N, PX 69 (emphasis added).

12. In fact, Grande tracked repeat infringing customers with precision, cataloging their misconduct in "Excess Violations" reports.  Ex. S, GRANDE0000194, Ex. T, GRANDE0000195.[5]

13. In 2016, following the *Cox* verdict in which BMG was awarded $25 million for contributory copyright infringement and $8 million in attorneys' fees based on Rightscorp notices substantially identical to those sent to Grande, Grande identified a technical error in its system that had resulted in notices from Rightscorp not being forwarded to Grande customers. Ex. U, PX 181.

14. Ultimately, after reviewing its past processing of Rightscorp notices and with the full benefit of the public record (and verdict) in the *Cox* trial, Grande decided to forward Rightscorp notices to Grande subscribers, as reflected in Grande's own records.  Ex. V (PX 173 excerpt); Ex. W, Rule 30(b)(6) Deposition of Stephanie Christianson, 183:23-184:22.

---

[5] These documents were produced as large native excel files.  These exhibits represent excerpts.

15.     Dr. Bardwell analyzed Grande infringement tracking data and found that Grande forwarded 11,841 Rightscorp notices to customers in 2016 alone. Ex. K, Bardwell Report, pp. 25-26.

16.     Also following the *Cox* verdict, a senior Grande executive repeatedly suggested that the company should delete emails to avoid having the sort of inculpating evidence that led to Cox Communications (another ISP) being found liable.  Ex. X, PX 206; Ex. Y, PX 207.

17.     Grande provided ongoing service to tens of thousands of known repeat infringers, refusing to terminate a single customer for copyright infringement from October 2010 until June 2017—two months after this lawsuit was filed.  Ex. Z, Expert Report of Dr. Terrence McGarty ¶ 43, 54-59; *see also* Pls.' Mot. for Partial S.J. [Dkt. 127].  Analyzing Rightscorp's and Grande's data, Dr. Robert Bardwell identified at least 5,939 repeat infringing Grande customers who infringed one or more of Plaintiffs' Copyrighted Recordings.  Ex. K, Bardwell Expert Report, pp. 6, 22-23; Ex. AA, Rebuttal Expert Report of Dr. Robert Bardwell, pp. 3, 10.

18.     After this case was filed, Grande terminated just twelve subscribers in 2017 and 2018, including subscribers whom Rightscorp had identified as repeat infringers.  Ex. BB, GRANDE1438198; Ex. CC, PX 60; Ex. DD, PX 61 (GRANDE0000199).

19.     Grande's Rule 30(b)(6) corporate representative, as well as its general manager, confirmed that these few customers were terminated not out of an "abundance of caution" (as Grande asserted in its litigation discovery responses), but because they were repeat infringers according to the notices that Grande received.  "Q. And you've kicked off 11 people in 2017? A. Since this policy changed, that's correct, to the best of my knowledge. Q. They were repeat infringers? A. (Nods head.) Q. Is that a yes? A. Yes." Ex. EE, Deposition of Matthew Rohre, 106:14-20.  "Q. So I'm asking, did Grande terminate the 12 infringers it's terminated since May 2017 under its DMCA policy and procedure? A. Yes. Q. And Grande did so because it

determined the circumstances were appropriate to terminate them as repeat copyright infringers under its DMCA policy and procedure? A. Yes."  Ex. W, S. Christianson 30(b)(6) Dep., 35:2-13.

20.    Grande's general manager admitted that subscribers who had engaged in similar conduct in the past would have been terminated had Grande's current policy been in place prior to 2017.  Ex. EE, Rohre Dep. 141:8-16;142:12-17.

21.    Grande provided internet service to thousands of known infringing customers, thereby facilitating their infringement.  As Dr. Terrence P. McGarty, an experienced executive with multiple internet service providers, explains, Grande's high-speed internet service facilitates the sharing of copyrighted materials, because of the speed and bandwidth made available by the type of advanced broadband network Grande provides its customers.  Ex. Z, McGarty Expert Report ¶ 38.

22.    Grande was aware that if it merely sent emails to its customers who were the subject of DMCA infringement notices, without terminating repeat infringing customers, that could render it ineligible for the DMCA safe harbor.  Ex. FF, PX 91 (GRANDE0000009).  Yet for years, that is all the company did.  *See supra* ¶ 17.

23.    Grande profited greatly from the repeat infringers it serviced: Dr. Lehr calculates that, from 2013 to the present, Grande reaped profits of as much as $102.9 million just from providing internet service to known repeat infringing customers.  Ex. D, Lehr Expert Report ¶¶ 13, 38-43.

## LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).  A factual dispute is genuine only if there is sufficient evidence for a reasonable

jury to find for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-249, 252 (1986) (a "mere existence of a scintilla of evidence…[is] insufficient" to oppose summary judgment).  "A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'"  *Turner*, 476 F.3d at 343 (citing *Anderson*).

## ARGUMENT

### I.   THE RECORD EVIDENCE ESTABLISHES MASSIVE DIRECT INFRINGEMENT BY GRANDE SUBSCRIBERS.

Grande's claim that Plaintiffs cannot prove direct infringement, Def. Mot. at 4, is squarely contradicted by the facts.  Plaintiffs have produced extensive, detailed evidence showing the direct infringement of Plaintiffs' Copyrighted Recordings by Grande's users, reflected in notices Grande has received from Rightscorp identifying instances of such infringement, as well as entire audio files that Rightscorp downloaded from Grande subscribers, which match Plaintiffs' Copyrighted Recordings.

### A. Grande Received More Than One Million Notices From Rightscorp, Each Providing Evidence Of Direct Copyright Infringement.

Direct liability is imposed on those who "trespass[ ] into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work. . . ."  *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 439 (5th Cir.), *cert. denied*, 138 S. Ct. 236 (2017) (citing *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433, (1984)).  "Both uploading and downloading copyrighted material are infringing acts.  The former violates the copyright holder's right to distribution, the latter the right to reproduction."  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013).

The Rightscorp notices demonstrate that online infringement has occurred for years on Grande's network.  Each Rightscorp notice is direct evidence of a Grande subscriber (1)

providing specific information to BitTorrent users (and to Rightscorp) that he or she possesses the copyrighted sound recording that those BitTorrent users (and Rightscorp) have requested, and (2) beginning to distribute the sound recording, which is only halted by the Rightscorp system.  Ex. I, Boswell Decl., ¶¶ 6-10; Ex. H, Frederiksen-Cross Report ¶¶ 56-58.  Rightscorp detected and sent to Grande a notice for each of Plaintiffs' Copyrighted Works.  Ex. I, Boswell Decl. ¶ 12; Ex. K, Bardwell Report, p. 9.  In total, Rightscorp detected and notified Grande of at least 5,939 repeat infringers who infringed at least one of Plaintiffs' Copyrighted Recordings. Statement of Undisputed Material Facts ("SUF") ¶ 16.

Grande argues that Rightscorp notices merely reflect that users are making files available and thus are not evidence of direct infringement.  *See* Def. Mot. at 7-8.  Grande is wrong for two reasons.

***First***, Grande misrepresents the law of copyright infringement in the Fifth Circuit. "'Copying' is a judicial shorthand for the infringement of any of a copyright owner's exclusive rights."  *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 550–51 (N.D. Tex. 1997), *aff'd*, 168 F.3d 486 (5th Cir. 1999).  In *BWP Media*, the Fifth Circuit held that defendants can be liable for direct infringement where they have "provided the means to obtain and transmit copyrighted performances."   852 F.3d at 442 (analyzing the Supreme Court's decision in *American Broadcast. Co., Inc. v. Aereo, Inc.*, 134 S. Ct. 2498 (2014), and concluding that direct infringement liability can attach where the defendant "provided access and the means to transmit the infringing material").

Grande nonetheless argues that "[c]ourts consistently hold that merely making copyrighted works available to others does not violate the distribution right."  Def. Mot. at 7. This claim is demonstrably false.  Not only does Grande ignore the Fifth Circuit's *BWP Media* decision, it also ignores that this Court has specifically distinguished peer-to-peer file sharing

from Grande's "making available" cases. In *Warner Bros. Records v. Payne*, No. W-06-CA-051, 2006 WL 2844415 (W.D. Tex. July 17, 2006), the plaintiffs argued that a peer-to-peer user's listing of copyrighted works on an online filesharing service was an offer to distribute those works that constituted direct infringement. This Court cited the Ninth Circuit's *Napster* decision in reiterating that "[l]isting unauthorized copies of sound recordings using an online file-sharing system *constitutes an offer to distribute those works, thereby violating a copyright owner's exclusive right of distribution*." *Id.* at *3.[6] Indeed, this Court in *Payne* noted that "[m]aking an unauthorized copy of a sound recording available to countless users of a peer-to-peer system for free certainly contemplates and encourages further distribution, both on the Internet and elsewhere." *Id.* at *3. Similarly, in another peer-to-peer copyright infringement case, this Court "reject[ed] Defendants' argument that merely making copyrighted works available to the public is not enough evidence for summary judgment purposes to establish infringement." *Maverick Recording Co. v. Harper*, No. 5:07-cv-026-XR, 2008 WL 11411855, at *3 (W.D. Tex. Sept. 16, 2008), *aff'd in part and rev'd in part*, 598 F.3d 193 (5th Cir. 2010) (holding that the district court erred by denying plaintiffs' motion for summary judgment on defendants "innocent infringer" defense).

   **Second**, even if the Rightscorp notices were found not to be direct evidence of infringement (which they are), each Rightscorp notice is powerful *circumstantial evidence* of infringement through illegal distribution. It is well-established that a plaintiff "may establish direct infringement using circumstantial evidence that gives rise to an inference that [the ISP]

---

[6] Other courts in this circuit have held likewise. *See, e.g., Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 971 (N.D. Tex. 2006) (finding actionable allegation that defendant "*made the copyrighted recordings available to others without permission* and actively reproduced and/or distributed the copyrighted recordings as well.") (emphasis added). Multiple courts from other circuits have reached the same conclusion. *See, e.g., Universal City Studios Prods. LLLP v. Bigwood,* 441 F. Supp. 2d 185, 190–91 (D. Me. 2006); *Motown Record Co. v. DePietro,* No. 04–CV–2246, 2007 WL 576284, at *3 (E.D. Pa. Feb. 16, 2007).

account holders or other authorized users accessed its service to directly infringe." *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 663 (E.D. Va. 2015) *aff'd in part, rev'd in part on other grounds,* 881 F.3d 293 (4th Cir. 2018).  In fact, the cases Grande cites make this very point.  *See, e.g., Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008) ("[D]irect proof of actual dissemination is not required by the Copyright Act. Plaintiffs are free to employ circumstantial evidence to attempt to prove actual dissemination."); *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) (same).

The fact that the Grande subscribers have offered sound recordings for downloading through BitTorrent is strong evidence that such subscribers repeatedly shared such recordings with untold other BitTorrent users—the very purpose of peer-to-peer systems like BitTorrent. This is particularly the case given Grande subscribers' proven willingness to distribute these Copyrighted Recordings to Rightscorp—as discussed below.

**B. Grande's Motion Wholly Ignores That Plaintiffs Produced Tens Of Thousands Of Full Audio Files Copied By Grande Subscribers, Including Each Of Plaintiffs' Copyrighted Recordings in Exhibit A to the Complaint, Which Is Also Conclusive Evidence Of Direct Infringement.**

Grande contends that, even if its subscribers made files available for download, Plaintiffs have no evidence the files were actually downloaded.  *See* Def. Mot. at 7.  This claim is also wrong.  Plaintiffs have produced conclusive evidence[7] that Grande subscribers distributed a full copy of each and every one of Plaintiffs' Copyrighted Recordings to Rightscorp.  SUF ¶ 7; Ex. I,

---

[7] Grande feigns ignorance of this evidence, but Plaintiffs produced these sample infringing files to Grande in April 2018 and further described them in an interrogatory response:  "In accordance with Federal Rule of Civil Procedure 33(d), Plaintiffs direct Defendants to the evidence that Rightscorp collected regarding Grande's subscribers' online infringement of Plaintiffs' copyrighted sound recordings, which has been produced at Bates RC-D_00000001 through RC-D_01350635 (notices sent to Grande), [and] RC-D_01350636 - RC-D_01410446 (*sample files of sound recordings that infringing Grande subscribers shared with Rightscorp, which Rightscorp then provided to Plaintiffs and RIAA*)…."  Ex. GG, UMG Pls.' Resp. to Grande Interrog. No. 20 (emphasis added).

Boswell Decl. ¶¶ 13-14; Ex. H, Frederiksen-Cross Report ¶ 46(5).  This is dispositive evidence of direct infringement, which Rightscorp obtained by downloading the infringing files from Grande subscribers.

None of Grande's contrary claims has any merit.  Grande's core argument is that the "[Rightscorp] system cannot detect when, or even whether, a file has ever actually been copied." Def. Mot. at 2.  Grande cites paragraph 46 in Ms. Frederiksen-Cross's expert report for this argument.  *Id.* at 7.  But Grande ignores the very next part of that same paragraph in her report, where she states that Rightscorp "***us[es] BitTorrent protocol to download samples of the offered files from these Peers***, verifying the downloaded file contents, and preserving an evidentiary record of such downloads."  Ex. H, Frederiksen-Cross Report ¶ 46(5) (emphasis added).  That is what Rightscorp did here, downloading over 59,000 audio files that Grande subscribers shared. Ex. I, Boswell Decl. ¶ 14.

The audio files Rightscorp downloaded from Grande subscribers are precisely the type of evidence that numerous courts have found to establish direct infringement.  "Courts have consistently relied upon evidence of downloads by a plaintiff's investigator to establish both unauthorized copying and distribution of a plaintiff's work."  *Cox Commc'ns, Inc.*, 199 F. Supp. 3d at 972 (citing *Arista Records LLC v. Lime Grp. LLC*, No. 06–cv–5936, 2011 WL 1641978, at *8 (S.D.N.Y. Apr. 29, 2011) (collecting cases)).  *See also Maverick Recording Co.*, 2008 WL 11411855, at *3; *Warner Bros. Records, Inc. v. Walker*, 704 F. Supp. 2d 460, 467 (W.D. Penn. 2010) ("It is undisputed that MediaSentry [the copyright holder's investigator] downloaded actual copies of nine of the Copyrighted Recordings from Defendant's computer, establishing unauthorized distribution as to those nine recordings."); *Thomas*, 579 F. Supp. 2d at 1216 ("The Court holds that distribution to MediaSentry can form the basis of an infringement claim."); *Howell*, 554 F. Supp. 2d at 985 (accepting that plaintiffs had proved actual distribution

of the copyrighted sound recordings that plaintiffs' agent had downloaded); *Interscope Records v. Leadbetter*, No. C05–1149, 2007 WL 1217705, at *4 (W.D. Wash. Apr. 23, 2007) (finding proof that MediaSentry downloaded copyrighted works was evidence of direct infringement).

Grande resorts to arguing that dissemination through BitTorrent cannot actually constitute infringement, "because BitTorrent operates by breaking a file up into small pieces for transmission, and any Internet user who may download an allegedly copyrighted work would only take a small portion of any allegedly infringing work from a particular Grande subscriber." Def. Mot. at 8. This argument has no support in the case law, as it disregards *Cox* and other decisions finding online dissemination through BitTorrent to be infringement. *See Cox Commc'ns, Inc.*, 199 F. Supp. 3d at 979; *Malibu Media, LLC v. Bui*, No. 1:13-cv-162, 2014 WL 12469955, at *1 (W.D. Mich. July 21, 2014) ("It makes no difference from a copyright perspective whether the infringing copy is created in a single wholesale file transfer using a peer-to-peer protocol; or in a swarm of fragmented transfers [using BitTorrent] that are eventually reassembled into the new infringing copy.").[8] It also disregards the bedrock legal principle that "it is enough if constituent parts of each work are similar; the plaintiff is not required to show the whole of the infringing work is similar to the whole of the copyrighted work." *Busti v. Platinum Studios, Inc.*, No. A-11-CA-1029-SS, 2013 WL 12121116, at *5 (W.D. Tex. Aug. 30, 2013); *see also Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983) ("[I]t is possible to infringe while copying only a part of a work…."); *Imperial Homes Corp. v. Lamont*, 458 F.2d 895, 899 (5th Cir. 1972) (holding infringement occurs when a work is copied in part). In any

---

[8] *See also Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (affirming grant of summary judgment to plaintiff where defendant uploaded material to BitTorrent); *Clear Skies Nevada, LLC v. Kainu*, No. 3:16-cv-811-AC, 2017 WL 4021121, at *8 (D. Or. Aug. 21, 2017), *report and recommendation adopted*, 2017 WL 4012960 (D. Or. Sept. 12, 2017) (granting summary judgment on liability because "the evidence makes clear [Defendant] copied protected elements of the Movie" using BitTorrent).

event, Grande's argument is beside the point: Rightscorp indisputably has obtained at least one complete infringing file of each of Plaintiffs' Copyrighted Recordings from a Grande subscriber, which plainly demonstrates that the subscribers are distributing Plaintiffs' Copyrighted Recordings in violation of copyright law. SUF ¶¶ 7-8.

### C. Plaintiffs' Evidence Conclusively Demonstrates That The Infringing Files Rightscorp Identifies Are Plaintiffs' Copyrighted Recordings.

The evidence shows that the audio files that Rightscorp downloaded from Grande subscribers include copies of each of Plaintiffs' Copyrighted Recordings, thus satisfying this element of a claim for infringement. *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999). Rightscorp has a multi-step process of confirming the identity of the files for which it monitors the internet. Rightscorp receives a list of copyrighted works (including artist and title information) from rights holders, obtains torrent files matching those named works, forensically scrubs these torrent files to confirm a digital match (discarding any file that does not match), manually checks the digital match results, and only then monitors BitTorrent networks for infringement of these files. Ex. I, Boswell Decl. ¶¶ 4-7; Ex. J., Sabec Deposition, 56:25-60:22, 103:17-106:14; Ex. H, Frederiksen-Cross Report ¶¶ 44, 47-55. Thus, Grande's unsupported claim that Rightscorp "makes no effort to authenticate or verify any information relating to the allegations of infringement contained in the notices it sends," Def. Mot. at 3, is contrary to the evidence.

Grande also ignores the second, wholly separate forensic confirmation process that the RIAA performed in this case on the sample files that Rightscorp downloaded from Grande subscribers. The RIAA independently compared those downloaded audio files with masters of Plaintiffs' Copyrighted Recordings using the Audible Magic digital fingerprinting technology. This exercise confirmed that every single one of Plaintiffs' Copyrighted Recordings in Exhibit A

to the Complaint has a matching file downloaded from a Grande subscriber—and in fact, for the great majority of Plaintiffs' works, Rightscorp obtained **multiple** whole infringing copies from Grande subscribers.  Ex. L, Landis Decl. ¶¶ 11-13 & Ex. 1.[9]  Numerous courts have recognized the use of the Audible Magic software as a proper method to match an infringing file with a copyrighted work.[10]  Thus, it is beyond argument that each of Plaintiffs' Copyrighted Recordings were directly infringed by a Grande user.

## II.  GRANDE IS LIABLE FOR CONTRIBUTORY INFRINGEMENT.

"A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another."  *Alcatel*, 166 F.3d at 790.  *See also Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 354 (5th Cir. 2011) (*quoting Alcatel*); *Joseph Paul Corp. v. Trademark Custom Homes, Inc.*, No. 3:16-cv-1651-L, 2016 WL 4944370, at *11 (N.D. Tex. Sept. 16, 2016).

Grande knew that its subscribers were infringing Plaintiffs' Copyrighted Recordings and materially contributed to their infringing conduct by choosing to continue providing the internet service that was indispensable for those subscribers' infringement.  This conduct makes Grande liable for secondary copyright infringement.

---

[9] As the Landis Declaration indicates, Plaintiffs have produced all of this evidence.  Moreover, Plaintiffs previously described this evidence to Grande.  Ex. GG, May 9-10, 2018 Correspondence ("Plaintiffs, RIAA, and Rightscorp have produced or will be producing responsive, non-privileged documents, namely, … **downloads of works infringed by Grande customers, [and] the files and data indicating a match between the downloaded works and Plaintiffs' Copyrighted Sound Recordings that are the works in suit.**") (emphasis added).

[10] *See e.g.*, *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1012 (9th Cir. 2013) ("Audible Magic's technology takes audio 'fingerprints' from video files and compares them to a database of copyrighted content provided by copyright holders."); *Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 12-cv-6646 AJN, 2015 WL 1402049, at *23 (S.D.N.Y. Mar. 25, 2015); *Arista Records LLC v. Myxer Inc.*, No. 08 Civ 03935 (GAF) (JCX), 2011 WL 11660773, at *5 (C.D. Cal. Apr. 1, 2011); *Arista Records LLC v. Lime Wire LLC*, No. 06 Civ. 05936 (KMW), 2010 WL 10031251, at *6 (S.D.N.Y. Aug. 9, 2010); *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1205–06 (C.D. Cal. 2007).

### A. Grande's Knowledge of Its Users' Infringement Far Exceeds the Knowledge Required to Establish Secondary Liability.

"The knowledge standard is an objective one; contributory infringement liability is imposed on persons who know or have reason to know of the direct infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010). *See also Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Variant Displays, Inc. v. Absolute Exhibits, Inc.*, No. SACV 15–01685–CJC(JCGx), 2016 WL 7486281, at *2 (C.D. Cal. Feb. 12, 2016) ("[T]he Ninth Circuit has interpreted the knowledge requirement for contributory copyright infringement to include both those with actual knowledge and those who have reason to know of direct infringement." (*citing Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004), and *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013)); *In re Aimster Copyright Litigation*, 334 F.3d 643, 650 (7th Cir. 2003) ("[I]n copyright law . . . indeed it may be enough that the defendant should have known of the direct infringement . . . .").[11]

Here, undisputed facts establish Grande's actual knowledge of the copyright infringement committed by its subscribers. Regardless, Plaintiffs need not establish actual knowledge. Grande's willful blindness to, or constructive knowledge of. the ongoing infringement is sufficient to make Grande liable.

#### 1. Actual Knowledge

Grande received more than 1.35 million notices of infringement from Rightscorp, providing detailed IP addresses, port numbers, time stamps, song titles, and other information. SUF ¶ 6. Grande's files reveal that it also received tens of thousands of notices from other companies as well. SUF ¶ 11. Such detailed notice of specific infringing material available on

---

[11] Plaintiffs recognize that the Fourth Circuit in *Cox* ruled that constructive knowledge does not suffice for contributory infringement, but that ruling is contrary to the weight of authority from other jurisdictions, *see supra*. Again, however, Plaintiffs's evidence also satisfies the Fourth Circuit's actual knowledge, or willful blindness standard. SUF ¶¶ 6-16.

its system demonstrates Grande's actual knowledge of infringement by its users as a matter of law.  As the district court found in *Cox*: "BMG asserts that Cox had knowledge of its users' infringing activity because Rightscorp sent Cox more than two million infringement notices pertaining to its copyrighted works.  ***Despite Cox's arguments to the contrary, DMCA-compliant notices are evidence of knowledge.***"  *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 671-72 (emphasis added).

In addition, Grande's internal discussion of these notices confirms Grande's actual knowledge of copyright infringement on its system:  "This is a notice that someone at that facility using the Grande provided data connection (GMAN), ***has illegally downloaded copyrighted content***."  Ex. N, PX 69 (emphasis added); *see also* Ex. O, PX 137, Ex. P, PX 140, Ex. Q, PX 169.  Grande's actual knowledge is further demonstrated by the fact that Grande maintained reports that tracked repeat infringers, cataloging their misconduct in "Excess Violations" reports.  SUF ¶ 12.

The very cases that Grande cites establish that Plaintiffs have satisfied the actual knowledge standard.  In *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, for example, the court relied on the Ninth Circuit's opinion in *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001), that, "if a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of and contributes to direct infringement."  591 F. Supp. 2d 1098, 1107 (N.D. Cal. 2008) (*quoting Napster*, 239 F.3d at 1021).

Similarly, in *Napster*, also cited by Grande, the Ninth Circuit upheld the district court's determination of actual knowledge based on notices Napster received from the RIAA alerting Napster to numerous copyrighted works available for download over Napster's system.  239 F.3d at 1020 n.5.  Here, Grande received more than 1.35 million notices detailing demonstrable

infringement by its subscribers, including 344,450 notices relating to Plaintiffs' Copyrighted Recordings. SUF ¶ 6. The notices Grande received, which provided the IP address, the infringing filename, and the date and time of infringement, *see* Ex. I, Boswell Decl. ¶ 11, Ex. H, Frederiksen-Cross Report ¶ 72-73, satisfy even the most demanding actual knowledge standard.

Grande's argument to the contrary relies entirely on its assertion that Rightscorp's notices are not evidence of infringement because supposedly they merely identify files being made available. As already discussed *supra*, this claim is both inaccurate and irrelevant. This is not a "making available" case: Plaintiffs have produced tens of thousands of complete downloads of their Copyrighted Recordings that Grande subscribers distributed. And Rightscorp's notices provide further direct evidence by describing in detail activity that constitutes infringement. They also provide conclusive circumstantial evidence that Grande subscribers were sharing audio files—which Rightscorp corroborated, by downloading audio files of Plaintiffs' Copyrighted Recordings from the very Grande subscribers about whom Rightscorp sent Grande the notices. SUF ¶ 17.

There is absolutely no evidence Grande viewed the Rightscorp notices as unreliable or insufficient to notify Grande of its subscribers' infringement. Indeed, Grande's actions and testimony prove that the opposite is true: Grande has relied on Rightscorp notices in the ordinary course of its business. Before this lawsuit, Grande forwarded Rightscorp notices to Grande subscribers identified as infringers. SUF ¶¶ 12-14. Then, after this lawsuit was filed, Grande terminated a small number of repeat infringers, including subscribers ***for whom it received Rightscorp notices***. SUF ¶¶ 17-18. Grande's Rule 30(b)(6) corporate representative and its general manager both confirmed that these customers were terminated not out of an "abundance of caution" (as Grande claimed in its litigation discovery responses), but because they were repeat infringers warranting termination base on Grande's assessment of the notices. SUF ¶ 19

("Q. So I'm asking, did Grande terminate the 12 infringers it's terminated since May 2017 under its DMCA policy and procedure? A. Yes. Q. And Grande did so because it determined the circumstances were appropriate to terminate them as repeat copyright infringers under its DMCA policy and procedure? A. Yes."  Ex. W, S. Christianson 30(b)(6) Dep., 35:2-13).  Rightscorp's notices provided Grande with actual knowledge, as Grande's reliance on these notices demonstrates.

### 2.   Willful Blindness

A defendant's willful blindness to infringement also satisfies the knowledge requirement for contributory infringement.  *See, e.g., In re Aimster Copyright Litig.*, 334 F.3d at 650 ("Willful blindness is knowledge, in copyright law as it is in the law generally.") (internal citations omitted); *Berg v. Symons*, 393 F. Supp. 2d 525, 539 (S.D. Tex. 2005) (*citing In re Aimster*); *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012); *EMI Christian Music Grp., Inc. v. MP3tunes*, LLC, 844 F.3d 79, 91 (2d Cir. 2016), *cert. denied sub nom. Robertson v. EMI Christian Music Grp., Inc.*, No. 16-1227, 2017 WL 1365643 (U.S. June 19, 2017) ("[A]t trial the plaintiffs could prevail by demonstrating that MP3tunes's failure to track users who created links to infringing content identified on takedown notices or who copied files from those links evidenced its willful blindness to the repeat infringing activity of its users."); *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 265 (9th Cir. 1996).  The cases Grande cites acknowledge as much.  *See Luvdarts*, 710 F.3d at 1073 ("Willful blindness of specific facts would establish knowledge for contributory liability.").

"A person is 'willfully blind' or engages in 'conscious avoidance' amounting to knowledge where the person was aware of a high probability of the fact in dispute and consciously avoided confirming that fact." *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 673.  From the outset of this case, Grande admitted that it consciously avoided confirming the infringement

information provided by Rightscorp, claiming in its Motion to Dismiss that "it is infeasible for Grande to devote the time and resources required to meaningfully investigate [these notices]." Dkt. 33 at 1.  Discovery has shown, however, that Grande's conscious avoidance was due not to infeasibility, but intransigence.  As noted above, Grande's own contemporaneous documents confirm it was well aware of the infringement occurring using its system, yet Grande decided not to terminate a single user from October 2010 until June 2017.  SUF ¶¶ 4-16.  And Grande's witnesses have admitted that if its current policy had been in place during that time period, it would have terminated repeat infringers based on the notices it received.  SUF ¶ 20.  In sum, Grande's observing subscribers' racking up infringement notices, and willfully refusing to act, is the essence of willful blindness.

### 3.  Constructive Knowledge

Even if Plaintiffs could not adequately show Grande's actual knowledge (which they can), Grande's constructive knowledge establishes its liability as well.  In the seminal case of *Gershwin Publ'g. Corp. v. Columbia Artists Mgmt., Inc.*, the Second Circuit made clear that a defendant may "be held liable as a 'contributory' infringer if it were shown to have had knowledge, or reason to know, of the infringing nature of the records."  443 F.2d 1159, 1162 (2d Cir. 1971).  Courts have since repeatedly reaffirmed *Gershwin*.  *See, e.g., Metropcs Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08–CV–1658–D, 2009 WL 3075205, at *15 (N.D. Tex. Sept. 25, 2009) (*quoting Alcatel*, 166 F.3d at 790 (*quoting Gershwin,* 443 F.2d at 1162)); *Variant Displays, Inc. v. Absolute Exhibits, Inc.*, 2016 WL 7486281, at *2 (C.D. Cal. Feb. 12, 2016) (*quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) ("the knowledge requirement for contributory copyright infringement [includes] both those with *actual knowledge* and those who *have reason to know* of direct infringement . . .") (emphasis in original); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990).

22

Here, more than 1.35 million Rightscorp notices containing specific information regarding the IP address, date, time, and work infringed undisputably provided Grande "reason to know" that widespread infringement was occurring by its subscribers over its service. Grande's own emails and testimony confirm the knowledge Grande acquired based on these notices.  SUF ¶¶ 4-16.  In fact, Grande's general manager admitted that Grande would kick these infringers off Grande's internet service under its new policy.  SUF ¶ 20.  Thus, Grande has not only admitted what it *should have known* from the Rightscorp notices, it has admitted what it *should have done* with them.  This goes well beyond constructive knowledge of infringement.

### B. An ISP That Provides the Facilities Used to Infringe Materially Contributes to the Infringement of Plaintiffs' Copyrighted Recordings, As Well-Settled Precedent Establishes.

"[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability."  *Fonovisa, Inc.*, 76 F.3d at 264.  In the context of computer system operators, courts hold that a service's enabling of infringement constitutes a material contribution to the infringement that is sufficient to establish secondary liability.  *See Napster,* 239 F.3d at 1021 ("[I]f a computer system operator learns of specific infringing material available on his system and fails to purge such material from the system, the operator knows of *and contributes to* direct infringement.") (emphasis added).

In *Cox*, the jury found the ISP defendant liable for contributory infringement based on the very same conduct at issue in this case—its users' direct infringement of copyrighted music on the ISP's network using BitTorrent.  199 F. Supp. 3d at 958.  BMG alleged, like Plaintiffs here, that Cox "ignored specific notices of infringing activity and continued to provide material support to its users' infringement of [Plaintiff's] works despite its ability to suspend or terminate customers with the push of a button."  *Id*.  The court left no doubt that such conduct gives rise to contributory liability.  "*There can be no question* that the provision of high-speed internet

service materially contributes to infringement via BitTorrent . . . ."  *Id* at 979.  As explained by Plaintiffs' expert Dr. McGarty—and unrebutted by Grande—Grande has knowingly and willfully provided high-speed internet service to users actively engaged in widespread and repeated infringement.  SUF ¶¶ 17-19; Ex. Z, McGarty Report ¶¶ 18, 54-59.  That conduct establishes Grande's material contribution as a matter of law.

### C. Grande's Claim that Contributory Liability Requires Intent and Inducement Badly Misreads *Grokster* and Is Inconsistent with Settled Precedent.

Grande tries in vain to invoke *Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.,* 545 U.S. 913 (2005) to rescue it from the consequences of its own contributory infringement liability. Grande's argument rests on the notion that *Grokster* fundamentally rewrote all of common law copyright infringement without acknowledging that it was doing so.  Nothing in the *Grokster* decision supports this illogical conclusion, and Grande cannot point to a ***single case*** (let alone a Fifth Circuit case) holding that *Grokster* eliminated the well-established liability for materially contributing to infringement.  Rather, courts have continued to apply material contribution liability since *Grokster*, and neither inducement nor intent is required.

### 1. *Grokster* Addressed Only The Inducement Theory of Contributory Liability; the Other Alternative Theories of Contributory Liability Remain Unaffected.

Grande incorrectly asserts that "neither *Grokster* nor any other Supreme Court case recognizes 'material contribution' as a separate and independent basis for contributory infringement liability."  Def. Mot. at 13.  This novel reading of the case law does not withstand scrutiny.  The U.S. Supreme Court in *Grokster* (1) noted that common law theories of secondary liability are well-established, (2) dealt only with an "inducement claim" as among "other theories of secondary liability," and (3) did not address those other theories.

*Grokster* concerned narrowing the bounds of immunity for the sale of devices into the stream of commerce established by the Supreme Court in *Sony Corp. of America v. Universal*

24

*City Studios, Inc.*, 464 U.S. 417 (1984).  The *Grokster* Court reversed the Ninth's Circuit's grant of immunity under *Sony*, based on the facts showing that the seller of the device had induced the infringement at issue.  *Grokster* was not a material contribution case: it was an inducement case. And the Supreme Court expressly limited the scope of its holding to inducement claims: "Because *Sony* did not displace ***other theories of secondary liability***, and because we find below that it was error to grant summary judgment to the [defendants] on MGM's ***inducement claim***, we do not revisit *Sony* further . . ."  *Id.* at 934 (emphasis added).

      *Grokster* cited *Gershwin*, in which the Second Circuit provided the black letter definition of contributory copyright infringement: "one who, with knowledge of the infringing activity, ***induces***, causes ***or materially contributes to*** the infringing conduct of another, may be held liable as a 'contributory' infringer." 443 F.2d at 1162.  The Supreme Court noted in *Grokster* that "these doctrines of secondary liability emerged from common law principles and are well established in the law."  545 U.S. at 930.  The Court then addressed the inducement prong, explaining that "[t]he rule on inducement of infringement as developed in the early cases is no different today" and requires "[e]vidence of active steps taken to encourage direct infringement . . ."  *Id.* at 936.  Nowhere did *Grokster* hold that inducement was now the ***only*** theory of contributory liability or that material contribution requires proof of inducement.  And Courts in the Fifth Circuit have continued to apply this well settled law of contributory liability.  "A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes ***or materially contributes to*** infringing conduct of another." *MDI, Inc. v. Lowder*, NO. SA-08-CA-900-FB, 2009 WL 10669793, at *3 (W.D. Tex. Aug. 13, 2009) (emphasis added), *report and recommendation adopted*, 2009 WL 10669899 (W.D. Tex. Sept. 3, 2009).  *See also Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 354 (5th Cir. 2011) (*quoting Alcatel*).

**2. Well-Settled Precedent—Including Cases Cited by Grande—Reject Exactly the Misreading of *Grokster* that Grande Advances Here.**

Grande does not point to a single holding that embraces its radical reinterpretation of the *Grokster* decision. Nor could it, because none exists. In fact, the very cases Grande cites actually reject Grande's argument, and instead confirm that the traditional theories of contributory liability remain the standard post-*Grokster*. *See BWP Media USA*, *Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7-*8 (S.D.N.Y. July 15, 2016) (citing *Grokster* and expressly distinguishing between "'materially contributing to the infringing conduct of another" and "inducing others to infringe copyrights."); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171, n. 11 (9th Cir. 2007) ("[T]he Supreme Court in Grokster ***did not suggest that a court must find inducement in order to impose contributory liability under common law principles.***") (emphasis added); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d at 796 (9th Cir. 2007) (reaffirming that *Grokster* "focused primarily on an 'inducement' theory" and holding that "[t]o state a claim of contributory infringement, Perfect 10 must allege facts showing that Defendants ***induce, cause, or materially contribute to*** the infringing conduct.") (emphasis added). Grande's reading of *Grokster* thus does not even survive a cursory review of the very cases Grande cites in its motion.

Perhaps most tellingly, the Second Circuit in *MP3tunes, LLC* recently cited *Gershwin* in restating the well-settled theories of contributory liability: "A contributory infringer is 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" 844 F.3d at 99–100 (citing *Gershwin*, 443 F.2d at 1162). The Supreme Court denied *certiorari* over that decision. In short, Grande's argument that *Grokster* overruled the Second Circuit's *Gershwin* decision and rewrote the law of contributory infringement cannot be squared with the Supreme Court's and Second Circuit's precedents.

26

### III.   THE EVIDENCE SHOWS THAT GRANDE'S INFRINGEMENT WAS WILLFUL.

In a single paragraph, Grande briefly argues that it is entitled to summary judgment on the issue of whether its infringement was willful.  Def. Mot. at 18.  The Court should reject this argument because the evidence establishes that Grande acted willfully.[12]  In *Graper v. Mid-Continent Cas. Co.* (a case that Grande cites), the Fifth Circuit held that willful infringement encompasses both intentional and reckless conduct, reasoning that where "willfulness is a statutory condition of civil liability, [it] cover[s] not only *knowing* violations of a standard, but reckless ones as well." 756 F.3d 388, 395 (5th Cir. 2014) (*citing Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 58 (2007) (modifications and emphasis in original)).  Here, there is abundant evidence that Grande acted intentionally, or at the very least recklessly.

- Grande has long known of infringement by its subscribers.  SUF ¶¶ 4-16.

- From October 2010 through the end of 2016, Grande made a conscious decision that, rather than terminate the repeat infringers, Grande would continue to provide them with internet service, thus providing material contribution to their infringement.  SUF ¶ 17.

- In internal emails, Grande personnel discussed the fact that Grande never terminated repeat infringing customers, no matter how many notices they received about a customer, and recognized that this would cause Grande to lose its safe harbor defense.  SUF ¶¶ 10-11, 22.

- Internal emails even indicate that Grande personnel contemplated deleting internal incriminating emails in the wake of the *Cox* verdict.  SUF ¶ 16.

- Grande profited greatly, by as much as $102.9 million, by continuing to provide internet service to known repeat infringing customers.  SUF ¶ 22.

Grande offers no evidence at all that its infringement was not willful.  Nor can it.  Indeed, the jury in *Cox*, on substantially similar facts, found that such infringement was willful.  199 F. Supp. 3d at 981.  The Court of Appeals expressly upheld the district court's willfulness jury

---

[12] A finding that Grande's infringement was willful authorizes an increase in a statutory damages award.  *See* 17 U.S.C. 504(c)(2).

charge, finding "contributorily (or vicariously) infringing with knowledge that one's subscribers are infringing is consistent with at least reckless disregard for the copyright holder's rights."  881 F.3d at 313.  The same evidence defeats Grande's summary judgment argument as to willful infringement.

## IV.    GRANDE'S DISCOVERY RULE ARGUMENTS ARE UNAVAILING.

Grande contends that the discovery rule does not expand the three-year period for damages in this case.  Def. Mot. at 18.[13]  But the case law is fatal to Grande's argument.  Grande cites *TIG Ins. Co. v. Aon Re, Inc.* to argue that Plaintiffs have not pleaded the discovery rule sufficiently.  Grande's reliance on that case is misplaced.  *TIG* specifically states that "the discovery rule need not be specifically pleaded in federal court."  521 F.3d 351, 357 (5th Cir. 2008).  And in *Frame v. City of Arlington*, which post-dates *TIG*, the Fifth Circuit made clear that "the statute of limitations is an affirmative defense that places the burden of proof on the party pleading it. Under federal pleading requirements, which we follow, a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations."  657 F.3d 215, 239–40 (5th Cir. 2011).

Here, Plaintiffs did not learn of Grande's infringement until January 2016, when Rightscorp first approached the RIAA with evidence of Grande subscribers' infringement.  Ex. GG, UMG Pls.' Resp. to Grande Interrog. No. 20; Ex. II, Declaration of Victoria Sheckler. Grande has failed to cite any facts to the contrary or that would otherwise support its contentions. Plaintiffs' claims and request for damages for the entire period of infringement are timely, and Grande is not entitled to summary judgment on this issue.

---

[13] Plaintiffs have evidence demonstrating conclusively that each of Plaintiffs' Copyrighted Recordings in Exhibit A was infringed in the three years preceding Plaintiffs' filing suit in April 2017.  Ex. I, Boswell Decl. ¶ 14.  Thus, while the discovery rule does apply here for the purpose of assessing damages, Plaintiffs can prevail on each of their claims without invoking the discovery rule.

## V.   GRANDE'S SUMMARY JUDGMENT ARGUMENTS REGARDING ACTUAL DAMAGES ARE MISPLACED; PLAINTIFFS HAVE SUBMITTED SIGNIFICANT EVIDENCE RAISING GENUINE ISSUES OF MATERIAL FACT.

Grande contends that Plaintiffs should be barred from seeking their lost profits as actual damages.  Def. Mot. at 19.  Plaintiffs previously have stated that they do not intend to seek as damages Plaintiffs' lost profits from the infringement (most recently at the August 16 hearing before Magistrate Judge Austin), so Grande's argument in that respect is moot.  Grande further contends that Plaintiffs should be barred from seeking Grande's profits as part of a damages award, claiming that there is no evidence of Grande's profits attributable to the infringement. Def. Mot. at 19.  That claim is false.  Plaintiffs have submitted expert reports analyzing and explaining that Grande has generated substantial profits attributable to the infringement of Plaintiffs' Copyrighted Recordings.  Ex. D, Lehr Expert Report ¶¶ 13, 42-43; Ex. K, Bardwell Expert Report, pp. 6, 22-23; Ex. AA, Rebuttal Expert Report of Dr. Robert Bardwell, pp. 3, 10. In particular, Dr. Lehr's report details the substantial value to Grande of keeping internet customers, rather than terminating them for repeat infringement, and estimates the lifetime per-subscriber value to Grande of such repeat infringer customers.  Ex. D, Lehr Expert Report ¶¶ 38-43. This evidence is more than sufficient to create a genuine dispute of material fact on this issue.  Grande is not entitled to summary judgment.

## VI.   PLAINTIFFS CONCLUSIVELY ESTABLISH THEIR OWNERSHIP OF OR EXCLUSIVE RIGHTS TO PLAINTIFFS' COPYRIGHTED RECORDINGS.

Finally, Grande argues that Plaintiffs cannot prove their ownership of some of the works in suit and that Grande is entitled to summary judgment as to these works "unless Plaintiffs can come forward with evidence that they own these copyrights."  Def. Mot. at 19.  Plaintiffs have in fact come forward with evidence that conclusively establishes their ownership of or exclusive rights to all of the works.  Plaintiffs are submitting with this motion declarations from executives

employed by each of the Plaintiffs that explain and identify the relevant evidence (including copyright certificates, contracts, and other corporate documents) establishing Plaintiffs' ownership of or exclusive rights to each of the works in suit.  Ex. A, McMullan Decl. (Universal Plaintiffs); Ex. B, Leak Decl. (Sony Plaintiffs); Ex. C, Poltorak Decl. (Warner Plaintiffs).  This evidence conclusively proves Plaintiffs' ownership or exclusive rights and is more than sufficient to carry Plaintiffs' burden of proof.  *See Sony BMG Music Entm't v. Cuellar*, No. CV CC-07-58, 2008 WL 11398942, at *1 (S.D. Tex. July 24, 2008) ("[P]laintiffs have provided sworn affidavits from their respective in-house counsels confirming that they are owners or licensees of valid copyrights.  Defendant has not provided evidence to contradict plaintiffs' sworn statements, and accordingly the Court finds no issue of fact regarding plaintiffs' ownership of the copyrights.");  *see also Warner Bros. Entm't v. X One X Prods.*, 644 F.3d 584, 592 (8th Cir. 2011).[14]

## CONCLUSION

Plaintiffs respectfully request that the Court (1) deny Grande's motion in its entirety, and (2) grant summary judgment to Plaintiffs on Grande's liability for contributory infringement.

---

[14] Grande is incorrect in claiming that Plaintiffs cannot recover for copyright infringement of individual works included on albums for which Plaintiffs own the copyrights.  Def. Mot. at 20 fn. 19.  "[W]hen a copyright holder or publisher issues material on an independent basis, the law permits a statutory damages award for each individual work."  *MP3tunes, LLC*, 844 F.3d at 101. Each of the Plaintiffs' three in-house declarants state that substantially all of Plaintiffs' respective Copyrighted Recordings are available individually online through services such as iTunes or Spotify.  Ex. A, McMullan Decl. (Universal Plaintiffs); Ex. B, Leak Decl. (Sony Plaintiffs); Ex. C, Poltorak Decl. (Warner Plaintiffs).

Dated: September 11, 2018                    Respectfully submitted,

    By: */s/ Robert B. Gilmore*

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

31

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 11, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Daniel C. Bitting
Daniel C. Bitting