## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 1:17-cv-00365-LY |
| | ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S MOTION TO STRIKE
## "REBUTTAL" EXPERT REPORT OF BARBARA FREDERIKSEN-CROSS

First, the Court's Scheduling Order does not authorize the parties to serve sur-rebuttal expert reports—*i.e.*, rebuttal reports in response to rebuttal reports.  Second, it is black-letter law that a party may not use a rebuttal expert to offer new analysis or new evidence in support of its affirmative case.  Third, Rule 37(c)(1) precludes a party from relying on evidence that was not properly disclosed or identified in discovery.  The Court should strike Plaintiffs' recently-served "rebuttal" report from Barbara Frederiksen-Cross because it is improper in all three respects.[1]

On July 27th, in support of their secondary copyright infringement claims against Grande, Plaintiffs served an opening expert report from Frederiksen-Cross concerning the Rightscorp system—specifically, its ability to detect copyright infringement by Grande's subscribers.[2]  *See* Expert Report of Barbara Frederiksen-Cross ("F-C Report") (Ex. 1).  On August 17th, Grande served a rebuttal expert report from Dr. Geoff Cohen on the same subject matter, addressing and responding to Frederiksen-Cross's analyses and opinions.  *See* Expert Report of Geoff Cohen, Ph.D ("Cohen Report") (Ex. 2).  Pursuant to the Court's Scheduling Order, this exchange of respective opening and rebuttal disclosures should have ended the expert report exchange.

On August 31st, however, Plaintiffs served another report from Frederiksen-Cross, styled as a rebuttal report.  *See* Rebuttal Expert Report of Barbara Frederiksen-Cross ("F-C Rebuttal Report") (Ex. 3).  Frederiksen-Cross's improper "sur-rebuttal" report seeks to correct various errors and omissions in her opening report, and it offers new opinions, new analysis, and new

---

[1] Counsel for the parties met and conferred about the relief requested in this Motion by teleconference on September 6, 2018, in a good-faith attempt to resolve the dispute without court intervention.  The parties were unable to reach an agreement because Plaintiffs maintain that they are entitled to serve the sur-rebuttal report at issue.

[2] Plaintiffs' claims are based on evidence generated by third-party Rightscorp's software system, which purports to monitor file-sharing activity through the BitTorrent protocol.  *See, e.g.*, Compl., ¶ 43 (ECF No. 1).

evidence—all of which could and should have been included in her opening report.  This includes evidence that was never properly identified or produced in discovery.

Neither Rule 26 nor the Scheduling Order permit Plaintiffs to use sur-rebuttal to re-do expert testimony offered in support of their affirmative case, or to effectively amend their discovery disclosures.  The Court should strike Frederiksen-Cross's improper sur-rebuttal report and preclude her from offering these opinions at trial.

### FACTUAL AND PROCEDURAL BACKGROUND

On July 27th, Plaintiffs served an expert report from Frederiksen-Cross, which seeks to demonstrate that Rightscorp's detection efforts are reliable evidence of direct copyright infringement by Grande's subscribers, and of Grande's knowledge of such infringement.  *See generally* F-C Report (Ex. 1).  Among other things, her report purports to disclose:

1) A technical analysis of how the Rightscorp system works, based on review of source code and other Rightscorp documents.  ¶¶ 43-86.

2) Testing of Rightscorp's system by Ms. Frederiksen-Cross's firm.  ¶¶ 87-99.

3) Opinions regarding Rightscorp's ability to accurately detect BitTorrent file-sharing of works at issue in this case, based on the foregoing analysis and testing.  ¶¶ 119-123.

4) Opinions regarding the sufficiency and accuracy of the data collected by the Rightscorp system, likewise based on the foregoing analysis and testing.  ¶¶ 124-125.

5) Opinions regarding Grande's ability to identify and terminate repeat copyright infringers based on information received from Rightscorp.  ¶¶ 100-102, 126-129.

6) Opinions regarding the sufficiency of Grande's policies and procedures for processing notices of alleged copyright infringement under the Digital Millennium Copyright Act ("DMCA").  ¶¶ 103-118, 130.

For categories 1-4, Frederiksen-Cross's report is essentially a cut-and-paste of her 2015 expert report in BMG's copyright infringement litigation against another ISP, Cox Communications

("*Cox*"3), in which BMG's claims were likewise based on evidence obtained from Rightscorp. *See generally* July 24, 2015 Frederiksen-Cross Report ("*Cox* Report") (Ex. 4).

On August 17th, Grande served a rebuttal report from its technical expert, Dr. Geoff Cohen. (Ex. 2). To rebut Frederiksen-Cross, Cohen conducted his own review and analysis of the Rightscorp system and the underlying source code. *Id.*, ¶¶ 53-85. Based on that analysis, Cohen identified numerous errors and omissions in Frederiksen-Cross's report. *Id.*, ¶¶ 86-108. Cohen also offered a series of opinions regarding Rightscorp's inability to accurately and reliably detect BitTorrent file-sharing (*id*., ¶¶ 109-135), the insufficiency of Rightscorp's notices of alleged copyright infringement (*id.*, ¶¶ 136-150), and how Rightscorp's failure to preserve certain documents and data prevents a complete assessment of its system and the purported evidence it generated (*id*., ¶¶ 151-171).

On August 31st, Plaintiffs responded with another report from Frederiksen-Cross, ostensibly to "rebut" Cohen's rebuttal. F-C Rebuttal Report (Ex. 3). As discussed in detail below, however, the obvious purpose of Frederiksen-Cross's sur-rebuttal report is to amend the opinions in her opening report to address the numerous errors and omissions identified by Cohen, and to offer new analysis and evidence not presented in her initial report.

**I. The Scheduling Order Does Not Authorize Sur-Rebuttal Expert Reports.**

The Court's Scheduling Order (ECF No. 66, ¶ 2) does not contemplate rebuttal reports in response to rebuttal reports. Otherwise, there would be no end to expert discovery. If Plaintiffs were entitled to rebut Grande's rebuttal, then Grande would be entitled to rebut Plaintiffs' sur-rebuttal, and so on and so on. *See, e.g.*, *D.G. ex rel. G v. Henry*, No. 4:08-cv-74, 2011 WL

---

[3] *BMG Rights Mgmt. (US) LLC, et al. v. Cox Communications, Inc., et al.*, No. 1:14-cv-01611 (E.D. Va.).

2881461, at *2 (N.D. Okla. July 15, 2011) ("Such a system would eviscerate the expert report requirements of Rule 26, would wreak havoc in docket control, and would amount to unlimited expert opinion presentation.").

Indeed, the Scheduling Order does not mention sur-rebuttal reports. ECF No. 66, ¶ 2. Instead, the Scheduling Order provides for three categories of expert reports: (1) Plaintiffs' expert reports in support of their affirmative case, due on a date certain, (2) Grande's expert reports in support of its affirmative case (*e.g.*, regarding an affirmative defense), likewise due on a date certain, and (3) rebuttal reports, due 30 days from receipt of the report to be rebutted. *Id.*

Plaintiffs contend that the Scheduling Order's provision regarding rebuttal reports authorizes sur-rebuttal reports. Judge Pitman has rejected this very argument. *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, No. 1:15-cv-134-RP, 2017 WL 9480314, at *2 (W.D. Tex. May 22, 2017) ("TPSA's characterization of its new report as a refutation of Wal-Mart's expert's rebuttal report simply underscores that the new report is not a supplement at all but in actuality an unauthorized 'sur-rebuttal report.' Both the Federal Rules and the amended scheduling order anticipate the need for parties to designate rebuttal experts and to serve rebuttal expert reports. However, neither authorizes a party to file a sur-rebuttal report. . . . . To avoid drowning in sur-rebuttal reports and so forth, courts must impose a limit."). "There is no right to sur-rebuttal" expert reports under Rule 26. *BCC Merchant Solutions, Inc. v. JetPay, LLC*, No. 3:12-cv-5185, 2016 WL 3264283, at *4 (N.D. Tex. Feb. 19, 2016) (citation omitted).

Even if Plaintiffs were to make an untimely request for leave, Plaintiffs could not demonstrate good cause for modifying the Scheduling Order to permit a sur-rebuttal report. *See* Fed. R. Civ. P. 16(b)(4). As discussed below, everything in Frederiksen-Cross's "rebuttal" report could have been included in her initial report. For the same reasons, permitting sur-

4

rebuttal would be grossly unfair and prejudicial to Grande. This would effectively permit Plaintiffs to re-do Frederiksen-Cross's opinions in response to Cohen's rebuttal, after Grande served Cohen's rebuttal in reliance on the opinions and evidence in Frederiksen-Cross's initial report, <u>and</u> in reliance on the evidence Plaintiffs properly identified and disclosed in discovery.[4]

Given the January 2019 trial setting, it is simply too late for the parties to engage in additional rounds of expert reports, with a corresponding delay in expert depositions and, potentially, *Daubert* motions. The Court should therefore strike Frederiksen-Cross's sur-rebuttal report pursuant to Paragraph 2 of the Scheduling Order.

## II. Frederiksen-Cross's "Rebuttal" Report Is Not Proper Rebuttal.

In addition to being unauthorized sur-rebuttal, Frederiksen-Cross's new report is also improper because it is not rebuttal at all. Instead, Frederiksen-Cross's new report is aimed at correcting errors and adding new analysis and evidence concerning issues <u>already addressed in her initial report</u>. This is the textbook definition of improper rebuttal.[5]

Proper expert rebuttal is limited "solely to contradict[ing] or rebut[ting] evidence on the same subject matter identified by another party" in its expert disclosures. Fed. R. Civ. P. 26(b)(2)(D)(ii). This means that a party cannot use rebuttal to offer opinions, analysis, or evidence that could have been included in the expert's first report:

---

[4] Plaintiffs' untimely submission of the Frederiksen-Cross sur-rebuttal report is only the most recent example of Plaintiffs' repeated practice of (1) failing to present sufficient evidence in support of their affirmative case, (2) learning the flaws in their evidence from Grande's responsive disclosures and defenses, and (3) thereafter attempting to backfill additional evidence into the case well after the disclosure deadlines, in an attempt to shore up their flawed claims.

[5] To be clear, there are isolated portions of Frederiksen-Cross's sur-rebuttal report that simply respond to certain of Cohen's criticisms, based on analysis or evidence disclosed in her initial report. A sur-rebuttal report is not necessary for Frederiksen-Cross to offer such responses, and therefore the improper aspects of her sur-rebuttal report warrant striking it in its entirety.

> <u>[I]f the testimony is offered only as additional support to an argument made in a party's case in chief, it cannot be considered rebuttal evidence</u>. In other words, a rebuttal report is one that contradicts or rebuts the arguments of the opposing party's experts, not one that contains entirely new analyses. *<u>Even more, the plaintiff who knows the defendant means to contest an issue that is germane to the prima facie case (as distinct from any affirmative defense) must put in his evidence on the issue as part of his case in chief</u>*. Thus, Plaintiffs do not have free reign to produce a rebuttal report containing additional analyses on the basis that this is the same subject matter of the initial reports.

*Bowman v. IBM Corp.*, No. 1:11-cv-593, 2013 WL 1857192, at *7 (S.D. Ind. May 2, 2013) (emphasis added) (quotations and citations omitted); *see also, e.g.*, *In re High-Tech Employee Antitrust Litig.*, No. 5:11-cv-2509, 2014 WL 1351040, at *12 (N.D. Cal. Apr. 4, 2014) ("Plaintiffs will not be allowed to 'sandbag' Defendants with new analyses that should have been included at the very least in Dr. Leamer's opening merits report."); *Oracle Am., Inc. v. Google Inc.*, No. 3:10-cv-3561, 2011 WL 5572835, at *3 (N.D. Cal. Nov. 15, 2011) (refusing to permit report with "new material that should have been placed in the opening report" in order "to forestall 'sandbagging' by a party with the burden of proof who wishes to save its best points for reply, when it will have the last word, a common litigation tactic").

As detailed below, Frederiksen-Cross's sur-rebuttal report contains four distinct categories of improper rebuttal, each of which represents subject matter she was obligated to disclose in her opening report. *See* Fed. R. Civ. P. 26(a)(2)(B)(i).

    A.    <u>Improper Bolstering of Initial Opinions with New "Evidence"</u>

In her initial report, Frederiksen-Cross opines that Rightscorp's notices of alleged infringement are accurate and reliable evidence of direct copyright infringement by Grande subscribers. *See* F-C Report, ¶¶ 119-125 (Ex. 1); *see also id.*, ¶¶ 43-99 (analysis and testing Rightscorp's system). In doing so, Frederiksen-Cross specifically discusses how Rightscorp "verifies" that allegedly infringing files are copies of copyrighted songs. *See id.*, ¶¶ 65-69, 122.

6

In sur-rebuttal, Frederiksen-Cross purports to offer new "evidence" to support these exact same opinions. Specifically, Frederiksen-Cross for the first time asserts that (1) Rightscorp has downloaded over 59,000 copies of Plaintiffs' works from Grande subscribers; (2) the "RIAA has independently verified that these files include copies of every recording at issue in this suit" by submitting files to third party Audible Magic, which has a software system for identifying music files; and (3) "the publishers provided a master copy of each work to Audible Magic, thereby ensuring that the works could be dispositively identified." F-C Rebuttal Report, ¶¶ 13, 21; *see also* ¶¶ 21, 27, 28, 32, 40. This is plainly improper rebuttal because it simply seeks to bolster Frederiksen-Cross's initial opinions with available evidence not cited in her opening report. *See* F-C Report, ¶¶ 119, 122 (Ex. 1).

It would be incredibly prejudicial to Grande to permit Frederiksen-Cross to make these assertions for the first time in a sur-rebuttal report. Frederiksen-Cross did not identify or cite any such evidence in her initial report. *See generally* F-C Report (Ex. 1). As a result, Cohen had no reason or opportunity to address or analyze this alleged evidence. As discussed in Section III below, none of this material was ever identified by Plaintiffs in discovery and, therefore, cannot be relied on pursuant to Rule 37(c)(1). In fact, <u>Frederiksen-Cross does not even identify or cite the underlying evidence in her sur-rebuttal report</u>. Instead, she simply makes bald assertions about these matters, unsupported by evidence. *See* F-C Rebuttal Report, ¶¶ 13, 21, 27, 28, 32, 40 (Ex. 3).

B.     <u>Purported "Amendments" to Initial Opinions</u>

Frederiksen-Cross's proposed "rebuttal" is also improper to the extent she expressly seeks to amend her initial report. In her initial report, Frederiksen-Cross asserts that Rightscorp collects evidence of infringement by particular BitTorrent users ("peers") through a process

7

called "SampleIt3," which she contends downloads allegedly infringing files <u>from a particular peer</u>.  F-C Report, ¶ 60 (Ex. 1).  In rebuttal, Cohen determined that, in fact, SampleIt3 downloads files from a collection of peers offering that file ("the swarm"), and does not even record which particular IP addresses or peers the pieces of the file are downloaded from.  Cohen Report, ¶¶ 74, 94-95 (Ex. 2).  In her sur-rebuttal report, Frederiksen-Cross characterizes her misstatement as "a typographical error" and purports to amend her opening report to correct it.  F-C Rebuttal Report, ¶ 38 (Ex. 3).

This assertion is not credible.  As Cohen notes, Frederiksen-Cross's representation of the Rightscorp system was the same one she presented years ago in *Cox.*  Cohen Report, ¶ 95 (Ex. 2).  Plaintiffs are not entitled to a "do over" after reading Dr. Cohen's rebuttal report.  *See United States v. 9.345 Acres of Land*, No. 3:11-cv-803, 2016 WL 5723665, at *4 (M.D. La. Sept. 30, 2016) ("[T]o the extent [opening and rebuttal opinions] are not consistent, it suggests that the party is trying to improperly use rebuttal to modify its case in chief and get a 'do over.'").

   C. <u>Correction of Errors Resulting from Cutting and Pasting</u>

Certain of Frederiksen-Cross's other "corrections"—again, inaccurately characterized as "rebuttal"—appear to stem from her decision to simply duplicate swaths of her 2015 *Cox* Report, without accounting for intervening changes in the facts.  For example, in her opening report, Frederiksen-Cross asserts that Rightscorp detects alleged infringements through a process called "Infringement Finder."  F-C Report, ¶ 56-59 (Ex. 1).  In fact, however, Rightscorp switched to a completely different implementation <u>in 2015</u>, made up of two separate processes called "Pocket" and "Memphis."  Cohen Report, ¶¶ 68, 97 (Ex. 2).  Frederiksen-Cross's sur-rebuttal now attempts to rewrite her opening report with new opinions and new exhibits that discuss Pocket and Memphis for the first time.  F-C Rebuttal Report, ¶¶ 39, 51, 65 & Exhibit D (Ex. 3).  Indeed,

Frederiksen-Cross admits that she did not review the source code for the Pocket and Memphis processes—effectively admitting that she did not review any post-2015 source code—until *after* receiving Cohen's report. *See id.*, ¶ 65. In short, it appears that Frederiksen-Cross relied entirely on her *Cox* opinions to author her opening report, and now that Cohen has pointed out the resulting inaccuracies, Plaintiffs want a "do over."[6] This is clearly improper.

### D. Improper Bolstering of Opinions Not Addressed by Cohen

Finally, Frederiksen-Cross attempts to improperly bolster her opening report with additional analysis and evidence on subjects that Cohen did not address, such as Grande's policies and procedures for terminating repeat copyright infringers.[7] F-C Rebuttal Report, ¶¶ 61-63 (Ex. 3). She acknowledges that Cohen "fails to comment on whether or when Grande implemented any termination policy," and then purports to offer additional discussion of evidence that was not—but could have been—cited in her opening report. *See id.* This is not "rebuttal" under any conceivable interpretation of the term.

## III. Frederiksen-Cross's "Rebuttal" Report Violates Rule 37(c)(1)

Frederiksen-Cross's attempt to introduce new "evidence" in sur-rebuttal is also prejudicial to Grande more broadly, and impermissible under Rule 37(c)(1), because Plaintiffs never identified or produced this alleged evidence in discovery. Grande served interrogatories

---

[6] *See also* F-C Rebuttal Report, ¶ 37 (responding to Cohen's determination that the website she claimed Rightscorp relies on for ingesting torrent data has not been operational since 2016), ¶ 40 (responding to Cohen's cited evidence that Rightscorp stopped using the Audible Magic service in 2015), ¶¶ 66-69 (responding to Cohen's identification of various shortcomings in Rightscorp's preservation of documents and information) (Ex. 3). Relatedly, Frederiksen-Cross repeatedly purports to update her original opinions with information allegedly obtained in "conversations" with Greg Boswell, a Rightscorp employee, who was plainly available when she prepared her initial report. *See id.*, ¶¶ 30, 32, 39.

[7] Grande did not offer expert testimony on these issues because they are not proper subjects of expert testimony. Moreover, neither Frederiksen-Cross nor Cohen has any relevant experience or qualifications to give expert testimony on these issues.

seeking the complete evidentiary basis of Plaintiffs' allegations that Grande subscribers committed acts of direct infringement, and Plaintiffs did not identify the evidence of downloaded music files or the RIAA's alleged "verification" efforts that Frederiksen-Cross references in her new report. *See supra* Section II.A; Sony's Plfs' Obj. & Resp. to 2nd Interrogs. at 1-8 (ECF No. 112-2).[8]  While Rightscorp (not Plaintiffs) did produce a collection of roughly 59,000 music files during fact discovery, Plaintiffs did not represent in their interrogatory answers that they intend to rely on these files, or on any evidence of further "verification" by the RIAA, to show direct infringement by Grande subscribers. *See id.*[9]  Furthermore, no evidence has ever been *produced*—let alone identified in Plaintiffs' interrogatory answers—that these files were downloaded from Grande subscribers.

Plaintiffs' attempt to introduce this "evidence" now, through unsupported assertions in a sur-rebuttal report, is either pure sandbagging or egregious neglect.  Either way, permitting such litigation tactics would be extremely prejudicial to Grande.  Grande reasonably and necessarily based its discovery and expert reports on the evidence Plaintiffs and Frederiksen-Cross actually identified as supporting Plaintiffs' claims. The Court should not permit Plaintiffs to amend their expert disclosures and discovery responses in the guise of sur-rebuttal.

## CONCLUSION

For the foregoing reasons, the Court should grant this Motion and strike the August 31, 2018 Rebuttal Expert Report of Barbara Frederiksen-Cross.

---

[8] The Sony Plaintiffs' interrogatory answers are substantively identical to those of the other Plaintiffs.

[9] The music files were produced with bates numbers RC-D_01350636-01410446, and are not identified in Plaintiffs' interrogatory answers or cited in either of Frederiksen-Cross's reports.

Dated:  September 14, 2018

By: /s/ Richard L. Brophy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
Texas State Bar No. 16584975
J.R. Johnson
Texas State Bar No. 24070000
Diana L. Nichols
Texas State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Telephone: 512.495.6429
Fax: 512.495.6401
Email: steve.ravel@kellyhart.com
         jr.johnson@kellyhart.com
         diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE
COMMUNICATIONS NETWORKS LLC

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 14, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy