**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 1:17-cv-00365 |
| | § | |
| GRANDE COMMUNICATIONS | § | |
| NETWORKS LLC and PATRIOT MEDIA | § | |
| CONSULTING, LLC, | § | |
| | § | |
| Defendants. | § | |
| | § | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GRANDE COMMUNICATIONS
NETWORKS LLC'S MOTION FOR SANCTIONS AND TO EXCLUDE DOCUMENTS**

## INTRODUCTION

Defendant Grande Communications Networks LLC's ("Grande") motion is a blatant attempt to avoid resolution of this case on the merits, and appears to be Grande's latest effort to justify a delay in the trial setting.  Grande crafts a false narrative to argue that this Court should exclude documents Plaintiffs produced as part of their duty to supplement their initial disclosures and discovery responses pursuant to Rule 26(e).  The parties are engaged in ongoing discovery and summary judgment briefing.  This motion should not be allowed to distract from those efforts.

*First*, Plaintiffs' production of ownership documents was not untimely.  Plaintiffs produced the overwhelming majority (nearly 1,400) of such documents months ago.  While preparing Plaintiffs' corporate representative witnesses to cover topics in Grande's Rule 30(b)(6) deposition notice related to Plaintiffs' ownership of the works in suit (which depositions have not yet occurred), and to submit declarations addressing this topic, Plaintiffs identified 173 additional documents that had not yet been produced.  These documents relate to a small number (at most, approximately 10%) of the sound recordings in Exhibit A to the Complaint (the "Copyrighted Recordings").  Consistent with their duty to supplement, Plaintiffs promptly produced the additional documents.

*Second*, the supplemental production has caused Grande no harm.  The documents relate to the utterly unremarkable fact that Plaintiffs—the three leading record companies in the world— own or control the exclusive rights to a small number of the Copyrighted Recordings identified in the Complaint.  Plaintiffs have agreed to designate corporate representatives to serve as Rule 30(b)(6) deponents on this topic.  Those depositions have not yet occurred, and the parties are discussing scheduling them in late September or October.  The documents were produced weeks in advance of those depositions.  Thus, Grande will have ample opportunity to review the documents before it takes those depositions.

Moreover, Plaintiffs have submitted declarations from each Plaintiff explaining the factual basis for their ownership or control of the exclusive rights to each work in suit. Those declarations provide Grande with a detailed roadmap to Plaintiffs' ownership of the works, which will further assist Grande's efforts to review the ownership documents that Plaintiffs have produced. In addition, the parties already agreed that each side could supplement its expert reports and summary judgment motions with additional evidence adduced after those reports were served or briefs were filed. Grande can therefore supplement its papers based on the additional ownership documents, if it chooses. Given that the trial in this matter is four months away, Grande can hardly complain that it lacks adequate time to prepare its case.

Against this background, there is no basis to exclude Plaintiffs' supplemental production of ownership documents. Grande's motion should be denied.

## FACTUAL BACKGROUND

Plaintiffs served their first production of documents on November 3, 2017. That production contained 1,106 documents related to Plaintiffs' ownership and control of the exclusive rights to the Copyrighted Recordings. Ex. A, Declaration of Robert B. Gilmore ¶ 2.

On January 3, 2018, the Court issued its Scheduling Order [Dkt. 66], which set the fact discovery deadline as March 23, 2018. The parties mutually agreed to extend that deadline several times. While Grande claims that it was "forced to repeatedly extend the fact discovery deadline to accommodate Plaintiffs' dilatory discovery practices," Mot. at 4, its narrative distorts the record. In reality, Grande itself dragged its feet for months both in providing discovery to Plaintiffs and in pursuing discovery. Plaintiffs will not rehash that history here, but respectfully direct the Court to Plaintiffs' Opposition to Grande's Motion for Continuance [Dkt. 81] for an extended discussion of the parties' discovery efforts to that point.

Regardless, the parties continued with fact discovery after March 23.  Both sides made multiple document productions.  Ex. A, Gilmore Decl. ¶ 4.  From April through June 2018, Plaintiffs produced an additional 291 documents related to ownership and control of the Copyrighted Recordings.  In total, through June 2018, Plaintiffs produced 1,397 documents on this topic.  *Id.* ¶ 5.  None of these documents is the subject of Grande's motion.

Although the parties agreed to extend discovery to July 6, 2018, significant discovery remained outstanding by that point.  Ex. A, Gilmore Decl. ¶ 6.  Therefore, the parties continued with discovery after that date.  *Id.*  This ongoing discovery has included, among other things:

- additional documents that Grande produced on August 3, 2018—after Plaintiffs had served their expert reports;

- discovery raised in multiple motions to compel and motions for protective orders, some of which the parties have agreed to provide or have been directed to meet and confer on further; and

- the depositions of both parties' fact and Rule 30(b)(6) witnesses, and of third parties.

*Id.* ¶ 7.  In particular, as noted above, Grande has not yet taken the Rule 30(b)(6) depositions of Plaintiffs related to the ownership and control of the exclusive rights in the Copyrighted Recordings.  The parties realized that those depositions might not occur until after the deadline for Grande to submit its expert reports, and that the discovery disputes raised by the pending motions to compel might not be resolved by that deadline either.  *Id.* ¶ 8; *see also* Dkt. 102.  Thus, as the parties' July discovery correspondence reflects, the parties contemplated that Grande would be able "to supplement its expert reports with any information obtained in discovery after Grande's expert report deadline."  Ex. A, Gilmore Decl. ¶ 9; Ex. B, July 2018 Email Correspondence, p. 1.

In the meantime, in July 2018, Plaintiffs began to prepare their corporate witnesses for their Rule 30(b)(6) depositions, which include the following topic: "The identity and ownership of all copyrights the [ ] Plaintiffs contend are infringed by Grande and/or Patriot."  Dkt. 103-1, pp. 8-9.

3

Ex. A, Gilmore Decl. ¶ 10.   During the course of that deposition preparation, and subsequent preparation of declarations in support of Plaintiffs' Opposition and Cross-Motion for Summary Judgment [Dkt. 172], Plaintiffs identified 173 additional documents that are the subject of Grande's motion.   *Id.* ¶¶ 11, 14.   Plaintiffs' first supplemental production occurred on August 10, 2018.[1]   *Id.*   Grande attempts to link that production to the timing of the report from Grande's expert, Jon Kemmerer, but the timing of the two events is coincidental.   In fact, Plaintiffs' counsel were unable to share the report with their clients until the morning of August 10, a few hours before Plaintiffs' production (because of Grande designated the entire report as AEO).   The Kemmerer Report did not lead to Plaintiffs' production of additional materials.   *Id.* ¶¶ 12-13.

The Court held oral argument on the parties' discovery motions on August 16, 2018, and has taken them under advisement.   Given that resolution of those motions impacts the scope and nature of the 30(b)(6) depositions, the parties have postponed the dates for those depositions, in order to avoid the need to take multiple depositions of the same witnesses on the same topics.   *Id.* ¶ 16.   The parties' fact discovery efforts still are ongoing.   On Friday, September 7, 2018, the parties held an extensive conference call to meet and confer on a variety of topics that remain open, including the production of documents and data and the scheduling of remaining depositions.   And on Thursday, September 13, 2018, counsel for Grande emailed Plaintiffs' counsel with dates for four additional Grande fact witnesses' depositions (one individual and three 30(b)(6) witnesses), the latest of which was offered on October 3, 2018.   *Id.* ¶ 17.

---

[1] Grande asserts that "there were no looming corporate depositions" (Mot. at 6), but that is not true, as Grande itself recognizes later on the same page of its brief, when it notes that "Plaintiffs cancelled the corporate deposition scheduled to take place two days later" (*id.*).

## ARGUMENT

**I.   PLAINTIFFS' SUPPLEMENTAL PRODUCTION OF DOCUMENTS WAS NOT UNTIMELY.**

Grande's motion fails first and foremost because its predicate is wrong: Plaintiffs' challenged production was not untimely.  Plaintiffs' production of documents was consistent with Rule 26(e)'s duty of supplementation:  "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e).  Supplemental disclosures are not late where both parties are participating in ongoing discovery, even after a scheduling order deadline. *See Knauff v. Dorel Juvenile Grp.*, No. CIV A 5:08CV00336-XR, 2009 WL 2408275, at *5 (W.D. Tex. Aug. 4, 2009).  Indeed, Rule 37(c) only applies where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e) …."  Fed. R. Civ. P. 37.

Here, as the foregoing factual background demonstrates, the parties are in the process of undertaking substantial additional fact discovery, by agreement.  Both sides have produced additional documents after the previously agreed deadline for fact discovery (July 6) and contemplate producing more; and both sides have additional fact depositions to complete.  Grande understood and agreed to this arrangement.  In particular, Grande's counsel acknowledged that the parties were proceeding with scheduling depositions, including of Plaintiffs' 30(b)(6) witnesses on ownership/control of the works in suit, after Grande would have served its expert reports.  Ex. A, Gilmore Decl. ¶¶ 8-9; Ex. B, July 9-12, 2018 Emails.  Thus, Grande knew that it (like Plaintiffs) would be receiving additional information bearing on the reports it served.  That is why the parties

agreed that they would be permitted to supplement their expert reports based on additional information produced in discovery.

## II.   THE TIMING OF PLAINTIFFS' SUPPLEMENTAL PRODUCTION WAS HARMLESS, AND THUS RULE 37(C) SANCTIONS ARE NOT WARRANTED.

Even if Plaintiffs' supplemental production of 173 ownership-related documents were somehow deemed late (which it should not be for the reasons discussed above), the relevant case law, the procedural posture, and the factual background, confirm that there is no basis to exclude this evidence, because the timing of the supplemental production was harmless.

As the Fifth Circuit held in *Caskey v. Man Roland, Inc.*—which Grande itself cites—"[w]here the failure to disclose relevant evidence is harmless, exclusion is not required by the federal rules[.]" 83 F.3d 418, 1996 WL 197370, at *3 (5th Cir. 1996) (unpub'd).[2] "In evaluating whether a violation of Rule 26 is harmless, and thus whether the district court was within its discretion in allowing the evidence to be used at trial, we look to four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." *Texas A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003).  In addition, Grande is incorrect that the exclusion of evidence is mandatory.  *See* Mot. at 7.  Nothing requires the court to impose a sanction, and Rule 37(c) expressly states that "in addition to or instead of this sanction" the Court may order different remedies.  Fed. R. Civ. P. 37(c); *Texas A&M Research Found.*, 338 F.3d at 402.

---

[2] Because *Caskey* was unpublished, it was improper for Grande to cite.  Plaintiffs only cite the case because Grande mischaracterizes the decision.  Grande cites the *dissent* in *Caskey* in claiming the Fifth Circuit "[found] the district court's failure to apply sanctions under Rule 37(c)(1) to be an abuse of discretion[.]"  Mot. at 8.  The Court of Appeals actually held the opposite: "Concluding that the failure to disclose the videotape was harmless, we hold that any error in admitting the videotape was harmless as well."  *Caskey*, 83 F.3d 418, 1996 WL 197370, at *4.

Applying this framework here confirms that there is no basis to exclude the evidence.

***The importance of the evidence***.  "Preclusion is a harsh remedy that should only be imposed in rare situations[.]"  *Martin v. Winn-Dixie Louisiana, Inc.,* 132 F. Supp. 3d 794, 808–09 (M.D. La. 2015) (collecting cases and finding that exclusion was unwarranted) (internal quotations and citations omitted).  As this Court has recognized, federal courts have a "strong preference for resolving disputes on the merits when possible, instead of determining the outcome solely on technical or procedural grounds[.]"  *Edison Watson LLC v. Impossible Ventures, LLC*, No. A-14-CV-325-LY, 2015 WL 11601019, at *2 (W.D. Tex. Nov. 5, 2015) (Austin, J.) (late-produced documents that were potentially claim-determinative would not be excluded).

Here, Plaintiffs bear the burden of establishing their ownership of or the exclusive right to control the Copyrighted Recordings.  The documents that Grande seeks to exclude bear on that issue with respect to approximately 10% of the Copyrighted Recordings.  As set forth in the declarations of Plaintiffs' witnesses attached as exhibits A-C to Plaintiffs' Opposition and Cross-Motion for Summary Judgment, the documents help to establish Plaintiffs' ownership of the works to which they pertain.  The documents will promote the efficient resolution of the issue of ownership—they represent the most straightforward way to establish that Plaintiffs own or control the exclusive rights to the pertinent Copyrighted Recordings.  This case, at its core, is not a dispute over whether Plaintiffs own the sound recordings at issue, but rather about Grande's infringement of such recordings.  Plaintiffs submit that the issue of ownership can be resolved before trial (either on summary judgment or by stipulation), which would avoid the need for time-consuming witness testimony about the ownership of more than 1,500 works.  Exclusion of the documents would result in a much less efficient process with respect to the works related to the documents.  It would force Plaintiffs to rely on witness testimony or other evidence, and could lead to prolonged litigation and jury confusion on an issue that should be resolved pre-trial.

*Grande will not be prejudiced*.  The 173 supplemental documents relate to ownership of a minority of the works in suit.  The documents have been produced weeks before Grande will depose Plaintiffs' witnesses about ownership issues (as noted above, those depositions have not yet been scheduled).  Grande has ample opportunity to review the documents in advance of the depositions, and Grande will have the benefit of Plaintiffs' detailed declarations on ownership as a roadmap to how the documents demonstrate ownership.  *Texas A&M Research Found.*, 338 F.3d at 402 (holding that failure to disclose, even while unexplained, was harmless, because the receiving party had significant time "to examine and respond to the contested evidence").

Grande complains that the documents were produced after Grande submitted its expert report from Jon Kemmerer, who opined on the issue of ownership, among other topics.  As an initial matter, Plaintiffs' ownership of the works in suit is a question of fact, not of opinion, and Mr. Kemmerer has no evident expertise in questions of copyright ownership.  Plaintiffs have not yet deposed Mr. Kemmerer, but it appears he did nothing more than review contracts as a layperson and claim to have divined their meaning.  That is not proper expert testimony.[3]  The timing of Plaintiffs' supplemental production is therefore immaterial to Mr. Kemmerer's report—earlier production would not have made his opinions any more reliable or admissible.  Regardless, as discussed above, Grande always knew that it would be receiving additional discovery after it submitted its expert report and after it filed its (early) summary judgment motion, including specifically testimony from Plaintiffs' 30(b)(6) witnesses on ownership and control; and Grande affirmatively stated that it reserved the right to supplement.  *See supra* Factual Background.  Mr. Kemmerer and Grande will have the opportunity to review the supplemental documents and supplement Mr. Kemmerer's expert report and Grande's summary judgment motion accordingly.

---

[3] In addition to his lack of expertise, Mr. Kemmerer's purported ownership "analysis" is riddled with errors even as to the materials he reviewed.

Grande also claims that "it has devoted significant resources and hundreds of hours of attorney time to investigating ownership of the copyrights in suit." Mot. at 11. But that is not a claim of prejudice related to the supplemental production. Grande reviewed Plaintiffs' prior productions. It can now review the supplemental productions. Grande suggests that its prior ownership analysis would be "undone," but offers no support for that statement, and it almost certainly is not true. The supplemental documents pertain only to approximately 10% of the works in suit. The great majority of the works—and of Grande's analysis of their ownership—are unaffected by the supplemental documents. Indeed, Mr. Kemmerer has no challenge to more than two-thirds of Plaintiffs' works. Kemmerer Report Appendix D [Dkt. 147-7].

The cases that Grande cites do not support its argument. In *Red Dot Bldgs. v. Jacobs Tech., Inc.*, the court excluded an entirely new expert report that was sprung on the opposing party at the deposition of the expert. 2012 WL 2061904, at *2 (E.D. La. June 7, 2012). In *Promethean Insulation Tech. LLC v. Sealed Air Corp.*, the case was "on the eve of trial" and the party seeking exclusion no longer had an ability to test the late-produced evidence through depositions or other discovery. 2015 WL 11027038, * 2 (E.D. Tex. Oct. 13, 2015). In *Godo Kaisha IP Bridge 1 v. Broadcom Limited*, the court struck the defendant's expert's opinions that relied on undisclosed evidence in support of an entirely new assertion concerning infringement, and the plaintiff had already deposed all of the witnesses whom it could have questioned about the undisclosed evidence. 2017 WL 2869344, at **1, 3 (E.D. Tex. Apr. 20, 2017). Here, by contrast, Plaintiffs have always asserted their ownership of the works in question; the supplemental documents are additional support for those assertions; and Grande will have the opportunity to ask Plaintiffs' witnesses about the documents at deposition, and to present any challenge to Plaintiffs' ownership after review of the documents and Plaintiffs' declarations on ownership. *Edison Watson LLC*, 2015 WL 11601019, at *4 (no prejudice where receiving party had time to assess new documents).

9

*There is no need for a continuance*.  Grande cannot plausibly claim that it suffers from a lack of time to prepare its defense.  Plaintiffs already have agreed that Grande can supplement its expert report and summary judgment filing and the trial setting is months away.  *See Baker v. Canadian Nat'l/Ill. Cent. R.R.*, 536 F.3d 357, 368-69 (5th Cir. 2008) (holding that evidence disclosed months before trial was not prejudicial such that exclusion of the evidence is warranted).  Indeed, Plaintiffs expect that the supplemental production will help expedite trial preparation and narrow the issues for trial.  Prior to the supplemental production of ownership documents, Grande (through Mr. Kemmerer's report) challenged Plaintiffs' ownership of less than one-third of Plaintiffs' Copyrighted Recordings.  The supplemental documents will establish Plaintiffs' ownership of those works (through summary judgment or stipulation) in advance of trial.

*There is no willful misconduct or bad faith*.  "The Fifth Circuit has noted that sanctions under Rule 37 are 'predicated upon the presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence.'"  *Morin v. Chevron U.S.A. Inc.*, No. CIV.A. 11-45, 2012 WL 2116368, *7 (E.D. La. June 11, 2012) (quoting *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858, 860 (5th Cir. 1970)).  "[C]ourts have been reluctant to employ Rule 37(c)(1)'s exclusionary sanction when it practically amount[s] to dismissal of a claim and in the absence of [a] finding that ... noncompliance involved willfulness, fault, or bad faith, and without considering the availability of lesser sanction."  *Martin*, 132 F. Supp. at 808–09.  None of those factors is present here.  In good faith, Plaintiffs produced the majority of ownership documents many months ago, and Plaintiffs produced the supplemental ownership documents promptly after identifying them.  This case does not present the kind of bad faith conduct that would warrant the drastic result of excluding evidence.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Grande's motion.

Dated: September 14, 2018          Respectfully submitted,

By:  */s/ Robert B. Gilmore*
Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on September 14, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting

12