IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § § Plaintiffs, § § vs. § § GRANDE COMMUNICATIONS § NETWORKS LLC, § § Defendant. § § § | Civil Action No. 1:17-cv-00365-LY |

### PLAINTIFFS AND NON-PARTY RIGHTSCORP, INC.'S UNOPPOSED SUPPLEMENTAL MOTION FOR LEAVE TO FILE UNDER SEAL

#### INTRODUCTION

Pursuant to the Court's September 21, 2018 Order [Dkt. 186], Plaintiffs and non-party Rightscorp Inc. ("Rightscorp") move the Court for leave to maintain under seal certain information that Plaintiffs and Rightscorp previously marked as Confidential or Attorneys' Eyes Only ("AEO") and that were attached as exhibits to the parties' previously-filed motions. This motion is not a wholesale request to keep large swaths of information under seal. Instead, Plaintiffs and Rightscorp have narrowly tailored this motion to information that is highly confidential and proprietary, and the disclosure of which would cause Plaintiffs and Rightscorp competitive and financial harm. Each of the Plaintiffs and Rightscorp is a submitting declaration in support of this motion. *See* Declarations of Alasdair McMullan (on behalf of the Universal Music Group Plaintiffs) (Exhibit A) ("McMullan Decl."); Wade Leak (on behalf of the Sony Music Entertainment Plaintiffs) (Exhibit B) ("Leak Decl."); Steven Poltorak (on behalf of the Warner Music Group Plaintiffs) (Exhibit C) ("Poltorak Decl."); and Gregory Boswell (on behalf of Rightscorp) (Exhibit D) ("Boswell Decl."). The declarations provide detailed explanations about

the confidential and commercially sensitive nature of the documents and the need to maintain them under seal. The specific documents that Plaintiffs and Rightscorp ask to keep sealed are identified in Appendix 1 to this motion and are discussed in the declarations. These documents include numerous confidential agreements that establish Plaintiffs' ownership of the copyrighted recordings at issue in this case, and expert reports that contain technical information relating to Rightscorp's system. As set forth below, the information meets the definition of Confidential – Attorneys' Eyes Only in the Protective Order. In the event that the Court disagrees with Plaintiffs' and Rightcorp's request with respect to any of the documents that are the subject of this motion, however, Plaintiffs and Rightscorp respectfully request that they be allowed the opportunity to consider withdrawing the documents and testimony from the docket rather than have them exposed publicly.[1]

## LEGAL STANDARDS

### A. Confidentiality

This Court's Stipulated Protective Order defines as "Confidential" the following information:

> Information and documents that may be designated as Confidential Information include, but are not limited to, trade secrets, confidential or proprietary financial information, operational data, business plans, and competitive analyses, personnel files, personal information that is protected by law, and other sensitive information that, if not restricted as set forth in this order, may subject the producing or disclosing person to competitive or financial injury or potential legal liability to third parties.

---

[1] Most of the documents that Plaintiffs previously filed under seal were documents that Grande marked as Confidential or AEO. Plaintiffs filed those documents under seal pursuant to the terms of the Protective Order. Those documents are of course not the subject of this motion, which relates only to Plaintiffs' and Rightscorp's documents and expert reports. In addition, mindful of the Court's directives regarding confidentiality, *see* Order at 2-3 [Dkt. 186], Plaintiffs are no longer seeking to seal some of the documents that Plaintiffs previously marked as Confidential or AEO.

Stipulated Protective Order [Dkt. 41] ¶ 4.  The Stipulated Protective Order defines "Attorneys' Eyes Only" information as follows:

> Attorneys' Eyes Only Information. The designation Attorneys' Eyes Only Information shall be reserved for information that is believed to be unknown to the opposing party or parties, or any of the employees of a corporate party. For purposes of this order, so-designated information includes, but is not limited to, product formula information, design information, nonpublic financial information, pricing information, customer identification data, and certain study methodologies.

*Id.*

### B. Sealing

Rule 26(c)(1) provides that for good cause, the Court may issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way[.]"  Fed. R. Civ. P. 26(c)(1)(G).  Furthermore, while the Supreme Court has recognized a qualified right of the public to access judicial records, "the right to inspect and copy judicial records is not absolute."  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  To determine whether to disclose or to seal a judicial record, the Court must balance the public's common law right of access against interests favoring non-disclosure. *See S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir. 1993).  "The law, however, gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information, including, but not limited to, trade secrets or other confidential research, development, or commercial information."  *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1211 (9th Cir. 2002).

Accordingly, numerous courts have held that information can be filed under seal when supported by evidentiary showings from the moving party as to (1) the confidential and proprietary nature of business and financial information sought to be sealed, and (2) the injury the movant would suffer from disclosure, notwithstanding the public's common law right of access to judicial

records. *See, e.g., Nicolosi Distrib., Inc. v. Finishmaster, Inc.*, No. 18-CV-03587-BLF, 2018 WL 3932554; *Supernus Pharm., Inc. v. TWi Pharm., Inc.,* No. CV 15-0369 (RMB/JS), 2017 WL 3671522, at *2 (D.N.J. Aug. 24, 2017); *Benedict v. Hewlett-Packard Co*. No. 13-CV-00119-BLF, 2016 WL 3568922, at *3 (N.D. Cal. July 1, 2016); *United States v. Approximately up to $15,253,826 in Funds Contained in Thirteen Bank Accounts*, 844 F. Supp. 2d 1218, 1220 (D. Utah 2012); *Cardiac Pacemakers, Inc. v. Aspen II Holding Co.*, No. CIV 04-4048 DWF/FLN, 2006 WL 3079410, at *5 (D. Minn. Oct. 24, 2006).

## ARGUMENT

As set forth below, Plaintiffs and Rightscorp have presented evidence and argument that establishes that the documents that are the subject of this motion meet the Protective Order's definition of Confidential – Attorneys' Eyes Only, and the documents should remain under seal.

**A.   Contracts And Related Documentation Between Plaintiffs And Other Counterparties (Such As Artists, Production Companies, And Foreign Affiliates Of Plaintiffs) Contain Commercially Sensitive Information Such As Pricing, Licensing And Other Terms That Are Confidential And Proprietary.**

Most of the documents that Plaintiffs request stay under seal are Plaintiffs' contracts with artists, contracts related to corporate transactions, and related documentation evidencing Plaintiffs' ownership and/or control of the copyrighted recordings at issue in the case. McMullan Decl. ¶¶ 4, 6, 7, 10, 15, 16; Leak Decl. ¶¶ 3, 5, 8, 13; Poltorak Decl. ¶¶ 4, 6, 9, 10. "Courts regularly find that litigants may file under seal contracts with third parties that contain proprietary and confidential business information." *Finisar Corp.*, 2015 WL 3988132, at *5 (citing cases). *See also Nicolosi Distrib., Inc.*, 2018 WL 3932554, at *3.

These contracts are "among the most highly confidential and competitively sensitive documents" in Plaintiffs' files. McMullan Decl. ¶ 8; Leak Decl. ¶ 6; Poltorak Decl. ¶ 7. As explained in greater detail in the declarations, the contracts contain numerous sensitive financial

and business terms, including the amounts of advances and royalties to be paid, the way in which royalties will be calculated, and marketing commitments, among other terms. The terms of these agreements are proprietary, not available to the public, commercially sensitive, and/or subject to express confidentiality obligations in agreements with third parties. McMullan Decl. ¶¶ 8, 9; Leak Decl. ¶¶ 6, 7; Poltorak Decl. ¶¶ 7, 8. In fact, given the competitive sensitivity of the contracts, the three Plaintiff groups (UMG, SME, and WMG) are vigilant about not sharing these contracts with each other.

The terms of artist agreements are intensely negotiated on a case by case basis, and the terms of the agreements vary from one artist to the next. The disclosure of the artist contracts would place Plaintiffs in a "severe competitive disadvantage and cause us financial harm in relation to our competitors, who could try to use the information to their advantage in competing to sign and retain artists." McMullan Decl. ¶ 9; *see also* Leak Decl. ¶ 7; Poltorak Decl. ¶ 8. In addition, such disclosure would jeopardize Plaintiffs' relationships with artists, who are essential business partners for record companies. McMullan Decl. ¶ 9; Leak Decl. ¶ 7; Poltorak Decl. ¶ 8. If Plaintiffs' artist agreements and the other agreements that are the subject of this motion were disclosed, it would give counterparties unfair advantages in negotiating against Plaintiffs as to licensing, pricing, and other important business terms, because it would give them insight into how Plaintiffs structure and value their licensing. McMullan Decl. ¶¶ 9, 12, 18; Leak Decl. ¶¶ 7, 10, 14; Poltorak Decl. ¶¶ 8, 11.

In addition to artist contracts, Plaintiffs are seeking to maintain under seal intercompany licensing agreements and various merger & acquisition agreements they likewise filed to demonstrate ownership and/or control of the copyrighted recordings at issue in the case. The intercompany license agreements are highly confidential, and the disclosure of their terms would

allow Plaintiffs' competitors, non-affiliated licensees, and artists, to assess how Plaintiffs internally structure and value their internal licensing, and to use that information to their financial advantage in their negotiations with the Plaintiffs. McMullan Decl. ¶ 12; Leak Decl. ¶ 10. Plaintiffs maintain these agreements as strictly confidential in the ordinary course of business. McMullan Decl. ¶ 13; Leak Decl. ¶ 11. Similarly, the public disclosure of the merger & acquisition agreements would also cause harm to Plaintiffs, as it would reveal to competitors and counterparties how the Plaintiffs and/or their contractual counterparties price and structure their transactions. McMullan Decl. ¶ 18; Leak Decl. ¶ 14; Poltorak Decl. ¶ 11.

Plaintiffs include confidentiality requirements in the contracts, do not disclose them to third parties, and permit the disclosure of the contracts in litigation only where there is a protective order in place. McMullan Decl. ¶¶ 8, 9, 13, 14, 17, 19; Leak Decl. ¶¶ 6, 7, 11, 12, 15; Poltorak Decl. ¶¶ 7, 8, 11, 12.

Maintaining the artist, intercompany licensing, and mergers & acquisitions agreements under seal will not interfere with public access to information that is at the heart of this case. The documents provide evidentiary support for the necessary but routine exercise of establishing that the record companies own or control the exclusive rights to the copyrighted sound recordings at issue. The documents establish the chain of title for each copyrighted work. But the confidential and proprietary information contained in the documents is not the fact of Plaintiffs' exclusive rights; rather, the confidential and proprietary information in the documents relates to issues such as the financial and other contractual terms of contracts between Plaintiffs and artists, which happen to be contained in the chain of title documents. Such information is tangential, if not entirely irrelevant, to the core issue in this case about whether Grande and its subscribers infringed Plaintiffs' copyrighted works.

Moreover, Plaintiffs anticipate that the issue of their ownership or control of the copyrighted recordings will be resolved pre-trial, either through motions practice or stipulations. That approach is standard practice in many infringement cases, as it avoids the need for lengthy testimony about the chain of title for each of hundreds (in this case, 1,583) of copyrighted works. Assuming that efficient practice is followed in this case, there will be no need to introduce the confidential and proprietary information in open court, and maintaining the documents under seal will not interfere with the public conduct of the trial.

### B. Technical Information Relating To Rightscorp's System Reflects Trade Secret And Other Confidential Information Warranting Sealing.

Rightscorp asks the Court to maintain under seal certain of Rightscorp's trade secret and other confidential information. Software code is recognized as confidential technical information that justifies being kept under seal in litigation. *See, e.g., Karl Storz Endoscopy-Am., Inc. v. Stryker Corp.*, No. 14-CV-00876-RS (JSC), 2016 WL 3129215, at *16 (N.D. Cal. June 2, 2016). The expert report and rebuttal expert report of Barbara Frederiksen-Cross, and the expert report of Geoff Cohen, contain specific details concerning the software code and operation of Rightscorp's system for detecting online infringement of sound recordings through the use of the BitTorrent file sharing protocol. These details reflect trade secrets and highly confidential information. Boswell Decl. ¶ 4. Rightscorp does not reveal this information publicly, but rather takes steps to protect the information through confidentiality agreements, designating the information as confidential and proprietary, and ensuring that business counterparts and employees do not disclose or misuse the information. *Id.* ¶ 5. Rightscorp is particularly careful to protect its software code itself, as evident by the very deliberate and exacting confidentiality measures it insisted upon when making the code available for inspection by the parties' experts in this case. *Id.* ¶ 6.

If this information were revealed publicly, Rightscorp would face the prospect of serious competitive or financial harm. *Id.* ¶ 7. Competitors would be able to use the information to improve their own competing software systems. *Id.* Internet service providers and users of BitTorrent would be able to use the information to attempt to thwart or circumvent Rightscorp's infringement monitoring capabilities. *Id.* Accordingly, the Frederiksen-Cross and Cohen expert reports appropriately are marked as Confidential – Attorneys' Eyes Only.

The technical details of the Rightscorp system warrant sealing. That system's operation is described in general terms in the parties' publicly-filed pleadings as well as in the declarations of Rightscorp personnel. Therefore, the public has sufficient access to information about the Rightscorp system to satisfy the general public policy interest in making available records of judicial proceedings. But the public has no legitimate need to have access to the more detailed—and highly confidential and proprietary—aspects of Rightscorp's systems referenced in the expert reports of Frederiksen-Cross and Cohen. Plaintiffs do not anticipate that the Rightscorp witnesses, or Frederiksen-Cross, will testify as to such details during trial, and submit that there is no legitimate need for Grande's expert to do so either. Thus, sealing the specific technical details of the Rightscorp system will not impede the conduct of the trial.

## CONCLUSION

For the foregoing reasons, Plaintiffs and Rightscorp respectfully request that the Court maintain under seal the previously-filed exhibits identified in Appendix 1 to this motion and addressed in the supporting declarations attached hereto. In the event that the Court decides not to seal any of these exhibits, Plaintiffs and Rightscorp respectfully request the opportunity to withdraw any such exhibits prior to the Court's unsealing the exhibits.

Dated: September 28, 2018

Respectfully submitted,

By: */s/ Robert B. Gilmore*

Pat A. Cipollone, P.C. (admitted *pro hac vice*)
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato &
   Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
pcipollone@steinmitchell.com
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs and Non-party Rightscorp*

## CERTIFICATE OF CONFERENCE

I certify that counsel for Plaintiffs and Rightscorp, Robert Gilmore, conferred with counsel for Grande regarding the foregoing Supplemental Motion to Seal Certain Exhibits. Grande's counsel confirmed that their client does not oppose the requested relief.

By: */s/ Robert B. Gilmore*
Robert B. Gilmore

### APPENDIX 1: EXHIBITS THAT PLAINTIFFS REQUEST BE MAINTAINED UNDER SEAL

| Description | Dkt. No(s). |
|---|---|
| Expert Report of Barbara Frederiksen-Cross | 130-1 (Sealed Document Ex. 1)<br>141-1 (Sealed Document Exhibit 1)<br>173-78 (Sealed Document Ex. H)<br>177-1 (Sealed Document) |
| Compilation of Plaintiffs' Ownership Documents | 158-2 (Sealed Document Ex. 5) |
| Compilation of Plaintiffs' Ownership Documents | 158-3 (Sealed Document Ex. 11) |
| Expert Report of Geoff Cohen | 144-4 (Sealed Document Ex. 8)<br>147-4 (Sealed Document Ex. 8 Cohen Declaration and Report)<br>177-2 (Sealed Document) |
| Exhibit 3 to A. McMullan Declaration | 173-5 (Sealed Document Ex. A-3a)<br>173-6 (Sealed Document Ex. A-3a2)<br>173-7 (Sealed Document Ex. A-3b)<br>173-8 (Sealed Document Ex. A-3c)<br>173-9 (Sealed Document Ex. A-3d) |
| Exhibit 4 to A. McMullan Declaration | 173-10 (Sealed Document Ex. A-4) |
| Exhibit 5 to A. McMullan Declaration | 173-11 (Sealed Document Ex. A-5) |
| Exhibit 10 to A. McMullan Declaration | 173-16 (Sealed Document Ex. A-10) |
| Exhibit 13 to A. McMullan Declaration | 173-19 (Sealed Document Ex. A-13) |
| Exhibit 15 to A. McMullan Declaration | 173-21 (Sealed Document Ex. A-15) |
| Exhibit 16 to A. McMullan Declaration | 173-22 (Sealed Document Ex. A-16) |
| Exhibit 17 to A. McMullan Declaration | 173-23 (Sealed Document Ex. A-17a)<br>173-24 (Sealed Document Ex. A-17b)<br>173-25 (Sealed Document Ex. A-17c)<br>173-26 (Sealed Document Ex. A-17d) |
| Exhibit 18 to A. McMullan Declaration | 173-27 (Sealed Document Ex. A-18) |
| Exhibit 22 to A. McMullan Declaration | 173-31 (Sealed Document Ex. A-22) |
| Exhibit 23 to A. McMullan Declaration | 173-32 (Sealed Document Ex. A-23) |
| Exhibit 24 to A. McMullan Declaration | 173-33 (Sealed Document Ex. A-24) |
| Exhibit 25 to A. McMullan Declaration | 173-34 (Sealed Document Ex. A-25) |
| Exhibit 28 to A. McMullan Declaration | 173-37 (Sealed Document Ex. A-28a)<br>173-38 (Sealed Document Ex. A-28b)<br>173-39 (Sealed Document Ex. A-28c)<br>173-40 (Sealed Document Ex. A-28d)<br>173-41 (Sealed Document Ex. A-28e)<br>173-42 (Sealed Document Ex. A-28f)<br>173-43 (Sealed Document Ex. A-28g) |
| Exhibit 29 to A. McMullan Declaration | 173-44 (Sealed Document Ex. A-29) |
| Exhibit 5 to W. Leak Declaration | 173-53 (Sealed Document Ex. B5) |
| Exhibit 6 to W. Leak Declaration | 173-54 (Sealed Document Ex. B6) |

| | |
|---|---|
| Exhibit 7 to W. Leak Declaration | 173-55  (Sealed Document Ex. B7) |
| Exhibit 10 to W. Leak Declaration | 173-58  (Sealed Document Ex. B10) |
| Exhibit 11 to W. Leak Declaration | 173-59  (Sealed Document Ex. B11) |
| Exhibit 12 to W. Leak Declaration | 173-60  (Sealed Document Ex. B12) |
| Exhibit 13 to W. Leak Declaration | 173-61  (Sealed Document Ex. B13) |
| Exhibit 14 to W. Leak Declaration | 173-62  (Sealed Document Ex. B14) |
| Exhibit 15 to W. Leak Declaration | 173-63  (Sealed Document Ex. B15) |
| Exhibit 16 to W. Leak Declaration | 173-64  (Sealed Document Ex. B16) |
| Exhibit 17 to W. Leak Declaration | 173-65  (Sealed Document Ex. B17a) |
| Exhibit 17 to W. Leak Declaration | 173-66  (Sealed Document Ex. B17b) |
| Exhibit 20 to W. Leak Declaration | 173-69  (Sealed Document Ex. B20) |
| Exhibit 22 to W. Leak Declaration | 173-71  (Sealed Document Ex. B22) |
| Rebuttal Expert Report of Barbara Frederiksen-Cross | 177-3    (Sealed Document) |
| Expert Report of Barbara Frederiksen-Cross (*Cox*) | 177-4    (Sealed Document) |
| Exhibit 2 to S. Poltorak Declaration | 180-3    (Sealed Document Ex. C-2) |
| Exhibit 3 to S. Poltorak Declaration | 180-4    (Sealed Document Ex. C-3) |
| Exhibit 4 to S. Poltorak Declaration | 180-5    (Sealed Document Ex. C-4) |
| Exhibit 6 to S. Poltorak Declaration | 180-7    (Sealed Document Ex. C-6) |
| Exhibit 8 to S. Poltorak Declaration | 180-9    (Sealed Document Ex. C-8) |
| Exhibit 9 to S. Poltorak Declaration | 180-10  (Sealed Document Ex. C-9a)<br>180-11  (Sealed Document Ex. C-9b) |
| Exhibit 11 to S. Poltorak Declaration | 180-13  (Sealed Document Ex. C-11) |
| Exhibit 12 to S. Poltorak Declaration | 180-14  (Sealed Document Ex. C-12a)<br>180-15  (Sealed Document Ex. C-12b)<br>180-16  (Sealed Document Ex. C-12c) |
| Exhibit 13 to S. Poltorak Declaration | 180-17  (Sealed Document Ex. C-13) |
| Exhibit 14 to S. Poltorak Declaration | 180-18  (Sealed Document Ex. C-14) |
| Exhibit 15 to S. Poltorak Declaration | 180-19  (Sealed Document Ex. C-15) |
| Exhibit 16 to S. Poltorak Declaration | 180-20  (Sealed Document Ex. C-16) |
| Exhibit 17 to S. Poltorak Declaration | 180-21  (Sealed Document Ex. C-17a)<br>180-22  (Sealed Document Ex. C-17b) |
| Exhibit 18 to S. Poltorak Declaration | 180-23  (Sealed Document Ex. C-18) |
| Exhibit 21 to S. Poltorak Declaration | 180-26  (Sealed Document Ex. C-21) |
| Exhibit 22 to S. Poltorak Declaration | 180-27  (Sealed Document Ex. C-22) |
| Exhibit 23 to S. Poltorak Declaration | 180-28  (Sealed Document Ex. C-23a)<br>180-29  (Sealed Document Ex. C-23b) |
| Exhibit 24 to S. Poltorak Declaration | 180-30  (Sealed Document Ex. C-24) |
| Exhibit 25 to S. Poltorak Declaration | 180-31  (Sealed Document Ex. C-25) |

## CERTIFICATE OF SERVICE

    The undersigned certifies that, on September 28, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document electronically.

                                            */s/ Daniel C. Bitting*
                                            Daniel C. Bitting