# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § § | |
| Plaintiffs, | § § | |
| vs. | § § § | Civil Action No. 1:18-mc-00613-LY |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC, | § § § § § | |
| Defendants. | § § | |

### DECLARATION OF ALASDAIR MCMULLAN IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MOTION TO SEAL CERTAIN EXHIBITS

I, Alasdair McMullan, the undersigned, hereby declare:

1. I am Senior Vice President, Legal Affairs, at Universal Music Group. In my capacity as in-house counsel for Universal Music Group, among other things, I manage and supervise litigation for UMG Recordings, Inc. and its record label affiliates, including but not limited to Capitol Records, LLC (formerly Capitol Records, Inc.), Capitol Christian Music Group, Inc., Fonovisa, Inc., Roc-A-Fella Records, LLC, and Tooth & Nail, LLC (collectively, the "UMG Plaintiffs"). In addition, through my position at Universal Music Group, I am familiar with the books and records of the UMG Plaintiffs and their record label affiliates, including documents such as agreements (including those referenced in this declaration) pursuant to which the UMG Plaintiffs possess rights in the sound recordings at issue in this litigation.

2. I submit this declaration in support of Plaintiffs' Supplemental Motion to Seal Certain Exhibits. I have personal knowledge of the facts set forth below and/or have learned of

1

these facts as a result of my position and responsibilities at Universal Music Group. If called upon and sworn as a witness, I could and would testify competently as to the matters set forth herein.

3. On September 11, 2018, I submitted a Declaration in Support of Plaintiffs' Opposition to Grande's Motion for Summary Judgment, and Cross-Motion for Summary Judgment ("September 11 Declaration") [Dkt. 173-2 through 173-47]. I attached exhibits to that declaration with the understanding that they were being filed under seal and would be shielded from public disclosure under the Protective Order entered in this case. In addition, Grande filed certain of Plaintiffs' documents as exhibits to its August 31, 2018 Motion For Sanctions And To Exclude Documents Produced After The Fact Discovery Deadline [Dkt. 156] ("Motion to Exclude").

4. I am submitting the instant declaration to support the UMG Plaintiffs' request that these documents remain under seal. These materials comprise contracts between the UMG Plaintiffs and recording artists, and inter-company licensing agreements. As discussed below, the UMG Plaintiffs treat these documents as highly confidential, and the disclosure of the terms of these agreements would cause the UMG Plaintiffs competitive and financial harm.

### Artist Contracts

5. The UMG Plaintiffs are engaged in the creation, manufacture, distribution, licensing and sale of sound recordings. Like other record labels, the UMG Plaintiffs enter into contracts with recording artists, or production companies affiliated with such artists, pursuant to which these artists or production companies grant to the UMG Plaintiffs ownership of the rights in sound recordings, delivered by those performers to the UMG Plaintiffs pursuant to the contracts.

6. I attached the following artist / production company contracts as exhibits to my September 11 Declaration: Exhibits 3, 5, 17, 22, 23, 24, and 25.

7. In addition to the artist contracts I attached as exhibits to my September 11 Declaration, Grande attached one more artist contract produced by UMG (UMG_00019588) as Exhibit 11 to Grande's Motion to Exclude. Exhibit 11 was contemporaneously filed under seal as docket entry 158-3, attached to Grande's Unopposed Motion to File Under Seal [Dkt. 158].

8. Artist contracts are among the most highly confidential and competitively sensitive documents in the UMG Plaintiffs' files. Record companies compete vigorously to sign artists to exclusive recording agreements, and to retain them. The UMG Plaintiffs' artist contracts are detailed agreements that set forth the numerous terms of the parties' agreement, including how many albums the artist will record for the record company, the process for recording albums under the agreement as well as the recording fund for such albums, a grant of rights to the record company, the royalties which will be paid to the artist based upon exploitation of their recordings and how such royalties are to be calculated, advances against future royalties that the record company will pay to the artist, and marketing commitments and restrictions. The terms of these agreements are extensively negotiated on a case by case basis between the parties, and the terms of the agreements vary significantly from one artist to the next. The terms of these agreements are highly confidential and constitute commercially and competitively sensitive proprietary information. The agreements sometimes include express confidentiality provisions that protect against their public disclosure. *See, e.g.*, Ex. 25 at UMG_00016702.

9. The UMG Plaintiffs treat our artist agreements in the strictest of confidence. The terms of these agreements are not publicly known or available. If they were included in the public record, it would place the UMG Plaintiffs at a severe competitive disadvantage and cause us financial harm in relation to our competitors, who could try to use the information to their advantage in competing to sign and retain artists. As we are in the recorded music business, our

3

relationships with recording artists are critical to our success. The disclosure of the terms of our artist agreements would jeopardize the UMG Plaintiffs' relationships with the artists who are parties to the contracts; those artists are not parties to this litigation and expect that the confidential terms of their contracts will not be disclosed publicly. *See, e.g.*, Ex. 3 at UMG_00012947 ("Given the high public profile of various of Artist and Contractor's staff, clients and customers and the effect unwanted publicity can have on the private life, career and earning capacity of the same, Company acknowledges that this requirement of confidence is a very important and fundamental term of this Agreement."). The disclosure of the contracts could also undermine our ability to negotiate with and sign new artists.

## Intercompany Licensing Agreements

10. The UMG Plaintiffs and their foreign affiliates negotiate and enter into intercompany license agreements which grant the UMG Plaintiffs exclusive U.S. rights to recordings owned or controlled by their foreign affiliates. I submitted one such intercompany license agreement, along with related agreements evidencing the transfer and/or licensing of recording rights, as Exhibit 4 to my September 11 Declaration.

11. These intercompany license agreements are highly confidential and contain information, such as with respect to royalty rates and other terms and conditions, that derive independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, such as the competitors of the UMG Plaintiffs and their affiliates.

12. Disclosure of the terms of these intercompany license agreements would cause competitive and financial harm to the UMG Plaintiffs because it would allow competitors and counterparties an unfair advantage in their dealings with us, as it would help them assess how we

internally structure and value our internal licensing; our competitors and counterparties could use that information to their financial advantage in their negotiations with the UMG Plaintiffs. For example, non-affiliated licensees could base their negotiations with the UMG Plaintiffs off of the internal licensing rates and terms in the intercompany license agreements. Similarly, artists could use the confidential internal cost structure in negotiating with the UMG Plaintiffs, adversely affecting the UMG Plaintiffs' position in such negotiations.

13. We maintain these intercompany license agreements as highly confidential in the ordinary course of business, and our foreign affiliates only permit the related agreements to be produced in litigation based upon our representation to them that the agreements would be protected from disclosure to the public or anyone other than litigation counsel and the Court by the Protective Order in this litigation and that the UMG Plaintiffs would do their utmost to protect and maintain the confidentiality of the agreements and their terms.

14. The UMG Plaintiffs and their affiliates make efforts (and expect their licensees to make similar efforts) that are reasonable under the circumstances to maintain the secrecy of the intercompany license agreements, such as insisting upon protective orders and confidentiality agreements before disclosing them or any of their terms to third parties, and, even then, by only disclosing those terms that are necessary under the particular circumstances.

### Merger & Acquisition Agreements

15. In addition, the UMG Plaintiffs have entered into merger or acquisition transactions with counterparties at various times, by virtue of which they have acquired the rights to recordings, including the exclusive U.S. rights to certain of those at issue in this case. I attached the following such agreements as exhibits to my September 11 Declaration: Exhibits 10, 13, 15, 16, 17, 18, 28, and 29.

16. In addition to the merger and acquisition agreements I attached as exhibits to my September 11 Declaration, two more agreements produced by the UMG Plaintiffs (UMG_00019630 and UMG_00018746) were filed under seal as part of Exhibits 5 and 11 to Grande's Motion to Exclude [Dkt. 156]. Exhibits 5 and 11 to Grande's Motion to Exclude were contemporaneously filed under seal as docket entries 158-2 and 158-3 where they were attached to Grande's Unopposed Motion to File Under Seal [Dkt. 158].

17. The agreements attached to my September 11 Declaration and Defendant's Motion to Exclude contain a variety of confidential, proprietary and commercially sensitive pricing and deal terms, and accordingly often include express confidentiality provisions. *See, e.g.*, Ex. 17 at UMG_00021548.

18. Disclosure of these agreements would allow competitors and counterparties an unfair advantage in their dealings with the UMG Plaintiffs, by enabling them to assess how the UMG Plaintiffs and/or their contractual counterparts price and structure their transactions, and by enabling them to use that information to their advantage in their negotiations with the UMG Plaintiffs.

19. For these reasons, the UMG Plaintiffs take steps to ensure that this information remains confidential, including express confidentiality provisions in contracts, designations and notifications identifying this information as confidential, marking this information as confidential when in litigation, and other similar measures. If such information were revealed, the UMG Plaintiffs' business interests would suffer competitive or financial injury, or potential legal liability to third parties, including (but not limited to) harm to the UMG Plaintiffs' negotiating position with respect to counterparties and harm to the UMG Plaintiffs' ability to compete with other recording companies.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of September, 2018, in Santa Monica, California.

/s/ _____