# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § | |
| Plaintiffs, | § § § | |
| vs. | § | Civil Action No. 1:18-mc-00613-LY |
| | § § | |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC, | § § § § | |
| Defendants. | § § | |

### DECLARATION OF WADE LEAK IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MOTION TO SEAL CERTAIN EXHIBITS

I, Wade Leak, declare as follows:

1. I am Senior Vice President, Deputy General Counsel, and Chief Compliance Officer for Sony Music Entertainment ("SME"). In my capacity as in-house counsel for SME, I manage and supervise litigation for SME and its affiliates, including Plaintiffs Sony Music Entertainment, Arista Music, Arista Records LLC, LaFace Records LLC, and Zomba Recording LLC (together, the "Sony Plaintiffs"). Through my employment at SME, I am familiar with the books and records of the Sony Plaintiffs, including documents such as agreements (including those referenced in this Declaration) pursuant to which the Sony Plaintiffs possess rights in certain of the sound recordings at issue in this litigation, as well as financial information of the Sony Plaintiffs.

2. I submit this declaration in support of Plaintiffs' Supplemental Motion to Seal Certain Exhibits. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at SME. If called upon and sworn as a witness, I could and would testify competently as to the matters set forth herein.

1

3. On September 11, 2018, I submitted a Declaration in Support of Plaintiffs' Opposition to Grande's Motion for Summary Judgment, and Cross-Motion for Summary Judgment ("September 11 Declaration") [Dkt. 173-48 through 173-73]. I attached exhibits to that declaration, with the understanding that they were being filed under seal and would be shielded from public disclosure under the Protective Order entered in this case. I am submitting the instant declaration to support the Sony Plaintiffs' request that the documents remain under seal. These materials comprise contracts between the Sony Plaintiffs and recording artists, and inter-company licensing agreements. As discussed below, the Sony Plaintiffs treat these documents as highly confidential, and the disclosure of the terms of these agreements would cause the Sony Plaintiffs competitive and financial harm.

### Artist Contracts

4. The Sony Plaintiffs are engaged in the creation, manufacture, distribution, licensing and sale of sound recordings. Like other record labels, the Sony Plaintiffs enter into contracts with recording artists, or production companies affiliated with such artists, pursuant to which these artists or production companies grant to the Sony Plaintiffs ownership of the rights in sound recordings, delivered by those performers to the Sony Plaintiffs pursuant to the contracts.

5. I attached the following artist/production company contracts as exhibits to my September 11 Declaration: Exhibits 10, 11, 12, 13, 14, 15, 16, 17, and 20.

6. Artist contracts are among the most highly confidential and competitively sensitive documents in the Sony Plaintiffs' files. Record companies compete vigorously to sign artists to their rosters, and to retain them. The Sony Plaintiffs' artist contracts are detailed agreements that are tailored to each artist's needs and concerns. The agreements are not industry-standard; rather, they include terms that are extensively negotiated between the parties, and the terms of the

contracts vary significantly from one artist to the next. The contracts contain extremely sensitive information about the money and resources the record label will invest in an artist and a project, including in recording, marketing and promoting a project. They also contain confidential information about the financial terms of an artist's agreement, including the payments and royalties that the artist will receive, and proprietary formulas for calculating numerous forms of compensation. All of this confidential and proprietary information is commercially and competitively sensitive, and the agreements are negotiated on a case by case basis. The agreements typically include confidentiality provisions that protect against their public disclosure. *See, e.g.*, Ex. 20 at SME_00001514 ("The parties agree to keep all of the terms of this agreement confidential. Neither party will disclose the terms of this agreement to any Person, except (i) as may be required by Law or (ii) to such party's employees, directors, agents, attorneys, accountants and other potential advisors on a "need-to-know" basis. This confidentiality provision is of the essence of this agreement.").

      7.     The Sony Plaintiffs treat our artist contracts in the strictest of confidence. The terms of these contracts are not publicly known or available. If they were included in the public record, it would place the Sony Plaintiffs at a competitive disadvantage and cause us financial harm in relation to our competitors, who could try to use the information to their advantage in competing to sign and retain artists. As we are in the recorded music business, our relationships with recording artists are critical to our success. The disclosure of artist contracts would jeopardize the Sony Plaintiffs' relationships with the artists who are parties to the contracts; those artists are not parties to this litigation and expect that the confidential terms of their contracts will not be disclosed publicly. The disclosure of the contracts could also undermine our ability to negotiate with and sign new artists.

## International Repertoire License Agreements

8.  The Sony Plaintiffs and their foreign affiliates license each other rights to sound recordings pursuant to the International Repertoire License agreements. I submitted these agreements as the following exhibits to my September 11 Declaration: Exhibits 5, 6, and 7.

9.  The International Repertoire License agreements are highly confidential and contain information, such as with respect to royalty rates and other terms and conditions, that derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use, such as the Sony Plaintiffs and their affiliates' competitors.

10. Disclosure of the International Repertoire License agreements would cause competitive and financial harm to the Sony Plaintiffs because it would allow competitors and counterparties an unfair advantage in their dealings with us, as it would help them assess how the we internally structure our internal licensing; our competitors and counterparties could use that information to their financial advantage in their negotiations with the Sony Plaintiffs. For example, non-affiliated licensees could base their negotiations with the Sony Plaintiffs off of the internal licensing rates and terms in the International Repertoire License agreements. Similarly, artists could use the confidential internal cost structure in negotiating with the Sony Plaintiffs, adversely affecting the Sony Plaintiffs' position in such negotiations.

11. For these reasons, we maintain the International Repertoire License agreements as confidential in the ordinary course of business, and our foreign affiliates only permit the related agreements to be produced in litigation on the condition that a Protective Order is in place and that the Sony Plaintiffs do their utmost to maintain the confidentiality of the agreements and their terms.

12. The Sony Plaintiffs and their affiliates make efforts (and expect their licensees to make similar efforts) that are reasonable under the circumstances to maintain the secrecy of the International Repertoire License agreements, such as insisting upon protective orders and confidentiality agreements before disclosing it or any of its terms to third parties, and, even then, by only disclosing those terms that are necessary under the particular circumstances.

### Merger & Acquisition Agreements

13. In addition, the Sony Plaintiffs have entered into merger or acquisition transactions with counterparties at various times, by virtue of which they have acquired the rights to recordings, including certain of those at issue in this case. Exhibit 22 to my September 11 Declaration is an example of such an agreement.

14. That agreement contains a variety of confidential, proprietary and commercially sensitive pricing and deal terms. Disclosure would allow competitors and counterparties an unfair advantage in their dealings with the Sony Plaintiffs, by enabling them to assess how the Sony Plaintiffs and/or their contractual counterparts price and structure their transactions, and by enabling them to use that information to their advantage in their negotiations with the Sony Plaintiffs.

15. For these reasons, the Sony Plaintiffs take steps to ensure that this information remains confidential, including express confidentiality provisions in contracts, designations and notifications identifying this information as confidential, marking this information as confidential when in litigation, and other similar measures. If such information were revealed, the Sony Plaintiffs' business interests would suffer competitive or financial injury, or potential legal liability to third parties, including (but not limited to) harm to the Sony Plaintiffs' negotiating position with

respect to counterparties and harm to the Sony Plaintiffs' ability to compete with other recording companies.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 28th day of September, 2018, in New York, New York

/s/ *[signature]*