# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 1:18-mc-00613-LY |
| GRANDE COMMUNICATIONS NETWORKS LLC and PATRIOT MEDIA CONSULTING, LLC, | § § § § | |
| Defendants. | § § | |

**DECLARATION OF STEVEN POLTORAK IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MOTION TO SEAL CERTAIN EXHIBITS**

I, Steven Poltorak, the undersigned, hereby declare:

1. I am Vice President, Rights Administration at Rhino Entertainment Company, the catalog rights division of Warner Music Group Corp. ("WMG"). WMG is the parent of Warner Bros. Records Inc., Atlantic Recording Corporation, Elektra Entertainment Group Inc., Rhino Entertainment Company, Nonesuch Records Inc., Fueled by Ramen LLC, and Roadrunner Records, Inc., seven of the plaintiffs in this lawsuit (collectively, the "WMG Plaintiffs"). In my capacity as Vice President, Rights Administration for Rhino Entertainment Company, I am involved with issues of ownership rights for WMG and its record label affiliates, including but not limited to the WMG Plaintiffs. Through my employment at WMG, I am familiar with the books and records of the WMG Plaintiffs and their record label affiliates, including documents such as agreements (including those referenced in this Declaration), pursuant to which the WMG Plaintiffs possess rights in the sound recordings at issue in this litigation.

1

2.      I submit this Declaration in support of Plaintiffs' Supplemental Motion to Seal Certain Exhibits. I have personal knowledge of the facts set forth below and/or have learned of these facts as a result of my position and responsibilities at WMG. If called upon and sworn as a witness, I could and would testify competently as to the matters set forth herein.

3.      On September 14, 2018, I submitted a Declaration in Support of Plaintiffs' Opposition to Grande's Motion for Summary Judgment, and Cross-Motion for Summary Judgment ("September 14 Declaration") [Dkt. 180-1 through 180-31]. I attached exhibits to that Declaration with the understanding that they were being filed under seal and would be shielded from public disclosure under the Protective Order entered in this case. In addition, Grande filed certain of Plaintiffs' documents as exhibits to its August 31, 2018 Motion For Sanctions And To Exclude Documents Produced After The Fact Discovery Deadline [Dkt. 156] ("Motion to Exclude").

4.      I am submitting the instant Declaration to support the WMG Plaintiffs' request that the documents remain under seal. These materials comprise contracts between the WMG Plaintiffs and recording artists, and inter-company licensing agreements. As discussed below, the WMG Plaintiffs treat these documents as highly confidential, and the disclosure of the terms of these agreements would cause the WMG Plaintiffs competitive and financial harm.

### Artist Contracts

5.      The WMG Plaintiffs are engaged in the creation, manufacture, distribution, licensing and sale of sound recordings. Like other record labels, the WMG Plaintiffs enter into contracts with recording artists, or production companies affiliated with such artists, pursuant to which these artists or production companies grant to the WMG Plaintiffs ownership of the rights

2

in sound recordings, delivered by those performers to the WMG Plaintiffs pursuant to the contracts.

6. The following exhibits to my September 14 Declaration consist of artist or production company contracts (and related licensing agreements): Exhibits 2, 4, 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 23, 24, and 25.

7. Artist contracts are among the most highly confidential and competitively sensitive documents in the WMG Plaintiffs' files. Record companies compete vigorously to sign artists to exclusive recording agreements, and to retain them. The WMG Plaintiffs' artist contracts are detailed agreements that set forth the numerous terms of the parties' agreement, including how many albums the artist will record for the record company, the process for recording albums under the agreement as well as the recording fund for such albums, a grant of rights to the record company, the royalties which will be paid to the artist based upon exploitation of their recordings and how such royalties are to be calculated, advances against future royalties that the record company will pay to the artist, and marketing commitments and restrictions. The terms of these agreements are extensively negotiated on a case by case basis between the parties, and the terms of the agreements vary significantly from one artist to the next. The terms of these agreements are highly confidential and constitute commercially and competitively sensitive proprietary information. The agreements sometimes include express confidentiality provisions that protect against their public disclosure.

8. The WMG Plaintiffs treat our artist agreements in the strictest of confidence. The terms of these agreements are not publicly known or available. If they were included in the public record, it would place the WMG Plaintiffs at a severe competitive disadvantage and cause us financial harm in relation to our competitors, who could try to use the information to their

advantage in competing to sign and retain artists. As we are in the recorded music business, our relationships with recording artists are critical to our success. The disclosure of the terms of our artist agreements would jeopardize the WMG Plaintiffs' relationships with the artists who are parties to the contracts; those artists are not parties to this litigation and expect that the confidential terms of their contracts will not be disclosed publicly. The disclosure of the contracts could also undermine our ability to negotiate with and sign new artists.

### Merger & Acquisition Agreements

9. In addition, the WMG Plaintiffs have entered into merger or acquisition transactions with counterparties at various times, by virtue of which they have acquired the rights to recordings, including the exclusive U.S. rights to certain of those at issue in this case. I attached a number of those agreements as exhibits to my September 14 Declaration: Exhibits 3, 6, 21, 22, and 25.

10. In addition to the merger and acquisition agreements I attached as exhibits to my September 14 Declaration, Grande attached one more agreement produced by Warner Bros. Records Inc. (WBR_00003782) as part of Exhibit 5 to its Motion to Exclude. Exhibit 5 was contemporaneously filed under seal as docket entry 158-2, attached to Defendant's Unopposed Motion to File Under Seal [Dkt. 158].

11. These agreements contain a variety of confidential, proprietary and commercially sensitive pricing and deal terms, and accordingly often include express confidentiality provisions. Disclosure of these agreements would allow competitors and counterparties an unfair advantage in their dealings with the WMG Plaintiffs, by enabling them to assess how the WMG Plaintiffs and/or their contractual counterparts price and structure their transactions, and

4

by enabling them to use that information to their advantage in their negotiations with the WMG Plaintiffs.

12. For these reasons, the WMG Plaintiffs take steps to ensure that this information remains confidential, including express confidentiality provisions in contracts, designations and notifications identifying this information as confidential, marking this information as confidential when in litigation, and other similar measures. If such information were revealed, the WMG Plaintiffs' business interests would suffer competitive or financial injury, or potential legal liability to third parties, including (but not limited to) harm to the WMG Plaintiffs' negotiating position with respect to counterparties and harm to the WMG Plaintiffs' ability to compete with other recording companies.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 27th day of September, 2018, in Burbank, California.

/s/