**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

UMG RECORDINGS, INC., et al.,    )
    )
          Plaintiffs,    )
    )
vs.    )
    )    No.  1:17-cv-00365-LY-AWA
GRANDE COMMUNICATIONS    )
NETWORKS LLC,    )
    )
          Defendant.    )
    )

<u>**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S COMBINED**</u>
<u>**REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND RESPONSE**</u>
<u>**IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**</u>

# TABLE OF CONTENTS

I.  PLAINTIFFS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT
    REGARDING DIRECT INFRINGEMENT .................................................................. 2

    A.  Plaintiffs Cannot Prove Copying. ........................................................................ 2

        1.  The law requires a comparison between the copyrighted work and
            the allegedly infringing copy. ................................................................. 2

        2.  Plaintiffs' proffered evidence is insufficient as a matter of law ..................... 3

    B.  Plaintiffs Concede that They Cannot Prove Unlawful Reproduction or
        Public Performance. ............................................................................................ 8

    C.  Plaintiffs Cannot Prove Unlawful Distribution. ................................................. 8

        1.  Making a file available for download is not distribution. ............................... 8

        2.  Plaintiffs' evidence of allegedly downloaded music files does not
            give rise to a genuine issue of material fact. .......................................... 11

II.  PLAINTIFFS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT
     REGARDING CONTRIBUTORY INFRINGEMENT ............................................... 16

    A.  Plaintiffs Have No Viable "Material Contribution" Contributory
        Infringement Claim. .......................................................................................... 16

    B.  Plaintiffs Fail to Come Forward with Evidence that Grande Had
        Knowledge of, or Was Willfully Blind to, Specific Instances of
        Infringement. ..................................................................................................... 19

        1.  Rightscorp's notices do not confer knowledge of infringement. ................. 19

        2.  Plaintiffs concede that Grande has no ability to verify
            Rightscorp's allegations. ........................................................................ 21

        3.  Plaintiffs deliberately conflate the knowledge standard for
            contributory infringement with the DMCA safe harbor .......................... 21

III.  PLAINTIFFS ARGUMENTS FAIL TO RAISE A GENUINE ISSUE OF
      MATERIAL FACT REGARDING WILLFUL INFRINGEMENT ............................ 22

IV.  PLAINTIFFS' DISCOVERY RULE ARGUMENT IS MERITLESS ......................... 23

V.  PLAINTIFFS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT
    REGARDING ACTUAL DAMAGES .................................................................... 24

i

**VI.    PLAINTIFFS' PURPORTED EVIDENCE OF COPYRIGHT OWNERSHIP IS UNTIMELY AND IMPROPER** ........................................................................................ **25**

**CONCLUSION** ................................................................................................................... **25**

Plaintiffs' Response to Grande's Motion reflects the spirit of their entire case—they do not want the jury to be able to decide Plaintiffs' claims on a copyright-by-copyright basis, as the law requires. This is why the Court is now faced with a copyright infringement case that somehow lacks record evidence of even one of the 1,500 copyrighted songs at issue. This is why Plaintiffs have prohibited Rightscorp from producing any raw data to Grande regarding individual alleged acts of infringement. This is why Plaintiffs only seek to rely on alleged downloads of specific, individual music files *after* they received Grande's Motion.

Plaintiffs want to point to a list of 1,500 copyrighted songs and a huge volume of Rightscorp notices, and then have the jury conclude that each and every one of their copyrights was infringed because "infringement happens on the Internet." The law does not permit such an approach, and instead requires Plaintiffs to actually prove specific instances of direct copyright infringement and that Grande took affirmative steps to foster those infringements.

Based on Grande's Motion for Summary Judgment and Plaintiffs' Response, there is no genuine issue of material fact on at least the following four case-dispositive issues:

- *Direct infringement by a Grande subscriber*—because Plaintiffs failed to present any evidence that would allow the Jury to compare any copyrighted work to any allegedly infringing copy. *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility. King's failure to adduce evidence for such a comparison vitiates her claim.").

- *Direct infringement by a Grande subscriber*—because Plaintiffs' claim hinges on the flawed premise that "offering to share" a work constitutes unlawful distribution under 17 U.S.C. § 106(3). *See, e.g.*, *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981, 986 (D. Ariz. 2008). Plaintiffs' purported evidence of actual downloads is facially deficient, and this theory also lacks any support in their Complaint, discovery disclosures, or expert reports.

- *Contributory infringement*—because Plaintiffs have no evidence that Grande (1) took affirmative steps to foster infringement or (2) offered a service lacking substantial non-infringing uses. *Cobbler Nevada, LLC v. Gonzalez*, 901 F.3d 1142, 1148 (9th Cir. 2018) (There are "two strands of [contributory] liability following *Sony* and *Grokster*: [1] 'actively encouraging (or inducing) infringement through specific acts' or [2] 'distributing a product distributees use

1

to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses.").

- *Contributory infringement*—because the evidence conclusively establishes that Rightscorp's notices cannot confer knowledge of specific instances of infringement. Frederiksen-Cross Report, ¶ 46 (3-4) (ECF No. 141-1) (Rightscorp's notices reflect, at best, the availability of files for download, not any actual dissemination of copyrighted works).

Each of the foregoing issues is dispositive.[1]  As discussed in detail below, the deficiencies in Plaintiffs' evidence are clear, unmistakable, and impossible for Plaintiffs to overcome under controlling case law.  Accordingly, the Court should grant Grande's Motion and enter summary judgment in its favor on Plaintiffs' contributory infringement claims.[2]

## I.   PLAINTIFFS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT REGARDING DIRECT INFRINGEMENT

### A.   Plaintiffs Cannot Prove Copying.

1.   <u>The law requires a comparison between the copyrighted work and the allegedly infringing copy.</u>

This case should be disposed of on summary judgment because Plaintiffs failed to provide recordings of the original copyrighted songs at issue.  The Fifth Circuit unequivocally holds that a Plaintiff must empower the Jury to perform a comparison between a copyrighted work and the allegedly infringing copy.  *See* Grande's Mot. at 5; *see also Positive Black Talk Inc. v. Cash Money Records, Inc.*, 394 F.3d 357, 367 (5th Cir. 2004) ("[A] plaintiff must prove: (1) factual copying and (2) substantial similarity."), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *R. Ready Productions, Inc. v. Cantrell*, 85 F.

---

[1] Plaintiffs' cross-motion for summary judgment is simply a vehicle for obtaining an additional brief in response to Grande's Motion.  Plaintiffs filed a first motion for summary judgment only several weeks prior, and chose not to raise a *single* issue now addressed in their cross-motion.

[2] To the extent the assertions in Plaintiffs' "Statement of Undisputed Material Facts" are disputed and material, those assertions are addressed in this brief.  In the interest of avoiding unnecessary briefing on irrelevant issues, Grande does not attempt to address the numerous immaterial "facts" identified by Plaintiffs or concede that any such assertions are undisputed.

Supp. 2d 672, 683 (S.D. Tex. 2000) ("Copying is shown through a detailed side by side comparison of the copyrighted and allegedly infringing works.  This determination, the Fifth Circuit has emphasized, 'is an issue to be determined by comparison of works, not credibility.'").

This bedrock principle of copyright law hardly needs to be stated—obviously, it is impossible for the Jury to determine whether a copyrighted work was copied without the ability to compare the copyrighted material to the alleged copy.[3]  Plaintiffs' failure to produce evidence that would allow the Jury to conduct this important comparison ends the direct infringement inquiry, and with it this case.

> 2.    Plaintiffs' proffered evidence is insufficient as a matter of law.

Plaintiffs do not want the Jury to be able to compare any allegedly infringing music files downloaded by Rightscorp[4] to Plaintiffs' copyrighted songs.  Instead, Plaintiffs seek to prove copying and "substantial similarity" through witness testimony and indirect evidence in the form of Rightscorp notices.  *See* Pls.' Resp. at 16-17.  This evidence does not give rise to a genuine issue of material fact.

---

[3] This is a particularly important issue considering (1) Plaintiffs never engaged Rightscorp to send notices on their behalf, (2) the Rightscorp notices that Plaintiffs rely on to establish infringement were sent exclusively on behalf of other parties, and (3) the Rightscorp notices were generated based on the detection of copyrighted works other than those asserted in this case.  *See* Grande's Mot. at 2-3, 10.

[4] As discussed below in Section I.C.2, the new theory for liability Plaintiffs articulate for the first time in their Response is based on music files allegedly downloaded from Grande subscribers. This theory and the related evidence were not identified in response to Grande's interrogatories seeking identification of Plaintiffs' evidence of infringement.  Furthermore, although the music files themselves were produced in discovery, Plaintiffs never produced or identified any evidence that these files were downloaded from Grande subscribers.  Grande therefore objects to this evidence and asks the Court to strike it.

i.      *Plaintiffs cannot prove copying and substantial similarity without comparison evidence.*

As discussed above, controlling Fifth Circuit precedent requires the evidence to enable a comparison between the copyrighted work and the allegedly infringing copy.  Plaintiffs offer no authority for the proposition that they can meet their burden of proof by having Rightscorp and RIAA witnesses say "trust me, it's a copy"—leaving Grande powerless to respond because there is no record evidence of the copyrighted songs at issue.  *See id.*  The law is clear that a party may not sidestep the comparison inquiry in this manner.  *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility.  King's failure to adduce evidence for such a comparison vitiates her claim."); *see also DaVinci Editrice S.R.L. v. ZiKo Games, LLC*, 183 F. Supp. 3d 820, 827 (S.D. Tex. 2016) ("Judgments about the substantial similarities of two works are not the proper subject of lay-witness testimony.").

While Plaintiffs do not explain why they failed to produce copies of their copyrighted songs, the evidence they do offer suggests the reason: because Rightscorp is unable to accurately or reliably identify the sharing of specific copyrighted works.  *At least* two-thirds of the 59,000 music files Rightscorp identified as "infringing" are, by Plaintiffs' own admission, not copies of copyrighted songs at issue in this case.

Plaintiffs rely on a declaration from Jeremy Landis, an employee of third-party RIAA, who states that he used a service provided by another third party, Audible Magic, to assess whether these music files are copies of copyrighted songs.[5]  Pls.' Resp. at 16-17 (citing Landis

---

[5] Grande submits that Mr. Landis's declaration should be stricken from consideration because Plaintiffs did not identify him during fact discovery (and he therefore has not been deposed). The underlying evidence on which Mr. Landis relies—regarding the RIAA's "verification" process—should also be stricken because it was never identified in response to Grande's clear interrogatories seeking all evidence supporting Plaintiffs' allegations of direct infringement by Grande subscribers.  *See* Sony Pls.' Obj. & Resp. to 2nd Interrogs. at 1-8 (ECF No. 112-2).

Decl. (ECF No. 172-12)).  Given Plaintiffs' failure to produce copies of the original copyrighted songs and the absence of any evidence of how Audible Magic functions, it is impossible to verify the accuracy of Mr. Landis's declaration.  *See also UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1116 (C.D. Cal. 2009) ("[H]owever beneficial the Audible Magic technology is in helping to identify infringing material, it does not meet the standard of reliability and verifiability required by the Ninth Circuit in order to justify terminating a user's account.").

Even assuming Mr. Landis' declaration is accurate, it represents an admission that of the approximately 59,000 "infringing" music files Rightscorp allegedly downloaded, Audible Magic "returned a 'match' condition"[6] for only 41,000 files.  Reading Mr. Landis's declaration closely, he indicates that those are only alleged matches to "member company sound recordings," *not* to the specific set of songs at issue in this case.  Landis Decl., ¶¶ 5, 11.  In other words, these could be copies of any song "owned" by an RIAA member, which is the vast majority of all music produced in the United States.[7]  Upon review of Exhibit 1 to Mr. Landis's declaration, it appears that only 19,000 of the 59,000 "matches" pertain to a copyrighted song at issue in this case.  *See* Brophy Declaration, ¶ 8.

---

[6] Grande has no idea what Mr. Landis means by a "match condition."  Not only do Plaintiffs present no evidence of how Audible Magic's software functions, they present no evidence of what "match condition" means, and no evidence—expert or otherwise—that would permit an assessment of the accuracy or reliability of Audible Magic's software.  Significantly, however, Rightscorp has testified that both Audible Magic and AcoustID (Both services Rightscorp uses to detect alleged infringements) often return multiple "matches" for a given file, requiring Rightscorp to decide for itself what the "best" match is.  Boswell Dep. Tr. 179:25-182:7, 200:4-19; 208:1-15 (Ex. 1).  For example, in testing performed by Grande's technical expert, AcoustID returned four completely different matches, *each with a 97% level of confidence*, for a single song purchased from iTunes.  *See* Cohen Decl. & Report, ¶ 128 (ECF No. 147-4).

[7] *See* About RIAA, *available at* https://www.riaa.com/about-riaa/riaa-members/ (last visited Oct. 1, 2018) ("Nearly 85% of all legitimate recorded music produced and sold in the United States is created, manufactured or distributed by RIAA members.").

This illustrates why the law requires a comparison between the copyrighted work and the alleged copy—not simply a witness's say-so—to support a finding of copyright infringement. Because Plaintiffs have not produced "true" copies of the copyrighted songs at issue, their evidence of copying ultimately amounts to nothing more than "Mr. Landis says that Audible Magic said so." *See UMG*, 665 F. Supp. 2d at 1118 ("[The defendant] has no way of verifying the accuracy of Audible Magic's database, and even if it did, it would be unreasonable to place that burden on [the defendant].").

The Fifth Circuit has unequivocally held that there is no jury question regarding infringement without evidence that enables a comparison between the copyrighted work and the alleged copy. *Ames*, 179 F.3d at 376. Because no such evidence exists, the Court should enter summary judgment in Grande's favor.

       ii.       *Plaintiffs' purported evidence of copying is not competent summary judgment evidence*

Plaintiffs' purported evidence of copying is both inadmissible hearsay and not based on personal knowledge. Thus, in addition to being facially insufficient evidence of copying, it is not competent summary judgment evidence. Through Mr. Landis's declaration, Plaintiffs seek to prove copying based on information received from Audible Magic. Landis Decl., ¶ 12 (ECF No. 172-12). Plaintiffs attempt to do the same through evidence from Rightscorp, which in turn also relied on information received from Audible Magic and another third party service, AcoustID. *See* Pls.' Resp. at 16[8]; Boswell Dep. Tr. 194:22-202:8 (Ex. 1).

Any results received from Audible Magic or AcoustID are inadmissible hearsay because they are out-of-court statements by those companies offered in court to prove the truth of the

---

[8] Tellingly, the evidence cited by Plaintiffs refers only in the vaguest possible terms to Rightscorp's "digital matching," without any explanation of how that matching was performed.

matter asserted, *i.e.*, that certain files are copies of copyrighted works.  *See* Boswell Dep. Tr. 179:25-180:6 (Q: "Would you describe for me how the Rightscorp system utilized Audible Magic to do its file matching, song matching?"  A: ". . . We've got this blind – you have got this blind file.  We put it into the system.  We say, 'Tell us what this file is.'  That company's third-party software told us what the file was and came back with an XML saying 'I think it's this artist and this song.'"), 199:22-200:3 (same for AcoustID) (Ex. 1).  This evidence is therefore inadmissible because Plaintiffs offer no evidence to satisfy any hearsay exception.  *See Innovention Toys, LLC v. MGA Ent'mt, Inc.*, No. 2:07-cv-6510, 2011 WL 13203133, at *6 n.5 (E.D. La. Feb. 3, 2011) (records obtained from third party were hearsay).  Similarly, since any matching was actually performed by Audible Magic or AcoustID, Mr. Landis's and Rightscorp's testimony on that subject is not based on personal knowledge that any particular music files are copies of copyrighted songs.  *See* Boswell Dep. Tr. 196:13-18 (Audible Magic's analysis is based on information from its off-site database), 199:22-200:3 (same for AcoustID) (Ex. 1).[9]

As such, Plaintiffs' purported evidence of copying cannot give rise to a genuine issue of material fact because it is not competent summary judgment evidence.  *See* Fed. R. Civ. P. 56(c)(2) & (4); *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 508 (5th Cir. 2008) ("[T]he affidavit clearly contained hearsay, was not based on personal knowledge, and, under normal summary judgment procedures, is not admissible."); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th Cir. 1997) (hearsay statement was "incompetent summary judgment evidence").

---

[9] Plaintiffs have not produced the XML files evidencing the Audible Magic or AcoustID results allegedly received by Rightscorp.  Thus, in addition to being inadmissible hearsay, any testimony from Rightscorp about the contents of those documents is also inadmissible under the best evidence rule.  *See* Fed. R. Evid. 1001(d), 1002, 1004.

**B.      Plaintiffs Concede that They Cannot Prove Unlawful Reproduction or Public Performance.**

Grande moved for summary judgment on Plaintiffs' allegations that Grande subscribers violated Plaintiffs' reproduction and public performance rights, as set forth in 17 U.S.C. § 106(1) and (6), respectively.  Grande's Mot. at 6, 11.  Plaintiffs did not respond on either point.  *See generally* Pls.' Resp. at 10-17.  Instead, Plaintiffs' arguments rely solely on violation of their distribution rights under § 106(3).  *See generally id.*  Accordingly, the Court should grant summary judgment in Grande's favor on contributory liability under § 106(1) and (6).

**C.      Plaintiffs Cannot Prove Unlawful Distribution.**

In an attempt to survive summary judgment, Plaintiffs rely on Rightscorp's notices of alleged copyright infringement, along with music files Rightscorp allegedly downloaded from Grande subscribers, as evidence that Grande subscribers directly infringed Plaintiffs' distribution rights.  *See* Pls.' Resp. at 10-16.  This evidence, to the extent the Court considers it,[10] does not give rise to a genuine issue of material fact.

1.      Making a file available for download is not distribution.

Making a file available for download—whether evidenced by an actual download or the detection of the file's availability, and whether supported by direct or circumstantial evidence— is not distribution under 17 U.S.C. § 106(3).  *See* Grande's Mot. at 9-10 (citing, *inter alia*, *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 986 (D. Ariz. 2008) ("If the owner of the shared folder simply provides a member of the public with access to the work and the means to make an unauthorized copy, the owner is not liable as a primary infringer of the distribution right, but rather is potentially liable as a secondary infringer of the reproduction right.")).

_____

[10] The Court should strike Plaintiffs' alleged evidence of downloaded music files.  *See supra* n.4.

As one of the leading copyright treatises[11] explains, it is "technically and legally incorrect" to characterize the act of making a file available a "distribution" under § 106(3):

> The fatal flaw in the making available argument is that while such individuals colloquially make the work available to others, they are not themselves distributing it, and are hardly therefore distributing copies; instead, third parties are reaching into the individuals' hard drive and taking an electronic file.  *To argue that the individual from whose hard drive the work is snatched from is sending the work (much less distributing a copy of the work) is technically and legally incorrect . . . .*[12]
>
> At the taker's end, though, there is a reproduction, and copyright owners are fully within their rights to sue for that reproduction. They may even be able to sue the individual who has the work on his or her hard drive for contributory infringement of the reproduction right, and perhaps for inducement; *but there has been no distribution by that individual*.

4 Patry on Copyright § 13:11.50 (2018) (emphasis added).  As Patry notes, district courts that have concluded otherwise are wrong.  *See id.*  Consistent with this understanding of the law, Plaintiffs were unable to cite a single Fifth Circuit opinion in which the act of "making available" was found to violate the distribution right.[13]

Furthermore, the simple act of making a file available is not direct infringement.  *See* Grande's Mot. at 7-8 (citing *Howell*, 554 F. Supp. 2d at 981 ("the great weight of authority"

---

[11] Federal courts, including the Supreme Court, routinely cite to Patry on copyright issues.  *See, e.g.*, *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976-77 (2014).

[12] Both parties' experts agree that Grande's subscribers did not initiate the transmission of a single allegedly-duplicated file.  Cohen Report, ¶¶ 39-47 (ECF No. 147-4); Frederiksen-Cross Report, ¶¶ 30-42 (ECF No. 141-1).  It is universally accepted that a third party—in this case a party other than the Grande subscriber identified by a Rightscorp notice—is solely responsible for initiating and coordinating the transmission of a file by requesting that the file be downloaded from a swarm of tens or hundreds of different computers.

[13] The closest to a case addressing this issue is *Maverick Recording Co. v. Harper*, which refused to address the issue directly but referenced numerous decisions that refused to embrace the "making available" theory of distribution.  598 F.3d 193, 197 (5th Cir. 2010).

supports this conclusion).  This conclusion necessarily flows from the fact that the Copyright Act

does not provide for attempt liability.  *See Howell*, 554 F. Supp. 2d at 984.  The Fifth Circuit's

decision in *BWP* does not suggest otherwise.[14]  Pls.' Resp. at 11.  In fact, the language in *BWP*

Plaintiffs seize on—that direct liability could attach where the defendant "provided the means to

obtain and transmit copyrighted performances"—contradicts their entire argument.  *BWP Media*

*USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436, 442 (5th Cir. 2017).  A BitTorrent user

who makes a file available for download does not provide the *means* for another user to

download it.  Instead, the BitTorrent software provides the means for that transmission, as

Plaintiffs' expert acknowledges.  *See* Frederiksen-Cross Report, ¶ 30 ("BitTorrent is a P2P

communication and file sharing protocol that allows its user to join their computer to a peer

network (called a "Swarm") of many other computers that can all upload and download data

from each simultaneously.  Users can download BitTorrent software from

www.BitTorrent.com.") (ECF No. 141-1).

---

[14] The district court opinions Plaintiffs rely on are also plainly distinguishable, for the most part
because they were decided under Rule 12.  *See Warner Bros. Records, Inc. v. Payne*, No. 6:06-
cv-51-WSS, 2006 WL 2844415, at *4 (W.D. Tex. July 17, 2006) ("[T]he Court is not prepared at
this stage of the proceedings to rule out Plaintiffs' 'making available' theory as a possible
grounds for imposing liability.  A more detailed understanding of the Kazaa technology is
necessary and Plaintiffs may yet bring forth evidence of actual uploading and downloading of
files, rendering use of the 'making available' theory unnecessary."); *Arista Records LLC v.
Greubel*, 453 F. Supp. 2d 961, 971 (N.D. Tex. 2006) ("Plaintiffs assert that Greubel made the
copyrighted recordings available to others without permission *and actively reproduced and/or
distributed* the copyrighted recordings as well.  Greubel fails to establish that Plaintiffs can
establish no set of circumstances under which they might prevail on their claim of copyright
infringement.") (emphasis added); *see also Universal City Studios LLLP v. Bigwood*, 441 F.
Supp. 2d 185, 190-91 (D. Me. 2006) (granting unopposed motion for summary judgment where
the plaintiffs presented evidence of actual downloads by the defendant, establishing infringement
of plaintiffs' reproduction rights, along with "making available" evidence); *Motown Record Co.
v. DePietro*, No. 2:04-cv-2246, 2007 WL 576284, at *3-4 (E.D. Penn. Feb. 16, 2007) (denying
plaintiffs' motion for summary judgment because plaintiff failed to prove defendant was the
infringer).

Furthermore, *BWP* only addressed the extent to which direct infringement requires volitional conduct, not whether making infringing material available to another, standing alone, constitutes unlawful distribution.  *See generally* 852 F.3d 436.  Indeed, the court did not address distribution under § 106(3) at all—the court only referred to direct infringement under § 106(1) (reproduction) and § 106(5) (public display).  *Id.* at 438.  *BWP* therefore lends no support for Plaintiffs' argument that making a file available for download violates the distribution right.

Based on the foregoing, Plaintiffs' evidence does not support a secondary infringement claim against Grande under § 106(3) for two reasons. First, the acts for which Plaintiffs seek to hold Grande secondarily liable are themselves secondary infringement, at most.[15]  The Copyright Act does not permit tertiary liability—secondary liability for the secondary liability of another.  *See* Grande's Mot. at 9-10.  Second, the mere act of making a file available for download is not infringement under § 106(3).  Accordingly, the Court should grant summary judgment.

> 2. <u>Plaintiffs' evidence of allegedly downloaded music files does not give rise to a genuine issue of material fact</u>.

Pivoting to an entirely new theory of liability for the first time in their Response,[16] Plaintiffs argue that music files Rightscorp allegedly downloaded from Grande subscribers are

---

[15] A party who downloads a copyright work is a direct infringer and the party who makes that file available for download is only potentially liable as a *secondary* infringer.  This relationship becomes even less clear where, as here, a single downloader allegedly reconstitutes a copyrighted work from a swarm of computers scattered across the Internet.  In that scenario, each participant in the swarm may contribute only one small slice of the copyrighted work—or no slice at all—to the downloader.  Grande is a step removed from all of these activities and stands accused of merely providing the Internet service to one member of a swarm who, in turn, *might* have provided one small slice of a file to a third party downloader somewhere on the Internet.  At best, these allegations against Grande represent tertiary infringement, for which this Court has already determined there is no cognizable claim.

[16] Again, Grande requests the Court strike this evidence, which Plaintiffs did not identify as evidence of infringement in response to Grande's interrogatories, was not mentioned in Plaintiffs' Complaint, and was not addressed in Plaintiffs' opening expert reports.  *See Rushing*

"conclusive evidence" that Grande and its subscribers violated Plaintiffs' distribution rights. Pls.' Resp. at 13. As set forth above, this evidence does not augment Plaintiffs' position because it is simply more evidence that a Grande subscriber "made a file available." There are other, additional reasons this evidence fails to raise a genuine question regarding direct infringement.

*First*, Plaintiffs have not submitted the music files to the Court. Although Plaintiffs make reference to a collection of downloaded files in their Response, Plaintiffs did not actually tender those files to the Court to support their Response. *See Dabon v. Aetna Life Ins. Co.*, No. 2:01-cv-1930, 2002 WL 461518, at *1 (E.D. La. Mar. 25, 2002) (to be considered on summary judgment, document must be attached to and authenticated by a proper affidavit).

*Second*, Plaintiffs failed to produce any evidence in discovery regarding the provenance of these files. There is no evidence showing how or when the files were downloaded, proving that they came from Grande subscribers, or supporting a chain of custody for those files after their purported collection. Plaintiffs' technical expert also failed to mention or cite these files or their collection in her expert report, including in the section that addressed Rightscorp's ability to collect evidence of copyright infringement against Grande. *See generally* Frederiksen-Cross Report (ECF No. 141-1). In short, the record existing at the close of discovery—and as of the date Grande filed its Motion—was devoid of any evidence that these files were actually downloaded from Grande's subscribers. Accordingly, Plaintiffs should not be permitted to rely on these files in a last-ditch effort to create a genuine issue of material fact.

Apparently recognizing the dearth of evidence tying any downloaded file to a Grande subscriber, Plaintiffs now offer yet more untimely evidence—this time a declaration from

*v. Kansas City S. Ry. Co.*, 185 F.3d 496, 509 (5th Cir. 1999). As a result, Grande has not been given a meaningful opportunity to take discovery relating to this purported evidence.

Greg Boswell, a Rightscorp employee, which refers to the entire 59,000-file Bates range *en masse* and states that the files were downloaded from unspecified Grande subscribers "from September 25, 2014 to July 31, 2016." Boswell Decl., ¶ 14 (ECF No. 173-79).[17] This declaration should be stricken by the Court and, in any event, cannot create a genuine issue of material fact for purposes of avoiding summary judgment for the reasons set forth below.

> i.    *The Boswell Declaration is not competent summary judgment evidence*

The Boswell Declaration violates the best evidence rule, which requires a party seeking to prove the content of a document either to produce the original document or satisfy an exception to the rule. *See* Fed. R. Evid. 1002, 1004. Downloading a music file from a particular BitTorrent peer (*e.g.*, a Grande subscriber using BitTorrent) would be documented at least by the network communications between Rightscorp's system and the peer, which Rightscorp decided not to preserve or produce.[18] Cohen Decl. & Report, ¶ 168 (ECF No. 147-4).

This data is plainly within the scope of the best evidence rule as either a "writing" or a "recording." *See* Fed. R. Evid. 1001(a) ("A 'writing' consists of letters, words, numbers, or their equivalent set down in any form.") & (c) ("A 'recording' consists of letters, words, numbers, or their equivalent recorded in any manner."). Given the obvious significance of this underlying evidence, and Plaintiffs' inability or unwillingness to produce it, Plaintiffs cannot satisfy any exception to the best evidence rule and the Boswell Declaration should be disregarded. *See, e.g.*, *United States v. Chaney*, 299 F. App'x 447, 455 (5th Cir. 2008) ("[I]n proving the content of a

---

[17] Grande requests that this evidence be stricken from the record. Just like the downloaded files themselves, this witness's testimony on this issue was never identified in Plaintiffs' Complaint, in their responses to Grande's discovery, or in any expert report.

[18] Grande recently learned that the agreement between RIAA and Rightscorp explicitly prevents Rightscorp from producing to Grande any of the raw data recorded by the Rightscorp system. *See* Litigation Support and Consulting Agreement, ¶ 8 & Schedule A (Ex. 5).

writing, recording, or photograph, where the terms of the content are material to the case, the original document must be produced unless it is shown to be unavailable for some reason other than the serious fault of the proponent,[19] or unless secondary evidence is otherwise permitted by rule or statute.") (citation omitted).

          ii.        *Plaintiffs cannot raise a new liability theory on summary judgment*

As the Court is by this point well aware, Plaintiffs' claims, as alleged, are based on Rightscorp detecting and notifying Grande of alleged copyright infringements on Grande's network. *See, e.g.*, Compl., ¶ 43 (ECF No. 1). Specifically, Plaintiffs allege that Rightscorp's system identified "infringements" taking place on Grande's network and then notified Grande of these "infringements" through automated emails that Rightscorp transmitted to Grande.[20] *See id.*, ¶¶ 43, 48-49. Plaintiffs' Complaint does not allege that Rightscorp ever actually downloaded a copy of a copyrighted work from a Grande subscriber or that such downloads represent infringements for which Grande should be held liable. *See generally* Compl. Similarly, Plaintiffs never identified this new theory of liability (or the downloaded files it now relies on in its summary judgment briefing) in their responses to Grande's various discovery requests or expert reports. *See Sony* Pls.' Obj. & Resp. to 2nd Interrogs. at 1-8 (ECF No. 112-2); *see generally* Frederiksen-Cross Report (ECF No. 141-1); *see also* Grande's Mot. to Strike Rebuttal Expert Report at 6-7 (after receiving Grande's summary judgment motion, Plaintiffs served a

---

[19] Plaintiffs maintain that Rightscorp is their litigation consultant, and so Plaintiffs are necessarily charged with Rightscorp's failure to retain and produce evidence. *See, e.g.*, Order at 4 (ECF No. 191).

[20] It is undisputed that the "infringements" purportedly documented by Rightscorp's notices do not reflect any actual downloads. Rightscorp's system sends a notice whenever it detects that a potentially infringing file has been made available for download. *See* Frederiksen-Cross Report, ¶ 46 (3-4) (ECF No. 141-1).

sur-rebuttal report in which their expert reworked her opinions and for the first time purported to rely on the downloaded music files) (ECF No. 176).

It would be incredibly prejudicial to permit Plaintiffs to raise an entirely new theory of liability in their summary judgment response, especially one based on new evidence that was never previously identified to Grande in discovery.[21]  The prejudice is particularly acute given that Grande was not on notice of the need to take discovery regarding this evidence and theory for recovery, and Grande's technical expert had no opportunity to address this theory or evidence in his rebuttal report, given that Plaintiffs' technical expert did not rely on it in *her* report.  The Court should therefore preclude Plaintiffs from relying on this new theory and related evidence. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion for summary judgment."); *Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) (same).

iii.     *Plaintiffs' evidence of downloads is insufficient on its face*

There is no specific evidence regarding the music files referenced by Plaintiffs in their Response.  There is no evidence regarding the specific IP addresses from which these music files were downloaded, and no evidence of when they were downloaded apart from Boswell's conclusory statement that all of the files were downloaded during a two-year period.  On its face, this evidence is insufficient to permit a reasonable factfinder to conclude that Rightscorp

---

[21] Plaintiffs disingenuously accuse Grande of "feign[ing] ignorance" of the music files.  Grande was aware of the music files.  Grande was *not* aware of Plaintiffs' intention to rely on these files, let alone as evidence of a new theory of liability, because Plaintiffs never indicated their intention to do so, as demonstrated by their Complaint, their discovery responses, and their expert reports.  It is Plaintiffs duty to properly disclose the theories and evidence it intends to use to prove its case.

downloaded a specific copy of a specific copyrighted song at issue from a Grande subscriber at any relevant point in time. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (to survive summary judgment, non-movant "must set forth *specific facts* showing that there is a genuine issue for trial") (emphasis added).

## II.   PLAINTIFFS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT REGARDING CONTRIBUTORY INFRINGEMENT

### A.   Plaintiffs Have No Viable "Material Contribution" Contributory Infringement Claim.

In its Motion, Grande explains that there is no genuine issue of material fact regarding contributory infringement because there is no evidence of intent. Grande's Mot. at 12-13. More specifically, there is no evidence of affirmative, purposeful conduct by Grande in furtherance of any purported infringement. Rather, Plaintiffs' claims are based exclusively on Grande's alleged *failure to act*—to stop alleged infringement from taking place. *See id.* In *Grokster*, the Supreme Court held that a defendant who distributes a product or service with substantial non-infringing uses—like Internet service—is not liable unless they do so "with the object of promoting its use to infringe copyright, *as shown by clear expression or other affirmative steps taken to foster infringement*." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005) (emphasis added). The Supreme Court explained that even "knowledge . . . of actual infringing uses would not be enough" because "purposeful, culpable expression and conduct" is required. *Id.* at 937. Because Plaintiffs can point to no evidence of purposeful conduct by Grande, Plaintiffs' contributory infringement claims must fail.

In response, Plaintiffs concede that they cannot prove inducement under *Grokster*, and instead argue that they can prove contributory liability on a distinct "material contribution" theory. Pls.' Resp. at 24-26. Plaintiffs argue that "courts have continued to apply material contribution liability since *Grokster*, and neither inducement nor intent is required." Pls.' Resp.

at 24.  Plaintiffs contend that under their material contribution theory, they do not need to prove

that Grande engaged in any purposeful conduct, and the existence of substantial non-infringing

uses is irrelevant.  *See id.* at 24-26.  Plaintiffs characterize Grande's position as an "illogical,"

"novel," and "radical" reading of *Grokster* that has no support in the case law.  *See id.*

In fact, however, the Ninth Circuit recently confirmed that Grande's reading of *Grokster*

is correct.  In *Cobbler Nevada, LLC v. Gonzales*, the Ninth Circuit recognized that there are only

"two strands of [contributory] liability following *Sony* and *Grokster*: [1] 'actively encouraging

(or inducing) infringement through specific acts' or [2] 'distributing a product distributees use to

infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant'

noninfringing uses."  901 F.3d 1142, 1148 (9th Cir. 2018).  Under the first strand, *Grokster*'s

requirement of "purposeful, culpable expression and conduct" applies to allegations of

inducement *and* material contribution.[22]  *Id.* at 1148 ("Nothing in [plaintiff's] complaint alleges,

or even suggests, that Gonzales actively induced or materially contributed to the infringement

through 'purposeful, culpable expression and conduct.'") (citing *Grokster*, 545 U.S. at 937).  As

a result, "a 'failure to take affirmative steps to prevent infringement' alone cannot trigger

liability."  *Id.* at 1148-49 (quoting *Grokster*, 545 U.S. at 939 n.12).

Plaintiffs cannot prove contributory infringement under this first strand because their

claims are based entirely on Grande's alleged failure to stop its subscribers from engaging in

copyright infringement—*i.e.*, "a failure to take affirmative steps to prevent infringement."

Plaintiffs do not suggest otherwise in their Response and they do not even attempt to offer

---

[22] In this respect, the Fourth Circuit in *Cox* erroneously conflated the separate issues of
knowledge and intent.  *See* 881 F.3d at 308 (wrongly suggesting that knowledge can establish
intent).  *Grokster* made clear that "mere knowledge . . . of actual infringing uses would not be
enough" to impose contributory liability; instead, intent requires evidence of purposeful,
affirmative conduct.  545 U.S. at 936-37.  *See also* Grande's Mot. at 12 n.12.

evidence of purposeful conduct intended to foster infringement. *See* Pls.' Resp. at 17-26. Thus, whether Plaintiffs label their theory as inducement, encouragement, or material contribution, Plaintiffs cannot prove contributory infringement under the appropriate standard.

This leaves the second strand—"distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cobbler Nevada*, 901 F.3d at 1148. "Material contribution" is often used as shorthand for this category of contributory liability. *See Arista Records LLC v. Lime Group, LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011) ("Pursuant to the *Sony-Betamax* rule, a defendant who distributes a product that materially contributes to copyright infringement *will not* be liable for contributory infringement if the product also is 'widely used for legitimate, unobjectionable purposes' or is 'merely . . . capable of substantial noninfringing use.'") (emphasis in original) (citing *Sony Corp. v. Univ. City Studios, Inc.*, 464 U.S. 417, 442 (1984); *BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7-*8 (S.D.N.Y. July 15, 2016) ("[E]ven assuming that Polyvore had knowledge of the infringing activity and materially contributed to copyright infringement [by distributing its image-clipping software], the *Sony-Betamax* rule shields Polyvore from liability.") (citing *Sony*, 464 U.S. at 442)). As these cases make clear, Plaintiffs cannot prove contributory infringement under this standard because Grande's Internet service is plainly capable of substantial noninfringing uses.[23] *See also Cobbler Nevada*, 901 F.3d at 1149 ("Providing internet access can hardly be said to be

---

[23] In *Cox*, the court indicated that providing a product with substantial noninfringing uses can constitute material contribution, relying solely on the Ninth Circuit's decision in *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007). *Cox*, 881 F.3d at 306. To the extent *Perfect 10* suggests that a defendant providing a product with substantial noninfringing uses can materially contribute to infringement in the absence of purposeful, culpable conduct, the Ninth Circuit conclusively repudiated that notion in *Cobbler Nevada*. 901 F.3d at 1148.

distributing a product or service that is not 'capable of substantial' or 'commercially significant noninfringing uses.'") (citing *Sony*, 464 U.S. at 442).

In sum, Plaintiffs' contributory infringement claims require either (1) proof of Grande's intent through "clear expression or other affirmative steps taken to foster infringement" (*Grokster*, 545 U.S. and 936-37) or (2) proof that Grande distributed a product or service that is not capable of substantial non-infringing uses (*Sony*, 464 U.S. at 442). *See also Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) ("Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses."). There is no genuine issue of material fact on either point. Accordingly, the Court should enter summary judgment.

> **B.    Plaintiffs Fail to Come Forward with Evidence that Grande Had Knowledge of, or Was Willfully Blind to, Specific Instances of Infringement.**
>
> > 1.    Rightscorp's notices do not confer knowledge of infringement.

Grande has explained that Rightscorp's notices cannot confer knowledge of infringement because Rightscorp sends a notice whenever it believes a file has been made available for download, not when a file is actually disseminated. *See* Grande's Mot. at 15-16. Plaintiffs do not dispute that this is how Rightscorp's system functions. *See generally* Pls.' Resp. Instead, Plaintiffs only dispute whether offering to share copyrighted material, standing alone, constitutes copyright infringement. As discussed *supra* in Section I.C.1, "the great weight of authority" rejects Plaintiffs' argument. Because offering to share a file is not direct infringement, notices

sent to Grande documenting those offers cannot confer knowledge of infringement or support a finding of willful blindness.[24]

Plaintiffs cite one case that found that Rightscorp's notices could confer knowledge of infringement—the district court's opinion in *Cox*. Plaintiffs' decision to cite this opinion on the issue of knowledge is curious, because *Cox* was reversed by the appellate court on this specific issue—namely, the district court's failure to properly require the jury to find that Cox was willfully blind to *specific instances* of direct infringement. *Cox*, 881 F.3d at 311-12. Furthermore, the district court's opinion in *Cox* did not even address the issue raised here—the fact that Rightscorp's notices are not actually evidence of direct infringement at all. *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 671-72 (E.D. Va. 2015).

The other cases Plaintiffs rely on fare no better. In *A&M Records, Inc. v. Napster, Inc.*, the defendant provided the actual software used to infringe, and so there was a host of evidence of knowledge over and above the RIAA's notices of alleged infringement. 239 F.3d 1004, 1011-12, 1020 n.5 (9th Cir. 2001). Similarly, in *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, the defendant was notified of infringing material that was stored on the defendant's own servers. 591 F. Supp. 2d 1098, 1102-03, 1106-07 (N.D. Cal. 2008).

In short, Plaintiffs cannot prove that Grande had knowledge of specific instances of infringement on its network. The only evidence Plaintiffs cite are Rightscorp's notices, and both parties agree those notices are generated and sent when a file is being made available and not when it is actually downloaded (a step which Rightscorp's system is unable to detect).

---

[24] Plaintiffs assert it does not matter that Rightscorp's notices only document an offer to share a file, because there is also evidence that Rightscorp downloaded music files from Grande's subscribers. Pls.' Resp. at 20. This argument fails because Plaintiffs and Rightscorp never put Grande on notice of those downloads and, therefore, they do not bear in any way on the issue of knowledge.

2.      Plaintiffs concede that Grande has no ability to verify Rightscorp's
        allegations.

It is undisputed that Grande has no ability to verify the allegations in Rightscorp's

notices, particularly because Grande does not have any way to access the computers connected to

its subscribers' Internet connections.  *See* Boswell Dep. Tr. 349:23-351:20 (Ex. 1).  This is a key

distinction between this case and others in which a party has the clear ability to directly access

the purportedly infringing files to determine whether they are truly infringing.

Because Grande has no way to verify the allegations in Rightscorp's notices, Plaintiffs

cannot rely on those notices to prove that Grande was willfully blind to the infringement taking

place on its network.  Put simply, there is no way for Grande to "unblind" itself.  This issue,

which Plaintiffs fail to address in their Response, provides another independent basis for entering

summary judgment in Grande's favor.

3.      Plaintiffs deliberately conflate the knowledge standard for contributory
        infringement with the DMCA safe harbor.

Plaintiffs attempt to use the fact that Grande tracks the notices of alleged copyright

infringement it receives—and has started terminating subscribers based on those notices—to

prove Grande has knowledge of specific instances of infringement taking place on its network.

*See* Pls.' Resp. at 20-21.  Plaintiffs' argument improperly conflates the knowledge element

required for proving contributory liability with the steps an ISP must take to avail itself of the

DMCA safe harbor for conduit ISPs in 17 U.S.C. § 512.  The safe harbor, which is not at issue in

the instant briefing, allows an ISP to adopt and reasonably implement a policy for terminating

repeat copyright infringers in appropriate circumstances.  *See generally* Grande's Opp. to Pls'

Mot. for Partial Summ. J. (ECF No. 143).  In contrast, establishing contributory infringement

requires—among other things—that Plaintiffs prove Grande had knowledge of, or under certain

case law was willfully blind to, specific instances of direct infringement taking place on its network.  *See* Grande's Mot. at 15.

The DMCA specifically forecloses Plaintiffs from using Grande's efforts to comply with the safe harbor as a basis for establishing the underlying liability for secondary infringement. *See* 17 U.S.C. § 512(l) ("The failure of a service provider's conduct to qualify for limitation of liability under this section shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense."); *see also CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 552 (4th Cir. 2004).

Any other outcome would give rise to perverse incentives, with ISPs resisting implementation of a safe harbor policy to avoid allegations that every notice of alleged infringement they process establishes knowledge of infringement.

## III.   PLAINTIFFS ARGUMENTS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT REGARDING WILLFUL INFRINGEMENT

Each of the "facts" Plaintiffs offer in support of their willful infringement allegations is unsupported by the evidence.  *See* Pls.' Resp. at 27.

*First*, Grande did not have knowledge of any specific instance of direct infringement taking place on its network, and it did not make a conscious decision not to terminate known infringers.  The undisputed evidence demonstrates that Rightscorp's notices are unverifiable allegations and are not based on the detection of any actual copyright infringement taking place on Grande's network.  *See* Grande's Mot. at 7 (citing Frederiksen-Cross Report, ¶ 46 (3-4) (ECF No. 141-1)), 16-17 (citing Boswell Dep. Tr. 349:23-351:20 (Ex. 1)).

*Second*, Plaintiffs' suggestion that Grande "contemplate[] deleting internal incriminating emails in the wake of the *Cox* verdict" lacks any record support.  Rich Fogle, Grande's Director of Information Systems, clearly explained that he was interested in encouraging employees to

22

comply with the company's record retention policy.  Fogle Dep. Tr. 192:4-25, 195:8-196:21, 211:10-13, 215:10-16 (Ex. 2).  There is simply no evidence that Mr. Fogle or any other employee deleted records for this purpose.  This was confirmed by the corporate representative Grande offered on the topic of document retention, who recently testified under oath—without qualification or hesitation—that no documents have been destroyed in an attempt to avoid liability in this case.  Horton Dep. Tr. 206:3-9 (Ex. 6).

*Third*, Grande has not "profited greatly . . . by continuing to provide Internet service to known repeat infringing customers."  There is no evidence that even one of Grande's subscribers became or remained a Grande customer based on their ability to engage in copyright infringement on Grande's network.  Moreover, Rightscorp itself has admitted that any illegal file-sharing taking place on Grande's network actually imposes substantial costs on Grande. Kemmerer Decl. & Report, ¶¶ 59-65 (ECF No. 147-6).  It is also clear that Grande's profits are not relevant to the entirely separate issues of knowledge and willfulness.

None of Plaintiffs' purported "facts" therefore give rise to a genuine issue of material fact regarding willfulness.  Furthermore, Plaintiffs do not dispute that Rightscorp did not send a single notices of alleged infringement on behalf of any Plaintiff in this case.  This conclusively demonstrates that Grande did not act with reckless disregard of any of Plaintiffs' rights.

## IV.   PLAINTIFFS' DISCOVERY RULE ARGUMENT IS MERITLESS

The Fifth Circuit has expressly stated that a plaintiff must plead sufficient facts in its complaint to put the defendant on notice that it might rely on the discovery rule.  *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 358 (5th Cir. 2008).  Plaintiffs' cited case law, regarding a plaintiff's obligation to plead compliance with the statute of limitations, does not address the discovery rule and is therefore irrelevant to this issue.  Furthermore, Plaintiffs' proffered declaration from the

RIAA is likewise irrelevant, because only *Plaintiffs'* knowledge is relevant—not the RIAA's. The evidence also shows that Rightscorp has been marketing its services to Plaintiffs since at least 2012.  *See* Jang Dep. Tr. 55:3-24 (Ex. 4); Benjamin Dep. Tr. 37:4-7, 39:10-41:10 (Ex. 3). In view of Plaintiffs' allegations and the evidence before the Court, Plaintiffs lack any basis for attempting to invoke the discovery rule in this case.

## V.   PLAINTIFFS FAIL TO RAISE A GENUINE ISSUE OF MATERIAL FACT REGARDING ACTUAL DAMAGES

Plaintiffs ignore the core defect in their claim to actual damages based on Grande's profits:  Plaintiffs' failure to come forward with evidence of Grande's profits that are "reasonably related" to the alleged infringement.  *See* Grande's Mot. at 19 (citing *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010)).  Plaintiffs' cited evidence refers to the purported "lifetime" per-subscriber value to Grande of a "repeat infringer" customer.  Pls.' Resp. at 29.  On its face, the "lifetime" value of such a customer is not "reasonably related" to any alleged infringement because it assumes, without any supporting evidence, that absent the alleged infringement, the subscriber would never have become a Grande subscriber in the first place.  Kemmerer Decl. & Report, ¶ 114 (ECF No. 147-6).

Plaintiffs' purported damages evidence is also devoid of any correlation to the copyrights at issue in this case.  The only opinions offered by Plaintiffs' damage expert, Lehr, purport to identify the total profits Grande earned for every subscriber who ever received two notices of alleged infringement—regardless of whether that notice was generated by Rightscorp or related to a copyright at issue in this case.  In fact, Lehr admits that he did not base his calculation— which does not even purport to be an actual damages opinion—on the list of copyrighted works at issue in this case.  *See* Lehr Report, ¶¶ 41-43 (expressly recognizing that his financial calculations are "not limited to Rightscorp notices or to the specific works in this suit") (ECF

No. 173-74).  As such, this evidence is not in any way "reasonably related" to the infringement alleged in this case and cannot be relied on by Plaintiffs as evidence of actual damages.  The Court should therefore enter summary judgment on Plaintiffs' actual damages claim.

## VI.   PLAINTIFFS' PURPORTED EVIDENCE OF COPYRIGHT OWNERSHIP IS UNTIMELY AND IMPROPER

Plaintiffs do not dispute that when Grande filed its Motion for Summary Judgment, after the close of fact discovery and after Plaintiffs had repeatedly represented that their document production was complete, there was no record evidence that Plaintiffs owned 361 of the 782 unique copyright registrations at issue in this case.  *See* Grande's Mot. at 19-20; Pls.' Resp. at 29-30.  Grande went to great effort and incurred substantial expense in identifying the deficiencies in this evidence.  Plaintiffs have since responded with the untimely production of *thousands* of additional pages of ownership documents, which Grande frankly has not yet had sufficient time to review and analyze.  As detailed in Grande's Motion for Sanctions, the Court should preclude Plaintiffs from relying on this evidence.  *See* ECF No. 156, 189.  Grande should not be forced to relitigate critical issues in this case because Plaintiffs cannot be troubled to timely produce evidence specifically requested in discovery and necessary to their case-in-chief.

## CONCLUSION

For the foregoing reasons, the Court should grant Grande's Motion for Summary Judgment (ECF No. 140) and deny Plaintiffs' Cross-Motion for Summary Judgment as to Liability (ECF No. 172).

Dated:  October 1, 2018

By:  /s/ Richard L. Brophy
    Richard L. Brophy
    Zachary C. Howenstine
    Margaret R. Szewczyk
    ARMSTRONG TEASDALE LLP
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Telephone:  314.621.5070
    Fax:  314.621.5065
    rbrophy@armstrongteasdale.com
    zhowenstine@armstrongteasdale.com
    mszewczyk@armstrongteasdale.com

    J. Stephen Ravel
    Texas State Bar No. 16584975
    J.R. Johnson
    Texas State Bar No. 24070000
    Diana L. Nichols
    Texas State Bar No. 00784682
    KELLY HART & HALLMAN LLP
    303 Colorado, Suite 2000
    Austin, Texas 78701
    Telephone: 512.495.6429
    Fax: 512.495.6401
    Email: steve.ravel@kellyhart.com
          jr.johnson@kellyhart.com
          diana.nichols@kellyhart.com

    Attorneys for Defendant GRANDE
    COMMUNICATIONS NETWORKS LLC

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 1, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy