IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> GRANDE COMMUNICATIONS § <br> NETWORKS LLC and PATRIOT MEDIA § <br> CONSULTING, LLC., § <br> § <br> Defendants. § | Civil Action No. 1:17-cv-00365-DAE-AWA |

**PLAINTIFFS' OPPOSITION TO DEFENDANT
GRANDE COMMUNICATIONS NETWORKS LLC'S MOTION TO EXCLUDE
<u>PROPOSED EXPERT TESTIMONY OF ROBERT A. BARDWELL, Ph.D.</u>**

**INTRODUCTION**

Robert A. Bardwell, Ph.D., is an eminently qualified statistician who, using methods routinely accepted by other courts, demonstrated that thousands of Grande's subscribers repeatedly infringed one or more of Plaintiffs' copyrighted recordings. Grande seeks to exclude this evidence of rampant, repeat copyright infringement on its network, yet Grande has not identified a single way in which Dr. Bardwell's analysis is unreliable. Dr. Bardwell presented materially identical trial testimony based on the same kind of data in *BMG Rights Management (US) LLC v. Cox Communications, Inc.*, No: 1-14-cv-01611 (E.D. Va.) in December 2015. In that case, Cox moved to exclude Dr. Bardwell's testimony on similar grounds as Grande. The district court denied that motion, and the Fourth Circuit affirmed. The Court should do likewise here.

First, Grande contends that Dr. Bardwell improperly offers an opinion on the legal standard or on ultimate legal issues in this case by using the words "infringement" and "repeat infringers." But Dr. Bardwell's use of those terms is entirely proper. He offers a probability analysis and uses those terms in way that is accurate and fully supported by the case law. And Grande's quibbling over terminology has no bearing on the reliability of Dr. Bardwell's analysis.

Second, Grande's challenge to the relevance of Dr. Bardwell's testimony is equally unavailing. Dr. Bardwell's testimony about the volume of repeat infringers on Grande's network relates directly to Grande's knowledge of infringing activity on its network. That knowledge is relevant to statutory damages and Grande's claim that it is eligible for the Digital Millennium Copyright Act's ("DMCA") safe harbor. His testimony also helps show Grande's willfulness, which is relevant to the calculation of statutory damages.

Third, notwithstanding Grande's argument to the contrary, Dr. Bardwell is legally permitted to explain uncontradicted background facts to the jury as context for his opinions.

Finally, Grande's various other attempts to limit Dr. Bardwell's testimony all lack merit.

1

## BACKGROUND

**A. Dr. Bardwell's Qualifications**

Dr. Bardwell has a Ph.D. in mathematical statistics. He has applied his expertise in statistics and probability theory across many different subject matters, for many different clients, as both a consultant and testifying expert. Dr. Bardwell was recently qualified as an expert in the *Cox* case, in which he presented testimony very similar to his testimony in this case. He has been qualified as an **expert 20 times** in previous cases (including *Cox*).[1]

Grande does not actually challenge his qualifications. Instead, Grande takes a perfunctory swipe at Dr. Bardwell by citing three cases in which courts limited his opinions. But none of those cases is relevant, which is presumably why Grande fails to examine or discuss them. All three were employment discrimination cases where Dr. Bardwell analyzed disparate impact data.[2] In *Werede*, the court found that Dr. Bardwell had insufficient data (which was provided by the opposing side),[3] and the *Manley* and *Coleman* courts found that Dr. Bardwell needed to have addressed certain variables relevant to employment discrimination law. None of those criticisms is relevant here, where the available data is robust and voluminous, and Grande identifies no inaccuracies in Dr. Bardwell's opinions. Those cases provide no basis for excluding his testimony here. *See In re Ready-Mixed Concrete Antitrust Litigation*, 261 F.R.D. 154, 163-64 (S.D. Ind. 2009) (discounting prior exclusions in unrelated cases).[4]

---

[1] Ex. A, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No: 1-14-cv-01611 (E.D. Va.), 12/8/2015 (Vol 5. am) Trial Tr. 1014:22-1015:12 [Dkt. 723].
[2] *Manley v. Nat'l ProSource, Inc.*, No. 4:11-cv-2408, 2013 WL 3480385, at *7-*8 (S.D. Tex. July 10, 2013); *Coleman v. Oracle USA, Inc.*, No. 0:09-cv-3472, 2011 WL 2746187, at *6 (D. Minn. July 14, 2011); *Werede v. Allright Holdings, Inc.*, No. 1:03-cv-1167, 2005 WL 2124553, at *5 (D. Colo. Sept. 2, 2005).
[3] Ex. A, *Cox* 12/8/2015 (Vol 5. am) Trial Tr. 1015:13-1017:20 [Dkt. 723].
[4] *See also Radware, Ltd. v. F5 Networks, Inc.*, No. 13-CV-02024-RMW, 2016 WL 590121, at *16 (N.D. Cal. Feb. 13, 2016) (excluding all mention of prior *Daubert* challenges from trial), *order clarified*, No. 5:13-CV-02024-RMW, 2016 WL 9001260 (N.D. Cal. Feb. 22, 2016).

### B. Dr. Bardwell's Opinions

In this case, Dr. Bardwell analyzed data from Rightscorp and from Grande to show the number of individual Grande subscribers who offered to distribute copyrighted works for download on BitTorrent—including the works for which Plaintiffs seek damages. Throughout his report, Dr. Bardwell refers to such activity—properly—as "infringement." The Rightscorp data does not include a subscriber's actual identity, and instead only lists IP addresses.[5] Because Grande IP addresses can sometimes be reassigned to a different subscriber, Dr. Bardwell's analysis shows which IP address corresponds to infringing activity by an individual subscriber.[6]

Dr. Bardwell created a statistical model, materially identical to the one he presented at the *Cox* trial, using standard techniques in probability analysis.[7] The model assesses the likelihood that a particular IP address, sharing a particular song or set of songs, on particular dates, using particular ports,[8] belongs to a single Grande subscriber. The probability model identifies what Dr. Bardwell terms "Verified Accounts"—a 95-percent or higher probability that multiple Rightscorp-identified infringements came from the account of a single Grande subscriber.

His results show extensive and repeat infringement by Grande subscribers. Using Rightscorp's data showing 1,325,221 infringements on Grande's network, Dr. Bardwell identified 10,284 Verified Accounts, of which 4,854 Verified Accounts offered to share at least one of the works at issue in this lawsuit for two days or more (with an average period of 57 days).[9] Further,

---

[5] An IP address is a unique code for the final destination of data being transferred through a network. Grande Mot., Ex. 1 (Bardwell Initial Rpt.), at 7.
[6] Just last week, Grande produced additional information on this point that may be relevant for Dr. Bardwell's opinions, and his analysis of this data is underway. Ex. B, Bardwell Dep. Tr. at 97:25:98-3 (referring to data that Grande allegedly will be producing, but has not yet produced).
[7] *Id.* at 15:18-18:8.
[8] A "port" is an identifier from 0 to 65535 that a computer assigns to any particular group (or "packet") of information transmitted over the internet. Grande Mot., Ex. A, at 7.
[9] Grande Mot., Ex. 1 at 22-23.

3

the mean number of infringements in each Verified Account is 106, and the maximum number of Infringements for a Verified Account is 33,420. Dr. Bardwell's initial report also analyzed infringement data from Grande that validated those results, and did not reveal any errors.[10] A few days prior to Dr. Bardwell's initial report, Grande produced 1,346,353 infringement notices received by Grande. With that additional data, he was able to identify 1,085 additional Verified Accounts that offered one or more of the works in suit for download. As with the prior, incomplete Grande data, the new Grande data supports Dr. Bardwell's analyses.[11]

## LEGAL STANDARD

A qualified expert's testimony is admissible whenever it is relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993); *see* Fed. R. Evid. 702. Testimony does not become "unreliable," and therefore inadmissible, merely because an opposing party raises analytical criticisms or challenges the accuracy of the opinion's underlying data, as those criticisms "go to probative weight rather than to admissibility." *Tyler v. Union Oil Co. of California*, 304 F.3d 379, 392 (5th Cir. 2002) (rejecting *Daubert* challenge of a statistical analysis and its underlying data); *see also Fortune Prod., Inc. v. Bass Pro, Inc.*, No. A-11-CV-1006-LY, 2013 WL 12076932, at *2 (W.D. Tex. Sept. 11, 2013) (Yeakel, J.) (denying *Daubert* motion because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on burden of proof are means of attacking evidence").[12]

---

[10] *Id.* at 24-31.
[11] *Id.*, Ex. 2 at 3, 7.
[12] *See, e.g.*, *Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*, No. SA16CA00485FBESC, 2017 WL 1133506, at *5 (W.D. Tex. Mar. 24, 2017) ("While Wealthmark may disagree with the facts upon which McAleer bases his analysis, the proper vehicle for Wealthmark to challenge McAleer's opinion is cross-examination."); *Browning v. Sw. Research Inst.*, No. No. SA–05–CA–0245–FB, 2006 WL 6549921, at *2 (W.D. Tex. Aug. 17, 2006) (quoting *Hartley v. Dillards, Inc.*, 310 F.3d 1054, 1061 (8th Cir. 2002)) (same).

**ARGUMENT**

I. **DR. BARDWELL CAN USE THE TERM "INFRINGEMENT," AND HIS TESTIMONY ABOUT INFRINGEMENTS IS ENTIRELY PROPER.**

Grande argues that Dr. Bardwell should not be allowed to testify at all because his report uses the terms "infringement" and "repeat infringement." Mot. at 2-7. But Grande's argument is incorrect, and the remedy Grande seeks vastly overreaches. First, Cox sought to preclude Dr. Bardwell's testimony on the same grounds—that his report used the term "infringement"[13]—and the *Cox* court rejected that argument and denied Cox's motion.[14] Dr. Bardwell then testified at the *Cox* trial using the terms "infringement" and "repeat infringement."[15] Cox appealed that ruling, and the Fourth Circuit rejected Cox's argument, holding that the district court did not abuse its discretion because "the court clearly and carefully instructed the jurors that they alone could determine infringement." *BMG Rights Mgt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 314 (4th Cir. 2018). Dr. Bardwell should be permitted to testify in the same manner here.

Second, Dr. Bardwell does not "opine on the applicable legal standard." Mot. at 2. He does not express any opinions on the legal standard applicable to Plaintiffs' claim against Grande for secondary copyright infringement. As Dr. Bardwell explained during his deposition, the terms "infringement" and "repeat infringement" reflect the terminology used in the Rightscorp data, not his opinion about the proper legal standard.[16] Dr. Bardwell confirmed multiple times during his deposition that he is not rendering a legal opinion.[17] He also stated that his opinion does not even

---

[13] *Cox*, Mem. ISO Cox's Motion to Exclude The Testimony of Putative Expert Robert A. Bardwell, PhD, at 8-10. [Dkt. 474].
[14] *Cox*, Order at ¶ 4, [Dkt. 691].
[15] *See*, *e.g.*, Ex. A, *Cox*, 12/8/2015 (Vol 5. a.m.) Trial Tr. at 959:8-960:9, 969:7-17, 975:10-975:24.
[16] Ex. B, Bardwell Dep. Tr. at 59:24-60:25.
[17] *Id.* at 62:1-8 ("If you're saying am I going to be testifying about the relationship of this data and copyright law, the answer is no."); *see also id.* at 60:14-17 ("Q. Are you intending to opine to the jury at trial on what it means to be an infringer under the copyright law? A. No.")

5

*depend* on the legal definition of copyright infringement because the probability analysis stands on its own, irrespective of what term is used.[18] Grande's argument that expert opinion on the appropriate legal standard should be excluded is therefore beside the point.[19]

Nor does Dr. Bardwell "invade the province of the jury," Mot. at 5, by opining on the ultimate legal issue—whether Grande is liable for secondary copyright infringement. Grande's citations to cases precluding experts from testifying about the ultimate issue of liability are thus entirely irrelevant. *Id*. at 2-3. For example, the *Akasanse* court affirmed the exclusion of a lawyer-expert's testimony that officers and directors breached their fiduciary duties (an ultimate issue in dispute).[20] Similarly, in *Estate of Sowell*, the court affirmed the exclusion of testimony on "what a reasonable fiduciary would do when confronted with facts identical to those in this case."[21] And in *Owen*, the court ruled that the trial court properly sustained an objection to a question about the "cause of the accident."[22] Grande's other non-binding cases are no more persuasive because they all exclude opinions on *ultimate legal issues*—even though Dr. Bardwell does not opine on any ultimate legal issues.[23] At trial, Dr. Bardwell will instead describe his probability model, explain why it is relevant and appropriate in this case based on the data available, and provide his results of applying that model to data from Rightscorp and from Grande.

Third, Dr. Bardwell's use of the term "infringement" is neither confusing nor incorrect.

---

[18] *Id.* at 59:9-61:25, 109:4-14, 115:2-9.

[19] In *Morris v. Equifax Info. Servs., LLC*, the court excluded a lawyer, representing himself *pro se*, from designating himself as an expert on "contractual liability under Texas law." No. CIV.A. H-04-423, 2005 WL 5976334, at **6-7 (S.D. Tex. Jan. 19, 2005), *cited in* Mot. at 3. In *Washington v. City of Waldo, Fla.*, the court excluded testimony opining on the definition of a lawful arrest that "seemingly contradicts binding Supreme Court and Eleventh Circuit law regarding probable cause." No. 1:15-CV73-MW/GRJ, 2016 WL 3545909, at *4 (N.D. Fla. Mar. 1, 2016).

[20] *Akanase v. Fatjo*, 13 F.3d 657, 672-73 (5th Cir. 1997).

[21] *Estate of Sowell v. United States*, 198 F.3d 169, 171 (5th Cir. 1999).

[22] *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983).

[23] For example, in *Morris* the lawyer-expert was precluded from opining on whether he was jointly liable on a credit card. 2005 WL 5976334, at **6-7.

6

Dr. Bardwell defines this functional term clearly in his report as "a single observation of a copyrighted work being available for sharing."[24] Consistent with that definition, Dr. Bardwell uses the term "repeat infringement" to mean a Verified Account.[25] And he uses both terms consistently throughout his initial and rebuttal reports. While Dr. Bardwell is clear that he is not presenting a legal opinion, his definition of "infringement" is legally correct. Every district court in this Circuit to have addressed the question has found that offering to distribute recordings through online file-sharing is actionable as copyright infringement—a conclusion consistent with Fifth Circuit law on direct infringement.[26] That is exactly what the Rightscorp system detects—offering to distribute recordings on the online file-sharing program BitTorrent—and Dr. Bardwell's model uses those detected infringements. Where, as here, experts use accurate legal terms—without instructing on the law or reaching ultimate legal conclusions—they are permitted to testify using those terms. *See Trishan Air, Inc. v. Dassault Falcon Jet Corp.*, No. CV 08-7294-VBF(JTLX), 2011 WL 13182976, at *3 (C.D. Cal. Apr. 19, 2011) (denying *Daubert* motion to preclude expert from relying on regulations and "terminology derived from applicable law").[27]

Fourth, even if Grande's reasons for excluding Dr. Bardwell's opinions were correct (which they are not), its motion greatly overreaches. The straightforward remedy would be simply to instruct Dr. Bardwell to use *alternate terms* instead of "infringement" or "repeat infringement." *See, e.g.*, *Wealthmark Advisors Inc. v. Phoenix Life Ins. Co.*, No. SA16CA00485FBESC, 2017

---

[24] Grande Mot., Ex. 1, at 5.
[25] *Id.*
[26] Pls' Response in Opp. to Mot. and Cross-Mot. for Summ. J. at 11-13 [Dkt. 172]; Pls' Reply ISO Cross-Mot. for Summ. J. at 2-3 [Dkt. 209].
[27] *See also Nationwide Transp. Fin. v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1059 (9th Cir. 2008) ("[A] district court does not abuse its discretion in allowing experts to use legal terminology…"); *Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) ("A witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. Indeed, a witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms.").

WL 1133506, at *5 (W.D. Tex. Mar. 24, 2017) (permitting expert to testify as to factual analysis, but not as to meaning of legal terms or legal conclusions).

### II.  DR. BARDWELL'S TESTIMONY REGARDING INFRINGEMENTS OF OTHER WORKS IS BOTH RELEVANT AND RELIABLE.

Dr. Bardwell identified hundreds of thousands of infringements memorialized in Rightscorp infringement data that pertain to works other than those asserted in this litigation, and 5,430 Verified Accounts that repeatedly infringed others' copyrights.[28]  Grande asserts this testimony is "plainly not relevant to any issue in this case," Mot. at 6, but that is incorrect.  A central issue in this case is whether Grande had knowledge of infringement on its network.  If Grande tries to dispute that it had knowledge of rampant infringement by its subscribers, Dr. Bardwell's analysis counters that narrative by demonstrating that Grande received notice of extensive infringement and repeat infringement by Grande users.  The extent of infringing activity is also directly relevant to statutory damages, which considers, as a factor, Grande's knowledge and willfulness.  *See* 17 U.S.C. § 504(c)(2); *see also Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574, 584 (6th Cir. 2007).

In addition, Grande has asserted the DMCA safe harbor as an affirmative defense.  But Grande is eligible for the safe harbor only if Grande adopted and reasonably implemented a policy for terminating repeat infringers.  Dr. Bardwell's testimony about the large number of repeat infringers on Grande's network—combined with Grande's failure to terminate any repeat infringers—is directly relevant to whether Grande is entitled to the safe harbor.[29]

---

[28] Grande Mot., Ex. 1, at 23.

[29] Grande also incorrectly argues that Dr. Bardwell's testimony is "facially unreliable" because he has not personally confirmed that *someone* owned *a* copyright for the Rightscorp notices regarding other works not at issue in this case.  Mot. at 6.  But this is a red herring.  Dr. Bardwell is not offering testimony as to the ownership of copyrighted works (either the works in suit here or any others); other witnesses are addressing that issue for Plaintiffs.

### III. DR. BARDWELL SHOULD BE PERMITTED TO DESCRIBE UNCONTRADICTED FACTS ON WHICH HIS OPINIONS RELY.

Although it has not identified a single incorrect statement in Dr. Bardwell's report or his deposition testimony about internet protocols, file sharing on peer-to-peer networks, or Rightscorp's system, Grande seeks to preclude Dr. Bardwell from describing these background facts when he explains his analysis. There is no factual or legal basis for Grande's request. Dr. Bardwell analyzes the patterns in Rightscorp's data, including IP addresses and files shared using BitTorrent, to identify repeat infringement. The concepts of internet protocols, file sharing, and Rightscorp's system are thus necessary background to understand his analysis—not "opinions." Without Dr. Bardwell's being able to mention or describe those basic facts, the jury will not be able to fully understand his analysis. This is why courts routinely reach the common sense conclusion that experts may describe factual background necessary for their opinions. *See, e.g.*, *Nunn v. State Farm Mut. Auto. Ins. Co.*, No. 3:08-CV-1486-D, 2010 WL 2540754, at *12 (N.D. Tex. June 22, 2010) (allowing expert testimony about background information). Dr. Bardwell provides background and context for his opinions and does so using his general knowledge of uncontroverted facts, such as how BitTorrent and IP addresses work. This is a well-accepted and proper approach, and Grande does not cite a single case to the contrary.

### IV. GRANDE'S OTHER MISCELLANEOUS ARGUMENTS ALSO FAIL.

Grande's scattershot motion also includes three miscellaneous arguments that the Court should reject. First, Grande seeks to preclude Dr. Bardwell from testifying about the approximately 59,000 files that were downloaded from Grande's subscribers and that contain the works for which Plaintiffs seek damages. Mot. at 8-9. But Grande mischaracterizes Dr. Bardwell's written testimony, which does not rely on those downloads. He only raised them in response to a deposition question by Grande's counsel asserting that Dr. Bardwell has "zero

9

evidence of any downloads taking place."[30]  Grande may not like the answer—the downloads are devasting evidence of Grande's liability—but that is no ground for excluding it.

Second, Grande's effort to exclude Dr. Bardwell from testifying on copyright damages again mischaracterizes his opinions and testimony.  Mot. at 9.  As Dr. Bardwell confirmed at his deposition, he has no opinions on the method for calculating damages.[31]  Dr. Bardwell instead explains how Grande's proposed damages expert, Jonathan Kemmerer, misconstrued Dr. Bardwell's results and the Rightscorp data on which Dr. Bardwell relied in Mr. Kemmerer's damages report.[32]  That is not an opinion about a *method* for calculating damages; it is testimony about an *input* for Mr. Kemmerer's flawed damages opinion.  Indeed, Dr. Bardwell confirmed at his deposition that he is merely critiquing Mr. Kemmerer's inputs.[33]  Dr. Bardwell is fully qualified to discuss both the data and his analysis and to critique Mr. Kemmerer's incorrect use of both.

Third, Grande seeks to exclude analysis from Dr. Bardwell's rebuttal report because it asserts that Grande's production of 1,346,353 infringement notices could have been addressed in his initial report.  Mot. at 9-10.  That argument is incorrect.  Grande produced that voluminous data on July 6, 2018—*one week* before the July 13, 2018 initial expert report deadline.  It was not possible for Dr. Bardwell to analyze those 1.3 million notices in a mere week, and so he included the analysis in his rebuttal report.  Because his initial report could not have practically addressed that data, the Court should reject Grande's effort to exclude the analysis on that basis.

## CONCLUSION

Plaintiffs respectfully request that the Court deny Grande's motion in its entirety.

---

[30] Ex. B, Bardwell Dep. Tr. at 81:18-82:23.
[31] *Id.* at 110:10-13. ("Q. But you don't intend to offer opinions in this case on actual damages or statutory damages.  Is that correct?  A. That's correct").
[32] Grande Mot., Ex. 3, at 11-12.
[33] Ex. B, Bardwell Dep. Tr. at 109:4-14 ("…Mr. Kemmerer, if he is relying on our counts of -- my counts of infringement, he's undercounting for damages purposes.").

10

Dated: October 31, 2018    Respectfully submitted,


By:  /s/ Robert B. Gilmore
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Cipollone Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

11

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 31, 2018 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting