**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 1:17-cv-00365-DAE-AWA |
| | ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S**
**MOTION TO EXCLUDE PROPOSED EXERT TESTIMONY**
**OF BARBARA FREDERIKSEN-CROSS**

Pursuant to Federal Rule of Evidence 702, Defendant Grande Communications Networks, LLC ("Grande") moves to exclude the proposed expert testimony of Barbara Frederiksen-Cross. Her opinions should be excluded for five independent reasons, each of which demonstrates the unreliable, unsupported, and *ipse dixit* nature of her proposed testimony.

*First*, Ms. Frederiksen-Cross intends to opine that Rightscorp's software accurately detects when a subscriber offers to share a file through BitTorrent.  This testimony should be excluded because she admitted in deposition that she has no way of knowing how the Rightscorp software actually functioned at any point in time due to the lack of documentation and the manual nature of its operation.  *Second*, Ms. Frederiksen-Cross intends to opine that the notices generated by the Rightscorp system contain accurate information regarding instances of file sharing by Grande's subscribers.  This testimony should be excluded because she admits she did not review or analyze any of the materials on which those notices are based.  *Third*, Ms. Frederiksen-Cross intends to opine on the ultimate issue of "infringement" in this case.  That testimony should be excluded because it improperly usurps the role of the Court and jury and because she admitted lacking a sufficient understanding of what is necessary under the law to establish copyright infringement.  *Fourth*, Ms. Frederiksen-Cross intends to offer testimony on the operation of BitTorrent clients and Rightscorp's ability to detect files shared using that software. This testimony should be excluded because she has no background or education in BitTorrent software or protocols.  *Fifth* and finally, the "new" opinions set forth in Ms. Frederiksen-Cross's "rebuttal" report should be excluded because they are untimely, represent improper rebuttal testimony, and contradict the opinions expressed in her opening report.

## ARGUMENT

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides the analytical framework for

determining whether expert testimony is admissible under Federal Rule of Evidence 702. 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court emphasized that district courts are assigned a "gatekeeping role" with respect to the admissibility of expert testimony. *Daubert* thus entrusts the district court with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597.  For expert testimony to be reliable, it must (1) be "based on sufficient facts or data," (2) be "the product of reliable principles and methods," and (3) have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. For expert testimony to be relevant, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702).

## I. THE COURT SHOULD PRECLUDE MS. FREDERIKSEN-CROSS FROM OPINING ON THE OPERATION OF RIGHTSCORP'S SOFTWARE

Ms. Frederiksen-Cross intends to opine on the operation of Rightscorp's software and its ability to reliably detect a subscriber offering to share a file using BitTorrent or other peer-to-peer sharing software.  These opinions concern the alleged functionality of the Rightscorp software during the period from 2014 until today.  In addition, she intends to testify that Rightscorp's software is "effective," "well developed," and "accurate."  *See, e.g.*, Frederiksen-Cross Report ("F-C Report"), ECF No. 177-1, ¶ 18.  The Court should prevent Ms. Frederiksen-Cross from offering these opinions to the jury because she admitted in deposition that she is incapable of articulating how the Rightscorp software functioned at any given time.  As a result, her opinions on the operation and "accuracy" of the software constitute unreliable *ipse dixit* testimony that is untethered to any actual evidence in the record.

In deposition, Ms. Frederiksen-Cross explained that the Rightscorp software is merely a collection of individual functions that are manually executed by Rightscorp's programmer (Mr.

Gregory Boswell) through a JSP page—essentially a webpage that allows the programmer to click buttons that execute individual functions within the software. *See* Frederiksen-Cross Deposition ("F-C Dep. Tr.") at 62:17-63:2 (Ex. 1) ("[A]t the very heart of all of these functions, they basically kicked off by starting a manual process, the interactions with the JSP page.").

Ms. Frederiksen-Cross further explained that, because these individual functions are manually executed, it is impossible for her to know how the Rightscorp software actually operated at any given time:

> Q: Sitting here today, are you able to tell me how Mr. Boswell ran the Rightscorp software on a given day at a given time?
>
> A: For any specific date you would pull out of the air?
>
> Q: Yes.
>
> A: In some cases, I might be able to do that <u>but as a general category, I probably could not…</u>.

*Id*. at 66:17-24 (emphasis added).

Throughout her deposition, she reiterated that it was impossible for her to discern how the Rightscorp software operated at any particular point in time, because the software is undocumented and the functions were executed manually by Rightscorp's software programmer:

> Q: Well, my understanding of your most recent testimony is that without speaking to Mr. Boswell, you don't know how the Rightscorp system is actually being run. Correct?
>
> A: There is other inferential data, for instance, the records that are collected by the Rightscorp system that could be used as an aid to understanding when certain changes were made. <u>But they won't be dispositive with respect to all changes</u>.

*Id.* at 78:17-79:3. (emphasis added); *see also id.* at 195:3-9 ("Q: The only way that we know for sure is to test Mr. Boswell's memory. Right? A: With respect to code where multiple functions – multiple copies of code do the same function. And to know which of those was being used at a particular period of time, <u>one would have to seek guidance from Mr. Boswell.</u>") (emphasis

3

added).

The only other potential sources of information regarding the operation of the Rightscorp software are the JSP pages used to execute the software and any documentation recorded by the programmer regarding how the software was configured and executed. But, Ms. Frederiksen-Cross admitted she never reviewed any of the JSP pages Mr. Boswell used to execute the software. *Id.* at 63:18-64:1. She also admitted she was unaware of any records documenting how the Rightscorp programmer executed the software at any particular point in time:

> Q: So if I understand your testimony, in order to understand how the Rightscorp system is working at some given time, we have to speak to Mr. Boswell. Is that correct?
>
> A: There may be others you could speak to.
>
> Q: But some human needs to be interviewed?
>
> A: In this specific instance, *I've not seen other formal records, contemporaneous records that would say on this day, we did this*. Sometimes you get those in production. *But in this case, I have not seen anything*. *It's my understanding they weren't that formal in their record keeping* because Mr. Boswell was basically the sole programmer.

*Id.* at 66:3-16 (emphasis added); *see also id.* at 80:3-11 ("[I]f you're asking is there a formal record [of how the Rightscorp system as operated over time], I'm not aware of any. I'm not saying they don't exist. I'm just saying I'm not aware of any.").

Ms. Frederiksen-Cross's inability to determine how the Rightscorp system operated at any given time is demonstrated by her failure to properly describe its operation in her expert report. In her opening report, Ms. Frederiksen-Cross opined that in 2018 Rightscorp executed a function named Test5.java to detect copyrighted materials purportedly offered for distribution through BitTorrent. F-C Report, ECF No. 177-1, ¶ 59. During her deposition, she was forced to admit that, despite reviewing the source code in use at the time, her understanding of the operation of the software was incorrect. She only became aware of this flaw in her report after

4

Mr. Boswell admitted in his own deposition that he changed the manual process by which he operated the software.  F-C Dep. Tr. at 77:12-20 (Ex. 1) ("…Based on Mr. Boswell's testimony in his deposition, I believe it to be incorrect.").

When asked how she could be wrong about something as fundamental as how the system was being operated to detect file sharing, she explained—once again—that it was impossible for her to discern how or whether individual functions of the Rightscorp system were operating at any given time.[1]  *Id.* at 77:21-78:9 ("Q: Did you or someone on your team review the actual 2018 source code to determine whether or not Test5.java was being run in 2018 as part of the Rightscorp system?  A:  *I think I told you that's not usually discernible from the materials that were available to us*.  We could identify that there was a new version in the program and *based on our conversations of what Mr. Boswell believed that to be the correct version*.  And then as it turns out, *he provided different information during his deposition* . . . .") (emphasis added).

Based on the foregoing, it is clear that Ms. Frederiksen-Cross is incapable of determining how the Rightscorp system actually operated at any given time.  As a result, the testimony she intends to offer regarding how the system operated and the "accuracy" of the system are necessarily unreliable and nothing more than inadmissible *ipse dixit* testimony.[2]  "[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion

---

[1] Ms. Frederiksen-Cross also admitted that her report wrongly described the operation of another function of the Rightscorp software named SampleIt3.  F-C Dep. Tr. at 215:3-8 ("Q:  Is your discussion of SampleIt3 in this Expert Report accurate?  A:  No.").  She made this mistake despite also reviewing the source code for that function.  *Id.* at 217:1-8.

[2] Her deposition testimony is littered with admissions that she cannot accurately discern the operation of the Rightscorp system at any given point in time.  *See, e.g.,* F-C Dep. Tr. at 208:18-209:25 ("Q: *Can you tell me with certainty how Rightscorp processed bit fields in 2017*, with certainty?  A:  I would want to see the code from 2017.  Q:  You haven't seen that code.  Correct?  A:  *I have not been provided that code*. . . .") (emphasis added); *see also id.* at 231:11-25.

evidence that is connected to existing data only by the ipse dixit of the expert." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012) (citing *Joiner,* 522 U.S. at 146); *see also Jacked Up, LLC v. Sara Lee Corp*., 291 F. Supp. 3d 795, 806-10 (N.D. Tex. 2018) (excluding testimony based on assumptions that lacked an evidentiary basis).

## II. THE COURT SHOULD PRECLUDE MS. FREDERIKSEN-CROSS FROM OFFERING OPINIONS ON THE ACCURACY OF RIGHTSCORP NOTICES

Ms. Frederiksen-Cross intends to opine that Rightscorp's notices accurately document instances of infringement by ISP subscribers. *See, e.g*., F-C Report, ECF No. 177-1, ¶ 18 ("The Rightscorp System prepares and sends accurate Infringement Notice emails to ISPs, including Grande, which reflects the information associated with each infraction, including the IP address, date, identification of the copyrighted work, and port number."). Ms. Frederiksen-Cross should not be permitted to offer these opinions to the jury because her testimony is not based on the review of any record evidence and is, therefore, pure speculation.

Ms. Frederiksen-Cross admitted in deposition that she did not independently assess any of the information presented in Rightscorp's notices. She admitted she does not know whether the songs at issue are registered with the Copyright Office or owned by the Plaintiffs. F-C Dep. Tr. at 169:5-23 (Ex. 1). She admitted that she performed no digital fingerprinting or other analysis to determine whether the works purportedly detected on subscriber computers are actual copies of asserted works. *See id*. at 137:21-138:1 ("I have not independently compared that copy against the deposit copy for the work. So, when you say copyrighted work, I am using the copyrighted work, that phrase as Rightscorp uses it."). Finally, she admitted that she did not review any information Rightscorp purportedly collected from a given subscriber and reflected in the Rightscorp notices, including IP addresses, port information, and the date on which the alleged infraction occurred. *See id.* at 210:1-4 (Q: "Have you seen bit field data recorded by

6

Rightscorp in this case?" A: "As I sit here, I don't recall specifically if I have or haven't."); 213:11-16 (Q: "Do you know if Rightscorp saved the data transmitted as part of the BitTorrent hand-shaking process with any individual Grande subscriber?" A: "The actual network traffic data?  I believe Mr. Boswell has testified they did not and I have not seen that data if they did.") (emphasis added).

Put simply, Ms. Frederiksen-Cross has not analyzed the validity of the information reflected in the Rightscorp notices at issue in this case.  As a result, any opinions she may offer regarding the "accuracy" of the Rightscorp notices would be unreliable *ipse dixit* testimony not tethered to any record evidence in the case.

### III. THE COURT SHOULD PRECLUDE MS. FREDERIKSEN-CROSS FROM DEFINING LEGAL TERMS AND OFFERING LEGAL CONCLUSIONS

Throughout her report, Ms. Frederiksen-Cross provides opinions relating to Rightscorp's ability to detect "infringement" and "repeat infringement," specifically with respect to Grande subscribers. *See, e.g.*, F-C Report, ECF No. 177-1, ¶¶ 18, 63. 71, 73, 77.  What constitutes copyright infringement is a legal question to be determined by the Court.  Ms. Frederiksen-Cross's opinions with respect to these terms are irrelevant and constitute impermissible legal conclusions.  For these reasons, the Court should prevent Ms. Frederiksen-Cross from offering testimony on the issues of "infringement" or "repeat infringement" at trial.

An expert witness is not permitted to opine on applicable legal standards.[3]  *See, e.g., Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1997), *see also Morris v. Equifax Information*

---

[3] Ms. Frederiksen-Cross's testimony is further unreliable and inadmissible because she admitted in deposition that her use of the term "infringement" is informed solely by conversations with Plaintiffs' counsel.  *See* F-C Dep. Tr. at 134:12-16 (Ex. 1) ("That is a lay person's understanding based on the guidance I've been given by counsel, <u>and it is not an understanding I have as a person deeply knowledgeable of the law, who has studied that particular aspect of it</u>.") (emphasis added).

*Servs., LLC*, No. 4:04-cv-00423, 2005 WL 5976334, at \*6 (S.D. Tex. Jan. 19, 2005) ("Morris's proposed expert testimony is improper because it expresses a legal opinion and usurps the Court's role in instructing the jury on the law."); *Estate of Sowell v. U.S.*, 198 F.3d 169, 171-72 (5th Cir. 1999) ("affirming exclusion of expert testimony as to whether a fiduciary was "acting reasonably"); *Owen v. Kerr-McGee Corp.*, 698 F.2d 236, 240 (5th Cir. 1983) ("Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant.").

Ms. Frederiksen-Cross also intends to offer opinions regarding the status of various Grande subscribers as "repeat infringers." F-C Report, ECF No. 177-1, ¶¶ 18, 71, 77, 127, 129, 130. The definition and existence of "repeat infringers" relates to Grande's safe harbor defense under the DMCA. *See* 17 U.S.C. § 512(a), (i)(1)(A). It is the Court's role to instruct the jury on the meaning of "repeat infringement," not Ms. Frederiksen-Cross's. *See In re Settoon Towing, L.L.C.*, 859 F.3d 340, 345 (5th Cir. 2017) ("[The court's] task is to discern the meaning of a statute."); *Washington v. City of Waldo, Florida*, No. 1:15-cv-00073, 2016 WL 3545909, at \*4 (N.D. Fl. Mar. 1, 2016) ("Expert testimony is also not helpful, and indeed potentially confusing for the jury, when it purports to articulate the requirements of the law, especially when those requirements differ from the actual requirements set forth in binding legal authorities.").

Based on the foregoing, the Court should exclude Ms. Frederiksen-Cross's opinions on "infringement," "infringers," and "repeat infringement" because that testimony invades the province of the Court, is unreliable opinion testimony, and would only serve to confuse the jury.

### IV. THE COURT SHOULD PRECLUDE MS. FREDERIKSEN-CROSS FROM OFFERING OPINIONS ON BITTORRENT TECHNOLOGY

Ms. Frederiksen-Cross intends to offer expert testimony regarding the BitTorrent protocol, the operation of BitTorrent software, and similar topics regarding other peer-to-peer

8

file sharing offerings.  F-C Report, ECF No. 177-1, ¶¶ 30-42.  The Court should exclude this testimony because Ms. Frederiksen-Cross is not an expert in BitTorrent or other peer-to-peer file sharing protocols.

Ms. Frederiksen-Cross does not have any formal education relating to BitTorrent or other peer-to-peer file sharing software and/or protocols.  F-C Dep. Tr. at 40:14-19 (Ex. 1).  Although she claimed in deposition that she had read "the protocols" and researched "the software," her expert report fails to identify a single article or piece of source code she reviewed that relates to any peer-to-peer file sharing protocol or source code.  *Id.* at 40:14-41:47:14 (admitting that her expert report is devoid of any citation to source code, protocols, or other papers relating to BitTorrent or other peer-to-peer file sharing technologies).[4]

Because she lacks any relevant education or documented experience, Ms. Frederiksen-Cross should not be permitted to offer expert testimony on BitTorrent or other peer-to-peer file sharing software and/or protocols.  The fact that Ms. Frederiksen-Cross is a skilled computer programmer does not qualify her to speak on all computer-related technologies.  *See, e.g., Marsteller v. Stanley Works*, No. 1:09-cv-00473-LY, 2010 WL 11571038, at *2 (W.D. Tex. Aug. 26, 2010) (granting motion to exclude "highly credentialed" mechanical engineer from testifying

---

[4] Ms. Frederiksen-Cross was unable to specifically identify any of the materials she reviewed, and she admitted those materials did not inform her opinions in this case.  *See, e.g.*, F-C Dep. Tr. at 46:15-47:4.  Even if she had relied on them when forming her opinions, the materials on which her opinions are based should have been disclosed so that Grande could meaningfully cross examine her in deposition.  *See, e.g., Thieriot v. Jaspan Schlesigner Hoffman LLP*, 2:07-cv-5315, 2011 WL 4543308, at *3 (E.D.N.Y. Sept. 29, 2001) ("experts are obligated to disclose information that was relied upon in forming their opinions, as well as information that was not relied upon, but was considered by the expert").  Ms. Frederiksen-Cross's failure to properly disclose those materials is a further basis for excluding her expert testimony on the topic of BitTorrent and other peer-to-peer file sharing protocols.  *See, e.g.*, *Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012) (confirming exclusion of expert who "failed to present the scientific evidence upon which those statements were founded").

9

about pneumatic nail guns because "he [did] not have sufficient qualifications by training or experience" in that particular area.).

### V. THE COURT SHOULD PRECLUDE MS. FREDERIKSEN-CROSS FROM OFFERING OPINIONS NOT DISCLOSED IN HER OPENING REPORT

Ms. Frederiksen-Cross should not be permitted to offer opinions at trial that were first disclosed in her late-disclosed, improper "rebuttal" report. Grande's arguments regarding the exclusion of this testimony are set forth in its currently-pending Motion to Strike. *See generally* ECF No. 176 ("Defendant's Motion to Strike 'Rebuttal' Expert Report of Barbara Frederiksen-Cross"). Because all of the new opinions and evidence presented in Ms. Frederiksen-Cross's "rebuttal" report could have been included in her original report, those opinions and evidence should be stricken. *See, e.g., In re High-Tech Employee Antitrust Litig.*, No. 5:11-cv-2509, 2014 WL 1351040, at *12 (N.D. Cal. Apr. 4, 2014) ("Plaintiffs will not be allowed to 'sandbag' Defendants with new analyses that should have been included at the very least in [its expert's] opening merits report.").

### CONCLUSION

For the foregoing reasons, the Court should grant Grande's Motion and exclude the proposed expert testimony of Barbara Frederiksen-Cross.

Dated: November 1, 2018

By: /s/ Richard L. Brophy
 Richard L. Brophy
 Zachary C. Howenstine
 Margaret R. Szewczyk
 ARMSTRONG TEASDALE LLP
 7700 Forsyth Blvd., Suite 1800
 St. Louis, Missouri 63105
 Telephone:  314.621.5070
 Fax:  314.621.5065
 rbrophy@armstrongteasdale.com
 zhowenstine@armstrongteasdale.com
 mszewczyk@armstrongteasdale.com

 J. Stephen Ravel
 Texas State Bar No. 16584975
 J.R. Johnson
 Texas State Bar No. 24070000
 Diana L. Nichols
 Texas State Bar No. 00784682
 KELLY HART & HALLMAN LLP
 303 Colorado, Suite 2000
 Austin, Texas 78701
 Telephone: 512.495.6429
 Fax: 512.495.6401
 Email: steve.ravel@kellyhart.com
  jr.johnson@kellyhart.com
  diana.nichols@kellyhart.com

 Attorneys for Defendant GRANDE
 COMMUNICATIONS NETWORKS LLC

11

## CERTIFICATE OF SERVICE

The undersigned certifies that on November 1, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy
