# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> ) <br> vs. ) <br> ) <br> ) <br> GRANDE COMMUNICATIONS ) <br> NETWORKS LLC, ) <br> ) <br> Defendant. ) <br> ) | No. 1:17-cv-00365-DAE-AWA |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS, LLC'S
MOTION TO EXCLUDE PROPOSED EXPERT
<u>TESTIMONY OF WILLIAM H. LEHR</u>**

Pursuant to Federal Rule of Evidence 702, Defendant Grande Communications Networks, LLC ("Grande") moves to exclude the proposed testimony of Dr. William H. Lehr, who intends to provide generalized testimony about the music industry, the harms caused by media piracy, and the purported value of alleged "repeat infringer" subscribers—untethered from any of the specific facts and issues in this case.  In *BMG Rights Management (US) LLC v. Cox Communications, Inc*. ("*Cox*"), the district court excluded Dr. Lehr's proposed testimony on nearly all of the same issues he intends to address in this case.  *See* Order at 1, No. 1:14-cv-1611 (E.D. Va. Nov. 25, 2015) (hereinafter, "*Cox Daubert* Order") (Ex. 5).

The problems with Dr. Lehr's proposed testimony are legion.  Most significantly, Dr. Lehr seeks to offer artificially-inflated and facially irrelevant opinions about Grande's economic incentives to permit repeat copyright infringement—*i.e.*, the "lifetime value" to Grande of alleged "repeat infringers."  To arrive at astronomical figures ranging from $50 million to more than $100 million, Dr. Lehr does not limit his "analysis" to the copyright holders, copyrights, and instances of alleged infringement that are actually at issue in this case, but instead calculates the purported lifetime value of virtually every Grande subscriber who has ever been accused of copyright infringement more than one time.  Dr. Lehr also ventures well outside his expertise and the evidence in this case, by seeking to opine on the economics of the music industry, the harms caused by all types of media piracy, and the supposed public policy benefits of imposing copyright infringement liability on Grande.

For the foregoing reasons, as discussed in detail below, the Court should exclude all of Dr. Lehr's proposed expert testimony as irrelevant, unreliable, and otherwise inadmissible under Federal Rule of Evidence 702 and *Daubert*.

1

**LEGAL STANDARD**

*Daubert v. Merrell Dow Pharmaceuticals, Inc*. provides the analytical framework for determining whether expert testimony is admissible under Federal Rule of Evidence 702.  509 U.S. 597 (1993).  In *Daubert*, the Supreme Court emphasized that district courts are assigned a "gatekeeping role" with respect to the admissibility of expert testimony.  *Daubert* thus entrusts the district court with "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand."  509 U.S. at 597.  For expert testimony to be reliable, it must (1) be "based on sufficient facts or data," (2) be "the product of reliable principles and methods," and (3) have "reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.  For expert testimony to be relevant, it must "assist the trier of fact to understand the evidence or to determine a fact in issue."  *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702).

**ARGUMENT**

I. **THE COURT SHOULD PRECLUDE DR. LEHR FROM TESTIFYING ABOUT THE VALUE OF GRANDE INTERNET SUBSCRIBERS**

Section VII of Dr. Lehr's initial report includes two calculations that purport to quantify the "lifetime value" of an individual Grande high-speed Internet subscriber—one calculation based on Grande's alleged gross margins, and another based on the price for which Grande was acquired in 2017.  Lehr Report, ¶¶ 27-35 & Ex. 11, ¶¶ 36-37 & Ex. 12 (Ex. 1).  This is nothing more than a transparent attempt by Plaintiffs to present the jury with large dollar figures in a quest for a damages award that has no relationship to the facts of this case and no support in the law.  Indeed, Dr. Lehr repeatedly conceded that he is not offering any opinion on copyright infringement damages.  *See* Lehr Dep. Tr. 17:22-23 ("There is no specific definition of the

2

damages that I believe are the right number."), 73:15-17 ("I don't think that it's feasible to estimate the specific harm to – to a rights holder."), 198:3-10 ("I believe that my understanding of the Rightscorp data doesn't allow you to understand the entirety of the actual infringing activity, and, you know, because it doesn't allow me to do that, it doesn't allow me to then basically develop a reasonable estimate of what the economic harm or lost sales are . . . .") (Ex. 4).  Dr. Lehr's opinions will only serve to confuse and mislead the jury.

Dr. Lehr's calculation of lifetime subscriber value based on gross margins is irrelevant and unreliable because it is artificially inflated with revenues from cable television and phone services.  *See* Lehr Report, ¶¶ 31-35 (Ex. 1); Lehr Dep. Tr. 115:5-21 (Ex. 4).  To the extent Plaintiffs might seek disgorgement of Grande's profits as damages, Plaintiffs cannot credibly contend that revenues Grande earned from cable television and voice services are "attributable to the infringement."  17 U.S.C. § 504(b).  Dr. Lehr offers no legal or evidentiary basis for tying such revenues to the infringement at issue in this case.  *See MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) ("In meeting its initial burden [under § 504(b)], . . . a copyright holder must show more than the infringer's total gross revenue from *all* its profit streams.  Rather, 'gross revenue' refers only to revenue *reasonably related* to the infringement.") (emphasis in original) (quotations, citations, & alterations omitted).

Dr. Lehr's calculation of lifetime subscriber value based on the acquisition price paid for Grande in 2017 should be excluded for the same reasons.  *See* Lehr Report, ¶¶ 36-37 (Ex. 1).  Additionally, this calculation is even more inflated and unreliable because it assumes that 100% of the acquisition price is attributable to the value of subscribers.  Dr. Lehr simply took the acquisition price and divided it by the total number of Grande's subscribers.  Lehr Report, ¶ 37 & Ex. 12 (Ex. 1).  Dr. Lehr acknowledges that all of Grande's assets were included in the

transaction, but he made no attempt to segregate the value of those assets.  *See id.*; *see also* Lehr Dep. Tr. 124:7-125:12 (Ex. 4).  And finally, Dr. Lehr seeks to present this calculation with reference to the prices paid to acquire other multiple system operators ("MSOs")—irrelevant information that is clearly just another attempt to present large dollar figures to the jury.  *See* Lehr Report, Ex. 12 (Ex. 1).

The Court should therefore exclude the opinions in Section VII of Dr. Lehr's report.

## II.  THE COURT SHOULD PRECLUDE DR. LEHR FROM TESTIFYING ABOUT GRANDE'S ALLEGED INCENTIVES TO ALLOW INFRINGING ACTIVITY ON ITS NETWORK

In Section VIII of Dr. Lehr's report, he purports to offer opinions about the economic incentives to Grande of permitting alleged "repeat infringers" to remain subscribers, based on the "lifetime value" calculations discussed in the preceding Section.  In other words, Dr. Lehr seeks to opine on the total value to Grande of its alleged "repeat infringer" subscribers.  The *Cox* court excluded Dr. Lehr's opinions on these purported "economic incentives."  *See Cox Daubert* Order at 1 (Ex. 5) ("[Dr. Lehr] is not to opine on Cox's incentives to permit infringement or the economic benefit of infringement.").  The Court should do the same here.

The first and most glaring flaw is that Dr. Lehr's calculations expressly include *alleged repeat infringers of copyrights not at issue in this case*.  In identifying "repeat infringers," Dr. Lehr does not rely on the copyrights and Rightscorp notices at issue in this case, but instead expressly bases his opinions on *every* notice of alleged infringement that Grande forwarded to a subscriber, from *any* rights-holder or other third party.[1]  Lehr Report, ¶ 41 ("[T]hese data

---

[1] Dr. Lehr also improperly employs a December 30, 2013 to May 20, 2018 time period (Lehr

represent letters sent to Grande subscribers on the basis of DMCA notices received from multiple different rights holders and/or their agents, and appear to be related to many different works (i.e., *the data are not limited to Rightscorp notices or to the specific works in this suit*.") (emphasis added) & Ex. 13 (Ex. 1); Lehr Dep. Tr. 139:20-24, 142:16-143:19 (confirming same), 141:21-142:3 (calculations include notices of alleged infringement for all types of media) (Ex. 4).[2]

Including irrelevant copyright owners and works not in suit enables Dr. Lehr to generate astronomical numbers—ranging from $50 million to over $100 million—that plainly have no bearing on the copyright infringement alleged in this case.[3]  *See* Lehr Report, ¶ 43.  Indeed, Dr. Lehr admitted that his opinions on this subject are not affected by the number or nature of the copyrights asserted in this case, and that his opinions therefore would not change *even if Plaintiffs were only alleging infringement of one copyright*.  Lehr Dep. Tr. 159:6-161:23 (Ex. 4).

Second, Dr. Lehr should not be permitted to testify or otherwise offer opinions about what constitutes "repeat infringement."  Like many of Plaintiffs' other experts, Dr. Lehr

---

Report, Ex. 13), which goes beyond the three-year look-back period for copyright infringement damages.  *See* Grande's Mot. for Summ. J. at 18 (ECF No. 140).

[2] Dr. Lehr admits that he lacks any knowledge or information regarding how third-party monitoring companies might go about detecting alleged copyright infringement.  Lehr Dep. Tr. 140:18-141:20.

[3] Dr. Lehr's unsound and litigation-driven methodology hugely inflates the volume of alleged "repeat infringement."  Dr. Lehr provides two different "repeat infringer" calculations: one for subscribers who were the subject of two or more allegations of infringement, and another for subscribers who were the subject of three or more allegations.  Lehr Report, Ex. 13 (Ex. 1).  One of Plaintiffs' other proposed experts, Dr. Bardwell—whose testimony should be excluded for different reasons—looked solely at Rightscorp notices and identified a number of alleged repeat infringers that is only a small fraction of what Dr. Lehr intends to testify to.  Bardwell Report, Table 3 (ECF No. 210-2).

improperly seeks to testify about "repeat infringement" without any legal or factual basis for doing so. Indeed, he disclaims any ability or intention to offer opinions on "infringement" (Lehr Dep. Tr. 126:4-127:23), but that is plainly the import of his proposed opinions. The definitions of "repeat infringer" and "repeat infringement" are questions for the Court, and Dr. Lehr's opinions characterizing Grande subscribers as "repeat infringers" are therefore inadmissible legal conclusions. *See* Grande's Mot. to Exclude Bardwell at 2-4 (collecting cases) (ECF No. 210).

Third, Dr. Lehr's proposed opinions are irrelevant and will confuse the jury because he seeks to equate a failure to terminate subscribers with secondary copyright infringement liability. The premise of Dr. Lehr's opinions on Grande's economic incentives to permit infringement is that Grande had two options: (1) terminate the accounts of alleged "repeat infringers" or (2) permit repeat infringement, and therefore face liability. This premise is factually unsupported and unsupportable, and contrary to law. While the *DMCA safe harbors* in 17 U.S.C. § 512 require a policy for terminating repeat infringers, there is no authority imposing a duty to terminate subscribers *as a matter of contributory liability*. As detailed in the pending summary judgment briefing, contributory liability requires that the defendant induced or encouraged direct copyright infringement, or supplied a product or service lacking any substantial non-infringing uses. *See, e.g.*, Grande's Reply in Supp. of Mot. for Summ. J. at 16-19 (ECF No. 201). Dr. Lehr's opinions are simply another vehicle for Plaintiffs to attempt to muddle and confuse the safe harbor standard with the contributory infringement standard.

Fourth, Dr. Lehr's opinions are unsound and unreliable because his calculations include the entire "lifetime" value of alleged repeat infringers, without regard to the timing of any alleged infringement. In other words, even assuming Grande had an affirmative duty to terminate repeat infringers, that duty could only arise once the subscriber engaged in repeat

infringement.  However, Dr. Lehr assumes—without any evidentiary support, and contrary to common sense—that any alleged repeat infringer never would have become a Grande subscriber in the first place.  *See* Lehr Dep. Tr. 118:4-22 (Ex. 4); Lehr Report, ¶¶ 27-43 & Ex. 13 (Ex. 1).

Fifth, and finally, Dr. Lehr has not conducted an analysis of Grande's operations that would permit him to offer expert testimony on Grande's economic incentives to allow infringement on its network.  In deposition, Dr. Lehr admitted that Grande may actually lose money from subscribers who engage in repeat infringement, due to lost revenue from pirated video content.  Lehr Dep. Tr. 163:8-164:23 (Ex. 4).  Dr. Lehr also acknowledged that Rightscorp has taken the position that repeat infringer traffic slows Grande's network.  *Id.* at 167:14-168:12.  In short, Dr. Lehr has not conducted any reliable or rigorous analysis into Grande's economic incentives regarding copyright infringement by subscribers.  His opinions are entirely litigation-driven and divorced from the evidence in this case.

For the foregoing reasons, the Court should preclude Dr. Lehr from offering the opinions set forth in Section VIII of his report.

### III. THE COURT SHOULD PRECLUDE DR. LEHR FROM TESTIFYING ABOUT THE ECONOMICS OF THE MUSIC INDUSTRY AND THE GENERAL HARMS CAUSED BY MEDIA PIRACY

Sections V and VI of Dr. Lehr's report contain general discussion about the economics of the music industry and the general harm to copyright holders from media piracy.  Lehr Report at 5-9 (Ex. 1).  Dr. Lehr offers these opinions without having a modicum of music industry experience and through improper generalization that is unrelated to the facts of this case.  The Court should therefore preclude Dr. Lehr from testifying about these subjects.

As a preliminary matter, Dr. Lehr's proposed testimony about the harm to copyright holders is essentially identical to proposed testimony excluded by the district court in *Cox*.[4]  *See Cox Daubert* Order at 1 (Ex. 5); June 19, 2015 Lehr Report (hereinafter, "Lehr *Cox* Report") at 4-6 (Ex. 3).  The same result should follow here.

Generalized testimony about the music industry and piracy is irrelevant.  Dr. Lehr also is not qualified to testify to a jury about the economics of the music industry or the effects of media piracy because he does not have any relevant expertise or experience concerning the music industry.  *See* Lehr Report, Appx. A (Ex. 1); Lehr Dep. Tr. 34:4-16 (Ex. 4).  Dr. Lehr simply does not have the "scientific, technical, or specialized knowledge" to offer testimony about the music industry or the effects of worldwide media piracy.  *See* Fed. R. Evid.702; *see also Loussier v. Universal Music Grp., Inc.*, No. 1:02-cv-02447, 2005 WL 5644422, at *3 (S.D.N.Y. Jun. 28, 2005) (excluding expert testimony relating to a copyrighted musical composition because neither the expert's C.V. nor her report indicated that she had any relevant music industry experience).  Indeed, Dr. Lehr's proposed testimony is based entirely on third-party literature—not on any of his own qualifications, expertise, or research.  *See Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002) (Austin, Mag. J.) ("O'Donnell has no relevant expertise regarding [the subject matter] outside of that which he has gleaned from a scant literature review for the purpose of consulting and testifying in this case.").

Dr. Lehr also admits that his entire discussion about the harm from piracy depends on third-party literature about piracy *in general*—it does not even relate to the piracy of sound

---

[4] In *Cox*, Dr. Lehr did not even attempt to offer testimony about the economics of the music industry, a subject in which he plainly lacks any relevant expertise, qualifications, or knowledge.

recordings.  *See* Lehr Report, ¶¶ 19-24 (Ex. 1); Lehr Dep. Tr. 75:18-76:14 (Ex. 4).  Dr. Lehr's proposed testimony about the economics of the music industry is similarly untethered to the facts of this case.  Lehr Report, ¶¶ 15-18 (Ex. 1).  On both subjects, Dr. Lehr does not rely on any evidence produced in this case, and he admits that he did not speak to any Plaintiff representatives in developing his proposed opinions.  Lehr Report, ¶¶ 15-26 & Appx. B (Ex. 1); Lehr Dep. Tr. 26:2-13 (Ex. 4).

In addition, Dr. Lehr admitted that his generalized testimony about piracy harm does not pertain to any particular copyright at issue in this case.  Lehr Dep. Tr. 9:20-10:19 (Ex. 4).  Dr. Lehr's report fails to discuss or analyze *any* of the asserted copyrights in this case.  *See generally* Lehr Report (Ex. 1).  Furthermore, the literature he consulted in rendering his proposed opinions does not relate to the harm caused by copyright infringement, only the harm caused by piracy generally.  Lehr Dep. Tr. 76:15-77:20 (Ex. 4).

Finally, it bears emphasizing that Dr. Lehr's generalized testimony is not a damages assessment.  As noted, Dr. Lehr has repeatedly conceded that he is not offering an opinion on damages.  *See, e.g*., Lehr Dep. Tr. 17:22-23, 73:15-17, 198:3-10 (Ex. 4).  Dr. Lehr also admitted that he did not actually analyze *Plaintiffs'* revenues to determine how they changed over time, and that it was possible that Plaintiffs' revenues could have actually gone up at times over the relevant time period.  *Id*. at 55:5-17.

Accordingly, the Court should preclude Dr. Lehr from offering any testimony about the general economics of the music industry or harms caused by media piracy.

### IV. THE COURT SHOULD PRECLUDE DR. LEHR FROM TESTIFYING ABOUT PUBLIC POLICY

Section IX of Dr. Lehr's report includes discussion about the purported public policy

benefits that would result from imposing broader copyright infringement liability on third parties like Grande.  Lehr Report, ¶¶ 44-51 (Ex. 1).  The *Cox* court precluded Dr. Lehr from offering essentially identical opinions in that case.  *See Cox Daubert* Order at 1 (Ex. 5); Lehr *Cox* Report at ¶¶ 40-46 (Ex. 1).   As detailed above, Dr. Lehr is not qualified to testify to a jury about these public policy benefits because he does not have any education or experience in the music industry.  Furthermore, this proposed testimony is wholly unrelated to the specific facts of this case, and instead improperly seeks to bias the jury in favor of copyright owners and the music industry.  Dr. Lehr's public policy opinions are nothing more than expert *ipse dixit*, lacking even a tenuous connection to the facts of this case.

## V. DR. LEHR'S REPLY REPORT SUFFERS FROM THE SAME DEFICIENCIES AS HIS INITIAL REPORT AND IS IMPROPER REBUTTAL

The opinions and analysis set forth in Dr. Lehr's reply report should be excluded for the reasons discussed in the preceding Sections.  *See generally* Lehr Reply Report (Ex. 2).  Additionally, Dr. Lehr's reply opinions are improper to the extent he seeks to offer additional support for opinions expressed in his opening report, based on previously-available information.  Lehr Dep. Tr. 180:3-183:15 (Ex. 4).  Furthermore, to the extent Dr. Lehr seeks to "rebut" the opinions of Grande's damages expert, Mr. Kemmerer, these opinions are similarly improper because they all relate to issues that Dr. Lehr could have addressed in his opening report.  *See, e.g.*, Grande's Mot. to Strike Frederiksen-Cross Sur-Rebuttal at 5-6 (collecting cases) (ECF No. 176).  The Court should therefore exclude all of this proposed expert testimony.

## CONCLUSION

For the foregoing reasons, the Court should grant Grande's Motion and exclude the proposed expert testimony of Dr. William H. Lehr.

Dated:  November 28, 2018

          By: <u>/s/ Zachary C. Howenstine</u>
              Richard L. Brophy
              Zachary C. Howenstine
              Margaret R. Szewczyk
              Armstrong Teasdale LLP
              7700 Forsyth Blvd., Suite 1800
              St. Louis, Missouri 63105
              Telephone:  314.621.5070
              Fax:  314.621.5065
              rbrophy@armstrongteasdale.com
              zhowenstine@armstrongteasdale.com
              mszewczyk@armstrongteasdale.com

              J. Stephen Ravel
              Texas State Bar No. 16584975
              J.R. Johnson
              Texas State Bar No. 24070000
              Diana L. Nichols
              Texas State Bar No. 00784682
              KELLY HART & HALLMAN LLP
              303 Colorado, Suite 2000
              Austin, Texas 78701
              Telephone: 512.495.6429
              Fax: 512.495.6401
              Email: steve.ravel@kellyhart.com
                    jr.johnson@kellyhart.com
                    diana.nichols@kellyhart.com

              Attorneys for Defendant GRANDE
              COMMUNICATIONS NETWORKS LLC

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on November 28, 2018, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Zachary C. Howenstine
Zachary C. Howenstine
