**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **UMG RECORDINGS, INC., et al.,** | § | |
| | § | |
| **V.** | § | **CAUSE NO. A-17-CA-365-DAE** |
| | § | |
| **GRANDE COMMUNICATIONS** | § | |
| **NETWORKS, LLC** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE DAVID EZRA
        SENIOR UNITED STATES DISTRICT JUDGE

Before the Court are Defendant Grande Communication Networks LLC's Motion for Summary Judgment (Dkt. No. 140); Grande's Motion for Sanctions (Dkt. No. 156); Plaintiffs' Opposition and Cross-Motion for Summary Judgment as to Liability (Dkt. No. 172); Plaintiffs' Response to the Motion for Sanctions (Dkt. No. 179); Grande's Reply on Sanctions (Dkt. No. 189); Grande's 's Combined Summary Judgment Reply and Response (Dkt. No. 201); and Plaintiffs' Reply in Support of Cross-Motion for Summary Judgment (Dkt. No. 209). The District Court referred the motions to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(c) of Appendix C of the Local Rules.

## I.  BACKGROUND

Plaintiffs are record companies that produce and distribute commercial sound recordings in the United States.  Dkt. No. 1 at ¶ 2.  Grande is an internet service provider that provides internet access to subscribers in parts of Texas.  Dkt. No. 1 at ¶ 3.  Plaintiffs contend that Grande received, through Plaintiffs' agent Rightscorp and others, over one million notices of direct copyright infringement allegedly committed by Grande subscribers.  *Id.* at ¶¶ 4, 47-49.  Plaintiffs argue that these subscribers directly infringed on Plaintiffs' copyrights through use of peer-to-peer file sharing

applications like BitTorrent. *Id.* at ¶¶ 4, 38, 39, 43, 45, 48. Plaintiffs allege that Grande is secondarily liable for these alleged infringements because it continued to provide the subscribers with internet access after receiving the notices of infringement. *Id.* at ¶ 56. Plaintiffs request both damages and injunctive relief. The parties have filed cross motions for summary judgment on the issue of Grande's liability for contributory copyright infringement.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). "The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.' " *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial." *Id.* (quotation marks omitted); *see also Celotex*, 477 U.S. at 325. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party

2

fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)).

"Once the moving party [meets its initial burden], the nonmoving party must 'go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.' " *Nola Spice*, 783 F.3d at 536. In deciding a summary-judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008); *see also Nola Spice*, 783 F.3d at 536. "When the application of a rule of law depends on the resolution of disputed historical facts, it becomes a mixed question of law and fact. Such disputed facts normally preclude summary judgment." William W. Schwarzer, Alan Hirsch, & David J. Barrans, *The Analysis and Decision of Summary Judgment Motions: A Monograph on Rule 56 of the Federal Rules of Civil Procedure*, 139 F.R.D. 441, 456 (1992). Even if a decision about an issue raised at summary judgment involves the application of a legal standard, the court must decide whether the context in which the question arises makes it more appropriate for decision by judge or by jury. *See Gizoni v. S.W. Marine*, 909 F.2d 385, 387-88 (9th Cir.1990) (disputes over whether the ship was in navigation and whether the employee was actually a member of the ship's crew presented jury question).

## III. ANALYSIS

Grande asserts it is entitled to summary judgment on Plaintiffs' claim for contributory copyright infringement because Plaintiffs: (1) cannot demonstrate any direct infringement; (2) have

failed to demonstrate that Grande induced or materially contributed to, or had knowledge of, the direct infringement; (3) have no evidence of willfulness; (4) to the extent they rely on the discovery rule to maintain their claim, have failed to demonstrate that doctrine is applicable here; (5) have failed to demonstrate any damages; and (6) have failed to prove they own all of the copyrights in issue. In their cross motion, Plaintiffs contend that the undisputed facts demonstrate Grande is liable for contributory infringement of their copyrights.

**Grande's Motion[1]**

A.    **Direct Infringement**

Noting that to show secondary infringement Plaintiffs must first demonstrate there has been direct infringement, Grande challenges Plaintiffs' direct infringement case on several grounds. First, Grande claims that Plaintiffs have failed to demonstrate the "substantial similarity" of the copyrights in suit through a side-by-side comparison of the copyrighted work and the allegedly infringing work. To establish a direct copyright infringement claim, a plaintiff must prove ownership of a valid copyright and copying of constituent elements that are original. *Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). The second element, copying, requires factual copying and proof of substantial similarity. *Baisden*, 693 F.3d at 499. A plaintiff can prove factual copying by direct or circumstantial evidence. *Armour v. Knowles*, 512 F.3d 147, 152 (5th Cir. 2007). A circumstantial claim requires proof that the defendant had access to the copyrighted work prior to creating the infringing work and that the works contain similarities that are probative of copying. *Id.* Substantial

---

[1] Grande's motion asserted that Plaintiffs cannot prove that Grande subscribers have violated Plaintiffs' reproduction or public performance rights set forth in 17 U.S.C. § 106(1) and 106(6). Plaintiffs have not responded to these arguments, and summary judgment is therefore appropriate on these two limited issues.

4

similarity requires proof that "the copyrighted expressions in the two works are sufficiently alike that the copyright to the original work has been infringed." *Id.*

As stated in its summary judgment motion, Grande's argument is quite brief: "[t]here is no evidence in this case that permits the factfinder to conduct a 'substantial similarity' comparison between: (1) a file allegedly reproduced, distributed, or publicly performed by a Grande subscriber; and (2) a copyrighted song owned by any Plaintiff." Dkt. No. 140 at 5. It describes the problem as a "failure of proof." *Id.* Only in its reply does Grande flesh its argument out, and make it plain what it means by a "failure of proof." It contends that Plaintiffs failed to produce during discovery the originals of the 1500-plus songs on which their suit is based, and thus, as a matter of law, they will be unable to offer the jury the side-by-side comparison required to show substantial similarity. Dkt. No. 201 at 4. Grande also challenges the admissibility of the evidence Plaintiffs submit with their response, through which Plaintiffs purport to demonstrate that the songs detected on Grande's subscribers' computers are exact digital copies of the songs owned by Plaintiffs.

To show this, Plaintiffs submit the declaration of Greg Boswell, identified as the lead developer of Rightscorp's system. Boswell testifies that the Rightscorp system identifies infringements and the perpetrators of the infringements (by IP address, port number, time and date) by monitoring BitTorrent peer-to-peer file sharing networks, and extracting information about the infringing activity. Dkt. No. 173-79. As Boswell describes it,

> Rightscorp receives a list of copyright works (including artist and title information) from its customers, obtains .torrent files matching those named works, forensically scrubs these torrent files to confirm a digital match (discarding any file that does not match), manually checks the digital match results, and only then monitors BitTorrent networks for infringement of these files.

*Id.* at ¶ 5.  The system uses "hash values" to monitor BitTorrent networks to identify copies.[2]  It records data about users who are making copies available for copying, and it returns to make an actual full copy as well.  *Id.* at ¶¶ 7-8.  All of this information, including the full downloaded copies, was made available to Grande.  *See, e.g., id.* at ¶ 14; Dkt. No. 172 at 13 n.7.  On top of this, if the hash values were not enough, the full digital copies were also analyzed by a software system designed to compare files, and the analysis demonstrates that the copies downloaded from Grande's subscribers are fully identical copies of the works sued on. Dkt. No. 172-12.

Though Grande never comes right out and states it definitively, the only logical construction of its argument is that it is claiming that under existing case law to demonstrate direct infringement at trial, Plaintiffs will have to play every single song at issue to the jury, along side the identical copy or copies of that song found on Grande's subscribers' computers.  This argument is misplaced (at

---

[2]As the Fifth Circuit recently explained:

> In technical terms, a hash value is "an algorithmic calculation that yields an alphanumeric value for a file."  *United States v. Stevenson*, 727 F.3d 826, 828 (8th Cir. 2013).  More simply, a hash value is a string of characters obtained by processing the contents of a given computer file and assigning a sequence of numbers and letters that correspond to the file's contents.  In the words of one commentator, "[t]he concept behind hashing is quite elegant: take a large amount of data, such as a file or all the bits on a hard drive, and use a complex mathematical algorithm to generate a relatively compact numerical identifier (the hash value) unique to that data."  Richard P. Salgado, *Fourth Amendment Search and the Power of the Hash*, 119 HARV. L. REV. F. 38, 38 (2005).

> Hash values are regularly used to compare the contents of two files against each other. "If two nonidentical files are inputted into the hash program, the computer will output different results. If the two identical files are inputted, however, the hash function will generate identical output."  Orin S. Kerr, *Searches and Seizures in a Digital World*, 119 HARV. L. REV. 531, 541 (2005)

*United States v. Reddick*, 900 F.3d 636, 637 (2018).

best).  Plaintiffs are not claiming that Grande's subscribers created their own musical versions of Plaintiffs' works (which might create some question on the issue of similarity), they are claiming that Grande's subscribers downloaded and uploaded *identical digital duplicates* of the works.  Grande's reading of the case law is flawed.  In a case like this—involving digitally identical copies—the relevant law does not mandate that a plaintiff play the two works for the jury, to show that the infringing items are in fact identical digital duplicates of the original songs.  Rather, the cases mandate only that there *be* evidence allowing such a comparison to be made.  *See Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).  And when there are over 1500 songs at issue, and there is technology that allows comparisons of digital files, doing the side-by-side comparison in the manner Plaintiffs have done so is not only routine, it is also advisable.  *See, e.g. Capitol Records LLC v. Escape Media Grp, Inc.*, 2015 WL 1402049 at *23-24 (S.D.N.Y. Mar. 25, 2015) (gathering cases); *UMG Recording, Inc. v. Escape Media Grp., Inc.* 2014 WL 5089743 (S.D.N.Y. Sep. 29, 2014).  *See also*  Dkt. No. 209 at 8 n.8 (gathering cases).  Further, Grande's complaint that the evidence is incompetent because it is hearsay fails.  The affidavits and the records the affiants relied upon are properly authenticated and admissible.  *Id.*

Thus, though Grande clearly disputes whether the Rightscorp and other digital comparison evidence is capable of making the "side-by-side comparison" needed to show substantial similarity, there is no dispute that the Plaintiffs' have offered evidence to fulfill the evidentiary requirement described in *Creations Unlimited* and similar cases—that is, to show that the copies Rightscorp downloaded from Grande subscribers are exact duplicates of Plaintiffs' copyrighted works.  Other than to try to pick holes in that evidence, Grande has failed to persuasively demonstrate that Plaintiffs' evidence is insufficient to create a triable fact issue for the jury.  Suffice it to say that, at

a minimum, the evidence as described is certainly enough to create a fact dispute on this issue, thereby making summary judgment on that ground inappropriate.

Grande next contends that summary judgment is proper because Plaintiffs have failed to demonstrate that their subscribers violated Plaintiffs' distribution rights. Grande contends Plaintiffs cannot show a Grande subscriber actually distributed any of Plaintiffs' copyrighted works to a BitTorrent user. Rather, Grande claims, all that Plaintiffs' evidence shows is that Grande subscribers made Plaintiffs' copyrighted works available for copying over the internet to other BitTorrent users, which Grande argues is insufficient to show infringement. Grande relies on various cases for the proposition that merely making copyrighted works available to others to copy does not violate the distribution right—actual dissemination is required.[3] Plaintiffs rejoin that a plaintiff may prove violation of the distribution right through circumstantial evidence, including evidence that not only were the works made available for copying, but that actual copies were made and distributed.[4]

---

[3]*See, e.g., Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 981 (D. Ariz. 2008) ("The general rule, supported by the great weight of authority, is that 'infringement of the distribution right requires an actual dissemination of either copies or phonorecords.'") (quoting *Nat'l Car Rental Sys. v. Computer. Assocs. Int'l, Inc.*, 991 F.2d 426, 434 (8th Cir. 1993) (alterations omitted)) (collecting cases); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1221 (D. Minn. 2008) ("Equating making available with distribution would undermine settled case law holding that merely inducing or encouraging another to infringe does not, alone, constitute infringement unless the encouraged party actually infringes.") (citing *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005)).

[4]*See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 149 F. Supp. 3d 634, 663 (E.D. Va. 2015), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018) (party "may establish direct infringement using circumstantial evidence that gives rise to an inference that [the ISP] account holders or other authorized users accessed its service to directly infringe"); *Capitol Records, Inc. v. Thomas*, 579 F. Supp. 2d 1210, 1225 (D. Minn. 2008) ("[D]irect proof of actual dissemination is not required by the Copyright Act. Plaintiffs are free to employ circumstantial evidence to attempt to prove actual dissemination."); *Atlantic Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 983 (D. Ariz. 2008) (same).

Among other evidence, Plaintiffs point to that gathered by Rightscorp, including the fact that Rightscorp was able to download full copies of each of the copyrighted recordings from Grande subscribers.  Dkt. No. 172 at 13-14 (citing evidence).  The Court agrees with Plaintiffs—this is circumstantial evidence of direct infringement, and is sufficient to create a fact issue for trial.

Grande next claims that Plaintiffs' "making available" theory improperly invokes tertiary liability.  Its argument is that the person in the "swarm" who downloads the music from Grande's subscriber is the primary infringer, and the Grande subscriber making the file available is the secondary or contributory infringer.  Therefore, Grande argues, Grande must be a tertiary infringer, and cannot be sued for contributory or secondary infringement.  *See, e.g., In re Napster, Inc. Copyright Litig.*, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2001); *David v. CBS Interactive Inc.*, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012).  Citing a recent Fifth Circuit case, Plaintiffs disagree, and argue that a defendant may be held liable for direct infringement "where they have provided the means to obtain and transmit copyrighted performances."  *See BWP Media USA, Inc. v. T & S Software Associates, Inc.*, 852 F.3d 436, 439 (5th Cir. 2017).  The Court agrees.  *See also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984) (liability may be imposed on those who "trespass[ ] into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work. . . .").  The summary judgment evidence establishes that Grande subscribers made their files available through the BitTorrent protocol, and given the evidence regarding BitTorrent and the purpose of peer-to-peer networks, and the fact that Rightscorp was able to download each of the songs from Grande subscribers, there is sufficient circumstantial evidence to create a triable issue as to whether the Grande subscribers engaged in direct infringement.

Finally, Grande argues that Plaintiffs cannot show direct infringement with regard to each copyright at issue in this case—that the collection of Rightscorp notices and Rightscorp's technology and process is insufficient to show infringement.  The Court has already addressed this issue, and again finds that Plaintiffs' evidence demonstrates a fact issue for trial as to each and every one of the works in suit.  Summary judgment is unwarranted on direct infringement.

**B.      Contributory Infringement**

"A party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another."  *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (citation and internal quotation marks omitted).  In *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, the Supreme Court held that an actor may be contributorily liable for intentionally inducing or encouraging direct infringement by third parties if the actor knowingly takes steps that are substantially certain to result in direct infringement.  545 U.S. 913, 914 (2005).  Relying on *Grokster*, Grande contends that Plaintiffs' evidence fails to demonstrate the essential elements of a contributory infringement claim.

**1.      Inducement vs. Material Contribution**

In a reprise of the argument the undersigned addressed on Grande's Rule 12(b)(6) motion, Grande contends, relying on *Grokster*, 545 U.S. at 936-37, that the intent portion of a contributory infringement claim cannot be shown by mere knowledge of infringement combined with a lack of action to stop the infringement.  Instead, Grande claims there must be evidence that the defendant took active steps to encourage or promote the infringement.  Grande asserts here there is no evidence it took any active steps to encourage or promote infringement on its network, and that as a matter of law failing to stop infringement is not enough to show inducement.

10

In addition to relying on *Grokster*, Grande also points to a recent Ninth Circuit decision to support this argument. That case involved a suit by the owner of the copyright in the movie *The Cobbler* against an individual owner of a home in Oregon. *Cobbler Nevada v. Gonzalez*, 901 F.3d 1142, 1145 (9th Cir. 2018). The suit alleged that someone at the IP address traced to the home (which turned out to be an adult foster home) had made several downloads of the movie, in violation of Cobbler Nevada's copyright. After identifying that Gonzalez, the owner of the home, was the subscriber of the relevant internet account, Cobbler Nevada contacted him and learned that the account belonged to "an adult care home," and the wifi network there "was accessible to both residents and visitors." *Id.* Cobbler Nevada ultimately sued Gonzalez for copyright infringement, alleging that as the subscriber of the internet service, he was liable as a direct infringer, and alternatively, he was liable as a contributory infringer for failing to take steps to stop the infringement once he became aware of it.[5] The trial court dismissed the contributory infringement claim on a 12(b)(6) motion, and the Ninth Circuit affirmed. The panel rejected the argument that Gonzalez could be contributorily liable for infringement based solely on the allegations that he was the subscriber of the internet service, he was aware the service was being used to download movies without authority, and he did not take any steps to stop the downloading. Noting that "circuit courts approach contributory liability through varying lenses," the panel explained that the Ninth Circuit:

> has identified two strands of liability following *Sony* and *Grokster*: "actively encouraging (or inducing) infringement through specific acts" or "distributing a

---

[5]Only the discussion of the contributory infringement claim is relevant here. The trial court dismissed the direct infringement claim, finding that Cobbler Nevada's failure to identify the person who actually downloaded the movie was a fatal flaw in that claim, as Gonzalez could not be liable for direct infringement without an allegation that he himself was the downloader. *Cobbler Nevada*, 901 F.3d at 1147.

product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses."

*Id.* at 1148 (citations omitted). Because the plaintiffs' allegations failed to fit within either of these two strands, the court affirmed the dismissal of the contributory infringement claim.

Grande reads the case broadly, and argues that it supports its position that without evidence of any affirmative actions by it, it cannot be liable for contributory infringement. While there are definitely parallels between the liability theory pursued in *Cobbler Nevada* and the liability theory raised here, there are also important differences. For example, Gonzalez is not an ISP, but rather is simply an individual subscriber with (apparently) an open wifi network. This appeared to be important to the Ninth Circuit, as it explained its reasoning by noting that adopting Cobbler Nevada's argument:

> effectively creates an affirmative duty for private internet subscribers to actively monitor their internet service for infringement. Imposing such a duty would put at risk any purchaser of internet service who shares access with a family member or roommate, or who is not technologically savvy enough to secure the connection to block access by a frugal neighbor.

*Id.* at 1149. Further, the court took pains in several places to limit the scope of its decision: "Cobbler Nevada's contributory infringement claim is premised on a bare allegation that Gonzales failed to police his internet service. *This perfunctory allegation, without more, does not sufficiently link Gonzales to the alleged infringement.*" *Id.* at 1147-48 (emphasis added). Its own summary of its holding reflects its limits:

> In this copyright action, we consider whether a *bare allegation* that a defendant is the registered subscriber of an Internet Protocol (''IP'') address associated with infringing activity is sufficient to state a claim for direct or contributory infringement. We conclude that it is not.

*Id.* at 1144 (emphasis added).

In this case, the defendant is an ISP, not an individual, and it received roughly 1.2 million DMCA notices claiming that subscribers on its network were downloading copyrighted material without permission.  Further, despite the notices, it went for over six years without terminating a single subscriber for infringement, and only finally did so after this lawsuit was filed.  Its own employees discussed in emails their concerns that the company was exposed to liability by its inaction.  Though a broad reading of *Cobbler Nevada* could support the claim that an ISP's failure to take action to terminate subscribers after notice of their infringement is not enough to make the ISP a contributory infringer, it is also capable of a more narrow interpretation, *i.e.*, that the case only holds that the owner of an open wifi network cannot be held liable for actions taken on that network.  Indeed, conspicuously absent from the opinion is any discussion of the Fourth Circuit's decision in *BMG*, which was handed down in February 2018, nearly seven months before the Ninth Circuit decided *Cobbler Nevada*.  This is particularly odd given that *BMG* discussed the same cases the Ninth Circuit relied on—*Sony*  and *Grokster*—and concluded that those cases supported imposing contributory liability on an ISP through a "willful blindness" theory.  *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018).  It is even more odd that the *Cobbler Nevada* panel also ignored a Ninth Circuit decision (relied on in *BMG*) in which a Ninth Circuit panel explicitly recognized that "[w]illful blindness of specific facts would establish knowledge for contributory liability."  *Ludvarts LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1073 (9th Cir. 2013) (citing *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir.2003)).  Given that the *Cobbler Nevada* court was either unaware of, or simply ignored, the Fourth Circuit's *BMG* decision, it is not at all clear whether that the two decisions are in conflict.

Regardless, Plaintiffs fundamentally disagree with Grande's interpretation of *Grokster* and its impact on contributory liability for copyright infringement.  They maintain that post-*Grokster*, a plaintiff may still demonstrate contributory liability for copyright infringement with evidence of material contribution, and that *Grokster* does not require that Grande have actively induced the infringement.  As the undersigned recounted in the recommendation on the motion to dismiss, the Fourth Circuit has rejected Grande's interpretation of *Grokster*.  *BMG*, 881 F.3d at 298-99.  The Court concludes that a contributory infringement theory based on "material contribution" is alive and well, and summary judgment is not warranted based on a lack of evidence of active inducement.

### 2.     Intent

Grande also argues that *Grokster* requires proof of intent for any contributory infringement claim, including a material contribution claim, and that Plaintiffs have presented no evidence Grande intended to infringe Plaintiffs' copyrights. In response, Plaintiffs rely on the summary judgment evidence described above showing that Grande was aware of its subscribers' infringing conduct and failed to take steps to stop it.  This is sufficient evidence to defeat the summary judgment motion, as the Court is persuaded by the Fourth Circuit's analysis in *BMG*:

> It is well-established that one mental state slightly less demanding than actual knowledge—willful blindness —can establish the requisite intent for contributory copyright infringement. This is so because the law recognizes willful blindness as equivalent to actual knowledge. *See Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("[P]ersons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts."); *Aimster*, 334 F.3d at 650 ("Willful blindness is knowledge, in copyright law . . . as it is in the law generally.").

*BMG,* 881 F.3d at 308.  The Court finds that the facts regarding what Grande knew, and how it acted after learning of potential infringement, create a fact question concerning whether Grande had the

requisite intent to materially contribute to the copyright infringement of its subscribers. Therefore, summary judgment on the issue of intent is inappropriate.

### 3.   Knowledge

Grande next asserts that, regardless of what state of mind is required by the law, there is no genuine issue of material fact that Grande had no knowledge of its subscribers' alleged infringing activities because the Rightscorp notices do not include the full complement of information that would be necessary to put Grande on notice that its subscribers were engaging in copyright infringement. In response, Plaintiffs not only submit evidence that the Rightscorp notices *do* in fact have enough information to put Grande on notice of infringement, Dkt. No 172-78, 172-79, but also point to Grande's own statements in internal e-mails and other documents demonstrating its actual knowledge. *See* Dkt. Nos. 172-14, 173-83, 172-16, 173-85, 173-84 and 173-86 (emails acknowledging "illegally downloaded" material, and noting Grande's maintenance of reports tracking repeat infringers). This is certainly enough evidence to create a fact question for the jury regarding what Grande knew. Summary judgment is inappropriate on this issue.

## C.   Willfulness

Grande next moves for summary judgment on the issue of willfulness, arguing that Plaintiffs cannot present any evidence from which a reasonable jury could conclude that Grande knew its conduct constituted secondary copyright infringement or acted with reckless disregard of Plaintiffs' rights. *See Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 & n.7 (5th Cir. 2014). Grande again asserts that the deficiencies of Rightscorp's notices preclude a finding of wilfulness. Plaintiffs contend that the summary judgment evidence is sufficient for a jury to make a finding of willfulness. Specifically, Plaintiffs cite to evidence that: (1) Grande was aware of its subscribers' infringing

behavior; (2) Grande decided not to cut off service to those subscribers; (3) Grande discussed this conscious decision in internal emails; and (4) Grande profited from continuing to provide service to those subscribers.  Dkt. No. 172 at 27 (citing evidence).  As stated in the preceding sections, genuine issues of material fact exist as to the efficacy of Rightscorp's notices, and what knowledge Grande had, and thus whether Grande's failure to act can be considered "willful."  Summary judgment on the issue of willfulness is thus improper.

### D.    Discovery Rule

Plaintiffs seek to expand the three-year period for which they may seek damages, *see* 17 U.S.C. § 507(b), by arguing that the discovery rule applies in this case.  "The discovery rule tolls the operation of [a statute of limitations] until the point in time in which the plaintiff learned or by reasonable diligence could have learned that it had a cause of action."  *Edmark Industries SDN. BHD. v. South Asia International (H.K.) Ltd.*, 89 F. Supp. 2d 840, 842-43 (E.D. Tex. 2000).  Grande maintains that the Court should grant summary judgment on this issue, because Plaintiffs failed to plead the discovery rule in the complaint, and because Plaintiffs have no evidence to support their claim that they were unaware of the factual basis of their claims until January 2016.

On the first point, Grande is flatly incorrect, even under the very case it cites for its argument. As the Fifth Circuit noted there, "the discovery rule need not be specifically pleaded in federal court."  *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008).  The Fifth Circuit expanded on this statement in 2011, holding that:

> the statute of limitations is an affirmative defense that places the burden of proof on the party pleading it. Under federal pleading requirements, which we follow, a plaintiff is not required to allege that his claims were filed within the applicable statute of limitations.

*Frame v. City of Arlington*, 657 F.3d 215, 239-40 (5th Cir. 2011).  As far as the evidence is concerned, Plaintiffs claim that they did not learn of Grande's infringement until January 2016, when Rightscorp approached the RIAA with evidence of Grande's subscribers' infringement.  *See, e.g.* Dkt. No. 136 at 16.  The only evidence Grande offers to contradict this is evidence that Rightscorp marketed its services to Plaintiff Sony in 2012, and that Plaintiff UMG had meetings related to Rightscorp in late 2011.  Dkt. No. 201-5, Dkt. No. 201-4.  This evidence actually fails to controvert Plaintiffs' claim of when they first became aware of the repeat infringement on Grande's network, as the two witnesses' testimony is particularly vague, and fails to indicate anything about infringement on Grande's network, much less when Grande became aware of any such infringement. At a minimum, there is a genuine issue of material fact as to when Plaintiffs became aware of Grande's alleged secondary infringement, and summary judgment on the discovery rule is not appropriate.

**E.    Damages**

Grande argues that Plaintiffs cannot recover damages under 17 U.S.C. § 504(b), which provides:

(a)    In General. Except as otherwise provided by this title, an infringer of copyright is liable for either–

(1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or

(2) statutory damages, as provided by subsection (c).

(b)    Actual Damages and Profits.–The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her

> deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

Grande argues that with regard to actual damages, none of the Plaintiffs suffered any actual damages as a result of the alleged infringement. Additionally, Grande argues that Plaintiffs lack any evidence of Grande's profits attributable to the actual infringement, and that the reference to "gross revenues" in section 504(b) refers only to revenues "reasonably related" to the infringement, and Plaintiffs have failed to show that Grande earned *any* revenue from the infringement. *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010).

Plaintiffs respond that they do not intend to seek their lost profits as damages, mooting this portion of Grande's argument. Dkt. No. 172 at 29.  They further note that their experts' reports explain the relationship between Grande's profits and the infringement of Plaintiffs' copyrights. Dkt. No. 173-74, 173-81.  Because genuine issues of material fact exist regarding whether the revenues were reasonably related to the alleged infringement, summary judgment is not proper on this issue.

## F.    Ownership of Copyrights

Lastly, Grande argues that out of 782 unique registered copyrights listed by Plaintiffs as being at issue in this case, Plaintiffs' evidence only demonstrates that they are the owners of 421 of these copyrights.  Grande contends it is thus entitled to summary judgment on the copyright infringement claims as to the 361 other works.  Proving ownership requires evidence that a work is original and can be copyrighted and that the plaintiff has complied with statutory formalities. *Lakedreams v. Taylor*, 932 F.2d 1103, 1107-08 (5th Cir. 1991).  The requisite statutory formalities are receipt of the application for registration, fee, and deposit by the Copyright office. *Id.* at 1108.  Plaintiffs respond to the motion on this point with declarations from executives employed by each Plaintiff, along with thousands of pages of attachments, that Plaintiffs claim prove their ownership of these

361 copyrights. *See, e.g.*, Dkt. Nos. 173-2 to 173-47; 173-48 to 173-73; 180-1 to 180-31.[6] They assert this not only demonstrates that Grande's motion for summary judgment as to ownership should be denied, but also "conclusively proves" they are the owners. *See* Dkt. No. 172 at 30 (*citing BMG Music Entm't v. Cuellar*, 2008 WL 11398942 (S.D. Tex. July 24, 2008)).

Grande's only response is not to contest the validity of the evidence, but rather its timeliness. In a separate motion for sanctions, Grande requests that the Court exclude all of this evidence because it was produced after the close of discovery. Dkt. No. 156.   The Court is not persuaded by this argument.   Even assuming that Plaintiffs' supplementation of the ownership records was untimely, Grande wholly fails to demonstrate it suffered any prejudice as a result. To show prejudice for the late production of the documents, the least that Grande must claim is that, if given more time, it could prove the documents are forgeries, are not the whole ownership picture, or something else that would contradict Plaintiffs' claim they are the copyright owners of the specific works at issue. But Grande does not make any such claim; indeed, it doesn't even argue the Plaintiffs do not in fact own the copyrights in these songs.   Instead, its prejudice argument is a vague claim that it made "various strategic decisions" during "important phases of the case"—presumably based on the belief that Plaintiffs had not produced enough records to demonstrate they were the registered owners of all of the copyrights at issue—and it cannot "redo" those decisions.   Dkt. No. 189 at 4.

It is not entirely clear what "strategic decisions" Grande is referring to, other than the "strategic" decision to lay behind the log, wait until discovery closed, and then spring its trap and

---

[6]Plaintiffs also dispute Grande's characterization of the number of works to which this argument applies, contending that it only applies to 160 works, not 361. *See* Dkt. No. 209 at 15 n.13. The difference is a result of many of the subject works being songs that are included in albums, and the manner in which the copyrights on such songs were obtained.  The Court need not determine the exact numbers of copyrights that might be impacted by this argument, as the argument is meritless.

claim that Plaintiffs had not produced ownership evidence as to all of the copyrights. In part two of the strategy, when Plaintiffs quickly produced the necessary additional records demonstrating something that Grande had never contested, Grande moved for sanctions to strike the records as late produced. Leaving aside that this smacks of "gotcha" lawyering, this is not a demonstration of prejudice. Moreover, since the time of the filing of the motion for sanctions, Judge Yeakel has transferred this case to Judge Ezra, and the trial date has been vacated. Dkt. No. 225. Thus, Grande's claim that there was no possibility of a continuance, *see* Dkt. No. 189 at 5, turns out to be incorrect. In the end, Grande has failed to show prejudice, and the Court will therefore **DENY** Grande's Motion for Sanctions (Dkt. No. 156). Given that Grande's entire argument regarding ownership was dependent on the Court striking the supplemental evidence, summary judgment on this ground should be denied.

### Plaintiffs' Motion

As noted at the outset, Plaintiffs not only oppose Grande's motion, they also contend they are entitled to summary judgment as to Grande's liability for contributory infringement. The Court need not spend much time discussing this motion. As explained in the preceding pages, there are numerous fact disputes on issues material to determining whether Grande is liable for contributory infringement. Just as those fact issues preclude granting summary judgment for Grande, they also preclude entering judgment in Plaintiffs' favor as well.

### IV. RECOMMENDATION

The undersigned **RECOMMENDS** that the district judge **DENY IN PART AND GRANT IN PART** Grande's Motion for Summary Judgment (Dkt. No. 140), and **GRANT** the motion as to the limited issues of Plaintiffs' reproduction right as set forth in 17 U.S.C. § 106(1), and Plaintiffs'

public performance right as set forth in 17 U.S.C. § 106(6), and **DENY** the motion on all other grounds. The Court **FURTHER RECOMMENDS** that Plaintiffs' Cross-Motion for Summary Judgment as to Liability (Dkt. No. 172) be **DENIED**.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 18th of December 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE