**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al.,<br><br>      Plaintiffs,<br><br>vs.<br><br>GRANDE COMMUNICATIONS NETWORKS LLC,<br><br>      Defendant. | No. 1:17-cv-00365-DAE-AWA |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S
MOTION FOR EVIDENTIARY SANCTIONS BASED ON SPOLIATION
OF RIGHTSCORP EVIDENCE**

# INTRODUCTION

Rightscorp, Inc. operates a detection system that it claims is capable of detecting copyright infringement taking place on the Internet. Plaintiffs rely almost exclusively on that detection system, and the notices it generated, to support their allegations of copyright infringement against Grande. Since its inception in 2011, Rightscorp routinely modified the source code for its detection system, and these changes altered the way the system identified and generated notices of alleged copyright infringement. As a result, in the prior *Cox* case, the court sanctioned the plaintiff after determining that Rightscorp "intentionally destroyed" material evidence "by altering the source code [for its system], deleting portions of the source code, and by overwriting portions of the source code without maintaining a record of those alterations, deletions, or overwrites." Order at 4, *BMG Rights Mgmt. (US) LLC v. Cox Comm'cns, Inc.*, No. 1:14-cv-1611 (E.D. Va. Oct. 22, 2015) (hereinafter, "*Cox* Order") (Ex. 1).

Plaintiffs' case against Grande is plagued by even more significant spoliation issues than those present in *Cox*. Rightscorp's representatives admit they failed to record how, when, or even *if* the various individual and functionally overlapping components of the system were executed at any given time. Based on these admissions, Plaintiffs' own retained expert agrees that it is impossible to know how the system actually worked. Rightscorp also admits that it has destroyed virtually all of the evidence that it collected from Grande's subscribers and on which its allegations of infringement are based. In other words, Plaintiffs and Rightscorp preserved Rightscorp's bare copyright notices but destroyed all of the data Grande would need to meaningfully assess whether those notices constitute accurate allegations of infringement.

Before filing this Motion, Grande gave wide latitude to Plaintiffs and Rightscorp to demonstrate that the vital evidence necessary to meaningfully assess Rightscorp's notices was

not spoiled. After many months of waiting, last week Plaintiffs finally concluded that certain materials have been irretrievably destroyed. While waiting for Plaintiffs to complete their investigation, Grande sought the same evidence regarding the Rightscorp system and data collected from Grande's subscribers through depositions of Plaintiffs and the RIAA—the entity to whom Rightscorp was contractually obligated to provide evidence regarding Grande's alleged infringement. Recent testimony obtained from those parties confirms that this critical information underlying Rightscorp's notices simply no longer exists.

Destruction of this evidence has caused extreme prejudice to Grande. Recent depositions establish that Rightscorp, the RIAA, Plaintiffs, and their retained experts are all incapable of providing a cogent and detailed explanation of how the Rightscorp system actually functioned at any point during the relevant time period. Because Plaintiffs' and Rightscorp's actions have fundamentally compromised Grande's ability to independently evaluate Rightscorp's bare allegations of infringement, the Court should preclude Plaintiffs from relying on Rightscorp's notices and other spoiled evidence at trial.

## **FACTUAL BACKGROUND**

### *Rightscorp's Failure to Retain Evidence Regarding Alleged Infringements*

Rightscorp manually operates a set of functions that it claims can identify copyrighted materials being offered through BitTorrent. *See, e.g.*, Compl. at ¶ 43; *see also* Boswell Dep. Tr. at 73:10-20, 101:5-19, 105:3-106:13 (Ex. 2). Rightscorp first obtains song information (*i.e.*, song title and artist name) from its clients. The Rightscorp software then allegedly uses that information to locate one or more publicly-available "torrents" that are offering to share the

copyrighted work.[1] *Id*. at ¶ 41; Boswell Dep. Tr. at 105:12-108:24 (Ex. 2). Rightscorp claims that it downloads the "payload" from the swarm and then assesses whether that file contains the copyrighted work, either manually (an employee listening to the file) or with audio fingerprinting software. The inputs and results of these analyses were destroyed.

Once the song ingestion process is complete, the system then allegedly seeks to identify the individuals participating in a "swarm" that is sharing a file of interest. Cohen Report, ¶ 54 (ECF No. 233-1). To accomplish this, the Rightscorp software has the ability to communicate with a BitTorrent tracker that shares information about particular BitTorrent users, or "peers," that may be willing to offer pieces of the file of interest. The information provided by this tracker is how Rightscorp allegedly identified the subscribers for which Plaintiffs now accuse Grande of infringement. Boswell Dep. Tr. at 225:18-228:5. Rightscorp admits it destroyed all of the evidence it received from the BitTorrent trackers. *Id*. at 221:7-222:14, 226:3-17.

After identifying peers who may be willing to share the file of interest, the Rightscorp software allegedly opens a connection with each peer to determine whether that subscriber actually possesses the file. During this process, a wealth of information is exchanged between the Rightscorp software and the peer's computer pursuant to the BitTorrent protocol. This information includes "bitfield" transmissions which partially reflect the pieces of the file that reside on the peer's computer, "have" data which provides additional information regarding which portions of the file reside on the peer's computer, "request" data which reflects whether the peer has the complete file and whether Rightscorp attempted to download any portion of the file as part of its evidence collection, and also "choke" data which reflects each peer's

---

[1] The true operation of the system is unclear, given that Plaintiffs, Rightscorp, the RIAA and Plaintiffs' experts are each incapable of proving *how*, *when* or even *if* the Rightscorp system actually detected "infringement" during any period relevant to this case.

3

willingness and ability to share the file allegedly residing on their computer. Cohen Report, ¶¶ 65-68, 116 (ECF No. 233-1). The importance of this information exchanged between Rightscorp and the peer cannot be overstated. Rightscorp used this data—and this data alone—to conduct its infringement analysis against Grande's subscribers.[2] *Id.* at ¶¶ 116-19 (ECF No. 233-1). Rightscorp destroyed this data.

*Rightscorp's Failure to Properly Retain Source Code and Operational Records*

Plaintiffs and Rightscorp have destroyed all of the evidence necessary to determine how the Rightscorp system operated at any given time relevant to this lawsuit. Rightscorp admits that, prior to 2016, it did not record the changes it made to the Rightscorp software. Cohen Report, ¶¶ 49, 56 (ECF No. 233-1); Frederiksen-Cross Rebuttal Report, ¶¶ 66-67 (ECF No. 177-3); Boswell Dep. Tr. 56:25-58:2, 59:14-19 (Ex. 2). The *Cox* court sanctioned BMG for this spoliation of evidence. *See Cox* Order at 4 (Ex. 1). After many months of waiting,[3] last week Plaintiffs finally produced what appear to be change logs for a subset of the system's code for an eighteen month period in 2016 and 2017. Grande's early analysis of those logs indicates that Rightscorp deleted files, added files, and changed or removed a substantial volume of code from other files during that period. Similar changes to the code were surely made before May of 2016 and later in 2018, but they were never recorded. The absence of these vital records makes it impossible—even for Plaintiffs' own expert—to understand or explain how the Rightscorp

---

[2] This information is so important that the RIAA specifically requires the vendor it employs to monitor Plaintiffs' works—a vendor other than Rightscorp—to preserve all of this data as a necessary evidence package. *See* MarkMonitor Master Agreement (Ex. 3) at MM0000023-24 (requiring an "evidence package" that specifically includes a "Log of all control communications with the target" and "bit fields from BitTorrent users"); *see also id.* ("all evidence will be saved including without limitation packets of data that are received and exchanged during the process.") (emphasis added).

[3] It took many months for Plaintiffs to confirm that these materials exist, and yet more time for Plaintiffs to produce them. *See* Emails between Plaintiffs' and Defendant's counsel (Ex. 4).

4

system was operated on any given day. *See* Cohen Report, ¶¶ 48-51; Frederiksen-Cross Dep. Tr. at 66:3-24 (ECF No. 215-2).

By way of example, over time Rightscorp modified its software to change the threshold bitfield that will trigger generation of an infringement notice, and Rightscorp has also used different threshold values for different clients. Cohen Report, ¶ 116. For some unknown period of time, Rightscorp manually executed additional code that caused the Rightscorp software to send infringement notices for every file within a payload (*e.g.*, all 10 songs in a 10-song album[4]) if the peer possessed as little as 10% of the payload file. *Id.* Thus, for example, a peer with one song from a 10-song torrent file, or with pieces of several different songs from a 10-song torrent file, would receive an infringement notice for all 10 songs, <u>even though the peer was specifically reporting that it did not have all ten songs or even a complete copy of a single song</u>. *Id.* at ¶¶ 116-17. Rightscorp failed to retain—or thereafter destroyed—all evidence that could be used to determine which notices it sent based on the lower 10% threshold, or otherwise to determine when Rightscorp was using a threshold value of less than 100%.

Rightscorp's failure to retain evidence of the changes it made to its software over time makes it impossible to know what collection of source code existed or was manually executed by Rightscorp's personnel and, therefore, how Rightscorp's notices and downloads were generated.

### *Song Matching*

As part of its song ingestion process, the Rightscorp system downloaded files of interest from the swarm (not from individual peers) so that song files within that payload could be identified. Cohen Report, ¶¶ 74-77 (ECF No. 233-1). Over the period of roughly 2012-2013,

---

[4] A music-related torrent file can, and usually does, pertain to multiple song files. *See, e.g.*, Cohen Report, ¶¶ 41,117 (ECF No. 233-1).

Rightscorp claims that it exclusively used a manual process to verify the content of the files it downloaded. This manual process required a Rightscorp employee to listen to the music file and compare that recording with a copy of the monitored song. Boswell Dep. Tr. at 172:23-176:21 (Ex. 2). Rightscorp continued to rely on manual verification processes during the entire period at issue in this case. *Id*. at 186:11-191:18. Rightscorp destroyed all records of its manual verification process, including any records of the alleged "original" songs that were used for comparison. Cohen Report, ¶¶ 124, 126 (ECF No. 233-1); Boswell Dep. Tr. at 176:15-179:12, 190:23-191:18 (Ex. 2). In other words, Rightscorp cannot identify the songs it manually verified, which notices it generated based on those verifications, or which "real" song its employees used to allegedly verify that a given downloaded file was actually a copy of a registered copyrighted work.

Rightscorp also used two different digital fingerprinting services over time. Rightscorp used a service called Audible Magic prior to June 2014, and thereafter used a service called AcoustID. Cohen Report, ¶ 77 (ECF No. 233-1); Boswell Dep. Tr. at 172:10-22, 197:1-21 (Ex. 2). Rightscorp claims it created digital fingerprints from the files it downloaded and submitted those files to the fingerprinting service for analysis. Cohen Report, ¶¶ 78, 79, 81, 82. The service returns a list of potential matches and, at least in the case of AcoustID, a score for each match. *Id*. at ¶¶ 81-83. Rightscorp destroyed all of the records associated with these fingerprinting services, including the digital fingerprints Rightscorp submitted for analysis and the results received.[5] Boswell Dep. Tr. 209:13-23; 212:13-213:2; Cohen Report at ¶¶ 124, 126.

---

[5] The RIAA requires the BitTorrent monitoring company working on behalf of Plaintiffs to preserve all of this data as part of its copyright infringement evidence package. *See* MarkMonitor Master Agreement (Ex. 3) at MM000022 (requiring retention of all information gathered during the "Full Download Verification" and "Hash Based Verification" process).

*Targeted Downloads*

Rightscorp has a separate process for attempting to download allegedly infringing songs from particular peers. *See, e.g.*, Cohen Report, ¶ 85 (ECF No. 233-1). Rightscorp claims that it routinely attempted to download certain files from Grande's subscribers using this system, but it destroyed information about how often those downloads were attempted, the communications and data exchanged between the Rightscorp software and Grande's subscribers relating to these attempted downloads (including data that would establish that these files were actually downloaded from users of Grande's network), and many other results from the download process.[6] *Id.* at ¶ 168. As a result, Grande's ability to independently evaluate or rebut Rightscorp's allegations regarding its download protocol, processes and results has been severely compromised.

*Call Center Logs*

Until recently, Rightscorp operated a call center for inquiries from individuals who received notices of alleged infringement. Sabec Dep. Tr. at 149:13-19 (Ex. 5). The call center generated a wealth of data and records concerning the veracity of Rightscorp's notices, including employee scripts, call recordings, voicemails, and logs of customer interactions. *Id.* at 90:10-91:17, 142:23-149:9. Other than a handful of scripts and talking points, Plaintiffs are unable to produce any of the materials generated or used by the call center. *Id.* at 149:10-19, 90:5-91:17, 143:1-147:16, 150:4-151:13, 366:3-369:3 (Q: Has [Rightscorp] ever retained or recorded written notes from calls? A: Yes. Q: Does Rightscorp still have those records? A: No.) (Ex. 5).

---

[6] This is also information that the RIAA requires its BitTorrent monitoring service to retain. *See* MarkMonitor Master Agreement (Ex. 3) at MM0000022 (requiring vendor to retain the information gathered during the "Full Download Verification" step); *see also id.* ("all evidence will be saved including without limitation packets of data that are received and exchanged during the process.") (emphasis added).

7

Plaintiffs and Rightscorp only recently confirmed that these materials no longer exist. *See* Emails between Plaintiffs' and Defendant's counsel at 16 (Ex. 4).

*Grande's Discovery Requests and the Parties' Meet-and-Confer Efforts*

During discovery, Grande served discovery requests calling for the production of each of the items described in the paragraphs above. The parties met and conferred on the spoliation issues raised herein multiple times, and subsequent promises to supplement productions went unfulfilled for months. *See* Emails between Plaintiffs' and Defendant's counsel (Ex. 4). While Grande waited for Plaintiffs to conclude their investigation, Grande deposed Plaintiffs' employees and the RIAA. In deposition after deposition, Plaintiffs, Rightscorp, and the RIAA were unable to explain how the Rightscorp system actually functioned, and have similarly been unable to produce the underlying data on which Rightscorp's notices were based.[7] *See* Jang Dep. Tr. (Sony 30(b)(6) witness) at 64:18-65:25 (Ex. 6); Benjamin Dep. Tr. (Universal 30(b)(6) witness) at 41:15-42:5 (Ex. 7); Glass Dep. Tr. (Warner 30(b)(6) witness) at 38:18-39:22 (Ex. 8); Boswell Dep. Tr. at 296:11-298:18, 302:5-303:20 (Ex. 2); Landis Dep. Tr. (RIAA 30(b)(6) witness) at 45:15-57:17, 93:1-94:9, 134:17-135:13 (Ex. 9).

## LEGAL STANDARD

Spoliation "is the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). Spoliation sanctions are appropriate where (1) a party possessed a duty to preserve the information; (2) the party breached that duty; and (3) the breach of duty results in prejudice to the opposing party. *Spencer v. BMW of N. Am., LLC*, No. 5:14-cv-00869-DAE, 2015 WL 11661765, at *2 (W.D. Tex. Dec. 22, 2015). "The prejudice

---

[7] Plaintiff and RIAA depositions were only recently conducted in this case. Those depositions were delayed by the parties' disputes concerning the proper scope of corporate depositions and by Plaintiffs' refusal to produce witnesses until those disputes were resolved.

8

requirement is satisfied once the party seeking sanctions demonstrates the missing evidence is relevant to their case." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 685 (S.D. Tex. 2013) (citation omitted).

A court may impose "severe sanctions" for spoliation of evidence where "relevant information was destroyed in bad faith." *Collins v. Easynews, Inc.*, No. 1:06-cv-451-LY, 2008 WL 11405990, at *2 (W.D. Tex. Feb. 6, 2008) (citations omitted). "Bad faith must typically be inferred," and "a court can do so where a party purposely loses or destroys relevant evidence." *Quantlab Techs. Ltd. v. Godlevsky*, No. 4:09-cv-4039, 2014 WL 651944, at *10 (S.D. Tex. Feb. 19, 2014) (quotations & citations omitted).

## ARGUMENT

Plaintiffs and Rightscorp have destroyed all of the evidence necessary to determine how the Rightscorp system operated at any given time relevant to this lawsuit. Plaintiffs and Rightscorp also failed to keep any records of when, how, or whether individual components of the Rightscorp system were executed manually by Rightscorp's personnel. The absence of these records makes it impossible—even for Plaintiffs' own expert—to understand or fully evaluate the operation of Rightscorp's software. Plaintiffs and Rightscorp also destroyed virtually every piece of evidence on which Rightscorp's notices of alleged copyright infringement were based:

- All transmissions from trackers to Rightscorp's system—the data that allegedly identified Grande's subscribers as alleged infringers;

- All bitfield, choke and other data communicated by peers on Grande's network—the data that would show whether any portion of a targeted song file or set of files existed on a given peer's computer and was willing to be shared;

- All records and other evidence of Rightscorp's alleged efforts to match downloaded files to copyrighted sound recordings, either manually or through the Audible Magic and AcoustID services; and

- All communications and other data reflecting the process by which Rightscorp attempted to obtain music files from individual peers operating on Grande's network.

Plaintiffs and/or Rightscorp also recently confirmed that they destroyed virtually all of the records from Rightscorp's call center. These materials would document flaws in Rightscorp's notification system that would be relevant to Grande's defense of the case.

Plaintiffs and Rightscorp had a duty to preserve the evidence it destroyed. On its face, every Rightscorp notice purports to be in anticipation of litigation. *See, e.g.*, Sample Notices at 2 (ECF No. 140-2); *see also Cox* Order at 3-4 (finding duty to preserve as early as 2012); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, No. 3:16-cv-545, 2018 WL 2023128, at *6 (E.D. Va. May 1, 2018); *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 340 n. 8 (M.D. La. 2006).

There is also no question that Plaintiffs' destruction of evidence has caused severe prejudice to Grande. Plaintiffs intend to rely heavily on Rightscorp's notices to prove their infringement case. Yet, the destruction of the evidence underlying those notices seriously compromises Grande's ability to independently evaluate the accuracy of the process, notices and downloads. *See McKinney*, 964 F. Supp. 2d at 685 (prejudice is established "once the party seeking sanctions demonstrates the missing evidence is relevant to their case."); *Cox* Order at 4.

Given Plaintiffs' and Rightscorp's destruction of virtually all evidence underlying Rightscorp's allegations, the only just remedy is the exclusion of the Rightscorp evidence (*i.e.*, Rightscorp's notices and any music files allegedly downloaded by Rightscorp). Because Rightscorp destroyed all of the related and underlying evidence, the Rightscorp notices and downloads have effectively been "spoiled." *See Alcoa*, 244 F.R.D. at 340; *McKinney*, 964 F. Supp. 2d at 686.

## CONCLUSION

For the foregoing reasons, the Court should exclude from trial all evidence generated by Rightscorp's system or grant such other sanction the Court deems just and proper.

Dated:  January 3, 2019.

By: /s/ Richard L. Brophy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone:  314.621.5070
Fax:  314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
Texas State Bar No. 16584975
J.R. Johnson
Texas State Bar No. 24070000
Diana L. Nichols
Texas State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Telephone: 512.495.6429
Fax: 512.495.6401
Email: steve.ravel@kellyhart.com
jr.johnson@kellyhart.com
diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE
COMMUNICATIONS NETWORKS

**CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), the undersigned certifies that counsel for the parties conferred and that Plaintiffs oppose the relief sought.

/s/ Richard L. Brophy
Richard L. Brophy

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 3, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy