UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>GRANDE COMMUNICATIONS NETWORKS LLC,<br><br>Defendant. | No.  1:17-cv-00365-DAE-AWA<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION REGARDING GRANDE'S DMCA SAFE HARBOR DEFENSE**

Pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), Grande Communications Networks LLC ("Grande") submits the following Objections to Magistrate Judge Austin's December 18, 2018 Report and Recommendation, in which Judge Austin recommended granting Plaintiffs' Motion for Partial Summary Judgment as to Grande's DMCA Safe Harbor Defense.  *See* ECF No. 241 (the "R&R").

The issue before the Court is whether—drawing all reasonable inferences in Grande's favor—there is a genuine dispute of material fact as to whether Grande qualifies for the Section 512(a) safe harbor defense of the Digital Millennium Copyright Act ("DMCA").  As discussed below, there is more than enough evidence to permit a reasonable jury to conclude that Grande qualifies for this safe harbor defense.

The DMCA contains several safe harbor provisions that limit the liability of an Internet service provider ("ISP") for claims of copyright infringement.  17 U.S.C. §§ 512(a)-(d).  The safe harbor provision pertinent to this case is § 512(a), which applies to an ISP "transmitting, routing, or providing connections for, material through a system or network controlled or

1

operated by or for the service provider." Safe harbor protection under § 512(a) is conditioned on the threshold requirement that the service provider:

> [H]as adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

§ 512(i). The statute does not define "reasonably implemented," "appropriate circumstances," or "repeat infringers," and courts have viewed Congress's silence as reflecting its "intent to leave the policy requirements, and the subsequent obligations of the service providers, loosely defined." *See, e.g.*, *Capitol Records, LLC v. Vimeo, LLC*, 972 F. Supp. 2d 500, 513 (S.D.N.Y. 2013) (quotations & citation omitted), *vac'd in part on other grounds*, 826 F.3d 78 (2d Cir. 2016).

On August 8, 2018, Plaintiffs moved for partial summary judgment on Grande's § 512(a) safe harbor defense. Plaintiffs' Mot. for Partial Summ. J. (ECF No. 127). Plaintiffs claim that there is no fact dispute as to whether Grande adopted and reasonably implemented a "repeat infringer" policy pursuant to § 512(i). *Id*.

Respectfully, Grande objects to Judge Austin's recommendation to grant Plaintiffs' motion for partial summary judgment and objects to the findings in the R&R. For the reasons set forth below, Grande submits that these objections should be sustained, and that Plaintiffs' motion should be denied. In addition, due to the significant legal questions and complex technical evidence involved, Grande respectfully requests oral argument.

## **LEGAL STANDARD FOR OBJECTIONS TO R&R**

If a party timely objects to the Magistrate Judge's recommendations or findings, the Court must make a *de novo* determination of the objectionable portions of the recommendations or findings, in whole or in part. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). The Court may

then accept, reject, or modify the recommendations or findings. Rule 72(b)(3). The Court may also receive additional evidence or return the matter to the Magistrate Judge with additional instructions. *Id*.

# ARGUMENT[1]

## I. THE COURT SHOULD DENY SUMMARY JUDGMENT AS TO GRANDE'S SAFE HARBOR DEFENSE

In the R&R, Judge Austin concluded that there is no genuine issue of material fact as to whether Grande qualifies for the § 512(a) safe harbor defense. Grande respectfully objects to the conclusions in the R&R, as there are numerous disputed factual questions that cannot be resolved on summary judgment. At a bare minimum, the evidence shows that Grande has at all relevant times had policies in place providing for the termination of subscribers who engage in repeat copyright infringement. Pursuant to those policies, Grande terminated the Internet access of multiple alleged repeat copyright infringers in compliance with § 512(i).

The evidence also shows critical flaws in the Rightscorp system that create factual disputes as to whether Grande should have terminated the Internet access of *any* subscriber based on Rightscorp's notices of alleged copyright infringement. There is no evidence before the Court regarding whether any allegations of copyright infringement received from parties other than Rightscorp could, or should, have led to the termination of any Grande subscriber.

### A. There are fact issues for trial regarding whether Grande "reasonably implemented" its repeat infringer termination policies.

Grande respectfully objects to Judge Austin's determination that Grande did not provide adequate evidence to create a fact issue for trial as to whether it "reasonably implemented" its

---

[1] For detailed factual background regarding the instant litigation, Grande refers the Court to its contemporaneously-filed Objections to Magistrate Judge Austin's other December 18, 2018 Report and Recommendation (ECF No. 240).

repeat infringer policies. Since 2012, Grande has had a public-facing policy in place providing for the termination of subscribers who engage in copyright infringement. 2012 Grande Acceptable Use Policy at 4 (ECF No. 143-3).[2] Grande's current Acceptable Use Policy, which has been publicly accessible and in force since 2013, reflects the same policy. Grande Acceptable Use Policy at 4 (ECF No. 143-4); *see also* Horton Dep. Tr. 62:12-63:7 (ECF No. 143-5); S. Christianson Dep. Tr. 21:9-20 (ECF No. 144-3). Grande has also had a more specific public-facing DMCA policy in place since 2016. DMCA Policy and Procedure (ECF No. 143-6); S. Christianson Dep. Tr. (June 26, 2018) at 36:5-22 (ECF No. 144-3). Grande has therefore adopted repeat infringer policies and informed its customers of these policies during the entire relevant time period.

Judge Austin's recommendation to grant Plaintiffs' motion for summary judgment is premised on the notion that Grande did not reasonably implement its repeat infringer policies because it did not terminate the accounts of *enough* subscribers after receiving Rightscorp's notices of alleged infringement. *See* R&R at 7-8 (recognizing that Grande has terminated 12 subscribers). This is a disputed factual issue that cannot be resolved on summary judgment.

The Rightscorp system, which purportedly generates "infringement" notices, is in reality incapable of identifying or giving notice of actual copyright infringement. *See* Ex. 1 to Grande Mot. for Summ. J. (Frederiksen-Cross Report) at ¶¶ 46, 70, 79, 97, 119 (ECF No. 141-1); Cohen Decl. & Report, ¶¶ 16, 25, 88 (ECF No. 144-4). Rightscorp's system is only capable of detecting when a file may have been made *accessible* through BitTorrent—the system cannot detect the

---

[2] Grande's 2012 Acceptable Use Policy states: "Grande may terminate the Service provided to any customer or user who is either found to infringe third party copyright or other intellectual property rights, including repeat infringers . . . ."

transmission of copyrighted material between third parties.  *See* Ex. 1 to Grande Mot. for Summ. J. (Frederiksen-Cross Report) at ¶¶ 46, 70, 79, 97, 119 (ECF No. 141-1); Cohen Decl. & Report, ¶¶ 16, 25, 88 (ECF No. 144-4).

In addition, Rightscorp's notices omit information necessary to give Grande actionable notice of copyright infringement.  *See, e.g.*, Ex. 4 to Grande's Mot. for Summ. J. at 8 (Rightscorp notice stating "The file 09 Haze.mp3 was infringed upon by a computer at IP Address . . . ."), 14 ("The file Album07 Fair Game.mp3 was infringed upon by a computer at IP Address . . . .") (ECF No. 140-2).  For instance, Rightscorp's notices do not identify the name of a copyrighted work or a U.S. copyright registration, and they contain no explanation or evidence of the factual basis of the allegation.  *See id.*  Rightscorp also does not attempt to download any portion of an allegedly infringing file before sending a notice of copyright infringement, and does not obtain true copies of copyrighted songs to compare against allegedly infringing copies.  *See* Cohen Decl. & Report, ¶¶ 142-143 (ECF No. 144-4); Frederiksen-Cross Report, ¶¶ 46-47 (ECF No. 141-1); *see also* Ex. 3 to Grande's Mot. for Summ. J., ECF No. 141-3 (Sabec Dep. Tr.) at 1170:10-18; 1288:24-1289:21 (ECF No. 141-3).  Rightscorp claims to use third-party services to analyze whether allegedly infringing files are copies of copyrighted works, but it is undisputed that Rightscorp has destroyed all records of any results it obtained from such systems.  *See* Grande's Mot. for Sanctions at 5-6 (ECF No. 247).

Given this evidence, a fair-minded jury could conclude that Grande reasonably implemented its termination policies by choosing *not* to terminate subscribers in response to

5

Rightscorp's facially-deficient and otherwise unreliable notices.[3] And notwithstanding these defects, Grande did, in fact, terminate subscriber accounts pursuant to its repeat infringer policy, on at least 12 occasions. Pls' Mot. at 7 (¶ 19). Thus, determining whether Grande's actions (*i.e.*, the number of terminations it initiated) constituted "reasonable implementation" of its safe harbor policies presents a genuine issue of material fact for the jury.

Grande also respectfully objects to Judge Austin's application of *BMG Rights Mgmt. (US) LLC. v. Cox Commc'ns, Inc.* to this case. There are important differences between *Cox* and this case. In *Cox*, the district court determined that Cox did not reasonably implement its termination policies based, in part, on evidence that Cox employees affirmatively decided not to terminate the Internet access of subscribers that the employees believed were in direct violation of Cox's termination policies. 149 F. Supp. 3d 634 (E.D. Va. 2015), *aff'd in part & rev'd in part*, 881 F.3d 293 (4th Cir. 2018). For example, one subscriber was advised that "further complaints would result in termination" and that it was the subscriber's "absolute last chance to . . . remove ALL" file-sharing software. *Id*. at 659. However, when Cox received another complaint, a manager instructed the employee not to terminate, but rather to "suspend this Customer, one LAST time," noting that "[t]his customer pays us over $400/month" and that "[e]very terminated Customer becomes lost revenue." *Id*. at 660. On appeal, the Fourth Circuit affirmed the district court's decision on this issue, holding that Cox "failed to follow through on its own policy" because Cox internally concluded that a subscriber should be terminated, but then declined to do so to preserve a revenue stream. 881 F.3d 293 (4th Cir. 2018).

---

[3] There is no evidence in this case that could support the conclusion that Grande should have terminated any subscribers in response to allegations of copyright infringement received from parties other than Rightscorp. In short, there is no evidence whatsoever regarding the nature of these notices or how they were generated.

Here, there is no evidence that Grande ever internally concluded that a particular subscriber should be terminated pursuant to Grande's public-facing policies, and then nevertheless declined to enforce that policy and terminate the subscriber's account. Thus, the critical evidence considered by the *Cox* court is wholly absent from the evidentiary record in this case.

### B. There are triable issues of material fact regarding the existence of "appropriate circumstances" warranting termination.

Grande respectfully objects to Judge Austin's determination that there is no fact issue for trial as to whether Rightscorp's notices present "appropriate circumstances" that would require Grande to terminate the accounts of alleged repeat infringers. As discussed above, Grande has presented a myriad of evidence showing the pervasive flaws in the Rightscorp system and the infringement notices that it generated. *See also* Grande's Mot. for Summ. J. at 6-9 (ECF No. 140). There is at least a genuine issue of material fact as to whether any of these flawed notices provided "appropriate circumstances" for terminating the Internet access of an affected subscriber.

As a result, *Cox* is plainly distinguishable. 149 F. Supp. 3d 634 (E.D. Va. 2015), *aff'd in part & rev'd in part*, 881 F.3d 293 (4th Cir. 2018). In *Cox*, the court assumed the validity of Rightscorp's notices and did not address the technical issues plaguing them, and did not address whether Rightscorp's notices contain sufficient information to give rise to cause for termination. *Id.* at 639-640. Here, in contrast, Grande has come forward with extensive evidence, including expert testimony, regarding the flaws in Rightscorp's system and its inability to detect or give sufficient notice of copyright infringement. *See* Grande's Mot. for Summ. J. at 6-9 (ECF No. 140).

In sum, it is axiomatic that determining whether Grande failed to implement a policy for

terminating repeat infringers "in appropriate circumstances" requires considering the evidence of the actual circumstances. That evidence includes the extensive evidence that Rightscorp's system is simply incapable of reliably identifying and giving notice of actual copyright infringement. At a minimum, this evidence gives rise to a genuine issue of material fact for trial.

## REQUEST FOR ORAL ARGUMENT

In view of the significant legal issues and complex technical evidence involved in the instant summary judgment briefing, Grande respectfully requests oral argument concerning these Objections.

## CONCLUSION

For the foregoing reasons, the Court should sustain Grande's objections to the December 18, 2018 Report and Recommendation (ECF No. 241) and deny Plaintiffs' Motion for Partial Summary Judgment (ECF No. 127).

Dated: January 9, 2019

Respectfully submitted,

By: /s/ Zachary C. Howenstine
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
Texas State Bar No. 16584975
J.R. Johnson
Texas State Bar No. 24070000
Diana L. Nichols
Texas State Bar No. 00784682
Kelly Hart & Hallman LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Telephone: 512.495.6429
Fax: 512.495.6401
steve.ravel@kellyhart.com
jr.johnson@kellyhart.com
diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE COMMUNICATIONS NETWORKS LLC

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on January 9, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Zachary C. Howenstine