**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  1:17-cv-00365-DAE-AWA |
| | ) | |
| GRANDE COMMUNICATIONS | ) | **ORAL ARGUMENT REQUESTED** |
| NETWORKS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OBJECTIONS TO REPORT AND RECOMMENDATION**
**REGARDING LIABILITY, DAMAGES, AND SANCTIONS**

## TABLE OF CONTENTS

CASE OVERVIEW ................................................................................ 3

LEGAL STANDARD FOR OBJECTIONS TO R&R ......................................... 7

ARGUMENT ....................................................................................... 7

    I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
        ON CONTRIBUTORY INFRINGEMENT ................................... 7

        A.    The R&R erred in adopting a "material contribution"
            liability standard and finding a genuine issue of
            material fact regarding intent. ........................................... 7

        B.    The R&R erred in finding a genuine issue of material
            fact regarding knowledge. ............................................. 16

    II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
        BECAUSE PLAINTIFFS CANNOT PROVE COPYING ..................... 18

        A.    Proof of copyright infringement requires evidence that
            enables a comparison between the copyrighted work
            and the alleged copy ....................................................... 19

        B.    The R&R erroneously found that Plaintiffs'
            "comparison" evidence is competent and admissible ................. 23

    III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
        BECAUSE PLAINTIFFS CANNOT PROVE DIRECT
        INFRINGEMENT OF THEIR DISTRIBUTION RIGHTS
        BY ANY GRANDE SUBSCRIBER ........................................ 24

        A.    The R&R erred in finding that Plaintiffs' allegations
            and evidence implicate direct infringement of
            Plaintiffs' distribution rights. ........................................ 25

        B.    The R&R erred in finding that there is sufficient
            circumstantial evidence of distribution to create a fact
            issue for trial. ............................................................. 28

    IV.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
        ON WILLFUL COPYRIGHT INFRINGEMENT ................................... 30

    V.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
        ON PLAINTIFFS' DISCOVERY RULE ARGUMENT ......................... 31

i

**VI.**    **THE COURT SHOULD GRANT SUMMARY JUDGMENT ON DAMAGES BASED ON DISGORGEMENT OF PROFITS** ......................................................................................... 32

**VII.**   **THE COURT SHOULD GRANT GRANDE'S MOTION FOR SANCTIONS AND, AS A RESULT, GRANT SUMMARY JUDGMENT ON OWNERSHIP OF CERTAIN ASSERTED COPYRIGHTS** ........................................................................ 33

**REQUEST FOR ORAL ARGUMENT** ............................................................................... 35

**CONCLUSION** ...................................................................................................................... 35

# TABLE OF AUTHORITIES

## Cases

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)............................................. 25

*Arista Records LLC v. Lime Wire LLC*, No. 1:06-cv-5936, 2010 WL 10031251
  (S.D.N.Y. Aug. 9, 2010 ................................................................................................ 21

*Arista Records LLC v. Myxer Inc.*, No. 2:08-cv-3935, 2011 WL 11660773
  (C.D. Cal. April 1, 2011) .............................................................................................. 21

*Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976 (D. Ariz. 2008)........................................ 25

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018) ............. 7,14

*Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 320 (5th Cir. 2011) ..................... 31

*Bridgmon v. Array Sys. Corp.*, 325 F.3d 572 (5th Cir. 2003)..................................................... 19

*BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450
  (S.D.N.Y. July 15, 2016) ............................................................................................... 12

*BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436 (5th Cir. 2017) ............... 26

*Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 1:12-cv-6646, 2015 WL 1402049
  (S.D.N.Y. March 25, 2015)............................................................................................ 21

*Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018) ...................... 12, 13, 15

*Creations Unlimited, Inc. v. McCain*, 112 F.3d 814 (5th Cir. 1997)............................................ 19

*David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914
  (N.D. Cal. July 13, 2012)............................................................................................... 26

*De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ..... 29

*Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388 (5th Cir. 2014) .............................................. 30

*In re Napster, Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841
  (N.D. Cal. July 9, 2011).................................................................................................. 26

*King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ................................................................... 2, 19

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ................................ 8

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197
 (C.D. Cal. 2007) ............................................................................................ 21, 22

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361(5th Cir. 2010) ................... 32

*Morin v. Chevron U.S.A. Inc.*, No. 2:11-cv-45, 2012 WL 2116368 (E.D. La. June 11, 2012) .... 34

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ......................................... 15

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ...................................... 16

*Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 2:11-cv-1142, 2012 WL 2061904
 (E.D. La. June 7, 2012) ............................................................................................ 34

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) ....................................... 8

*TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351 (5th Cir. 2008) ........................................................ 31

*UMG Recordings, Inc. v. Escape Media Grp., Inc.*, No. 1:11-cv-8407
 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014) ............................................................. 21

*UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099 (C.D. Cal. 2009).............. 20

*United States v. $240,100.00 in U.S. Currency*, No. 1:14-cv-942, 2017 WL 2303985
 (M.D.N.C. May 25, 2017) ............................................................................................ 18

*Verizon Employee Benefits Committee v. Fitzgerald*, No. 3:06-cv-0482, 2007 WL 2080004
 (N.D. Tex. July 12, 2007) ............................................................................................ 32

## Statutes

17 U.S.C. § 106........................................................................................................... 25, 27
17 U.S.C. § 106(1) ............................................................................................................ 25
17 U.S.C. § 106(3) ......................................................................................................... 1, 25
17 U.S.C. § 504(b) ............................................................................................................ 32
17 U.S.C. § 507(b) ...................................................................................................... 31, 32
17 U.S.C. § 512 ................................................................................................................ 14
28 U.S.C. § 636(b)(1)(C) ................................................................................................... 7

## Rules

Fed. R. Civ. P. 72(b) .......................................................................................................... 7

Defendant Grande Communications Networks LLC ("Grande") submits the following Objections to Magistrate Judge Austin's December 18, 2018 Report and Recommendation, in which Judge Austin recommended granting in part and denying in part Grande's Motion for Summary Judgment, and recommended denying Grande's Motion for Sanctions.[1]  *See* ECF No. 240 ("the R&R").

The R&R addressed several significant legal questions regarding copyright liability.  The resolution of these issues has implications far beyond this case—particularly for Internet service providers ("ISPs") like Grande, and for other users and purveyors of Internet services and digital media.  These issues include:

- Whether a defendant who provides a service with substantial noninfringing uses—here, Internet access—can be liable for contributory copyright infringement, based on its customers' use of that service, in the absence of any evidence of affirmative steps taken to foster or encourage infringement;

- Whether an unsupported and unverifiable allegation can be sufficient to confer knowledge of copyright infringement, particularly where the allegation is not based on the detection of actual copyright infringement; and

- Whether enabling a third party to copy copyrighted material from an individual's personal computer constitutes direct infringement of a copyright owner's distribution right under 17 U.S.C. § 106(3), or secondary infringement of the copyright owner's § 106(1) reproduction right.

Grande respectfully submits that the R&R erred in resolving each of these potentially case-dispositive issues.

Grande's Motion for Summary Judgment also demonstrated a wholly unique and inexplicable failure of proof.  Plaintiffs are attempting to prove infringement of roughly 1,500

---

[1] In view of the recent reassignment of this matter to the Court, Grande has endeavored in these Objections to provide more detail about the relevant factual and legal issues than might otherwise be necessary.  Grande has done so solely in the interest of fully and efficiently presenting the Court with the issues to be decided.

copyrighted sound recordings without any evidence of the original copyrighted sound recordings at issue.  Instead, Plaintiffs seek to prove the copying element of their claims solely through witness testimony, which in turn is based solely on the witnesses' use of third parties' audio "fingerprinting" services—without any evidence of how those services function.  This is insufficient as a matter of law because controlling Fifth Circuit precedent holds that the evidence must allow the factfinder to compare the copyrighted work to the alleged copy.  *See, e.g.*, *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility.  King's failure to adduce evidence for such a comparison vitiates her claim.").  Because there is no evidence of record that would permit a factfinder to determine that any alleged copy is indeed a copy of any copyrighted work, the R&R erred in finding a genuine issue of material fact regarding direct infringement.

There are a number of other serious legal and evidentiary issues that plague Plaintiffs' claims.  For instance, in opposing Grande's motion for summary judgment, Plaintiffs relied on a raft of evidence that was never properly identified or produced until after fact discovery closed and expert reports were served, including ownership evidence for a substantial portion of the copyrighted works at issue.  The R&R erred in declining to exclude this improper summary judgment evidence.

Grande respectfully requests that the Court sustain Grande's objections and grant Grande's motion for summary judgment and Grande's motion for sanctions.  Due to the significant legal questions and complex technical subject matter involved, Grande respectfully requests oral argument.[2]

---

[2] Magistrate Judge Austin did not hold oral argument prior to issuing the R&R.

## CASE OVERVIEW

Plaintiffs are a collection of record labels who seek to hold Grande, an ISP, liable for contributory copyright infringement of approximately 1,500 sound recordings, based on Grande's alleged failure to police the conduct of its customers.[3]  *See generally* Compl. & Ex. A thereto (ECF No. 1, 1-1).  Grande is a "conduit" ISP that solely provides Internet access to customers; Grande does not host websites, store data for customers, or distribute online content, software, or tools.  The thrust of Plaintiffs' claims is that Grande is contributorily liable because it did not terminate the accounts of infringing customers after receiving allegations that these customers committed copyright infringement.  *See generally id.*

Plaintiffs' claims are based on evidence obtained from non-party Rightscorp, Inc., which has a software system for monitoring peer-to-peer file-sharing activity using the BitTorrent protocol.[4]  Rightscorp claims to detect when a particular BitTorrent user has offered to share a copyrighted music file, and then it sends a corresponding email notice to that user's ISP, asking the ISP to forward the notice to the relevant customer.  *See* Grande's Mot. for Summ. J. at 2 (ECF No. 140); Frederiksen-Cross Report, ¶¶ 18, 73 (ECF No. 141-1).  It is undisputed that Rightscorp cannot detect any actual transmission of files between BitTorrent users.  *Id.* at 3; Frederiksen-Cross Report, ¶ 46.

Over the years, Rightscorp has sent several hundred thousand notices of alleged copyright infringement to Grande that, according to Plaintiffs, pertain to the copyrighted works

---

[3] The Court previously dismissed Plaintiffs' vicarious infringement claims and Plaintiffs' claims against Grande's management company.  *See* Am. Order on Report & Recomm. (ECF No. 78).

[4] BitTorrent is a communications protocol (in other words, a system of rules), not a specific piece of software.  There are various publicly-available BitTorrent software products ("clients") that can be used to download and share files using the BitTorrent protocol.  *See, e.g.*, https://en.wikipedia.org/wiki/BitTorrent.

at issue in this case.[5]   However, the volume of notices that Rightscorp sends is a "business variable" controlled by Rightscorp.  Sabec Dep. Tr. 1189:20-1193:11 (ECF No. 141-3).  In other words, there is no direct relationship between the volume of Rightscorp's notices and the number of allegedly infringing acts, because the number of notices depends on how often Rightscorp runs its system.  *See id.*  Rightscorp generates a notice each time it detects that a particular IP address is making an allegedly infringing file available for download.  *See* Grande's Mot. for Summ. J. at 7-8 (ECF No. 140); Frederiksen-Cross Report, ¶ 46 (ECF No. 141-1).  Thus, if a BitTorrent user offered to share an allegedly infringing file continuously over a 10-day period, and Rightscorp ran its system once per day, then Grande would receive 10 notices with respect to that user.  If Rightscorp decided to run its system four times per day, the same facts would result in 40 notices to Grande, without any change in the subscriber's behavior.  Sabec Dep. Tr. 1191:7-17 (ECF No. 141-3).

Rightscorp has never attempted to monitor Grande's network for alleged infringement of Plaintiffs' works.  *Id.* at 1149:4-17.  As a result, Rightscorp has never sent any notices of alleged infringement to Grande on behalf of any of the Plaintiffs in this case.  *See id.*  Instead, all of the Rightscorp notices now at issue in this case were sent to Grande on behalf of third parties who may have related copyright interests (*e.g.*, music publishing companies that own composition rights, whereas Plaintiffs own rights in the sound recordings).  *See* Grande's Mot. for Summ. J. at 3, 7 (ECF No. 140); *see also* Sabec Dep. Tr. 1112:1-1114:25, 1305:5-1306:8 (ECF No. 141-3).

---

[5] The R&R's references to Grande receiving "over one million" such notices from Rightscorp are misleading.  *See, e.g.*, R&R at 1, 13.  This is the total number of notices Rightscorp has ever sent to Grande, on behalf of all of its clients, pertaining to any alleged copyright infringement. According to Plaintiffs, roughly 350,000 of these notices concern the copyrighted works at issue in this case.  *See* Pls.' Cross-Mot. at 5 (ECF No. 172); *see also* Bardwell Report at 9 (ECF No. 173-81).

It is undisputed that Grande does not have the ability to independently investigate or verify the allegations in Rightscorp's notices.  Boswell Dep. Tr. 1332:3-1333:21 (ECF No. 130-2).  The notices also contain a minimal amount of information.  The notices identify (1) the IP address of the relevant home network; (2) the name of the allegedly infringing music file (*e.g.*, "09 Haze.mp3"); (3) the date and time of the alleged infringement (*i.e.*, when Rightscorp ran its system), and (4) the copyright owner on whose behalf the notice was sent.  *See generally* Sample Rightscorp Notices (ECF No. 140-2).  Rightscorp's notices do not identify the name of a copyrighted work or a U.S. copyright registration number, or provide evidence of copyright ownership.  *See id.*  Rightscorp's notices also do not provide evidence of copyright infringement or an explanation of the factual basis of the allegation.  *See id.*  Instead, the notices simply assert that "[y]our ISP account has been used to download, upload or offer for upload copyrighted content in a manner that infringes on the rights of the copyright owner."  *See id.*

Rightscorp's notices do not ask Grande to terminate customer accounts or otherwise take any action against its customers.  *See id.*  Instead, the notices are addressed to the Grande customer, and ask Grande to forward the notice.  *See id.* at 2 ("**NOTE TO ISP: PLEASE FORWARD THE ENTIRE NOTICE**").  This is because Rightscorp's business plan, as originally conceived, was to use these notices to extract settlements from individuals.  Sabec Dep. Tr. 54:14-55:11 (ECF No. 173-80).  As a result, in a letter that preceded the filing of this lawsuit, Rightscorp proposed that Grande should only temporarily suspend the accounts of alleged infringers, to persuade them to settle with Rightscorp.  Letter at 3 (ECF No. 110-11).

Separate from its detection-and-notice processes, Rightscorp claims to download infringing music files from particular BitTorrent users.  *See* Frederiksen-Cross Report, ¶¶ 60-63 (ECF No. 141-1); *see also* Cohen Report, ¶¶ 54, 85, 94-95 (ECF No. 232-1).  Rightscorp does

not conduct these downloads before it sends a notice, or each time it sends a notice. *See* Cohen Report, ¶ 108. According to Plaintiffs, Rightscorp only attempts to download files for 16 percent of the notices it sends, and it does so some unknown time after the notice is sent. *See* Frederiksen-Cross Report at 25 n.33 (ECF No. 141-1). Rightscorp did not provide Grande with any music files allegedly downloaded from Grande subscribers prior to discovery in this case.

Discovery has revealed that Rightscorp destroyed virtually all of the data and other evidence underlying Rightscorp's alleged detections of copyright infringement. *See generally* Grande's Mot. for Sanctions (ECF No. 247). As a result, the only evidence of Rightscorp's alleged detections of infringement is (1) Rightscorp's email notices to Grande; and (2) roughly 60,000 bare music files that Rightscorp claims—without any supporting data or documentary evidence—were downloaded from Grande customers over a period of approximately two years. According to third-party testimony first offered in response to Grande's motion for summary judgment, fewer than 20,000 of these music files are actually copies of the copyrighted works at issue in this case.[6] Landis Decl., ¶ 13 & Ex. 1 thereto (ECF No. 172-12); Grande's Reply ISO Mot. for Summ. J. (hereinafter, "Grande's Reply") at 5 (ECF No. 201).

As mentioned above, Plaintiffs have never engaged Rightscorp to monitor their copyrighted works and send notices to Grande (or any other ISP). Plaintiffs first decided to partner with Rightscorp after a music publishing company, BMG, obtained a favorable jury verdict against another ISP for secondary copyright infringement, relying on Rightscorp evidence. Plaintiffs' trade association, the Recording Industry Association of America ("RIAA"), subsequently entered into an agreement under which it paid Rightscorp to acquire

---

[6] As discussed below, Grande's ability to meaningfully assess and respond to this evidence is further compromised by the fact that Plaintiffs have never produced original versions of the copyrighted works at issue in this case.

notices sent to Grande and for its cooperation in this case.  Sabec Dep. Tr. 1112:1- 1115:14,

1305:5-1306:8 (ECF No. 141-3).  Earlier this year, the Fourth Circuit reversed the jury verdict in

favor of BMG.[7]

**LEGAL STANDARD FOR OBJECTIONS TO R&R**

If a party timely objects to the Magistrate Judge's recommendations or findings, the

Court must make a *de novo* determination of the objectionable portions of the recommendations

or findings, in whole or in part.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  The Court may

then accept, reject, or modify the recommendations or findings.  Rule 72(b)(3).  The Court may

also receive additional evidence or return the matter to the Magistrate Judge with additional

instructions.  *Id*.

**ARGUMENT**

I.   **THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
     CONTRIBUTORY INFRINGEMENT**

Grande objects to the R&R's finding that Grande is not entitled to summary judgment on

the issue of contributory copyright infringement.

A.   **The R&R erred in adopting a "material contribution" liability standard and
     finding a genuine issue of material fact regarding intent.**

Grande's motion for summary judgment requires the Court to determine and apply the

correct legal standard for proof of contributory copyright infringement.  Under the Supreme

Court's two principal contributory infringement decisions, *Sony* and *Grokster*, a defendant who

merely provides a service with substantial non-infringing uses cannot be liable for contributory

---

[7]  The Fourth Circuit reversed and remanded for a new trial, which never occurred because the
parties thereafter reached a confidential settlement.  *BMG Rights Mgmt. (US) LLC v. Cox
Commc'ns, Inc.*, 881 F.3d 293 (4th Cir. 2018); Stipulation and Order, No. 1:14-cv-1611 (E.D.
Va. Aug. 24, 2018) (ECF No. 1021).

7

infringement, absent evidence of affirmative steps to foster direct infringement. *See Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441-42 (1984); *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936-37 (2005).  In other words, contributory liability is limited to parties who (1) intentionally induce infringement through specific acts; or (2) distribute products or services that have no significant, legitimate purpose apart from their use to infringe copyrights.

The R&R, however, concluded that there is an entirely separate species of contributory liability, not mentioned in *Sony* or *Grokster*, under which a defendant may be liable if it "materially contributed" to infringement, irrespective of whether the defendant induced or encouraged direct infringement, and irrespective of whether the defendant's service has substantial non-infringing uses. *See* R&R at 10-15.  In effect, this changes the contributory liability standard from one requiring purposeful conduct that directly fosters infringement, to a standard that imposes an affirmative duty to police consumer conduct and prevent copyright infringement in order to avoid liability.  As detailed below, the R&R's proposed liability standard also effectively renders *Sony* and *Grokster* meaningless.  Respectfully, this conclusion was error and directly contradicts controlling Supreme Court case law.

> 1.   <u>As a matter of law, *Sony* precludes a finding of contributory liability.</u>

The Supreme Court held in *Sony* that distributing video recording equipment could not give rise to contributory liability because that equipment had substantial noninfringing uses, even if the defendant knew that certain purchasers used the equipment to infringe copyrights.  This holding mandates the conclusion that Grande cannot be contributory liable based on its provision of Internet access to alleged infringers.

Because the Copyright Act does not expressly provide for contributory liability, in *Sony*

the Supreme Court looked to the patent laws for guidance "because of the historic kinship between patent law and copyright law." *Sony*, 464 U.S. at 439.  Under the patent laws, "[t]he prohibition against contributory infringement is confined [by statute] to the knowing sale of a component especially made for use in connection with a particular patent." *Id.* at 440.  The patent laws therefore "expressly provide[] that the sale of a 'staple article or commodity of commerce suitable for substantial noninfringing use' is not contributory infringement." *Id.*; *see also id.* at 441 ("A sale of an article which though adapted to an infringing use is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer.  Such a rule would block the wheels of commerce.") (quotations & alterations omitted).

In *Sony*, the Supreme Court held that this "staple article of commerce doctrine" is equally applicable in the copyright context.  *Id.* at 442.  Thus, the Court held that "the sale of copying equipment, like the sale of other articles of commerce, does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes." *Id.*  Applying this standard, the Court concluded that the defendant was not contributorily liable for copyright infringement committed by purchasers of its Betamax video recorders because the Betamax is "capable of substantial noninfringing uses." *Id.*

It is, of course, undisputed that Grande's Internet service has substantial noninfringing uses.  Thus, the only fact that arguably distinguishes this case from *Sony* is that Grande has ongoing relationships with its customers.[8]  But the *Sony* court expressly addressed this issue, and found that such a relationship has historically only supported contributory liability where "the

---

[8] As discussed below, Grande's knowledge of the alleged infringement is a separate issue, and the Supreme Court has expressly held that such knowledge cannot support liability unless it is coupled with evidence of "affirmative steps taken to foster infringement." *See Grokster*, 545 U.S. at 936-37.

'contributory' infringer was in a position to control the use of copyrighted works by others and had authorized the use without permission from the copyright owner." *Id.* at 437.  Thus, the plaintiff's claim failed not only because the defendant's customer contacts were limited to the moment of sale, but also because the defendant had no "direct involvement with the allegedly infringing activity" and because "there was no evidence that any [infringing copies] were influenced or encouraged by [the defendant's] advertisements."[9]  *Id.* at 437-38.

There is likewise no such evidence in this case.  There is no evidence that Grande was directly involved in any alleged direct infringement, no evidence that Grande had access to any of the allegedly infringing content, and no evidence that Grande encouraged the use of peer-to-peer file sharing software by its customers.  Grande's ongoing relationship with its customers therefore provides no basis for distinguishing *Sony*.

In sum, under *Sony*, merely providing "the means" to commit copyright infringement is not enough to support contributory liability, where that "means" has substantial noninfringing uses.  *See id.* at 436-37, 442.  The "material contribution" standard adopted in the R&R—under which noninfringing uses are irrelevant—is directly contrary to the holding of *Sony*, and the R&R therefore erred in recommending denial of Grande's motion for summary judgment.

> 2. As a matter of law, *Grokster* precludes a finding of contributory liability.

In *Grokster*, the Supreme Court clarified the reach of *Sony*, holding that "one who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties."  545 U.S. at 918.  Through this holding, the Court extended the

---

[9] This presages and is consistent with *Grokster*, discussed below, which held that the staple article of commerce rule bars liability unless there is evidence of affirmative steps taken to foster direct infringement.

reach of contributory liability to the defendants, who distributed peer-to-peer file sharing software and promoted its use for copyright infringement. *See id.* at 919-927. Extending contributory liability even further—to encompass an ISP like Grande, which does not distribute file-sharing software and does not promote copyright infringement—plainly exceeds the scope of contributory liability contemplated by *Grokster*.

*Grokster* explained that the staple article of commerce rule does not bar contributory liability where there is evidence that the defendant intentionally induced direct copyright infringement. *Id.* at 934-35 ("[N]othing in *Sony* requires courts to ignore evidence of intent if there is such evidence, and the case was never meant to foreclose rules of fault-based liability derived from the common law."). "Thus, where evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement, *Sony*'s staple-article rule will not preclude liability." *Id.* at 935.

With respect to the necessary showing of "statements or actions directed to promoting infringement," the Supreme Court provided specific guidance. First, this "inducement rule" applies where "one distributes a device with the object of promoting its use to infringe copyright, as shown by *clear expression or other affirmative steps taken to foster infringement*." *Id.* at 936-37 (emphasis added). Second—and equally important for the present case—intent to induce infringement may not be imputed from knowledge of copyright infringement. *Id.* at 937 ("We are, of course, mindful of the need to keep from trenching on regular commerce or discouraging the development of technologies with lawful and unlawful potential. Accordingly, just as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, *mere knowledge of infringing potential <u>or of actual infringing</u>*

*uses* would not be enough here to subject a distributor to liability.") (emphasis added).

Thus, under *Grokster* and *Sony*, there are "two strands" of contributory liability: (1) "actively encouraging (or inducing) infringement through specific acts" and (2) "distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1148 (9th Cir. 2018); *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) (same).

Contrary to *Sony* and *Grokster*, and also contrary to the Ninth Circuit's decision in *Cobbler Nevada*, the R&R concluded that a third "material contribution" strand of liability also exists—a strand that constitutes a separate and independent basis for contributory liability.  R&R at 14.  According to the R&R, this "material contribution" standard does not require proof of intentional inducement, and also permits liability to be based on the defendant providing a product or service with substantial noninfringing uses.  *See id.*  Respectfully, this conclusion does not withstand scrutiny.

Neither *Grokster* nor *Sony* mentions a distinct "material contribution" standard.  While certain cases do refer to "material contribution" in the contributory infringement context, it is often used as shorthand for the second "strand" of contributory liability identified in *Grokster* and *Cobbler Nevada*.  *See, e.g.*, *BWP Media USA Inc. v. Polyvore, Inc.*, No. 1:13-cv-7867, 2016 WL 3926450, at *7-*8 (S.D.N.Y. July 15, 2016) ("[E]ven assuming that Polyvore had knowledge of the infringing activity and materially contributed to copyright infringement [by distributing its image-clipping software], the *Sony-Betamax* rule shields Polyvore from liability."); *see also* Grande's Reply at 18.  As a result, in *Cobbler Nevada*, the Ninth Circuit affirmed the dismissal of a contributory infringement claim alleging "material contribution" because the plaintiff failed to allege any "clear expression" or "affirmative steps to foster the

infringement," and because the Internet access allegedly provided by the defendant had substantial noninfringing uses.[10]  901 F.3d at 1148-49.

The R&R's proposed "material contribution" standard would render both *Sony* and *Grokster* meaningless.  If "material contribution" were a viable basis for contributory liability, then a plaintiff would never need to meet the more exacting "strand one" standard for proving intentional inducement (making *Grokster* irrelevant to contributory liability), and would never need to prove under "strand two" that the defendant's product or service lacks substantial noninfringing uses (making *Sony* irrelevant to contributory liability).  Indeed, the R&R's conclusion cannot be reconciled with *Grokster*, which held that a plaintiff *must* present evidence of intentional inducement to avoid the staple article of commerce rule.  545 U.S. at 935 ("[W]here evidence goes beyond a product's characteristics or the knowledge that it may be put to infringing uses, and shows statements or actions directed to promoting infringement, *Sony*'s staple-article rule will not preclude liability.").

In sum, *Grokster* sets forth the following rule for contributory liability: providing a product or service with substantial noninfringing uses, even with knowledge of actual infringing uses, is no basis for liability unless there is evidence of intentional inducement, as shown through "clear expression or other affirmative steps taken to foster infringement."  545 U.S. at 936-37; *Cobbler Nevada*, 901 F.3d at 1148.  It is beyond dispute that Grande is entitled to summary judgment under this standard, and the R&R does not suggest otherwise.  *See* R&R at 10-15.

---

10 The R&R characterized *Cobbler Nevada* as "odd" and declined to follow it because the opinion did not address the issue of "willful blindness" to copyright infringement mentioned in other cases.  R&R at 13.  As discussed below, this erroneously conflates the wholly distinct issues of knowledge and intent.

There is no evidence that Grande took any "affirmative steps . . . to foster infringement."[11]  545 U.S. at 936-37.  And it is undisputed that Grande's Internet service is "capable of commercially significant noninfringing uses."  *Id.* at 937.  Accordingly, the R&R erred in denying Grande's motion for summary judgment on contributory infringement.

### 3.    The Fourth Circuit's *Cox* decision should not be followed.

In a heavily-criticized decision, the Fourth Circuit held in *BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.* that an ISP can be liable for "materially contributing" to copyright infringement, by imputing intent to foster infringement from the ISP's "willful blindness" to allegations that its customers were infringing copyrights.[12]  881 F.3d 293 (4th Cir. 2018).  In other words, the court held that the defendant ISP could be contributorily liable based *solely* on a showing that it was "willfully blind" to copyright infringement on its network.  *Id.* at 307-310.

As commentators have recognized, the *Cox* court confused the discrete elements of intent and knowledge, thereby creating a new and lower standard for contributory liability without support in the common law.[13]  *Grokster* held that where the defendant distributes a product with

---

[11] Grande's alleged failure to terminate customer accounts in response to Rightscorp's notices, seemingly the lynchpin of Plaintiffs' entire case, is irrelevant to this standard.  This argument simply reflects Plaintiffs' repeated attempts to confuse and conflate the contributory infringement standard with the separate and unrelated DMCA safe harbors in 17 U.S.C. § 512.

[12] As noted above, however, the Fourth Circuit reversed the jury verdict in favor of the plaintiff, due to errors in the jury instructions.  881 F.3d at 310-12.

[13] *See* Mitch Stoltz, *BMG v. Cox: ISPs Can Make Their Own Repeat Infringer Policies, But the Fourth Circuit Wants a Higher "Body Count,"* Electronic Frontier Foundation (Feb. 5, 2018) ("The court's ruling on inducement liability was confusing, as it seemed to conflate 'intent' with 'knowledge.'  It's important that the courts treat secondary liability doctrines thoughtfully and clearly, as they have a profound effect on how Internet services are designed and what users can do on them."), available at https://www.eff.org/deeplinks/2018/02/bmg-v-cox-isps-can-make-their-own-repeat-infringer-policies-fourth-circuit-wants (last visited Jan. 9, 2019); Mike Masnick, *Appeals Court Makes A Mess of Copyright Law Concerning ISPs And Safe Harbors*, Techdirt (Feb. 2, 2018) ("Remember, the *Grokster* standard is about 'inducement' which

substantial noninfringing uses, "mere knowledge of . . . actual infringing uses would not be enough" to support contributory liability. 545 U.S. at 936-37. Thus, *Grokster* forecloses a plaintiff from using evidence of knowledge of infringement to satisfy the separate element of intent. *See id. Cox* cannot be reconciled with *Grokster* and therefore should not be followed.

Furthermore, in approving of a "material contribution" standard, *Cox* relied entirely on the Ninth Circuit's decision in *Perfect 10*. 881 F.3d at 306 (citing *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007)). *Perfect 10* is plainly distinguishable, in that the defendant Google—unlike Grande here—had direct control over the infringing conduct and content. 508 5.3d at 1172-73. Google developed and operated the online service that enabled third parties to obtain copyrighted materials from the alleged direct infringers. *See id.* As discussed in the next section, *Perfect 10* is therefore consistent with *Grokster* and *Sony*. Furthermore, to the extent *Perfect 10* suggests that providing a product with substantial noninfringing uses is a basis for liability in the absence of intentional inducement, the Ninth Circuit repudiated that notion in its later decision in *Cobbler Nevada*. 901 F.3d at 1148.

For these reasons, the R&R erred in following *Cox* and finding that there is a genuine

---

involved a level of intent on the part of the service provider. That's about taking specific actions to encourage the use for infringement. But, the court here keeps slipping into a separate question of 'knowledge.' The knowledge question and the inducement/intent question are two separate questions. . . . . [K]nowledge alone is not enough to prove a party induced others to infringe on a copyright."), available at  https://www.techdirt.com/articles/20180201/15205039136/appeals-court-makes-mess-copyright-law-concerning-isps-safe-harbors.shtml (last visited Jan. 9, 2019); Cotropia, Christopher Anthony and Gibson, James, *Convergence and Conflation in Online Copyright* (Aug. 16, 2018) ("[N]either the district court nor the appeals court pushed back against the central conceit of the case: that a copyright owner can impose liability on a conduit merely by sending it enough allegations of infringement (infringement from the past, mind you, about which nothing can now be done) and demanding the termination of the targeted subscribers. This goes well beyond any theory of liability ever articulated in the common law."), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3233113 (last visited Jan. 9, 2019).

issue of material fact regarding contributory infringement.

        4.    <u>Even if a "material contribution" strand of liability did exist, the R&R</u>
                <u>fails to explain why there is a genuine issue of material fact.</u>

The common thread in cases discussing "material contribution" is that the defendant "substantially assisted" the direct infringer in committing infringement, with knowledge of the infringement *and* while exercising direct control over the infringing content and acts—as in the *Perfect 10* case discussed above.  *See* Grande's Mot. for Summ. J. at 14-15 (ECF No. 140). These cases are therefore consistent with *Grokster*'s inducement rule, which requires "clear expression or other affirmative steps taken to foster infringement."  545 U.S. at 936-37.

There is no such evidence of "substantial assistance" here.  It is undisputed that Grande's sole contribution to its customers' alleged infringement is the provision of Internet access. Plaintiffs do not contend, much less present any evidence, that Grande has access to its customers' computers or to any infringing content they may attempt to share over the Internet, or that Grande was responsible for developing the software tools (*e.g.*, BitTorrent client software) allegedly used to share copyrighted content.  Other than *Cox*, Grande is aware of no case holding that liability may be imposed based on "material contribution" to infringement where the defendant did not have access to or control over the allegedly infringing material.  *See also, e.g.*, *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 796-800 (9th Cir. 2007) (credit card companies did not "materially contribute" to infringement by facilitating infringing transactions). The Court therefore erred in finding a genuine issue of material fact as to whether Grande "substantially assisted" any customer in committing direct copyright infringement.

**B.**    **The R&R erred in finding a genuine issue of material fact regarding knowledge.**

A claim for contributory infringement requires proof that the defendant had knowledge of

the underlying direct infringement for which the plaintiff seeks to hold it liable.[14]  The R&R erred in finding a genuine issue of material fact on this issue.

The R&R only addressed one of Grande's arguments regarding knowledge—that Rightscorp's notices do not provide sufficient information to confer knowledge.  *See* R&R at 15. It is undisputed that Rightscorp's notices do not identify a copyrighted work or a U.S. copyright registration number, and that the notices provide no evidence or explanation of the factual basis of Rightscorp's allegations.  *See generally* Sample Rightscorp Notices (ECF No. 140-2).  The R&R therefore erred in concluding that these notices are sufficient to confer knowledge—actual, constructive, or otherwise—of "specific instances" of copyright infringement.[15]  *See Cox*, 881 F.3d at 311-12 ("generalized knowledge . . . that infringement was occurring somewhere on [the defendant's] network" cannot support a finding of contributory liability).

Additionally, as explained below in Section III.B, direct copyright infringement requires *actual dissemination* of copyrighted material.  Here, it is undisputed that Rightscorp is incapable of detecting such actual dissemination.  *See* Grande's Mot. for Summ. J. at 7-8 (ECF No. 140); Frederiksen-Cross Report, ¶ 46 (ECF No. 141-1).  Instead, Rightscorp can only detect, at most, that a BitTorrent user offered to share a particular music file.  *See id.*  As a result, the notices Plaintiffs attempt to rely on are not evidence of "actual dissemination," and therefore likewise cannot provide evidence that Grande knew of infringement.

---

[14] Courts are split on whether the plaintiff must show actual knowledge, constructive knowledge, and/or willful blindness.  *See* Grande's Mot. for Summ. J. at 15 (ECF No. 140).

[15] The R&R relied heavily on internal Grande emails regarding Rightscorp's allegations, and on the fact that Grande tracked notices of alleged infringement.  Whether isolated Grande employees believed—without the benefit of the evidence in this case—that Rightscorp's notices were plainly legitimate is plainly irrelevant to whether the notices actually reflected the detection of specific instances of copyright infringement.  And as Grande has explained, Grande's tracking of infringement allegations, as part of its DMCA safe harbor processes, is likewise irrelevant to the issues before the Court.  *See* Grande's Reply at 21-22 (ECF No. 201).

Finally, Rightscorp's notices cannot give rise to a genuine issue of material fact regarding "willful blindness" because Grande had no ability to "unblind" itself.  It is undisputed that Grande had no way of verifying the unsupported allegations in Rightscorp's notices.  Boswell Dep. Tr. 1332:3-21 (ECF No. 130-2).  Furthermore, even if Grande were capable of verifying Rightscorp's allegations, there is no authority holding that Grande has an affirmative duty to investigate allegations of infringement in an attempt to ascertain whether they are legitimate.[16] Given the volume of notices received by ISPs, this cannot be the law.  Indeed, given that Rightscorp's notices did not ask Grande to do anything other than forward the notice, it would be particularly perverse to base Grande's liability on a failure to terminate customers in response to those notices.  *See* Sample Rightscorp Notices (ECF No. 140-2).

For these reasons, there is no genuine issue of material fact regarding Grande's knowledge of copyright infringement, and the R&R erred in concluding otherwise.

## II.   THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT PROVE COPYING

Grande objects to the R&R's finding that Grande is not entitled to summary judgment on the issue of copying, a necessary element of direct—and therefore also contributory—copyright infringement.  Plaintiffs have never produced or presented recordings of the original copyrighted songs at issue in this case.  In other words, Plaintiffs seek to prove copying of copyrighted works

---

[16] Willful blindness is "a well-established principle of law where knowledge of a fact may be inferred where an individual deliberately closes their eyes to what would otherwise be *obvious*." *See United States v. $240,100.00 in U.S. Currency*, No. 1:14-cv-942, 2017 WL 2303985, at *8 (M.D.N.C. May 25, 2017) (emphasis added).  It does not apply in this case because Grande was incapable of determining whether its subscribers were engaging in infringement.  Even if Plaintiffs disagree with that fact, Plaintiffs cannot disagree that Grande would have needed to conduct a detailed investigation into each allegation to determine whether a particular subscriber was in fact engaging in infringement.  For that reason, whether a particular subscriber had in fact committed copyright infringement was not an "obvious" fact to which Grande simply turned a blind eye.

without any evidence of what those copyrighted works are.

> **A.   Proof of copyright infringement requires evidence that enables a comparison between the copyrighted work and the alleged copy**.

Controlling Fifth Circuit case law unequivocally holds that comparison evidence is necessary to support a finding of copyright infringement.  *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) ("[T]he law of this circuit prohibits finding copyright infringement without a side-by-side comparison of the works."); *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997) ("To determine whether an instance of copying is *legally actionable*, a side-by-side comparison must be made between the original and the copy to determine whether a layman would view the two works as 'substantially similar.'") (emphasis in original).  Without evidence allowing for such a comparison, there is no genuine issue of material fact.  *See King*, 179 F.3d at 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility.  King's failure to adduce evidence for such a comparison vitiates her claim."); Grande's Reply at 2-6 (ECF No. 201).

The R&R expressly recognized that case law requires that "there *be* evidence allowing such a comparison [between the copyrighted work and the alleged copy] to be made."  R&R at 7 (emphasis in original).  Here, there is no such evidence because Plaintiffs have never produced the original sound recordings at issue.

Instead, Plaintiffs' only evidence of copying is that an employee of third-party RIAA used an "audio fingerprinting" service provided by *another* third party, Audible Magic, to compare music files allegedly downloaded from Grande subscribers to Plaintiffs' copyrighted works.  *See* Landis Decl. (ECF No. 172-12).  Plaintiffs also rely on similar matching allegedly performed by Rightscorp through Audible Magic and another third-party service, AcoustID.  *See* Boswell Dep. Tr. 194:22-202:8 (ECF No. 201-2).

Under the authorities cited above, this is insufficient because it does not allow the jury to make the necessary comparison, and neither Plaintiffs nor the R&R cites any authority to the contrary. *See also UMG Recordings, Inc. v. Veoh Networks Inc.*, 665 F. Supp. 2d 1099, 1116 (C.D. Cal. 2009) ("[H]owever beneficial the Audible Magic technology is in helping to identify infringing material, it does not meet the standard of reliability and verifiability required by the Ninth Circuit in order to justify terminating a user's account."). Absent evidence of what the original copyrighted recordings are, Grande is effectively unable to challenge the witness's proposed testimony. Furthermore, Plaintiffs have not come forward with any evidence of how these services function, and no evidence that Audible Magic and/or AcoustID used the original sound recordings at issue in this case as the basis of their comparisons. *See* Pls.' Reply ISO Cross-Mot. at 7 (failing to identify any such evidence) (ECF No. 209).

The R&R therefore erred in concluding that "[w]hen there are over 1500 songs at issue, and there is technology that allows comparisons of digital files, doing the side-by-side comparison in the manner Plaintiffs have done so is not only routine, it is advisable." R&R at 7. Based on the evidence Plaintiffs have submitted, there will be no "side-by-side comparison" at all, because the jury—and Grande—will be precluded from evaluating any evidence of what the allegedly infringing copy was compared to, or how that comparison was carried out. *See Veoh*, 665 F. Supp. 2d at 1118 ("Veoh has no way of verifying the accuracy of Audible Magic's database, and even if it did, it would be unreasonable to place that burden on Veoh.").

None of the cases cited in the R&R indicate that a plaintiff may provide evidence from an audio fingerprinting service *in lieu of* evidence allowing for the required comparison between the

20

copyrighted work and the alleged copy.[17]  Moreover, these cases consistently refer to evidence—

typically expert testimony—that demonstrates how these services function.  *See* n.16.  And as set

forth above, Fifth Circuit precedent holds that comparison evidence is required in any event.[18]

Grande also disputes the R&R's conclusion that "the only logical construction of

[Grande's] argument is that . . . Plaintiffs will have to play every single song at issue to the jury,

along side the identical copy or copies of that song found on Grande's subscribers' computers."

R&R at 6.  This is circular reasoning, in that it assumes the alleged copies are in fact identical to

Plaintiffs' copyrighted songs.[19]  Without original versions of Plaintiffs' copyrighted sound

---

[17] *See Capitol Records, LLC v. Escape Media Grp., Inc.*, No. 1:12-cv-6646, 2015 WL 1402049, at *23-*24 (S.D.N.Y. March 25, 2015) (addressing whether evidence from Audible Magic constitutes expert testimony); *UMG Recordings, Inc. v. Escape Media Grp., Inc.*, No. 1:11-cv-8407, 2014 WL 5089743, at *15-*17 (S.D.N.Y. Sept. 29, 2014) (addressing admissibility of Audible Magic evidence); *Arista Records LLC v. Lime Wire LLC*, No. 1:06-cv-5936, 2010 WL 10031251, at *6 (S.D.N.Y. Aug. 9, 2010) (reciting terms of stipulated permanent injunction); *Arista Records LLC v. Myxer Inc.*, No. 2:08-cv-3935, 2011 WL 11660773, at *5, *26-*27 (C.D. Cal. April 1, 2011) (concluding that defendant's decision not to use Audible Magic to analyze alleged infringements did not establish "red flag" knowledge of infringement under unrelated DMCA provisions); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1205-06 (C.D. Cal. 2007) (addressing proposed terms of permanent injunction against distributor of peer-to-peer file sharing software).

[18] To be clear, Grande does not contend that evidence regarding Audible Magic or AcoustID matching is *per se* inadmissible or irrelevant to the issue of copying.  Rather, the point is that Plaintiffs cannot rely on such evidence to sidestep their obligation to produce evidence permitting a side-by-side comparison of the copyrighted work and the alleged copy.

[19] It may also be that the R&R mistakenly assumed that each allegedly infringing music file at issue in this case is a copy of a single, original digital file, and that the "fingerprinting" services therefore merely determine whether two data files are the same.  *See* R&R at 7 ("In a case like this—involving digitally identical copies—the relevant law does not mandate that a plaintiff play the two works for the jury, to show that the infringing items are in fact identical digital duplicates of the original songs.").  This is not the case, and Plaintiffs have not suggested otherwise.

Rather, audio fingerprinting services like Audible Magic and AcoustID actually "listen" to the file to assess whether and to what extent the audio content is similar to the audio content reflected in a database of stored music files.  *See, e.g.*, *Escape Media*, 2015 WL 1402049, at *23. This process may result in multiple "matches" for a given file.  *See* Cohen Report, ¶¶ 25, 81-84

recordings, there is no way to know.  If Plaintiffs *had* produced the original recordings, then Grande would be able to compare them to the alleged copies and assess whether individual side-by-side comparisons are necessary.  In any event, however, Plaintiffs chose to assert infringement of over 1,500 sound recordings, and there is no authority that permits them to avoid the necessary comparison—thereby lowering their burden of proof—by asserting a huge volume of copyrights.  Such a result would improperly shift the burden to Grande to prove that a copy *was not* made, rather than properly requiring Plaintiffs to prove that a copy *was* made.

Additionally, the R&R erroneously concluded that Rightscorp's use of "'hash values' . . . to identify copies" constitutes further evidence of copying of copyrighted works.  R&R at 6 & n.2.  This is a vital fact that the R&R appeared to misunderstand.  As the declaration cited in the R&R makes clear, Rightscorp only uses hash values to match alleged copies to other alleged copies.  Rightscorp does *not* use hash values to match alleged copies to copyrighted sound recordings.  1st Boswell Decl., ¶ 6 (ECF No. 173-79).  In other words, these hash values are used to identify identical files as they are distributed by BitTorrent users, not to associate any particular file with a copyrighted work.  *See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1205-06 (C.D. Cal. 2007) (explaining that "[t]he file hash is a fairly limited tool").  To be clear, Rightscorp relied solely on the previously-discussed fingerprinting services (and in some instances, on an employee simply listening to the file) to assert that a particular file residing on an individual's computer is a copy of a copyrighted work.  *See* Boswell Dep. Tr. 175:22-176:21 (ECF No. 247-3); Grande's Mot. for Sanctions at 6 (ECF No. 247).

---

(ECF No. 232-1).  This audio matching process is necessary because digital music files are created and obtained in many different ways and from many different sources—for example, digital music files can be created from a CD or an analog medium like a vinyl record; they can be downloaded from a wide array of different digital download services, both licensed and unlicensed; and they can be "ripped" from streaming services such as YouTube.

Plaintiffs' lack of comparison evidence is a critically important issue. All of the Rightscorp notices at issue were sent to Grande on behalf of third parties, without any evidence or information from Plaintiffs concerning the nature of their copyrighted works. Rightscorp has destroyed all records of its alleged attempts to match downloaded files to copyrighted songs. *See* Grande's Mot. for Sanctions at 5-6 (ECF No. 247). Additionally, even the Landis Declaration reveals grave flaws in the evidence. Plaintiffs produced roughly 60,000 allegedly infringing music files in this case, but the Landis Declaration—which Grande cannot meaningfully dispute without original versions of the sound recordings at issue—admits that fewer than 20,000 of these files are copies of the copyrighted works at issue in this case. *See* Grande's Reply at 5 & n.6 (ECF No. 201). There is no reason why Plaintiffs could not have simply produced the original sound recordings at issue—unless this evidence demonstrates even further flaws.

This illustrates why the law requires evidence allowing for a comparison between the copyrighted work and the alleged copy—not simply witness testimony—to demonstrate infringement. *See King*, 179 F.3d at 376. Grande is aware of <u>no case</u> in which a court held that a plaintiff could prove unlawful copying without providing evidence of the copyrighted work that was allegedly copied. For these reasons, the Court should sustain Grande's objections to the R&R and grant summary judgment in Grande's favor.

**B.   The R&R erroneously found that Plaintiffs' "comparison" evidence is competent and admissible.**

In addition to the lack of comparison evidence, Plaintiffs' proffered evidence of copying—the Landis Declaration and testimony from Greg Boswell of Rightscorp—is insufficient to raise a genuine issue of material fact. In effect, this testimony amounts to the assertion that Audible Magic and/or AcoustID told the witnesses that some of the music files they provided for comparison are copies of Plaintiffs' copyrighted sound recordings. *See* Landis

Decl. (ECF No. 172-12); Boswell Dep. Tr. 194:22-202:8 (ECF No. 201-2); 1st Boswell Decl., ¶ 5 (ECF No. 173-79). This is not competent summary judgment evidence because it is hearsay and is not based on personal knowledge of the asserted facts. *See* Grande's Reply at 6-7. The R&R erred in concluding otherwise without any significant analysis of the issue. *See* R&R at 7.

Grande also restates its objection to consideration of the Landis Declaration on summary judgment, given that Mr. Landis—an RIAA employee—was not identified prior to the fact discovery deadline.[20] Additionally, Plaintiffs did not identify Mr. Landis's Audible Magic results in response to Grande's interrogatories seeking Plaintiffs' evidence of infringement. Warner Plfs' Obj. & Resp. to 2nd Interrogs. at 1-8 (ECF No. 141-5). Whether this was neglect or sandbagging, the Court should not condone this untimely disclosure, which severely prejudiced Grande's ability to conduct discovery and respond to this evidence.

Furthermore, as detailed in Grande's pending Motion for Sanctions, Rightscorp destroyed all of the data and other evidence underlying its claims that it verified the content of allegedly infringing music files manually or through Audible Magic or AcoustID. *See* ECF No. 247. Mr. Boswell's proposed testimony on this subject therefore violates the best evidence rule. *See* Grande's Reply at 7 n.9 (ECF No. 201). The R&R therefore erred in declining to exclude this evidence from consideration on summary judgment.

## III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT BECAUSE PLAINTIFFS CANNOT PROVE DIRECT INFRINGEMENT OF THEIR DISTRIBUTION RIGHTS BY ANY GRANDE SUBSCRIBER

Grande objects to the R&R's finding that Grande is not entitled to summary judgment on

---

[20] Grande deposed Mr. Landis after summary briefing closed, and he admitted that he has no knowledge of how Audible Magic purports to match music files to original sound recordings. And again, Plaintiffs have produced no such evidence in this case. This stands in stark contrast to the cited cases discussing Audible Magic, which consistently refer to detailed testimony—typically expert testimony—about how the service functions. *See supra* n.16.

grounds that Plaintiffs cannot prove direct infringement of their distribution rights under 17

U.S.C. § 106(3).[21]  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th

Cir. 2001) ("Secondary liability for copyright infringement does not exist in the absence of direct

infringement by a third party.").

> **A.     The R&R erred in finding that Plaintiffs' allegations and evidence implicate
> direct infringement of Plaintiffs' distribution rights**.

Plaintiffs contend that certain Grande customers directly infringed their distribution rights

by sharing copyrighted material through BitTorrent.  This is not a viable theory because making

a file available for download by another—whether evidenced by an actual download or not—is

not "distribution" under 17 U.S.C. § 106(3).

Offering to share content through BitTorrent instead implicates secondary infringement

of the reproduction right, because the party offering to share the file is not actually distributing

anything, but rather is enabling a third party to make a copy.  *See, e.g.*, *Atl. Recording Corp. v.*

*Howell*, 554 F. Supp. 2d 976, 986 (D. Ariz. 2008) ("If the owner of the shared folder simply

provides a member of the public with access to the work and the means to make an unauthorized

copy, the owner is not liable as a primary infringer of the distribution right, but rather is

potentially liable as a secondary infringer of the distribution right."); 4 Patry on Copyright §

13:11.50 (2018) ("To argue that the individual from whose hard drive the work is snatched from

is sending the work (much less distributing a copy of the work) is technically and legally

incorrect . . . . At the taker's end, though, there is a reproduction, and copyright owners are fully

within their rights to use for that reproduction.  They may even be able to sue the individual who

---

[21] The R&R granted summary judgment in Grande's favor on Plaintiffs' allegations of direct
infringement under 17 U.S.C. § 106(1) (reproduction right) & (6) (public performance right).
This leaves only Plaintiffs' allegations of direct infringement under § 106(3).

has the work on his or her hard drive for contributory infringement of the reproduction right, and perhaps for inducement, but there has been no distribution by that individual."); *see also* Grande's Reply at 8-11 (ECF No. 201).

That is precisely the situation presented here.  The BitTorrent protocol allows individual users to make a particular file or set of files available for copying by other BitTorrent users.  *See, e.g.*, Cohen Report, ¶¶ 39, 44-46 (ECF No. 232-1).  Without any further action by the sharing party, another BitTorrent user can copy those files from the sharing party's computer.  *See id*.  In other words, the only act by the sharing party is to make the file available for download (reproduction); there is no act of "distribution."

Thus, the alleged direct infringement by Grande's customers is, in fact, alleged *secondary* infringement of Plaintiffs' reproduction rights.  Grande therefore cannot be secondarily liable because the Copyright Act does not allow for tertiary liability—secondary liability for another's secondary liability.  *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2011) ("Under this formulation, Napster users are the direct infringers, Napster is the secondary infringer, and the individual defendants [with different alleged connections to Napster's operations] are tertiary infringers.  The Court finds no support for this legal proposition."); *David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012) ("The courts have yet to find contributory liability based on a tertiary actor's conduct.").

The R&R rejected this argument, based on a misreading of the Fifth Circuit's opinion in *BWP Media USA, Inc. v. T & S Software Assocs., Inc.*, 852 F.3d 436 (5th Cir. 2017). Specifically, the R&R accepted Plaintiffs' argument that *BWP* holds that "a defendant may be liable for direct infringement 'where they have provided the means to obtain and transmit

copyrighted performances.'"  R&R at 9 (quoting *BWP*, 852 F.3d at 442).

In the quoted passage from *BWP*, however, the Fifth Circuit was not articulating the standard for direct copyright infringement—of the distribution right, the reproduction right, or otherwise.  *BWP* addressed an entirely separate issue:  the extent to which direct infringement liability requires volitional conduct.  852 F.3d at 442; *see also id.* at 438 ("The determinative issue on appeal is whether volitional conduct is required to prove a claim of direct infringement.").  *BWP* did not address the question presented here—namely, what conduct constitutes infringement of the distribution right, versus (direct or secondary) infringement of the reproduction right.  *See generally id.*

The same is true of the Supreme Court's opinion in *Sony*, which the R&R cited for the proposition that direct infringement "liability may be imposed on those who 'trespass[] into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work . . . .'"  R&R at 9 (alterations in original).  *Sony* did not address the distinctions between infringement of the distribution right and the reproduction right.  *See generally* 464 U.S. 417. Furthermore, the omitted portion of the quoted sentence provides critical context: "[A]nyone who trespasses into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work *in one of the five ways set forth in the statute*, is an infringer of the copyright."  *Sony*, 464 U.S. at 433 (emphasis & alterations added).  *Sony* therefore simply reaffirms the well-established principle that direct infringement must be premised on a violation of one of the exclusive rights set forth in 17 U.S.C. § 106.  *See id.*

For these reasons, the R&R erred in concluding that the evidence raises a genuine issue of material regarding direct infringement of Plaintiffs' distribution rights.

**B.     The R&R erred in finding that there is sufficient circumstantial evidence of distribution to create a fact issue for trial.**

Assuming Plaintiffs' direct infringement theory implicates their distribution rights, there is still no genuine issue of material fact.  The R&R did not resolve the disputed legal question of whether direct infringement requires proof of actual dissemination of copyrighted material, or if merely an offer to share is enough.  *See* R&R at 8-9.  Instead, the R&R appeared to conclude that Rightscorp's notices to Grande, coupled with evidence that Rightscorp downloaded allegedly infringing music files from Grande subscribers, was sufficient circumstantial evidence of direct infringement under either standard.  *See id.*  Respectfully, this was error.

First, the R&R did not address Grande's argument that Plaintiffs should be precluded from relying on evidence of downloaded music files to prove infringement.  In their Complaint, Plaintiffs did not allege that Rightscorp actually downloaded infringing music files from any Grande subscribers.  *See generally* Compl. (ECF No. 1).  In response to Grande's interrogatories seeking the evidence Plaintiffs would rely on to prove direct infringement, Plaintiffs did not identify these music files.  *See* Warner Plfs' Obj. & Resp. to 2nd Interrogs. at 1-8 (ECF No. 141-5).[22]  Plaintiffs' technical expert on Rightscorp's ability to detect copyright infringement, Barbara Frederiksen-Cross, did not identify or mention these music files in her expert report.[23] *See generally* Frederiksen-Cross Report (ECF No. 141-1).  In short, Plaintiffs failed to properly disclose this evidence and liability theory in discovery—and instead did so for the first time in response to Grande's motion.  The Court should therefore exclude this evidence from

---

[22] The three Plaintiffs groups—Warner, Sony, and Universal—served identical answers to this interrogatory.

[23] Ms. Frederiksen-Cross first mentioned these files in a "rebuttal" report served after Grande moved for summary judgment.  *See* Grande's Mot. to Strike at 6-7 (ECF No. 176).

consideration on summary judgment.[24]

Furthermore, Plaintiffs did not produce any evidence in discovery that these music files were *downloaded from Grande customers*—Plaintiffs only produced the bare music files. Plaintiffs first came forward with such evidence on summary judgment, in the form of declarations from Greg Boswell of Rightscorp, who asserts that these files were downloaded from Grande IP addresses at some time over a period of roughly two years.  1st Boswell Decl., ¶ 14 (ECF No. 173-79); 2nd Boswell Decl. (ECF No. 209-1).  This evidence should therefore also be stricken because it was not produced or identified in discovery.  Furthermore, Mr. Boswell's declarations violate the best evidence rule, in that they seek to prove the content of data obtained by Rightscorp's system—evidence that Plaintiffs failed to produce without any excuse, and which Grande has since determined has been destroyed.  *See* Grande's Reply at 12-14; Grande's Mot. for Sanctions at 6 (ECF No. 247).

Without this improperly-disclosed, incompetent, and inadmissible evidence, Plaintiffs lack evidence of direct infringement.  Rightscorp's notices are mere allegations; they are not evidence of infringement.  Furthermore, it is undisputed that Rightscorp's notices to Grande indicate, at most, that Rightscorp's system detected an offer to share copyrighted material (which, if true, would be reflected in data that Rightscorp has since destroyed).  *See* Frederiksen-Cross Report, ¶ 46 (3-4) (ECF No. 141-1); *see generally* Grande's Mot. for Sanctions (ECF No.

_____

[24] Plaintiffs' attempt to prove direct infringement based on Rightscorp's downloads amounts to a new liability theory first raised on summary judgment.  Grande is severely prejudiced by this untimely disclosure because Grande previously had no reason to pursue this issue in discovery or to address it in its expert reports.  *See* Grande's Reply at 14-15 (ECF No. 201).  The Court should therefore preclude Plaintiffs from relying on this new theory and the related evidence. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012) ("[D]istrict courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment.").

247).  Direct infringement, in contrast, requires proof of actual dissemination of copyrighted material.  *See* R&R at 8 n.3 (collecting cases).  As a result, evidence of offers to share cannot, standing alone, establish direct infringement—even if those offers are characterized as circumstantial evidence—because the Copyright Act does not permit attempt liability.  *See Howell*, 554 F. Supp. 2d at 984 (Evidence that files were made available for download "[o]n its own . . . does not prove that the copy changed hands.  It only shows that the defendant attempted to distribute the copy, and there is no basis for attempt liability in the statute . . . .").

Second, the alleged infringement reflected in Rightscorp's downloads of music files is irrelevant to Plaintiffs' contributory infringement claims.  As discussed above, contributory infringement requires proof of knowledge of the underlying direct infringement.  Here, there is no evidence that Rightscorp ever provided any of these downloaded files to Grande prior to discovery in this case.  As such, these alleged downloads reflect, at best, direct infringement about which Grande had no knowledge, and for which Grand therefore cannot be liable on a contributory infringement theory.

For these reasons, the Court should sustain Grande's objections to the R&R and grant summary judgment on the issue of direct infringement.

## IV.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON WILLFUL COPYRIGHT INFRINGEMENT

Grande objects to the R&R's finding that Grande is not entitled to summary judgment on the issue of willful copyright infringement.  There is no evidence that gives rise to a genuine issue of material fact as to whether Grande knew that its alleged conduct constituted secondary copyright infringement or acted with reckless disregard of Plaintiffs' rights.  *See Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 & n.7 (5th Cir. 2014).  The absence of willfulness is particularly evident in view of the minimal amount of information provided in Rightscorp's

unsupported and unverifiable notices, which do not even identify a registered U.S. copyright. *See generally* Sample Rightscorp Notices (ECF No. 140-2).  Furthermore, it is undisputed that none of Rightscorp's notices were sent on behalf of Plaintiffs, and so Plaintiffs cannot show that Grande willfully violated Plaintiffs' rights.  The Court should therefore grant summary judgment on the issue of willfulness.  *See also* Grande's Reply at 22-23 (ECF No. 201).

## V.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON PLAINTIFFS' DISCOVERY RULE ARGUMENT

The R&R erred in rejecting Grande's argument that Plaintiffs failed to plead sufficient facts to put Grande on notice of their intent to rely on the discovery rule to extend the three-year damages period under 17 U.S.C. § 507(b).  R&R at 16.  Although a plaintiff is not required to specifically plead the discovery rule, Fifth Circuit authority holds that a plaintiff *is* required to plead sufficient facts to give notice of the issue.  *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008) ("Under Rule 8 of the Federal Rules of Civil Procedure, it is enough that the plaintiff plead sufficient facts to put the defense on notice of the theories on which the complaint is based.  The facts pleaded by TIG gave sufficient notice to Aon Re that TIG might assert that the discovery rule applies.") (quotations & citations omitted); *Brandau v. Howmedica Osteonics Corp.*, 439 F. App'x 317, 320 (5th Cir. 2011) ("The facts pleaded by Brandau . . . gave HOC sufficient notice that Brandau might assert that the discovery rule applies.").

Here, Plaintiffs pleaded no facts in their Complaint that are relevant to their discovery rule argument.  *See generally* Compl. (ECF No. 1).  Plaintiffs do not claim otherwise.  Accordingly, the R&R erred in finding that Plaintiffs' pleadings are sufficient to entitle them to attempt to rely on the discovery rule.

The R&R also erred in finding that Plaintiffs have come forward with sufficient evidence to support application of the discovery rule.  The only cited evidence is an interrogatory answer

that addresses when *RIAA*—not Plaintiffs—was approached by Rightscorp about potential claims against Grande.  *See* R&R at 17.  The summary judgment record contains no evidence that *Plaintiffs* did not learn of the facts underlying their claims until January 2016, or that Plaintiffs should not have obtained those facts earlier through the exercise of reasonable diligence.  *See Verizon Employee Benefits Committee v. Fitzgerald*, No. 3:06-cv-0482, 2007 WL 2080004, at *5 (N.D. Tex. July 12, 2007) ("Under the discovery rule, a federal cause of action will be deemed to have accrued when a plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis of the action.").  Moreover, the evidence offered by Grande, establishing that Plaintiffs were in direct communication with Rightscorp as early as 2011, refutes the notion that Plaintiffs were reasonably diligent.  *See* R&R at 17.  The Court should therefore enter summary judgment that Plaintiffs' recovery of damages is limited to the three-year period preceding the filing of the Complaint, pursuant to 17 U.S.C. § 507(b).

## VI.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON DAMAGES BASED ON DISGORGEMENT OF PROFITS

The R&R erred in finding a genuine issue of material fact regarding Plaintiffs' request for disgorgement of Grande's profits as copyright infringement damages, pursuant to 17 U.S.C. § 504(b).[25]  Section 504(b) allows for recovery of profits "attributable to the infringement."  To meet its burden under § 504(b), "a copyright holder must show more than the infringer's total gross revenue from *all* of its profit streams," and must instead come forward with evidence of revenues "*reasonably related* to the infringement."  *MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) (emphasis in original).

Plaintiffs' evidence comes nowhere close to satisfying this standard.  Plaintiffs and the

---

[25] In the alternative, Plaintiffs seek statutory damages under § 504(c).  Plaintiffs' request for statutory damages is not at issue in the instant summary judgment briefing.

R&R cite expert testimony regarding the total lifetime value to Grande of every Grande customer ever accused of copyright infringement—by anyone, with respect to any type of copyrighted work.  *See* Lehr Report, ¶¶ 41-43 (ECF No. 173-74).  In other words, this lifetime value calculation is not limited to the value of customers who allegedly infringed the copyrights asserted in this case.  *See id.* at ¶ 41 ("the data are not limited to Rightscorp notices or to the specific works in suit").  By using "lifetime" value, Dr. Lehr's calculations also assume that every Grande customer accused of infringement would have never become a Grande customer in the first place.  *See id.* at ¶ 35.  Additionally, this lifetime value includes revenues from unrelated services like phone and cable TV.  *Id.* at ¶¶ 27-35.  All of this leads to astronomical figures that have no reasonable relationship to the copyright infringement alleged in this case.  *Id.* at ¶ 43.

The Court should therefore grant summary judgment on Plaintiffs' claim for disgorgement of Grande's profits under § 504(b).

## VII.   THE COURT SHOULD GRANT GRANDE'S MOTION FOR SANCTIONS AND, AS A RESULT, GRANT SUMMARY JUDGMENT ON OWNERSHIP OF CERTAIN ASSERTED COPYRIGHTS

The R&R erred in declining to exclude thousands of pages of copyright ownership evidence that Plaintiffs did not produce until after expert reports were served, and in large part not until after Grande moved for summary judgment on grounds that Plaintiffs lacked this very evidence.  *See* Grande's Mot. for Sanctions (ECF No. 156); Grande's Mot. for Summ. J. at 19-20 (ECF No. 140).

The R&R recommended denial of Grande's motion for sanctions, which seeks exclusion of this untimely-produced evidence, finding that Grande had not established prejudice.  R&R at 18-20.  This was error.  Under Rule 37(c), the burden is not on Grande to show prejudice, but is instead on Plaintiffs to demonstrate that the untimely disclosure "was substantially justified or is harmless."  *See Morin v. Chevron U.S.A. Inc.*, No. 2:11-cv-45, 2012 WL 2116368, at *6 (E.D.

La. June 11, 2012) ("A failure to disclose under Rule 37 includes . . . a party's untimely production of documents and information . . . ."); *Red Dot Bldgs. v. Jacobs Tech., Inc.*, No. 2:11-cv-1142, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012) ("Exclusion of the evidence [under Rule 37(c)(1)] is mandatory and automatic unless the party demonstrates substantial justification or harmlessness."); Grande's Mot. for Sanctions at 7-8.

Plaintiffs' untimely production was neither substantially justified nor harmless. Plaintiffs have offered no excuse for failing to timely produce this evidence, which Plaintiffs should have collected and reviewed as part of their Rule 11 pre-filing investigation. *See* Grande's Reply ISO Mot. for Sanctions at 3-4 (ECF No. 189). The untimely production also was not harmless, at least because Grande had already expended significant resources in reviewing Plaintiffs' timely-produced ownership evidence and preparing an expert report that detailed Plaintiffs' failure to establish ownership, and in thereafter moving for summary judgment on this issue. *See* Kemmerer Report at ¶¶ 10(a), 35-37, 50-53 (ECF No. 147-6).

Nevertheless, the R&R concluded that to show prejudice, "the least that Grande must claim is that, if given more time, it could prove the documents are forgeries, are not the whole ownership picture, or something else that would contradict Plaintiffs' claim they are the copyright owners of the specific works at issue." R&R at 19. Respectfully, this cannot be the appropriate standard for establishing prejudice—even assuming Rule 37(c) requires Grande to make such a showing. If this were the case, then the untimely production of documents would never be objectionable so long as the documents are helpful to the producing party's case.

Finally, Grande respectfully disagrees with the R&R's characterization of Grande's request for sanctions as "'gotcha' lawyering." R&R at 19-20. The R&R's implicit message is that prior to the close of fact discovery, Grande had a duty to investigate Plaintiffs' evidence and

point out to Plaintiffs that they lacked ownership evidence for certain asserted copyrights, so that Plaintiffs could timely cure the deficiency with a supplemental production. *See id.* Grande is not aware of any authority that supports this notion. As a practical matter, Grande did not fully understand and appreciate the deficiencies in Plaintiffs' evidence until after Mr. Kemmerer conducted his analysis of Plaintiffs' ownership evidence, reflected in an expert report served after the fact discovery deadline. And in fact, Grande *did* previously put Plaintiffs on notice of this issue, by filing a motion to compel Plaintiffs to provide interrogatory answers tying their ownership evidence to the asserted copyrights. Grande's Mot. to Compel at 10-11 (ECF No. 110). Grande should not be forced to relitigate the core issue of copyright ownership because Plaintiffs failed to timely produce ownership evidence specifically requested in discovery and necessary to their case-in-chief.

For these reasons, the Court should grant Grande's motion for sanctions, exclude the untimely-produced ownership evidence, and grant summary judgment in Grande's favor as to the 361 copyright registrations identified in Grande's Motion for Summary Judgment. *See* Grande's Mot. for Summ. J. at 19-20 (ECF No. 140); Contested Registrations (ECF No. 140-4).

## **REQUEST FOR ORAL ARGUMENT**

In view of the significant legal issues and complex technical evidence involved in the instant summary judgment briefing, Grande respectfully requests oral argument concerning these Objections.

## **CONCLUSION**

For the foregoing reasons, the Court should sustain Grande's Objections to Magistrate Judge Austin's December 18, 2018 Report and Recommendation (ECF No. 240) and enter an order granting Grande's Motion for Summary Judgment (ECF No. 140), in whole or in part.

Dated:  January 9, 2019

Respectfully submitted,


By:  /s/ Richard L. Brophy
     Richard L. Brophy
     Zachary C. Howenstine
     Margaret R. Szewczyk
     Armstrong Teasdale LLP
     7700 Forsyth Blvd., Suite 1800
     St. Louis, Missouri 63105
     Telephone:  314.621.5070
     Fax:  314.621.5065
     rbrophy@armstrongteasdale.com
     zhowenstine@armstrongteasdale.com
     mszewczyk@armstrongteasdale.com

     J. Stephen Ravel
     Texas State Bar No. 16584975
     J.R. Johnson
     Texas State Bar No. 24070000
     Diana L. Nichols
     Texas State Bar No. 00784682
     Kelly Hart & Hallman LLP
     303 Colorado, Suite 2000
     Austin, Texas 78701
     Telephone: 512.495.6429
     Fax: 512.495.6401
     steve.ravel@kellyhart.com
     jr.johnson@kellyhart.com
     diana.nichols@kellyhart.com

     Attorneys for Defendant GRANDE
     COMMUNICATIONS NETWORKS
     LLC

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on January 9, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy