**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § <br> § <br> Plaintiffs, § <br> § <br> vs. § <br> § <br> GRANDE COMMUNICATIONS § <br> NETWORKS LLC, § <br> § <br> Defendant. § <br> § | Civil Action No. 1:17-cv-00365-DAE-AWA |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GRANDE COMMUNICATIONS
NETWORKS LLC'S MOTION FOR EVIDENTIARY SANCTIONS**

## INTRODUCTION

Throughout this litigation, Grande's primary strategy has been to manufacture attacks on the reliability of Plaintiffs' Rightscorp evidence. Most recently, when Grande moved for summary judgment, it "tr[ied] to pick holes" in Plaintiffs' Rightscorp evidence and argued that the "Rightscorp notices and Rightscorp's technology and process [were] insufficient to show infringement." *See* Magistrate Judge's Report and Recommendation at 7, 10 (December 18, 2018) [Dkt. 240] ("Report"). The Magistrate Judge squarely rejected these arguments. Grande now wants a second bite at the apple. In the wake of the Magistrate Judge's reports recommending summary judgment rulings adverse to Grande on its DMCA safe harbor defense and on liability, Grande once again resorts to the same tactics this Court has rejected multiple times. Grande's latest motion seeks to exclude **all** of the Rightscorp evidence, which would be tantamount to dismissal of Plaintiffs' case. The motion should be recognized for what it is: a desperate attempt to suppress the evidence that Grande knows conclusively establishes its liability for contributory infringement. Under Federal Rule of Civil Procedure 37(e) and the relevant case law, there is no basis to impose any evidentiary sanction against Plaintiffs for the supposed Rightscorp spoliation that Grande alleges, much less the draconian exclusion of the Rightscorp evidence that Grande demands.

*First*, regarding changes to Rightscorp's source code, Grande points to the *Cox* case. Significantly, however, Grande fails to inform the Court that the *Cox* court ***did not exclude the Rightscorp evidence that Grande seeks to exclude here (or any Rightscorp evidence)***. Instead, the *Cox* court resolved the issue simply by instructing the jury that it could, but was not required to, consider that Rightscorp did not preserve certain historical changes to its source code. In this case, however, even that result would go too far. Plaintiffs were not parties to the *Cox* case, and the lack of preservation identified in *Cox* occurred before Plaintiffs engaged Rightscorp for this case. Indeed, after the *Cox* trial and after Plaintiffs engaged Rightscorp for this case, Rightscorp implemented a version control system that preserved any changes to its source code; that

1

information has been produced to Grande. Thus, for the time period during which Plaintiffs were contemplating litigation against Grande, the preservation issue raised in *Cox* was rectified, and there is no basis for any sanction whatsoever. With respect to the earlier time period before Plaintiffs were involved (*i.e.*, the time period at issue in *Cox*), Plaintiffs had no control over or responsibility for the Rightscorp data. It is well settled as a matter of law that a party cannot be sanctioned for a non-party's alleged failure to preserve data in this circumstance. *See, e.g.*, *Adkins v. Wolever*, 692 F.3d 499, 505 (6th Cir. 2012); *Hofer v. Gap, Inc.*, 516 F. Supp. 2d 161, 170–71 (D. Mass. 2007). Nor can Grande demonstrate any prejudice with respect to the earlier time period. Rightscorp has produced earlier versions of its code and, in their accompanying declarations, Rightscorp's programmer Greg Boswell and Plaintiffs' software expert Barbara Frederiksen-Cross (both of whom are familiar with the earlier code) testify that there were no changes to the code before 2016 that materially altered the system's basic functioning and reliability. Grande has had the opportunity to test these assertions through depositions and will have the same opportunity to do so at trial.

**Second**, Grande insists that a hodgepodge of additional technical data was not preserved. But Grande's arguments fail for multiple reasons: as Boswell and Frederiksen-Cross explain, some of the data actually does exist, yet Grande simply did not request it previously; other data was never tracked by Rightscorp in the first place and thus could not have been spoliated; and still other data either was not used by Rightscorp or would merely be cumulative of the other substantial Rightscorp information that Grande has already received.

**Third**, Grande's claim for call center logs and recordings is irrelevant. The only time this information was systematically recorded was 2014 and 2015. But Grande did not forward Rightscorp notices to its subscribers until 2016. Thus, the call center logs and recordings could not relate to Grande subscribers, because Grande was not forwarding the notices to its subscribers, and thus those subscribers would not have contacted Rightscorp during the time period in question.

At bottom, Grande's motion does not allege the kind of "fraudulent intent and a desire to suppress the truth" that this Court has held must be present to impose the severe sanction that Grande seeks. *Spencer v. BMW of N. Am., LLC,* No. 5:14-CV-00869-DAE, 2015 WL 11661765, at *3 (W.D. Tex. Dec. 22, 2015) (Ezra, J.) (internal quotations and citations omitted) (denying dismissal or adverse inference based on spoliation). If Grande believes that any of the issues raised in its motion undermine the credibility of the Rightscorp data, then it can raise the issues during its cross-examination of Rightscorp witnesses and Plaintiffs' experts, and during its arguments to the jury. Nothing else is warranted. The Court should deny Grande's motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 37(e) governs the preservation of electronically stored information. It allows sanctions against a party only if (1) the party "failed to take reasonable steps to preserve" such information, (2) such "information cannot be restored or replaced through additional discovery," and (3) a "finding [of] prejudice to another party from loss of the information[.]" Fed. R. Civ. P. 37(e), (e)(1). In such circumstances, the district court can only order "measures no greater than necessary to cure the prejudice[.]" *Id.* "[O]nly upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may" the Court award a default judgment or adverse inference jury instruction. *Id.* at 37(e)(2).

## ARGUMENT

Grande levels the wildly hyperbolic claim that "Plaintiffs and Rightscorp have destroyed all of the evidence necessary to determine how the Rightscorp system operated at any given time relevant to this lawsuit." Mot. at 9. That assertion is demonstrably false: Grande has received voluminous discovery concerning the operation of Rightscorp, as this Court already has observed. *See* Order at 10 [Dkt. 192] (noting that "Grande has conducted significant discovery on" the operation of the Rightscorp system). That discovery includes, among other things:

3

- over 1.35 million notices that Rightscorp generated and sent to Grande, each of which conveys significant technical information concerning Rightscorp's detection of infringement by Grande customers, "including IP addresses, port numbers, time stamps, song titles, artist names, and copyright holders." Sept. 11, 2018 G. Boswell Decl. ¶¶ 8, 10, 12 [Dkt. 173-79];

- over 59,000 full audio files that Rightscorp downloaded from infringing Grande subscribers. *Id.* ¶ 14;

- the 41,196 Audible Magic output files, matching the Rightscorp downloads to Plaintiffs' works, that RIAA generated. Sept. 11, 2018 J. Landis Decl. ¶¶ 11-12 and Ex. 1 [Dkt. 172-12];

- Rightscorp's source code data, which includes the Rightscorp source code snapshots from 2013, 2015 and 2018. Ex. A, Third Declaration of Greg Boswell ("3d Boswell Decl.") ¶ 4;

- Rightscorp's records from the change management system it implemented in 2016, which logs the changes over time to the source code. 3d Boswell Decl. ¶ 5;

- hundreds of emails, powerpoints and other documents concerning the Rightscorp system;

- the depositions of Rightscorp employees Greg Boswell and Christopher Sabec, as well as the declarations that Boswell has submitted, both in this case and in *Cox*; and

- the expert reports and depositions of Plaintiffs' software expert, Barbara Frederiksen-Cross, who has undertaken extensive analysis of the Rightscorp system, both in this case and in *Cox*.

None of the supposedly missing data that Grande cites would provide materially different information than what it already has received. Grande's demand for sanctions is without merit.

I. **NO SOURCE CODE SPOLIATION SANCTIONS ARE WARRANTED.**

    A. **Prior to engaging Rightscorp in 2016, Plaintiffs were not in a position to control Rightscorp's preservation of source code changes and, since that engagement, Rightscorp implemented a system to record its changes.**

There is no basis or justification for the drastic evidence exclusion sanction that Grande demands against Plaintiffs as a result of the supposed Rightscorp source code changes that were not preserved. Plaintiffs (through their trade association, RIAA) retained Rightscorp in connection with this lawsuit in 2016. V. Sheckler Decl. ¶ 4 [Dkt. 136-1]. In 2016, Rightscorp implemented a revision control system that records changes in the Rightscorp source code. Mot. at 4; 3d Boswell Decl. ¶ 5. Thus, during the time when Plaintiffs even arguably had the ability to control or influence Rightscorp's retention of information, ***Rightscorp retained its source code change data, and that***

4

*data has been produced to Grande.*

Grande's complaints about the prior time period mirror those in *Cox*. In *Cox*, the plaintiff and its lawyers had been working with Rightscorp to prepare the litigation against Cox in the timeframe when the code was not preserved. *Cox* Order at 2, 3-4 [Dkt 247-2]. But those events occurred long before RIAA engaged Rightscorp for this case, and long before Plaintiffs had control over Rightscorp's source code preservation measures. Plaintiffs' duty to preserve evidence did not arise until Plaintiffs knew or should have known that evidence was relevant to the litigation. *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (affirming denial of spoliation sanctions). That duty could not have arisen before Plaintiffs contemplated this litigation or before they began working with Rightscorp on this litigation. "The spoliation doctrine does not apply … where the opposing party is not responsible for the loss or destruction of the evidence." *Hofer*, 516 F. Supp. 2d at 170–71 (citing cases) (non-party, not plaintiff, was responsible for alleged spoliation, and thus plaintiff would not be sanctioned); *see also Adkins*, 692 F.3d at 505 ("In the absence of any evidence that [the targeted party] had control or access over these items, there is no basis to assert that [the party] had any culpability for the loss of the items.").[1] Plaintiffs therefore cannot be held responsible for alleged Rightscorp spoliation that pre-dates Plaintiffs' involvement.

And of course, in these circumstances, there can be no finding of bad faith or "intent to deprive" by Plaintiffs that would be necessary to impose the extreme sanction that Grande seeks. *Spencer*, 2015 WL 11661765, at *3. Indeed, even in *Cox*, the court did not order the severe sanction

---

[1] "Where a party against whom sanctions are sought has not been shown to have had any responsibilities related to the maintenance, preservation or destruction of the evidence at issues, and the loss of that evidence is instead attributable to non-parties ..., [the movant] has failed to show that [the targeted party] ... had any role with respect to the maintenance or participated in the destruction[.]" *Wandering Dago Inc. v. New York State Office of Gen. Servs.*, No. 1:13-CV-1053 MAD, 2015 WL 3453321, at *7–8 (N.D.N.Y. May 29, 2015); *see also Alfieri v. Guild Times Pension Plan*, 446 F.Supp.2d 99, 112 (E.D.N.Y. 2006) (finding that an important security log book that was not preserved was actually maintained and controlled by the New York Times, "a separate entity from the defendant Pension Plan").

Grande seeks. *Cox* Order at 6 [Dkt 247-2]. Instead, the *Cox* court simply allowed Cox to discuss Rightscorp's not preserving older source code changes, and instructed the jury that they "may, but are not required to, consider the absence of earlier versions of that code in considering the issue of infringement." Ex. B, *Cox* 12/16/15 Trial Tr. [Dkt. 751] at 2145:1-9. Given Plaintiffs' lack of involvement with Rightscorp during the earlier time frame, even this instruction is not warranted. In all events, a sanction more severe than such an instruction would be wholly unjustified.

> **B. Grande has not been deprived of material information concerning the Rightscorp source code.**

Rightscorp has produced a massive amount of data concerning its source code. The multiple source code snapshots, as well as the change management records, provide Grande with abundant information from which to evaluate the Rightscorp system's operation over time. Grande's overheated rhetoric notwithstanding, the relevant question is simply whether there were *material* differences in the Rightscorp system over time. But the answer to this question is known: there were no such material changes. Rightscorp has had a single developer—Greg Boswell—working on its code. 3d Boswell Decl. ¶ 7. Boswell is fully aware of the changes that he implemented over the course of the system's operation. While at times the source code has employed different means to achieve its functionality, none of those changes have materially altered either the basic manner in which Rightscorp functions, or its reliability. *Id.* ¶ 8. Grande deposed Boswell and had a full and fair opportunity to question him about historical changes to Rightscorp's source code.

Plaintiffs' software expert, Barbara Frederiksen-Cross, confirmed the accuracy of Boswell's testimony in this regard. She studied the different iterations of the source code, tested its operation over time, and independently concluded that there were no material changes in its functionality or reliability during the course of its operation. Expert Report of Frederiksen-Cross ¶¶ 15, 88 & Exs. D-E [Dkt. 217-1]; Rebuttal Expert Report of Frederiksen-Cross ¶¶ 25, 29, 68-69

6

[Dkt. 217-3]; Ex. C, B. Frederiksen-Cross Decl. ("F-C Decl.") ¶¶ 8-10.

The change management system further demonstrates that no material evidence from prior source code versions was actually spoliated. In contrast to Grande's unsupported assertions, *see* Mot. at 4, Frederiksen-Cross analyzed records produced to Grande from the change management system (implemented in 2016) and concluded that none of the changes recorded materially altered the Rightscorp system's operation and reliability. F-C Decl. ¶¶ 11-17. Grande had a full and fair opportunity to depose Ms. Frederiksen-Cross.

The truth is that Rightscorp has deployed a remarkably stable and efficacious software system over the relevant time period—a system that reliably detects online infringement, as Frederiksen-Cross's testing and analysis has confirmed, and as Grande cannot reasonably dispute. Grande had the opportunity to explore all the changes to the relevant code during the many hours it spent deposing two Rightscorp personnel (Sabec and Boswell) and Frederiksen-Cross. Grande also has the benefit of the written submissions, depositions and trial testimony of these witnesses from *Cox.* And Grande's own technical expert inspected both the 2015 and 2018 code, and opined on the changes to the code.[2] The Court in *Cox* recognized that all of this information provided "***other potential avenues available to understand and test the accuracy of the Rightscorp system.***" *Cox* Order at 4 [Dkt 247-2] (explaining its rejection of Cox's requested evidence exclusion sanction) (emphasis added). In short, Grande has received more than enough evidence to explore and test the source code and evaluate its changes over time. The relevant information thus has been "replaced" and Grande has suffered no prejudice. Fed. R. Civ. P. 37(e).

II. **THERE IS NO BASIS FOR SPOLIATION SANCTIONS CONCERNING THE INTERMEDIATE TECHNICAL DATA THAT RIGHTSCORP SEEKS.**

Implicitly recognizing that its source code arguments fall well short of justifying evidence exclusion, Grande gins up makeweight arguments that it needs additional technical data (which

---

[2] Expert Report of Geoff A. Cohen [Dkt. 232-1].

supposedly was not preserved) in order to evaluate the Rightscorp system. Mot. at 2-3, 5-7. None of Grande's arguments concerning these categories of this additional data has any merit.

**Torrent files.** Grande is simply wrong that torrent files Rightscorp obtained and ingested were destroyed. Rightscorp in fact maintains a massive database of such files. F-C Decl. ¶ 18; 3d Boswell Decl. ¶ 9. Grande did not identify this in its correspondence about the Rightscorp system information it was seeking. *See* Mot. Ex. 4 [Dkt. 247-4] (no reference to this category); *see also* Ex. D, Jan. 3, 2019 Brophy Email to Gilmore (same). In a good faith effort to resolve the issue, Plaintiffs are exploring whether the data can be produced. But none of this data bears on the accuracy of the Rightscorp system's identification of infringing files, which the data in the notices, the audio files, and the source code, confirm. F-C Decl. ¶¶ 16, 19-21.

**Song matching.** Grande's argument that it is missing information about Rightscorp's matching of the audio files Rightscorp downloaded with the copyrighted recordings is a red herring. Mot. at 5-6. As Grande knows, the RIAA itself used the Audible Magic tool to verify match the Rightscorp downloads with Plaintiffs' copyrighted recordings. Sept. 11, 2018 J. Landis Decl. ¶¶ 11-12 and Ex. 1 [Dkt. 172-12]. The outputs of that matching process—the same type of outputs that Grande seeks from Rightscorp—all have been provided to Grande. *Id.* Furthermore, Grande has all the information needed to verify the matching by running the audio files (which were produced to it more than a year ago) through the publicly-available AcoustID system that Rightscorp used, as Grande's expert admitted he can do. *See* Cohen Rpt. ¶¶ 128-29 [Dkt. 232-1].

**Tracker data.** Grande claims that it would like to see initial data that Rightscorp receives from participants in BitTorrent swarms ("tracker" information). While Rightscorp does not maintain this data, it is irrelevant for evaluating Rightscorp's system. The Rightscorp system goes beyond tracker communications to undertake a "handshake" with a BitTorrent user, and records the data concerning that "handshake" communication in the notices that are sent to ISPs, including those sent to Grande, all of which Grande received long ago. F-C Decl. ¶¶ 25-27.

8

**Data packets.** Grande's claim that it needs the data packet information transmitted between the Rightscorp system and a BitTorrent user (the "bitfield," "have," "request," and "choke" data), Mot. at 3-4, is similarly misplaced. Grande asserts that "Rightscorp uses this data—and this data alone—to conduct its infringement analysis against Grande's subscribers." *Id.* at 4. That is incorrect: Rightscorp does not use the latter three data categories in its operation. 3d Boswell Decl. ¶ 6; F-C Decl. ¶ 29. Finally, the bitfield information is cumulative of the Rightscorp notices and is not required to evaluate the system's operation. F-C Decl. ¶¶ 30-34.[3]

**Information about downloaded audio files.** Grande's argument about this category misses the mark as well. As Plaintiffs previously explained, "the filenames of the recordings correspond to the Grande subscribers from whom they were downloaded, as identified in the Rightscorp notices sent to each such subscriber." Reply Supp. Cross-Mot. for S.J. at 4 [Dkt. 209]; Ex. II, 2d G. Boswell Decl. ¶¶ 7-11 [Dkt. 209-1]. However, in light of the further description Grande has requested for the first time in its motion, Rightscorp will generate and produce a spreadsheet that sets forth additional data concerning the provenance of the audio files. That information will moot this portion of Grande's motion. Again, however, none of this information is actually relevant to confirming the reliability of the Rightscorp system.

### III. THE CALL LOG SYSTEM GRANDE SEEKS IS IRRELEVANT, BECAUSE IT WAS NOT IN PLACE WHEN ANY GRANDE SUBSCRIBER WOULD HAVE CONTACTED RIGHTSCORP.

As Grande knows, during 2014 and 2015, Rightscorp had contracted with an outside vendor, Salesforce, to maintain a database of call center records. Ex. E, C. Sabec Dep. Tr. 91:10-16 (identifying time frame in 2014-2015 during which Rightscorp was "recording its call center

---

[3] Grande cites to an agreement between the RIAA and another company, MarkMonitor, as the supposed basis for claiming that Rightscorp should have retained data. *See* Mot. at 4 fn.2, 5, 6 (citing Exhibit 3). But this Court already ruled that precisely such evidence of other online detection companies is irrelevant. Order at 3 [Dkt. 191]. It is a misleading and inapposite apples-to-oranges comparison, F-C Decl. ¶¶ 5-6, to a company that uses a different technology to detect online copyright infringement in a different context (a now defunct voluntary program).

9

activity"); *id.* at 367. During 2014-2015, however, it is undisputed that Grande was not forwarding the Rightscorp notices it received to its infringing subscribers; Grande did not begin doing so until 2016, after the *Cox* verdict. *See* Pls' Mot. for Partial S.J. as to Grande's DMCA Safe Harbor Defense at 5 (Stmt. of Undisputed Material Fact ¶ 10) [Dkt. 127]. Thus, Grande subscribers would not have placed any calls to the Rightscorp call center during a point in time when Rightscorp was recording its call center activity and, therefore, that Rightscorp no longer has access to the Salesforce system is of no moment for this case.[4] Regardless, none of the call center records have any bearing on the technical operation of the Rightscorp system, and they certainly do not support the overreaching evidence exclusion that Grande demands.

## CONCLUSION

For the foregoing reasons, the Court should deny Grande's motion.

---

[4] Rightscorp does maintain payment records, and confirmed during Mr. Sabec's deposition that no Grande subscriber ever made a settlement payment to Rightscorp after receiving a notice. Ex. E, Sabec Dep. 360-361 (testifying that Rightscorp confirmed from its records that there were no payments from Grande subscribers).

Dated: January 17, 2019                        Respectfully submitted,

By: */s/ Robert B. Gilmore*
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

  The undersigned certifies that on January 17, 2019 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

               */s/ Daniel C. Bitting*
               Daniel C. Bitting