**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS | § | |
| NETWORKS LLC, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S OBJECTIONS TO THE REPORT AND
RECOMMENDATION REGARDING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. 240]**

**INTRODUCTION**

Grande's Objections [Dkt. 252] rehash the same meritless arguments that the Magistrate

Judge's Report and Recommendation (December 18, 2018) [Dkt. 240] ("Report") thoroughly

analyzed and properly rejected.  Having presided over this case for months through the motion to

dismiss briefing and argument, as well as the parties' discovery motions and hearing, the

Magistrate Judge drew upon his deep familiarity with the relevant facts and legal authorities,

carefully analyzed the parties' briefs and evidence, and recommended that Grande's motion for

summary judgment be denied almost entirely.  Grande cannot avoid the substantial evidence that

it knowingly facilitated its subscribers' massive infringement of Plaintiffs' copyrighted sound

recordings through online peer-to-peer file-sharing.  The Magistrate Judge's findings and

recommendations are in line with the relevant statutes and case law, including cases with

substantially similar facts and legal theories. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns,

Inc.*, 149 F. Supp. 3d 634, 663 (E.D. Va. 2015) (summary judgment) and 199 F. Supp. 3d 958

(E.D. Va. 2016) (JMOL), *aff'd in part, rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018).[1]

Mindful of the voluminous record already in this case, Plaintiffs will not follow Grande's approach in burdening the Court with a 35-page "brief."  Plaintiffs instead submit this response to highlight the key reasons why the Report properly rejected Grande's arguments, and why the Court should overrule Grande's Objections.

## ARGUMENT

I.  **AS BOTH THE REPORT AND THE FOURTH CIRCUIT FOUND IN *COX*, GRANDE'S *GROKSTER* ARGUMENTS ARE "MERITLESS"; PLAINTIFFS' CONTRIBUTORY INFRINGEMENT CLAIMS ARE WELL SUPPORTED IN THE LAW.**

As the Report observed, "'[a] party is liable for contributory infringement when it, with knowledge of the infringing activity, induces, causes or materially contributes to infringing conduct of another.'"  Report at 10 (quoting *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 790 (5th Cir. 1999) (citation and internal quotation marks omitted in Report)).  Grande badly misreads the Supreme Court's decision in *Metro–Goldwyn–Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 914 (2005) to argue that Plaintiffs' contributory infringement claim fails as a matter of law.  Grande advanced the same legal theory in its motion to dismiss.  Report at 10.  This Court adopted the Magistrate Judge's rejection of the argument then (Am. Order on R&R of U.S.M.J. [Dkt. 78]), and nothing has changed to warrant a different conclusion now.  Indeed, Grande's argument is the same one that the courts in *Cox* addressed and rejected, the Fourth Circuit calling it "***meritless***[.]"  881 F.3d at 305 (emphasis added).

---

[1] In *Cox*, the jury rendered a $25 million infringement verdict against the internet provider.  The Fourth Circuit reversed and remanded for a new trial based on an erroneous jury instruction, while finding that the legal theories were viable and the facts supporting liability—the same sort of notices and downloads from online infringement detection company Rightscorp that Plaintiffs here rely on—was "powerful evidence[.]"  *Cox Commc'ns, Inc.*, 881 F.3d at 311-12.

Notably, Grande cannot point to a single case holding that *Grokster* overturned long-established material contribution law, or rejecting contributory liability in circumstances similar to the facts of this case, which involve a sophisticated internet service provider that knows of specific subscribers engaging in massive online copyright infringement over its network, does nothing to stop that infringement, but instead continues to facilitate the infringement by providing the subscribers ongoing internet service.   The Report properly rejected Grande's *Grokster* arguments.

## II.   THE REPORT CORRECTLY FOUND THAT THERE IS ABUNDANT EVIDENCE OF GRANDE SUBSCRIBERS' DIRECT INFRINGEMENT.

In its Objections, Grande argues that the direct infringement element in Plaintiffs' case—"Grande customers directly infringed their distribution rights by sharing copyrighted material through BitTorrent"—"is not a viable theory."  Objections at 25.  But this is wrong on the law and the facts.  Legally, it is well-settled that online file-sharing constitutes direct infringement.  "Both uploading and downloading copyrighted material are infringing acts.  The former violates the copyright holder's right to distribution, the latter the right to reproduction."  *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013).   Plaintiffs cited numerous cases establishing this proposition, which Grande does not seriously dispute.  *See* Opp. / Cross-Mot. at 14-15 & fn. 8 [Dkt. 172].  On the facts, Grande cannot escape the extensive evidence of direct infringement, including (1) the more than 1.35 million notices Rightscorp generated when it detected Grande's internet users offering to distribute sound recordings through BitTorrent (a peer-to-peer network), and (2) the full audio files that Rightscorp obtained from the infringing subscribers it detected.  Courts in the Fifth Circuit have held that "making copyrighted works available for download via a peer-to-peer network contemplates 'further distribution,' and thus constitutes a violation of the copyright owner's exclusive 'distribution' right under 17 U.S.C. § 106(3)."  *Atl. Recording Corp. v. Anderson*, No. CIV-A-H-06-3578, 2008 WL 2316551, at *7

(S.D. Tex. Mar. 12, 2008) *(citing A&M Records, Inc. v. Napster, Inc.,* 239 F.2d 1004, 1014 (9th Cir. 2001)).[2]  Grande cites no case from this circuit holding otherwise.

Furthermore, as the Report found and as *Cox* held, the Rightscorp notices are, at a minimum, "circumstantial evidence of direct infringement."  Report at 9; *Cox Commc'ns, Inc.*, 149 F. Supp. 3d at 671-72.  Coupled with the fact that Grande subscribers distributed tens of thousands of entire audio files to Rightscorp (including at least one copy of each work in suit), the evidence of direct infringement is overwhelming.  Grande has no answer to this evidence beyond its misplaced legal arguments that Plaintiffs seek to impose "tertiary liability" against Grande, which (as the Report observed) are inconsistent with the Fifth Circuit's decision in *BWP Media USA, Inc. v. T & S Software Associates, Inc.*, 852 F.3d 436 (5th Cir. 2017).  The law is clear that defendants are liable for direct infringement "where they have provided the means to obtain and transmit copyrighted performances," *id.* at 442—which Grande subscribers sharing files through BitTorrent indisputably do.[3]

For these reasons, Grande cannot defeat the Report's conclusions as to direct infringement. Report at 9 (concluding that Grande should be denied summary judgment given that "[t]he summary judgment evidence establishes that Grande subscribers made their files available through the BitTorrent protocol, and given the evidence regarding BitTorrent and the purpose of peer-to-

---

[2] *See also Maverick Recording Co. v. Harper*, No. 5:07-cv-026-XR, 2008 WL 11411855, at *3 (W.D. Tex. Sept. 16, 2008) (granting summary judgment), *aff'd in part and rev'd in part*, 598 F.3d 193 (5th Cir. 2010); *Warner Bros. Records v. Payne*, No. W-06-CA-051, 2006 WL 2844415 (W.D. Tex. July 17, 2006); *Arista Records LLC v. Greubel*, 453 F. Supp. 2d 961, 971 (N.D. Tex. 2006).
[3] Grande argues that this statement from *BWP Media* only concerns "a separate issue: the extent to which direct infringement liability requires volitional conduct."  Objections at 27.  This misreads *BWP Media*.  The Fifth Circuit articulated what direct infringement liability involved in order to answer whether it required volitional conduct, and its articulation of such liability—"provid[ing] the means to obtain and transmit performances"— resolves the question of whether Grande subscribers' online file-sharing constitutes direct infringement:  it does.  That conclusion comports with numerous other cases Plaintiffs cite in their Opposition / Cross-Motion, holding that sharing recordings, even with online investigators acting for copyright holders (like Rightscorp here), amounts to direct infringement.  Opp. / Cross-Mot. at 14 [Dkt. 172].

peer networks, and the fact that Rightscorp was able to download each of the songs from Grande subscribers").

### III. THE EVIDENCE—INCLUDING THE RIGHTSCORP NOTICES AND GRANDE'S INTERNAL DOCUMENTS—SHOWS GRANDE KNEW OF ITS SUBSCRIBERS' INFRINGEMENT.

Grande asks the Court to pretend that the abundant evidence showing its knowledge of the infringement does not exist. There is no basis for the Court to do so. Grande's Objections on this topic amount to reprising its incorrect claim that Rightscorp notices do not evidence actual infringement, Objections at 17 ("Rightscorp can only detect, at most, that a BitTorrent user offered to share a particular music file."), and quibbling over the level of information that the notices contain, *id*. The Report properly gave no credit to these makeweight arguments. Indeed, the Magistrate Judge's companion Report and Recommendation on Grande's Safe Harbor Defense [Dkt. 241] (the "Safe Harbor Report") cataloged Grande's extensive knowledge of its subscribers' infringing activity:

- "Grande received 'millions' of notices of copyright infringement" during the relevant time period;

- Grande "was tracking over 9,000 customers on its DMCA 'Excessive Violations Report' by late 2016," and "specifically tracked users by the number of notices Grande received about them;"

- Grande's "internal emails indicat[ed] that [Grande] believed many of its customers were repeat infringers;"

- "the evidence in the record from Grande's own documents reflects the opposite of what it now argues – Grande took the Rightscorp (and other) notices as evidence of infringement;" and

- Grande terminated repeat infringers both before and after the 2011-2016 time period, including those about whom Rightscorp sent notices.

Safe Harbor Report at 7-10. The Magistrate Judge concluded in the Safe Harbor Report that "***[i]t is Grande's employees' knowledge that matters, and the evidence is undisputed that those employees believed the notices reflected that many of Grande's customers were repeatedly***

*infringing on copyrights.*"  *Id.* at 11 (emphasis added).  In its Objections, Grande offers nothing more than the same warmed-over arguments that it lacked knowledge of its subscribers' infringement, arguments that the Magistrate Judge properly rejected.  The Court should do so as well, and overrule Grande's Objections.

### IV.   GRANDE'S ARGUMENTS CONCERNING PLAINTIFFS' PROOF OF COPYING ARE "MISPLACED (AT BEST)."

In its motion for summary judgment, Grande tried to muddy the water, arguing that Plaintiffs had not adduced evidence allowing a comparison of the infringing files downloaded from Grande subscribers to Plaintiffs' copyrighted recordings.  But Grande misunderstood the law, and the Magistrate Judge correctly rejected this argument.  As an initial matter, it is important to understand why Grande's argument is "misplaced (at best)" as the Report found.  Report at 6-7. This is a case about online file-sharing of *duplicates* of Plaintiffs' sound recordings.  "Plaintiffs are not claiming that Grande's subscribers created their own musical versions of Plaintiffs' works (which might create some question on the issue of similarity), *they are claiming that Grande's subscribers downloaded and uploaded identical digital duplicates of the works.*"  *Id.* at 7 (emphasis added).  In other words, this is not the sort of copyright infringement case where the defendant is alleged to have created its own work that is similar enough to an existing copyrighted work to infringe—the facts underlying cases such as *Creations Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997), on which Grande relies but which the Report appropriately distinguishes.

Given the nature of this case, Plaintiffs' copying proof is entirely sufficient:  Plaintiffs submitted digital matching data, reinforced by declarations from two witnesses with relevant percipient knowledge (Greg Boswell of Rightscorp and Jeremy Landis of the RIAA[4]), evidencing

---

[4] Grande's claim that Mr. Landis was not disclosed during discovery and, therefore, his declaration should not have been admitted, is without merit.  Plaintiffs identified in writing the Audible Magic

6

the comparison that Grande claimed suffered from a "failure of proof." Report at 5-6 (summarizing Plaintiffs' comparison evidence). Accordingly, the Report found that "Plaintiffs have offered evidence to fulfill the evidentiary requirement described in *Creations Unlimited* and similar cases—that is, to show that the copies Rightscorp downloaded from Grande subscribers are exact duplicates of Plaintiffs' copyrighted works." Report at 7.

Grande insists that this evidence was not enough but, as the Magistrate Judge observed, "the only logical construction of [Grande's] argument is that it is claiming that under existing case law to demonstrate direct infringement at trial, Plaintiffs will have to play every single song at issue to the jury, along side the identical copy or copies of that song found on Grande's subscribers' computers." Report at 6. There is no basis for such an absurd position. As the Report held, the "relevant law does not mandate that a plaintiff play the two works for the jury, to show that the infringing items are in fact identical digital duplicates of the original songs. ***Rather, the cases mandate only that there be evidence allowing such a comparison to be made.***" Report at 7 (emphasis added).

Plaintiffs' evidence indisputably satisfies this standard. Tellingly, even though Grande received all of the Rightscorp notices and downloads in November 2017, to this day, Grande has never identified a single notice that is inaccurate or a download that is not properly identified as a copy of one of the works in suit. All that Grande tried to do was to "pick holes" in the Rightscorp system's operation, *id.*,[5] but Grande's effort fell well short of its summary judgment burden. Grande's Objections simply repeat the same arguments from its summary judgment briefs. The Report's conclusion is sound and should be adopted.

---

evidence that RIAA generated, and Grande subpoenaed testimony from RIAA during discovery. Grande has since deposed Mr. Landis. There is no basis to exclude his declaration testimony.

[5] Grande's attempt to impeach the Rightscorp system by claiming relevant data was spoliated, *see* Objections at 29-30, is without merit, as Plaintiffs explain in their Opposition to Grande's Motion for Evidentiary Sanctions [Dkt. 253].

V.   **THE REPORT PROPERLY REJECTED GRANDE'S BASELESS DEMANDS TO EXCLUDE INCRIMINATING EVIDENCE.**

As it has done repeatedly throughout this litigation, Grande contends in its Objections that some of the most probative evidence establishing its liability for infringement should be excluded based on illusory discovery or evidentiary issues that Grande has manufactured.

**Infringing audio files Rightscorp obtained from Grande subscribers.**   Remarkably, Grande continues to insist that "Plaintiffs failed to properly disclose this evidence and liability theory in discovery[.]"  Objections at 28.  That assertion is frivolous.  As Plaintiffs previously explained, Plaintiffs:  referenced the audio files in their Complaint; discussed them at the oral argument on Defendants' motions to dismiss; produced them in discovery more than a year ago; and identified them in an interrogatory response.  Reply at 5 [Dkt. 209].[6]  Indeed, Grande's own experts referenced them in their reports, *see id.*, and the Magistrate Judge referenced them in his Report and Recommendation on the motions to dismiss, issued on February 28, 2018.  *See* R&R at 10-11 & fn.3 [Dkt. 72].  Grande's repeated and desperate attempts to exclude this evidence are understandable—it eviscerates Grande's defense—but there is no basis for the Court to do so.

**Plaintiffs' evidence matching the audio files Rightscorp obtained to Plaintiffs' copyrighted works.**   Grande also continues to insist that Plaintiffs did not identify the evidence matching the Rightscorp downloads to Plaintiffs' copyrighted works in their written discovery responses.  Objections at 24.  That assertion is simply wrong.  *See* Opp. / Cross-Mot. at 16 [Dkt. 172] (citing Ex. GG, May 9-10, 2018 correspondence between counsel (describing evidence)).  In

---

[6] Grande again wrongly insists that "Plaintiffs did not produce any evidence in discovery that these music files were *downloaded from Grande customers*."  Objections at 29 (emphasis in original).  But the files contain the Rightscorp identification numbers linking them to specific Grande subscribers whom Rightscorp detected as infringing through BitTorrent, and Rightscorp employee Greg Boswell testified as to the downloads' origin and nature, which was competent evidence.  Reply at 4 [Dkt. 209]; 1st Boswell Decl. ¶ 14 [Dkt. 173-79]; 2d Boswell Decl. ¶¶ 7-11 [Dkt. 209-1].

addition, this evidence is admissible, as Plaintiffs explained, Reply at 8-9 [Dkt. 209], and as the Magistrate Judge correctly found, Report at 7-8.

**Plaintiffs' ownership evidence.**  Grande again urges the Court to strike certain of Plaintiffs' contracts and other documents establishing their ownership of or exclusive control over some of the copyrighted recordings, on the theory that the documents should have been produced earlier.  The Magistrate Judge properly found that Grande failed to articulate any prejudice: "the least Grande must claim is that, if given more time, it could prove the documents are forgeries, are not the whole ownership picture, or something else that would contradict Plaintiffs' claim that they are the copyright owners of the specific works at issue. ***But Grande does not make any such claim; indeed, it doesn't even argue that Plaintiffs do not in fact own the copyrights in these songs.***"  Report at 19 (emphasis added).  In its Objections, Grande fails to rebut this conclusion or offer any explanation as to how it was prejudiced by the timing of the production of the evidence, in a case where no trial has been set (and, to be clear, Plaintiffs do not concede the materials were untimely given that, when the materials were produced, the parties were still in the midst of producing additional documents and taking depositions).  More importantly, Grande has possessed the evidence for months, but has not identified any inaccuracies or weaknesses in Plaintiffs' ownership proof.  *See* Objections at 33-35 (discussing issue but not identifying any such problems with Plaintiffs' ownership assertions).

## VI.   GRANDE'S REHASHED OBJECTIONS CONCERNING WILLFUL INFRINGEMENT, THE DISCOVERY RULE, AND DAMAGES SHOULD ALL BE OVERRULED.

Grande offers no new arguments or evidence to support its claims that the Court should reject the Report's recommendations on Grande's willfulness, the discovery rule, and Plaintiffs' disgorgement damages.

**Willfulness.**  The Report's finding that there is sufficient evidence to create a triable issue on willfulness is well supported by the evidence:  "(1) Grande was aware of its subscribers'

infringing behavior; (2) Grande decided not to cut off service to those subscribers; (3) Grande discussed this conscious decision in internal emails; and (4) Grande profited from continuing to provide service to those subscribers." Report at 15-16 (citing Opp. / Cross-Mot. at 27 [Dkt. 172] (cataloging evidence)). The Magistrate Judge was correct; Grande's Objections do not come close to showing otherwise.

**Discovery Rule.** Likewise, the Report properly found a triable issue as to the discovery rule's operation (which would permit Plaintiffs to recover Grande's profits in the time period preceding April 2014). The Magistrate Judge found that Grande misread its main authority, *TIG Ins. Co. v. Aon Re, Inc.*, 521 F.3d 351, 357 (5th Cir. 2008), where the Fifth Circuit expressly held that "the discovery rule need not be specifically pleaded in federal court." Report at 16. Grande's Objections do not rebut the Report's conclusion that this issue should go to the jury, as well.

**Disgorgement of Grande's Profits.** Grande argues that Plaintiffs cannot show that Grande's profits generated from infringing subscribers are "reasonably related" to the infringement. Objections at 32. This is the same argument, citing the same case law, that the Magistrate Judge already considered and rejected. The Report correctly found that Plaintiffs' "experts' reports explain the relationship between Grande's profits and the infringement of Plaintiffs' copyrights" and thus at a minimum, "genuine issues of material fact exist regarding whether the revenues were reasonably related to the alleged infringement." Report at 18.

## CONCLUSION

For the reasons stated herein, as well as those set forth in the Report and in Plaintiffs' summary judgment briefing, the Court should overrule Grande's Objections.[7]

---

[7] Plaintiffs respectfully submit that there is no need for the oral argument that Grande requests. Grande did not request oral argument when the motion for summary judgment was originally filed and, at this juncture, the parties' and the Court's resources are more productively spent preparing for trial. As the Court knows, this case originally was set for trial in January 2019. There remain only a handful of remaining discovery issues to be completed shortly, and the parties' *Daubert*

Dated: January 23, 2019.

Respectfully submitted,

By: */s/ Robert B. Gilmore*
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 23, 2019, all counsel of record who are deemed

to have consented to electronic service are being served with through the Court's ECF system.

*/s/ Daniel C. Bitting*
Daniel C. Bitting

---

motions are pending (except for one, concerning one of Grande's experts, who has yet to be deposed and thus the motion has yet to be filed).  This case therefore is ready to be set for trial.