**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No.  1:17-cv-00365-DAE-AWA |
| | ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) **ORAL ARGUMENT REQUESTED** |
| | ) |
| Defendant. | ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S**
**REPLY IN SUPPORT OF MOTION FOR EVIDENTIARY SANCTIONS**
**<u>BASED ON SPOLIATION OF RIGHTSCORP EVIDENCE</u>**

Plaintiffs do not dispute that the following categories of evidence have been destroyed:

- all data sent and received between Rightscorp and any Grande subscriber during Rightscorp's infringement detection process;

- all data Rightscorp obtained from BitTorrent trackers that allegedly identified a Grande IP addresses as participating in a filesharing swarm;

- all data exchanged between Rightscorp and Grande's subscribers during Rightscorp's attempts to download song files from those subscribers;

- all data reflecting Rightscorp's failed attempts to download files from Grande subscribers;

- source code change logs for the period before May 2016 and other records necessary to determine how the Rightscorp system operated at all times relevant to this lawsuit.

The foregoing evidence is critically relevant. Without this evidence, no party to this case is able to meaningfully question or substantiate the *allegations* presented in Rightscorp's infringement notices. Given the destruction of virtually all evidence underlying Rightscorp's notices, the only reasonable conclusion is that this evidence was destroyed with "fraudulent intent and a desire to suppress the truth." *Spencer v. BMW N. Am., LLC*, No. 5:14-cv-869-DAE, 2015 WL 11661765, at *3 (W.D. Tex. Dec. 22, 2015); *see also Allstate Tex. Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 686 (S.D. Tex. 2013) (finding fraudulent intent based on circumstantial evidence).

## ARGUMENT

I. The Evidence Rightscorp Collected about Grande's Subscribers was Spoiled

The notices that Rightscorp sent to Grande are merely allegations and, standing alone, do not constitute legitimate evidence of infringement. Like any other accusation, Rightscorp's notices must be substantiated with *actual evidence* of some wrongdoing. Rightscorp claims that it used software tools to collect data from Grande's subscribers and that its allegations of infringement are based on a detailed analysis of that data. Grande is seeking sanctions because

1

all of the underlying data that Rightscorp claims to have gathered from Grande's subscribers has been destroyed. Without that vital evidence, it is impossible for Grande or the factfinder to independently determine whether Rightscorp's naked allegations of infringement—embodied in the email notices it generated and sent to Grande—are legitimate.

Plaintiffs argue that the destruction of much of the data Rightscorp collected from Grande's subscribers—including the "have," "request," and "choke" data—is irrelevant because Rightscorp ignored that data when conducting its infringement analysis. *See* Response at 9. This argument should be rejected because, whether Rightscorp reviewed it or not, that data is critical to the underlying question of whether a given subscriber actually offered to share a copyrighted work. For example, the "choke" data exchanged as part of the BitTorrent protocol specifically indicates whether a user is willing to share files. Cohen Report, ¶¶ 65-68, 116 (ECF No. 233-1). Given Rightscorp's admission that it *ignored* that data when conducting its infringement analysis, it is probable that Rightscorp generated notices accusing Grande subscribers of sharing files *even though evidence from the subscriber clearly indicated he was not willing to share any files.*

The destruction of the bitfield data that Rightscorp collected from Grande's subscribers is even worse. Rightscorp admits that this data played a central role in its infringement analysis, and yet they deleted it. *Compare* Response, Ex. A, ¶ 6 *with* Response, Ex. C, ¶ 31. The destruction of this evidence makes it *impossible* for Grande or the factfinder to independently assess or reconstruct Rightscorp's infringement analyses. Cohen Report, ¶ 151 (ECF No. 233-1). Plaintiffs suggest that the destruction of this critical data is inconsequential because it is merely "cumulative" of the notices. *See* Response at 9. This assertion is flatly wrong. The notices Rightscorp generated do not contain bitfield information. Given the central importance of this

bitfield information to Rightscorp's allegations,[1] it is wrong to view this critical data as anything other than highly-relevant spoiled evidence.

In addition to the foregoing information, Grande is also seeking sanctions for the destruction of tracker data.[2] Rightscorp admits it used data from third-party BitTorrent trackers to identify potentially infringing subscribers, and that it destroyed that data. *See, e.g.,* Response at 8. Without that evidence, Grande has no way to determine whether its IP addresses actually appeared on any of the torrent lists that Rightscorp allegedly collected. Plaintiffs suggest that because "the Rightscorp system goes beyond tracker communications to undertake a 'handshake' with a BitTorrent user," the destruction of the tracker data is not prejudicial. *See* Response at 8. This argument rings hollow because, as discussed above, Rightscorp also spoiled all the data exchanged during that subsequent handshaking process.

Finally, Plaintiffs argue that much of the data that was spoiled was "never tracked by Rightscorp in the first place and thus could not have been spoliated." *See* Response at 2. This argument misstates the facts and the law. **First**, Plaintiffs' assertion that Rightscorp never "tracked" much of this data is wrong. Rightscorp specifically collected and analyzed the bitfield

---

[1] The destruction of these bitfield transmissions is also particularly important given the lack of consistent testimony regarding how Rightscorp used bitfield information to trigger the generation of notices. In this case, Rightscorp's lead software developer testified that *during only a two week period*, Rightscorp generated notices when the bitfield showed as little as a 10% complete payload. Cohen Report, ¶ 116 (ECF No. 233-1). Yet, in the prior BMG case, a different Rightscorp employee testified that the 10% bitfield rule was actually in effect *for nine months*. Robert Steele Trial Testimony, *BMG Rights Mgmt. (US) LLC v. Cox Comm'cns, Inc.*, No. 1:14-cv-1611 (E.D. Va. Dec. 7, 2015), at 684:23-685:14 (ECF No. 717). There is no way for Grande or anyone else to determine whose testimony is correct—or if either is correct—both because (1) the bitfield data packets were destroyed and (2) Rightscorp failed to retain adequate records of how its system operated at any given time.

[2] Plaintiffs are simply wrong to suggest that Grande argued that Rightscorp spoliated "torrent files" (*i.e.* song files). *See* Pls.' Mot. at 8. There is no such allegation in Grande's Motion, which Plaintiffs should know from the parties' numerous meet and confer sessions.

data that it received from individual BitTorrent clients and the tracker data it received from BitTorrent tracker servers. Grande's Mot. at 4-5; *see also* Response, Ex. A, ¶ 6. All of the remaining information it destroyed—including the "choke" data—was received and processed by Rightscorp. *See, e.g.,* Ex. A to Response at para. 6. **Second**, the law specifically required Rightscorp and Plaintiffs to retain this material evidence. *See* Rule 37(e); *Columbia Pictures Industries v. Bunnell*, No. 2:06-cv-01093, 2007 WL 2080419, at *14 (C.D. Cal. May 29, 2007) (finding that BitTorrent transmissions stored in RAM constitute electronically stored information under Rule 34) (citation omitted).

II. Evidence of Rightscorp's Download Process was Spoiled

Plaintiffs intend to rely on song files that Rightscorp allegedly downloaded from Grande's subscribers, to show that all of Rightscorp's notices accurately reflect instances of infringement. Plaintiffs should not be permitted to rely on the hard drive because the evidence from which the legitimacy of the hard drive data could be ascertained was spoiled.[3]

*First*, all of the BitTorrent data that was necessarily passed between Rightscorp and an individual Grande subscriber during a successful download has been destroyed. Without this evidence, there is no way for Grande to verify that any file on the hard drive actually came from its subscriber. *Second*, and more significantly, Rightscorp admitted that it only retained records of successful downloads, and destroyed all evidence of failed attempts to download allegedly infringing files. Boswell Depo. Tr. 196:12-198:12, July 3, 2015, *BMG Rights Mgmt. (US) LLC v. Cox Comm'cns, Inc.*, No. 1:14-cv-1611 (explaining that SampleIt2 "removes the entity that it's

---

[3] In their Response, Plaintiffs suggest that they are going to produce a spreadsheet that will "moot" this issue. *See* Response at 9. Plaintiffs have yet to do so, but in any event this evidence—which Plaintiffs never previously claimed existed—will not moot the issue. Irrespective of what information is ultimately included, it will not address the spoliation of records of failed download attempts, which Rightscorp has already admitted to destroying.

looking for," making the affected table smaller and smaller") (Ex. 1). Every failed download attempt is direct evidence that Rightscorp's corresponding notice was false—because the file at issue was not actually available—and Rightscorp intentionally destroyed all such records.

III. The Court Should Sanction Plaintiffs for the Spoliation of Source Code Evidence

Plaintiffs do not attempt to address the key undisputed fact regarding the spoliation of changes to Rightscorp's source code: there is not sufficient evidence for even their own expert to determine how the system operated at any point in time.[4]  *See* Grande's Mot. at 4-5. For example, there is no way to evaluate the critical question of which notices were sent with a 10% threshold bitfield value as a trigger—which would inevitably result in some number of false allegations. *See id.* at 5. Plaintiffs' claims about Rightscorp's "remarkably stable and efficacious software" are mere bluster, unsupported by any credible evidence.

Plaintiffs also cannot simply shift the blame for this spoliation to Rightscorp. *See* Pls.' Mot. at 4-6. RIAA engaged Rightscorp as a litigation consultant in 2016—<u>*after*</u> the *Cox* court found that Rightscorp had destroyed material evidence. *See* Order (ECF No. 247-2). Plaintiffs' cited authorities are therefore plainly distinguishable, because they do not address parties that attempt to use evidence with prior notice that it is tainted. *See also King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 377-78 (4th Cir. 2006) (sanctioning party for third party's spoliation of evidence that compromised the opposing party's ability to defend the case). There is no question that Plaintiffs knew that Rightscorp had, at all times, a duty to preserve all relevant evidence regarding its system, given that each Rightscorp notice threatened litigation. *See* Sample Notices (ECF No. 140-2); Grande's Mot. at 10. The Court should not permit Plaintiffs

---

[4] The "revision control system" Rightscorp implemented in 2016 does not change this fact, because it does not track the manner in which Rightscorp's system is manually executed.

5

to avoid responsibility for spoliation that they were aware of and that directly benefits their case.

## **CONCLUSION**

For the foregoing reasons, the Court should exclude from trial all evidence generated by Rightscorp's system or grant such other sanction the Court deems just and proper.

Dated:  January 31, 2019

                                            Respectfully submitted,

By: /s/  Richard L. Brophy
     Richard L. Brophy
     Zachary C. Howenstine
     Margaret R. Szewczyk
     Armstrong Teasdale LLP
     7700 Forsyth Blvd., Suite 1800
     St. Louis, Missouri 63105
     Telephone:  314.621.5070
     Fax:  314.621.5065
     rbrophy@armstrongteasdale.com
     zhowenstine@armstrongteasdale.com
     mszewczyk@armstrongteasdale.com


     J. Stephen Ravel
     Texas State Bar No. 16584975
     J.R. Johnson
     Texas State Bar No. 24070000
     Diana L. Nichols
     Texas State Bar No. 00784682
     Kelly Hart & Hallman LLP
     303 Colorado, Suite 2000
     Austin, Texas 78701
     Telephone: 512.495.6429
     Fax: 512.495.6401
     steve.ravel@kellyhart.com
     jr.johnson@kellyhart.com
     diana.nichols@kellyhart.com

                                                      Attorneys for Defendant GRANDE
COMMUNICATIONS NETWORKS
LLC