**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS NETWORKS LLC, | § § § § | |
| Defendant. | § § § | |

**PLAINTIFFS' MOTION TO EXCLUDE
PROPOSED EXPERT TESTIMONY OF JONATHAN KEMMERER**

# INTRODUCTION

Grande has proffered Jonathan Kemmerer as an expert to present a hodgepodge of unreliable and irrelevant opinions. Kemmerer purports to offer testimony on copyright ownership, online file-sharing, BitTorrent, and the legal and technical steps record companies could take to mitigate damages from piracy, yet he lacks experience and expertise in all of these subject matters; the Court should exclude his testimony.

First, in his initial report Kemmerer opines that Plaintiffs do not own the copyrights of some of the works in suit.[1] But after Kemmerer's initial report was submitted, Plaintiffs submitted declarations establishing their ownership of all of the works in suit. At his recent deposition, Kemmerer acknowledged he had not reviewed Plaintiffs' declarations, and he appeared to abandon his testimony about the ownership of Plaintiffs' copyrights.[2] Having abandoned this portion of his testimony, he cannot present it at trial. If Grande nonetheless tries to resurrect Kemmerer's testimony on the subject, the testimony should be excluded because the question of whether Plaintiffs own the copyrights is not a matter of expert opinion. Moreover, lacking any experience or expertise in copyright ownership, Kemmerer is wholly unqualified to testify on the subject.

Second, Kemmerer's estimate of Plaintiffs' lost profits is critically flawed because it fails to account for the viral nature of music piracy. Kemmerer's approach vastly understates the actual amount of copyright infringement and resultant harm to Plaintiffs, rendering his methodology hopelessly unreliable. It should be excluded.

Third, Kemmerer's opinion that Grande does not benefit from facilitating the infringement on its network is wholly divorced from logic. Kemmerer does not dispute that Grande continued providing known repeat infringing subscribers with internet service, and conceded that by doing

---

[1] Kemmerer's initial report ("Rpt.") is attached as Exhibit A. His supplemental report ("Suppl. Rpt.") is attached as Exhibit B.
[2] Ex. C, J. Kemmerer Dep. Tr. 144:18-25 ("Tr.") ("I don't express -- intend to express any opinion about the legal issue of ownership, period.").

so instead of terminating them, Grande was able to keep those subscribers' fees. This basic fact wholly contradicts Kemmerer's opinion, showing it to be the sort of impermissible *ipse dixit* testimony that courts routinely exclude.

Fourth, Kemmerer's opinion on statutory damages lacks any recognized methodology. Indeed, as explained below, his proposed amount of statutory damages is arbitrary; it is based on nothing more than a self-serving comment by an executive of Grande's management company (Patriot Media) that $500,000 would "capture the attention of senior management."

Lastly, Kemmerer is wholly unqualified to opine on Plaintiffs' efforts to mitigate damages. He lacks any relevant expertise on the steps Plaintiffs allegedly could or should have taken to address online piracy. Kemmerer simply parrots the arguments of Grande's lawyers. Grande should not be allowed to dress up its lawyer arguments as expert opinions.

## LEGAL STANDARD

"Expert testimony is admissible only if the proponent demonstrates that: (1) the expert is qualified; (2) the evidence is relevant to the case; and (3) the evidence is reliable." *Falcon v. State Farm Lloyds*, 2014 WL 2711849, at *5 (W.D. Tex. June 16, 2014) (Ezra, J.) (citing *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997)). An expert is qualified "by virtue of his knowledge, skill, experience, training, or education." *Id.* at *10. Testimony is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue," therefore "expert testimony which does not relate to any issue in the case" should be excluded. *Id.* at *7. An expert's testimony must be "based on sufficient facts, [] the product of reliable methods, and the witness [must have] applied the principles soundly." *Price v. Nat'l R.R. Passenger Corp.*, 2000 WL 33349816, at *3 (W.D. Tex. Dec. 29, 2000) (Austin, J.). Reliability means that the expert's testimony must be based on the "methods and procedures of science" rather than on "subjective belief or unsupported speculation." *Pharr v. Wille*, 2016 WL 4082740, at *7 (W.D. Tex. July 29, 2016) (Ezra, J.).

## ARGUMENT

### I. KEMMERER'S OPINIONS ON COPYRIGHT OWNERSHIP SHOULD BE EXCLUDED.

In his initial report, Kemmerer opines that Plaintiffs do not own copyrights to some of the 1,583 works in suit.[3] After Kemmerer submitted his initial report, Plaintiffs submitted declarations that establish their ownership of all of the copyrights at issue. Kemmerer then submitted his supplemental report, in which he assumed that Plaintiffs own all of the copyrights for the works in suit and re-ran his calculations accordingly.[4] At his deposition, Kemmerer admitted that he had not reviewed Plaintiffs' declarations[5] and confirmed that he does not intend to offer any opinions at trial regarding the ownership evidence provided after his initial report.[6] Indeed, he confirmed that he "do[es]n't express -- intend to express any opinion about the legal issue of ownership, period."[7]

Thus, it appears that Kemmerer has abandoned his testimony regarding Plaintiffs' copyrighted ownership. Accordingly, his testimony on this subject matter should be excluded. But, to the extent that Grande may seek to introduce any testimony from Kemmerer regarding Plaintiffs' copyright ownership, Kemmerer should not be allowed to present it. Grande is free to challenge the sufficiency or reliability of Plaintiffs' evidence as a factual matter or the legal conclusions flowing from that evidence (though Grande has challenged neither). Whether Plaintiffs own these copyrights, however, is not a matter of expert opinion. Moreover, even if Plaintiffs' copyright ownership were a proper matter of opinion, Kemmerer is wholly unqualified to offer any testimony on the subject.[8] He lacks experience and expertise in copyright ownership;

---

[3] Rpt. ¶¶ 35-37, JEK-5, App'x D.
[4] Tr. 150:25-151:13 ("The request [from counsel] was to assume, as I have in my supplemental report, that there are no issues, rerun my numbers assuming no issues as to ownership ….").
[5] Tr: 141:25-143:9.
[6] Tr. 144:1-25.
[7] Tr. 144:18-25.
[8] Tr. 40:23-42:5.

he has never had education or job responsibilities that included copyright registration or ownership,[9] and has never published on the topic of copyrights.[10] His opinion is not based on his experience or expertise as a CPA, and is no more reliable than if Grande had submitted the testimony from a passerby on the street. In short, he is unqualified to testify about whether Plaintiffs own the copyrights to the works in suit, and his testimony would not assist the trier of fact.

## II.  KEMMERER'S ANALYSIS OF PLAINTIFFS' LOST PROFITS IS UNRELIABLE AND NOT A RELEVANT DAMAGES MEASURE.

Kemmerer's estimate of Plaintiffs' lost profits is fatally flawed because it ignores the viral nature of peer-to-peer piracy through BitTorrent. Kemmerer has no experience in the music industry or with online file sharing.[11] That lack of expertise infects his unsound lost profits opinions. Kemmerer's calculations are based on the infringements that Rightscorp happened to detect, which he then multiplies by the amount of profit that Kemmerer contends Plaintiffs receive from purchases on iTunes or streaming services.[12] But the BitTorrent infringement that Rightscorp detects is just the tip of the iceberg. The purpose of BitTorrent is to enable users to share files, including Plaintiffs' copyrighted works, with many other BitTorrent users.[13] Once shared, those copyrighted works can then be re-shared many times over with countless other BitTorrent users. Rightscorp's "infringement finder" detects when Grande users, who are making available Plaintiffs' copyrighted work using BitTorrent, share their work with Rightscorp.[14] But Rightscorp cannot be in all places at all times. Neither Rightscorp nor any other detection service can catalog all of the illegal file-sharing that Grande subscribers engage in with other BitTorrent users; nor can

---

[9] Tr. 43:15-21.
[10] Tr. 43:11-14, 43:22-25.
[11] Tr. 21:1-6, 29:5-11, 34:15-18, 71:9-20.
[12] Suppl. Rpt. ¶¶ 9-11, JEK-18B; Rpt. ¶¶ 53-55, 58, JEK-10A.
[13] Ex. D, Expert Report of Barbara Frederiksen-Cross Rpt. ("F-C Rpt.") ¶ 32. *See also* Expert Report of Geoff Cohen ¶¶ 39-40 [Dkt. 232-1].
[14] F-C Rpt. ¶¶ 56-59.

Rightscorp detect the file-sharing that other recipients engage in *after* receiving a work from a Grande subscriber whose sharing Rightscorp does detect.[15]

For those reasons, Plaintiffs' expert Dr. William Lehr, a Ph.D. economist at MIT, explains that the Rightscorp infringement data alone is too limited in scope to support a reasonable calculation of Plaintiffs' lost profits from the entirety of infringement occurring over Grande's network.[16] But Kemmerer fails to make any effort to account for the viral nature of peer-to-peer file-sharing. He simply uses, without adjustment or recognition, the data from the first level of infringement, without consideration of the massive piracy that occurs afterwards. That error renders his methodology fundamentally unreliable.

Kemmerer rationalizes the limitations of his lost profits calculations with the simplistic view that he can only perform calculations with the data available.[17] But that unsupported approach violates well established law. The Fifth Circuit and district courts within it have held that opinions based on partial data or unreliable assumptions must be excluded. *See, e.g.*, *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of expert opinion based on insufficient information and false assumption); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 807 (N.D. Tex. 2018) (excluding damages estimate where assumptions "are unsupported by or contradict the evidence at hand"), *aff'd*, 2018 WL 2064126 (N.D. Tex. May 2, 2018); *Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, 516 F. Supp. 2d 802, 817 (S.D. Tex. 2007) ("Incorrect assumptions critical to an expert's opinion make that opinion unreliable."). An expert cannot simply do what is possible with the data that happens to be

---

[15] Indeed, the evidence conclusively establishes that other infringement occurs over Grande's network beyond what Rightscorp detects. Grande maintains an infringement database with notices received from multiple other third-party services, not just Rightscorp. Ex. E, Expert Report of Dr. William Lehr ("Lehr Rpt.") ¶¶ 41-42. Remarkably, Kemmerer was not even aware of that additional data. Tr. 182:7-183:10, 199:23-200:3, 297:3-19.
[16] Lehr Rpt. ¶ 26.
[17] Tr. 175:23-176:7, 178:17-179:5.

5

available and present that opinion to a jury as reliable testimony. *See U.S. ex rel. Barron v. Deloitte & Touche, LLP*, 2008 WL 7136869, at *4 (W.D. Tex. Sept. 26, 2008) (excluding as unreliable testimony of damages expert who assumed, without any basis, that missing data confirmed a self-interested result); *see also* Fed. R. Evid. 702 (expert testimony must be "based upon sufficient facts or data"); *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007) ("[T]he existence of sufficient facts and a reliable methodology is in all instances mandatory.").

### III.  KEMMERER'S OPINION THAT GRANDE DID NOT GAIN FROM THE INFRINGEMENT IS ILLOGICAL AND UNRELIABLE.

Kemmerer asserts that Grande has not gained at all from the copyright infringement occurring on its network, and that Grande was actually harmed by the infringement. Rpt. ¶¶ 59-65. But Kemmerer fails to account for the benefits Grande received from facilitating its known infringing subscribers' unlawful conduct. As this Court has already held, Grande made an affirmative decision not to terminate any infringing subscribers from October 2010 to June 2017,[18] instead continuing to provide them with internet service and profiting from their subscriber fees in return. Kemmerer should not be permitted to testify, illogically, that Grande somehow made that decision to harm itself, especially when he acknowledges that companies cease financially harmful activity.[19] Kemmerer himself conceded that the premise of Plaintiffs' claim that Grande profited from the infringement—Grande continued reaping subscriber fees from known infringing subscribers that it would not have received had it terminated those customers—was correct:

> Q. By keeping infringing subscribers as customers, Grande kept those subscribers' service fees, right? … Q. Well, let's assume that Rightscorp does accurately detect and notify copyright infringement. A. As I have done. Q. Right. In that instance, by not terminating those subscribers, Grande was able to keep those subscribers' fees that they paid Grande for the Internet service and whatever services they got? A. And maybe telephone service, maybe television service.[20]

---

[18] R&R on DMCA Safe Harbor M.S.J. at 12 [Dkt. 241].
[19] Tr. 283:16-284:14.
[20] Tr. 206:21-207:15.

6

Given that Kemmerer's opinion contradicts the very facts that he himself has admitted, not to mention basic logic that he also has admitted, his opinion that Grande has not gained from the infringement it facilitated is impermissible *ipse dixit* testimony that must be excluded. "'[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered.'" *Jacked Up, LLC*, 291 F. Supp. 3d at 807 (citing *General Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997)). The Court should exclude Kemmerer's opinions on this topic in their entirety.

### IV. KEMMERER'S STATUTORY DAMAGES OPINIONS ARE FUNDAMENTALLY FLAWED.

Kemmerer's opinions on the statutory damages factors, and the overall amount of statutory damages, should also be excluded. Kemmerer identifies seven factors (which he calls the "*Coach* factors,") that he claims courts weigh when assessing statutory damages in copyright cases.[21] He opines on each one of those factors, but then effectively ignores them and instead arrives at a value of $417,680 in statutory damages based on nothing more than the following two facts: (1) this amount is precisely and arbitrarily double one of his unreliable lost profits estimates, and (2) an executive of Grande's parent company **told him** $500,000 would "have a meaningful impact." Rpt. ¶¶ 74-75.[22] This "analysis" is fundamentally unsound and inadmissible.

First, Kemmerer usurps the jury's role by sponsoring an amount of statutory damages. Plaintiffs' "right to a jury trial includes the right to have a jury determine the amount of statutory damages, if any, awarded to the copyright owner." *Feltner v. Columbia Pictures Television, Inc.*,

---

[21] Rpt. ¶ 74: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant."
[22] Tr. 227:18-228:11 ("I think the 500,000 I would characterize **not as my opinion**, but my reporting of the results of a discussion with Mr. Jongeneel.")

7

523 U.S. 340, 353 (1998). The Court will instruct the jury on statutory damages, and the jury will weigh those factors in assessing the award. An expert is not permitted to weigh those factors for the jury to sponsor a statutory damages figure. *See Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013) (excluding expert's testimony on amount of statutory damages in copyright case).

Second, Kemmerer has no expertise, experience, or personal knowledge to support his assessment of the seven *Coach* factors. He has no experience calculating or opining on statutory damages,[23] and does not know if the factors he discusses are correct or required.[24] Indeed, he concedes that he lacks the experience and a reliable methodology to testify about several of the factors, including whether an award of damages or injunctive relief will deter Grande or others,[25] whether Grande cooperated in discovery,[26] or whether Grande acted willfully.[27]

Third, to arrive at his proposed amount of statutory damages ($417,680), Kemmerer simply doubles his lost profits calculation. Rpt. ¶ 75. He does not explain how the "doubling factor" is the product of his assessment of the *Coach* factors. Nor does he point to any methodology to justify this doubling. To the contrary, Kemmerer **admits he made up the doubling factor**: "Q. The reason you came up with the doubling factor for your first statutory damages calculation was to get to a number around the 500,000 that Mr. Jongeneel said, right? A. ***That's correct***."[28] Worse, that $500,000 target is merely the self-interested say-so of one executive at Grande's parent company

---

[23] Tr. 60:12-23; 209:20-210:11.
[24] Tr. 208:5-25 ("I'm not saying that these [factors] are exclusive or required."); *id.* at 209:18 ("[T]his is a nice list of things to consider….").
[25] Tr. 218:12-219:15 ("Q. And do you have some methodology that you can point to that allows you to reliably opine on X amount of damages is going to deter other defendants engaging in similar conduct. A. ***I would say no***.").
[26] Tr. 226:9-226:21 (admitting he has no experience, expertise, or personal knowledge to support this opinion, and was unaware of key discovery events, such as Plaintiffs' two motions to compel.)
[27] Tr. 222:21-226:7 (conceding that he has not reviewed all of the relevant evidence—including internal emails advocating deleting evidence).
[28] Tr. 247:13-17, 246:17-22; *id.* at 236:6-237:14 ("…I just chose to use a factor of 2….").

8

regarding what amount would "capture the attention of senior management"—not the product of any independent, reliable analysis.[29] This arbitrary and foreordained result is the opposite of reliable, admissible expert analysis. *See Limelight Networks, Inc. v. XO Commc'ns, LLC*, 2018 WL 678245, at *9 (E.D. Va. Feb. 2, 2018) (excluding damages testimony where expert "provides the Court with nothing more than the ipse dixit of a non-expert"); *Gumwood HP Shopping Partners, L.P. v. Simon Prop. Grp., Inc.*, 221 F. Supp. 3d 1033, 1039 (N.D. Ind. 2016) (holding expert "relied on *ipse dixit* to … produce[] whatever amount of damages were necessary to reach his figures"). Kemmerer's statutory damages opinions should be excluded in their entirety.

## V. KEMMERER'S OPINIONS ON MITIGATION OF DAMAGES SHOULD BE EXCLUDED.

The Court should exclude Kemmerer's testimony about Plaintiffs' efforts to protect their copyrights and thereby mitigate damages. Kemmerer muses about alternative legal courses of action Plaintiffs allegedly "could pursue" to protect their copyrights, instead of bringing this lawsuit against Grande.[30] For example, he asserts that Plaintiffs should not have sued Grande and instead should have pursued different legal strategies, including suing more individual copyright infringers, suing BitTorrent, using more cumbersome and costly encryption technology, and using a different third-party detection service, instead of Rightscorp.[31] But Kemmerer—an accountant— is unqualified to present this testimony. He has no relevant education, training, knowledge, or expertise to support these opinions about Plaintiffs' legal and business strategies.[32] He has no experience working for the recorded music industry.[33] He is not an expert on digital encryption or

---

[29] Tr. 228:12-20 ("Well, the questions that I asked him were along the lines of … what would be an amount that would be large enough in whatever context to capture the attention of senior management …."); *id.* at 227:18-228:11 ("I think the 500,000 I would characterize **not as my opinion**, but my reporting of the results of a discussion with Mr. Jongeneel.").
[30] Rpt. ¶ 56.
[31] Supp. Rpt. ¶¶ 22-24.
[32] Tr. 46:24-47:4.
[33] Tr. 28:4-12.

9

steps that recording companies take to reduce online copyright infringement.[34] He has never before worked on a case about sharing music online, BitTorrent, or the copyrights of either recordings or musical compositions.[35]

In addition, he has no knowledge of or expertise regarding the viral nature of digital piracy or online file sharing,[36] has only a general high-level understanding of how BitTorrent even works,[37] cites no academic research regarding online copyright infringement, and has no education or training, and cites no research, regarding the encryption technology he asserts Plaintiffs should have used.[38] Finally, he has no experience or expertise in third-party online detection systems, like Rightscorp (the service whose data he criticizes) or MarkMonitor and MUSO (the services he asserts Plaintiffs should have used).[39]

In sum, Kemmerer's damages mitigation opinions are not based on any relevant expertise—because he has none. *U.S. ex rel. Ruscher v. Omnicare, Inc.*, 2015 WL 5178074, at *11 (S.D. Tex. Sept. 3, 2015) (excluding damages expert testimony on topics for which he had no expertise). Indeed, these "opinions" merely narrate evidence and parrot arguments from Grande's counsel. *See Robroy Indus.-Texas, LLC v. Thomas & Betts Corp.*, 2017 WL 1319553, at *9-*10 (E.D. Tex. Apr. 10, 2017) (excluding expert's summary of evidence outside of her expertise); *see also In re C. R. Bard, Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 2018 WL 514798, at *2 (S.D.W. Va. Jan. 23, 2018) (excluding expert's "opinions to the extent that they simply make arguments that [a party's] lawyers may make").

## CONCLUSION

For the foregoing reasons, Kemmerer's proposed testimony should be excluded.

---

[34] Tr. 247:23-248:1.
[35] Tr. 29:5-11, 34:11-19, 35:3-13.
[36] Tr. 72:15-21
[37] Tr. 70:14-71:17.
[38] Rpt. App'x A, C; Suppl. Rpt. App'x A, C.
[39] *Id.*

Dated: March 6, 2018                               Respectfully submitted,

By: */s/   Robert B. Gilmore*
Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

11

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 6, 2019 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting
