**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) )   No. 1:17-cv-00365-DAE-AWA ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S
RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE
<u>PROPOSED EXPERT TESTIMONY OF JONATHAN KEMMERER</u>**

Jonathan Kemmerer, CPA and founding partner of Applied Economics Consulting Group, Inc., has served as a damages expert in numerous intellectual property matters, including copyright infringement cases. *See* Kemmerer Report, ¶¶ 4-5, App'x A & B (ECF No. 266-1). To Grande's knowledge, no court has ever excluded Mr. Kemmerer's testimony under Rule 702 or any state-law equivalent.

At trial, Mr. Kemmerer intends to offer textbook expert damages testimony for a copyright infringement case, including analysis and opinions regarding Grande's profits from the alleged infringements, Plaintiffs' lost revenues from the alleged infringements, the value of the asserted copyrights, and mitigation of damages. *See generally* Kemmerer Opening Report (ECF No. 266-1); Kemmerer Supp. Report (ECF No. 266-2). These opinions are indisputably relevant, supported by the evidence, and within the scope of Mr. Kemmerer's qualifications and expertise.

Indeed, Mr. Kemmerer's opinions directly address the relevant damages issues in this case: Plaintiffs' alternative requests for disgorgement of Grande's profits under 17 U.S.C. § 504(b) or statutory damages under § 504(c). *See also Coach, Inc. v. Brightside Boutique*, No. 1:11-cv-00020-LY, 2012 WL 32941, at *5 (W.D. Tex. Jan. 6, 2012) (identifying factors considered in statutory damages inquiry). His opinions therefore stand in stark contrast to those of Plaintiffs' proposed "damages" expert, who admits that he is not even opining on damages. *See generally* Grande's Mot. to Exclude Proposed Testimony of Lehr (ECF No. 228).

For these reasons, as explained in detail below, the Court should deny Plaintiffs' motion to limit Mr. Kemmerer's expert testimony.[1]

---

[1] Plaintiffs offer no basis, legitimate or otherwise, for excluding Mr. Kemmerer's testimony in its entirety. Plaintiffs do not even attempt to address many aspects of Mr. Kemmerer's proposed testimony, such as his rebuttal to the proposed testimony of Plaintiffs' experts.

**I. Mr. Kemmerer's opinions regarding Plaintiffs' lost revenues are relevant and admissible.**

Plaintiffs do not dispute that their lost revenues are relevant to the damages issues in this case. Courts consistently recognize that a plaintiff's lost revenues (or, put another way, a plaintiff's actual damages) are a relevant factor when assessing statutory damages. *See, e.g.*, *Coach*, 2012 WL 32941, at *5. Additionally, to the extent Plaintiffs may seek to recover Grande's profits attributable to the alleged infringement, Plaintiffs' corresponding lost revenues are a relevant "check" on the accuracy and reasonableness of any such assessment.[2] *See* Kemmerer Dep. Tr. 158:2-160:20 (Ex. 1).

To evaluate Plaintiffs' alleged lost revenues, Mr. Kemmerer performed straightforward analysis based on the payments Plaintiffs receive when a consumer purchases one of their songs from a digital download service (*e.g.*, iTunes) or listens to a song through a streaming service (*e.g.*, Spotify).[3] In the digital download context, Mr. Kemmerer expressly assumes that each Rightscorp notice represents one lost download, and from that calculates Plaintiffs' lost revenues. *See, e.g.*, Kemmerer Supp. Report, Ex. JEK-16-SUPP & n.(g) (ECF No. 266-2). Mr. Kemmerer offers several different models for the number of Rightscorp notices at issue, both to limit the notices to the copyrighted works at issue in this case and to reflect different potential conclusions regarding how many notices might trigger secondary liability. *See id.* In the streaming context, Mr. Kemmerer likewise offers several different models, based on different evidence and assumptions regarding the potential number of lost streams associated with each

---

[2] For example, if Plaintiffs were to contend that Grande obtained $1 million in profits from the alleged infringements, then evidence that the same alleged infringements resulted in $1,000 in lost revenues for Plaintiffs would be relevant to the accuracy and reasonableness of that $1 million figure. *See* Kemmerer Dep. Tr. 159:22-160:5 (Ex. 1).

[3] Mr. Kemmerer analyzes Plaintiffs' alleged lost profits in a similar fashion. In the interest of simplicity, this brief simply refers to his opinions regarding lost revenues, since Plaintiffs' arguments do not depend on any distinction between lost revenues and lost profits.

Rightscorp notice. *See id.* at Ex. JEK-15-SUPP.

Conceding that Plaintiffs' lost revenues are relevant, Plaintiffs nevertheless contend that because *their* expert claims he lacks sufficient information to assess Plaintiffs' lost revenues, the Court should not permit Mr. Kemmerer to opine on this topic. Pls.' Mot. at 5 (ECF No. 265). This is a specious argument. Mr. Kemmerer expressly concludes that Plaintiffs' lost profits and revenues are reasonably ascertainable. Kemmerer Report, ¶¶ 46-55 (ECF No. 266-1). The fact that the parties' experts disagree is not grounds for excluding Mr. Kemmerer's opinions.

Plaintiffs lack any basis for arguing that Mr. Kemmerer, in assuming that each Rightscorp notice represents one lost download sale, improperly ignored the "viral nature" of file sharing.[4] *See* Kemmerer Supp. Report, Ex. JEK-16-SUPP & n.(g) (ECF No. 266-2). As Plaintiffs acknowledge, the relevant issue is Plaintiffs' lost profits or revenues from "infringement *occurring over Grande's network*." Pls.' Mot. at 5 (emphasis added). Any subsequent instances of copyright infringement, occurring over the networks of other internet service providers, are irrelevant to Plaintiffs' claims against Grande.

In addition to the lack of relevance, Plaintiffs have come forward with no evidence of any "downstream" infringement of their copyrighted works, and so they cannot credibly criticize Mr. Kemmerer for not considering evidence that does not exist.[5] In other words, Plaintiffs identify no evidence that calls into question the accuracy of Mr. Kemmerer's assumption, let alone evidence actually establishing that it is inaccurate. In fact, because Rightscorp claims to send

---

[4] This argument is irrelevant to Mr. Kemmerer's opinions regarding lost revenues from streaming, which are not based on this assumption. Kemmerer Supp. Report, Ex. JEK-15-SUPP (ECF No. 266-2).
[5] Plaintiffs claim that it is "remarkable" that Mr. Kemmerer did not consider Grande's receipt of copyright infringement notices from parties other than Rightscorp, relating to copyrights not at issue in this case. Pls.' Mot. at 5 n.15. There is nothing remarkable about a damages expert declining to consider irrelevant evidence.

3

one notice for each day a particular IP address makes a particular music file available through BitTorrent—without any ability to detect whether a third party actually downloaded that file[6]—Mr. Kemmerer's assumption that each and every notice represents a potential lost sale is favorable to Plaintiffs. This is merely a topic for cross-examination. *See Garcia v. Wheelabrator Grp., Inc.*, No. 3:10-cv-1253, 2011 WL 13232701, at *2 (N.D. Tex. Nov. 3, 2011) ("Wheelabrator's arguments that Dr. Rasty's assumptions and conclusions are allegedly based on unsubstantiated data and incomplete facts go to the weight afforded Dr. Rasty's opinions and are more appropriately left for cross-examination during trial."); *Puga v. RCX Sols., Inc.*, 914 F.3d 976, 985 (5th Cir. 2019) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility.").

In sum, the parties agree that Plaintiffs' lost revenues are a relevant issue, and Plaintiffs cite no evidence that refutes Mr. Kemmerer's assumptions and conclusions regarding the potential volume of Plaintiffs' lost sales from digital downloads. Plaintiffs offer no other criticism of Mr. Kemmerer's methodology for analyzing Plaintiffs' lost revenues. The Court should therefore deny Plaintiffs' request to exclude this testimony.

**II.     The evidence plainly supports Mr. Kemmerer's analysis of Grande's gains from the alleged infringement.**

Plaintiffs argue that Mr. Kemmerer's opinion that Grande did not profit from the alleged copyright infringement at issue should be excluded as "illogical." According to Plaintiffs, Grande must have profited, because otherwise, Grande would have terminated the account of every subscriber Rightscorp accused of copyright infringement. Pls.' Mot. at 6-7.

Plaintiffs' argument does not withstand the slightest scrutiny. By Plaintiffs' reasoning, every corporate action or omission must be profitable because otherwise, the company would do

---

[6] *See* Frederiksen-Cross Report, ¶¶ 46, 72 (ECF No. 141-1).

something different.  There are numerous reasons, not related to any profit motive, why Grande could choose to continue providing internet access to a customer accused of copyright infringement, including the undisputed fact that Grande has no way of verifying the accuracy of Rightscorp's unsupported allegations.  *See, e.g.*, Boswell Dep. Tr. 1332:16-21 (ECF No. 130-2).

Even more important, Plaintiffs identify no evidence that refutes Mr. Kemmerer's opinion.  The mere fact that Grande continued to provide internet access to accused infringers does not show—much less conclusively establish—that Grande *profited* from doing so.

In contrast, Mr. Kemmerer relies on a variety of evidence to support his opinion that copyright infringement only results in costs to Grande.  Kemmerer Report, ¶¶ 62-65 (ECF No. 266-1).  This includes Rightscorp's assessment that "[i]t is costing Grande a lot of capital expenditure to service all of the infringement occurring on [Grande's] network," which has the effect of slowing all traffic.  *Id.* at ¶¶ 64-65.  To this point, Mr. Kemmerer cites evidence that Grande spends millions of dollars annually to upgrade network capacity.  *Id.* at ¶ 64.

Mr. Kemmerer also accurately observes that there is no evidence that the ability to commit copyright infringement motivated *any person* to use, or continue to use, Grande's internet service.  *Id.* at ¶ 60.  Additionally, Mr. Kemmerer notes that there is no causal connection between direct copyright infringement and Grande's revenues (or profits).  *Id.* at ¶ 61.  Whether a subscriber commits zero, one, or 1,000 acts of infringement, the subscriber still pays the same amount of money to Grande for internet access.  *See id.*

Taken together, this evidence plainly supports Mr. Kemmerer's opinion that Grande has not profited from the alleged copyright infringement at issue in this case.  To the extent Plaintiffs wish to undermine that opinion, they will have every opportunity to cross-examine Mr. Kemmerer at trial.  *See, e.g.*, *Perez v. City of Austin*, No. 1:07-cv-44-AWA, 2008 WL 1990670,

at *5 (W.D. Tex. May 5, 2008) (declining to exclude opinions that were "not indisputably wrong" because "the factual basis of an expert's opinion goes to the credibility of the testimony not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination") (citation omitted).

### III. Mr. Kemmerer's opinions on statutory damages are rational, supported by the evidence, and consistent with the law.

Plaintiffs fail to identify any legitimate grounds for excluding Mr. Kemmerer's testimony on the factors relevant to the statutory damages analysis or on the ultimate issue of the appropriate amount of a per-work statutory damages award.

First, Plaintiffs are wrong to suggest that a damages expert may not opine on the amount of statutory damages the jury should award. As Plaintiffs recognize, the amount of statutory damages is a question for the jury, but "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a). In this respect, an opinion about the appropriate amount of statutory damages is no different from an opinion about actual damages. Both are ultimate issues for the jury, and pursuant to Rule 704(a), the jury may consider expert testimony on ultimate issues, weigh the testimony based on credibility and the underlying evidence relied upon, and reach its own conclusion based upon the Court's instructions.

Plaintiffs offer no authority holding that expert testimony on the appropriate amount of statutory damages is *per se* inadmissible. In the sole case Plaintiffs cite on this point, the expert's testimony was excluded because the expert sought to instruct the jury on the law of statutory damages and improperly opined on willfulness. *See Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. 4:12-cv-2293, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013). Here, in contrast, Mr. Kemmerer simply frames his testimony with the factors identified in case law as relevant to statutory damages, and has expressly declined to offer any opinion regarding

6

willfulness.  Kemmerer Report, ¶¶ 31, 74 (factor five) (ECF No. 266-1).

   Second, Plaintiffs lack any basis for claiming that Mr. Kemmerer is unqualified to testify regarding factors relevant to the statutory damages analysis.[7]  Mr. Kemmerer is a CPA and has worked on over 100 intellectual property matters, including copyright infringement cases.  *See id.* at ¶¶ 4-5, App'x A & B.  Mr. Kemmerer's opinions focus on the economic damages issues relevant to the statutory damages analysis: Plaintiffs' lost revenues and Grande's gains from the alleged infringements.  *See, e.g., id.* at ¶¶ 46-55, 59-65, 71-77; Kemmerer Supp. Report, ¶¶ 8-14 (ECF No. 266-2).  Mr. Kemmerer also analyzes and opines on the evidence (or lack thereof) regarding the value of the asserted copyrights and Plaintiffs' efforts to mitigate their damages. *See, e.g.*, Kemmerer Report, ¶ 56; Kemmerer Supp. Report, ¶¶ 6-7, 17-25.  Finally, Mr. Kemmerer addresses the potential deterrent effect of a statutory damages award on the industry at large and on Grande specifically, relying on evidence regarding Grande's small market share and the impact that a damages award would have on Grande.  Kemmerer Report, ¶ 74 (factors four and seven).  Mr. Kemmerer clearly has the requisite qualifications and experience to opine on these issues.

   Third, Plaintiffs mischaracterize Mr. Kemmerer's opinion in arguing that his statutory damages opinion is based on a "made up . . . doubling factor."  Pls.' Mot. at 8.  Taking into consideration all of the evidence and analysis set forth above, particularly his analysis of Plaintiffs' lost revenues, Mr. Kemmerer opines that an appropriate statutory damages award

---

[7] This Court has identified the following factors: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperate in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Coach*, 2012 WL 32941, at *5.

7

would be $1,100 per work.  Kemmerer Report, ¶¶ 74-75, Ex. JEK-3 (ECF No. 266-1). Assuming liability for all asserted copyrights, this results in total damages ranging from approximately $900,000 to $1.7 million.[8]  Mr. Kemmerer supported this analysis with evidence that damages of at least $500,000 would be necessary to accomplish a deterrent effect,[9] corroborated by evidence regarding the relationship between this figure and Grande's budget for capital expenditures.  *See id.*

Thus, in view of Plaintiffs' negligible lost revenues, Mr. Kemmerer determined that it was necessary to incorporate an upward adjustment to achieve a reasonable and supportable statutory damages amount.  *See* Kemmerer Dep. Tr. 234:8-238:4 (Ex. 1); *see also* Kemmerer Report, Ex. JEK-3.  In other words, Mr. Kemmerer did not "make up" a doubling factor—instead, he derived this adjustment from his calculations and analysis regarding Plaintiffs' lost revenues and the need to arrive at an ultimate damages award with a deterrent effect.  *See id.*

Plaintiffs are therefore wrong to suggest that Mr. Kemmerer's opinions are not based on any underlying methodology.  Mr. Kemmerer's methodology is transparent, reliable, and supported by evidence, and any quibbles Plaintiffs may have about his opinions are therefore subjects for cross-examination.  *See Puga*, 914 F.3d at 985 ("Particularly in a jury trial setting, the court's role under Rule 702 is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role—the court's role is limited to ensuring that the evidence in dispute is

---

[8] The variance results from the parties' dispute regarding whether Plaintiffs may obtain a statutory damages award for each copyright registration at issue, or for each copyrighted song.
[9] Plaintiffs are wrong to characterize this evidence as "the self-interested say-so of one executive."  Mr. Kemmerer broadly solicited information about what sort of expenditure would be necessary to materially affect Grande's business; he did not focus on a damages award. Kemmerer Dep. Tr. 228:23-229:20 (Ex. 1).  In any event, any alleged infirmities in the evidence Mr. Kemmerer relied on merely go to the weight of his testimony, not its admissibility. *Perez*, 2008 WL 1990670, at *5.

at least sufficiently reliable and relevant to the issue so that is appropriate for the jury's consideration.").

### IV. Mr. Kemmerer, an expert in economic damages, is qualified to testify about mitigation of damages.

Plaintiffs do not dispute that mitigation of damages is a relevant issue in this case. Rather, Plaintiffs only argue that Mr. Kemmerer is not *qualified* to testify about Plaintiffs' failure to mitigate their damages, because he has not worked in the music industry and is not a technical expert on encryption or online file sharing.  *See* Pls.' Mot. at 9-10.

The mitigation issues in this case are straightforward and require no technical expertise or music industry experience.  Mr. Kemmerer simply observes that although the recording industry has considered BitTorrent file sharing to be a problem for at least 15 years, Plaintiffs have not pursued litigation against such direct infringers of their copyrights since approximately 2010. *See* Kemmerer Supp. Report, ¶ 18-20 (ECF No. 266-2).  Relatedly, Mr. Kemmerer observes that Plaintiffs have never taken action against BitTorrent, Inc., which developed the BitTorrent protocol, or any other supplier of BitTorrent software.  *Id.* at ¶ 21.  Mr. Kemmerer does not need to be steeped in the music business to opine that these facts reflect a failure to mitigate damages.

Mr. Kemmerer likewise needs no technical expertise to note that Plaintiffs do not protect their music with digital rights management ("DRM") technology.  *Id.* at ¶ 22.  Plaintiffs have testified that they previously used DRM to prevent consumers from sharing music purchased online (*e.g.*, through iTunes), and then they stopped in or around 2010, for reasons that have nothing to do with the cost or effectiveness of DRM.  *See id.*  No technical expertise is necessary for Mr. Kemmerer to observe that this fact also reflects a failure to mitigate damages.[10]

---

[10] For the same reasons, Mr. Kemmerer needs no technical expertise to note that Rightscorp provided inaccurate and incomplete data to Grande, and that other third-party detection

9

As described above, Mr. Kemmerer is an experienced and well-qualified expert on economic damages in intellectual property matters, and assessing efforts to mitigate damages is a routine component of such expert analysis. Plaintiffs lack any basis for suggesting that music industry or technical experience is required for this testimony, and the Court should therefore deny their request to exclude Mr. Kemmerer's testimony on mitigation of damages. *See, e.g.*, *Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.*, No. 4:14-cv-211, 2017 WL 8233735, at *2 (S.D. Tex. July 10, 2017) (expert's lack of experience in the subject matter field of the plaintiffs' business did not mean she was unqualified to opine on the plaintiffs' damages).

### V. Plaintiffs' challenge to Mr. Kemmerer's copyright ownership analysis is moot.

Mr. Kemmerer based his analysis of copyright ownership on the state of the evidence at the time of his opening report, at which time Plaintiffs had not provided any ownership evidence for a significant portion of the copyrights at issue in this case. The Court has since determined that Plaintiffs may rely on ownership evidence produced after Mr. Kemmerer served his opening report. Accordingly, Mr. Kemmerer's analysis of this subject, and Plaintiffs' challenge to Mr. Kemmerer's analysis, are moot. *See* Pls. Mot. at 3-4. Mr. Kemmerer does not intend to offer any analysis or opinions regarding chain of title to the copyrights at issue in this case.

### CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Exclude Proposed Expert Testimony of Jonathan Kemmerer (ECF No. 265).

---

companies Plaintiffs work with have higher standards. Kemmerer Supp. Report, ¶ 23 (ECF No. 266-2). Contrary to Plaintiffs' suggestion, Mr. Kemmerer is not offering any opinion that Plaintiffs should have used a third-party service other than Rightscorp. *See* Pls.' Mot. at 10.

10

Dated:  March 20, 2019

        Respectfully submitted,

By: /s/ Richard L. Brophy
    Richard L. Brophy
    Zachary C. Howenstine
    Margaret R. Szewczyk
    Armstrong Teasdale LLP
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    Telephone:  314.621.5070
    Fax:  314.621.5065
    rbrophy@armstrongteasdale.com
    zhowenstine@armstrongteasdale.com
    mszewczyk@armstrongteasdale.com

    J. Stephen Ravel
    Texas State Bar No. 16584975
    J.R. Johnson
    Texas State Bar No. 24070000
    Diana L. Nichols
    Texas State Bar No. 00784682
    Kelly Hart & Hallman LLP
    303 Colorado, Suite 2000
    Austin, Texas 78701
    Telephone: 512.495.6429
    Fax: 512.495.6401
    steve.ravel@kellyhart.com
    jr.johnson@kellyhart.com
    diana.nichols@kellyhart.com

    Attorneys for Defendant GRANDE
    COMMUNICATIONS NETWORKS
    LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 20, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy