**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS NETWORKS LLC, | § § § § | |
| Defendant. | § § § | |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE
PROPOSED EXPERT TESTIMONY OF JONATHAN KEMMERER**

INTRODUCTION

Nothing in Grande's opposition rebuts Plaintiffs' showing that the Court should exclude Jonathan Kemmerer's opinions as unreliable and irrelevant. Grande represents that Kemmerer will not be opining on Plaintiffs' ownership of the copyrighted works in suit, implicitly conceding that Kemmerer's opinions on that topic were not proper expert testimony.[1] The remaining opinions that Grande still intends to have him offer, though, fare no better. The Court should exclude all of Kemmerer's proposed testimony.[2]

ARGUMENT

I. **GRANDE FAILS TO REBUT THAT KEMMERER'S ANALYSIS OF PLAINTIFFS' LOST REVENUES/PROFITS IS UNRELIABLE AND NOT A RELEVANT DAMAGES MEASURE.**

The central methodological flaw in Kemmerer's estimate of Plaintiffs' lost revenues and profits is that he ignores the viral nature of peer-to-peer piracy through BitTorrent. It is beyond legitimate argument that the infringement Rightscorp detects is but a sliver of the total infringement of Plaintiffs' copyrighted recordings, because Rightscorp cannot monitor all file-sharing, by all infringing Grande subscribers, at all times.

But Kemmerer's supposed lost revenues/profits calculations are premised on the notion that the ***only*** infringements are the instances Rightscorp detects.[3] This baseless assumption renders his entire lost revenues/profits analysis methodologically unsound and inadmissible, as Federal Rule of Evidence 702 confirms and as the many cases Plaintiffs cite in their Motion explain.[4]

---

[1] Opp. at 10. This concession further underscores why Plaintiffs should be granted judgment as a matter of law that they own/exclusively control the works in suit.

[2] Because Kemmerer's purported criticisms of Plaintiffs' experts are based on his unsound and inadmissible affirmative opinions, both categories of his opinions should be excluded.

[3] Contrary to Grande's assertion, *see* Opp. at 3 fn.4, this fundamental flaw affects his calculations of lost streaming revenue as well as his calculations of lost download sales, because both calculations understate the total infringement.

[4] Expert testimony must be "based upon sufficient facts or data." Fed. R. Evid. 702. *See, e.g., Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 389 (5th Cir. 2009) (affirming exclusion of

Grande's efforts to salvage Kemmerer's lost revenues/profits opinions entirely miss the mark. Grande first tries to confuse the issue by asserting that Plaintiffs' arguments about the viral nature of the infringement apply only to "subsequent instances of copyright infringement, occurring over the networks of other internet service providers…." Opp. at 3. That is incorrect. The undetected infringement, resulting from the viral nature of online file-sharing, occurs both on Grande's network and on other ISPs' networks. Kemmerer's analyses omit all the instances of infringement by Grande subscribers—distributing to fellow Grande subscribers or non-Grande subscribers—other than when files are shared with Rightscorp.

Grande next argues that there is "no evidence that calls into question the accuracy of Mr. Kemmerer's assumption" and therefore no ground to "criticize Mr. Kemmerer for not considering evidence that does not exist." Opp. at 3. The former statement is not true: both sides' software experts agree on the viral nature of BitTorrent, meaning that there is unquestionably more infringement of Plaintiffs' works than Rightscorp detects. The latter statement ignores the evidence of other infringement occurring on Grande's network, as detected by companies other than Rightscorp. Kemmerer's failure to consider this evidence violates Rule 702, which provides that an expert opinion is not admissible if it lacks sufficient facts. An expert cannot pass off obviously incomplete calculations, because of a lack of sufficient data, as reliable expert testimony.

Finally, Grande asserts that **Plaintiffs**' lost revenues somehow serve as a relevant "'check' on the accuracy and reasonableness of" a calculation of ***Grande's*** ill-gotten gains from its

---

expert opinion based on insufficient information and false assumption); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 807 (N.D. Tex. 2018) (excluding damages estimate where assumptions "are unsupported by or contradict the evidence at hand"), *aff'd*, 2018 WL 2064126 (N.D. Tex. May 2, 2018); *U.S. ex rel. Barron v. Deloitte & Touche, LLP*, 2008 WL 7136869, at *4 (W.D. Tex. Sept. 26, 2008) (excluding as unreliable testimony of damages expert who assumed, without any basis, that missing data confirmed a self-interested result); *Whitney Nat. Bank v. Air Ambulance by B & C Flight Mgmt., Inc.*, 516 F. Supp. 2d 802, 817 (S.D. Tex. 2007) ("Incorrect assumptions critical to an expert's opinion make that opinion unreliable.").

infringement. Opp. at 2 & fn.2. But neither Kemmerer nor Grande offers a logical reason—let alone scientific authority or reliable methodology—explaining why this is so. Kemmerer's unreliable calculations of supposed lost revenues/profits, based on partial data of infringement, are irrelevant for the calculation of Grande's profiting from the infringement it facilitates.

## II. GRANDE FAILS TO REBUT THAT THE COURT SHOULD EXCLUDE KEMMERER'S OPINION THAT GRANDE DID NOT GAIN FROM FACILITATING INFRINGEMENT.

Grande's opposition fails to offer any cogent reason why Kemmerer's counterfactual opinion that Grande has not gained at all from the copyright infringement occurring on its network is reliable expert testimony. Nowhere does Grande account for the fact that Kemmerer himself refuted his own opinion: he conceded in his deposition that, by not terminating repeat infringing subscribers, Grande was able to keep collecting service fees from them.[5] Grande resorts to arguing that Kemmerer's opinion is sound because the fact that "Grande continued to provide internet access to accused infringers does not show—much less conclusively establish—that Grande *profited* from doing so" and "that there is no causal connection between direct copyright infringement and Grande's revenues (or profits)." Opp. at 5. But this Court already has rejected Kemmerer's (and Grande's) flawed logic:

> The fact is that [infringing subscribers] did become customers, and Grande received revenues from their being and continuing to be customers. … That revenue would therefore be reasonably related to Grande's asserted contributory liability in not terminating the service of such customers. If Grande had terminated the internet service of those customers, it is reasonable to conclude they would have found a new service provider, for all services purchased from Grande, and Grande would have lost all revenues from such customers, including those not directly derived from the provision of internet services.[6]

---

[5] Ex. C, Kemmerer Dep. Tr. ("Tr.") 206:21-207:15 (agreeing that "by not terminating those subscribers, Grande was able to keep those subscribers' fees that they paid Grande for the Internet service and whatever services they got").
[6] 3/15/19 Order on S.J. [Dkt. # 268], at 48 fn.8.

The Court's conclusions underscore why Kemmerer's opinions are nothing more than unsupported *ipse dixit* testimony that is inadmissible. *Jacked Up, LLC*, 291 F. Supp. 3d at 807.

### III. GRANDE FAILS TO REBUT THAT KEMMERER'S STATUTORY DAMAGES OPINIONS ARE NOT PROPER EXPERT TESTIMONY.

Grande mischaracterizes Plaintiffs' argument as to why Kemmerer's statutory damages opinions must be excluded. As discussed above and in Plaintiffs' Motion, Kemmerer's actual damages opinions are unreliable and inadmissible; Kemmerer should not be allowed to import those faulty opinions into his overall discussion of the statutory damages factors. The rest of Kemmerer's opinions on the statutory damages factors also are unreliable and should be excluded.

First, Grande grossly misstates Kemmerer's opinion on the amount of statutory damages. Opp. at 8. Kemmerer's "$1,100 per work" number is not the result of any sound method at all. He simply reverse-engineered that figure from an overall amount of $417,680. Grande does not dispute that Kemmerer came up with that number through a purely results-driven approach: doubling one of his unreliable profits calculations to get to approximately $500,000, the amount that a Grande executive told Kemmerer would "have a meaningful impact."[7] This is not merely a question of the weight of the evidence: Kemmerer literally has no recognized scientific or professional methodology supporting his statutory damages "calculation." To be admissible, "expert opinion must be grounded be in the methods and procedures of science and ... be more than unsupported speculation or subjective belief." *Johnson v. Arkema, Inc.*, 685 F.3d 452, 459 (5th Cir. 2012). Kemmerer comes nowhere close to meeting this standard.

Second, regarding his opinions on the other supposed factors, such as deterrent value and willfulness, Grande fails to show how he has either the requisite expertise or a reliable

---

[7] Ex. A, Kemmerer Report ¶¶ 74-75; Ex. C, Tr. 227:18-228:11 ("I think the 500,000 I would characterize **not as my opinion**, but my reporting of the results of a discussion with Mr. Jongeneel.").

methodology to offer them. That is because, as Kemmerer himself admitted, he does not. *See* Mot. at 8. Kemmerer's unsupported opinions invade the province of the jury and should be excluded. *See Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, 2013 WL 12140417, at *4 (S.D. Tex. Dec. 18, 2013) (excluding testimony about willfulness and statutory damages figure).

IV. **GRANDE FAILS TO REBUT THAT KEMMERER'S OPINIONS ON MITIGATION OF DAMAGES SHOULD BE EXCLUDED.**

Grande does not dispute that Kemmerer lacks expertise regarding the music industry and online infringement. Instead, Grande claims that "[t]he mitigation issues in this case are straightforward and require no technical expertise or music industry experience" for Kemmerer to offer his supposed expert opinions. But Grande's admission that Kemmerer lacks this expertise renders inadmissible his opinions about the ways in which record companies supposedly could have mitigated damages from online infringement, as he is not "qualified as an expert by knowledge, skill, experience, training or education[.]" Fed. R. Evid. 702.[8] Having Kemmerer serve as a mouthpiece for lawyer arguments about the evidence is not proper expert testimony; his mitigation opinions are inadmissible.

## CONCLUSION

Grande fails to rebut that Kemmerer's proposed testimony is unreliable and irrelevant. The Court should grant Plaintiffs' Motion and exclude Kemmerer's opinions in their entirety.

Dated: March 27, 2019          Respectfully submitted,

By: */s/ Robert B. Gilmore*

---

[8] *See* Mot. at 10 and cited cases. Grande cites *Air Liquide Mexico S. de R.L. de C.V. v. Talleres Willie, Inc.*, 2017 WL 8233735, at *2 (S.D. Tex. July 10, 2017) to argue that Kemmerer should be permitted to testify on areas outside his expertise. But as Grande's parenthetical itself shows, *see* Opp. at 10, the court in *Air Liquide* simply allowed a damages expert to present **damages** opinions even though he "lacked experience in the subject matter field of the plaintiffs' business." Here, Grande wants Kemmerer to present opinions on **mitigation**—what steps Plaintiffs purportedly could have taken to avoid or reduce damages. That is an entirely separate topic, for which he has no specialized expertise.

5

Jonathan E. Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

**CERTIFICATE OF SERVICE**

The undersigned certifies that on March 27, 2019 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*
Daniel C. Bitting