**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>GRANDE COMMUNICATIONS NETWORKS LLC,<br><br>        Defendant. | No. 1:17-cv-00365-DAE-AWA |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S
RESPONSE TO PLAINTIFFS' MOTION TO STRIKE
<u>PORTIONS OF DR. GEOFF COHEN'S SUPPLEMENTAL EXPERT REPORT</u>**

Plaintiffs ask the Court to strike certain portions of Dr. Cohen's supplemental report—Sections VI, VII, VIII, and X—regarding a hard drive of files that Rightscorp, Plaintiffs' litigation consultant, claims to have downloaded from users of Grande's network.  Plaintiffs do not argue that Dr. Cohen's supplemental opinions are untimely because he should have supplemented earlier.  Indeed, Grande repeatedly made clear to Plaintiffs that Grande was waiting to serve this report until Plaintiffs finished producing Rightscorp evidence, which did not occur until February 27, 2019.  As such, Plaintiffs contend that Dr. Cohen's challenged opinions are untimely solely because they should have been included in his initial rebuttal report.

Plaintiffs' argument is baseless because *Plaintiffs'* technical expert—whose opinions Dr. Cohen was rebutting—did not rely on or analyze the hard drive files in *her* opening report.  Furthermore, Plaintiffs produced an array of additional evidence regarding the hard drive files after Dr. Cohen served his initial report, and his supplemental opinions directly address and respond to this later-produced evidence.

In light of the Court's summary judgment rulings, the hard drive files—which Plaintiffs contend corroborate Rightscorp's alleged detections of copyright infringement—will be central at trial.  Prohibiting Grande from offering expert testimony on this evidence would serve no legitimate purpose.  Moreover, Plaintiffs lack any plausible claim of prejudice, given that (1) Dr. Cohen is addressing Plaintiffs' own evidence, which they first relied on in response to Grande's motion for summary judgment; (2) Grande is ready and willing to produce Dr. Cohen for deposition regarding his supplemental opinions; and (3) the Court has not yet set a trial date or scheduled argument on the parties' pending *Daubert* motions.

For these reasons, as discussed in detail below, the Court should deny Plaintiffs' motion

to strike.[1]

## I. Dr. Cohen's challenged opinions are proper and timely under Rule 26(e).

Dr. Cohen's challenged opinions regarding the hard drive files are proper supplemental opinions because (1) Plaintiffs' expert did not analyze this evidence in her opening report, and instead first did so in a subsequent report; and (2) the opinions also respond to evidence regarding the hard drive files that Plaintiffs produced after Dr. Cohen served his initial report.

### A. Dr. Cohen had no reason to address the hard drive files when he served his initial rebuttal report.

Plaintiffs contend that Dr. Cohen should have offered any opinions regarding the hard drive files in his August 17, 2018 rebuttal report. However, Plaintiffs ignore that *their* technical expert—whose opinions Dr. Cohen was rebutting—did not rely on the hard drive files in her opening report. *See generally* Frederiksen-Cross Report (ECF No. 177-1). To be absolutely clear, Ms. Frederiksen-Cross did not cite to the hard drive files anywhere in her report *or* include them in her list of "material received or reviewed."[2] *See id.* & Ex. B thereto. Ms. Frederiksen-Cross did not attempt to analyze the contents of the hard drive, or otherwise attempt to connect specific Rightscorp notices to specific downloaded files.[3] *See generally id.*

---

[1] Grande also questions the timeliness of Plaintiffs' objection, raised more than a month after Dr. Cohen served his supplemental report. In Grande's view, the spirit of the Scheduling Order—if not the letter—is that any challenge to an expert report should be made within 14 days of service of the report or the expert's deposition, whichever is later. *See* ECF No. 66, ¶ 5. When Grande raised this issue, Plaintiffs argued that they are moving to strike within a reasonable time.

[2] The relevant bates range for the hard drive files is RC-D_01350636–01410446.

[3] The parties' experts agree that Rightscorp's system has entirely separate processes for (1) generating and transmitting notices of alleged copyright infringement and (2) downloading allegedly infringing files from individual BitTorrent users. Rightscorp *first* generates and sends a notice of alleged infringement to an internet service provider, and *then* runs an entirely separate process that attempts to download the file. *See* Frederiksen-Cross Report, ¶¶ 45-46 (ECF No. 177-1). On summary judgment, Plaintiffs argued for the first time that the hard drive files—the product of the second step—corroborate the notices generated in the first step.

As a result, Dr. Cohen did not conduct any detailed analysis of the hard drive files in his rebuttal report.  Instead, *like Ms. Frederiksen-Cross*, Dr. Cohen focused on the functionality of Rightscorp's software process for conducting targeted downloads (SampleIt2), pointing out various deficiencies in how it operates.  Cohen Report, ¶¶ 54, 85, 90, 168 (ECF No. 232-1).  At the time, Grande believed that Plaintiffs did not intend to rely on the hard drive files as evidence of infringement at all, because Plaintiffs also had not identified this evidence in response to Grande's interrogatories seeking Plaintiffs' evidence of direct copyright infringement.  *See* Sony Pls.' Obj. to 2nd Interrogs. at 1-8 (ECF No. 112-2).

After Grande moved for summary judgment, however, Plaintiffs apparently determined that they needed to rely on the hard drive files to prove their case, and therefore served another report from Ms. Frederiksen-Cross.  This report, styled as "rebuttal" to Dr. Cohen's rebuttal, contained new analysis and opinions that for the first time addressed the hard drive files, including her new opinion that the hard drive contains one or more copies of each copyrighted work at issue in this case.[4]  *See, e.g.*, Frederiksen-Cross Rebuttal Report, ¶¶ 13, 15, 36, 43, 57 (ECF No. 177-3).  Obviously, Ms. Frederiksen-Cross would not have needed to address the hard drive evidence in a subsequent report if she had already opined on it in her opening report.[5]

In short, as Dr. Cohen explains in his supplemental report, he had no reason to address the hard drive files in his initial rebuttal to Ms. Frederiksen-Cross.  *See* ECF No. 272-1 at ¶ 11.  The hard drive evidence only became significant once Plaintiffs relied on the hard drive files on summary judgment to legitimize Rightscorp's notices, served Ms. Frederiksen-Cross's rebuttal

---

[4] Grande filed a motion to strike Ms. Frederiksen-Cross's rebuttal report as untimely and as improper rebuttal.  *See* Grande's Mot. to Strike "Rebuttal" Expert Report (ECF No. 176).
[5] As noted in the following section, Ms. Frederiksen-Cross also relied on evidence regarding the hard drive files that was not available to Dr. Cohen when he prepared his rebuttal report.

3

report addressing the hard drive files, and produced additional evidence purporting to show that the hard drive files corroborate Rightscorp's notices. *See id.* For this reason alone, the Court should reject Plaintiffs' argument that Dr. Cohen's challenged opinions are untimely.

> B. Dr. Cohen's challenged opinions directly respond to evidence produced by Plaintiffs after he submitted his initial rebuttal report.

In addition to Ms. Frederiksen-Cross's rebuttal report, Plaintiffs produced a raft of other evidence related to the hard drive files after Dr. Cohen served his initial expert report. Plaintiffs did not complete this document production until February 27, 2019, and Grande then promptly served Dr. Cohen's supplemental report on March 8, 2019.

This later-produced evidence includes the September 11, 2018 Declaration of Jeremy Landis, an RIAA employee, who used an audio fingerprinting service to attempt to match the hard drive files to the copyrighted songs at issue in this case. *See* ECF No. 172-12. Ms. Frederiksen-Cross also purported to rely on this evidence in her rebuttal report. *See* Frederiksen-Cross Rebuttal Report, ¶¶ 13, 21, 27–28 (ECF No. 177-3). Before submitting the Landis Declaration in response to Grande's motion for summary judgment, Plaintiffs had not indicated any intention to rely on evidence from Mr. Landis (or more broadly, RIAA) regarding audio fingerprinting, nor did Ms. Frederiksen-Cross mention any such evidence in her opening report. Dr. Cohen's challenged opinions respond to this evidence by showing that Mr. Landis and Plaintiffs mischaracterize the contents of the hard drive (*see, e.g.*, Cohen Supp. Report, ¶¶ 59–78 (ECF No. 272-1)), and that Rightscorp's system remains fundamentally unreliable even if Mr. Landis's testimony is credited. *See, e.g.*, *id.* at ¶¶ 120–133.

On summary judgment, Plaintiffs also offered two declarations from Gregory Boswell, Rightscorp's computer programmer, regarding the hard drive files. *See* ECF No. 173-79, 209-1. These declarations were necessary because Plaintiffs otherwise had no evidence regarding when,

4

how, or from which Grande IP addresses Rightscorp allegedly obtained these files. *See* Grande's Reply ISO Mot. for Summ. J. at 11–13 (ECF No. 201). By showing that the hard drive files paint a distorted and misleading picture of the reliability of Rightscorp's system, Dr. Cohen's challenged opinions are directly responsive to this evidence.

Additionally, in response to Grande's pending motion for sanctions, Plaintiffs submitted further declarations from Mr. Boswell and Ms. Frederiksen-Cross, which address whether and to what extent Rightscorp obtains, stores, and reviews certain categories of BitTorrent data. *See* Boswell Decl., ¶ 6 (ECF No. 253-1); Frederiksen-Cross Decl., ¶¶ 28-34 (ECF No. 254-1). This information is highly relevant to whether the hard drive files substantiate Rightscorp's notices of alleged infringement. For example, as Dr. Cohen explains, Rightscorp obtained yet disregarded "choke" data, which would result in Rightscorp generating notices of alleged infringement <u>for BitTorrent users who were expressly refusing to share any files</u>. *See* Cohen Supp. Report, ¶¶ 102–03 (ECF No. 272-1). This is critical context for evaluating the hard drive files, which do not show how often Rightscorp *failed* to download a file after sending Grande a notice of alleged infringement. *Id.* at ¶¶ 120–33.

Finally, on February 27, 2019, Plaintiffs produced a Rightscorp spreadsheet, which Plaintiffs represent contains "additional data concerning the provenance of the audio files."[6] *See* Pls.' Resp. to Mot. for Sanctions at 9 (ECF No. 253). However, it is unclear what information is set out in certain columns, and the spreadsheet itself provides no information about the origin of the data (*e.g.*, what Rightscorp database the data came from, whether the database still exists, or

---

[6] Plaintiffs' characterization of the hard drive files as "audio files" is inaccurate. In analyzing the contents of the hard drive, Dr. Cohen identified more than 1,000 files that are images or zip files, which Rightscorp's system should not have downloaded if it operated as claimed. *See* Cohen Supp. Report, ¶¶ 60–62 (ECF No. 272-1).

5

how the database was populated).[7] *See* Cohen Supp. Report, ¶ 4 (ECF No. 272-1).

As a result, Plaintiffs have agreed to produce Mr. Boswell for a second deposition to testify about the content of the spreadsheet. And in view of the other evidence discussed above—all produced after Mr. Boswell's first deposition—Plaintiffs have agreed that Grande may examine Mr. Boswell about the hard drive files generally. Given that Plaintiffs agree that Grande is entitled to depose Mr. Boswell again about the hard drive files, Plaintiffs can hardly claim that Dr. Cohen's supplemental expert opinions <u>on the very same subject</u> are untimely.

In sum, the challenged portions of Dr. Cohen's supplemental report are directly responsive to evidence and arguments that Plaintiffs presented after he served his initial report. Standing alone—and especially in combination with Ms. Frederiksen-Cross's failure to rely on the hard drive evidence in her opening report—this provides more than sufficient grounds for Dr. Cohen to offer his challenged opinions in a supplemental report.

## II.   Plaintiffs offer no legitimate basis for striking Dr. Cohen's supplemental opinions.

Even if the Court were to conclude that the challenged portions of Dr. Cohen's supplemental report are untimely, the Court should still deny Plaintiffs' motion to strike. Courts consider the following four factors in deciding whether to strike an untimely expert disclosure: "(1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007); *see also* Fed. R. Civ. P. 37(c)(1) (untimely evidence should not be excluded if the untimeliness was substantially

---

[7] If—as Dr. Cohen suspects, without fully understanding its content—the spreadsheet contains little additional information regarding the hard drive files, that itself is proper grounds for supplementation. This further demonstrates that Rightscorp failed to maintain any evidentiary record to show that the hard drives files are what Plaintiffs say they are—*i.e.*, files downloaded from particular Grande IP addresses at specified points in time.

justified or harmless).  Contrary to Plaintiffs' claims, each of these four factors *clearly* weighs against exclusion.  *See id.* at 708 (exclusion of untimely expert evidence is a disfavored remedy).

*First*, as detailed in Section I above, Dr. Cohen's challenged opinions regarding the hard drive files were not included in his initial report because Ms. Frederiksen-Cross did not rely on the hard drive files in *her* opening report, and these opinions also respond to previously unavailable evidence.  Furthermore, when Grande served Dr. Cohen's initial report and moved for summary judgment, Plaintiffs had not identified the hard drive files in response to Grande's interrogatories seeking Plaintiffs' evidence of direct copyright infringement.  In Grande's view, Plaintiffs' reliance on the hard drive files to corroborate or legitimize Rightscorp's notices was an entirely new liability theory first articulated in response to Grande's motion for summary judgment.  *See* ECF No. 201 at 14-15.

Although the Court implicitly rejected Grande's summary judgment argument that the hard drive files should therefore be excluded, it does not follow that Grande should be prevented from serving a supplemental expert report regarding this evidence.  In fact, the opposite is true—since the Court allowed Plaintiffs to rely on the hard drive evidence and their new liability theory, Grande should be permitted to respond with Dr. Cohen's supplemental opinions.

*Second*, there is no question that Dr. Cohen's supplemental opinions regarding the hard drives files are critically important.  Based on the evidence regarding how often Rightscorp attempted to download infringing files from Grande IP addresses, Dr. Cohen opines that if Rightscorp's notices were accurate, then the hard drive should contain vastly more files than Rightscorp actually obtained.[8]  Cohen Supp. Report, ¶ 41–57 (ECF No. 272-1).  This is

---

[8] In expressing the opinions discussed herein, Dr. Cohen relies on various different assumptions about the origin and nature of the hard drive files.  Grande's summary of these opinions is not

7

potentially explained by a series of different defects in Rightscorp's system that would cause Rightscorp to transmit a notice of alleged infringement when the target IP address was not actually offering to share the song at issue. *See, e.g.*, *id.* at ¶¶ 120–133.

Additionally, Dr. Cohen observes that over 1,000 of the files are not even music, and that the hard drive is made up mostly of duplicate files because Rightscorp would download the same file from the same IP address over and over, up to more than a thousand times. *Id.* at ¶¶ 60–62, 65. After removing duplicates and limiting the files to the copyrighted songs at issue in this case, Dr. Cohen concludes that the hard drive files ultimately relate to only several hundred Grande IP addresses over nearly two years—a far cry from the "rampant copyright infringement" Plaintiffs accuse Grande of perpetrating. *Id.* at ¶ 72. These are just examples—taken together, the challenged portions of Dr. Cohen's report are a damning indictment of Rightscorp's ability to accurately detect offers to share copies of copyrighted songs.

Clearly, Grande would be severely prejudiced if it were prohibited from offering these opinions at trial, given the central importance of the hard drive files to the Court's summary judgment rulings. *See, e.g.*, *Moore v. Hernandez*, No. 2:17-cv-531, 2018 WL 2670403, at *3 (E.D. Tex. Mar. 6, 2018) (this factor "weigh[ed] strongly" against exclusion where the evidence was directly relevant to certain elements of the plaintiff's claim). There is no question that at trial, Plaintiffs intend to rely on the hard drive files and other related evidence not available to Dr. Cohen when he prepared his initial report, including testimony from Mr. Boswell about the files, testimony from Mr. Landis about audio matching, and the opinions expressed in Ms. Frederiksen-Cross's "rebuttal" report. It would be extremely and unfairly punitive—not to

---

intended to convey all relevant assumptions and caveats, and should not be construed as a waiver of Grande's right to dispute any issue of fact.

8

mention contrary to the entire notion of the search for truth—to prohibit Grande from offering Dr. Cohen's supplemental opinions in response to this evidence.

*Third*, there is no undue prejudice to Plaintiffs in permitting Dr. Cohen to offer his supplemental opinions. Dr. Cohen's challenged opinions concern evidence that has been in Plaintiffs' possession since before the inception of this case—evidence that Plaintiffs intend to offer in support of their affirmative case against Grande, and that their technical expert has already addressed. Grande also notified Plaintiffs of a potential supplemental report regarding the hard drive files during Dr. Cohen's first deposition. Cohen Dep. Tr. 141:4–147:12 (Ex. 1). It is therefore curious that Plaintiffs suggest they are prejudiced because they may need to offer additional expert testimony in response.[9] *See Moore*, 2018 WL 2670403, at *3 (denying motion where movant failed to "point to any specific prejudice that could not be remedied by, among other things, additional deposition hours and vigorous cross examination").

Furthermore, as soon as Plaintiffs raised this issue, Grande affirmed that it would produce Dr. Cohen for deposition regarding his supplemental opinions, and asked Plaintiffs if they wished to proceed with scheduling the deposition. Plaintiffs declined to say yes or no, evidently deciding that scheduling the deposition would undermine their claims of prejudice (while also not wanting to lose the opportunity to depose Dr. Cohen again).[10] In any event, because Plaintiffs do not challenge certain portions of Dr. Cohen's supplemental report, Plaintiffs may seek to depose Dr. Cohen again no matter what. These facts certainly weigh against excluding

---

[9] Plaintiffs have not asked if Grande would consent to Plaintiffs serving an additional expert report in rebuttal to Dr. Cohen's supplemental opinions. Plaintiffs did not even object to Dr. Cohen's supplemental report until over a month after it was served, at which time any such "rebuttal" was already untimely. *See* Scheduling Order, ¶ 2 (ECF No. 66).

[10] It also appears that Plaintiffs also desire to leave the issue of a second deposition open to support their argument that a subsequent *Daubert* motion would be timely.

Dr. Cohen's challenged opinions on grounds of any undue prejudice or burden.

Finally, the timing of Dr. Cohen's supplemental report is the direct result of Plaintiffs' deficient and dilatory production of documents.  Grande intended to serve this supplemental report months ago, but was repeatedly delayed as Grande learned of additional relevant documents that had not been produced (from RIAA, in connection with depositions in early December, and from Rightscorp, in connection with earlier depositions and Plaintiffs' response to Grande's motion for evidentiary sanctions).  *See, e.g.*, Jan. 11, 2019 Email from R. Brophy (Ex. 2); Feb. 22, 2019 Email from R. Brophy (Ex. 3).  Grande promptly served Dr. Cohen's supplemental report shortly after Plaintiffs remedied these deficiencies in late February.  In short, Plaintiffs could have had Dr. Cohen's supplemental report months ago, and the only reason they did not is the deficiencies in their own document production.

*Fourth*, and finally, the Fifth Circuit has "emphasized that continuance, not exclusion, is the preferred means of dealing with a party's attempt to designate a witness out of order or offer new evidence."  *EEOC v. Gen. Dynamics Corp.*, 999 F.2d 113, 116 (5th Cir. 1993); *Betzel*, 480 F.3d at 708 (same).  Here, a continuance is unnecessary because the Court has not set a trial date.  Additionally, the Court has yet to schedule a hearing on the parties' pending *Daubert* motions.  Grande will produce Dr. Cohen for deposition with dispatch as soon as Plaintiffs so request, and there is no reason to believe that any response from Plaintiffs to Dr. Cohen's supplemental report would delay proceedings in this matter significantly, if at all.  This factor, like all the others, therefore weighs against excluding Dr. Cohen's challenged opinions.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Strike.

Dated: April 30, 2019

                    Respectfully submitted,

                    By: /s/ Richard L. Brophy
                        Richard L. Brophy
                        Zachary C. Howenstine
                        Margaret R. Szewczyk
                        Armstrong Teasdale LLP
                        7700 Forsyth Blvd., Suite 1800
                        St. Louis, Missouri 63105
                        Telephone: 314.621.5070
                        Fax: 314.621.5065
                        rbrophy@armstrongteasdale.com
                        zhowenstine@armstrongteasdale.com
                        mszewczyk@armstrongteasdale.com

                        J. Stephen Ravel
                        Texas State Bar No. 16584975
                        J.R. Johnson
                        Texas State Bar No. 24070000
                        Diana L. Nichols
                        Texas State Bar No. 00784682
                        Kelly Hart & Hallman LLP
                        303 Colorado, Suite 2000
                        Austin, Texas 78701
                        Telephone: 512.495.6429
                        Fax: 512.495.6401
                        steve.ravel@kellyhart.com
                        jr.johnson@kellyhart.com
                        diana.nichols@kellyhart.com

                        Attorneys for Defendant GRANDE
                        COMMUNICATIONS NETWORKS
                        LLC

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 30, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy