### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., § | |
| § | |
| V.  § | CAUSE NO. A-17-CA-365-LY |
| § | |
| GRANDE COMMUNICATIONS § | |
| NETWORKS, LLC § | |

### ORDER

Before the Court are Grande's Motion to Strike "Rebuttal" Expert Report of Barbara Fredericksen-Cross (Dkt. No. 176); and UMG's Motion to Strike as Untimely the "Supplemental" Expert Report Opinions of Dr. Geoff Cohen Concerning the Rightscorp Downloaded Audio Files and Notices (Dkt. No. 271), along with their associated responses and replies. The District Court referred the discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I. BACKGROUND

Both of these motions address reports submitted by each side's computer expert, and each motion seeks to strike all or part of the testimony offered in the reports. In the way of background, Barbara Fredericksen-Cross is UMG's computer expert, and she has been designated to offer opinions related to the Rightscorp infringement detection and notification system that was used to create much of the evidence UMG relies on to show that Grande's customers were infringing on UMG's copyrights. Geoff Cohen is also a computer expert, and Grande has designated him to testify on the functionalities of the Rightscorp system and to rebut the testimony of Fredericksen-Cross. In a nutshell, Cohen has opined that the Rightscorp system is only capable of detecting when a file is made available for sharing, and is "incapable of detecting uploads, downloads or actual

sharing on peer-to-peer networks." Dkt. No. 232-1 at ¶ 25. The scheduling order in this case set deadlines for the disclosure of experts and the service of reports. Consistent with the schedule (as amended by the attorneys' agreement), UMG served on Grande an initial report from Fredericksen-Cross dated July 27, 2018, Grande served an initial report from Cohen dated August 17, 2018, and UMG served a rebuttal report from Fredericksen-Cross dated August 31, 2018. Cohen did not produce a rebuttal report (presumably because his initial report included his response to, and criticism of, Fredericksen-Cross's report). Fredericksen-Cross was deposed on October 18, 2018, and Cohen was deposed on November 8, 2018.

## II. DISCUSSION

### A. Grande's Motion to Strike Fredericksen-Cross Rebuttal Report (Dkt. No. 176)

In this motion Grande moves to strike Fredericksen-Cross's rebuttal report, characterizing it as a "sur-rebuttal" report. Grande complains that Fredericksen-Cross's rebuttal report responds to Cohen's report. In Grande's view, "the Court's Scheduling Order does not authorize the parties to serve . . . rebuttal reports in response to rebuttal reports." Dkt. No. 176 at 1. This argument is meritless.

The fallacy of Grande's position is its characterization of its own expert's report as a "rebuttal" report. In fact it was his primary report. The scheduling order makes this quite clear. That order provided three deadlines for designating experts: one for "parties asserting claims for relief" (*i.e.*, UMG), another for "parties resisting claims for relief" (*i.e.*, Grande), and then one for both parties—"rebuttal experts," whose reports were due within 30 days of the date "of receipt of the report of the opposing expert." Dkt. No. 66 at ¶ 2. Cohen's report fell within the second category—the report of an expert retained by Grande, the party "resisting claims for relief." The

2

scheduling order plainly allows both parties to submit rebuttal reports to the reports served by their opponent's experts. Thus, it was perfectly within the dictates of the scheduling order for Fredericksen-Cross to serve a report rebutting Cohen's opinions after Cohen submitted his initial report.[1]

Grande also complains that in her rebuttal report, Fredericksen-Cross corrected or modified statements from her original report. Thus, in response to Cohen pointing out that she inaccurately described the "SampleIt3" function of the software, the rebuttal report states that "Dr. Cohen is correct that there is a typographical error in my report," and states that "[t]he typographical error is hereby corrected," to reflect that SampleIt3 downloads song copies "from the selected torrent" instead of "from a single Peer." Dkt. No. 177-3 at ¶ 38. There is nothing objectionable about such a change, as it was plainly a response to Cohen's report, and Grande's belief that Fredericksen-Cross's claim that this was a typographical error "is not credible," Dkt. No. 176 at 9, is not a proper basis for denying her the ability to correct her error. The same is the case with regard to Fredericksen-Cross correcting some of the statements in her original report to reflect that the functions she had attributed to "Infringement Bot" in her original report are carried out in the newer version of the Rightscorp software by functions called "Pocket" and "Memphis." *See* Dkt. No. 176 at 8-9. Correcting errors and responding to the associated criticism raised by an opposing expert is a proper use of a rebuttal report.

---

[1] When the parties extended the expert designation deadlines by agreement, they confirmed this understanding by including three deadlines characterized as "Plaintiffs['] Initial Expert Reports," "Defendant[']s Initial Expert Reports" and "Plaintiffs' Rebuttal Reports." Dkt. No. 188-1 at 5.

Finally, Grande contends that the rebuttal report should be stricken because in it Fredericksen-Cross relies on evidence Grande claims was "never identified by Plaintiffs in discovery," and because Fredericksen-Cross "did not identify or cite" to that evidence in her original report. Dkt. No. 176 at 8. The specific evidence that Grande refers to here is a collection of files UMG represents are digital copies of song files that Rightscorp downloaded from Grande users who were wrongfully offering those songs for copying. At various points in this case, Grande has complained about these files being "new" evidence or a "new theory." *See, e.g.*, Dkt. No. 201 at 11-15. But in fact, UMG referenced these files in its original complaint, Dkt. No. 1 at ¶ 43, referred to them during the argument on the motion to dismiss, Dkt. No. 64 at 31-32, produced them to Grande in April 2018, Dkt. No. 172 at 13 n.7, and identified them in an interrogatory response, Dkt. No. 173-96 at 3. This evidence is not new. Nor is there anything wrong with Fredericksen-Cross pointing to it to support her view that Cohen's opinions are incorrect. Accordingly, Grande's motion to strike Fredericksen-Cross's rebuttal report will be denied.

**B.     UMG's Motion to Strike Supplemental Cohen Report Opinions (Dkt. No. 271)**

As noted above, in his initial report, Cohen reached the conclusion that the Rightscorp system is "incapable of detecting uploads, downloads or actual sharing on peer-to-peer networks." In her rebuttal report, Fredericksen-Cross criticized this conclusion, and argued it was inconsistent with the fact that Rightscorp had claimed to have downloaded 59,000 files from Grande customers offering to share those files through BitTorrent. Many months later, on March 8, 2019, Grande served on UMG a supplemental expert report from Cohen. That report discusses a number of topics not addressed in Cohen's original report, and includes an in depth review and analysis of the 59,000 files that were included on the hard drive UMG produced to Grande in April 2018. In short, UMG

contends that "[a]lthough Grande styled it as a 'supplemental' report, in reality it is a substantial do-over of Cohen's opinions concerning the Rightscorp system. Nothing justifies this second bite at the apple, and allowing these new opinions so late in the proceedings would prejudice [Grande]." Dkt. No. 271 at 1. Accordingly, UMG asks that the Court preclude Grande from offering at trial the opinions included in four sections of Cohen's supplemental report, Sections VI, VII, VIII, and X.[2]

The four sections of Cohen's report at issue here are titled: "The Rightscorp Peer Download Proeess" (§ VI); "Analysis of the Hard Drive" (§ VII); "Rightscorp Notices are Unreliable and Unsubstantiated" (§ VIII); and "The Hard Drive Fails to Substantiate the Notices" (§ X). Though each section addresses separate topics, Grande does not differentiate among them in its response, and offers a single explanation for the late supplement—these portions of the report all relate to "a hard drive of files that Rightscorp, Plaintiffs' litigation consultant, claims to have downloaded from users of Grande's network," and  UMG's motion

> is baseless because Plaintiffs' technical expert—whose opinions Dr. Cohen was rebutting—did not rely on or analyze the hard drive files in her opening report. Furthermore, Plaintiffs produced an array of additional evidence regarding the hard drive files after Dr. Cohen served his initial report, and his supplemental opinions directly address and respond to this later-produced evidence.

Dkt. No. 274 at 2. The entirety of Grande's response centers on the timing of the production of the hard drive, as well as UMG's experts' reliance on the hard drive. As UMG has pointed out, however, §§ VI and VIII of Cohen's report do not address the hard drive or the files on it, but instead focus on the Rightscorp software and the notices it generates. The Court will therefore break

---

[2]UMG's motion is limited to these sections, and it is "not moving to strike Cohen's opinions in his supplemental report concerning a small set of information produced after Cohen's original report: (1) a declaration and accompanying spreadsheet from RIAA's Jeremy Landis; (2) certain additional RIAA documents; and (3) the Rightscorp change revisions log." Dkt. No. 271 at 1 n.2.

its analysis of whether the new opinions should be permitted into two sections—one addressing the two sections expressly discussing the hard drive (§§ VII and X), and the other addressing §§ VI and VIII.

### 1. Standard

Rule 26(e) requires parties to supplement or correct previous discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect. . . ." FED. R. CIV. P. 26(e)(1). With respect to an expert whose report must be disclosed under Rule 26(a)(2)(B), "the party's duty to supplement extends both to information included in the report and to information given during the expert's deposition." FED. R. CIV. P. 26(e)(2). Analogously, expert opinions that are supplemented late are governed by Rule 37, which provides that:

> [a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed.

FED. R. CIV. P. 37(c). In determining whether to exclude evidence under Rule 37(c)(1), a court considers four factors: (1) the party's explanation for its failure to disclose evidence; (2) the prejudice, if any, to the party opposing the admission of the evidence; (3) the possibility of curing any prejudice with a continuance; and (4) the importance of the evidence. *Barrett v. Atlantic Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996).

### 2. Sections VII and X

Two of the four new sections of Cohen's supplemental report are expressly directed at analyzing the contents of the files UMG contends Rightscorp acquired from Grande users. They are titled "Analysis of the Hard Drive" and "The Hard Drive Fails to Substantiate the Notices." The

first of the four factors a court is to consider in deciding if late-disclosed evidence should be allowed is the party's explanation for the untimely disclosure. Cohen himself offers the reasons for his supplementation in the opening pages of the new report. He states:

> At the time of my opening report, I reviewed a number of files from the Hard Drive. See, e.g., First Cohen Report, Paras. 169-171. However, as it was my understanding at the time that Plaintiffs had not indicated that they intended to rely on this hard drive as evidence, because Ms. Frederiksen-Cross did not identify or mention any downloaded music files in the report I was rebutting, and because Plaintiffs had not yet disclosed the Landis analysis or deposition, I did not consider the contents further. Since that time, Plaintiffs have affirmatively indicated their intent to rely on the Hard Drive and I have therefore endeavored to evaluate that hard drive to determine whether it meaningfully corroborates the Notices.

Dkt. No. 271-3 at ¶ 11. There are thus three bases on which Cohen justifies his failure to consider the contents of the hard drive: (1) it was his "understanding" that UMG had "not indicated it intended to rely on th[e] hard drive as evidence;" (2) Fredericksen-Cross did not "identify or mention" the files in her report; and (3) Landis' analysis of the files had not been disclosed. As noted earlier (*supra* at n.2), UMG does not object to Cohen's opinions flowing from Landis' declaration and spreadsheet, so the Court will focus on the first two explanations.[3]

On the first point, *Cohen's* "understanding" of what UMG's theory of liability was is irrelevant, as he was retained and briefed by Grande and its counsel. If he had a *mis*-understanding, as he now implies, the party responsible for that is Grande. And with respect to Grande, it is simply not credible for it to claim it did not know that UMG was relying on the downloaded music files to support its case in chief. As noted earlier, Grande has made this argument repeatedly. It made it in its summary judgment briefing, where it asked three times that Judge Ezra strike the evidence,

---

[3]Landis' testimony relates to demonstrating that the files downloaded from Grande subscribers are copies of the works in suit.

Dkt. No. 201 at 6 n.4, 11 n.10, 14 n.16, and 17-18.  Judge Ezra, however, rejected that request and relied on the hard drive evidence in denying Grande's summary judgment motion, Dkt. No. 268 at 34-35.  This is because the files were described in the original Complaint.  Dkt. No. 1 at ¶ 43 ("Rightscorp's system also has the capability to acquire entire files from the infringing host computers.").  They were also explicitly discussed in October 2017 at the hearing on Grande's motion to dismiss—and specifically in response to Grande's argument that the notices of infringement were not evidence of "actual" infringement.  Dkt. No. 64 at 30 and 31-32 ("So the system will sometimes also download the whole file to show proof beyond any doubt that the actual entire file is being shared by that person.").  They were produced to Grande on (what is becoming) the "infamous" hard drive.  And in response to an interrogatory in June 2018, UMG specifically referenced the files by Bates number and identified them as "sample files of sound recordings that infringing Grande subscribers shared with Rightscorp." Dkt. No. 173-96 at 3.  All of this happened months or years before Cohen submitted his opening expert report.

Cohen's statement that "Ms. Frederiksen-Cross did not identify or mention any downloaded music files in the report [he] was rebutting," is also incorrect.  Fredericksen-Cross mentioned not only the software's ability to make copies of the targeted songs from "the swarm," but also noted it could do so from specifically selected "Peers," and stated that "the Rightscorp system can also be used to periodically resample the same works over time from the same Grande subscriber in order [to] create an evidentiary record documenting a subscriber's continued abuse." Dkt. No. 218-5 at ¶ 122; *see also* ¶¶ 60-64.  Further, in her rebuttal report—served seven months before Cohen's supplemental report—Fredericksen-Cross noted Cohen's failure to discuss the files, and stated that those files contradicted many of his opinions regarding Rightscorp's capabilities.  *See, e.g.*, Dkt. No.

176-5 at ¶ 13 ("The Rightscorp system has collected over 59,000 such files, and it is my understanding that RIAA has independently verified that these files include copies of every recording at issue in this suit. Dr. Cohen disregards this evidence, and never explains why he believes these downloaded file copies are not sufficient as evidence of files 'copied from an accused infringer's computer.'"). So even if Fredericksen-Cross had failed to mention in her opening report that the software made copies of files from Grande's customers —which she did not—she made Grande aware no later than August 31, 2018, that she was relying on the downloaded files to criticize Cohen's opinions. Despite this, Cohen did not submit his supplemental report until seven months later.

In sum, Grande's explanation for its late disclosure of Cohen's supplemental opinions is weak. For unknown reasons, Grande's attorneys focused most of their arguments on the Rightscorp notices and apparently did not request that Cohen analyze the downloaded song files. Their error became evident with the summary judgment rulings. Grande tacitly admits this in its response, noting "the central importance of the hard drive files to the Court's summary judgment rulings," and conceding that, "[i]n light of the Court's summary judgment rulings, the hard drive files . . . will be central at trial." Dkt. No. 274 at 9, 2. But it cannot blame UMG for any of this, as UMG did not hide the evidence or otherwise "lay behind the log" with it. As Grande reminded UMG when Grande sought to exclude UMG's evidence on copyright ownership, "[i]t is not Grande's job to litigate Plaintiffs' case, and Plaintiffs should be accountable for their failure to produce responsive, relevant documents." Dkt. No. 156 at 10.

The second factor under Rule 37 is the prejudice UMG would suffer if Grande is allowed to use Cohen's new opinions at trial. Grande suggests it would be minimal,

9

> given that (1) Dr. Cohen is addressing Plaintiffs' own evidence, which they first relied on in response to Grande's motion for summary judgment; (2) Grande is ready and willing to produce Dr. Cohen for deposition regarding his supplemental opinions; and (3) the Court has not yet set a trial date or scheduled argument on the parties' pending *Daubert* motions.

Dkt. No. 274 at 2.[4] UMG disagrees, and contends the prejudice to it "is substantial: being forced to respond to an entirely new critique of Rightscorp's system, after having already completed rounds of expert reports, depositions, and *Daubert* briefing, with all the additional time and expense that doing so will require." Dkt. No. 276 at 1. It would appear the truth is somewhere in the middle. Grande is correct that, as the sponsor of the evidence, the files at issue are UMG's responsibility, and because it has had them since the commencement of the case, it has had at least as good an opportunity as Grande to analyze them. UMG should know what the files contain, and whether they demonstrate what it contends they do. And though there is now a trial date, it is seven months away, which is enough time for UMG to consider and respond to Cohen's new opinions. On the other hand, UMG is correct that additional discovery will be necessary if the testimony is allowed, and additional expenses will be incurred because of it.[5] This discussion also effectively answers the third factor, whether the prejudice may be cured with a continuance. Though a continuance is unlikely given the age of the case, it appears to be unnecessary to cure the prejudice UMG would

---

[4]It is instructive to note the difference in this position from the one Grande took when the shoe was on the other foot and Grande was seeking to prevent UMG from submitting additional evidence demonstrating its ownership of copyrights in the works in suit. At that time, Grande claimed the prejudice it would suffer from allowing the evidence would be "severe and irreparable," as it would "fundamentally compromise" its defense of the case. Dkt. No. 156 at 3, 13.

[5]Perhaps this is optimistic, but the undersigned disagrees that any *Daubert* issues would be implicated if Cohen is allowed to testify along the lines of his supplemental report. He appears to plainly have the qualifications to offer the testimony in his supplemental report, and an analysis of the hard drive and its contents seems squarely within the scope of his expertise.

suffer if Cohen is allowed to supplement his testimony. Instead, it would appear that the way to cure the prejudice would be with a shifting to Grande of UMG's costs of preparing for and deposing Cohen, and for having Fredericksen-Cross (or another expert) respond to Cohen.

Finally, the evidence appears to be important to the case, though not perhaps as important as Grande claims. Cohen's proposed testimony is critical of UMG's characterization of the contents of the hard drive, and the significance of the files Rightscorp collected from Grande users. In general, his testimony seeks to undermine the evidentiary value of those files. The significance of the files to UMG's case is that the represent evidence that Grande customers allowed another party—Rightscorp—to copy UMG's copyrighted songs. And the Court did rely on this evidence to find there are fact issues precluding summary judgment on the question of infringement. But the files are by no means the only evidence of infringement. As the Court has noted in several orders, copyright infringement may be proven by circumstantial evidence, and the Rightscorp data (distilled in the notices) is a great deal of such evidence. Indeed, the primary reason UMG pointed to the files in its briefing, and that the Court cited them in its ruling, is Grande's relentless insistence since the outset of the case that the Rightscorp notices are not evidence of infringement, but rather only demonstrate that a Grande customer might have made a copyrighted song "available for copying." In response, UMG pointed to the song files to bolster this other evidence, and make the inference UMG is asking the jury to make—that actual copying took place when Grande's customers made song files in BitTorrent format available to others—even stronger. Thus, while Cohen's criticism of the evidentiary value of the song files is important, it is not critical to Grande's defense.

In the end, though Grande does not have a good explanation for waiting until March to have Cohen address the files on the hard drive, the prejudice to UMG in allowing that testimony is

11

moderate and curable, and the evidence is important to Grande's defense. The Court will therefore deny the motion to strike these §§ VII and X of Cohen's supplemental report, but it will order that Grande reimburse UMG for the attorneys' fees and experts costs expended in responding to the supplemental testimony on these topics.

    **3.    Sections VI and VIII**

All of Grande's arguments as to why Cohen's supplemental opinions are permissible relate to the timing of the production of the hard drive containing the 59,000 files, as well as the timing of UMG's reliance on those files. As UMG points out in its motion and reply, §§ VI and VIII of the supplemental report have little or nothing to do with those files. Section VI discusses "Rightscorp Peer Download Process" and Section VIII is titled "Rightscorp Notices are Unreliable and Unsubstantiated." UMG accurately characterizes these sections as completely new criticisms of the very same functions of the Rightscorp software that Cohen addressed in his initial report. Given this, and given that Grande does not even attempt to justify the failure to timely disclose this new testimony, it should be disallowed under Rule 37. First, with respect to these sections there is *no* explanation, not even a bad one, for the late disclosure of this testimony. Second, the prejudice to UMG with respect to allowing testimony on these topics would be far more significant than it is with the other two sections. They are not topics that have previously been addressed, and are not based on the allegedly "new" music file evidence, so Fredericksen-Cross and UMG would be starting from scratch in addressing the topics. As already noted, a continuance is not likely here. And finally, Grande offers no argument to explain why these new opinions are important to its case. The Court will therefore grant UMG's motion to strike Sections VI and VIII of Cohen's report.

### III. CONCLUSION

For these reasons, Grande's Motion to Strike "Rebuttal" Expert Report of Barbara Fredericksen-Cross (Dkt. No. 176) is **DENIED**, and UMG's Motion to Strike as Untimely the "Supplemental" Expert Report Opinions of Dr. Geoff Cohen Concerning the Rightscorp Downloaded Audio Files and Notices (Dkt. No. 271) is **GRANTED** with respect to Sections VI and VIII, and **DENIED** as to Sections VII and X.  Further, Grande is **ORDERED** to reimburse UMG for the attorneys' fees and expert costs UMG expends in responding to the supplemental testimony that is permitted.  UMG may make application for these fees consistent with the procedures set forth in Local Rule 7(j) once the work on these topics is complete.

SIGNED this 16th day of July, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE