**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| **UMG RECORDINGS, INC., et al.,** § | |
| § | |
| **V.** § | **CAUSE NO. A-17-CA-365-LY** |
| § | |
| **GRANDE COMMUNICATIONS** § | |
| **NETWORKS, LLC** § | |

## ORDER

Before the Court are the following motions, along with all of their associated responses and replies :

- Grande's Motion to Exclude Proposed Expert Testimony of Robert A. Bardwell (Dkt. No. 210);

- Grande's Motion to Exclude Proposed Expert Testimony of Barbara Fredericksen-Cross (Dkt. No. 214);

- Grande's Motion to Exclude Proposed Expert Testimony of Dr. Terrence P. McGarty (Dkt. No. 221)

- Grande's Motion to Exclude Proposed Expert Testimony of William Lehr (Dkt. No. 228);

- UMG's Motion to Exclude Proposed Expert Testimony of Dr. Geoff Cohen (Dkt. No. 233); and

- UMG's Motion to Exclude Proposed Expert Testimony of Jonathan Kemmerer (Dkt. No. 265).

The District Court referred the discovery dispute to the undersigned Magistrate Judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. STANDARD

Each of these motions are filed pursuant to Federal Rule of Evidence 702, which governs the admissibility of expert testimony. *See also, Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 597–98 (1993). Rule 702 provides:

> A witness who is qualified as an expert by knowledge, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. Under Rule 702, the trial court is to act as a "gatekeeper," making a "preliminary assessment of whether the reasoning or methodology [of an expert] properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 243-44 (5th Cir. 2002). *Daubert* and its principles apply to both scientific and non-scientific expert testimony. *Kumho Tire*, 526 U.S. at 147. Experts need not be highly qualified to testify, and differences in expertise go to the weight of their testimony, not its admissibility. *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009). Nonetheless, courts need not admit testimony that is based purely on the unsupported assertions of the expert. *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997); *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998).

In addition to being qualified in the relevant field, the methodology the expert used to form his or her opinion must be reliable. *Daubert*, 509 U.S. at 592–93; *Moore*, 151 F.3d at 276. "The expert's assurances that he [or she] has utilized generally accepted scientific methodology is

insufficient." *Moore*, 151 F.3d at 276. Even if the expert is qualified and the basis of his or her opinion is reliable, the underlying methodology must have been correctly applied to the case's particular facts to be admissible. *Daubert*, 509 U.S. at 593*; Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007). When a Rule 702 motions is filed, the party proffering the expert has the burden of establishing by a preponderance of the evidence that the expert's testimony is admissible. *Daubert*, 509 U.S. at 592 n.10; *Johnson v. Arkema, Inc.*, 685 F.3d 452 (5th Cir. 2012). The proponent does not have to demonstrate that the testimony is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## II. ANALYSIS

A few caveats are in order before the Court addresses the merits of these motions. Though filed pursuant to FED. R. EVID. 702 and *Daubert*, a significant portion of the grounds raised in these motions have little or no basis in Rule 702 or *Daubert*. For example, Grande objects to every single one of UMG's experts because, in their reports, they refer to actions taken by Grande subscribers with some variation of the word "infringe." Whatever this argument is, it is definitely **not** a *Daubert* motion.[1] Because a motion regarding what words an expert (and presumably the lawyers and lay

---

[1] The argument appears to best be characterized as a motion in limine. Grande contends that whether conduct constitutes copyright infringement is a legal question, and allowing any of the experts to refer to something as an act of "infringement," or a Grande subscriber as a "repeat infringer" would usurp the role of the court and jury. *See, e.g.*, Dkt. No. 210 at 1. By this same reasoning, it would apparently also be inappropriate for a witness to refer to a "breach" in a breach of contract case, to "negligence" in a tort case, or to "discriminate" in an employment suit.

witnesses) may use at trial is not properly raised in a Rule 702 motion, the Court rejects that argument across the board, in each instance in which Grande raises it.  Further, throughout their motions, the parties argue that various opinions are not relevant, for any number of reasons.  But whether a particular statement or opinion of an expert is relevant to the case can be raised at trial, and is not something the Court need address under *Daubert* or Rule 702.  Finally, much of what is contained in the parties' motions boils down to a simple disagreement with what a particular expert has concluded—that the expert is, in the objecting party's view, just plain wrong.  Again, so long as the testimony is based on sufficient facts and data, and reliable methods, and would assist the jury in determining the facts, Rule 702 and *Daubert* permit it, even if the expert's conclusions are ultimately not persuasive to the jury.

**A.     Grande's Motion to Exclude Robert A. Bardwell  (Dkt. No. 210)**

Robert A. Bardwell is a professional statistician with a Ph.D in Mathematics from the University of Colorado. UMG has designated him as an expert to testify about the statistical likelihood that multiple Rightscorp notices related to an individual Grande subscriber, which would suggest that numerous Grande subscribers repeatedly infringed one or more of UMG's copyrights.

Grande contends that Bardwell's testimony is unreliable because he allegedly failed to verify whether the Rightscorp notices he uses in his probability analysis are related to the works at issue in this case.  As UMG points out, however, evidence of Grande subscribers making *any* copyrighted material available for copying, whether the copyrights were owned by UMG or not, is probative and relevant to the probability analysis Bardwell is conducting.  At most, Bardwell's reliance on notices regarding works that are not at issue goes to the weight the jury should give Bardwell's opinion and not its admissibility.   *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)*.* Moreover,

Judge Ezra was not persuaded by these objections, as he relied on Bardwell's opinions in finding that there were fact issues for trial on damages. Dkt No. 268 at 47 n.8.

Next, Grande asks the Court to preclude Bardwell from testifying about internet protocols or peer-to-peer file sharing, including BitTorrent , and about the Rightscorp system and the accuracy and reliability of the data it generates. Grande argues that these technological issues are outside of Bardwell's area of expertise. Similarly, Grande asserts that Bardwell should be precluded from testifying about a hard drive of music files that Rightscorp downloaded from Grande subscribers, because not only did he not rely on this evidence in his report, but he lacks the expertise to opine about the nature of this (or any) data gathered by Rightscorp. UMG responds that Bardwell only discusses internet protocols, peer-to-peer networks and the Rightscorp software as background necessary to give context to and explain his analysis, and he does not offer this testimony as expert opinions. The Court concurs. Bardwell may discuss these topics to put his own opinions in context. If Grande believes he gets something wrong on these topics in his testimony, it is of course free to point that out in cross examination. As to Grande's concerns related to the files Rightscorp downloaded from Grande subscribers, Bardwell did not rely on those files in his report, and Grande fails to demonstrate where he did so.[2] The Court therefore overrules that objection.

Finally, Grande makes two objections to Bardwell's "Reply" report that responds to the report of Grande's damages expert, Jonathan Kemmerer. First, Grande complains that Bardwell was not designated as a damages expert, and is unqualified to testify about damages as he does not have a background in finance or economics. Second, Grande argues that the report relies on new

---

[2]Instead, his reference to them came in response to a question he was asked in his deposition. Specifically, Grande's counsel asked Bardwell, "is it fair for me to say you have zero evidence of any downloads taking place," and Bardwell disagreed, pointing to the files. Dkt. No. 213-2 at 17-18.

evidence which Bardwell did not reference in his initial report. Neither of these arguments has merit. In his testimony regarding Kemmerer's damage analysis, Bardwell merely explains how he believes Kemmerer misconstrued Bardwell's own probability analysis and the Rightscorp data upon which both he and Kemmerer relied. This is classic "rebuttal" testimony and is permissible. And as for Bardwell's reliance on "new evidence," Grande did not produce the evidence until just prior to the expert deadline, justifying Bardwell not addressing it until his rebuttal report. As the party producing the material late, Grande has no standing to complain about Bardwell not addressing it until his rebuttal report.

In sum, Grande's motion to exclude testimony from Robert Bardwell (Dkt. No. 210) is **DENIED**.

**B.     Grande's Motion to Exclude Barbara Fredericksen-Cross (Dkt. No. 214)**[3]

Barbara Fredericksen-Cross is a software developer, and states that her

> experience includes software design, programming, project management, capacity planning, performance tuning, problem diagnosis, and administration of hardware, operating systems, application software, and database management systems. I have over forty four (44) years of personal experience as a software developer and consultant, including the development of web-based systems, and secure online data access systems used by banks, insurance companies, hospitals, and telecommunication providers.

Dkt. No. 218-5 at ¶ 6. UMG has designated her to testify on a number of issues related to the Rightscorp infringement detection and notification software system. Her proposed testimony falls into four general categories: (1) the workings of P2P BitTorrent file sharing technology; (2) Rightscorp's software, including an assessment of how the software detects and verifies online

---

[3] In a separate motion, Grande seeks to strike Fredericksen-Cross's rebuttal report as untimely. The Court addresses that motion in a separate order this date.

infringement on P2P file sharing networks such as BitTorrent; (3) the data collected by the Rightscorp system with respect to the activities of Grande subscribers; and (4) whether Grande has the technical capability to respond to notices of copyright infringement like those sent by Rightscorp, and whether it did so here.

Leaving aside the "infringement" argument, and Grande's repetition of the argument from its motion to strike the rebuttal report as untimely, Grande makes three arguments in support of its motion. First, it contends Fredericksen-Cross's testimony is unreliable because "she admitted in deposition that she has no way of knowing how the Rightscorp software actually functioned at any point in time due to the lack of documentation and the manual nature of its operation." Dkt. No. 214 at 1. Next, it argues that Frederiksen-Cross's opinion that the Rightscorp notices contained accurate information should be excluded because "she did not review or analyze any of the materials on which those notices are based." *Id.* Finally, it contends that Frederiksen-Cross should not be permitted to testify on the operation of BitTorrent clients and Rightscorp's ability to detect files shared through BitTorrent "because she has no background or education in BitTorrent software or protocols." *Id.* None of these arguments have merit.

Questions about the bases and sources of an expert's opinion generally relate to the weight that should be given to that opinion rather than the opinion's admissibility. *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004). Rule 703 of the Federal Rules of Evidence provides that

> [a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.

FED. R. EVID. 703.  Fredericksen-Cross testified that she reviewed the 2015 and 2018 Rightscorp computer code, tested the software, and relied on the description of how the software functions, now and in the past, provided by its developer (Gregory Boswell). It is typical in the computer industry to rely upon explanations from the author of software code to understand the software.  Dkt. No. 218-6 at 24-25.  Moreover, Fredericksen-Cross testified that she actually used the newest version of the software, and in her understanding it was performing the same functions in essentially the same manner as the prior version, so although she could not testify how the software ran on a given date at a given time, she could testify reliably as to how the software generally worked.  Grande's objection that she cannot know how it worked at a given point in time goes to the underlying facts and data on which Fredericksen-Cross relied, and thus to the weight that should be accorded her testimony, not its admissibility.  Thus, its complaints with those facts and data are not sufficient to support the exclusion of her testimony, and instead are the proper subject of cross examination.

Grande's objection to the testimony about the accuracy of the information contained in the Rightscorp's notices misses the mark.  Fredericksen-Cross is designated as a computer expert, and is not offering testimony on who owned the copyrights at issue, whether digital fingerprinting or other methods determined that the works Rightscorp detected on Grande's network are copies of the works in suit, or whether the IP addresses, port information, and dates of alleged infractions are accurate.  Instead, in summary, she intends to testify about how Rightscorp functions, the data the software is supposed to gather, and whether, in her opinion, the software was in fact reliably capable of gathering, and did in fact gather, that data.  The significance of the actual data it gathered, and whether that data demonstrates Grande's users were committing copyright infringement of the works

owned by UMG, is addressed by other evidence and testimony. The Court therefore overrules this objection.

Finally, Grande contends Fredericksen-Cross's testimony on BitTorrent technology should be excluded because she lacks the qualifications to give expert testimony on this technology. Though the Court agrees that Fredericksen-Cross may not be an expert specifically on BitTorrent itself, she is a skilled computer programmer with many years experience, has researched BitTorrent, its source code, and internet traffic related to BitTorrent. Her testimony on BitTorrent is peripheral to her opinions, and is background material. Importantly, Grande does not argue that any of her testimony in this area is incorrect. Such uncontroversial background testimony about how BitTorrent functions is permissible, and, once again, if Grande believes it is inaccurate, it is free to explore that during cross examination.

Grande's motion to exclude the testimony of Barbara Fredericksen-Cross (Dkt. No. 214) is therefore **DENIED**.

**C.     Grande's Motion to Exclude Terrence P. McGarty (Dkt. No. 221)**

Terrance McGarty has a doctorate in Electrical Engineering and Computer Science from the Massachusetts Institute of Technology, and has been a university professor in these fields for over thirty years. UMG designated McGarty to testify on issues relating to Grande's invocation of the DMCA safe harbor defense. In his March 13, 2019, Order, Judge Ezra granted summary judgment on this issue and found that Grande is precluded from asserting an affirmative defense pursuant to the DMCA safe harbor provision. Dkt. No. 268. Because summary judgment has been entered on this issue, the Court will deny the motion to exclude McGarty as moot.

**D.      Grande's Motion to Exclude William Lehr (Dkt. No. 228)**

William Lehr is Plaintiffs' economic expert. He is employed as a research scientist at the Massachusetts Institute of Technology Computer Science and Artificial Intelligence Laboratory. He has a Ph.D. in economics from Stanford University, an MBA from Wharton Business School and undergraduate degrees from the University of Pennsylvania. He has worked as a telecommunications and internet industry economist and consultant for over twenty-five years. UMG has designated him to testify regarding damages, specifically the "lifetime value" to Grande of subscribers who have been accused of repeat copyright infringement, the economic harm suffered by copyright holders from internet piracy, and public policy reasons to hold an ISP liable for its customers' copyright infringement.

Grande contends that the "problems with Dr. Lehr's proposed testimony are legion." Dkt. No. 228 at 1. It argues that his calculation of the "lifetime value" to Grande of "repeat infringers" is flawed, both because he includes in his analysis not only the fees Grande customers pay for internet access, but also the fees for phone and cable service, and because he counts "virtually every Grande subscriber who has ever been accused of copyright infringement more than one time." *Id.* Grande also asserts that his testimony regarding the economic harm to the music industry from piracy, and the public policy benefits that would flow from holding an ISP like Grande secondarily liable for its subscribers' actions, is outside the scope of his expertise and irrelevant.

On the first point, whether Lehr's calculations are inflated is a factual issue, best explored through cross examination. Lehr based his calculation on Grande's own revenue records, as well as records related to the acquisition of Grande in 2017, and upon a reasonable methodology, all that is required by *Daubert*. Far more importantly, Judge Ezra expressly rejected these exact arguments

in his summary judgment ruling, finding that "Grande's objections to the sufficiency of [Lehr's report] are not persuasive." Dkt. No 268 at 47-48 n.8 (rejecting Grande's objection to Lehr not limiting himself to the specific customers identified by Rightscorp, to him including every customer who had more than one instance of infringement, and to considering not only Grande's internet revenues for these customers, but also their phone and cable revenues as well).

On its second objection, Grande makes two arguments. First, it contends that Lehr does not have the requisite qualifications to testify about the economics of the music industry, and the impacts of piracy on that industry. The Court disagrees. As already noted, Lehr is a highly qualified economist, with a research appointment at MIT, a Ph.D. from Stanford and an MBA from the Wharton School. Analyzing an industry and opining on topics like the economic impact on that industry of piracy, and the public policy benefits of holding ISPs secondarily liable for the infringement of their subscribers, is squarely within the scope of his expertise. Whether such testimony is relevant, however, is a different question. UMG argues that the testimony is relevant to the jury's calculation of statutory damages, as well as to the question of whether any infringement was willful. Grande disagrees, and contends that such testimony is not admissible to assist the jury in determining statutory damages. The briefing on this precise question—what evidence is relevant and admissible on the issue of statutory damages—is cursory, given that the motion before the Court is a *Daubert* motion, not a motion in limine. For this reason, and also because the undersigned will not be the trial judge in this case, the Court will not opine about the relevance of this testimony here, and directs Grande to raise that argument either at trial or in a motion in limine. But it is not a basis

on which the Court need exclude Lehr's testimony, which is the focus of the present motion. Grande's motion to exclude the testimony of William Lehr (Dkt. No. 228) is **DENIED**.[4]

E.  **UMG's Motion to Exclude Testimony of Dr. Geoff Cohen (Dkt. No. 233)**

Geoff Cohen holds a Ph.D in Computer Science from Duke University. He has over 30 years of experience programming computers and holds five United States patents for software inventions. He is currently employed as a Vice President of Intellectual Property at Stroz Friedberg, an Aon Company, where he acts as a technical consultant to firms in litigation matters relating to computer science. Grande has designated him to testify on the functionalities of Rightscorp's system and to rebut the testimony of Fredericksen-Cross. In a nutshell, Cohen intends to testify that the Rightscorp system is only capable of detecting when a file is made available for sharing, and is "incapable of detecting uploads, downloads or actual sharing on peer-to-peer networks." Dkt. No. 232, Ex. A at ¶ 25.

UMG argues that Cohen's testimony should be excluded because his testimony that the Rightscorp system cannot detect file sharing is factually incorrect. UMG points out that the Rightscorp system downloaded copies of UMG-owned songs from Grande's customers, and that it produced to Grande a hard drive with what it claims are 59,000 examples of such downloads. UMG argues that Cohen's decision to ignore this uncontroverted evidence that is contrary to his opinion makes his testimony unreliable and inadmissible. Grande responds that "Rightscorp's process for downloading music files from individual peers is separate and distinct from Rightscorp's detection-and-notice processes," and that Cohen's opinion is that the Rightscorp software is unable

---

[4]Grande also objected to Lehr's rebuttal report for the same reasons it objected to Fredericksen-Cross's and Bardwell's rebuttal reports—that it is a "sur-rebuttal" report not allowed under the scheduling order. For the reasons already stated, that argument is rejected.

to "detect file sharing between third parties." Dkt. No. 239 at 1-2. Grande contends the fact that Rightscorp was able to download files from Grande's customers is not inconsistent with Cohen's opinions (presumably because Grande does not consider Rightscorp a "third party"). Though the Court tends to agree with UMG that this latter argument makes a distinction without a difference,[5] it remains a factual matter that is best handled by cross-examination and does not render Cohen's testimony inadmissible.

Relatedly, UMG argues that Cohen's failure to analyze the part of the Rightscorp system that downloads files, or to examine the 59,000 files it contends were actually downloaded from Grande subscribers, and his decision to ignore the tests Fredericksen-Cross ran on the reliability of the software, renders Cohen's opinions unreliable as lacking in a factual basis. With regard to the tests, Grande correctly notes that Cohen did address those tests, and criticized the manner in which they were constructed. Dkt. No. 233-1 at ¶¶ 100-102. On the other points, Grande repeats its response to UMG's first argument, and adds that UMG cannot complain about Cohen's failure to analyze the hard drive files because "Ms. Frederiksen-Cross did not even mention any evidence of downloaded music files in her opening report." *Id.* at 2.[6] This latter argument goes more to whether Cohen's late supplement should be allowed, than to the admissibility of Cohen's testimony. Whether Cohen consciously disregarded evidence inconsistent with his opinion about the ability of the software to demonstrate actual copying is something that may be addressed upon cross examination, and which

---

[5]In March 2019, Grande submitted a supplemental report from Cohen in which he makes a detailed analysis of the 59,000 files contained on the hard drive, and opines about whether they are evidence that Rightscorp downloaded copyrighted songs from Grande subscribers. That report is not the subject of this motion, and whether the supplement should be permitted is addressed in a separate order issued this date.

[6]As UMG notes, this does not appear to be an accurate statement. *See, e.g.*, Dkt. No. 232-2 at ¶ 60-66; 122.

13

the jury can consider in deciding the weight it chooses to give his testimony. The Court **DENIES** UMG's Motion to Exclude Proposed Expert Testimony of Dr. Geoff Cohen (Dkt. No. 233).

F.        **UMG's Motion to Exclude Jonathan Kemmerer (Dkt. No. 265)**

Jonathan Kemmerer is a Certified Public Accountant licensed by the State of Texas, and the founder of Applied Economics Consulting Group. Grande has designated Kemmerer to testify on a number of damages issues: whether UMG lost revenue from Grande customers' infringement; the appropriate amount of statutory damages; the value of the asserted copyrights; and whether UMG could have mitigated its damages.[7] UMG moves to exclude his testimony on several grounds, contending: (1) his lost profits analysis is "critically flawed" and "vastly understates the actual amount of copyright infringement;" (2) his opinion that Grande does not benefit from allowing infringement on its network "is wholly divorced from logic;" (3) his opinion on statutory damages "lacks any recognized methodology;" and (4) as an accountant with no music industry experience, he is unqualified to opine about ways that recording companies could mitigate damages from piracy.

The first two of these arguments suffer from the same problem that many of Grande's expert objections suffer from—disagreement with an expert's conclusions alone cannot support the exclusion of the expert's testimony. Thus, just as the Court rejected Grande's objection that UMG's damage expert (Lehr) "artificially inflated" his damage calculations, it will also reject UMG's complaint that Kemmerer's calculation is "vastly understate[d]." As the court noted at the outset, the proponent of expert testimony does not have to demonstrate it is correct, only that the expert is qualified and that the testimony is relevant and reliable. *Moore*, 151 F.3d at 276. "Vigorous

---

[7]Kemmerer had also offered opinions that the records produced by UMG did not demonstrate that it owned the copyrights in all of the songs at issue. UMG objected to this testimony as well, but that issue is now moot as the Court has ruled that UMG may rely on evidence produced after Kemmerer's opinions to cure the problems with its documentation of ownership.

14

*cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. The same is the case for UMG's argument that Kemmerer's opinion is "divorced from logic," and the Court overrules that objection as well.

The third objection relates to a topic the Court touched on earlier—the scope of evidence admissible when a plaintiff is seeking statutory damages for copyright infringement. Both parties appear to agree that the amount of statutory damages is an issue for the jury to decide, but they disagree about whether expert testimony should be allowed on that topic. As the Court noted with regard to UMG's damages expert, the "briefing on this precise question—what evidence is relevant and admissible on the issue of statutory damages—is cursory, given that the motion before the Court is a *Daubert* motion, not a motion in limine." The same is the case regarding the Kemmerer briefing, and the Court therefore overrules this objection, and will leave it to the parties to address this issue with a motion in limine or trial brief, so that Judge Ezra can address that at trial.

For its final objection, UMG seeks to exclude Kemmerer's opinions on ways that UMG could have mitigated its damages, suggesting, among other things, that instead of suing Grande, UMG could have sued the users themselves or BitTorrent, and could have used more or better encryption technology to protect their music. UMG points out that Kemmerer is a CPA with no background in the music industry, music encryption or theories of legal liability for music piracy. Likely because these are all valid arguments, Grande's response argues that this doesn't matter because "the mitigation issues in this case are straightforward and require no technical expertise or music company experience." Dkt. No. 269 at 9. If that is true, then neither Kemmerer's nor any other expert's testimony on this topic would be admissible under Rule 702. But the Court does not

accept the premise that testifying about how recording companies might protect themselves from piracy "require[s] no technical expertise or music company experience." Because Kemmerer totally lacks the qualifications to address that topic, the Court will grant UMG's motion as to this aspect of Kemmerer's testimony.

Accordingly, UMG's motion seeking to exclude the testimony of Jonathan Kemmerer (Dkt. No. 27) is **GRANTED** with regard to the topic of mitigation of damages, and **DENIED** in all other respects.

### III. SUMMARY OF RULINGS

To summarize, the Court makes the following rulings on the parties' *Daubert* motions:

- Grande's Motion to Exclude Proposed Expert Testimony of Robert A. Bardwell (Dkt. No. 210) is **DENIED**.

- Grande's Motion to Exclude Proposed Expert Testimony of Barbara Fredericksen-Cross (Dkt. No. 214) is **DENIED**.

- Grande's Motion to Exclude Proposed Expert Testimony of Dr. Terrence P. McGarty (Dkt. No. 221) is **DENIED AS MOOT**.

- Grande's Motion to Exclude Proposed Expert Testimony of William Lehr (Dkt. No. 228) is **DENIED**.

- UMG's Motion to Exclude Proposed Expert Testimony of Dr. Geoff Cohen (Dkt. No. 233) is **DENIED**.

- UMG's Motion to Exclude Proposed Expert Testimony of Jonathan Kemmerer (Dkt. No. 265) is **GRANTED** with regard to testimony on mitigation of damages, and **DENIED** in all other respects.

SIGNED this 16th day of July, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE