**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> GRANDE COMMUNICATIONS ) <br> NETWORKS LLC, ) <br> ) <br> Defendant. ) <br> ) | No. 1:17-cv-00365-DAE-AWA |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S**
**OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON MOTIONS TO STRIKE**

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ............................................................................................................................. 2

ARGUMENT .................................................................................................................................. 6

    I.    It would be Clear Error to Allow Plaintiffs to Serve Another Supplemental Report ................................................................................................................................ 6

    II.    It Would be Clear Error to Conclude that Grande's Supplemental Report was Untimely or Somehow Prejudiced Plaintiffs' Ability to Prepare for Trial .................. 7

    III.    The Court Applied the Wrong Standard When Assessing Prejudice .......................... 10

CONCLUSION .............................................................................................................................. 10

TABLE OF AUTHORITIES

**Cases**

*Bankston v. Kansas City S. RR*, 03-577-A-M2, 2005 WL 8155221 (M.D. La. Oct. 17, 2005) ...... 9
*Jonibach Mgmt Trust v. Wartburg Enters.,* 136 F.Supp.3d 792 (S.D. Tex. 2015) ....................... 10
*Norton v. Assisted Living Concepts, Inc.*, 786 F.Supp.2d 1173 (E.D. Tex. 2011) ....................... 10
*Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546 (5th Cir.2004) ............................... 10

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 9

## **INTRODUCTION**

Pursuant to Rule 72(a) and Rule 4(a) of Appendix C of the Court's Local Rules, Grande objects to Magistrate Judge Austin's Order on Plaintiffs' Motion to Strike the Expert Report of Dr. Geoff Cohen. Because the Order is based on clearly erroneous factual findings and a misapplication of Rule 37, Grande requests the Court set aside the Order to the extent it allows Plaintiffs to submit an additional expert report and recover attorneys' fees and costs.

*First*, Plaintiffs' technical expert has already authored a rebuttal expert report and declaration that each address the evidence discussed in Grande's supplemental report. In light of the present facts, it would be clear error to allow Plaintiffs to issue yet another report, especially addressing evidence supporting their case in chief, which should have been addressed in Plaintiffs' opening reports. *Second*, Plaintiffs, and not Grande, should be held responsible for Plaintiffs' failure to properly disclose their evidence and positions in discovery. Given the facts, and the parties' agreement that each could supplement its reports based on later discovered evidence, there is no basis to conclude that Grande's supplementation is improper or untimely. *Third*, the Court awarded fees and costs under the wrong legal standard. The law is clear that the prejudice inquiry focuses only on whether a party's *ability to prepare for trial* has been compromised, not whether the party will be prejudiced by *use of the proposed evidence at trial*. Contrary to the law, the Court found prejudice based exclusively on the latter framework.

It is unclear whether Plaintiffs failure to identify its evidence was a purposeful attempt to limit Grande's scrutiny of problematic evidence or the result of a simple oversight. Either way, Plaintiffs' behavior in discovery left Grande unaware of Plaintiffs' intentions to rely on the Song Files as evidence of infringement at trial. After Grande learned of Plaintiffs' intentions, it timely supplemented its expert report. Grande's supplementation was appropriate, Plaintiffs have

1

suffered no prejudice, and there is no basis to require Grande to reimburse Plaintiffs for the cost of another expert report, especially one that addresses evidence Plaintiffs intend to use to support their case in chief.

## BACKGROUND

Plaintiffs failed to properly disclose evidence and positions during discovery. These failures relate to a collection of roughly 59,000 song files that Plaintiffs assert were downloaded from Grande's subscribers (the "Song Files") as well as a declaration assessing those files, an excel spreadsheet relating to those files, and a set of RFP responses that relate to the operation of the Rightscorp System in a number of respects. Plaintiffs produced the Song Files but did not identify them as evidence of infringement. The other materials were not even timely produced.

Plaintiffs took possession of the Song Files many months before filing this case. *See* ECF No. 202-1 (RIAA-Rightscorp Agreement). Yet, Plaintiffs failed to refer to those files in their Complaint.[1] Essentially the entire lengthy Factual Background of Plaintiffs' Complaint was dedicated to a detailed discussion of the copyright notices that Rightscorp generated and sent to Grande, with no mention of the Song Files. Similarly, in their initial disclosures Plaintiffs listed the copyright notices as a category of evidence they intended to use to argue infringement, but neglected to reference the Song Files. *See* Ex. 1[2] (Pls. Initial Disclosures).[3] In both instances, Plaintiffs had the Song Files and *chose* not to identify them.

---

[1] Plaintiffs argue that the Complaint makes reference to "downloaded audio files (the contents of the hard drive)." ECF No. 276 at 3. Plaintiffs are incorrect. The only vague reference to Rightscorp's ability to download files appears in ¶ 43 of the Complaint, ECF No. 1. That single sentence states that Rightscorp has the *ability* to download files, not that Rightscorp actually captured downloads relating to the asserted works from Grande's subscribers. Plaintiffs tried to slip additional language of the latter variety into its amended complaint. ECF No. 85-4 at ¶ 45. When the Court denied that amendment, Plaintiffs still failed to amend their discovery responses to identify the Song Files as evidence of infringement.

[2] Exhibits refer to those identified in the contemporaneously filed Brophy Declaration.

In discovery, Grande served a pair of interrogatories specifically directed at understanding what evidence Plaintiffs would use to argue infringement at trial. *See* ECF No. 141-5 (Pls. Resp. to 2nd Set of Interrogatories) at Rogs 13 and 14. In response, Plaintiffs served seven pages of narrative that laid out their infringement case. But again, Plaintiffs failed to make any reference to the Song Files. Plaintiffs had the Song Files and *chose* not to identify them.

During expert discovery, Plaintiffs' own experts were apparently also kept from knowing about the Song Files. One of those experts, Ms. Barbara Frederiksen-Cross, was specifically retained to review and opine on the Rightscorp System and the infringement evidence gathered against Grande. ECF No. 177-1 (Frederiksen-Cross Report) at ¶ 4. Despite this, none of Plaintiffs' experts listed the Song Files as materials they had received or reviewed and none cited or analyzed the Song Files in their report. This is particularly noteworthy considering Plaintiffs seek to offer the Song Files as affirmative evidence supporting their case for infringement, yet they failed to reveal that evidence for their own experts to analyze.

By the close of fact and expert discovery, Grande was left with initial disclosures (original and amended) that failed to identify the Song Files, interrogatory responses that failed to list or discuss the Song Files as evidence of infringement, and a set of expert reports reflecting the fact that none of the experts received or reviewed the Song Files in rendering their opinions.

Under these circumstances, Grande respectfully asserts that it was not on notice of Plaintiffs' apparent intention to use the Song Files as key evidence of infringement in this case.

This all changed once discovery closed and Grande finalized its expert reports. In response to Grande's technical expert report, Plaintiffs served a "rebuttal" report which, for the first time, identified and relied on the Song Files as key evidence of infringement. ECF No. 177-

---

[3] Plaintiffs served Supplemental Initial Disclosures a month later and failed again to mention the files. See Ex. 1 (Pls. 1st Suppl. Initial Disclosures).

3 (Frederiksen-Cross "Rebuttal" Report).  Shortly thereafter, Plaintiffs filed their opposition to Grande's summary judgment motion, and it was similarly littered with references to the Song Files as evidence of infringement.  ECF No. 172.

These two papers, submitted less than two weeks apart and well after the close of discovery, presented a seismic shift in Plaintiffs' position and focus on the Song Files.  For the first time in the litigation, Plaintiffs were *explicitly, repeatedly and emphatically* relying on the Song Files as key evidence of infringement that validated Rightscorp's copyright notices.  Plaintiffs' opposition brief also referenced for the first time a detailed analysis of the Song Files conducted by Plaintiffs' trade association, the RIAA.  This was yet more evidence that Plaintiffs had never identified—or even produced—in discovery.

After receiving these papers, Grande immediately began working on a supplemental technical expert report to address Plaintiffs' new positions and evidence.  Grande also scheduled the deposition of Mr. Jeremy Landis, the RIAA employee responsible for the Song File analysis cited in Plaintiffs' opposition brief.  *See* Ex. 2 (Oct. 11, 2018 Email from M. Szewczyk; Oct. 19, 2018 Email from Z. Howenstine).  It took three months for Plaintiffs to produce privilege logs and, thereafter, produce Mr. Landis for deposition.  *Id*. (Nov. 12, 2018 Email from R. Gilmore).  The day before that deposition, Plaintiffs also finally produced the RIAA's corporate representative, Ms. Victoria Sheckler, for deposition.  During these two depositions, Grande uncovered even more information that had been withheld in discovery—this time a series of technical RFPs and responses exchanged between the RIAA and Rightscorp reflecting Rightscorp's software and monitoring capabilities.  Grande sought the immediate production of those materials.  At that time, Grande informed Plaintiffs that it was preparing a supplemental

4

report from its technical expert, but that it needed to review the requested materials before finalizing and serving the report.[4] *Id*. (Jan. 11, 2019 Email from R. Brophy).

Around this time, the parties also conducted a meet and confer during which Plaintiffs agreed to produce an excel spreadsheet that contained data from Rightscorp pertaining to the Song Files. *Id.* (Jan. 18, 2019 Email from R. Gilmore); *see also* ECF No. 274-4. Although Plaintiffs produced the requested RFP and response materials relatively quickly, it took six more weeks and a series of pestering emails from Grande before Plaintiffs finally produced the spreadsheet data for the Song Files. *Id*. (Feb. 22, 2019 Email from R. Brophy; Feb. 4, 2019 Email from Z. Howenstine; Feb. 5, 2019 Email from Z. Howenstine; Feb. 18, 2019 Email from Z. Howenstine).

*Seven business days* after Plaintiffs served Grande with the excel spreadsheet pertaining to the Song Files, Grande served its rebuttal report.[5] ECF No. 272-1 (Cohen Supp. Rep.).

In an effort to stop Grande's expert from rebutting their late-disclosed positions, Plaintiffs scoured the record for any faint, indirect reference they could use to argue that they had put Grande on notice of their intention to rely on the Song Files as evidence. Using those spurious, peripheral references, Plaintiffs filed the present motion to strike Grande's expert report as untimely. As discussed below, the evidence Plaintiffs scraped together to attempt to prove Grande was on notice pales in comparison to the glaring and rampant omissions from Plaintiffs' key discovery disclosures in this case.

---

[4] Plaintiffs did not express any opposition to Grande's proposed supplementation, which was expressly permitted by stipulated agreement. *See id*. (July 17, 2018 Email from R. Brophy).
[5] In its Order, the Court concludes that "Grande does not have a good explanation for waiting until March to have Dr. Cohen address the files on the hard drive…." Order at 11. Grande respectfully disagrees. As the foregoing facts reflect, Grande was waiting for Plaintiffs to complete their production of materials and witnesses—each directly relevant to the report—until seven business days before Grande served Dr. Cohen's report.

5

# ARGUMENT

## I. It would be Clear Error to Allow Plaintiffs to Serve Another Supplemental Report

Plaintiffs served an opening report from their technical expert, Ms. Frederiksen-Cross. That report indicates that Ms. Frederiksen-Cross was retained to "perform an independent assessment of the Rightscorp infringement detection and notification system in order to assess the methodologies Rightscorp uses for monitoring, verifying, and enforcing online infringement" and to "[s]ummarize the nature of the data collected by the Rightscorp system with respect to the activities of Grande's subscribers." ECF No. 141-1 at ¶ 4. Despite the clear focus of her report, Plaintiffs failed to disclose the Song Files to Ms. Frederiksen-Cross and she failed to analyze them. *See* ECF No. 177-1 (Ex. B to Frederiksen-Cross Rep. "Materials Received or Reviewed").

On August 31, 2018, after Grande served its own technical expert report, Plaintiffs served a "rebuttal" report in which Ms. Frederiksen-Cross finally cited and addressed the Song Files for the first time. For example, this second report expressed the opinion that:

> Rightscorp has received at least 59,805 copies of files from IP addresses assigned to Grande subscribers. In my opinion, the ability of the Rightscorp system to download a file from a peer using BitTorrent is evidence that a copy of the file is being made by the peer from which the file was requested. Further, this evidence confirms that Grande IP addresses identified via Rightscorp's infringement detection process are creating copies of files and distributing them to others.

ECF No. 177-3 at ¶ 36; *see also id.* at 13, 15, 20, 28, 31, 32, 34, 36, 40, 43, 53, 54, 56, 57, 64. These opinions and evidence allegedly support Plaintiffs' case in chief and were supposed to be disclosed in Plaintiffs' opening reports, as required by the scheduling order. ECF. No. 66 at ¶ 2.

In January of this year, Ms. Frederiksen-Cross also submitted a declaration that addressed the Song Files. ECF No. 254-1 at ¶ 3(e). Plaintiffs recently indicated that they intend this declaration to be treated as another supplemental expert report. *See* Ex. 2 (June 10, 2019 Email from R. Gilmore).

6

As a result of the foregoing, Ms. Frederiksen-Cross has served at least two expert reports addressing the Song Files, both of which were disclosed well after the fact and expert discovery cutoffs. Pursuant to the Court's current Order, the Court's view is that she also addressed the Song Files in her opening report. *See, e.g.,* Order at 8. That would make a third expert report from Ms. Frederiksen-Cross addressing the Song Files. Given the fact that Plaintiffs had the Song Files before they filed this lawsuit, had the ability to address the Song Files in their opening reports, and subsequently served two reports that specifically addressed the files, it would be inappropriate to now afford Plaintiffs a third—or fourth—opportunity to submit an expert report on this evidence. This is especially true considering any such report would address evidence that Plaintiffs should have included in their opening reports *as part of their affirmative case*.

## II. It Would be Clear Error to Conclude that Grande's Supplemental Report was Untimely or Somehow Prejudiced Plaintiffs' Ability to Prepare for Trial

Rule 26(e) requires parties to supplement an expert report "if the party learns in some material respect the disclosure or response is incomplete or incorrect." The parties also stipulated that each would "be permitted to amend its expert reports based on discovery received subsequent to the service of those reports." *See* Ex. 2 (July 17, 2018 Email from R. Brophy).

When Grande served its opening technical expert report, Grande believed that report was complete. The report addressed all of the evidence that Plaintiffs indicated they would use as proof of infringement at trial. Once it became clear that Plaintiffs intended to rely on the Song Files as additional evidence, Grande prepared and served a supplemental report *nine days after receiving the complete set of Plaintiffs' evidence* relating to the Song Files. Grande's supplementation was timely and in no way prejudices Plaintiffs' ability to prepare for trial.

In its Order, the Court concludes that it is "not credible for [Grande] to claim it did not know that UMG was relying on the downloaded music files to support its case in chief." Order

7

at 7. The Court then cites five sources as proof that Plaintiffs were relying on the Song Files as evidence of infringement, including: (1) an interrogatory response; (2) the Complaint; (3) the hearing on Grande's motion to dismiss; (4) production of the hard drive itself[6]; and (5) the initial report of Ms. Frederiksen-Cross. *Id.*

Grande disagrees that any of the foregoing materials put Grande on notice of Plaintiffs' intention to use the Song Files as evidence, let alone central evidence, in support of their claims.

The Complaint and hearing on Grande's motion to dismiss did not put Grande on notice. The single line of the Complaint cited by Plaintiffs merely references Rightscorp's *capability* to acquire files. That lone sentence does not indicate that (1) Plaintiffs actually acquired files from Grande, (2) that any such files relate to the copyrights at issue in this case, or (3) that Plaintiffs intend to rely on such files as evidence of infringement at trial. *See* ECF No. 1 at ¶ 43.

Likewise, during the hearing on Grande's motion to dismiss, counsel mentioned that the Rightscorp System is *capable* of downloading files, but he never referenced the Song Files or indicated that Plaintiffs intended to rely on any such files as evidence of infringement. *See* ECF No. 64 at 30-32.[7] Counsel's statements are also vague, given that Rightscorp's system downloads song files from the BitTorrent swarm and *also potentially* from individual subscribers. Counsel's statements are ambiguous as to which download he is referencing. Those statements also do not obviate Plaintiffs' duty to respond to interrogatories. Despite the statements he made at oral argument, shortly afterward counsel served discovery responses that *failed to identify the Song Files as evidence. See* ECF No. 141-5 at Rogs 13 and 14.

---

[6] It is axiomatic that mere production of a document in fact discovery provides no notice of how or whether a party intends to use that document at trial.

[7] It is worth noting that Plaintiffs' counsel was wrong when he stated that the Complaint pleads that each asserted copyright listed in Exhibit A was actually downloaded from a Grande subscriber. ECF No. 1; *compare to* ECF No. 64 at 31:25-32:6 ("we plead that Exhibit A represents a sample of the copyrighted sound recordings actually downloaded…").

8

The Order also relies on the fact that Plaintiffs identified the Song Files in response to an interrogatory as evidence of notice. But, the interrogatory in question ("Interrogatory 20") sought a description of the relationship between Rightscorp and the owner of each allegedly infringed copyright. *See* ECF No. 173-96 at 3. The Song Files are not remotely relevant to that interrogatory, and it is unclear why Plaintiffs even referenced those files in their response. It is also unclear how reference to the Song Files in response to this unrelated interrogatory somehow put Grande on notice that Plaintiffs intended to rely on the Song Files *as evidence of infringement*. The interrogatory the Court relies on does not pose that question, and Plaintiffs' response to the interrogatories that do pose that question fail to make any reference to the Song Files. Compare *id*. at Rog 20 with ECF No. 141-5 at Rog 13, 14; *See* Fed. R. Civ. P. 26; *Bankston v. Kansas City S. RR*, 03-577-A-M2, 2005 WL 8155221, *2 (M.D. La. Oct. 17, 2005) (finding the requesting party was "entitled to rely on [the producing party's] discovery responses as true…"). Grande assumed Plaintiffs' responses to Interrogatories 13 and 14 were accurate, and did not believe Plaintiffs intended to rely on the Song Files as evidence of infringement.

The Court's Order also indicates that Ms. Frederiksen-Cross mentions the Song Files in her initial report. Order at 8 (citing statements from the report regarding the "software's ability to make copies" and to "create an evidentiary record"). *Id*. These are merely references to the Rightscorp System's *capabilities*. Ms. Frederiksen-Cross's report does not include a single citation to the Song Files. *See* ECF No. 177-1. It does not even state that she received the files.

It would be clear error to conclude, even with the benefit of hindsight, that the bits and pieces of spurious material Plaintiffs identified put Grande on notice of Plaintiffs' positions. This is particularly true in view of Plaintiffs' wholesale failure to identify the Song Files in its initial disclosures, relevant interrogatory responses and opening expert reports.

9

**III.     The Court Applied the Wrong Standard When Assessing Prejudice**

It would be clear error to find that Plaintiffs suffered prejudice as a result of the timing of Grande's report. The Order explicitly found that no prejudice exists: "though there is a trial date, it is seven months away, which is enough time for UMG to consider and respond to Cohen's new opinions." Order at 10. *See, e.g., Jonibach Mgmt Trust v. Wartburg Enters.,* 136 F.Supp.3d 792, 804-05 (S.D. Tex. 2015); *Norton v. Assisted Living Concepts, Inc.*, 786 F.Supp.2d 1173, 1189 (E.D. Tex. 2011); *Primrose Operating Co. v. Nat'l Am. Ins. Co*., 382 F.3d 546, 564 (5th Cir.2004) (finding late disclosure of expert testimony to be harmless error).

The Court's award of fees and costs is also based on a misapplication of Rule 37. The Order states that "[t]he second factor under Rule 37 is the prejudice UMG would suffer *if Grande is allowed to use Cohen's new opinions at trial*." Order at 9 (emphasis added). The appropriate inquiry "focuses on whether the non-disclosing party's failure to comply with Rule 26 prejudiced the other party's ability to prepare for trial, *not on whether the party will be prejudiced by the use of the evidence at trial*." *Jonibach*, 136 F. Supp. 3d at (emphasis added). Because the Court has already found that Plaintiffs' ability to prepare for trial was unaffected by Grande's report, there is no prejudice and the Court should not award fees and costs.[8]

## CONCLUSION

For the foregoing reasons, this Court should set aside its Order to the extent it allows Plaintiffs to serve another expert report and requires Grande to reimburse Plaintiffs for any attorney fees and costs.

---

[8] Grande also notes that Plaintiffs have already agreed to produce Ms. Frederiksen-Cross for another deposition. *See* Ex. 2 (June 10, 2019 Email from R. Gilmore). It will be difficult or impossible to distinguish between the fees and costs related to deposing her on those existing issues and the fees and costs addressed by the Court's Order.

10

Dated: July 30, 2019

        Respectfully submitted,

By: /s/ Richard L. Brophy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Armstrong Teasdale LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
mszewczyk@armstrongteasdale.com

J. Stephen Ravel
Texas State Bar No. 16584975
J.R. Johnson
Texas State Bar No. 24070000
Diana L. Nichols
Texas State Bar No. 00784682
Kelly Hart & Hallman LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Telephone: 512.495.6429
Fax: 512.495.6401
steve.ravel@kellyhart.com
jr.johnson@kellyhart.com
diana.nichols@kellyhart.com

Attorneys for Defendant GRANDE COMMUNICATIONS NETWORKS LLC