**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. **1:17-cv-00365-DAE-AWA** |
| | ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS, LLC'S**
**OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON**
**<u>DEFENDANT'S MOTIONS TO EXCLUDE EXPERT TESTIMONY</u>**

TABLE OF CONTENTS

I. GRANDE'S OBJECTIONS ............................................................................................. 1

II. STANDARD OF REVIEW .............................................................................................. 2

    a. Standard of Review for Objections to Magistrate Judge's Order. ................... 2

    b. Standard for Excluding Proposed Expert Witness Testimony ........................ 2

III. THE COURT SHOULD EXCLUDE THE PROPOSED TESTIMONY FROM DR. LEHR ................................................................................................................ 3

    a. Dr. Lehr's "Lifetime Value" Opinions are Unreliable. ................................... 3

    b. Dr. Lehr's "Incentive" Opinion is Unreliable .................................................. 4

    c. Dr. Lehr Has No Specialized Knowledge about the Music Industry or Piracy ................................................................................................. 6

    d. Dr. Lehr Has No Specialized Knowledge about the Public Policy Benefits of Copyright Enforcement. ................................................................ 7

IV. THE COURT SHOULD EXCLUDE THE PROPOSED TESTIMONY FROM DR. BARDWELL ........................................................................................................... 7

    a. Dr. Bardwell's Opinions are Based on Unsupported Assumptions. ................ 7

    b. Dr. Bardwell Lacks Specialized Knowledge of Internet Protocols or Peer-to-Peer File Sharing. ............................................................................ 8

    c. Dr. Bardwell Lacks Specialized Knowledge about the Technical Aspects of Rightscorp's System. ..................................................................... 9

V. THE COURT SHOULD EXCLUDE THE PROPOSED TESTIMONY FROM MS. FREDERIKSEN-CROSS ...................................................................................... 10

    a. Ms. Frederiksen-Cross's Opinions on the Operation of Rightscorp Software are Unreliable. ................................................................................ 10

    b. Ms. Frederiksen-Cross's Opinions on the Accuracy of Rightscorp Notices are Not Based on Review of Any Record Evidence. ........................ 11

    c. Ms. Frederiksen-Cross Has No Specialized Knowledge about BitTorrent ...................................................................................................... 12

VI. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Castillo v. Frank,* 70 F.3d 382 (5th Cir. 1995) ...................................................................................2

*Choate v. State Farm Lloyds*, No. 03-cv-2111, 2005 WL 1109432
   (N.D. Tex. May 5, 2005)................................................................................................... 2

*Coleman v. Oracle USA, Inc*., No. 0:09-cv-3472, 2011 WL 2746187
   (D. Minn. July 14, 2011).................................................................................................. 8

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)............................................ 2

*Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) ....................................................................... 8

*Jacked Up, LLC v. Sara Lee Corp*., 291 F. Supp. 3d 795 (N.D. Tex. 2018) ............................ 8, 11

*Johnson v. Arkema, Inc*., 685 F.3d 452 (5th Cir. 2012)............................................................ 11, 12

*JRL Enters., Inc. v. Procorp. Assocs., Inc*., No. 2:01-cv-02893, 2003 WL 21284020
   (E.D. La. June 3, 2003) ................................................................................................... 8

*Loussier v. Universal Music Grp., Inc*., No. 1:02-cv-02447, 2005 WL 5644422
   (S.D.N.Y. Jun. 28, 2005) ................................................................................................. 6

*Marsteller v. Stanley Works*, No. 1:09-cv-00473-LY, 2010 WL 11571038
   (W.D. Tex. Aug. 26, 2010) ......................................................................................... 9, 13

*MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc*., 622 F.3d 361 (5th Cir. 2010) ..................... 4

*Newton v. Roche Labs., Inc*., 243 F. Supp. 2d 672 (W.D. Tex. 2002)............................................ 6

Defendant Grande Communications Networks, LLC ("Grande"), respectfully files its objections to the Magistrate Judge's Order on the parties' motions to exclude testimony (ECF No. 280) ("Order"), pursuant to Fed. R. Civ. P. 72(a) and Rule 4(a) of Appendix C of the Court's Local Rules.

## I. GRANDE'S OBJECTIONS

As detailed in Grande's briefing and set forth herein, Grande respectfully objects to the Magistrate Judge's Order because it is contrary to law in the following respects:[1]

1. Dr. Lehr's "lifetime value" opinions fail the tests of Fed. R. Evid. 702 because they are not based on sufficient facts and they are not the product of reliable principles and methods.

2. Dr. Lehr's "incentive" opinions fail the tests of Fed. R. Evid. 702 because they are not the product of reliable principles and methods, and they are outside of the scope of Dr. Lehr's specialized knowledge.

3. Dr. Lehr's opinions about the effects of piracy on the music industry and the public policy implications of copyright infringement fail the tests of Fed. R. Evid. 702 because they are outside the scope of Dr. Lehr's specialized knowledge.

4. Dr. Bardwell's opinions regarding supposed "repeat infringement" fail the tests of Fed. R. Evid. 702 because they are not based on sufficient facts and they are not the product of reliable principles and methods.

5. Dr. Bardwell's opinions regarding internet protocols, peer-to-peer file sharing,

---

[1] Grande objected to Plaintiffs' experts' opinions regarding "infringement," "infringers," and "repeat infringers" because those are legal conclusions, and the Magistrate Judge rejected those arguments "across the board," stating that they are not proper arguments under Rule 702. *See* Order at 3-4. Grande maintains its objection for the grounds stated in its briefs, and Grande will revisit the issue in motions *in limine*.

1

and the functioning of Rightscorp's software fail the tests of Fed. R. Evid. 702 because they are outside the scope of Dr. Bardwell's specialized knowledge.

6. Ms. Frederiksen-Cross's opinions regarding the functionality of Rightscorp's software fail the tests of Fed. R. Evid. 702 because they are not based on sufficient facts and they are not the product of reliable principles and methods.

7. Ms. Frederiksen-Cross's opinions regarding the accuracy of Rightscorp's notices fail the tests of Fed. R. Evid. 702 because they are not based on sufficient facts.

8. Ms. Frederiksen-Cross's opinions regarding BitTorrent fail the tests of Fed. R. Evid. 702 because they are outside the scope of Ms. Frederiksen-Cross's specialized knowledge.

## II.   STANDARD OF REVIEW

### a.   Standard of Review for Objections to Magistrate Judge's Order.

If a party timely objects to a magistrate judge's order on a non-dispositive matter, the district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also Castillo v. Frank,* 70 F.3d 382, 385 (5th Cir. 1995) (same). The district court reviews the magistrate judge's legal conclusions *de novo* and reviews the factual findings for clear error. *See Choate v. State Farm Lloyds*, No. 03-cv-2111, 2005 WL 1109432, *1 (N.D. Tex. May 5, 2005).

### b.   Standard for Excluding Proposed Expert Witness Testimony.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.* provides the analytical framework for determining whether expert testimony is admissible under Federal Rule of Evidence 702. 509 U.S. 579, 597 (1993). In *Daubert*, the Supreme Court emphasized that district courts are assigned a "gatekeeping role" with respect to the admissibility of expert testimony. *Daubert* thus entrusts the district court with "the task of ensuring that an expert's testimony both rests on a

reliable foundation and is relevant to the task at hand." 509 U.S. at 597. For expert testimony to be reliable, it must (1) be "based on sufficient facts or data," (2) be "the product of reliable principles and methods," and (3) have "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. For expert testimony to be relevant, it must "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (quoting Fed. R. Evid. 702).

### III. THE COURT SHOULD EXCLUDE THE PROPOSED TESTIMONY FROM DR. LEHR

The Magistrate Judge's decision to allow the proposed testimony from Dr. Lehr is contrary to law, because the proposed testimony is based on insufficient facts, it is the product of unreliable methods, and it is not within Dr. Lehr's area of specialized knowledge. Thus, the proposed testimony fails the tests of Rule 702 and *Daubert*.

#### a. Dr. Lehr's "Lifetime Value" Opinions are Unreliable.

The Magistrate Judge's decision to permit Dr. Lehr's "lifetime value" opinions was contrary to law, because those opinions are not "the product of reliable principles and methods" as required by Fed. R. Evid. 702(c). Rather, the opinions are artificially inflated by unreliable and specious methodology in order to present astronomical figures to the jury.[2]

One of the methods Dr. Lehr used to present an inflated figure was to simply take the price that TPG Capital paid to acquire ***all*** of Grande's assets and divide it by the number of Grande customers. Lehr Report, ¶ 37 & Ex. 12 (ECF No. 173-74). Dr. Lehr admitted that he doesn't know what assets were involved in the deal, nor how the deal was structured—and that if he did know those details, they could affect his opinion. *See* Lehr Dep. Tr. 124:7-21 (ECF No.

---

[2] The *Cox* court precluded Dr. Lehr from offering the same type of opinions. *See Cox Daubert* Order at 1 (ECF No. 228-2).

3

229-4). In other words, Dr. Lehr failed to consider all of the information relevant to his opinion, instead favoring a simplistic and imprecise calculation that would yield an inflated number preferred by Plaintiffs. Thus, Dr. Lehr's opinion fails the tests of Rule 702 because it is not based on "sufficient facts or data" and it is not "the product of reliable principles and methods." Fed. R. Evid. 702. Allowing the opinion would be contrary to law.

Dr. Lehr also seeks to present unreliable "lifetime value" figures that are inflated by revenues from services that are not at issue, such as TV and phone services. These services are not "reasonably related to the infringement," as required by controlling law. *See MGE UPS Sys., Inc. v. GE Consumer & Indus., Inc.*, 622 F.3d 361, 367 (5th Cir. 2010) ("In meeting its initial burden [under § 504(b)] . . . a copyright holder must show more than the infringer's total gross revenue from all its profit streams. Rather, 'gross revenue' refers only to revenue *reasonably related to the infringement*.") (emphasis in original) (quotations, citations, & alterations omitted). Because they are artificially inflated by irrelevant services, the "lifetime value" opinions are not the product of reliable methods, and allowing them would be contrary to law.[3] *See* Fed. R. Evid. 702(c).

### b. Dr. Lehr's "Incentive" Opinion is Unreliable.

Plaintiffs seek to offer unreliable and confusing testimony from Dr. Lehr regarding Grande's purported economic incentive to permit infringement. Dr. Lehr's "incentive" opinion is built on numbers that, by his own admission, are larded with information unrelated to the

---

[3] Grande notes that the Court addressed this issue in its March 15, 2019 summary judgment order. *See* ECF No. 268 at 47-48 n.8. Grande respectfully maintains that the opinion at issue is unreliable.

copyrights and subscribers at issue in this case.[4]

To argue that Grande has an economic incentive to permit infringement of Plaintiffs' copyrights, Dr. Lehr seeks to present artificially inflated numbers derived from notices of alleged infringement from entities *other than the Plaintiffs in this case*. Lehr Report, ¶ 41 (ECF No. 173-74). By including these irrelevant copyright owners and works, Dr. Lehr was able to inflate the figures in favor of Plaintiffs. In fact, Dr. Lehr's artificial findings are so unrelated to the actual number of works at issue here that he was forced to admit that those findings would not change *even if Plaintiffs alleged infringement of only a single work*. *See* Lehr Dep. Tr. 159:6-161:23 (ECF No. 229-4). The "incentive" opinions in Section VIII of Dr. Lehr's report are manifestly untethered to the facts of the case, and thus they are not "the product of reliable principles and methods." Fed. R. Civ. P. 702(c). The Court should not allow the jury to hear these unreliable opinions.

Dr. Lehr's proposed "incentive" testimony should also be excluded because it is irrelevant to the alleged contributory liability at issue in this case. The premise of Dr. Lehr's opinions on Grande's economic incentives to permit infringement is that Grande had two options: (1) terminate the accounts of alleged "repeat infringers" or (2) permit repeat infringement, and therefore face liability. In essence, Dr. Lehr seeks to opine that Grande's allegedly deficient policy for terminating repeat infringers—an issue relevant *only* to the DMCA safe harbor defense—is relevant to Grande's supposed incentives to allow infringing activity on its network. Dr. Lehr's opinion is *not* relevant to the contributory liability issue, and the safe harbor issue will not be presented to the jury. Thus, Dr. Lehr's opinion will not "assist the trier

---

[4] The *Cox* court precluded Dr. Lehr from offering the same type of opinions. *See Cox Daubert* Order at 1 (ECF No. 228-2).

5

of fact to understand the evidence or to determine a fact in issue" as required by Rule 702, and allowing the testimony would be contrary to law. Fed. R. Evid. 702; *see also Daubert*, 509 U.S. at 591 (noting that "this condition goes primarily to relevance" of the proposed testimony).[5]

### c. Dr. Lehr Has No Specialized Knowledge about the Music Industry or Piracy.

Plaintiffs seek to have Dr. Lehr hold forth about the effects of improper peer-to-peer file sharing on the music industry—even though Dr. Lehr has no specialized knowledge of peer-to-peer file sharing or the music industry.[6] See Lehr Report, Appx. A (ECF No. 173-74); Lehr Dep. Tr. 34:4-16 (ECF No. 229-4). In fact, Dr. Lehr's proposed testimony is based entirely on his review of third-party literature. Allowing this testimony would violate the requirement that a putative expert may only testify on matters within his "scientific, technical, or specialized knowledge." Fed. R. Evid. 702; *see also Loussier v. Universal Music Grp., Inc.*, No. 1:02-cv-02447, 2005 WL 5644422, at *3 (S.D.N.Y. Jun. 28, 2005) (excluding expert testimony relating to a copyrighted musical composition because neither the expert's C.V. nor her report indicated that she had any relevant music industry experience); *Newton v. Roche Labs., Inc.*, 243 F. Supp. 2d 672, 678 (W.D. Tex. 2002) ("O'Donnell has no relevant expertise regarding [the subject matter] outside of that which he has gleaned from a scant literature review for the purpose of consulting and testifying in this case."). Thus, the Magistrate Judge's order allowing the testimony in Sections V and VI of Dr. Lehr's report was contrary to law.

---

[5] The Magistrate Judge stated that "whether a particular statement or opinion of an expert is relevant to the case can be raised at trial, and is not something the Court need address under *Daubert* or Rule 702." Order at 4. Grande's relevancy objections, however, relate to the relevance analysis encompassed by Rule 702. *See Daubert*, 509 U.S. at 591 ("Rule 702 further requires that the evidence or testimony 'assist the trier of fact to understand the evidence or to determine a fact in issue.' This condition goes primarily to relevance.").

[6] The *Cox* court precluded Dr. Lehr from offering opinions about harm to the music industry. *See Cox Daubert* Order at 1 (ECF No. 228-2); Lehr *Cox* Report at 4-6 (ECF No. 229-3).

### d. Dr. Lehr Has No Specialized Knowledge about the Public Policy Benefits of Copyright Enforcement.

Plaintiffs likewise seek to have Dr. Lehr opine on public policy issues, including the purported public policy benefits of imposing broader copyright infringement liability on third parties.[7] Lehr Report, ¶¶ 44-51. Dr. Lehr is not qualified to testify to a jury about these public policy benefits because he does not have any education or experience in the music industry. Thus, as explained above, allowing his testimony on this issue would be contrary to law.

## IV. THE COURT SHOULD EXCLUDE THE PROPOSED TESTIMONY FROM DR. BARDWELL

### a. Dr. Bardwell's Opinions are Based on Unsupported Assumptions.

Dr. Bardwell intends to opine that Rightscorp detected roughly 1 million "infringements" of copyrighted works that are not at issue in this case. Specifically, Dr. Bardwell intends to testify that each of the 1.3 million notices of alleged infringement Rightscorp sent to Grande represents "an Infringement (an individual observation of a Subscriber making a copyrighted file available for download by other Internet users)." Bardwell Report at 5 (ECF No. 210-2). Dr. Bardwell admits that more than 980,000 of these notices do not pertain to a copyright asserted in this case. *Id*. at 23. He also admits that he did nothing to confirm that any of these notices pertain to a valid, registered copyright. Bardwell Dep. Tr. 57:22-58:6 (ECF No. 210-4). Nevertheless, Dr. Bardwell intends to opine, based on these notices, that nearly 1.1 million of Rightscorp's notices, and over 10,000 Grande subscriber accounts, reflect so-called "repeat infringers." Bardwell Report at 6, 23 (Table 3).

Dr. Bardwell's proposed testimony that these 980,000 Rightscorp notices reflect

---

[7] The *Cox* court precluded Dr. Lehr from offering the same opinions. *See Cox Daubert* Order at 1 (ECF No. 228-2); Lehr *Cox* Report at ¶¶ 40-46 (ECF No. 229-3).

7

"infringement" and correlate to "repeat infringers" is facially unreliable, because he did not verify that any of these notices relate to a registered copyright, and he did not rely on any underlying evidence supporting his conclusion. Bardwell Dep. Tr. 57:22-58:6 (ECF No. 210-4). Thus, Dr. Bardwell seeks only to offer unsupported assumptions disguised as expert testimony, as he has in at least one prior case.[8] Allowing these assumptions would be contrary to law, because they are not "based on sufficient facts or data," nor are they the product of reliable methodology, as required by Rule 702. Courts exclude such expert testimony based on unverified or unsupported assumptions. *See, e.g., Hathaway v. Bazany*, 507 F.3d 312, 318-19 (5th Cir. 2007) (affirming exclusion of expert testimony where there no "specific factual support for the reliability of [the expert's] initial assumptions"); *JRL Enters., Inc. v. Procorp. Assocs., Inc.*, No. 2:01-cv-02893, 2003 WL 21284020, at *7 (E.D. La. June 3, 2003) (excluding testimony on lost profits where expert testified that "he conducted no independent investigation of the[ ] numbers" provided to him); *Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806-10 (N.D. Tex. 2018) (excluding testimony based on assumptions that lacked any evidentiary basis).

### b. Dr. Bardwell Lacks Specialized Knowledge of Internet Protocols or Peer-to-Peer File Sharing.

The Magistrate Judge erred by permitting Dr. Bardwell's testimony on topics for which Dr. Bardwell has no specialized knowledge. Order at 5. Dr. Bardwell seeks to offer unsupported testimony on technical details relating to the functioning of ISP networks and peer-to-peer software systems. *See, e.g.*, Bardwell Report at 6-8, 11-12 (ECF No. 210-2). Dr. Bardwell has

---

[8] *See Coleman v. Oracle USA, Inc.*, No. 0:09-cv-3472, 2011 WL 2746187, at *5-*6 (D. Minn. July 14, 2011) (Dr. Bardwell's proposed testimony "relied on assumptions to make unsupported conclusions").

8

no specialized knowledge or expertise on these subjects. *See Id.* at 36 (CV) (ECF No. 210-2). He has no expertise in peer-to-peer networks or BitTorrent. Bardwell Dep. Tr. 8:8-14, 76:11-17, 91:2-8, and 93:17-20 (ECF No. 210-4). He also does not cite any underlying evidence to support his factual assertions on these issues. *See generally* Bardwell Report at 6-8, 11-12. The Magistrate Judge stated that Dr. Bardwell could discuss these topics "to put his own opinions in context," but allowing this testimony would violate the requirement that a putative expert may only testify on matters within his "scientific, technical, or specialized knowledge." Fed. R. Evid. 702; *see also, e.g., Marsteller v. Stanley Works*, No. 1:09-cv-00473-LY, 2010 WL 11571038, at *2 (W.D. Tex. Aug. 26, 2010) (granting motion to exclude "highly credentialed" mechanical engineer from testifying about pneumatic nail guns because "[h]e has testified in his deposition that he does not have much experience with pneumatic nail guns, as he has used one only once in his life before this case").

### c. Dr. Bardwell Lacks Specialized Knowledge about the Technical Aspects of Rightscorp's System.

The Magistrate Judge erred by allowing Dr. Bardwell to testify about the Rightscorp system and the accuracy and reliability of the data it generates. Order at 5. Dr. Bardwell lacks specialized knowledge of the Rightscorp system. Bardwell Dep. Tr. at 33:2-5 (ECF No. 210-4). Further, Dr. Bardwell is not proficient in any programming language and has not even reviewed the Rightscorp source code. *Id.* at 13:4-6, 50:24-51:2. Dr. Bardwell also is unable to detect any flaws or problems in how the system operates. *Id.* at 46:15-47:10. In short, because the technical details of the Rightscorp system are outside of Dr. Bardwell's "scientific, technical, or specialized knowledge," it would be contrary to law to allow him to testify about them. Fed. R. Evid. 702.

9

## V. THE COURT SHOULD EXCLUDE THE PROPOSED TESTIMONY FROM MS. FREDERIKSEN-CROSS

### a. Ms. Frederiksen-Cross's Opinions on the Operation of Rightscorp Software are Unreliable.

Plaintiffs seek to have Ms. Frederiksen-Cross offer opinions that are the product of unreliable methodology and are not based on sufficient facts. Ms. Frederiksen-Cross intends to describe the functionality of the Rightscorp software from 2014 to present, as well as to offer opinions that the software was "effective," "well developed," and "accurate." *See* Frederiksen-Cross Report ("F-C Report"), ECF No. 177-1, ¶ 18. These opinions are unreliable because the functionality of the software changed over that time period, and Ms. Frederiksen-Cross made unsupported assumptions about those changes, based on unverifiable evidence.

The Rightscorp software is a collection of individual functions that are manually executed by Rightscorp's programmer (Mr. Gregory Boswell) through a JSP page—essentially a webpage that allows the programmer to click buttons that execute individual functions within the software. *See* Frederiksen-Cross Deposition ("F-C Dep. Tr.") at 62:17-63:2 (ECF No. 215-2) The specific function of the software varies depending on how a human runs the manual aspect. *Id.* at 65:1-11.

Ms. Frederiksen-Cross intends to testify that the function of the software from 2015 to present was reliable and accurate. *See* F-C Report at ¶ 18 (ECF No. 177-1). This opinion is based on an assumption that the software ran in a specific manner during the relevant time period, but owing to the lack of documentary evidence, Ms. Frederiksen-Cross is relying *only* on

10

the unverifiable recollection of Mr. Boswell for that assumption.[9]  F-C Dep. Tr. at 77:21-78:9, 195:3-9 (ECF No. 215-2).  Thus, Ms. Frederiksen-Cross's opinion is not the result of a reliable methodology; rather, it is a mere *ipse dixit* based on unreliable assumptions, and allowing the testimony would be contrary to law.  *See* Fed. R. Civ. P. 702(c); *see also, e.g.*, *Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012); *see also Jacked Up, LLC v. Sara Lee Corp.*, 291 F. Supp. 3d 795, 806-10 (N.D. Tex. 2018) (excluding testimony based on assumptions that lacked any evidentiary basis).

### b. Ms. Frederiksen-Cross's Opinions on the Accuracy of Rightscorp Notices are Not Based on Review of Any Record Evidence.

Ms. Frederiksen-Cross intends to opine that Rightscorp's notices accurately document instances of infringement by ISP subscribers.  *See, e.g.*, F-C Report at ¶ 18 (ECF No. 177-1).  Ms. Frederiksen-Cross should not be permitted to offer these opinions because they are not based on the review of any record evidence.

Ms. Frederiksen-Cross did not independently assess any of the information presented in Rightscorp's notices.  She performed no digital fingerprinting or other analysis to determine whether the works purportedly detected on subscriber computers are actual copies of asserted works.  *See* F-C Dep. Tr. at 137:21-138:1 (ECF No. 215-2).  She also did not review any information purportedly collected from a given subscriber.  *See id.* at 210:1-4.  Despite having

---

[9] Ms. Frederiksen-Cross actually had to change her opinion at least one time, based on Mr. Boswell materially changing his explanation of the function of the software.  *See* F-C Dep. Tr. at 77:21-78:9 ("Q: Did you or someone on your team review the actual 2018 source code to determine whether or not Test5.java was being run in 2018 as part of the Rightscorp system?  A: *I think I told you that's not usually discernible from the materials that were available to us*.  We could identify that there was a new version in the program and *based on our conversations of what Mr. Boswell believed that to be the correct version*.  And then as it turns out, *he provided different information during his deposition* and explained why they had split the program, which made perfect sense, really.  So, we then went and looked at the new programs we identified.") (emphasis added).

11

done nothing to verify the accuracy of the Rightscorp notices, Ms. Frederiksen-Cross seeks to testify that the notices are accurate. Such *ipse dixit* testimony is not supported by sufficient facts, and it is therefore contrary to law to allow it. Fed. R. Evid. 702.

### c. Ms. Frederiksen-Cross Has No Specialized Knowledge about BitTorrent.

The Magistrate Judge's decision to allow Ms. Frederiksen-Cross to testify regarding technical aspects of BitTorrent protocol was contrary to law, because that testimony is outside of the scope of Ms. Frederiksen-Cross's specialized knowledge.

Ms. Frederiksen-Cross intends to offer expert testimony regarding the BitTorrent protocol, the operation of BitTorrent software, and similar topics regarding other peer-to-peer file sharing offerings. F-C Report at ¶¶ 30-42 (ECF No. 177-1). The Magistrate Judge based his decision in part on the idea that Ms. Frederiksen-Cross had researched BitTorrent source code. Order at 9. Although Ms. Frederiksen-Cross claimed to have read "the protocols" and researched "the software," her expert report fails to identify a single article or piece of source code she reviewed that relates to any peer-to-peer file sharing protocol or source code. *Id.* at 40:14-41:47:14 (admitting that her expert report is devoid of any citation to source code, protocols, or other papers relating to BitTorrent or other peer-to-peer file sharing technologies).[10]

Because she lacks any relevant education or documented experience, Ms. Frederiksen-Cross should not be permitted to offer expert testimony on BitTorrent or other peer-to-peer file

---

[10] Ms. Frederiksen-Cross was unable to specifically identify any of the materials she reviewed, and she admitted those materials did not inform her opinions in this case. *See, e.g.*, F-C Dep. Tr. at 46:15-47:4. Ms. Frederiksen-Cross's failure to properly disclose those materials is a further basis for excluding her expert testimony on the topic of BitTorrent and other peer-to-peer file sharing protocols. *See, e.g., Johnson v. Arkema, Inc.*, 685 F.3d 452, 467 (5th Cir. 2012) (confirming exclusion of expert who "failed to present the scientific evidence upon which those statements were founded").

sharing software and/or protocols. The fact that Ms. Frederiksen-Cross is a skilled computer programmer does not pre-qualify her to speak on all computer-related technologies. *See, e.g., Marsteller v. Stanley Works*, No. 1:09-cv-00473-LY, 2010 WL 11571038, at *2 (W.D. Tex. Aug. 26, 2010) (granting motion to exclude "highly credentialed" mechanical engineer from testifying about pneumatic nail guns because "he [did] not have sufficient qualifications by training or experience" in that particular area.). Thus, the Magistrate Judge's decision was contrary to law.

## VI. CONCLUSION

For the foregoing reasons, Grande respectfully submits that the Magistrate Judge's decisions were contrary to law, and the Court should exclude the proposed testimony under Fed. R. Evid. 702.

Dated: July 30, 2019

                    By: /s/ Richard L. Brophy
                        Richard L. Brophy
                        Zachary C. Howenstine
                        Margaret R. Szewczyk
                        ARMSTRONG TEASDALE LLP
                        7700 Forsyth Blvd., Suite 1800
                        St. Louis, Missouri 63105
                        Telephone: 314.621.5070
                        Fax: 314.621.5065
                        rbrophy@armstrongteasdale.com
                        zhowenstine@armstrongteasdale.com
                        mszewczyk@armstrongteasdale.com

                        J. Stephen Ravel
                        Texas State Bar No. 16584975
                        J.R. Johnson
                        Texas State Bar No. 24070000
                        Diana L. Nichols
                        Texas State Bar No. 00784682
                        KELLY HART & HALLMAN LLP
                        303 Colorado, Suite 2000
                        Austin, Texas 78701
                        Telephone: 512.495.6429
                        Fax: 512.495.6401
                        Email: steve.ravel@kellyhart.com
                                jr.johnson@kellyhart.com
                                diana.nichols@kellyhart.com

                        Attorneys for Defendant GRANDE
                        COMMUNICATIONS NETWORKS LLC

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on July 30, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy