## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., § | |
| § | |
| V. § | CAUSE NO. A-17-CA-365-LY |
| § | |
| GRANDE COMMUNICATIONS § | |
| NETWORKS, LLC, and PATRIOT § | |
| MEDIA CONSULTING, LLC § | |

## ORDER

Before the Court are Defendant Grande Communications Networks LLC's Motion for Evidentiary Sanctions Based on Spoliation of Rightscorp Evidence (Dkt. No. 247); Plaintiffs' Opposition (Dkt. No. 253); Grande's Reply (Dkt. No. 260); Grande's Supplemental Brief (Dkt. No. 284); Plaintiffs' Response (Dkt. No. 283); and various exhibits filed under seal. The District Court referred these motions to the undersigned for disposition.

### I. Background

In this motion, Grande requests that the Court prevent UMG from offering at trial any of the notices of infringement that were generated by Rightscorp, Inc.—a third party vendor that gathered data on alleged infringement committed by Grande customers—and any music files downloaded by Rightscorp. Grande contends that Rightscorp destroyed "virtually all evidence underlying" the notices and music files, and due to this spoliation, an exclusion sanction is warranted. UMG responds that *it* did not destroy any evidence, and to the extent anything has been deleted, it was done by Rightscorp, which is not a party to this case, and which therefore had no duty to retain the information Grande contends was destroyed or deleted. UMG notes further that Judge Ezra has already addressed this issue and rejected Grande's arguments, and even if the issues are still ripe for decision, Grande mischaracterizes the nature and relevance of the allegedly unavailable data.

## II. Analysis

**A.     Standard**

Spoliation is "the destruction of evidence . . . or the significant and meaningful alteration of a document or instrument." *Andrade Garcia v. Columbia Med. Ctr.*, 996 F. Supp. 605, 615 (E.D. Tex. 1998) (internal quotation marks omitted). The governing standard for excluding evidence or otherwise imposing sanctions for the destruction of evidence is contained in Federal Rule of Civil Procedure 37(e). That rule was substantially amended in 2015 to resolve conflicting circuit standards regarding sanctions when electronically stored information is not preserved. *See CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 495 (S.D. N.Y. 2016). Under Rule 37(e), a court must first determine that four predicate elements exist before the rule is applicable:

- there is ESI that should have preserved;

- that ESI has been lost;

- the ESI was lost because of a party's failure to take reasonable steps to preserve it; and

- the ESI cannot be restored or replaced.

FED. R. CIV. P. 37(e). If the court finds that all four of these elements are established, then the court considers the appropriate responsive measures. If the court finds that a party has been prejudiced by the loss of the ESI, "it may order measures no greater than necessary to cure the prejudice." *Id.* at 37(e)(1). If, on the other hand, it finds that the party who caused the loss of the ESI "acted with intent to deprive another party" of the use of the information, the court may take one of three more severe steps: (1) presume the information was unfavorable to the destroying party; (2) instruct the

jury it either may, or must, presume the information was unfavorable to the destroying party; or (3) dismiss the case or enter a default judgment. *Id.*

**B.      Judge Ezra's order on summary judgment**

In ruling on one of the summary judgment motions in this case, Judge Ezra addressed these very issues, stating:

> Grande argues that the Rightscorp evidence is precluded by the best evidence rule because "Rightscorp destroyed all records of its manual verification process, including any records of the alleged "original" songs that were used for comparison." (Dkt. # 247 at 7; see also Dkt. # 252 at 29.) This argument is best suited for the trial context. . . . Moreover, even if the "original" evidence has been destroyed by the proponent, other evidence of content is admissible unless the destruction was the result of "the proponent acting in bad faith." FED. R. EVID. 1004. First, the alleged destruction was done by Rightscorp, which is not a party to this action, not the Plaintiffs, who are the proponents of the evidence at summary judgment and would be the proponents at trial. Second, Grande has presented no evidence that Rightscorp destroyed these "originals" at the behest of Plaintiff. In fact, Grande's own motion for sanctions states that the RIAA, the trade group of Plaintiffs, "requires the BitTorrent monitoring company working on behalf of Plaintiffs to preserve all of this data as part of its copyright infringement evidence package." (Dkt. # 247 at 7.) Nor did Grande present any evidence or argument that the originals were destroyed in bad faith. (See id.)

Dkt. No. 268 at 29-30 n.4. Judge Ezra entered this order after Grande's motion was fully briefed (but before it filed its supplemental brief), and explicitly referenced Grande's motion (Dkt. No. 247) in setting out the issue he was addressing. Thus, it is not even clear that there is any remaining issue for the undersigned to decide here, as Judge Ezra has already rejected Grande's arguments. Out of an abundance of caution, however, and because Grande arguably raised new issues in its supplemental brief, the Court will address Grande's motion.

3

**C.     Grande's arguments**

There are four categories of Rightscorp data at issue in Grande's motion: (1) source code and operations records; (2) song matching data; (3) targeted download data; and (4) call center logs.  As noted, the entity that is alleged to have deleted this data is Rightscorp, not UMG.  Rightscorp is not a party to the case, and Rule 37 only applies to ESI that was lost because a *party* failed to preserve it.  Accordingly, Grande's motion has no merit with regard to data that Rightscorp may have deleted before it had a relationship with UMG.  *See, e.g., Adkins v. Wolever* (*Adkins III*), 692 F.3d 499, 503-04 (6th Cir. 2012) (no spoliation when prison and not guard lost video); *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 615-16 (S.D. Tex. 2010) (only a party with control over the evidence had an obligation to preserve it). Until the RIAA hired Rightscorp in 2016, UMG had no control over Rightscorp's actions, and thus Grande is not entitled to relief for any actions that took place in that time frame.  Here, that means the motion is without merit as to both the source code and the call center logs.  On the source code, once UMG retained Rightscorp, Rightscorp implemented a version control system that preserved any changes to its source code and that information has been produced to Grande.  Prior to that time, UMG had no relationship with Rightscorp, and cannot be sanctioned for Rightscorp's actions then.[1]  On the call center data, all of that data—which was not even maintained by Rightscorp but instead by *its* contractor—was created prior to 2016, before UMG had any arguable control over Rightscorp.  That data as well, then, is

---

[1] Moreover, the Court agrees with UMG that source code changes made before 2016 did not materially alter the system's functioning and reliability, and thus Grande cannot show any prejudice for those changes, even if it could somehow demonstrate that UMG was responsible for Rightscorp's actions at that time.

outside the reach of Rule 37. Thus, there are two remaining categories of data at issue: (1) song matching data; and (2) tracker data and "data packets."

### 1. Song Matching

Grande's complaints regarding song matching data implicate several types of evidence. Beginning in 2012-2013, Rightscorp employees would manually listen to a music file and compare that recording with a copy of the monitored song to determine if it was the same song. Dkt. No. 247-2 at 14-17. Rightscorp continued to use this manual verification process for the relevant time period in this case. *Id.* Rightscorp also used two digital fingerprinting services, Audible Magic and AcousticID for these purposes. Grande complains that Rightscorp failed to maintain a record of the manual verification process, and contends that Rightscorp destroyed all records associated with the digital fingerprinting services, including the digital fingerprints Rightscorp submitted and the results it received.

First, as already discussed, to the extent this argument addresses data deleted or not preserved prior to 2016, the motion has no merit. Second, as to data lost after that time, UMG responds that the RIAA used the Audible Magic tool to verify the matches of Rightscorp downloads with Plaintiffs' copyrighted recordings, and that these outputs have been provided to Grande. *See* Dkt. No. 172-12. Additionally, UMG has produced to Grande the audio files Rightscorp downloaded, and thus Grande itself can verify the match through the publicly available AcoustID system. Grande does not deny that it has received this information or that it could use a service to verify the song matches itself. Thus, to the extent there was any song matching data not preserved after 2016, Grande has failed to demonstrate that it has been prejudiced by its loss.

### 2. Song Downloads, Tracker Data, and "Data Packets"

Finally, Grande complains that Rightscorp failed to retain data about its attempts to download song files from Grande subscribers—including information regarding how often these downloads were attempted, the communications and data exchanged between Rightscorp software and Grande's subscribers, and other data from the download process. According to Grande, this data includes tracker data from outside trackers shared with Rightscorp to identify Grande subscribers as infringers, as well as what it refers to as "bitfield" data, "have" data, "request" data, and "choke" data. UMG responds that some of this data exists, but Grande failed to request it, some of the data was never tracked or maintained so it could not have been lost, and other data was not used by Rightscorp or was cumulative of data used by Rightscorp in sending out its notices. As discussed in more detail below, the issues Grande is raising are in fact not really spoliation issues, but rather are complaints about whether UMG's evidence of infringement is credible. This, however, is a question that must be resolved by a jury, and is not proof of spoliation.

First, Grande asserts that Rightscorp failed to preserve data exchanged between Rightscorp and Grande subscribers during Rightscorp's attempts to download songs, including failed attempts to download songs. UMG disputes the relevance of this data, but Rightscorp agreed to generate and produce a spreadsheet that sets forth additional data setting out the provenance of the audio files. Grande replies that UMG should not be allowed to rely on the downloaded songs because the data upon which those song files are based has been destroyed. Specifically, Grande complains that the BitTorrent data that passed between Rightscorp and any individual Grande subscriber during a successful download was not preserved; and that records of unsuccessful attempts to download infringing files were not preserved. Grande contends that this prevents it from verifying that the

songs downloaded actually came from its subscribers. Reviewing the relevant testimony, the Court disagrees with Grande's fundamental assertion that there has been ESI lost. As Rightscorp's founder and software developer Greg Boswell explained, the relevant process—called "SampleIt2"—samples a pool of IP and port addresses and stores that in a temporary table on a database that exists only when the software is actively running.  As he explained, "this is a pop-type queue. A queue is a temporary storage of data for the purpose of working on it and moving it off . . . .  So once the process has acquired the data from the queue . . . it's removed . . . which is a standard process of a software queue." Dkt. No. 282-4 at 8.  In other words, while the data is held for review while the process is running, it is never stored electronically or otherwise once the process is complete.  The Court disagrees with Grande's characterization of this as "lost" ESI.

    Grande next asserts that Rightscorp destroyed all records of transmissions from BitTorrent trackers to Rightscorp's system, and also destroyed all "bitfield," "choke," "have," and "request" data communicated to it by peers on Grande's network.  The Court confesses that it may not fully understand all of the data that is at issue here, as the briefing fails to provide much guidance on the relevant software, and both parties throw around these terms in a manner suggesting the undersigned is an advanced programmer well versed in coding.  I am not.  Regardless, the Court is not persuaded by Grande's arguments regarding this data.  First, UMG offers evidence that the Rightscorp software does not make any use of the "choke," "have," and "request" data, and thus there is no reason it would retain any of that data, assuming it is ever "stored" in the relevant sense of that term.  Second, as to the "tracker data," the Rightscorp software undertakes a "handshake" with a BitTorrent user, and records the data of this in the notices it sends to ISPs.  Grande has these notices.  To the extent anything is not retained in this regard, Grande has not been prejudiced.  Finally, as to the "bitfield"

data, as best the Court can understand the argument, what Grande is complaining about amounts to a criticism of the Rightscorp software, not the spoliation of evidence. While it may be possible to write Rightscorp-like software in such a fashion that it would identify and retain bitfield data, Rightscorp's detection system does not do so. The fact that it does not, however, is a far cry from proof that Rightscorp destroyed evidence. Rather, its system simply never intended, and was not designed, to retain it. So while Grande can certainly point this out and use it to criticize the reliability of the Rightscorp system, it is not a reason to exclude the notices generated by the system. Further, UMG contends that the bitfield information is simply a binary "yes" or "no" answer with respect to whether a subscriber is offering a work in full, and this information is captured when the Rightscorp system generates a notice.

Moreover, even assuming Grande had established that all of this data was something Rightscorp should have retained, there is insufficient evidence to support a finding that UMG acted with the bad faith or requisite intent to support the extreme measure Grande seeks. "The Fifth Circuit permits an adverse inference against the destroyer of evidence only upon a showing of 'bad faith' or 'bad conduct.' " *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005). Rule 37 requires a showing of "an intent to deprive" the other party of the evidence. The highly technical, "in the weeds" complaints Grande raises about Rightscorp's software, and what it does and does not record when it runs, is a far cry from proof of bad faith or an intent to deprive a party of the use of information. *Guzman v. Jones,* 804 F.3d 707, 713 (5th Cir. 2015) (affirming denial of sanctions and adverse inference instruction when the moving party "produced no evidence suggesting bad faith."). Moreover, Boswell testified at length that Rightscorp's system has *never* retained this data. The Fifth Circuit has held that failure to preserve evidence as part of a regular

course of conduct is insufficient to support a finding of intent to deprive because it does not demonstrate bad faith. *Russell v. Univ. of Texas of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007). For all of these reasons, spoliation sanctions are unwarranted as to this data.

### III. Order

For the reasons set forth above, Grande Communications Networks LLC's Motion for Evidentiary Sanctions Based on Spoliation of Rightscorp Evidence (Dkt. No. 247) is **DENIED**.

SIGNED this 27th of September, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE