**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No.  1:17-cv-00365-DAE-AWA |
| | ) | |
| GRANDE COMMUNICATIONS | ) | ORAL ARGUMENT REQUESTED |
| NETWORKS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS, LLC'S**
**OBJECTIONS TO MAGISTRATE JUDGE'S ORDER ON**
**MOTION FOR EVIDENTIARY SANCTIONS**

Pursuant to Fed. R. Civ. P. 72(a), Defendant Grande Communications Networks, LLC ("Grande") respectfully submits the following objections to Magistrate Judge Austin's September 27, 2019 Order ("Spoliation Order") (ECF No. 289), denying Grande's Motion for Evidentiary Sanctions (ECF No. 247).

Plaintiffs seek to prove contributory copyright infringement claims against Grande based on (1) email notices to Grande accusing its customers of infringing copyrights, without any of the underlying evidence on which those accusations were based; and (2) music files allegedly downloaded from Grande's customers, without any of the underlying data demonstrating the origin of those files or any evidence of how often Rightscorp failed to complete such downloads. Plaintiffs lack this evidence because their litigation consultant, Rightscorp—the source of the notices and music files—destroyed it.  Furthermore, Plaintiffs permitted Rightscorp to continue destroying this evidence even after they hired Rightscorp for the express purpose of bringing this lawsuit against Grande.

Plaintiffs and Rightscorp destroyed this evidence in bad faith and with the intent to deprive Grande of access.  There is no other plausible reason why Rightscorp would send Grande over a million notices of alleged copyright infringement threatening litigation, and then destroy all of the indisputably relevant evidence upon which those notices were based.  *See, e.g.*, *Quantlab Techs. Ltd. v. Godlevsky*, No. 4:09-cv-4039, 2014 WL 651944, at *10 (S.D. Tex. Feb. 19, 2014) ("Bad faith must typically be inferred," and "a court can do so where a party purposely loses or destroys relevant evidence.") (quotations & citations omitted).  Plaintiffs have not offered *any* explanation—plausible or not—as to why this evidence was destroyed.  Grande therefore objects to the Spoliation Order's finding that spoliation sanctions are unwarranted.

Grande respectfully requests oral argument.  At a minimum, Grande believes it would be

helpful to the Court to allow the parties to fully explain the relevant technical issues, which the Magistrate Judge acknowledged he did not fully understand.  *See* Spoliation Order at 7 ("The Court confesses that it may not fully understand all of the data that is at issue here . . . .").  As discussed below, this resulted in a series of erroneous factual findings that, in turn, led to the denial of Grande's Motion.  Conducting oral argument will help to ensure that the Court is fully apprised of the issues and that the record on this matter is fully developed.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Nature and Significance of the Spoliated Evidence

Grande is a regional internet service provider ("ISP") that operates in a few discrete markets in Texas.  Plaintiffs—the bulk of the U.S. recording industry—seek to hold Grande secondarily liable for copyright infringement allegedly committed by Grande's customers.  The nature of the alleged copyright infringement is the sharing of copyrighted sound recordings (*i.e.*, electronic audio files) using the peer-to-peer file sharing protocol BitTorrent.  BitTorrent is shorthand for a number of interchangeable software applications that individuals can use to share electronic files over the internet.

Plaintiffs' case rests on alleged evidence of BitTorrent file sharing that Plaintiffs obtained from non-party Rightscorp, Inc.  Rightscorp has a software system that purports to (1) monitor BitTorrent activity for infringement of specified copyrighted works, (2) connect with individual BitTorrent users to obtain data demonstrating they are sharing one of those works, and then (3) send an automatically-generated email ("notice") to the alleged infringer's ISP, notifying them of the alleged infringement.

Although Rightscorp repeatedly marketed its services to Plaintiffs over the years, neither Plaintiffs nor their industry association, the Recording Industry Association of America

("RIAA"), has ever hired Rightscorp to conduct any monitoring on their behalf.[1]  *See* Sabec Dep.

Tr. 1149:4–17 (ECF No. 141-3).  In October of 2016, before this case was filed, RIAA hired

Rightscorp as Plaintiffs' "litigation consultant" and purchased the notices Rightscorp had already

sent to Grande on behalf of other clients, as well as the notices Rightscorp would send to Grande

thereafter.  *See* Pls.' Resp. to Mot. for Sanctions at 4 (ECF No. 253); Litigation Support and

Consulting Agreement (ECF No. 202-1).

      Plaintiffs contend that Rightscorp's notices to Grande are both (1) evidence that Grande's

customers directly infringed Plaintiffs' copyrights; and (2) evidence that Grande had knowledge

of that infringement.  As a result, a central issue in this case—if not *the* central issue—is whether

Rightscorp's notices were accurate.

      Rightscorp has destroyed all of the data upon which these notices were based and,

therefore, all of the evidence that would permit one to assess the accuracy of any particular

notice sent to Grande.  Rightscorp appears to have destroyed some of this evidence before RIAA

hired them as Plaintiffs' litigation consultant (as to notices sent before October of 2016), and

Rightscorp continued destroying this evidence after they were hired by RIAA (as to notices sent

thereafter).  Among other things, Rightscorp destroyed:

- **Bitfield data.**  When Rightscorp's system connected with a BitTorrent user on Grande's
  network—what Rightscorp calls a "handshake"—it obtained "bitfield" data that showed what
  fraction of a given audio file (or set of files) the user had on their computer.  Rightscorp's

---

[1] Rather, at all relevant times, a *different* third party copyright monitoring company,
MarkMonitor, provided this service for Plaintiffs.  In a prior Order, the Court noted Grande's
argument that RIAA "requires the BitTorrent monitoring company working on behalf of
Plaintiffs to preserve [certain categories of data] as part of its copyright infringement evidence
package."  *See* Order Adopting Report and Recommendations at 29–30 n.4 (ECF No. 268).
Grande was referring to MarkMonitor, not Rightscorp, as Rightscorp has never sent notices on
behalf of Plaintiffs or RIAA.

software developer has testified that this is the data on which Rightscorp's notices were based, and that the system saved it to a hard drive when it was received.  Boswell Decl., ¶ 6 (ECF No. 253-1); Boswell Dep. Tr. Vol. II at 461:8–25 (ECF No. 282-4).  Rightscorp destroyed all bitfield data associated with notices sent to Grande.

- **Choke data.**  When Rightscorp's system connected with a BitTorrent user, it also received "choke" data that showed whether the user was offering to share files with third parties.  In other words, a user may possess a given file, as indicated by the bitfield, but the choke data may nevertheless show that the user was not offering to share that file with others.  Rightscorp's head programmer has testified that Rightscorp receives and "reviews" choke data from accused infringers.  Boswell Decl., ¶ 6 (ECF No. 253-1).  Rightscorp destroyed all choke data associated with notices sent to Grande.

- **Tracker data.**  Before connecting with individual BitTorrent users, Rightscorp allegedly obtained publicly-available "tracker" data that identified BitTorrent users who may be sharing files of interest.  In other words, this tracker data is what allegedly enabled Rightscorp to identify potential infringers from whom it would then obtain bitfield and choke data.  Rightscorp destroyed all tracker data associated with notices sent to Grande.

- **Song matching evidence.**  Before sending a notice, Rightscorp claims that it verified that the audio file at issue was a copy of a copyrighted song.  Depending on the time period at issue, Rightscorp did this manually (*i.e.*, by listening to the original song and the alleged copy) or through the use of one of two different third-party software solutions.  Rightscorp destroyed all of the evidence of this alleged verification.

- **Download evidence.**  To legitimize Rightscorp's notices, Plaintiffs rely on allegedly infringing audio files that Rightscorp claims to have downloaded from accused infringers on

Grande's network, after Rightscorp sent a notice regarding that infringement.  However,

Rightscorp has destroyed (1) all data that would show that these audio files were, in fact,

downloaded from users of Grande's network, and (2) all evidence of how often it tried and

failed to download an audio file from an accused infringer—evidence from which Grande

could prove that Rightscorp sent inaccurate notices.

*See also* Grande's Mot. for Sanctions at 2–8 (ECF No. 247).

### B.    The Court's March 15, 2019 Order

In the Spoliation Order, the Magistrate Judge stated that "it is not even clear that there is

any remaining issue for the undersigned to decide here, as Judge Ezra has already rejected

Grande's arguments."  Spoliation Order at 3 (citing Order Adopting Report and

Recommendations at 29–30 n. 4 (ECF No. 268)).

Although the Magistrate Judge nevertheless proceeded to address Grande's Motion,

Grande objects to the finding that the Court has already rejected the bases for Grande's Motion.

First, the Court's previous order did not resolve whether Plaintiffs should be sanctioned for

spoliation, but rather only addressed the admissibility of certain declarations in view of the best

evidence rule, which involves a different legal standard.  *See* ECF No. 268 at 29-30 n. 4; *see also*

*id.* at 34 n.5.[2]  Second, as a result, the Court also did not address whether or to what extent

Plaintiffs may be liable for sanctions under Rule 37 based on the conduct of Rightscorp, either as

a general matter or in light of Rightscorp's engagement as Plaintiffs' litigation consultant in

2016.  *See id.*  Third, the Court only analyzed the best evidence rule with respect to two discrete

---

[2] In footnote 5, the Court reiterated its rejection of Grande's "best evidence rule argument
related to Rightscorp song matching and download evidence," citing page 34 of Grande's
Objections (ECF No. 252).  *See* Order Adopting Report and Recommendations at 34 n.5 (ECF
No. 268).  For clarity's sake, Grande notes that this appears to be a typographical error, as
Grande's best evidence rule arguments were set out on pages 24 and 29 of its Objections.

categories of evidence at issue in Grande's Motion for Evidentiary Sanctions: (1) Rightscorp's destruction of song matching evidence, and (2) Rightscorp's destruction of evidence demonstrating the origin of files allegedly downloaded from Grande customers. *See id.* Accordingly, Grande's Motion for Evidentiary Sanctions plainly presents issues that the Court has yet to resolve.

## II.   LEGAL STANDARD

### A.   Standard of Review for Objections to Magistrate Judge's Order

If a party timely objects to a magistrate judge's order on a non-dispositive matter, the district court must "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); *see also Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). The district court reviews the magistrate judge's legal conclusions *de novo* and reviews the factual findings for clear error. *See, e.g.*, *Sparling v. Doyle*, No. 3:13-cv-323, 2016 WL 236266, at *1–*2 (W.D. Tex. Jan. 20, 2016).

### B.   Standard for Sanctions for Spoliation of Evidence

Spoliation "is the destruction or the significant and meaningful alteration of evidence." *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015). In general, spoliation sanctions are appropriate where (1) a party possessed a duty to preserve the information; (2) the party breached that duty; and (3) the breach of duty results in prejudice to the opposing party. *Spencer v. BMW of N. Am., LLC*, No. 5:14-cv-00869-DAE, 2015 WL 11661765, at *2 (W.D. Tex. Dec. 22, 2015). "The prejudice requirement is satisfied once the party seeking sanctions demonstrates the missing evidence is relevant to their case." *Allstate Texas Lloyd's v. McKinney*, 964 F. Supp. 2d 678, 685 (S.D. Tex. 2013) (citation omitted).

A court may impose "severe sanctions" for spoliation of evidence where "relevant

information was destroyed in bad faith." *Collins v. Easynews, Inc.*, No. 1:06-cv-451-LY, 2008 WL 11405990, at *2 (W.D. Tex. Feb. 6, 2008) (citations omitted). "Bad faith must typically be inferred," and "a court can do so where a party purposely loses or destroys relevant evidence." *Quantlab*, 2014 WL 651944, at *10 (quotations & citations omitted); *see also McKinney*, 964 F. Supp. 2d at 686 (finding bad faith based on circumstantial evidence).

Under Rule 37(e), which specifically addresses sanctions based on a failure to preserve electronically stored information ("ESI"), district courts may enter sanctions upon finding that (1) there is ESI that should have been preserved; (2) that ESI has been lost; (3) the ESI was lost because of a party's failure to take reasonable steps to preserve it; and (4) the ESI cannot be restored or replaced. *See* Spoliation Order at 2. If these four elements are met, and the court also finds "that the party acted with the intent to deprive another party of the information's use in the litigation," the court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e)(2).

## III.   OBJECTIONS

### A.   The Court should set aside the Magistrate Judge's denial of sanctions as to evidence destroyed after Plaintiffs hired Rightscorp.

After concluding that Plaintiffs cannot be sanctioned for spoliation that occurred before RIAA hired Rightscorp as Plaintiffs' litigation consultant (discussed *infra* in Section III.B), the Magistrate Judge addressed the propriety of sanctions for Plaintiffs' post-October 2016 destruction of bitfield data, choke data, tracker data, song matching evidence, and download evidence. As detailed above in Section I.A, these categories of evidence represent the actual evidence of direct copyright infringement allegedly underlying every Rightscorp notice.

As an initial matter, there is no question that Plaintiffs had a duty to preserve this

evidence.  Plaintiffs, through RIAA, require their other third-party copyright monitoring vendors to preserve all of these categories of evidence.  *See* MarkMonitor Master Agreement at MM0000023–24 (ECF No. 248-2); Rightscorp RFP Response at RIAA_00060096–97 (ECF No. 282-3); *see also* Grande's Supp. Br. at 2–3 (ECF No. 281-2).  Furthermore, Plaintiffs retained Rightscorp for the express purpose of instituting this litigation.  Litigation Support and Consulting Agreement (ECF No. 202-1).  Plaintiffs therefore cannot dispute that they had "notice that the evidence is relevant to litigation or . . . should have known that the evidence may be relevant to future litigation."  *See Consolidated Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 339 (M.D. La. 2006) (quotations & citation omitted).

As set forth below, the Magistrate Judge's denial of sanctions for the destruction of this evidence should be set aside because it is based on clearly erroneous factual findings.  *See Sparling*, 2016 WL 236266, at *2 (a factual finding is reversible if "the reviewing court is left with the definite and firm conviction that a mistake has been committed").

## 1.    Bitfield Data

As discussed *supra*, when Rightscorp's system connected with an individual BitTorrent user on Grande's network—the "handshake"—Rightscorp received "bitfield" data reflecting what fraction of an audio file (or set of files) the user had on their computer.

The Magistrate Judge denied sanctions with respect to Plaintiffs' destruction of bitfield data based on the finding that Rightscorp's system does not "identify and retain bitfield data." Spoliation Order at 8.  This factual finding is clearly erroneous.  Mr. Boswell, Rightscorp's lead software developer, testified that Rightscorp received and stored all bitfield data on a hard drive, but then later deleted it.  Boswell Dep. Tr. Vol. II at 461:8–25 (ECF No. 282-4) (Q:  And that database [with bitfield data] was stored on a hard drive somewhere; correct?  A:  Correct.).  In

response to Grande's Motion, Mr. Boswell also submitted a declaration stating that Rightscorp relies _solely_ on bitfield data "to confirm that a user is offering a work being monitored by Rightscorp."  Boswell Decl., ¶ 6 (ECF No. 253-1).  As a result, Plaintiffs have never argued that Rightscorp did not identify or retain bitfield data.  *See* Pls.' Resp. to Mot. for Sanctions at 9 (ECF No. 253) (arguing only that the bitfield data is cumulative and unnecessary); Pls.' Opp'n to Mot. for Leave at 4 (ECF No. 283) (same).

The Magistrate Judge also indicated that the destruction of this evidence is not sanctionable because "the bitfield information is simply a binary 'yes' or 'no' answer with respect to whether a subscriber is offering a work in full" and "is captured when the Rightscorp system generates a notice."  Spoliation Order at 8.  This finding is also clearly erroneous.

First, the fact that bitfield data "is captured when the Rightscorp system generates a notice" demonstrates why its destruction is so prejudicial.  As noted, Rightscorp relies solely on bitfield data to determine whether a BitTorrent user is offering to share a copyrighted work.  *See* Boswell Decl., ¶ 6 (ECF No. 253-1).  Accordingly, there is no way to verify the accuracy of a given notice without it.  Rightscorp's notices themselves do not contain any bitfield data—or any other data or evidence collected from an accused infringer.  *See* Sample Notices (ECF No. 140-2); Boswell Dep. Tr. Vol. II at 466:18–470:20 (ECF No. 282-4).  Thus, even if the bitfield data *were* a binary "yes" or "no" answer, it would still be critically important and non-cumulative.

Second, the bitfield data is not "a binary 'yes' or 'no' answer."  The bitfield data reflects what fraction of a given audio file (or set of files) the user has on their computer—it may be 100% or 0%, but it may also be something in between.  Here, it is undisputed that Rightscorp, for some unknown period of time, configured its system to send notices when the user possessed as little as 10% of the subject file(s).  *See* Grande's Mot. for Sanctions at 5 (ECF No. 247);

9

Grande's Reply ISO Mot. for Sanctions at 3 n.1 (ECF No. 260).  As explained in Grande's Motion, this could cause Rightscorp to send a notice concerning an audio file even when the user did not possess any portion of it.  *See* Grande's Mot. for Sanctions at 5 (ECF No. 247).  Because Rightscorp destroyed all bitfield data, Grande is left with no way to determine or prove how many Rightscorp notices were false.

In sum, there can be no dispute that: (1) Plaintiffs should have preserved all bitfield data; (2) all bitfield data has been lost; (3) the data was lost because of Plaintiffs' failure to take reasonable steps to preserve it; and (4) the bitfield data cannot be restored or replaced.  *See* Fed. R. Civ. P. 37(e).  Grande therefore respectfully submits that the Magistrate Judge clearly erred in denying sanctions with respect to the destruction of this evidence.

### 2. Choke Data

As noted *supra*, in each "handshake" with a BitTorrent user on Grande's network, Rightscorp's system also received "choke" data reflecting whether that user was offering to share files with third parties. This choke data is plainly relevant because if a BitTorrent user was not offering to share any files, he could not have unlawfully distributed a copyrighted work—the lone direct infringement allegation at issue in this case.[3]

The Magistrate Judge clearly erred in finding that Plaintiffs had no duty to preserve this evidence because "the Rightscorp software does not make any use of" it.  Spoliation Order at 7. Respectfully, the question is not whether Rightscorp "used" this relevant data, but rather is whether Rightscorp received and therefore had a duty to preserve it.  By the reasoning of the

---

[3] Plaintiffs' allegations of direct copyright infringement by Grande's customers are based solely on alleged infringement of their distribution rights, as the Court granted summary judgment on alleged infringement of Plaintiffs' reproduction and public performance rights.  *See* Order Adopting Report and Recommendations at 22–24 (ECF No. 268).

Spoliation Order, Rightscorp only had a duty to retain information that would *support* its notices and could freely destroy other evidence that *undermined* them.  This cannot be correct.

It is undisputed that Rightscorp *did* receive choke data—Mr. Boswell stated under oath that Rightscorp "reviews" all choke data.  Boswell Decl., ¶ 6 (ECF No. 253-1).  He later testified that Rightscorp has deleted all of it.  Boswell Dep. Tr. Vol. II at 460:9–12 (ECF No. 282-4); *see also Columbia Pictures Indus. v. Bunnell*, No. 2:06-cv-1093, 2007 WL 2080419, at *4–*5 (C.D. Cal. May 29, 2007) (even BitTorrent data temporarily stored in random access memory ("RAM") is "electronically stored information" under Rule 34).

Furthermore, the fact that Rightscorp did not rely on choke data in sending notices makes this data even more important.  Rightscorp's decision to effectively ignore choke data means that Rightscorp almost certainly sent notices accusing Grande customers of offering to distribute copyrighted songs *that they were not actually offering to distribute*.  Yet because Rightscorp destroyed all choke data it received, there is no way for Grande to identify such false notices.

Thus, as with the destroyed bitfield data, it is indisputable that: (1) Plaintiffs should have preserved all choke data; (2) all choke data has been lost; (3) the data was lost because of Plaintiffs' failure to take reasonable steps to preserve it; and (4) the choke data cannot be restored or replaced.  *See* Fed. R. Civ. P. 37(e).  The Court should therefore set aside the Magistrate Judge's denial of sanctions concerning this evidence.

       3.     <u>Tracker Data</u>

Rightscorp's system obtained "tracker" data from public sources that identified particular

BitTorrent users (by IP address[4]) who may be sharing files that Rightscorp was monitoring. *See* Grande's Mot. for Sanctions at 2–3 (ECF No. 247). This step comes before any "handshake" with a particular BitTorrent user. In other words, Rightscorp's system first used tracker data to identify potential infringers, and *then* reached out to those potential infringers directly to perform a "handshake" that allowed Rightscorp to obtain bitfield and choke data directly from the BitTorrent user. *See id.*

The Magistrate Judge concluded that Grande was not prejudiced by the destruction of this tracker data because "the Rightscorp software undertakes a 'handshake' with a BitTorrent user, and records the data of this in the notices it sends to ISPs." Spoliation Order at 7 (ECF No. 289). This finding is factually incorrect and therefore clearly erroneous. There is no "handshake" data—*e.g.*, bitfield or choke data—in Rightscorp's notices. *See* Sample Notices (ECF No. 140-2). As Grande has explained, Mr. Boswell confirmed in deposition that Rightscorp's notices do not contain <u>any</u> information obtained from users of Grande's network. *See* Grande's Supp. Br. at 4 (ECF No. 281-2) (citing Boswell Dep. Tr. Vol. II at 466:18–470:20, 520:17–522:7 (ECF No. 282-4)). All of that information, including the communications reflecting the handshake itself and the resultant bitfield, choke, and other data gathered during that communication, has been destroyed. *See* Grande's Reply ISO Mot. for Sanctions at 3 (ECF No. 260).

The Court should therefore set aside the Magistrate Judge's denial of sanctions concerning the destruction of tracker evidence because the evidence establishes that: (1) Plaintiffs should have preserved all tracker data; (2) all tracker data has been lost; (3) the data was lost because of Plaintiffs' failure to take reasonable steps to preserve it; and (4) the tracker

---

[4] Every internet connection (*e.g.*, a modem in a person's home) connects to the internet through a unique IP address. An IP address allows one to identify the ISP that services that IP address, and the ISP can then in turn identify the customer to whom that IP address was assigned.

data cannot be restored or replaced.  *See* Fed. R. Civ. P. 37(e).

> 4.  Song Matching Evidence

The Court should reverse the Magistrate Judge's denial of sanctions for the destruction of song matching evidence—*i.e.*, the evidence reflecting Rightscorp's determination, prior to sending a notice of alleged infringement concerning a particular audio file, that the audio file was a copy of a copyrighted song.  *See supra* Section I.A.   The Magistrate Judge's conclusion rested on two factual findings concerning prejudice, both of which are clearly erroneous.

First, the Magistrate Judge found that Grande has not been prejudiced because "RIAA used the Audible Magic tool to verify the matches of Rightscorp downloads with Plaintiffs' copyrighted recordings, and . . . these outputs have been provided to Grande."  Spoliation Order at 5.  However, these Audible Magic outputs only concern the roughly 59,000 music files Rightscorp allegedly downloaded from users of Grande's network.  *See, e.g.*, Grande's Reply ISO Mot. for Summ. J. at 5 (ECF No. 201); Brophy Decl., ¶ 8 (ECF No. 201-1).  At trial, Plaintiffs intend to rely on over 1.3 *million* notices of alleged infringement sent by Rightscorp. *See, e.g.*, Order Adopting Report and Recommendations at 2 (ECF No. 268).  Thus, even if the Audible Magic outputs are credited, there is no such evidence for the overwhelming majority of Rightscorp's notices.[5]

Second, the Magistrate Judge also found a lack of prejudice because Plaintiffs have "produced to Grande the audio files Rightscorp downloaded, and thus Grande itself can verify

---

[5] Grande also reiterates its argument that the Audible Magic outputs (or outputs from any other song matching software) cannot be sufficient, standing alone, to show that the copyrighted work and the alleged copy are substantially similar.  Plaintiffs have come forward with no evidence of how Audible Magic functions, and not even any evidence that Audible Magic used the original copyrighted sound recordings at issue for comparison.  *See* Grande's Objections to Report & Recommendation at 20 (ECF No. 252).

the match through the publicly available AcoustID system." Spoliation Order at 5. Again, there is no corresponding audio file for the overwhelming majority of the notices Rightscorp sent to Grande. Thus, even if Grande could use AcoustID to verify the content of the audio files, the resulting AcoustID outputs would only be relevant to a small fraction of Rightscorp's notices.[6]

The Magistrate Judge therefore clearly erred in finding that Plaintiffs' destruction of song matching evidence was not prejudicial to Grande. As with every other category of spoliated evidence, the evidence demonstrates that: (1) Plaintiffs should have preserved all song matching evidence; (2) all song matching evidence has been lost; (3) the evidence was lost because of Plaintiffs' failure to take reasonable steps to preserve it; and (4) the song matching evidence cannot be restored or replaced. *See* Fed. R. Civ. P. 37(e).

**B.      The Magistrate Judge erred in finding that Plaintiffs cannot be sanctioned for spoliation prior to RIAA's engagement of Rightscorp in 2016.**

1.      The Magistrate Judge's conclusion that Plaintiffs cannot be sanctioned for Rightscorp's pre-engagement spoliation is legally erroneous.

In the Spoliation Order, the Magistrate Judge concluded that Plaintiffs cannot be sanctioned for any spoliation of evidence that occurred before RIAA hired Rightscorp as Plaintiffs' litigation consultant in 2016, because "Rule 37 only applies to ESI that was lost because a *party* failed to preserve it." Spoliation Order at 4 (ECF No. 289) (emphasis in original). As a result, the Magistrate Judge denied Grande's Motion with respect to changes in

---

[6] Furthermore, the record does not support the notion that AcoustID is a reliable means for determining the content of an audio file. As with Audible Magic, Plaintiffs have not come forward with any evidence of how AcoustID functions or any evidence that Plaintiffs supplied AcoustID with their original copyrighted sound recordings. Moreover, Grande's technical expert has determined that AcoustID: (1) relies entirely on user-submitted sound recordings for comparison (*i.e.*, anyone can upload a song file and claim "this is Song X"), (2) returns multiple potential matches for individual songs, sometimes with exactly the same degree of confidence, and (3) provides incorrect results (*e.g.*, completely misidentifying a song purchased from a legitimate digital music service). *See* Cohen Report, ¶¶ 122–23, 125, 128 (ECF No. 232-1).

the Rightscorp source code,[7] Rightscorp's call center logs, and all other evidence at issue that Rightscorp destroyed before it was hired in October of 2016.  *See id.* at 4–5.  Grande respectfully objects to this legal conclusion, which the Court reviews *de novo*.  *See Sparling*, 2016 WL 236266, at *2 ("The magistrate judge's legal conclusions are freely reviewable by the district judge, who applies a *de novo* standard and reverses if the magistrate judge erred in some respect in her legal conclusions.").

It is manifestly unjust and contrary to the purpose of Rule 37 sanctions to allow Plaintiffs to (1) purchase evidence from Rightscorp for the express purpose of bringing a lawsuit, and (2) avoid sanctions under Rule 37 for Rightscorp's spoliation because Rightscorp is not a party in the ensuing litigation.  As Grande noted previously, none of the cases Plaintiffs rely on—and none of the cases cited in the Spoliation Order—addressed sanctions against parties with prior notice that their evidence is tainted by spoliation.  *See* Grande's Reply ISO Mot. for Sanctions at 5 (ECF No. 260); Spoliation Order at 4.  Indeed, where a third party spoliates evidence, it is eminently reasonable to exclude other evidence from the third party that is tainted by that spoliation—which is precisely the relief Grande is seeking.  *See Paul Revere Life Ins. Co. v. Jafari*, No. 1:00-cv-2705, 2002 WL 34367714, at *5–*6 (D. Md. Sept. 19, 2002) (excluding all evidence from expert witness due to expert's spoliation of evidence)

Moreover, courts have granted sanctions for spoliation committed by a third party where the spoliated evidence was integral to a claim or defense.  *See, e.g.*, *King v. Am. Power Conversion Corp.*, 181 F. App'x 373, 377–78 (4th Cir. 2006) (rejecting argument that sanction

---

[7] Grande also objects to the Magistrate Judge's finding that "source code changes made before 2016 did not materially alter the system's functioning and reliability."  *See* Spoliation Order at 4 n.1.  Respectfully, because there is no evidence of what these changes were, the Magistrate Judge's finding is clearly erroneous.

of dismissal was unfair because "the spoliation was the result of the actions of an independent third party"); *Pettry v. La-Z-Boy, Inc.*, No. 5:07-cv-516, 2008 WL 2003448, at *2–*3 (S.D. W. Va. May 8, 2008) (granting sanctions based on third party's spoliation of "the only evidence from which Defendants could develop their defenses adequately") (alterations omitted).  It is well established that district courts have "wide discretion" to fashion appropriate sanctions under Rule 37, and that the touchstone is balancing the culpable conduct and resulting prejudice.  *See, e.g.*, *Repass v. Rosewood Hotels & Resorts, L.L.C.*, 184 F. Supp. 3d 401, 405 (N.D. Tex. 2015); *see also generally* 8B Wright & Miller, Federal Practice and Procedure § 2284 (3d ed. 2019) ("Rule 37 is flexible.  The court is directed to make such orders as are 'just' and is not limited in any case of disregard of the discovery rules or court orders under them to a stereotyped response. . . . . The district court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even.").

Here, Plaintiffs are plainly culpable because they initiated this lawsuit with knowledge of Rightscorp's spoliation.  When RIAA hired Rightscorp in 2016, another district court had already concluded that Rightscorp had "intentionally destroyed" material evidence in a similar case against an ISP, "by altering the source code [for its system], deleting portions of the source code, and by overwriting portions of the source code without maintaining a record of those alterations, deletions, or overwrites."  *See* Grande's Mot. for Sanctions at 1 (quoting Order at 4, *BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, No. 1:14-cv-1611 (E.D. Va. Oct. 22, 2015)).

Moreover, Plaintiffs cannot dispute that they had full access to Rightscorp's evidence prior to bringing this case, and therefore knew—or at the very least, should have known, in light of counsel's Rule 11 obligations—that Rightscorp was unable to provide any of the data

underlying its notices and downloads.  Plaintiffs have not attempted to suggest otherwise.

Indeed, given RIAA's strict data preservation requirements for its other copyright monitoring

vendors, it would beggar belief for Plaintiffs to claim that they did not immediately recognize the

deficiencies in Rightscorp's evidence.  *See* Grande's Supp. Br. at 2–3 (ECF No. 281-2).

   Finally, Grande emphasizes that every Rightscorp notice expressly threatens litigation,

giving Rightscorp the duty to preserve all relevant evidence.  *See, e.g.*, Sample Notices at 2 (ECF

No. 140-2) ("[Copyright owner] will pursue every available remedy including injunctions and

recovery of attorney's fees, costs and any and all other damages which are incurred by [copyright

owner] as a result of any action that is commenced against you."); *see also* Grande's Mot. for

Sanctions at 10.  But following the reasoning of the Spoliation Order, that duty was effectively

meaningless until RIAA hired Rightscorp in 2016.

   Thus, the Spoliation Order's reasoning leads to absurd results.  Rightscorp sent the vast

majority of the notices at issue in this case on behalf of BMG, a third party that apparently owns

the composition copyrights for many of Plaintiffs' copyrighted sound recordings.  As such, under

the Spoliation Order, if BMG had pursued functionally identical claims against Grande based on

all of the same Rightscorp evidence, it would have been chargeable with Rightscorp's spoliation

of evidence.  By contrast, here Plaintiffs are insulated from a spoliation sanction and are

therefore permitted to *benefit* from that spoliation.  Plaintiffs are being given the opportunity to

offer Rightscorp's notices as "evidence" of infringement, while severely compromising Grande's

ability to meaningfully defend against those allegations because all of the *actual evidence* on

which those allegations are based has been destroyed.   Permitting Plaintiffs to avoid sanctions

in these circumstances would not serve any legitimate purpose under the Federal Rules, and

would instead only work a perverse injustice on Grande.

For these reasons, the Court should set aside as legally erroneous the Magistrate Judge's conclusion that Plaintiffs cannot be sanctioned for any spoliation of evidence that occurred before RIAA hired Rightscorp as Plaintiffs' litigation consultant.  Accordingly, the Court should enter an order sanctioning Plaintiffs for Rightscorp's destruction of evidence of changes to its source code and for Rightscorp's destruction of call center logs.  *See* Grande's Mot. for Sanctions at 4-5, 7–8 (ECF No. 247).  Furthermore, for the reasons discussed above in Section III.A, the Court should further sanction Plaintiffs for all pre-October 2016 destruction of bitfield data, choke data, tracker data, and song matching evidence.

> 2.   <u>The Magistrate Judge committed clear error in denying sanctions for spoliation of download evidence.</u>

After Rightscorp sent notices of alleged copyright infringement to Grande, Rightscorp claims to have downloaded a collection of the allegedly infringing audio files from BitTorrent users identified in those notices.  According to Rightscorp, these audio files were downloaded over the period of September 25, 2014 to July 31, 2016—*i.e.*, before RIAA hired Rightscorp as Plaintiffs' litigation consultant.  *See* Boswell Decl., ¶ 14 (ECF No. 173-79).  It is undisputed that Rightscorp destroyed (1) all data demonstrating the origin of these audio files (*i.e.*, the evidence demonstrating that the files were downloaded from particular Grande IP addresses); and (2) all data reflecting failed download attempts.

Rightscorp had a duty to preserve this relevant evidence.  Data regarding the origin of the audio files is plainly relevant to Plaintiffs' allegations of direct copyright infringement by users of Grande's network.  Without this data, there is no way to verify that any of these audio files

actually came from a user of Grande's network.[8]  The data reflecting failed download attempts is likewise highly relevant to the accuracy of Rightscorp's notices, as a notice preceded every download attempt.  In other words, every failed download attempt is direct evidence that Rightscorp's corresponding notice was false, because the file at issue was not actually available.[9]

Nevertheless, the Magistrate Judge denied sanctions based on the clearly erroneous factual finding that this evidence was not "lost" because "it is never stored electronically or otherwise once the [download] process is complete."  Spoliation Order at 6–7.  Respectfully, the Magistrate Judge misunderstood Mr. Boswell's testimony on this subject.  *See id.* at 7.

First, Mr. Boswell's cited testimony only relates to evidence of failed download attempts, and not the data reflecting the origin of the audio files.  *See* Boswell Dep. Tr. Vol. II at 441:24– 442:25 (ECF No. 282-4).  The Magistrate Judge therefore clearly erred in denying sanctions with respect to this category of destroyed evidence.  *See also* Grande's Mot. for Sanctions at 7 (ECF No. 247).

Second, although Mr. Boswell attempted to characterize the storage of the failed download data as "temporary table on a database," he acknowledged that this database is saved

---

[8] In response to Grande's Motion, Plaintiffs offered to produce a spreadsheet with additional data concerning the provenance of the audio files.  *See* Spoliation Order at 6.  However, this spreadsheet does not contain any evidence demonstrating that a download actually occurred or was made from a particular Grande IP address, and Plaintiffs have not claimed otherwise.

[9] The evidence strongly suggests that Rightscorp sent Grande a huge volume of such false notices.  Mr. Boswell testified that over the 22-month period in which Rightscorp was allegedly attempting downloads, it was seeking to obtain as many files as possible.  *See* Boswell Dep. Tr. Vol. II 444:15–446:20 (ECF No. 282-4).  However, over that period, Rightscorp sent roughly 700,000 notices but was only able to download 59,000 files—a number that shrinks to 9,500 files after removing duplicate files repeatedly downloaded from the same user.  *See* Grande's Supp. Br. at 4 (ECF No. 281-2) (citing Cohen Supp. Report, ¶¶ 65–72 (ECF No. 282-5)).

to a hard drive.  *See* Boswell Dep. Tr. Vol. II at 440:5–441:10 (ECF No. 282-4).[10]  Thus, the

storage of this data is only "temporary" inasmuch as Rightscorp configured its system to store it

and then later delete it.  *See id.*  To be clear, Rightscorp's personnel admit they stored evidence

reflecting failed download attempts; they just happened to delete it later.  Furthermore, *even if*

this data was received by Rightscorp's system and never permanently stored—which Rightscorp

admits was not the case—Rightscorp still would have had a duty to preserve it.  *See, e.g.*,

*Bunnell*, 2007 WL 2080419, at \*4–\*5 (BitTorrent data temporarily stored in random access

memory ("RAM") is "electronically stored information" under Rule 34).

   The Magistrate Judge therefore clearly erred in denying sanctions with respect to the

destruction of this download evidence.  The evidence demonstrates that: (1) Rightscorp should

have preserved all download evidence; (2) all download evidence has been lost; (3) the evidence

was lost because of Rightscorp's failure to take reasonable steps to preserve it; and (4) the

download evidence cannot be restored or replaced.  *See* Fed. R. Civ. P. 37(e).

   **C.   The Magistrate Judge clearly erred in not finding bad faith or intent.**

   Given that Plaintiffs and Rightscorp destroyed all of the evidence they obtained from

users of Grande's network in connection with Rightscorp's notices and downloads, the only

reasonable conclusion is that they did so in bad faith and with the intent of depriving Grande of

this evidence.  *See Quantlab*, 2014 WL 651944, at \*10 ("Bad faith must typically be inferred,"

and "a court can do so where a party purposely loses or destroys relevant evidence.") (quotations

& citations omitted); Fed. R. Civ. P. 37(e)(2); *see also McKinney*, 964 F. Supp. 2d at 686

(finding bad faith based on circumstantial evidence).  Indeed, Plaintiffs have not even *attempted*

---

10 The "SampleIt2" referred to in this testimony is the software process in Rightscorp's system
that conducts downloads.

to offer an explanation for why this evidence was destroyed, either before _or_ after RIAA hired Rightscorp as Plaintiffs' litigation consultant.  *See generally* Pls.' Resp. to Mot. for Sanctions (ECF No. 253) (arguing only that the destroyed evidence is cumulative, unnecessary, and/or irrelevant); Pls.' Opp'n to Mot. for Leave (ECF No. 283) (same).

The spoliation at issue in this case is extreme and unprecedented.  As a result of Plaintiffs' and Rightscorp's destruction of relevant evidence, Grande is left to defend against: (1) as many as 1.3 million separate and discrete allegations of copyright infringement against users of its network, without any of the data upon which those allegations were based, and (2) nearly 60,000 allegedly infringing audio files allegedly downloaded from those users, without any data regarding the origin of those files or showing how often Rightscorp's download attempts failed.

It is not enough to say that Grande can simply argue these issues at trial or raise them on cross-examination of Plaintiffs' witnesses.  By its very nature, the voluminous and technically complex Rightscorp evidence is calculated to give the impression of credibility.  As the Magistrate Judge acknowledged, grasping the underlying technical issues can be difficult even for an experienced federal judge.  *See* Spoliation Order at 7.

But once these issues are understood, the situation is in fact very straightforward: Plaintiffs and Rightscorp have destroyed all evidence obtained from users of Grande's network that might be used to undermine Plaintiffs' claims in this case.  All that is left are Rightscorp's notices of infringement—mere allegations devoid of any actual evidence—and bare audio files. The only plausible conclusion is that Plaintiffs and Rightscorp destroyed this evidence in bad faith.  There is no conceivable justification for destroying every shred of evidence that could be used to determine the legitimacy of Rightscorp's allegations of infringement.  Accordingly, severe sanctions are warranted.  *See, e.g.*, *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F.

Supp. 2d 598, 614 (S.D. Tex. 2010) ("severe sanctions" include "granting default judgment, striking pleadings, or giving adverse inference instructions"); *Consol. Aluminum Corp.*, 244 F.R.D. at 344 ("Typically, the giving of an adverse inference instruction has been upheld where the facts of the case are extreme, such as where the destroyed evidence was the very automobile that was the subject of the products liability action."); Fed. R. Civ. P. 37(e) (upon finding "the intent to deprive another party" of the destroyed ESI, the court may "presume that the lost information was unfavorable to the party," "instruct the jury that it may or must presume the information was unfavorable to the party," or "dismiss the action or enter a default judgment").

In view of the Court's discretion to fashion an appropriate sanction, Grande reiterates its request that the Court sanction Plaintiffs by excluding all Rightscorp notices and downloads tainted by the spoliation. *See* Grande's Mot. for Sanctions at 10 (ECF No. 247). This sanction is proportionate to the culpable conduct and resulting prejudice, given that the spoliated evidence is necessary to evaluate the legitimacy of any notice or download. *See Rimkus*, 688 F. Supp. 2d at 618. Of course, the Court is free to impose any sanction it deems just and proper, such as the giving of an adverse inference instruction, or the imposition of lesser sanctions (such as awarding attorneys' fees or deeming facts admitted) in the event the Court finds no bad faith.[11]

## CONCLUSION

For the foregoing reasons, the Court should sustain Grande's Objections to the Spoliation Order, set aside the findings and conclusions in the Spoliation Order as clearly erroneous and/or contrary to law, and enter an order granting Grande's Motion for Evidentiary Sanctions (ECF No. 247) and imposing appropriate sanctions on Plaintiffs.

---

[11] In this respect, Grande objects to the Magistrate Judge's failure to consider lesser sanctions upon finding an absence of bad faith. *See* Grande's Mot. for Sanctions at 10 (requesting the exclusion of evidence *or* "such other sanction [that] the Court deems just and proper").

Dated:  October 11, 2019

By:  /s/ Richard L. Brophy
　　　Richard L. Brophy
　　　Zachary C. Howenstine
　　　Margaret R. Szewczyk
　　　ARMSTRONG TEASDALE LLP
　　　7700 Forsyth Blvd., Suite 1800
　　　St. Louis, Missouri 63105
　　　Telephone:  314.621.5070
　　　Fax:  314.621.5065
　　　rbrophy@armstrongteasdale.com
　　　zhowenstine@armstrongteasdale.com
　　　mszewczyk@armstrongteasdale.com

　　　J. Stephen Ravel
　　　Texas State Bar No. 16584975
　　　J.R. Johnson
　　　Texas State Bar No. 24070000
　　　Diana L. Nichols
　　　Texas State Bar No. 00784682
　　　KELLY HART & HALLMAN LLP
　　　303 Colorado, Suite 2000
　　　Austin, Texas 78701
　　　Telephone: 512.495.6429
　　　Fax: 512.495.6401
　　　Email: steve.ravel@kellyhart.com
　　　　　　　jr.johnson@kellyhart.com
　　　　　　　diana.nichols@kellyhart.com

　　　Attorneys for Defendant GRANDE
　　　COMMUNICATIONS NETWORKS LLC

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned certifies that on October 11, 2019, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ Richard L. Brophy
Richard L. Brophy