# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

UMG RECORDINGS, INC., *et al.*,

    Plaintiffs,

vs.

GRANDE COMMUNICATIONS
NETWORKS LLC,

    Defendant.

§
§
§
§
§
§
§
§
§
§

Civil Action No. 1:17-cv-00365-DAE-AWA

## PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE ANY EVIDENCE OR ARGUMENT RELATED TO THE COPYRIGHT ALERT SYSTEM

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, Plaintiffs move *in limine* to preclude Defendant Grande Communications Networks LLC ("Grande") from introducing any evidence or making any argument at trial related to a set of experimental policies to deter online copyright infringement known as the Copyright Alert System ("CAS"). CAS was the product of an agreement between some copyright owners and trade groups representing them (including the Recording Industry Association of America ["RIAA"]) on one side, and five of the largest internet service providers ("ISPs") in the country on the other side. Grande was not part of the CAS agreement, and Grande did not implement the type of infringement detection and remediation system contemplated by CAS. Accordingly, evidence or argument related to CAS has no relevance to the issues to be tried, and would serve only to distract and confuse the jury into believing that Grande's liability should be measured in comparison to the policies and practices of other ISPs rather than by its compliance with the law.

Given the plainly irrelevant and prejudicial nature of this evidence and argument, when Grande sought to compel discovery from Plaintiffs related to CAS, Magistrate Judge Austin denied Grande's request and held that such documents "are not sufficiently related to this case to permit their discovery." Dkt. 191, Order (Sept. 26, 2018) at 11. Further, Magistrate Judge Austin held— **at Grande's insistence**—that evidence related to ISPs other than Grande more generally is irrelevant to this case. This Court should reaffirm this sensible limitation and preclude Grande from introducing evidence at trial that was prohibited during discovery, and any arguments related to such evidence.

## BACKGROUND

### A.    The Copyright Alert System

In 2011, five large ISPs[1] agreed with the RIAA and other trade groups representing copyright owners to implement CAS, an experimental set of policies that the parties hoped would deter online copyright infringement.  CAS required the participating ISPs to take certain actions against users who were the subject of multiple copyright infringement notices from a third-party monitoring company called MarkMonitor.  In particular, after a user was the subject of five notices, the ISPs were authorized to take "mitigation measures" against that user, and after a user was the subject of six notices, the ISPs were required to take such measures.  Mitigation measures could include suspending the user's internet service, reducing the user's bandwidth speed, or blocking the user's access to well-known websites devoted to facilitating copyright infringement.  CAS was operational from February 2013 through January 2017.

Critically, even when CAS was operational, it did not purport to define what type of repeat infringer policy was necessary in order for an ISP to qualify for the safe harbor provision of the Digital Millennium Copyright Act ("DMCA").  Nor did CAS change an ISP's legal obligations with respect to terminating repeat infringers.  Instead, the operative CAS agreement stated that "the adoption, implementation, enforcement, or other action in furtherance of a DMCA Termination Policy is not part of any step of the [CAS] program or enforceable under this Agreement."[2]  CAS requirements therefore operated independently from the legal standards that govern eligibility for a DMCA safe harbor.

---

[1] The ISPs were AT&T, Cablevision, Comcast, Time Warner Cable, and Verizon.
[2] *See* Memorandum of Understanding (July 6, 2011), at 9 n.1, *available at* https://info.publicintelligence.net/CCI-MOU.pdf.

It is undisputed that Grande was not a participant in CAS.  It is also beyond dispute that Grande did not develop, let alone implement, any mitigation measures like those required by CAS. To the contrary, the Court has ruled that undisputed evidence proves that in 2010, Grande changed its policy of suspending and terminating the accounts of users who were the subject of copyright infringement notices in order to ***stop*** taking such measures.[3]  The evidence at trial will show that from the time of this policy change in 2010 to the time this lawsuit was filed in 2017, the only action that Grande took in response to copyright infringement notices was to forward some of them to its users.  Moreover, Grande did not even forward the infringement notices sent by Rightscorp that are at issue in this lawsuit to its users for the bulk of the time period addressed by this action: the evidence shows that although Rightscorp began sending Grande notices in 2011, Grande actually forwarded Rightscorp notices to its users only for a brief period from approximately March 2016 to February 2017.[4]  From 2011 through March 2016 and from February 2017 onward, Grande did nothing.

---

[3] Dkt. 241 Mag. J. Rep and Rec. re SJ at 12 (adopted at Dkt. 268).  *See also* Ex. 1, June 28, 2018 S. Christianson Dep. at 322:21-323:14 ("Q: I think we've covered this clearly, but just to make sure we have a clean record.  You would agree with me that Grande did not have a policy that provided for the termination of subscribers and account holders who were repeat copyright infringers in 2010, right?  A: To my knowledge, yes.  Q: Same answer for 2011?  A: Yes.  Q: 2012?  A: Yes.  Q: 2013?  A: Yes.  Q: 2014?  A: Yes.  Q: 2015?  A: Yes.  Q: And 2016?  A: Yes."); Ex. 2, Sept. 24, 2019 L. Horton Dep. at 32:21-33:4 ("Q: Grande could've received a thousand notices of infringement about a customer.  Based on the policy change starting in October 2010, Grande wasn't going to terminate that person for copyright infringement.  True? . . . A: Yes.  As I said, we did not terminate any subscribers.").

[4] *See* Dkt. 173-87, Excerpt from Grande CSG/OSG Letters Database (showing first letter sent to Grande subscriber based on Rightscorp notice in March 2016); Ex. 3, Feb. 21, 2018 L. Horton Dep. at 137:8-19 ("Q: What's your best recollection as to when any such time periods were?  A: Going from memory, which may not be accurate, with the implement – implementation of this policy, I believe that Rightscorp was not providing the requirements to process at the time of implementation.  What I am not a hundred percent sure of is whether there was a time period that that changed or varied back and forth, and I would need to confirm that.  Q: When you say 'this process,' you mean the DMCA policy implemented in February 2017?  A: Yes.").

### B.      Procedural History

During discovery, Magistrate Judge Austin rejected Grande's effort to compel the production of documents from Plaintiffs and from non-party RIAA related to CAS on the ground that such documents were irrelevant.  This ruling was consistent with other rulings by Magistrate Judge Austin denying motions to compel the production of evidence more generally related to the policies and practices of ISPs other than Grande.

First, Magistrate Judge Austin expressly denied Grande's motion to compel documents related to CAS, holding that the documents were "not sufficiently related to this case to permit their discovery."  Dkt. 191, Order (Sept. 26, 2018) at 11.

Second, Grande separately sought discovery from the RIAA, including RIAA records related to its interactions with other ISPs.  The RIAA objected, and on the same day he denied Grande's motion to compel CAS documents from Plaintiffs, Magistrate Judge Austin held that the documents Grande sought from the RIAA were irrelevant.  *See* Dkt. 192, Order (Sept. 26, 2018) at 7.  Magistrate Judge Austin specifically recognized that "documents relating to these other ISPs were not relevant to whether Grande could be held liable for the actions of *its* subscribers on *its* system."  *Id.* (emphasis in original).

## LEGAL STANDARD

"Irrelevant evidence is not admissible."  Fed. R. Evid. 402.  Moreover, relevant evidence can be precluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Whether to admit or exclude evidence has long been "left to the sound discretion of the trial judge."  *United States v. Okoronkwo*, 46 F.3d 426, 435 (5th Cir. 1995).

**ARGUMENT**

This Court should enforce the standard for relevance adopted by Magistrate Judge Austin and preclude any evidence or argument related to CAS.  As noted above, CAS is nothing more than an experimental set of policies voluntarily implemented by ISPs having nothing to do with Grande or even the DMCA.  As Magistrate Judge Austin held, CAS is therefore irrelevant to Grande's liability for its own conduct.  But even if the Court disagrees with Magistrate Judge Austin's standard for relevance, evidence or argument related to CAS should still be precluded because it would unfairly prejudice Plaintiffs and risk confusing the issues or misleading the jury.

First, as Magistrate Judge Austin has already held, CAS is irrelevant to this action.  *See* Dkt. 191, Order (Sept. 26, 2018) at 11.  This case relates to Grande's liability for contributory infringement based on its own policies, procedures, and conduct.  *See* Dkt. 60, Order (Oct. 27, 2017); Dkt. 192, Order (Sept. 26, 2018); *see also United States v. Mendlowitz*, No. 17-cr-248-VRB, 2019 WL 6977120, at *5 (S.D.N.Y. Dec. 20, 2019) (precluding evidence of "general practice in an industry" as irrelevant to a particular individual's conduct).  Yet evidence related to CAS can *only* show what ISPs other than Grande did.  As described above, it is undisputed that Grande was not a party to the agreement to implement CAS and beyond dispute that Grande did not implement CAS.  Grande never implemented the mitigation measures required by CAS, and for the first five years during which it received infringement notices from Rightscorp, it did not even forward those notices to its users.  Accordingly, CAS has no bearing on what Grande did (or did not do), and any evidence or argument related to CAS should be precluded under Rule 402.

Second, even if this Court were to hold that CAS were somehow relevant to Grande's conduct, it should still be precluded from trial under Rule 403.  Any minimal probative value that CAS might have to Grande's conduct (and it has none) is substantially outweighed by the unfair prejudice to Plaintiffs that would result from allowing evidence to be submitted at trial on a subject

matter that the parties were not allowed to pursue during discovery.  If the jury is permitted to consider Grande's conduct in light of CAS, then it should also be permitted to consider Grande's conduct as compared to other ISPs that did not participate in CAS, such as the other ISPs managed by Patriot Media Consulting, LLC ("Patriot") in addition to Grande.  However, Plaintiffs were denied the opportunity to develop any of that evidence.[5]

If evidence of or argument about CAS is presented to the jury, Plaintiffs will also be unfairly prejudiced because Grande and Patriot were the first parties to argue that discovery related to other ISPs should be restricted.  Because Grande's position prevailed, Grande should not be allowed to take a contrary position at trial.

Further, CAS will confuse the issues and mislead the jury.  CAS was a private agreement negotiated by multiple parties; it did not change any ISP's statutory obligations.  It did, however, impose both enforcement costs and obligations on participant ISPs, neither of which Grande agreed to bear.  Nonetheless, because CAS did not *require* termination as one of the enforcement mechanisms, Grande may seek to invoke CAS to justify its failure to terminate any users from 2011 through 2016.  Such an "everybody-is-doing-it defense" is improper.  *United States v. Oldbear*, 568 F.3d 814, 821 (10th Cir. 2009) (affirming district court's decision to preclude evidence under Rule 403).  That rule is particularly true since Grande was not a party to the CAS agreement and did not abide by any of its provisions.  The controlling principle here is that the conduct of other ISPs is not on trial, and Grande should not be permitted to shift focus away from

---

[5] Plaintiffs sought documents and interrogatory responses from Patriot, which was then a defendant along with Grande, but Patriot objected.  Magistrate Judge Austin denied Plaintiffs' motion to compel, ruling that Plaintiffs could not show that Patriot's management of other ISPs was "relevant to Grande's policies and procedures relating to alleged copyright infringement by Grande's customers."  Dkt. 60, Order (Oct. 27, 2017) at 2.

its own conduct.  Allowing Grande to present evidence of the conduct of other ISPs through CAS thus risks confusing the issues and misleading the jury.  *See id.*

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* to preclude Grande from introducing any evidence or making any argument related to CAS.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Plaintiffs state that they conferred with counsel for Defendant regarding the topic of this motion, and Defendant did not consent to the motion.

Dated: February 4, 2020

Respectfully submitted,

By: */s/ Andrew H. Bart*
Andrew H. Bart (admitted *pro hac vice*)
Jacob Tracer (admitted *pro hac vice*)
**Jenner & Block LLP**
919 Third Ave.
New York, New York 10022
Telephone: (212) 891-1600
Facsimile:  (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
Kevin L. Attridge (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)

7

**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com
***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 4, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Daniel C. Bitting*_____
Daniel C. Bitting