IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS NETWORKS LLC, | § § § § | |
| Defendant. | § § § | |

**PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE IRRELEVANT OR PREJUDICIAL EVIDENCE OR ARGUMENTS RELATED TO RIGHTSCORP, INC.**

Pursuant to Rules 402 and 403 of the Federal Rules of Evidence, Plaintiffs move *in limine* to preclude Defendant Grande Communications Networks, LLC ("Grande") from introducing any irrelevant or unfairly prejudicial evidence or making any related argument at trial regarding: (1) Grande's allegation (rejected by Magistrate Judge Austin) that Rightscorp, Inc. ("Rightscorp") destroyed evidence necessary to its defense; (2) Rightscorp's business practices and any derogatory descriptions of those practices; or (3) Rightscorp's finances. These topics are irrelevant to determining the accuracy of Rightscorp's system for identifying copyright infringement on the networks of internet service providers ("ISPs") like Grande and are unfairly prejudicial to Plaintiffs because they are likely to inappropriately prejudice the jury against Rightscorp.

## BACKGROUND

While the facts specifically relevant to each topic that should be precluded are described below, it is important to note at the outset that Grande developed its criticisms of Rightscorp only after this litigation began. During the relevant time period—from 2011, when Rightscorp began to send copyright infringement notices to Grande, to April 2017, when Plaintiffs initiated this suit—Grande took no action suggesting that it doubted the reliability of Rightscorp's system for monitoring online copyright infringement, the accuracy of any Rightscorp notice, or the business model Rightscorp employed. To the contrary, Grande's corporate witnesses testified that Grande confirmed that Rightscorp was "a valid entity" and admitted that Grande never concluded that any Rightscorp notice was incorrect in any respect.[1] Thus, any criticism of Rightscorp now leveled by Grande necessarily reflects a post-hoc litigation posture and not a sincerely held concern that motivated any action Grande took or failed to take at the relevant time.

---

[1] Ex. 1, Sept. 24, 2019 L. Horton Dep. at 30-32.

**LEGAL STANDARD**

Evidence is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Moreover, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Whether to admit or exclude evidence has long been "left to the sound discretion of the trial judge." *United States v. Okoronkwo*, 46 F.3d. 426, 435 (5th Cir. 1995).

**ARGUMENT**

Grande should be precluded from introducing any evidence or making any argument regarding (1) its rejected allegation that Rightscorp destroyed evidence in this case necessary to its defense; (2) Rightscorp's business practices, including any derogatory descriptions of those practices; and (3) Rightscorp's finances. Each of those topics is irrelevant and unfairly prejudicial to Plaintiffs.

**I.    Grande's Rejected Allegation That Rightscorp Destroyed Evidence Necessary To Its Defense**

Throughout this litigation, Grande has accused Rightscorp of spoliating evidence, specifically alleging that such actions were taken "with the intent to deprive Grande of access" to that evidence. Dkt. 290, Grande's Objections to Order on Motion for Evidentiary Sanctions (Oct. 11, 2019) at 1; *see also* Dkt. 247, Grande's Motion for Evidentiary Sanctions (Jan. 3, 2019). According to Grande, Rightscorp destroyed data that was necessary to evaluate the reliability of Rightscorp's system to detect online copyright infringement. Based on that accusation, Grande moved for evidentiary sanctions, seeking to preclude Plaintiffs from relying on the copyright

3

infringement notices generated by Rightscorp as a result of its infringement detection system. *See generally* Dkt. 247 (Jan. 3, 2019). The Court effectively rejected Grande's argument in its summary judgment opinion, concluding that *Plaintiffs* did not spoliate or direct Rightscorp to spoliate any evidence, and that Grande presented no evidence Rightscorp acted in bad faith. *See* Dkt. 268, Court's Order re Summary Judgment (Mar. 15, 2019) at 29 n.4. For good measure, Magistrate Judge Austin then denied Grande's sanctions motion. *See* Dkt. 289, Order re Motion for Evidentiary Sanctions (Sept. 27, 2019).[2]

Grande's argument has two fatal flaws. First, Plaintiffs did not engage Rightscorp until October 2016, and parties cannot be sanctioned for spoliation occurring before they were in a position to control it. *See* Dkt. 294, Plaintiffs' Opposition to Grande's Objections to Order on Motion for Evidentiary Sanctions (Oct. 25, 2019) at 9-11 (citing cases). Indeed, both Magistrate Judge Austin and this Court confirmed that *Plaintiffs* cannot be responsible for any action Rightscorp took before they were in privity. *See* Dkt. 268, Court's Order re Summary Judgment (Mar. 15, 2019) at 29 n.4; Dkt. 289, Magistrate Judge Austin's Order re Motion for Evidentiary Sanctions (Sept. 27, 2019) at 4.

Second, Rightscorp's system maintained precisely the data it was designed to maintain. There was no separate subsequent "destruction" of evidence. Rightscorp's collection of data was massive, was produced to Grande, and is more than sufficient to evaluate the system's reliability. Plaintiffs have explained in detail the sufficiency of the data collected and maintained by Rightscorp. *See* Dkt. 253 at 6-9; Dkt. 294 at 11-18 (describing available data and its sufficiency to evaluate Rightscorp system). That proffer is why Magistrate Judge Austin repeatedly held that

---

[2] Grande objected to Magistrate Judge Austin's order, *see* Dkt. 290 (Oct. 11, 2019), and Plaintiffs opposed Grande's objections, *see* Dkt. 294 (Oct. 25, 2019). The Court has not yet ruled on Grande's objections.

Grande was not prejudiced by not having the additional data it claims it needs. *See* Dkt. 289 at 4 n.1, 5 & 7.

In reality, Grande's claim that Rightscorp "spoliated" or "destroyed" evidence is nothing more than an attack Grande developed after this litigation began to criticize Rightscorp for not preserving *more* evidence than it did. As noted above, Rightcorp's source code was written to preserve evidence sufficient to confirm the infringement. The system operated as the source code provided. Critically, there never was a subsequent "destruction" of data. Clearly, operating an automated process as programmed is a far cry from allegedly destroying evidence that had been preserved. Grande's arguments are baseless attempts to transform the former into the latter, which is highly prejudicial in addition to being incorrect.

Accordingly, Grande should be precluded at trial from presenting evidence or arguing again that Rightscorp "spoliated" or "destroyed" evidence supposedly necessary to Grande's defense. Any such evidence or argument is unfairly prejudicial to Plaintiffs, who played no role in designing Rightscorp's system and did not even engage Rightscorp until October 2016. *See* Dkt. 268 at 29 n.4; Dkt. 289 at 4. Minimally probative evidence that is highly prejudicial should be excluded under Rule 403.

## II.   Rightscorp's Business Practices

Grande's pretrial submissions reveal that Grande intends to disparage Rightscorp at trial by introducing evidence and making arguments in derogatory terms critical of Rightscorp's business practice of offering to settle disputes with consumers who infringe copyrights. Specifically, Grande's exhibit list includes multiple documents related to the script Rightscorp's call center used to guide communications with consumers who received Rightscorp notices. Those documents include emails describing the call center script as a "terrifying extortion script" that is "breathtaking in its sleaze." Dkt. 301-3, Exs. 44, 57; *see also id.* Exs. 58, 59. In addition, Grande

has designated testimony from former Rightscorp CEO Christopher Sabec in which Grande's attorneys probed Rightscorp's call center practices. *See, e.g.,* Dkt. 301-5, C. Sabec 90:5-91:17, 140-150.

Rightscorp's business practices generally, and its call center script in particular, are irrelevant to this action. The issue to be resolved at trial is whether Grande is liable for contributory copyright infringement, *i.e.*, whether Grande's users engaged in direct copyright infringement of Plaintiffs' works about which Grande had actual knowledge or to which Grande was willfully blind.[3] Rightscorp's business practices have no effect on any element of Plaintiffs' claim. First, they bear no relation to the reliability of the technical system Rightscorp developed to detect copyright infringement online. As noted above, the reliability of that system and the accuracy of the notices it generated can be tested through the massive amounts of data about that system produced to Grande during discovery. *See* Dkt. 294 at 11-18 (describing available data and its sufficiency to evaluate Rightscorp system). Rightcorp's business practices do not even arguably affect the operation of Rightscorp's technical system.

Second, Rightscorp's business practices clearly had no effect on any action Grande took in response to receiving any Rightscorp notice. There is no evidence Grande took any steps to learn about Rightscorp's business at the time it received those notices. Nor is there any evidence that Grande were aware of, investigated or took any actions relating to those business practices. Because there is no evidentiary foundation to suggest Grande was contemporaneously aware of Rightscorp's business practices in general or its call center script in particular, evidence of those practices cannot be relevant to anything Grande did during the relevant time period.

---

[3] The Court has already held as a matter of law that Plaintiffs own the copyrights to the works in suit and that Grande materially contributed to its users' infringement as a matter of law. *See* Dkt. 268 at 42, 51. Thus, those are not issues to be resolved at trial.

Moreover, there is no evidence—nor could there be—that any Grande customer ever interacted with Rightscorp at all, let alone in a manner influced by the call script. The script on Grande's exhibit list is dated October 23, 2014, which was in the middle of a four-year period during which Grande was not even forwarding any notices it received from Rightscorp to its subscribers. Grande did not begin to do that until March 2016, almost a year and a half later, and did so only until February 2017, when it stopped forwarding Rightscorp notices again.[4] There is not a shred of evidence in the record to suggest that any Grande customer called Rightscorp during that limited time period when Grande forwarded Rightscorp notices, let alone heard the purported call center script. The call center scripts therefore play no role in this case.

In *BMG v. Cox*, which also involved Rightscorp, the court excluded evidence of Rightscorp's business practices (including its call script) for exactly these reasons: like Grande, Cox had no contemporaneous knowledge of Rightscorp's business practices and did not forward Rightscorp notices to its subscribers. *See BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 199 F. Supp. 3d 958, 988 (E.D. Va. 2016). The court in *Cox* discounted the relevance of the call center scripts because they were "for phone calls between Rightscorp and subscribers of other ISPs of which Cox was unaware" at the relevant time. *Id.* The same is true here.

In addition to being irrelevant, evidence of Rightscorp's business practices is also unfairly prejudicial and likely to cause jury confusion. It is clear that Grande seeks to introduce this evidence to unfairly assert that Rightscorp is a somehow a bad actor that should not be trusted.

---

[4] *See* Dkt. 173-87, Excerpt from Grande CSG/OSG Letters Database (showing first letter sent to Grande subscriber based on Rightscorp notice in March 2016); Ex. 2, Feb. 21, 2018 L. Horton Dep. at 137:8-19 ("Q: What's your best recollection as to when any such time periods were? A: Going from memory, which may not be accurate, with the implement – implementation of this policy, I believe that Rightscorp was not providing the requirements to process at the time of implementation. What I am not a hundred percent sure of is whether there was a time period that that changed or varied back and forth, and I would need to confirm that. Q: When you say 'this process,' you mean the DMCA policy implemented in February 2017? A: Yes.").

7

That argument is not based on any critique of Rightscorp's infringement monitoring system and thus is purely pejorative, especially when based on documents that use derogatory language like "extortion" and "sleaze." It is meant to confuse the jury into doubting Rightscorp's technical accuracy based on a distaste for Rightscorp on an unrelated topic. That is exactly the type of information Rule 403 is meant to exclude.[5]

**III.   Rightscorp's Finances**

Grande's exhibit list also shows that Grande further intends to disparage Rightscorp at trial by introducing evidence and making arguments related to Rightscorp's finances, particularly the dire condition Rightscorp was in during 2017. Grande's proposed Exhibit 56 is an online news article with the headline: "Rightscorp finished Sept 2017 with $3,147 in the bank, warns investors it will likely have to shut down without more cash." Dkt. 301-3, Ex. 56. Grande also has designated testimony from Mr. Sabec regarding Rightscorp's financial condition. *See, e.g.,* Dkt. 302-5, C. Sabec Dep. 92-93, 96. This as well as any other evidence Grande seeks to admit regarding Rightscorp's finances, and any arguments Grande seeks to make about that evidence, should be excluded from trial.

As with evidence of Rightscorp's business practices, evidence of Rightscorp's finances is irrelevant to determining the accuracy of Rightscorp notices or how Grande responded to receiving those notices. There is no evidence proving or even suggesting that Rightscorp's finances had any

---

[5] The court in *Cox* also precluded Cox from using derogatory or inflammatory language itself to describe Rightscorp. *See Cox*, No. 1:14-CV-01611-LO-JFA (E.D. Va.), Dkt. 691 at 12 (granting BMG's Motion *in Limine* No. 1 to Exclude Introduction of Irrelevant Information About Rightscorp, Inc.). BMG sought such an order because Cox and its attorneys had used such language during depositions and summary judgment briefing. *See id.*, Dkt. 544, BMG's Motion *in Limine* No. 1, at 3-4 (collecting examples). While Grande has not used similarly derogatory language to date, Plaintiffs submit that if Grande changes tactics at trial, an order similar to the one issued in *Cox* is appropriate. Litigants should not use "terms that carry unnecessarily negative and prejudicial connotations." *Energy Heating, LLC v. Heat On-The-Fly, LLC*, No. 4:13-CV-10, Dkt. 530 at 2, 4 (D.N.D. Aug. 13, 2015).

impact whatsoever on the accuracy of its infringement detection system at the relevant time. Moreover, Rightscorp's financial condition in late 2017 post-dates when this action was filed, so it could not have affected how Grande responded to receiving Rightscorp notices before this lawsuit.

Presumably, Grande intends to use Rightscorp's financial condition after this lawsuit was filed to suggest that Rightscorp has a financial motive to ensure Plaintiffs prevail. But Rightscorp has no direct financial interest in the outcome of this lawsuit. Thus, there is no connection between Rightscorp's finances in late 2017 and the credibility of any witness in this case.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* to preclude Grande from introducing any evidence or making any argument regarding the three topics discussed above.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Plaintiffs state that they conferred with counsel for Defendant regarding the topic of this motion, and Defendant did not consent to the motion.

Dated: February 4, 2020              Respectfully submitted,

By: */s/ Andrew H. Bart*
Andrew H. Bart (admitted *pro hac vice*)
Jacob Tracer (admitted *pro hac vice*)
**Jenner & Block LLP**
919 Third Ave.
New York, New York 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
Kevin L. Attridgge (admitted *pro hac vice*)

**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that on February 4, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

                                             */s/ Daniel C. Bitting*
                                             Daniel C. Bitting