# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS NETWORKS LLC, | § § § § | |
| Defendant. | § § | |

## PLAINTIFFS' MOTION *IN LIMINE* TO PERMIT EVIDENCE OR ARGUMENT RELATED TO GRANDE'S INELIGIBILITY FOR THE DMCA SAFE HARBOR DEFENSE

At summary judgment, the Court held that as a matter of law Defendant Grande Communications Networks LLC ("Grande") is ineligible for the safe harbor affirmative defense provided by the Digital Millennium Copyright Act ("DMCA"). *See* Dkt. 268 (the "Order") at 8-18. At trial, Plaintiffs intend to rely on the Court's safe harbor ruling and the facts supporting it to prove the elements of contributory infringement and the appropriate measure of damages for that infringement. Grande has foreshadowed that it intends to argue at trial that it is unfair to hold internet service providers ("ISPs") liable for their subscribers' conduct (and that Grande should not be required to serve as the "copyright police"). But the law gives ISPs like Grande a way to avoid such liability—compliance with the DMCA's safe harbor—and Plaintiffs would be prejudiced if they were not allowed to refer to the Court's safe harbor ruling to rebut Grande's argument. Thus, Plaintiffs move *in limine* for an order permitting them to present the Court's safe harbor ruling and introduce evidence supporting that ruling to the jury.

## BACKGROUND

The record in this case demonstrates how Grande's policies governing its response to copyright infringement notices received about its customers changed over time. Before 2010, "Grande enforced a policy of turning off all subscribers upon copyright violation notice, requiring the customer to then contact Grande to discuss the issue, understand what happened, inform the customer of why they'd been shut off, and take appropriate action from there." Order at 10-11 (internal quotations omitted). Under this policy, Grande sometimes terminated the accounts of customers for copyright infringement.[1]

---

[1] Ex. 1, M. Rohre Dep. at 92:12-20 ("Q: Do you know approximately when in the history of the company you terminated subscribers for copyright infringement? A: Prior to whenever our policy changed with Atlantic Broadband. So from – just to call it the inception of the company, in 2000 through 2010, I don't know specifically when we changed that. It wasn't part of my job responsibilities, but I do know that we did terminate customers.").

1

Then, "beginning in October 2010, Grande's practice of terminating customers ceased, and Grande did not terminate a single infringing customer from October 2010 until May 2017." Order at 11 (internal citations omitted). Grande's employees confirmed that, from 2010 through 2016, Grande's policy was **not** to terminate customers about whom it received copyright infringement notices.[2] Grande's employees also confirmed that based on that policy, Grande in fact did not terminate any customers for copyright infringement.[3]

Finally, in June 2017—months after this litigation was filed—Grande began terminating customers for copyright infringement again. *See* Order at 11. In 2017, Grande terminated just 11 customers for that reason. *See id*.

Based on those facts, *inter alia*, the Court held that Grande failed to adopt and reasonably implement a policy providing for the termination of repeat infringers as required as a condition of eligibility for the safe harbor affirmative defense under the DMCA. *See id.* at 8-18.

## LEGAL STANDARD

Evidence is relevant when "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence is generally admissible. *See* Fed. R. Evid. 402. Whether to admit or exclude evidence has long been "left to the sound discretion of the trial judge." *United States v. Okoronkwo*, 46 F.3d. 426, 435 (5th Cir. 1995).

---

[2] Ex. 2, June 28, 2018 S. Christianson Dep. at 322:21-323:14 ("Q: I think we've covered this clearly, but just to make sure we have a clean record. You would agree with me that Grande did not have a policy that provided for the termination of subscribers and account holders who were repeat copyright infringers in 2010, right? A: To my knowledge, yes. Q: Same answer for 2011? A: Yes. Q: 2012? A: Yes. Q: 2013? A: Yes. Q: 2014? A: Yes. Q: 2015? A: Yes. Q: And 2016? A: Yes.").

[3] Ex. 3, Sept. 24, 2019 L. Horton Dep. at 32:21-33:4 ("Q: Grande could've received a thousand notices of infringement about a customer. Based on the policy change starting in October 2010, Grande wasn't going to terminate that person for copyright infringement. True? . . . A: Yes. As I said, we did not terminate any subscribers.").

3

**ARGUMENT**

Plaintiffs should be permitted to introduce evidence and make arguments related to Grande's various termination policies (or lack thereof) and the Court's safe harbor ruling. Both are relevant under Rule 401.

### I. Grande's Termination Policies

The unequivocal and unrebutted testimony of Grande's employees conclusively demonstrated that from October 2010 through 2016, Grande's policy was not to terminate customers for copyright infringement, and that Grande in fact terminated no customers during that time for that reason. All relevant contemporaneous documents produced by Grande confirm that testimony. Thus, the only question to be resolved regarding the relevance of that testimony and those documents is whether the facts they show are "of consequence in determining the action." Fed. R. Evid. 401(b). For two independent reasons, either of which warrants granting this motion, they are.

First, Grande's lack of any termination policy for repeat copyright infringers during the relevant time period affects whether Grande was willfully blind to specific instances of direct infringement by its subscribers. As a threshold matter, the Court has already held that willful blindness can "satisfy the requirement of actual knowledge" that is an element of a claim for contributory infringement. Order at 41 n.7; *see also BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 881 F.3d 293, 308 (4th Cir. 2018) (holding that willful blindness is a "well-established" method of proving the requisite intent in a contributory infringement claim). At trial, Plaintiffs will show that Grande's policy of not terminating any subscribers for copyright infringement was in effect at the same time that it received the infringement notices that are at issue in this case. Rightscorp sent Grande more than 1.35 million such notices, each identifying a specific example of a Grande subscriber making a copyrighted work available to download through

4

BitTorrent.  There is no dispute that Grande received these notices during the very time period that it maintained a policy of not terminating any subscribers for copyright infringement.  Grande's refusal to act on any infringement notice is powerful support for Plaintiffs' contention that Grande was willfully blind to the infringements on which Plaintiffs base their claims.

Second, Grande's lack of a valid repeat infringer termination policy from October 2010 through 2016 supports Plaintiffs' contention that Grande acted willfully in its contributory infringement, thus increasing the range of statutory damages to which Plaintiffs are entitled.  *See* 17 U.S.C. § 504(c)(1) & (2).  Willfulness encompasses both "knowing" and "reckless" infringements.  *See* Order at 43 (citing *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 (5th Cir. 2014)).  As this Court held at summary judgment, Grande's receipt of infringement notices regarding Plaintiffs' works, coupled with its policy of not terminating the service of any customer, and its employees' communications evaluating that policy, raises a factual question as to whether Grande acted willfully.  *See id.*  Plaintiffs must therefore be able to present those facts to the jury to enable them to resolve that factual issue on an appropriate evidentiary record.

**II.     The Court's Safe Harbor Ruling**

The Court's ruling that Grande is not eligible for the DMCA safe harbor defense as a matter of law is also relevant to this case and should be admissible.  Similar evidence was admitted in previous trials against ISPs alleged to be liable for contributory infringement.  *See, e.g.*, *BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 881 F.3d 293, 313 (4th Cir. 2018) (noting that in trial against Cox, "witnesses and documents often referred to the DMCA and its safe harbor provisions," and approving jury instruction regarding unavailability of safe harbor).

Throughout this case, Grande has asserted that it and other ISPs merely provide access to the internet and should not be held responsible for what people do with that access.  Indeed, the

Court need look no further to find that theme than the first paragraph of Grande's motion for summary judgment:

> This case is an attempt by the U.S. recording industry to make Internet service providers, or ISPs, its de facto copyright enforcement agents. Having given up on actually pursuing direct infringers due to bad publicity, and having decided not to target the software and websites that make online file-sharing possible, the recording industry has shifted its focus to fashioning new forms of copyright liability that would require ISPs to act as the copyright police.

Dkt. 129 (Aug. 10, 2018), at 1. In many ways, that argument is the backbone to what likely will be Grande's entire "equitable" presentation to the jury at trial. Of course, that argument is baseless because Plaintiffs are not "fashioning new forms of copyright liability." They are enforcing the balancing of interests that Congress enacted into law with the DMCA.

While Grande will argue that it did not directly infringe and that it is unfair to make it liable for the infringements of others, the DMCA provides ISPs like Grande with a simple way to avoid any economic liability for copyright infringement: all they have to do is establish their eligibility for the safe harbor defense created by that statute. In order to be eligible for the safe harbor defense, Grande must have, among other things, "adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Yet as the Court held, Grande failed to do that. Thus, Grande itself is responsible for the fact that it is facing liability for its users' infringements.

When Grande argues at trial that ISPs should not be liable for their subscribers' copyright infringement, it is a disingenuous position that hopes to take advantage of the jury's ignorance of the law and the balancing of interests between copyright owners and ISPs that Congress enacted. The only way to clearly expose the gaping hole in Grande's "equitable" argument is to allow Plaintiffs to argue that Congress provided that ISPs can avoid economic liability if they take simple

measures that Grande did not take. If Plaintiffs are not allowed to reference the law or the Court's rulings in response to Grande's "equitable" argument to the jury, Plaintiffs will be prejudiced in not being able to fully rebut Grande's defense and the jury will be misled because it will lack the proper statutory context to evaluate that defense.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion *in limine* to permit evidence and argument related to the Court's ruling that Grande is not eligible for a safe harbor defense under the DMCA and the facts supporting that ruling.

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(i), counsel for Plaintiffs state that they conferred with counsel for Defendant regarding the topic of this motion, and Defendant did not consent to the motion.

Dated: February 4, 2020    Respectfully submitted,

By: */s/ Andrew H. Bart*
Andrew H. Bart (admitted *pro hac vice*)
Jacob Tracer (admitted *pro hac vice*)
**Jenner & Block LLP**
919 Third Ave.
New York, New York 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
Kevin L. Attridge (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com

kattridge@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

8

## CERTIFICATE OF SERVICE

      The undersigned certifies that on February 4, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

                                        */s/ Daniel C. Bitting*
                                        Daniel C. Bitting