# EXHIBIT 1

```
 1            IN THE UNITED STATES DISTRICT COURT

 2           FOR THE WESTERN DISTRICT OF TEXAS

 3                    AUSTIN DIVISION

 4   UMG RECORDINGS, INC.,    §

 5   et al.                   §

 6                            §

 7   VS.                      §     CIVIL ACTION NUMBER

 8                            §     1:17-cv-0365-LY

 9   GRANDE COMMUNICATIONS    §

10   NETWORKS LLC and         §

11   PATRIOT MEDIA            §

12   CONSULTING, LLC          §

13

14            30(b)(6) Deposition of

15        Grande Communications Networks LLC

16    By and Through its Designated Representative

17              RICHARD N. FOGLE

18          And in His Individual Capacity

19                  Austin, Texas

20                  June 28, 2018

21                    2:44 p.m.

22

23   Job No.:  193714

24   Pages:  1 - 228

25   Reported by:  Micheal A. Johnson, RDR, CRR
```

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    163

| | | |
|---|---|---|
| 1 | MR. HOWENSTINE:  Objection, argumentative. | 17:39:55 |
| 2 | MR. O'BEIRNE:  It's not argumentative. | 17:39:56 |
| 3 | It's a simple straightforward question. | 17:39:58 |
| 4 | BY MR. O'BEIRNE: | 17:40:00 |
| 5 | Q.  Please try to just listen to the question | 17:40:00 |
| 6 | and answer just the question I'm asking you. | 17:40:02 |
| 7 | A.  Sure. | 17:40:04 |
| 8 | Q.  From the time you started working at | 17:40:04 |
| 9 | Grande until the reorg, you never once reviewed | 17:40:06 |
| 10 | Grande's record retention policy? | 17:40:09 |
| 11 | A.  That is correct. | 17:40:09 |
| 12 | Q.  All right. | 17:40:12 |
| 13 | A.  That I can recall. | 17:40:13 |
| 14 | Q.  Again, I'd like to ask you questions about | 17:40:20 |
| 15 | this document and I don't believe there's any | 17:40:22 |
| 16 | good-faith disagreement as to the authenticity of | 17:40:23 |
| 17 | it or what it means.  It was produced to us in | 17:40:28 |
| 18 | response to a specific request about the Grande | 17:40:30 |
| 19 | record retention policy in effect at the time. | 17:40:33 |
| 20 | MR. HOWENSTINE:  I'm sorry, just -- just | 17:40:36 |
| 21 | so we're clear, how do we know that it was | 17:40:39 |
| 22 | produced in response to a specific request?  I'm | 17:40:43 |
| 23 | not saying that it's not, I'm just not sure what | 17:40:45 |
| 24 | you're referring to. | 17:40:48 |
| 25 | MR. O'BEIRNE:  We received a ten-PDF | 17:40:49 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    164

| | | |
|---|---|---|
| 1 | production like a week ago or ten days ago that | 17:40:51 |
| 2 | was very targeted, I understood to be the result | 17:40:53 |
| 3 | of cleanup of productions that we were owed but | 17:40:56 |
| 4 | have yet to happen, and there had been | 17:41:00 |
| 5 | correspondence where we said, here's the things we | 17:41:02 |
| 6 | still haven't received, boom, boom, boom, and one | 17:41:04 |
| 7 | of them was Grande's record retention policy and | 17:41:06 |
| 8 | then we got this. | 17:41:10 |
| 9 | So I understand this was in effect before | 17:41:11 |
| 10 | the merger, fine.  I'm not talking about after the | 17:41:13 |
| 11 | merger, I'm talking about before the merger.  I | 17:41:16 |
| 12 | just want to ask the witness questions about it | 17:41:19 |
| 13 | without there being confusion as to the | 17:41:19 |
| 14 | authenticity of it, i.e., this is what was | 17:41:22 |
| 15 | provided to us by Grande as the record retention | 17:41:22 |
| 16 | policy.  So let me just ask of the witness and see | 17:41:26 |
| 17 | if maybe we can clear it up. | 17:41:30 |
| 18 | BY MR. O'BEIRNE: | 17:41:31 |
| 19 | Q.  Sir, do you have any reason to disagree | 17:41:31 |
| 20 | that this was Grande's record retention policy -- | 17:41:34 |
| 21 | A.  I have no reason to disagree. | 17:41:36 |
| 22 | Q.  -- prior to the merger? | 17:41:38 |
| 23 | A.  I have no reason to disagree. | 17:41:39 |
| 24 | Q.  What different record retention policy are | 17:41:45 |
| 25 | you aware exists after the merger? | 17:41:47 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    165

| | | |
|---|---|---|
| 1 | A. The one that was penned by RCN. | 17:41:53 |
| 2 | Q. Have you read it? | 17:41:57 |
| 3 | A. I've skimmed it, yes. | 17:41:58 |
| 4 | Q. So you've seen a record retention policy | 17:42:01 |
| 5 | that you believe says, "This is the record | 17:42:03 |
| 6 | retention policy that applies to Grande and RCN"? | 17:42:07 |
| 7 | A. Mergered, yes. | 17:42:11 |
| 8 | Q. Well, there was -- the companies | 17:42:13 |
| 9 | remained -- I mean, they are two separate | 17:42:16 |
| 10 | companies still, right? | 17:42:18 |
| 11 | A. No. We're the same company. | 17:42:19 |
| 12 | Q. Grande has its own policies that aren't | 17:42:21 |
| 13 | also RCN policies, right? | 17:42:24 |
| 14 | A. I don't know. I will tell you that our IT | 17:42:27 |
| 15 | policies, especially around PCI compliance, are | 17:42:29 |
| 16 | merged. | 17:42:33 |
| 17 | Q. I'd like to focus on premerger -- | 17:42:34 |
| 18 | A. Sure. | 17:42:37 |
| 19 | Q. -- facts to include ones relating to this | 17:42:38 |
| 20 | record retention policy. | 17:42:41 |
| 21 | A. Sure. | 17:42:42 |
| 22 | Q. So we're probably due for a break in a few | 17:42:42 |
| 23 | minutes. I think it would make sense just to talk | 17:42:45 |
| 24 | about some provisions of the policy and then we'll | 17:42:48 |
| 25 | take a quick break. | 17:42:51 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                              166

| | | |
|---|---|---|
| 1 | A.  Okay. | 17:42:52 |
| 2 | Q.  So if you'll turn to page 4 of this | 17:42:52 |
| 3 | document, "Executive Summary," it says, "The | 17:43:03 |
| 4 | essential purpose of this document is to define, | 17:43:10 |
| 5 | detail and communicate the policies around record | 17:43:12 |
| 6 | retention for Grande Communications." | 17:43:15 |
| 7 | Do you see that? | 17:43:17 |
| 8 | A.  I see this. | 17:43:18 |
| 9 | Q.  "This document will serve as the company | 17:43:18 |
| 10 | record retention policy standard." | 17:43:23 |
| 11 | See that? | 17:43:25 |
| 12 | A.  I see that. | 17:43:25 |
| 13 | Q.  You were aware for the entire time you | 17:43:29 |
| 14 | were a Grande employee prior to the merger, it was | 17:43:31 |
| 15 | your obligation to comply with the company's | 17:43:35 |
| 16 | record retention policy standard? | 17:43:38 |
| 17 | A.  I knew I had an obligation to comply with | 17:43:40 |
| 18 | our records -- our standards, yes. | 17:43:43 |
| 19 | Q.  To include record retention standards? | 17:43:46 |
| 20 | A.  To include record retention standards, | 17:43:48 |
| 21 | yes. | 17:43:51 |
| 22 | Q.  And if you wanted to know what those | 17:43:51 |
| 23 | standards were, this is what you would go look at? | 17:43:53 |
| 24 | A.  Yes. | 17:43:56 |
| 25 | Q.  In fact, the policy lists "Audience.  The | 17:44:00 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    167

| | | |
|---|---|---|
| 1 | intended audience for this document is all Grande | 17:44:02 |
| 2 | employees and its affiliates." | 17:44:05 |
| 3 | A.  You are correct. | 17:44:07 |
| 4 | Q.  Was RCN an affiliate of Grande -- | 17:44:08 |
| 5 | A.  No. | 17:44:11 |
| 6 | Q.  -- prior to the merger? | 17:44:11 |
| 7 | A.  Not that I know of. | 17:44:12 |
| 8 | Q.  "Affiliate" and "sister company" mean | 17:44:13 |
| 9 | different things? | 17:44:16 |
| 10 | A.  Perhaps to some people. | 17:44:17 |
| 11 | Q.  Do they mean different things to you? | 17:44:18 |
| 12 | A.  I -- yes. | 17:44:22 |
| 13 | Q.  If you turn to page 5. | 17:44:24 |
| 14 | A.  Done. | 17:44:27 |
| 15 | Q.  It says, "Business Objectives.  Grande | 17:44:28 |
| 16 | will use this record retention policy to" -- and | 17:44:31 |
| 17 | then there's starred bullets underneath there.  Do | 17:44:35 |
| 18 | you see that? | 17:44:39 |
| 19 | A.  I do. | 17:44:39 |
| 20 | Q.  And the second bullet is, "Recognize | 17:44:39 |
| 21 | circumstances that impose special document | 17:44:43 |
| 22 | preservation obligations, particularly with | 17:44:46 |
| 23 | regards to any regulatory compliance or litigation | 17:44:48 |
| 24 | hold." | 17:44:52 |
| 25 | See that, sir? | 17:44:52 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                    168

| | | |
|---|---|---|
| 1 | A.   Uh-huh. | 17:44:53 |
| 2 | Q.   Yes? | 17:44:54 |
| 3 | A.   I do. | 17:44:54 |
| 4 | Q.   Did you receive a litigation hold in | 17:44:55 |
| 5 | connection with this lawsuit? | 17:44:57 |
| 6 | A.   I did not.  Our IT manager and Stephanie | 17:45:00 |
| 7 | did. | 17:45:04 |
| 8 | Q.   So you became aware of a litigation hold | 17:45:08 |
| 9 | that had been issued to some people, but you were | 17:45:10 |
| 10 | not among them? | 17:45:12 |
| 11 | A.   No.  I was just informed as the director | 17:45:13 |
| 12 | of the department. | 17:45:15 |
| 13 | Q.   Did you preserve all e-mails potentially | 17:45:16 |
| 14 | relevant to this matter once you became aware that | 17:45:19 |
| 15 | a litigation hold had been issued? | 17:45:22 |
| 16 | A.   I can't answer that.  I would have to make | 17:45:31 |
| 17 | a phone call and research that one. | 17:45:34 |
| 18 | Q.   Okay.  Part of the business objectives | 17:45:41 |
| 19 | Grande says it will use this record retention | 17:45:43 |
| 20 | policy to achieve is to, "Ensure ongoing | 17:45:47 |
| 21 | compliance with retention and destruction | 17:45:49 |
| 22 | policies." | 17:45:52 |
| 23 | Do you see that? | 17:45:52 |
| 24 | A.   I see that. | 17:45:53 |
| 25 | Q.   If you could turn to page 6 under "Policy | 17:45:54 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    169

| | | |
|---|---|---|
| 1 | Guidelines," the first paragraph states, the last | 17:46:00 |
| 2 | full sentence, "Data and record management within | 17:46:11 |
| 3 | a company should be a top priority for corporate | 17:46:14 |
| 4 | leadership, HR, corporate counsel and the finance | 17:46:17 |
| 5 | and IT groups." | 17:46:21 |
| 6 | Do you see that, sir? | 17:46:22 |
| 7 | A.  I do. | 17:46:24 |
| 8 | Q.  You're within the IT group, right? | 17:46:24 |
| 9 | A.  At this point in time, IT reported to | 17:46:26 |
| 10 | Stephanie.  I was in charge of development. | 17:46:28 |
| 11 | Q.  Where did development fall under?  Which | 17:46:32 |
| 12 | of these groups? | 17:46:36 |
| 13 | A.  None of them. | 17:46:38 |
| 14 | Q.  Did you not make document -- strike that. | 17:46:40 |
| 15 | Did you not view data and record | 17:46:45 |
| 16 | management as a top priority because you were not | 17:46:47 |
| 17 | in corporate leadership, HR, corporate counsel, | 17:46:49 |
| 18 | finance or IT? | 17:46:53 |
| 19 | A.  I can't say whether I did or did not make | 17:46:59 |
| 20 | data record management a top priority.  We didn't | 17:47:03 |
| 21 | have records to really manage.  We did create | 17:47:07 |
| 22 | data. | 17:47:10 |
| 23 | Q.  Just to refresh my recollection, you've | 17:47:15 |
| 24 | never looked at this document before you and I are | 17:47:18 |
| 25 | going through it right now, correct? | 17:47:20 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                170

| | | |
|---|---|---|
| 1 | A.  Not that I can recall. | 17:47:21 |
| 2 | Q.  It states, "The following guidelines | 17:47:23 |
| 3 | should be adhered to as part of the corporate | 17:47:26 |
| 4 | document/record retention program." | 17:47:28 |
| 5 | Do you see that? | 17:47:31 |
| 6 | A.  I do. | 17:47:31 |
| 7 | Q.  And again, there's a list of starred | 17:47:32 |
| 8 | bullets.  See that? | 17:47:34 |
| 9 | A.  I do. | 17:47:35 |
| 10 | Q.  About four bullets down, it says, "IT | 17:47:36 |
| 11 | should maintain up-to-date records of all types of | 17:47:41 |
| 12 | hardware/software that are in use for record | 17:47:44 |
| 13 | retention and the locations of all electronic | 17:48:11 |
| 14 | data." | 17:47:51 |
| 15 | See that? | 17:47:51 |
| 16 | A.  I do. | 17:47:51 |
| 17 | Q.  The next bullet, "Certain events may | 17:47:53 |
| 18 | supersede the record retention policy defined in | 17:47:57 |
| 19 | this document.  Document destruction (after the | 17:48:01 |
| 20 | appropriate timeframe) should be ceased at the | 17:48:03 |
| 21 | first notification of a lawsuit." | 17:48:06 |
| 22 | Do you see that? | 17:48:09 |
| 23 | A.  I do. | 17:48:09 |
| 24 | Q.  "Should be ceased at the first | 17:48:12 |
| 25 | notification" -- strike that. | 17:48:14 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    171

| | | |
|---|---|---|
| 1 | Should be ceased at the first | 17:48:17 |
| 2 | "anticipation of suit."  Do you see that? | 17:48:19 |
| 3 | A.  "Anticipation of suit," yes. | 17:48:20 |
| 4 | Q.  And should be ceased at the -- at "any | 17:48:21 |
| 5 | indication of impropriety."  See that? | 17:48:24 |
| 6 | A.  I see that. | 17:48:26 |
| 7 | Q.  So you understand that this policy | 17:48:27 |
| 8 | guideline is stating otherwise routine document | 17:48:30 |
| 9 | destruction should be ceased at the first | 17:48:33 |
| 10 | indication of impropriety? | 17:48:37 |
| 11 | A.  I see this. | 17:48:39 |
| 12 | Q.  Or in anticipation of a suit? | 17:48:39 |
| 13 | A.  I see that, yes. | 17:48:41 |
| 14 | Q.  It says, "Any and all documentation must | 17:48:43 |
| 15 | be retained for the duration of an investigation | 17:48:46 |
| 16 | and beyond, depending on legal mandates issued | 17:48:49 |
| 17 | during such an investigation." | 17:48:52 |
| 18 | Do you see that? | 17:48:53 |
| 19 | A.  I see that. | 17:48:54 |
| 20 | Q.  The next bullet says, "Employees should be | 17:48:59 |
| 21 | notified promptly of the existence of any such | 17:49:02 |
| 22 | event that would lead the requirement" -- "lead to | 17:49:04 |
| 23 | the requirement that all documentation be retained | 17:49:07 |
| 24 | indefinitely." | 17:49:10 |
| 25 | Do you see that? | 17:49:12 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                          172

| | | |
|---|---|---|
| 1 | A.   I do. | 17:49:12 |
| 2 | Q.   That's your understanding of how a | 17:49:13 |
| 3 | litigation hold works, is that it supersedes | 17:49:14 |
| 4 | otherwise routine destruction and directs | 17:49:17 |
| 5 | employees to retain documents indefinitely until | 17:49:19 |
| 6 | told otherwise? | 17:49:22 |
| 7 | A.   I don't know the details of what all a | 17:49:23 |
| 8 | litigation hold entails. | 17:49:26 |
| 9 | Q.   Have you ever received one? | 17:49:27 |
| 10 | A.   Personally, no. | 17:49:30 |
| 11 | Q.   Your whole time at the company, there's | 17:49:31 |
| 12 | never been a litigation hold for you, Richard | 17:49:34 |
| 13 | Fogle, to not delete documents? | 17:49:36 |
| 14 | A.   For me, personally, no. | 17:49:38 |
| 15 | Q.   Have you ever become aware of subordinates | 17:49:39 |
| 16 | of yours receiving litigation holds? | 17:49:43 |
| 17 | A.   Yes. | 17:49:45 |
| 18 | Q.   Did you make an effort to understand the | 17:49:46 |
| 19 | scope of the hold or the nature of it? | 17:49:48 |
| 20 | A.   I -- when we are told that there's a | 17:49:52 |
| 21 | litigation hold, it's a need to know only, and we | 17:49:55 |
| 22 | don't discuss the details. | 17:49:58 |
| 23 | Q.   What is your understanding of an | 17:49:59 |
| 24 | employee's obligation when he or she receives a | 17:50:02 |
| 25 | litigation hold? | 17:50:04 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    173

| | | |
|---|---|---|
| 1 | A.  To follow the policies, and it depends on | 17:50:05 |
| 2 | the employee's role. | 17:50:13 |
| 3 | Q.  To not delete documents related to the | 17:50:13 |
| 4 | litigation, right? | 17:50:17 |
| 5 | A.  If that is -- yes, if that's the | 17:50:17 |
| 6 | employee's role. | 17:50:19 |
| 7 | Q.  The last bullet here says, "Any employee | 17:50:20 |
| 8 | found to have violated this policy may be subject | 17:50:22 |
| 9 | to disciplinary action, up to and including | 17:50:25 |
| 10 | termination of employment." | 17:50:28 |
| 11 | Do you see that? | 17:50:29 |
| 12 | A.  I do. | 17:50:30 |
| 13 | Q.  And you understood that that was the case | 17:50:30 |
| 14 | underneath this policy, right? | 17:50:33 |
| 15 | A.  I've not seen this policy until now. | 17:50:34 |
| 16 | Q.  Did you understand from two thousand -- | 17:50:37 |
| 17 | strike that. | 17:50:41 |
| 18 | When did you join the company? | 17:50:41 |
| 19 | A.  I would like to say 2006. | 17:50:43 |
| 20 | Q.  From 2006 until the merger with RCN, did | 17:50:48 |
| 21 | you understand that a violation of the record | 17:50:50 |
| 22 | retention policy could subject you to disciplinary | 17:50:53 |
| 23 | action, up to and including termination? | 17:50:55 |
| 24 | A.  I've not seen this policy. | 17:50:57 |
| 25 | Q.  That's not what I asked you, sir.  From | 17:50:59 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    174

| | | |
|---|---|---|
| 1 | 2006 until the merger with RCN, did you understand | 17:51:01 |
| 2 | that a violation of the record retention policy | 17:51:04 |
| 3 | could subject you to disciplinary action, up to | 17:51:07 |
| 4 | and including termination? | 17:51:10 |
| 5 | A.  That would be a no. | 17:51:11 |
| 6 | Q.  You didn't realize that? | 17:51:12 |
| 7 | A.  I did not realize that. | 17:51:13 |
| 8 | MR. O'BEIRNE:  Let's take a quick | 17:51:15 |
| 9 | five-minute bathroom break and then try to charge | 17:51:17 |
| 10 | on. | 17:51:19 |
| 11 | MR. HOWENSTINE:  Okay. | 17:51:20 |
| 12 | THE VIDEOGRAPHER:  We're going off the | 17:51:22 |
| 13 | record at 1751. | 17:51:24 |
| 14 | (Recess taken from 5:51 p.m. to 5:59 p.m.) | 17:51:27 |
| 15 | THE VIDEOGRAPHER:  We are going back on | 17:59:09 |
| 16 | the record at 1759. | 17:59:12 |
| 17 | BY MR. O'BEIRNE: | 17:59:15 |
| 18 | Q.  Sir, we've been reviewing Grande's | 17:59:16 |
| 19 | document retention policy from before the merger. | 17:59:19 |
| 20 | Do you remember that? | 17:59:23 |
| 21 | A.  Yes. | 17:59:24 |
| 22 | Q.  Would you look with me again on page 6 -- | 17:59:24 |
| 23 | A.  Yes. | 17:59:27 |
| 24 | Q.  -- what the policy directs.  We've seen | 17:59:27 |
| 25 | this, but I just want to return and ask you some | 17:59:31 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    175

| | | |
|---|---|---|
| 1 | questions about it.  It states, "Document | 17:59:33 |
| 2 | destruction should be ceased at the first | 17:59:36 |
| 3 | notification of a lawsuit" -- | 17:59:38 |
| 4 | A.  Yes. | 17:59:40 |
| 5 | Q.  -- "anticipation of suit" -- right? | 17:59:40 |
| 6 | A.  Yes. | 17:59:42 |
| 7 | Q.  -- "or any indication of impropriety"? | 17:59:43 |
| 8 | A.  Yes. | 17:59:46 |
| 9 | Q.  You would agree with me, then, I take it, | 17:59:46 |
| 10 | that if a Grande employee knowingly destroyed | 17:59:49 |
| 11 | documents after the anticipation of a lawsuit, | 17:59:52 |
| 12 | that would be wrong? | 17:59:55 |
| 13 | A.  That would be in violation of the policy. | 17:59:57 |
| 14 | Q.  And wrong? | 17:59:59 |
| 15 | A.  Yes. | 18:00:00 |
| 16 | Q.  All right.  And if a Grande employee | 18:00:01 |
| 17 | purposefully destroyed documents after an | 18:00:03 |
| 18 | indication of impropriety that that employee was | 18:00:05 |
| 19 | aware of, that would be wrong? | 18:00:09 |
| 20 | MR. HOWENSTINE:  Objection, vague, calls | 18:00:10 |
| 21 | for speculation. | 18:00:12 |
| 22 | A.  I could not define -- if impropriety was | 18:00:14 |
| 23 | defined and agreed upon, then, yes.  Yes. | 18:00:18 |
| 24 | BY MR. O'BEIRNE: | 18:00:21 |
| 25 | Q.  It would be wrong for an employee to be | 18:00:22 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    176

| | | |
|---|---|---|
| 1 | aware of incriminating documents that indicated | 18:00:24 |
| 2 | that Grande had engaged in impropriety and then | 18:00:26 |
| 3 | delete those on purpose so that they couldn't be | 18:00:29 |
| 4 | found? | 18:00:32 |
| 5 | MR. HOWENSTINE:  Same objections. | 18:00:32 |
| 6 | BY MR. O'BEIRNE: | 18:00:33 |
| 7 | Q.  That would be wrong, right? | 18:00:33 |
| 8 | A.  If that was proven, that would be against | 18:00:35 |
| 9 | this policy and wrong. | 18:00:37 |
| 10 | Q.  And wrong? | 18:00:39 |
| 11 | A.  Yes. | 18:00:40 |
| 12 | Q.  All right.  Could get you fired, based on | 18:00:47 |
| 13 | the bottom? | 18:00:50 |
| 14 | A.  Yes. | 18:00:50 |
| 15 | Q.  So you suggested to Mr. Davis at RCN that | 18:01:00 |
| 16 | Grande destroy incriminating documents regarding | 18:01:04 |
| 17 | DMCA and copyright infringement, didn't you, sir? | 18:01:10 |
| 18 | A.  I would have to refresh my memory. | 18:01:13 |
| 19 | Q.  You're not able, sitting here today, to | 18:01:16 |
| 20 | testify whether or not you discussed with | 18:01:18 |
| 21 | Mr. Davis purposefully destroying incriminating | 18:01:22 |
| 22 | documents regarding Grande's misconduct under the | 18:01:26 |
| 23 | DMCA? | 18:01:29 |
| 24 | A.  No. | 18:01:29 |
| 25 | Q.  It's possible you did that? | 18:01:30 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                      177

| | | |
|---|---|---|
| 1 | A.  Anything's possible, yes. | 18:01:34 |
| 2 | Q.  Okay.  You were concerned that Grande | 18:01:43 |
| 3 | would get nailed based on evidence contained in | 18:01:44 |
| 4 | Grande's e-mails regarding its handling of DMCA | 18:01:48 |
| 5 | allegations, right? | 18:01:51 |
| 6 | A.  I would need to refresh my memory. | 18:01:54 |
| 7 | Q.  I'm just asking you, sir, do you recall | 18:01:57 |
| 8 | being concerned that Grande would get nailed based | 18:01:59 |
| 9 | on evidence in Grande's own e-mails regarding its | 18:02:02 |
| 10 | handling of DMCA issues? | 18:02:05 |
| 11 | A.  I don't recall. | 18:02:07 |
| 12 | Q.  Would you agree with me that if you did | 18:02:10 |
| 13 | knowingly encourage the deletion of documents | 18:02:12 |
| 14 | because they had an indication of impropriety in | 18:02:18 |
| 15 | them, that that would violate this policy? | 18:02:21 |
| 16 | A.  If it was -- if it was agreed upon that | 18:02:25 |
| 17 | that was improper, yes. | 18:02:29 |
| 18 | (Deposition Exhibit 206 marked for | 18:02:38 |
| 19 | identification.) | 18:02:45 |
| 20 | BY MR. O'BEIRNE: | 18:02:45 |
| 21 | Q.  I'm handing you what I've just marked as | 18:02:46 |
| 22 | Plaintiffs' Exhibit 206. | 18:02:50 |
| 23 | A.  Thank you. | 18:02:53 |
| 24 | Q.  This is an e-mail produced by Grande in | 18:03:03 |
| 25 | this case, ending Bates number 310, right, sir? | 18:03:05 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                              178

| | | |
|---|---|---|
| 1 | A.  310, yes. | 18:03:09 |
| 2 | Q.  And it's an e-mail that you sent to | 18:03:10 |
| 3 | Mr. Davis at RCN on August 23rd, 2016, right, sir? | 18:03:13 |
| 4 | A.  That's correct. | 18:03:16 |
| 5 | Q.  That was before the merger was complete, | 18:03:17 |
| 6 | right, sir? | 18:03:19 |
| 7 | A.  I do not know when the merger was | 18:03:20 |
| 8 | complete, but I would say it -- possibly, yes. | 18:03:22 |
| 9 | Q.  You said to Mr. Davis, "I was thinking | 18:03:28 |
| 10 | that Cox was nailed on DMCA because they had | 18:03:30 |
| 11 | evidence from subpoenaed corporate e-mail/call | 18:03:34 |
| 12 | recordings." | 18:03:38 |
| 13 | Do you see that? | 18:03:38 |
| 14 | A.  Yes. | 18:03:39 |
| 15 | Q.  "This is making me think on Grande's | 18:03:39 |
| 16 | e-mail retention policy more in liability terms." | 18:03:43 |
| 17 | Do you see that? | 18:03:46 |
| 18 | A.  Yes, I do. | 18:03:46 |
| 19 | Q.  So you concluded that you knew there were | 18:03:48 |
| 20 | e-mails in Grande's possession that would render | 18:03:50 |
| 21 | Grande liable in the same way that Cox was liable, | 18:03:53 |
| 22 | and you thought Grande should delete those | 18:03:56 |
| 23 | e-mails? | 18:03:58 |
| 24 | A.  No.  That's not the context of this. | 18:03:58 |
| 25 | Q.  That's not the context of this? | 18:04:02 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                        179

| | | |
|---|---|---|
| 1 | A.   No. | 18:04:03 |
| 2 | Q.   Okay.  What is the context of this, sir? | 18:04:04 |
| 3 | A.   I believe this conversation was around | 18:04:07 |
| 4 | Bill telling me about some stories that was | 18:04:09 |
| 5 | happening around this realm and I never thought of | 18:04:16 |
| 6 | subpoenaing e-mail.  So when we discussed e-mail | 18:04:22 |
| 7 | retention policies -- the context of this was, we | 18:04:30 |
| 8 | were discussing the different companies' e-mail | 18:04:38 |
| 9 | spools and how big they were.  Some people had | 18:04:43 |
| 10 | 1 gig, 512 megs, other people had 20 gigs.  And he | 18:04:46 |
| 11 | was telling me that our lawyers don't like the | 18:04:52 |
| 12 | concept of a 20 gig e-mail box.  And I didn't know | 18:04:57 |
| 13 | why, and we discussed that, about how everything | 18:05:01 |
| 14 | is subpoenable. | 18:05:04 |
| 15 | MR. HOWENSTINE:  I'm just going to jump in | 18:05:05 |
| 16 | and note that you shouldn't disclose information | 18:05:07 |
| 17 | that was provided to you from -- that came from | 18:05:09 |
| 18 | attorneys originally, but otherwise -- | 18:05:13 |
| 19 | A.   THE WITNESS:  Okay. | 18:05:15 |
| 20 | MR. HOWENSTINE:  -- go on. | 18:05:15 |
| 21 | A.   And this was new to me, and I agreed with | 18:05:17 |
| 22 | him that it does sound like e-mail can be viewed | 18:05:19 |
| 23 | in liability terms -- e-mail can be viewed in | 18:05:23 |
| 24 | liability terms. | 18:05:26 |
| 25 | | |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    180

| | | |
|---|---|---|
| 1 | BY MR. O'BEIRNE: | 18:05:27 |
| 2 |    Q.  Meaning -- | 18:05:28 |
| 3 |    A.  Before this, I was really looking at | 18:05:28 |
| 4 | e-mail retention as more of a "I need to go get my | 18:05:30 |
| 5 | e-mail from two years ago to get that vendor | 18:05:32 |
| 6 | name." | 18:05:35 |
| 7 |    Q.  In your discussion with Mr. Davis about | 18:05:36 |
| 8 | the fact that incriminating e-mails in Cox's | 18:05:39 |
| 9 | possession was part of the reason Cox was nailed | 18:05:43 |
| 10 | on DMCA -- | 18:05:45 |
| 11 |    A.  I think it's -- | 18:05:45 |
| 12 |    Q.  I'm sorry, sir.  Let me finish the | 18:05:50 |
| 13 | question, please. | 18:05:51 |
| 14 |    A.  I didn't know. | 18:05:52 |
| 15 |    Q.  I'll start it again. | 18:05:53 |
| 16 |      Your thought that incriminating evidence | 18:05:55 |
| 17 | from corporate e-mails in Cox's possession helped | 18:05:59 |
| 18 | lead to them getting nailed on the DMCA meant that | 18:06:03 |
| 19 | Grande should consider deleting from its records | 18:06:06 |
| 20 | e-mails that would give rise to Grande liability, | 18:06:11 |
| 21 | right? | 18:06:14 |
| 22 |    A.  No. | 18:06:16 |
| 23 |    Q.  What possible reason would describing | 18:06:18 |
| 24 | Grande getting -- strike that. | 18:06:21 |
| 25 |      What reason would you have to talk about | 18:06:22 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                              181

| 1 | Cox getting nailed for having incriminating | 18:06:24 |
| 2 | e-mails in their records in the context of | 18:06:28 |
| 3 | Grande's e-mail retention policy? | 18:06:31 |
| 4 |    A.  Because he told me a story where Cox had | 18:06:33 |
| 5 | problems in court because someone found an e-mail | 18:06:39 |
| 6 | that said, "Don't delete this customer, we want to | 18:06:42 |
| 7 | keep everyone regardless of what they do."  And I | 18:06:45 |
| 8 | was like, wow, I never thought of that before and | 18:06:49 |
| 9 | that's what led to this e-mail, is I thought about | 18:06:53 |
| 10 | it and I responded saying, "Yeah, this is making | 18:06:57 |
| 11 | me think." | 18:06:59 |
| 12 |    Q.  Making me think we should delete our | 18:07:00 |
| 13 | e-mails because there would be incriminating | 18:07:02 |
| 14 | evidence in there? | 18:07:04 |
| 15 |       MR. HOWENSTINE:  Objection, | 18:07:05 |
| 16 | mischaracterizes the testimony. | 18:07:08 |
| 17 |    A.  No, that's not it. | 18:07:08 |
| 18 | BY MR. O'BEIRNE: | 18:07:10 |
| 19 |    Q.  Sir, you just testified that you were | 18:07:10 |
| 20 | aware that Cox had been found liable in part based | 18:07:12 |
| 21 | on incriminating e-mails in Cox's possession, | 18:07:14 |
| 22 | right? | 18:07:17 |
| 23 |    A.  On a high level.  More of a story, yes. | 18:07:17 |
| 24 |    Q.  Okay.  And you were concerned that there | 18:07:20 |
| 25 | might be equally incriminating e-mails in Grande's | 18:07:22 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    182

| | | |
|---|---|---|
| 1 | system and that's why you wanted to discuss the | 18:07:24 |
| 2 | retention policy in terms of what liability would | 18:07:27 |
| 3 | be evidenced by the documents in Grande's system, | 18:07:29 |
| 4 | right? | 18:07:31 |
| 5 |    A.  No.  I've just never thought of e-mails as | 18:07:31 |
| 6 | a liability before. | 18:07:35 |
| 7 |    Q.  What do you mean by "liability"?  How | 18:07:39 |
| 8 | could it be a liability, sir, to maintain relevant | 18:07:41 |
| 9 | records probative of somebody's legal claims? | 18:07:44 |
| 10 |    MR. HOWENSTINE:  Objection, | 18:07:46 |
| 11 | mischaracterizes the testimony. | 18:07:47 |
| 12 |    A.  By "liability," I never -- when he told me | 18:07:51 |
| 13 | that story, I was simply surprised.  And I think | 18:07:57 |
| 14 | what he was trying to convey to me is you should | 18:08:02 |
| 15 | be careful of what you say in e-mail and how you | 18:08:07 |
| 16 | word it, not that -- or you need to go on a | 18:08:10 |
| 17 | destructive spree. | 18:08:15 |
| 18 | BY MR. O'BEIRNE: | 18:08:16 |
| 19 |    Q.  Did you say in this e-mail, "Thanks, Bill, | 18:08:17 |
| 20 | for the advice to be careful what I say in | 18:08:19 |
| 21 | e-mail"? | 18:08:22 |
| 22 |    MR. HOWENSTINE:  Objection, argumentative. | 18:08:24 |
| 23 |    A.  I don't recall.  This is more confirmation | 18:08:27 |
| 24 | that his story and what he said, I learned from | 18:08:30 |
| 25 | it. | 18:08:35 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                               183

| | | |
|---|---|---|
| 1 | BY MR. O'BEIRNE: | 18:08:38 |
| 2 | Q.  We'll see.  But before we looked at this, | 18:08:38 |
| 3 | I asked you whether you had ever discussed | 18:08:41 |
| 4 | purposefully deleting e-mails to remove evidence | 18:08:43 |
| 5 | that would render Grande liable.  Do you recall | 18:08:46 |
| 6 | that? | 18:08:49 |
| 7 | A.  Yes. | 18:08:49 |
| 8 | Q.  Now, what did you mean by "liability"? | 18:08:50 |
| 9 | Liability to whom for what? | 18:08:55 |
| 10 | MR. HOWENSTINE:  Objection, asked and | 18:08:57 |
| 11 | answered. | 18:08:58 |
| 12 | BY MR. O'BEIRNE: | 18:08:59 |
| 13 | Q.  Go ahead. | 18:09:00 |
| 14 | A.  A liability as in there's more to keeping | 18:09:01 |
| 15 | large e-mail spools than just the simple annoyance | 18:09:04 |
| 16 | our IT techs have with someone who can't use | 18:09:08 |
| 17 | Outlook because they have 5 million e-mails and | 18:09:11 |
| 18 | they put in support tickets. | 18:09:14 |
| 19 | Q.  Right.  What more than the simple | 18:09:15 |
| 20 | annoyance?  What about liability in excess to the | 18:09:17 |
| 21 | annoyance did you mean? | 18:09:20 |
| 22 | A.  That there's other reasons that we could | 18:09:21 |
| 23 | say, other than I really wish you wouldn't keep | 18:09:24 |
| 24 | all that e-mail. | 18:09:28 |
| 25 | Q.  And one of the reasons is we're afraid | 18:09:29 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                    184

| | | |
|---|---|---|
| 1 | there's going to be bad e-mails in there that | 18:09:31 |
| 2 | could render us liable to somebody in a lawsuit, | 18:09:33 |
| 3 | right, sir? | 18:09:36 |
| 4 | MR. HOWENSTINE:  Objection, | 18:09:37 |
| 5 | mischaracterizes the testimony. | 18:09:37 |
| 6 | A.  That's not true. | 18:09:39 |
| 7 | BY MR. O'BEIRNE: | 18:09:40 |
| 8 | Q.  Who did you envision would be liable when | 18:09:40 |
| 9 | you used the term "liability"? | 18:09:42 |
| 10 | A.  No one in particular. | 18:09:46 |
| 11 | Q.  No one in particular.  You're reaching out | 18:09:49 |
| 12 | to Mr. Davis at RCN in your official role at | 18:09:52 |
| 13 | Grande to discuss the liability of nobody in | 18:09:55 |
| 14 | particular? | 18:09:57 |
| 15 | A.  No.  I was just confirming the story he | 18:10:00 |
| 16 | told me and I told him what I learned from it. | 18:10:04 |
| 17 | Q.  He told you a story that Cox was nailed on | 18:10:06 |
| 18 | the DMCA because they had incriminating evidence | 18:10:10 |
| 19 | from subpoenaed corporate e-mails? | 18:10:12 |
| 20 | A.  That they literally had an e-mail that | 18:10:14 |
| 21 | said, "Don't delete these customers because we | 18:10:16 |
| 22 | wanted to keep them regardless." | 18:10:19 |
| 23 | Q.  Well, you guys weren't deleting any | 18:10:20 |
| 24 | customers because you wanted to keep them | 18:10:23 |
| 25 | regardless, right? | 18:10:24 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                   185

| | | |
|---|---|---|
| 1 | MR. HOWENSTINE:  Objection, lacks | 18:10:25 |
| 2 | foundation, argumentative. | 18:10:26 |
| 3 | A.  I wouldn't know. | 18:10:27 |
| 4 | BY MR. O'BEIRNE: | 18:10:28 |
| 5 | Q.  When did you discuss what happened in the | 18:10:29 |
| 6 | Cox case with Mr. Davis? | 18:10:30 |
| 7 | A.  It was in a passing phone call. | 18:10:32 |
| 8 | Q.  Okay.  So after that phone call, you sat | 18:10:35 |
| 9 | down and wrote this e-mail, right? | 18:10:37 |
| 10 | A.  If you look at it, it says 8:55 p.m. at | 18:10:39 |
| 11 | night.  So I thought about it and if someone | 18:10:43 |
| 12 | teaches me something or has a good point, I | 18:10:45 |
| 13 | normally follow up and say, you know, thank you. | 18:10:50 |
| 14 | Q.  Okay.  You state, "This is making me think | 18:10:56 |
| 15 | on Grande's e-mail retention policy in more | 18:10:58 |
| 16 | liability terms." | 18:11:04 |
| 17 | What were you concerned Grande would be | 18:11:05 |
| 18 | found liable for if it retained e-mails? | 18:11:07 |
| 19 | A.  It's a -- it's not -- it made me think in | 18:11:09 |
| 20 | terms of legal liabilities, not just in terms of | 18:11:13 |
| 21 | mailbox size and the strain it has on our system | 18:11:18 |
| 22 | resources. | 18:11:22 |
| 23 | Q.  What legal liabilities?  Legal liability | 18:11:23 |
| 24 | of whom to whom? | 18:11:25 |
| 25 | A.  Nothing in particular. | 18:11:28 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    186

| | | |
|---|---|---|
| 1 | Q.  Nothing in particular in an e-mail when | 18:11:29 |
| 2 | you talk about Cox getting nailed on the DMCA? | 18:11:32 |
| 3 | A.  Nothing in particular. | 18:11:36 |
| 4 | Q.  Your sworn testimony is that you meant | 18:11:37 |
| 5 | nothing in particular in discussing this liability | 18:11:40 |
| 6 | in this e-mail? | 18:11:42 |
| 7 | MR. HOWENSTINE:  Objection, asked and | 18:11:42 |
| 8 | answered, argumentative. | 18:11:44 |
| 9 | A.  I -- that is my testimony. | 18:11:45 |
| 10 | BY MR. O'BEIRNE: | 18:11:47 |
| 11 | Q.  So what you were saying in this e-mail -- | 18:11:47 |
| 12 | strike that. | 18:11:50 |
| 13 | Isn't it true that at this time in | 18:11:50 |
| 14 | August 2016, you were concerned that Grande would | 18:11:53 |
| 15 | get nailed on the DMCA based on evidence in its | 18:11:56 |
| 16 | corporate e-mail? | 18:12:00 |
| 17 | MR. HOWENSTINE:  Objection, asked and | 18:12:01 |
| 18 | answered, argumentative. | 18:12:02 |
| 19 | A.  No. | 18:12:03 |
| 20 | MR. HOWENSTINE:  Phil, you can only answer | 18:12:04 |
| 21 | this -- ask the same question a certain number of | 18:12:07 |
| 22 | times. | 18:12:09 |
| 23 | MR. O'BEIRNE:  It's a totally different | 18:12:09 |
| 24 | and unique question.  I'll ask it again.  And your | 18:12:11 |
| 25 | objection's noted for the record.  That's fine. | 18:12:14 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                              187

| | | |
|---|---|---|
| 1 | You made your objection. | 18:12:16 |
| 2 | BY MR. O'BEIRNE: | 18:12:18 |
| 3 | Q.  Sir, isn't it true that at this time in | 18:12:18 |
| 4 | August 2016, you were concerned that Grande would | 18:12:20 |
| 5 | get nailed on the DMCA based on evidence in | 18:12:22 |
| 6 | Grande's corporate e-mail? | 18:12:27 |
| 7 | A.  No. | 18:12:29 |
| 8 | Q.  No? | 18:12:29 |
| 9 | A.  No. | 18:12:30 |
| 10 | Q.  Okay.  What's the PX number on that one? | 18:12:30 |
| 11 | A.  It is 206. | 18:12:36 |
| 12 | Q.  Thank you, sir. | 18:12:37 |
| 13 | (Deposition Exhibit 207 marked for | 18:12:39 |
| 14 | identification.) | 18:12:40 |
| 15 | BY MR. O'BEIRNE: | 18:12:40 |
| 16 | Q.  Let's look at PX207. | 18:12:40 |
| 17 | A.  Thank you. | 18:12:54 |
| 18 | Q.  I'm handing you what I've just marked as | 18:12:54 |
| 19 | PX207.  This is an e-mail produced by Grande in | 18:12:57 |
| 20 | this case at Bates number 2342, right, sir? | 18:13:01 |
| 21 | A.  Yes. | 18:13:04 |
| 22 | Q.  It's an e-mail you sent to Paul Morgan on | 18:13:05 |
| 23 | September 30th, 2016, right? | 18:13:09 |
| 24 | A.  Yes. | 18:13:11 |
| 25 | Q.  And that's about a month or more after the | 18:13:12 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                      188

| | | |
|---|---|---|
| 1 | exchange with Mr. Davis in PX206, right? | 18:13:18 |
| 2 | A.   That is correct. | 18:13:21 |
| 3 | Q.   Who's Mr. Morgan? | 18:13:21 |
| 4 | A.   He is an enterprise sales rep who refuses | 18:13:24 |
| 5 | to delete any e-mail. | 18:13:27 |
| 6 | Q.   Refuses to? | 18:13:28 |
| 7 | A.   Delete e-mail or clean up his e-mail box. | 18:13:29 |
| 8 | Q.   Okay.  And you sent him an e-mail, | 18:13:32 |
| 9 | subject, "Reason for e-mail retention | 18:13:34 |
| 10 | enforcement," right? | 18:13:37 |
| 11 | A.   Uh-huh. | 18:13:37 |
| 12 | Q.   Yes? | 18:13:38 |
| 13 | A.   Yes, I did. | 18:13:38 |
| 14 | Q.   You were following up with him because he | 18:13:40 |
| 15 | wasn't deleting e-mails, right? | 18:13:42 |
| 16 | A.   This is correct. | 18:13:43 |
| 17 | Q.   And in an e-mail in which you were | 18:13:44 |
| 18 | following up with him because he wasn't deleting | 18:13:45 |
| 19 | e-mails, you noted that your following up was not | 18:13:48 |
| 20 | based on RCN's direction to follow up with him, | 18:13:53 |
| 21 | right? | 18:13:56 |
| 22 | A.   No.  This was purely internal at Grande. | 18:13:57 |
| 23 | He was not deleting e-mails and our e-mail | 18:14:00 |
| 24 | archiver was reaching its max and it was about to | 18:14:03 |
| 25 | tip over and we needed to clean up. | 18:14:06 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    189

| | | |
|---|---|---|
| 1 | Q.  So what you told him is, "RCN isn't the | 18:14:09 |
| 2 | reason this came to a head recently"? | 18:14:12 |
| 3 | A.  Yes. | 18:14:14 |
| 4 | Q.  By that you mean, reasons to delete | 18:14:15 |
| 5 | e-mails? | 18:14:17 |
| 6 | A.  Yes.  Paul -- I was going back and | 18:14:18 |
| 7 | forth -- my IT manager Bobby was going back and | 18:14:21 |
| 8 | forth with Paul about not cleaning up and he gave | 18:14:24 |
| 9 | it to me and Paul immediately said, "You're doing | 18:14:26 |
| 10 | this because RCN does it." | 18:14:31 |
| 11 | Q.  Right. | 18:14:32 |
| 12 | A.  And I said no. | 18:14:33 |
| 13 | Q.  So you're saying, "Let me tell you why I'm | 18:14:34 |
| 14 | telling you to clean up your e-mails"? | 18:14:36 |
| 15 | A.  Yes. | 18:14:38 |
| 16 | Q.  And you sent him three separate links to | 18:14:39 |
| 17 | articles about the Cox verdict, right? | 18:14:42 |
| 18 | A.  No.  There's four links there. | 18:14:45 |
| 19 | Q.  Thank you.  I'm sorry, I'll say that | 18:14:47 |
| 20 | again. | 18:14:50 |
| 21 | A.  Okay. | 18:14:50 |
| 22 | Q.  You sent him four separate articles about | 18:14:51 |
| 23 | the Cox verdict as the reason why you were telling | 18:14:53 |
| 24 | him to delete e-mails? | 18:14:56 |
| 25 | A.  Yes. | 18:14:58 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                     190

| | | |
|---|---|---|
| 1 | Q.  This is more than a month after your | 18:15:03 |
| 2 | discussion with Mr. Davis in which you said, "I'm | 18:15:05 |
| 3 | viewing our e-mail retention in terms of | 18:15:09 |
| 4 | liability," right, sir? | 18:15:13 |
| 5 | A.  Yes. | 18:15:14 |
| 6 | Q.  All right.  And the liability you were | 18:15:14 |
| 7 | viewing it in terms of was Grande being found | 18:15:17 |
| 8 | liable in the same way that Cox was for the same | 18:15:20 |
| 9 | claims based on what was in Grande's e-mails, | 18:15:22 |
| 10 | right? | 18:15:25 |
| 11 | A.  No. | 18:15:25 |
| 12 | Q.  No? | 18:15:26 |
| 13 | A.  No.  The liability was something added on, | 18:15:27 |
| 14 | where if you read the next paragraph, "plus our | 18:15:30 |
| 15 | message archiver is standing on its last legs due | 18:15:33 |
| 16 | to overcapacity." | 18:15:37 |
| 17 | I don't have 30,000 to go buy a new | 18:15:38 |
| 18 | appliance, and our policy has always stated | 18:15:41 |
| 19 | seven years.  We were just lax in enforcing it. | 18:15:43 |
| 20 | Q.  That is true, there's a message archiver | 18:15:46 |
| 21 | paragraph. | 18:15:50 |
| 22 | A.  Yes. | 18:15:50 |
| 23 | Q.  Please read for me the next sentence in | 18:15:50 |
| 24 | the e-mail. | 18:15:51 |
| 25 | A.  "The key to Rightscorp winning the | 18:15:51 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                        191

| | | |
|---|---|---|
| 1 | judgment" -- | 18:15:54 |
| 2 | THE REPORTER:  Slowly. | 18:15:54 |
| 3 | A.  "The key to Rightscorp winning the | 18:15:55 |
| 4 | judgment is Cox kept e-mail that was subpoenaed | 18:15:58 |
| 5 | showing that they told support staff not to kick | 18:16:00 |
| 6 | out DMCA offenders, thus placing the safe harbor | 18:16:03 |
| 7 | in jeopardy." | 18:16:08 |
| 8 | BY MR. O'BEIRNE: | 18:16:09 |
| 9 | Q.  And you knew that Grande had e-mails in | 18:16:09 |
| 10 | its records that would place Grande's safe harbor | 18:16:11 |
| 11 | in jeopardy and that's why you wanted them | 18:16:14 |
| 12 | deleted, right, sir? | 18:16:16 |
| 13 | A.  No. | 18:16:17 |
| 14 | MR. HOWENSTINE:  Objection, lacks | 18:16:17 |
| 15 | foundation. | 18:16:19 |
| 16 | A.  That's not true. | 18:16:19 |
| 17 | BY MR. O'BEIRNE: | 18:16:23 |
| 18 | Q.  Okay.  Did you send him four price quotes | 18:16:23 |
| 19 | for an additional message archiver? | 18:16:26 |
| 20 | A.  To Paul? | 18:16:28 |
| 21 | Q.  In your e-mail to Paul, did you send him | 18:16:30 |
| 22 | four examples of how expensive it would be to | 18:16:32 |
| 23 | create more storage space for his e-mails? | 18:16:35 |
| 24 | A.  I sent him four links that I got from | 18:16:39 |
| 25 | Google to try to convince him to comply without | 18:16:43 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    192

| | | |
|---|---|---|
| 1 | fighting too much and I said 30,000.  I don't | 18:16:47 |
| 2 | recall sending him quotes.  I'm not sure why he | 18:16:50 |
| 3 | would want to see those. | 18:16:53 |
| 4 | Q.  The links in Google that you sent him were | 18:16:54 |
| 5 | to show him that Grande should delete e-mails in | 18:16:57 |
| 6 | an attempt to avoid the same kind of liability | 18:17:00 |
| 7 | that Cox was found for in the Virginia case, | 18:17:02 |
| 8 | right, sir? | 18:17:05 |
| 9 | A.  No.  It said that our policy has always | 18:17:06 |
| 10 | stated seven years and we were just lax in | 18:17:09 |
| 11 | enforcing it.  We are enforcing it to be in | 18:17:11 |
| 12 | compliance with our policy and by the way, here | 18:17:14 |
| 13 | are some other reasons.  My IT manager said that | 18:17:16 |
| 14 | we need to comply with our policy and it's on its | 18:17:18 |
| 15 | last legs.  I spoke to Bill Davis about that.  He | 18:17:21 |
| 16 | told me the story and I used his story to try to | 18:17:24 |
| 17 | tell Paul that there are other reasons why we want | 18:17:28 |
| 18 | to comply with our policy. | 18:17:31 |
| 19 | Q.  Did you anticipate -- strike that. | 18:17:33 |
| 20 | You knew at this time that Rightscorp had | 18:17:36 |
| 21 | sent hundreds of thousands of notices of | 18:17:38 |
| 22 | infringement to Grande, right? | 18:17:41 |
| 23 | MR. HOWENSTINE:  Objection, lacks | 18:17:43 |
| 24 | foundation. | 18:17:44 |
| 25 | A.  Not to my knowledge. | 18:17:45 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    193

| | | |
|---|---|---|
| 1 | BY MR. O'BEIRNE: | 18:17:46 |
| 2 |    Q.  No?  Let's go back to the e-mail we looked | 18:17:46 |
| 3 | at -- | 18:17:51 |
| 4 |    A.  Sure. | 18:17:52 |
| 5 |    Q.  -- previously. | 18:17:51 |
| 6 |    A.  Is that 206? | 18:17:52 |
| 7 |    Q.  No, the one before that, where Lars | 18:17:53 |
| 8 | generated a report of notices received by Grande, | 18:17:56 |
| 9 | please, sir. | 18:17:59 |
| 10 |    A.  Okay. | 18:18:02 |
| 11 |    Q.  What's the date on that? | 18:18:03 |
| 12 |    A.  That is 107 and that is February 22nd, | 18:18:04 |
| 13 | 2016. | 18:18:07 |
| 14 |    Q.  So that is seven months before this | 18:18:07 |
| 15 | e-mail, right? | 18:18:09 |
| 16 |    A.  Yes. | 18:18:10 |
| 17 |    Q.  And you're CC'd on an e-mail that states | 18:18:11 |
| 18 | that Grande received how many notices from | 18:18:15 |
| 19 | Rightscorp in 2015? | 18:18:17 |
| 20 |    A.  The e-mail says 246 and 120, from | 18:18:18 |
| 21 | DigitalRightsCorp.com. | 18:18:23 |
| 22 |    Q.  That's 246,000, right? | 18:18:24 |
| 23 |    A.  Quarter mill. | 18:18:26 |
| 24 |    Q.  So you were aware that Grande had received | 18:18:27 |
| 25 | at least a quarter million notices from Rightscorp | 18:18:30 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    194

| | | |
|---|---|---|
| 1 | as of February 2016, right? | 18:18:32 |
| 2 | A.  I did not read this e-mail. | 18:18:34 |
| 3 | Q.  How do you know you didn't read the | 18:18:37 |
| 4 | e-mail? | 18:18:39 |
| 5 | A.  Because Lars told me that it was good and | 18:18:39 |
| 6 | he was CCing me, just to get back with him | 18:18:41 |
| 7 | tomorrow. | 18:18:44 |
| 8 | Q.  You received an e-mail in February 2016, | 18:18:45 |
| 9 | right? | 18:18:47 |
| 10 | A.  February 22nd, 2016, from Lars to Lamar, | 18:18:47 |
| 11 | CCing me, yes. | 18:18:52 |
| 12 | Q.  You received that e-mail in February 2016, | 18:18:53 |
| 13 | right? | 18:18:56 |
| 14 | A.  Yes. | 18:18:56 |
| 15 | Q.  And that e-mail contained information that | 18:18:57 |
| 16 | Rightscorp had sent at least 246,000 notices of | 18:19:00 |
| 17 | infringement to Grande in 2015, right? | 18:19:04 |
| 18 | A.  Assuming DigitalRightsCorp.com was the | 18:19:07 |
| 19 | source that they were using in DMCA and these | 18:19:12 |
| 20 | were -- assuming those things, then yes. | 18:19:18 |
| 21 | Q.  Yeah.  And then seven months later you | 18:19:20 |
| 22 | wrote in an e-mail to Mr. Morgan, "The key to | 18:19:22 |
| 23 | Rightscorp winning the judgment is Cox kept | 18:19:25 |
| 24 | e-mail," right? | 18:19:29 |
| 25 | A.  No.  No. | 18:19:33 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                          195

| | | |
|---|---|---|
| 1 | Q.  Your -- | 18:19:36 |
| 2 | A.  Cox -- are you talking about 206? | 18:19:37 |
| 3 | Q.  207. | 18:19:39 |
| 4 | A.  From William -- or to William Davis from | 18:19:40 |
| 5 | me -- | 18:19:43 |
| 6 | Q.  No, 207. | 18:19:43 |
| 7 | A.  207. | 18:19:44 |
| 8 | Q.  Seven months after you received the e-mail | 18:19:46 |
| 9 | 246,000 Rightscorp notices, you wrote Mr. Morgan | 18:19:52 |
| 10 | that the key to Rightscorp winning the judgment is | 18:19:54 |
| 11 | Cox kept e-mail.  Do you see that? | 18:19:58 |
| 12 | A.  Yes. | 18:20:04 |
| 13 | Q.  And this was in an e-mail trying to | 18:20:05 |
| 14 | encourage Mr. Morgan to delete e-mails? | 18:20:07 |
| 15 | MR. HOWENSTINE:  Objection, asked and | 18:20:10 |
| 16 | answered. | 18:20:11 |
| 17 | BY MR. O'BEIRNE: | 18:20:11 |
| 18 | Q.  Right? | 18:20:11 |
| 19 | A.  This was to encourage him to clean up his | 18:20:12 |
| 20 | act, yes. | 18:20:15 |
| 21 | Q.  And by "clean up his act," you mean delete | 18:20:15 |
| 22 | e-mails? | 18:20:18 |
| 23 | A.  To be in compliance with our policy and to | 18:20:18 |
| 24 | stop complaining because we need to cut off the | 18:20:21 |
| 25 | seven year. | 18:20:24 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                               196

| | | |
|---|---|---|
| 1 | Q.  To clean up his act, you mean delete | 18:20:25 |
| 2 | e-mails, right? | 18:20:27 |
| 3 | A.  To be in compliance with our seven year | 18:20:28 |
| 4 | and he was -- after this e-mail, he still didn't | 18:20:30 |
| 5 | listen to me. | 18:20:32 |
| 6 | Q.  So you would agree with me you're | 18:20:32 |
| 7 | directing him to delete e-mails here? | 18:20:35 |
| 8 | A.  No.  I told him that he needs to comply | 18:20:36 |
| 9 | with the seven years and stop escalating and be | 18:20:39 |
| 10 | okay with us removing e-mails past seven years as | 18:20:45 |
| 11 | per our policy that we were lax in enforcing. | 18:20:48 |
| 12 | Q.  By removing e-mails past seven years, you | 18:20:51 |
| 13 | mean they're deleted and gone? | 18:20:54 |
| 14 | A.  Yeah.  We have to. | 18:20:55 |
| 15 | Q.  So this is encouraging him to allow the | 18:20:56 |
| 16 | deletion of his e-mails? | 18:20:59 |
| 17 | MR. HOWENSTINE:  Objection, asked and | 18:20:59 |
| 18 | answered. | 18:21:00 |
| 19 | A.  This is encouraging him to go along with | 18:21:02 |
| 20 | it without continuing to escalate and complain and | 18:21:06 |
| 21 | have meetings, yes. | 18:21:10 |
| 22 | BY MR. O'BEIRNE: | 18:21:11 |
| 23 | Q.  You go on to say, "I'm not trying to slow | 18:21:11 |
| 24 | you down or trip you up, just have to balance | 18:21:14 |
| 25 | regulatory, liability and budgetary factors," | 18:21:16 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                          197

| | | |
|---|---|---|
| 1 | right? | 18:21:20 |
| 2 | A. Yes. | 18:21:20 |
| 3 | Q. And the liability factor you're trying to | 18:21:21 |
| 4 | balance there is Grande's liability for DMCA | 18:21:24 |
| 5 | claims, right? | 18:21:26 |
| 6 | MR. HOWENSTINE: Objection, calls for | 18:21:28 |
| 7 | speculation. | 18:21:29 |
| 8 | A. That's -- can you reword that question? | 18:21:32 |
| 9 | BY MR. O'BEIRNE: | 18:21:35 |
| 10 | Q. Sure. I'll ask you a different question. | 18:21:36 |
| 11 | A. Sure. | 18:21:37 |
| 12 | Q. What liability are you talking about here, | 18:21:38 |
| 13 | sir? | 18:21:40 |
| 14 | A. In general. | 18:21:40 |
| 15 | Q. What liability are you talking about? | 18:21:40 |
| 16 | MR. HOWENSTINE: Objection, asked and | 18:21:43 |
| 17 | answered. | 18:21:45 |
| 18 | A. In general. | 18:21:45 |
| 19 | BY MR. O'BEIRNE: | 18:21:45 |
| 20 | Q. I don't understand what "in general" | 18:21:46 |
| 21 | means. Liability of whom to whom? | 18:21:48 |
| 22 | A. There's no direct liability. What is the | 18:21:50 |
| 23 | cost of keeping e-mail past our retention | 18:21:53 |
| 24 | policy -- | 18:21:56 |
| 25 | Q. Okay. | 18:21:58 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                    198

| | | |
|---|---|---|
| 1 | A.   -- and having endless amounts of e-mail | 18:21:59 |
| 2 | can create liabilities.  It could also cost money. | 18:22:02 |
| 3 | It could also bring our systems to its knees. | 18:22:05 |
| 4 | Q.   Create liabilities for whom, sir? | 18:22:08 |
| 5 | MR. HOWENSTINE:  Objection, asked and | 18:22:10 |
| 6 | answered. | 18:22:11 |
| 7 | A.   Liabilities in general. | 18:22:13 |
| 8 | BY MR. O'BEIRNE: | 18:22:15 |
| 9 | Q.   You said "could create liabilities."  The | 18:22:15 |
| 10 | concept of liabilities is that someone is liable, | 18:22:17 |
| 11 | right? | 18:22:21 |
| 12 | A.   I'm not a lawyer.  I was just trying to | 18:22:21 |
| 13 | scare a sales rep into complying. | 18:22:24 |
| 14 | Q.   By saying, "We're going to lose a lawsuit | 18:22:26 |
| 15 | if you don't delete your e-mails"? | 18:22:29 |
| 16 | A.   No. | 18:22:30 |
| 17 | Q.   Were you concerned about some other | 18:22:31 |
| 18 | company's liability in this e-mail? | 18:22:33 |
| 19 | A.   I was just saying liability in general. | 18:22:35 |
| 20 | Q.   Did you mean Google's liability? | 18:22:38 |
| 21 | A.   I was saying in general. | 18:22:40 |
| 22 | MR. HOWENSTINE:  Objection, argumentative, | 18:22:42 |
| 23 | asked and answered. | 18:22:43 |
| 24 | BY MR. O'BEIRNE: | 18:22:44 |
| 25 | Q.   Did you mean Apple's liability? | 18:22:44 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                          199

| | | |
|---|---|---|
| 1 | MR. HOWENSTINE:  Objection, argumentative. | 18:22:46 |
| 2 | A.  In general. | 18:22:48 |
| 3 | BY MR. O'BEIRNE: | 18:22:53 |
| 4 | Q.  Did you -- were you referring to Apple's | 18:22:53 |
| 5 | liability when you wrote this e-mail? | 18:22:56 |
| 6 | MR. HOWENSTINE:  Objection, argumentative. | 18:22:57 |
| 7 | A.  I was referring to liabilities in general. | 18:22:59 |
| 8 | BY MR. O'BEIRNE: | 18:23:01 |
| 9 | Q.  Do you understand the question, were you | 18:23:02 |
| 10 | referring to Apple's liability? | 18:23:04 |
| 11 | MR. HOWENSTINE:  Objection, argumentative. | 18:23:06 |
| 12 | It's been answered. | 18:23:08 |
| 13 | BY MR. O'BEIRNE: | 18:23:10 |
| 14 | Q.  You don't understand the question? | 18:23:10 |
| 15 | A.  I do understand the question. | 18:23:11 |
| 16 | Q.  Were you referring to Apple's liability? | 18:23:12 |
| 17 | A.  No, I was referring to in general. | 18:23:14 |
| 18 | Q.  You were referring to Grande's liability, | 18:23:16 |
| 19 | right, sir? | 18:23:18 |
| 20 | MR. HOWENSTINE:  Objection, asked and | 18:23:18 |
| 21 | answered. | 18:23:20 |
| 22 | A.  I was referring to in general. | 18:23:20 |
| 23 | BY MR. O'BEIRNE: | 18:23:22 |
| 24 | Q.  You were referring to Grande's liability | 18:23:22 |
| 25 | here for copyright infringement, right, sir? | 18:23:24 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    200

1        MR. HOWENSTINE:  Same objection.                    18:23:25

2    A.  I was referring to liability in general.            18:23:27

3  BY MR. O'BEIRNE:                                          18:23:30

4    Q.  Your sworn testimony is that this e-mail            18:23:31

5  doesn't reflect your concern that Grande would be         18:23:33

6  found liable in the same way that Cox was unless          18:23:36

7  it deleted e-mails?                                       18:23:39

8    A.  No.                                                 18:23:40

9    Q.  That was the reason for the flurry of               18:23:45

10 discussions of Rightscorp notices in February 2016        18:23:48

11 at Grande, wasn't it, sir, because the Cox verdict        18:23:51

12 came down in December 2015?                               18:23:54

13   A.  I don't know.                                       18:23:58

14   Q.  You don't know that?                                18:23:59

15   A.  I just had a story that Bill Davis told me          18:24:01

16 when we were talking about managing e-mail and            18:24:03

17 finding money to replace stuff.                           18:24:10

18   Q.  By "managing," do you mean preserving more          18:24:11

19 or less e-mail?                                           18:24:14

20   A.  First and foremost, we needed to comply             18:24:15

21 with our policy of seven years.                           18:24:19

22   Q.  A policy you had never read until I showed          18:24:20

23 it to you today?                                          18:24:23

24   A.  Until I inherited it when we reorged.               18:24:24

25   Q.  You didn't read it after you inherited it,          18:24:25

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                                    201

| | | |
|---|---|---|
| 1 | did you? | 18:24:27 |
| 2 | MR. HOWENSTINE:  Objection, | 18:24:28 |
| 3 | mischaracterizes the testimony. | 18:24:28 |
| 4 | A.  I did not read it right after we reorged | 18:24:29 |
| 5 | and I inherited a problem, and then we started | 18:24:32 |
| 6 | merging with RCN's policies. | 18:24:36 |
| 7 | BY MR. O'BEIRNE: | 18:24:39 |
| 8 | Q.  Your testimony is, your e-mails were about | 18:24:39 |
| 9 | your concerns with complying with this policy? | 18:24:41 |
| 10 | A.  With our policy, yes. | 18:24:44 |
| 11 | Q.  A policy you had never looked at one time | 18:24:45 |
| 12 | prior to today? | 18:24:47 |
| 13 | A.  That's correct. | 18:24:48 |
| 14 | Q.  So I'm going to ask you to look at PX147, | 18:24:50 |
| 15 | which you have in front of you.  It should be in | 18:24:58 |
| 16 | the pile there. | 18:25:04 |
| 17 | A.  Here?  What is it, 146? | 18:25:04 |
| 18 | Q.  147. | 18:25:07 |
| 19 | A.  147. | 18:25:08 |
| 20 | MR. HOWENSTINE:  Phil, I apologize.  I | 18:25:08 |
| 21 | need to take a break. | 18:25:10 |
| 22 | MR. O'BEIRNE:  Okay.  Quick break, yeah, | 18:25:12 |
| 23 | that's fine.  That's fine.  I'm almost done. | 18:25:14 |
| 24 | THE VIDEOGRAPHER:  Please stand by. | 18:25:16 |
| 25 | MR. O'BEIRNE:  Yeah, that's fine. | 18:25:18 |

Transcript of Richard N. Fogle, Designated Representative
Conducted on June 28, 2018                    228

```
 1              REPORTER'S CERTIFICATION
 2         I, Micheal A. Johnson, the officer before
 3    whom the foregoing deposition was taken, do hereby
 4    certify that the foregoing transcript is a true
 5    and correct record of the testimony given; that
 6    said testimony was taken by me stenographically
 7    and thereafter reduced to typewriting under my
 8    direction; that reading and signing was requested;
 9    and that I am neither counsel for, related to, nor
10    employed by any of the parties to this case and
11    have no interest, financial or otherwise, in its
12    outcome.
13         IN WITNESS WHEREOF, I have hereunto set my
14    hand this 4th day of July, 2018.
15
16
17    _____
18    MICHEAL A. JOHNSON, RDR, CRR
19    NOTARY PUBLIC IN AND FOR
20    THE STATE OF TEXAS
21
22
23
24
25
```