UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | No.  1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS | ) | |
| NETWORKS LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* TO PRECLUDE
GRANDE FROM OFFERING EVIDENCE OR ARGUMENT ON THE REASONS FOR
ITS CHANGES IN COPYRIGHT INFRINGEMENT POLICIES**

Through its Motion *in Limine* to Preclude Grande from Offering Evidence or Argument

on the Reasons for its Changes in Copyright Infringement Policies (ECF No. 317), Plaintiffs seek

to prevent Grande from explaining why it altered its DMCA policy in 2010 and 2017.  Before

engaging with the merits of this motion, Grande notes that it filed a motion *in limine* to exclude

from trial any discussion of Grande's DMCA termination practices.[1]  *See* Grande's 13th Mot. *in*

*Limine* (ECF No. 325).  If the Court grants Grande's motion *in limine*, the present motion is

moot.

As for the merits of Plaintiffs' present motion, Plaintiffs' arguments regarding Grande's

2010 and 2017 policy changes present different issues and are addressed separately in the

sections that follow.

---

[1] Plaintiffs intend to argue that Grande's DMCA policies and history of terminations prove that
Grande recognized Rightscorp's infringement notices were legitimate and actionable.  This
argument is fatally flawed because Grande has never once terminated a subscriber based on the
receipt of a Rightscorp notice.  As such, Grande's history of termination is not probative of
Grande's views on the legitimacy of Rightscorp's notices, will only tend to confuse or mislead
the jury, and should be excluded under Rules 402 and 403.

## I.      Grande's Decision to Switch to a Notification and Education Policy in 2010

Almost a decade ago and under the guidance of a prior management team, Grande implemented a new copyright infringement policy.  Pursuant to that policy, Grande notified subscribers of accusations of copyright infringement and offered education regarding the impropriety of copying protected materials over the internet.  *See, e.g.* Rohre Dep. Tr. at 93:3-8; 114:4-14 (Ex. 1).  Grande has almost no residual information regarding the rationale underpinning this policy change.  Grande's designated corporate witness researched this issue extensively and testified in deposition that the "decision was made by the legal team, and I do not know why or when they made that decision."  Horton Sept. 24, 2019 Dep. Tr. at 35:3-36:4 (Ex. 2).  Grande does not know what motivated this policy change and Grande has no information—one way or the other—regarding the extent to which Grande's determination that the infringement notices it received were invalid played a role in this change.  *Id.*

The evidence Grande will offer at trial is directly consistent with the testimony provided by Messrs. Rohre and Horton.  Grande does not intend to "ambush" Plaintiffs with any new or different evidence on this topic at trial.

## II.     Grande's Decision to Switch to a Warning and Termination Policy in 2017

Plaintiffs' motion also seeks to prevent Grande from explaining why it changed its policy in 2017.  *See, e.g.,* Mot. *in Limine* to Preclude Grande from Offering Evidence or Argument on the Reasons for its Changes in Copyright Infringement Policies at 8 (ECF No. 317) (hereinafter, "Pls.' MIL re Policies") ("Grande should be precluded from offering any evidence at trial that purports to explain the reasons for its policy change and the relationship, if any, between the *Cox* verdict and its actions in 2016-2017").

As an initial matter, Grande does not intend to argue that it changed its policy in response

to the decision in *Cox*.  *See BMG Rights Mgmt. (US) LLC, v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958, 988 (E.D. Va. 2016).  To the contrary, Grande filed a motion *in limine* specifically aimed at *excluding* any mention of the *Cox* verdict at trial.  *See* Grande's 6th Mot. in *Limine* (ECF No. 318).  Consequently, this aspect of Plaintiffs' motion is not in dispute and can be granted for the reasons set forth in Grande's co-pending motion.  *Id.*

The remainder of Plaintiffs' motion should be denied.  Contrary to Plaintiffs' argument, Grande presented clearly admissible testimony from at least three witnesses regarding the purpose for amending its policy.

In 2017, Grande adopted a new copyright infringement policy aimed at complying with the provisions of the DMCA.  Grande's General Manager explained this during his deposition:

Q:  You're the most senior person in the Grande operation, correct?

A: Correct.

Q:  List all the reasons for me that Grande instituted a new DMCA policy in February 2017.

A:  To deal with the DMCA.

Rohre Dep. Tr. at 119:22-120:4 (Ex. 1).

Grande's DMCA agent, Mr. Horton explained that it implemented a new policy aimed at complying with the DMCA.  *See, e.g.* Horton Feb. 21, 2018 Dep. Tr. at 59:9-25; 95:1-96:16; 102:10-24; 278:3-280:16 (Ex. 3) ("Q:  And, during this time frame, Grande is working with RCN to develop the policy that ultimately was implemented in February 2017 as the DMCA policy; right?  A:  That is a true statement.").  Grande's corporate designee,[2] Stephanie Christianson, also explained that Grande's new 2017 policy was aimed at complying with the DMCA,

---

[2] *See* S. Christianson June 27, 2018 Dep. Tr. at 16:13-17:20 (Ex. 4).

3

specifically testifying that the new policy included a repeat infringer termination provision that aligned with DMCA requirements. *Id.* at 30:1-6 ("Q:  Grande did not have a policy that provided for the termination of subscribers and account holders who were repeat infringers until, at the earliest, the DMCA policy and procedure published in 2016, correct?  A: Yes."); 35:2-36:22; 109:23-111:11; 146:22-147:3 ("Q:  Just to orient ourselves in time here, by April 14, 2017, Grande had yet to implement an updated process to deal with infringement notices, right? This discussion was part of Grande's implementation of a new process under the DMCA policy first posted in November 2016, right?  A: Yes.").

In addition to this testimony, Grande also identified its new 2017 policy in response to an interrogatory that sought the identification of any policy under which Grande contends it is entitled to the safe harbor protection of the DMCA. *See* Grande Supplemental Response to Interrogatory No. 11 (Ex. 5).

If necessary, based on these disclosures, Grande should be permitted to explain at trial that it developed and implemented its 2017 policy in an effort to comply with the DMCA. Grande asserted attorney/client privilege with regard to the underlying *motivations* that drove it to adopt this new policy, but Grande did permit its witnesses to explain that the goal or purpose of the policy was to comply with the provisions of the DMCA.  Separate and apart from this testimony, the fact that Grande called its new protocol the "DMCA policy" clearly demonstrates that it was implemented to comply with the requirements of the DMCA.

It bears repeating that Grande's Thirteenth Motion *in Limine* (ECF No. 325) seeks to prevent Plaintiffs from introducing Grande's terminations as evidence at trial.  All of the terminations Grande conducted were based on notices sent by companies other than Rightscorp and as a result those terminations are not relevant to any issue to be decided at trial.  By

excluding these irrelevant terminations, the Court can moot all issues raised by Plaintiffs' present motion.

In addition, regardless of how the Court resolves Grande's Thirteenth Motion *in Limine*, it is premature for Plaintiffs to seek an order preventing Grande from addressing its policy changes at trial.  It is impossible to know how Plaintiffs will put on their case and what assertions they will make regarding Grande's various copyright infringement policies—to the extent the Court permits them to introduce these policies at all.  It is entirely possible that Plaintiffs will introduce evidence or make assertions at trial that will open the door to Grande offering testimony on these issues.  Contrary to Plaintiffs' argument, this includes the potential introduction of Grande's references to its counsel and assertion of the attorney client privilege. *See, e.g., SynQor, Inc. v. Arteyn Techs, Inc.*, 2:11-cv-54, 2011 WL 3625036, at *27 (E.D. Tex. Aug. 17, 2011) (permitting introduction of privilege objection to clarify record after opposing counsel opened the door at trial); *see also SEC v. Mapp*, 4:16-cv-00246, 2017 WL 8780604, at *2-3 (E.D. Tex. Dec. 4, 2017) (permitting a party to make reference to his lawyer's involvement so as to avoid forcing the party to engage in an "unnatural avoidance" of that information at trial).

In sum, Grande should be permitted—if necessary—to explain at trial that it implemented a new policy in 2017 to attempt to comply with the requirements of the DMCA.  This evidence could be delivered in a way that does not require any reference to lawyers or to attorney/client privileged communications.  At a minimum, given the myriad ways in which the Court may resolve each parties' motions *in limine* and the lack of complete information regarding how Plaintiffs will put on their case at trial, this is not an issue that should be resolved in absolute terms through a motion *in limine* in advance of trial.

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' Motion *in Limine* to Preclude Grande from Offering Evidence or Argument on the Reasons for its Changes in Copyright Infringement Policies (ECF No. 317).

Dated:  February 14, 2020

By:  /s/ *Richard L Brophy*
      Richard L. Brophy
      Zachary C. Howenstine
      Edward F. Behm
      Margaret R. Szewczyk
      Abigail L. Twenter
      ARMSTRONG TEASDALE LLP
      7700 Forsyth Blvd., Suite 1800
      St. Louis, Missouri 63105
      Telephone:  314.621.5070
      Fax:  314.621.5065
      rbrophy@armstrongteasdale.com
      zhowenstine@armstrongteasdale.com
      ebehm@armstrongteasdale.com
      mszewczyk@armstrongteasdale.com
      atwenter@armstrongteasdale.com


      J. Stephen Ravel
      Texas State Bar No. 16584975
      J.R. Johnson
      Texas State Bar No. 24070000
      Diana L. Nichols
      Texas State Bar No. 00784682
      KELLY HART & HALLMAN LLP
      303 Colorado, Suite 2000
      Austin, Texas 78701
      Telephone: 512.495.6429
      Fax: 512.495.6401
      Email: steve.ravel@kellyhart.com
           jr.johnson@kellyhart.com
           diana.nichols@kellyhart.com


      ATTORNEYS FOR DEFENDANT
      GRANDE COMMUNICATIONS
      NETWORKS LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on February 14, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

/s/ *Richard Brophy*
Richard L. Brophy