UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) ) ) ) |
| Defendant. | ) ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S
OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* REGARDING RIGHTSCORP**

Plaintiffs' Motion *in Limine* to Preclude Irrelevant or Prejudicial Evidence or Arguments Related to Rightscorp, Inc. (ECF No. 314) asks the Court to exclude from trial all evidence regarding: (1) Rightscorp's destruction of relevant evidence; (2) Rightscorp's "business practices"; and (3) Rightscorp's financial condition. Plaintiffs' motion should be denied in all three respects.

**I.   Evidence that Rightscorp Destroyed Material Evidence Is Neither Irrelevant Nor Unfairly Prejudicial.**

Plaintiffs argue that because Magistrate Judge Austin denied Grande's motion for spoliation sanctions,[1] Grande should be precluded from showing that Plaintiffs and Rightscorp, Plaintiffs' litigation consultant, destroyed relevant evidence—and from even mentioning the absence of that evidence. Plaintiffs offer no authority supporting such relief, because there is none. A finding that Plaintiffs should not be sanctioned does not render all evidence touching in any way on the alleged spoliation inadmissible.

---

[1] The Court has not ruled on Grande's objections to Judge Austin's Order. *See* Grande's Obj. to Order on Mot. for Evidentiary Sanctions (ECF No. 290).

1

Grande is entitled to show that Plaintiffs and Rightscorp destroyed evidence that is material to Plaintiffs' claims. Specifically, Grande will show that Rightscorp destroyed evidence underlying the notices of alleged copyright infringement it sent to Grande, and as a result, that there is now no way to determine whether those notices were accurate. Plaintiffs do not and cannot argue that such evidence is irrelevant, and so the jury may consider it and weigh it as it sees fit. *See, e.g.*, *Russell v. Univ. of Tex. of Permian Basin*, 234 F. App'x 195, 208 (5th Cir. 2007) (plaintiff was not prejudiced by court's decision not to give spoliation instruction "because the jury heard testimony that the documents were important and that they were destroyed. The jury was free to weigh this information as it saw fit.").

### A. It is undisputed that Rightscorp destroyed material evidence.

This case concerns alleged copyright infringement using BitTorrent, which is a means of sharing files over the internet. When a user installs BitTorrent software (called a "client") on their computer, the client allows the user to distribute files to other BitTorrent users and to download files being offered by others. BitTorrent is open-source, and so there are many different BitTorrent clients available for free online.

In this case, Plaintiffs are seeking to hold Grande, an internet service provider, contributorily liable for acts of alleged copyright infringement by users of its network. The alleged infringement was purportedly identified by Rightscorp, which claims to have detected particular BitTorrent users offering to share Plaintiffs' copyrighted works using Grande's network. After each such "detection," Rightscorp sent an automated email notice to Grande, accusing the user of copyright infringement.

Plaintiffs rely on Rightscorp's notices both as evidence of direct copyright infringement and as evidence that Grande had knowledge of the infringement. Thus, a central issue for trial is whether Plaintiffs can prove that Rightscorp's notices are accurate and reliable.

        i.      *Rightscorp destroyed all "bitfield" and "choke" data*

If Rightscorp's system connected to Grande's subscribers' computers to detect infringement—as it claims it did—Rightscorp would have received a wealth of data from those accused infringers. This information is exchanged during standard BitTorrent communications and is customarily referred to as a "handshake." Two important categories of information shared during this handshake are "bitfield" data and "choke" data.

**Bitfield data** indicates which portions of a BitTorrent "payload" reside on a given user's computer. Typically, these "payloads" consist of a collection of files such as a collection of pictures, a set of updates for a piece of software, or an album of songs. The standard BitTorrent file sharing protocol breaks this payload into many small segments which are then distributed individually. The "bitfield" is a string of ones and zeroes that indicates which segments of the overall payload actually reside on a user's computer.

In this case, bitfield data is important because Rightscorp claims that its system relied exclusively on a review of this data—received from each Grande subscriber's computer—when deciding whether to send a notice of infringement. *See* Jan. 17, 2019 Decl. of G. Boswell, ¶ 6 (ECF No. 253-1). According to Rightscorp, the bitfield data indicated that the subscriber had an infringing song on their computer, Rightscorp would generate and send an infringement notice. If the bitfield indicated the user did not have the song, no infringement notice would be sent. After receiving and storing this information, Rightscorp deleted it. Without this data, it is

impossible to know whether Rightscorp had a legitimate basis for generating and transmitting its infringement notices.

This data is also vital because, for some unknown period, Rightscorp reconfigured its system to send notices when the bitfield data indicated that the payload was not complete. Rightscorp does not contest this fact, and it means that for some period of time Rightscorp sent infringement notices to users even when the bitfield data indicated the user **did not have the allegedly infringing song** and, therefore, was incapable of offering it to others.[2] *See* Boswell Dep. Tr. Vol. II, 462:7–466:12 (Ex. 1) (admitting that Rightscorp implemented this measure, and that there are no records of when it was in place and no way to identify which notices were impacted).

**Choke data** is also exchanged during a BitTorrent handshake. Choke data indicates whether a BitTorrent user is actually willing to share the files residing on his or her computer. When a BitTorrent client "chokes" its connection, the computer will refuse to share the files it has on its hard drive. The choke data is a simple yes or no flag—the user is either willing to share (not choked) or unwilling to share (choked). In the majority of BitTorrent clients, the default is for choke to be set "on," meaning the client will not share files with others. This data is vital because if the choke flag is set to "on," the subscriber is not offering to share files and Grande is not liable for secondary copyright infringement. Rightscorp received this data and then deleted it.

---

[2] The only direct infringement issue for trial is whether users of Grande's network shared infringing music files—*i.e.*, alleged infringement of Plaintiffs' distribution rights under 17 U.S.C. § 106(3). The Court previously determined that Plaintiffs cannot prove direct infringement of their reproduction rights under § 106(1). *See* May 15, 2019 Order at 23–24 (ECF No. 268).

Bitfield and choke data therefore represent the actual evidence of whether a BitTorrent user on Grande's network has a file (bitfield) and is willing to share it with others (choke).[3]  It is **undisputed** that (1) Rightscorp received bitfield and choke data from every BitTorrent users it successfully contacted on Grande's network, and (2) Rightscorp subsequently deleted ***all of this highly relevant data***.  Rightscorp's software engineer, Gregory Boswell—the individual solely responsible for designing and operating its system—directly admitted this under oath.  *See* Jan. 17, 2019 Decl. of G. Boswell, ¶ 6 (ECF No. 253-1) (confirming that Rightscorp received and reviewed bitfield and choke data from all targeted BitTorrent users); Boswell. Dep. Tr. Vol. II, 460:9–23, 461:8–20, 482:23–483:5 (Ex. 1) (confirming that Rightscorp destroyed all of it).

Plaintiffs incorrectly suggest that Rightscorp innocently destroyed all of this evidence as part of an "automated process."  *See* Plaintiffs' Mot. *in Limine* to Preclude Irrelevant or Prejudicial Evidence or Arguments Related to Rightscorp, Inc. at 4–5 (ECF No. 314) (hereinafter, "Pls.' MIL re Rightscorp").  Although intent is irrelevant to whether Grande may present evidence of the destruction at trial, it is telling that Plaintiffs offer no evidence to support this claim.

Grande's technical expert, Dr. Geoff Cohen, reviewed Rightscorp's code and determined that the Rightscorp's system did *not* automatically delete the bitfield data.  By design, the system saves bitfield data in a permanent table.  The fact that it no longer exists means that someone within Rightscorp ***manually deleted it***.  *See* 2nd Supp. Report of Geoff Cohen, Ph.D., ¶ 51 (Ex. 2) ("While it is true that the bitfield evidence is *also* stored in a temporary table, it is originally stored upon receipt in a permanent table. [source code citation omitted].  No evidence exists in the source code to suggest that these records were subsequently deleted by operation of

---

[3] This assumes, of course, that it is separately shown that the file in question was a copy one of the works in suit.

Rightscorp's system.") (emphasis in original).  Plaintiffs' technical expert, Barbara Frederiksen-Cross, has not disclosed any proposed testimony that disputes Dr. Cohen's conclusion.

Plaintiffs do not—and cannot—argue that the destroyed bitfield and choke data are irrelevant or cumulative of other evidence in the case.  *See generally* Pls.' MIL re Rightscorp.  The bitfield and choke data is unique and valuable, and its absence is highly probative of the illegitimacy of Rightscorp's infringement allegations.  Plaintiffs' only response to these indisputable facts is a vague assertion that Plaintiffs produced a raft of *other* evidence regarding Rightscorp's system.  But that assertion—even if true—does not detract from the relevance and probative value of this data ***and its absence***.  It is particularly noteworthy that the destruction of this highly relevant data continued ***after*** Plaintiffs hired Rightscorp as a consultant and ***after*** Plaintiffs filed the present lawsuit.

        ii.       *Failed Download Attempts*

After Rightscorp generates and sends a notice of infringement to Grande, it reaches out to the subscriber in question and attempts to download the infringing file.  Plaintiffs intend to offer a collection of these downloaded files to demonstrate the legitimacy of the infringement notices at trial.  But, this evidence only supports Plaintiffs' case if Rightscorp was able to successfully download a file each time it tried.  If Rightscorp sent a notice to Grande, and then subsequently tried ***and failed*** to download the file it alleged was being made available, that failure would show that the Rightscorp notice was invalid.  Rightscorp admits that the system sometimes failed to download files.  Rightscorp also admits that it designed its system ***to purge all record of its failed download attempts***.  Boswell. Dep. Tr. Vol. II, 439:24–442:2 (Ex. 1).

By destroying this data *and* all bitfield and choke data, Rightscorp has effectively made it impossible to assess the accuracy of any of its notices. There is no reason Grande should be prevented from raising the conspicuous absence of this highly-relevant evidence at trial.

       iii.      *Other Categories of Destroyed Evidence*

Grande's Motion for Evidentiary Sanctions (ECF No. 247) identified a number of other categories of relevant evidence that Rightscorp destroyed, including "tracker" data that allegedly enabled Rightscorp to identify potential infringers on Grande's network (*id.* at 3), records sufficient to show how its software operated at any particular point in time (*id.* at 4-5), evidence of how it determined that files allegedly being shared were copies of copyrighted works (*id.* at 5–6), and records from its call center regarding communications with accused infringers (*id.* at 7–8). *See also* Grande's Obj. to Order on Mot. for Evidentiary Sanctions at 2–5, 8–14 (ECF No. 290). Irrespective of whether Plaintiffs should be sanctioned for this destruction of evidence, the affirmative destruction or mere absence of this evidence plainly bears on the legitimacy of the Rightscorp notices, Plaintiffs' allegations of direct copyright infringement, and Plaintiffs' allegations that Grande had knowledge of specific instances of direct infringement.

**B.    There is no legitimate basis for precluding Grande from showing that Rightscorp destroyed relevant evidence.**

The relief Plaintiffs request—an order precluding Grande from even mentioning that Rightscorp destroyed or deleted material evidence—is nothing more than an attempt to exclude relevant evidence because it is harmful to Plaintiffs' case. As detailed above, when Rightscorp communicated with accused infringers on Grande's network, Rightscorp obtained indisputably relevant evidence that it has since destroyed, including bitfield data, choke data, and records of failed download attempts. *This is the only evidence that can confirm or disprove the validity of*

*Rightscorp's notices of alleged copyright infringement*.  Plaintiffs do not even *attempt* to argue that these matters are irrelevant, and their claims of unfair prejudice are conclusory and baseless.

Plaintiffs conflate two separate issues: (1) whether Plaintiffs should be sanctioned for spoliation; and (2) whether Grande may introduce evidence at trial showing that Rightscorp destroyed the evidence underlying its notices.  In the event the Court agrees with Judge Austin that Plaintiffs should not be sanctioned, it does not follow that Rightscorp's destruction of evidence is irrelevant.[4]  Grande should have the right to argue that the absence of this relevant evidence bears adversely on the reliability of the Rightscorp notices.  *See, e.g.*, *Russell*, 234 F. App'x at 208 (finding no prejudice when adverse inference instruction was not given because evidence of spoliation was presented to the jury for consideration); *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 446–47 (5th Cir. 2001) (jury properly considered evidence of spoliation in absence of any specific instruction on spoliation).

Additionally, Plaintiffs make the remarkable claim that it would be unfair to allow Grande to show that Rightscorp destroyed relevant evidence, because Rightscorp destroyed the evidence before Plaintiffs hired Rightscorp as their litigation consultant.  *See* Pls.' MIL re Rightscorp at 4.  This is no basis for excluding this relevant evidence, and Plaintiffs offer no authority suggesting otherwise.

The premise of Plaintiffs' argument is also indisputably false.  Plaintiffs' PX1—the Rightscorp notices Plaintiffs intend to offer at trial as evidence of infringement—includes notices as late as October 15, 2017, one year ***after*** Plaintiffs retained Rightscorp.  *See* Pls.' Am. Ex. List, PX1 (ECF No. 307); Oct. 15, 2017 Rightscorp Notice (Ex. 3).  Rightscorp destroyed all bitfield

---

[4] Grande reserves the right to propose a spoliation instruction at trial, depending on how the Court resolves the instant motion and/or Grande's objections to Judge Austin's order denying its motion for sanctions (ECF No. 290).

and choke data regarding these notices *after* Plaintiffs hired them in October of 2016. Furthermore, Plaintiffs were on notice of these issues before they filed this lawsuit—at the time, another district court had already sanctioned another copyright owner for Rightscorp's spoliation, and Rightscorp's destruction of relevant evidence would have been readily apparent to Plaintiffs. *See* Grande's Obj. to Order on Mot. for Evidentiary Sanctions at 14–18 (ECF No. 290).

In sum, Grande would be severely and unfairly prejudiced if it were precluded from showing at trial that Rightscorp destroyed evidence that is unquestionably relevant to the direct copyright infringement and knowledge issues in this case. Plaintiffs offer no argument or authority supporting such extraordinary relief, and the Court should therefore deny this motion. There is no legal or factual basis for a pre-trial ruling that any and all evidence regarding Rightscorp's destruction of evidence is inadmissible at trial.

## II. **Plaintiffs Offer No Legitimate Basis for Excluding All Evidence Regarding Rightscorp's "Business Practices."**

Plaintiffs' request to exclude all evidence regarding Rightscorp's "business practices" is far too vague to warrant pre-trial relief. *See* Pls.' MIL re Rightscorp at 6 ("Rightscorp's business practices generally . . . are irrelevant to this action."). Grande will address the specific items of evidence to which Plaintiffs object, but "business practices" is a catch-all that could seemingly encompass a wide range of unobjectionable evidence. Plaintiffs' objections to unidentified evidence of Rightscorp's "business practices" should be addressed individually at trial. *See Colton Crane Co. LLC v. Terex Cranes Wilmington, Inc.*, 2:08-CV-8525, 2010 WL 2035800, *1 (C.D. Cal. May 19, 2010) ("[M]otions *in limine* must identify the evidence at issue and state with specificity why such evidence is inadmissible. . . . In fact, motions in limine should rarely seek to

9

exclude broad categories of evidence, as the court is almost always better situated to rule on evidentiary issues in their factual context during trial.").

The only evidence Plaintiffs identify with any specificity is certain evidence regarding Rightscorp's call center, including a call center script and emails produced by Plaintiffs that describe it as a "terrifying extortion script." This evidence is highly relevant because it shows that Plaintiffs themselves recognized that Rightscorp was attempting to extort consumers. In *Cox*, the plaintiff, BMG, had engaged Rightscorp to send notices on its behalf. *See BMG Rights Mgmt. (US) LLC,* 199 F. Supp. 3d 958, 967 (E.D. Va. 2016). Here, in contrast, none of the Rightscorp notices at issue were sent with Plaintiffs' permission. In fact, Plaintiffs repeatedly declined Rightscorp's offers to send notices on their behalf, and wanted to affirmatively disassociate themselves from Rightscorp. *See, e.g.*, June 2014 Sony Email Chain (Ex. 4) (describing BMG's engagement of Rightscorp as "publishers using 3rd parties to milk consumers" and discussing the need to "prevent [Rightscorp] from giving the impression that they're doing this on [Sony's] behalf") (Exhibit DX46 of Grande's Trial Exhibit List (ECF No. 301-3)).

Now, however, having purchased evidence from Rightscorp, Plaintiffs want to present Rightscorp's notices as legitimate evidence of infringement and intend to argue that Rightscorp is a credible business with a reliable system for detecting copyright infringement. It would be extremely prejudicial to Grande's defense if the Court were to allow Plaintiffs to make these arguments and at the same time preclude Grande from showing that Plaintiffs' internal communications refute their litigation-driven narrative.[5] Plaintiffs cannot affirmatively present

---

[5] This includes evidence that Howie Singer, one of Warner Music's antipiracy experts, had in his possession an article regarding Rightscorp's "terrifying extortion script." *See* Sept. 30, 2015 Email (Ex. 5) (Exhibit DX44 of Grande's Trial Exhibit List (ECF No. 301-3)).

Rightscorp's business and system as legitimate while suppressing evidence that shows they know the opposite is true.

Furthermore, evidence regarding Rightscorp's call center is directly relevant to Rightscorp's motivations: Rightscorp's goal was to send as many notices of alleged infringement as possible, in order to extract as many settlements as possible from accused infringers. In other words, the call center and other evidence regarding Rightscorp's business model is critical to understanding why Rightscorp's system functioned the way it did. The reason Rightscorp sent so many notices and was so aggressive with accused infringers was not because Rightscorp was uniquely able to identify or collect evidence of copyright infringement, but because the design of its system was a function of its business model: to barrage consumers with as many infringement allegations as possible to make as much money as possible. Introducing this evidence is not unfairly prejudicial to Plaintiffs. They knew precisely who they were partnering with in this lawsuit, and the benefits of that partnership should run with the burdens.

Relatedly, the credibility of Rightscorp and its anticipated trial witnesses, Gregory Boswell and Christopher Sabec, is a significant issue in this case. Because Rightscorp has destroyed the evidence it claims to have collected from accused infringers on Grande's network, ultimately the jury may have to decide whether to believe Mr. Boswell's and Mr. Sabec's testimony that Rightscorp had a legitimate factual basis for accusing Grande's subscribers of copyright infringement. How Rightscorp interacted with consumers—including through its call center script and other business practices—is a key component of assessing their credibility as Rightscorp's representatives.

Finally, it is disingenuous of Plaintiffs to suggest that evidence regarding Rightscorp's call center is irrelevant because there is no evidence that any Grande subscriber ever interacted with Rightscorp's call center. There was no way for Grande to obtain evidence regarding its subscribers' interactions with Rightscorp <u>because Rightscorp destroyed its call center logs</u>. *See* Grande's Mot. for Evidentiary Sanctions at 7–8 (ECF No. 247). This case is therefore distinguishable from *Cox*, in which it was undisputed that none of the defendant's subscribers had contacted Rightscorp's call center. *See BMG Rights Mgmt. (US) LLC,* 199 F. Supp. 3d at 988.

For these reasons, the Court should deny Plaintiffs' request to exclude all evidence regarding Rightscorp's "business practices" from trial.

## III.     <u>Plaintiffs Offer No Legitimate Basis for Excluding All Evidence Regarding Rightscorp's Financial Condition</u>.

As explained in the preceding section, the credibility of Rightscorp witnesses Gregory Boswell and Christopher Sabec will be a significant issue at trial, and Rightscorp's financial interest in a favorable result for Plaintiffs is highly relevant to their credibility. *See* Fed. R. Evid. 607; *see also, e.g.*, *Crowe v. Bolduc*, 334 F.3d 124, 132 (1st Cir. 2003) (evidence of "financial incentives" is "classic evidence of bias, which is routinely permitted on cross-examination"); *Wilmington Trust Co. v. Mfrs Life Ins. Co*., 624 F.2d 707, 709 (5th Cir. 1980) (reversing in part summary judgment because district court "deprived" plaintiffs of the opportunity "to impeach [witness] as biased in favor of his employer"); *Chauppette v. Northland Ins. Co.*, No. 2:08-cv-4193, 2009 WL 3447291, at *1 (E.D. La. Oct. 21, 2009) (denying expert witness's motion to quash subpoena seeking information regarding financial relationship with plaintiff's counsel).

Plaintiffs' assertion that "Rightscorp has no *direct* financial interest in the outcome of this lawsuit" may be technically correct, but it ignores the strong interest Rightscorp has in proving

that its notices are reliable.  *See* Pls.' MIL re Rightscorp at 9 (emphasis added).  Rightscorp is now in the business of selling alleged evidence of copyright infringement and related consulting services to litigants.  Rightscorp sold the Plaintiffs in this case the notices and audio files that Plaintiffs intend to rely on at trial, and within the past year, Rightscorp evidently sold similar evidence to Plaintiffs to support at least one other lawsuit against another internet service provider.  *See generally* Compl. (ECF No. 1), *UMG Recordings, Inc., et al. v. RCN Telecom Servs., LLC, et al.*, No. 3:19-cv-17272 (D.N.J.).

In assessing the credibility of Mr. Boswell and Mr. Sabec, the jury should be permitted to consider not only Rightscorp's financial relationship with Plaintiffs, but also evidence regarding Rightscorp's dire financial condition, which makes that financial relationship all the more important.  In short, Rightscorp's relationship with Plaintiffs is the only thing keeping Rightscorp's business afloat, and the jury should know that when evaluating testimony from Mr. Boswell and Mr. Sabec regarding the reliability of the Rightscorp system and the evidence it generates.  The Court should therefore deny Plaintiffs' request to exclude this evidence from trial.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion *in Limine* to Preclude Irrelevant or Prejudicial Evidence or Arguments Related to Rightscorp, Inc. (ECF No. 314).

Dated: February 14, 2020

By: /s/ *Richard L Brophy*
Richard L. Brophy
Zachary C. Howenstine
Edward F. Behm
Margaret R. Szewczyk
Abigail L. Twenter
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
rbrophy@armstrongteasdale.com
zhowenstine@armstrongteasdale.com
ebehm@armstrongteasdale.com
mszewczyk@armstrongteasdale.com
atwenter@armstrongteasdale.com


J. Stephen Ravel
Texas State Bar No. 16584975
J.R. Johnson
Texas State Bar No. 24070000
Diana L. Nichols
Texas State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Telephone: 512.495.6429
Fax: 512.495.6401
Email: steve.ravel@kellyhart.com
    jr.johnson@kellyhart.com
    diana.nichols@kellyhart.com

ATTORNEYS FOR DEFENDANT
GRANDE COMMUNICATIONS
NETWORKS LLC

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 14, 2020, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

                                          /s/ *Richard Brophy*
                                          Richard L. Brophy