IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| UMG RECORDINGS, INC., *et al.*, § § § Plaintiffs, § § vs. § § GRANDE COMMUNICATIONS § NETWORKS LLC, § § Defendant. § § | Civil Action No. 1:17-cv-00365-DAE-AWA |

**PLAINTIFFS' OPPOSITION TO DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S MOTION FOR RECONSIDERATION**

**INTRODUCTION**

This motion marks the ***seventh time*** during this litigation that Defendant Grande Communications Networks LLC ("Grande") has asked this Court to reconsider a reasoned judicial analysis disagreeing with Grande's legal arguments. In the previous six occasions, Grande asked this Court to overrule Magistrate Judge Austin.[1] None of those requests was granted. Undeterred, Grande now asks this Court to overrule itself. But Grande presents no new legal arguments that it did not raise when the parties briefed their motions *in limine*, nor does it point to any new facts that have been discovered since then. Instead, Grande appears to believe that simply by repeating arguments the Court has already rejected, it will somehow convince the Court to change its mind. Principles of judicial economy alone compel denial of Grande's motion.

Moreover, there is no valid reason for the Court to alter its rulings on the motions *in limine* that are the subject of the instant motion, as the Court correctly resolved those motions the first time it considered them. *First*, the Court correctly permitted Plaintiffs to introduce evidence and

---

[1] *See* Dkt. 74, 251, 252, 285, 286, 290.

1

argument at trial related to Grande's lack of a repeat infringer termination policy during the relevant time period, as well as Grande's ineligibility for a safe harbor defense under the Digital Millennium Copyright Act ("DMCA").[2]  Plaintiffs intend to rely on Grande's repeat infringer policies to show that Grande was willfully blind to specific instances of direct infringement by its subscribers, and that Grande acted willfully for the purposes of calculating statutory damages. Further, Plaintiffs intend to invoke the Court's safe harbor ruling to rebut Grande's misleading argument that it would be fundamentally unfair to hold an internet service provider ("ISP") liable for contributory infringement.  Grande ignores these relevant purposes and instead premises its argument on a straw man.  According to Grande, Plaintiffs intend to argue at trial that Grande is liable "***because*** it failed to qualify for a DMCA safe harbor." Dkt. 348 ("Mot.") at 6 (emphasis added).  Plaintiffs have never made that argument and will not so argue at trial.  As a result, all of Grande's arguments are meritless.

*Second*, the Court correctly denied Grande's motion *in limine* to exclude the testimony of one of Plaintiffs' experts, Dr. Terrence McGarty.  Dr. McGarty's testimony will focus on Grande's repeat infringer policies and will contribute to Plaintiffs' proof that Grande was willfully blind and acted willfully for the purposes of calculating statutory damages.  While Grande claims that Magistrate Judge Austin held Dr. McGarty's testimony is moot, that statement grossly mischaracterizes the order at issue. Magistrate Judge Austin decided that Grande's motion was moot, not Dr. McGarty's testimony.  There never has been any finding by Magistrate Judge Austin or this Court that Dr. McGarty's testimony was moot or otherwise improper.

---

[2] Contrary to the certification attached to its motion, Grande did not confer with Plaintiffs before filing its motion regarding its intent to seek reconsideration of the Court's DMCA-related *in limine* rulings, other than the issue related to Dr. McGarty.  Of course, Plaintiffs would have opposed any request by Grande to seek the Court's reconsideration of those rulings.

In the two previous trials in which music industry plaintiffs sued ISPs for contributory copyright infringement, the courts allowed the plaintiffs to present similar evidence, including Dr. McGarty's testimony. Dr. McGarty's testimony was permitted in those trials even though, like here, the courts ruled against the ISPs on the safe harbor before trial. This Court should reach the same conclusion and deny Grande's motion for reconsideration in its entirety.

## LEGAL STANDARD

While Federal Rule of Civil Procedure 54(b) governs motions to review interlocutory orders, this Court has recognized that "the exact standard applicable to the granting of a motion under Rule 54(b) is not clear." *Soliz v. United States*, No. 5:15-CV-370-DAE, 2018 WL 6427342, at *2 (W.D. Tex. June 13, 2018). Thus, this Court has repeatedly followed the "general practice of courts in this Circuit" and considered timely filed motions under Rule 54(b) "under the same standards that govern Rule 59(e) motions to alter or amend a final judgment." *Id.* (internal alterations omitted); *see also, e.g.*, *Gomez v. Loomis Armored US LLC*, No. 5:16-CV-931-DAE, 2018 WL 6265114, at *2 (W.D. Tex. Aug. 17, 2018) (applying Rule 59(e) standards); *United States v. Real Prop. Located at 6250 WT Montgomery Rd., Bexar Cty., San Antonio, Tex.*, No. 5:14-CV-584-DAE, 2017 WL 11112472, at *1 (W.D. Tex. Nov. 9, 2017) (same).

Rule 59(e) motions "serve the narrow purpose of allowing a party ***to correct manifest errors of law or fact or to present newly discovered evidence***." *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 473 (5th Cir. 1989) (internal quotations omitted) (emphasis added). When a party merely disagrees with a prior order, "reconsideration is a waste of judicial time and resources and should not be granted." *Soliz*, 2018 WL 6427342, at *2 (internal quotation omitted). Indeed, "it is well-settled that motions for reconsideration should not be used to raise arguments that could, and should, have been made before entry of an order or to re-urge matters that have already been advanced by a party." *Id.* (internal quotation omitted).

3

**ARGUMENT**

Grande's motion should be denied for the simple reason that it presents no argument that the Court has not already considered and rejected. Grande's central argument is that because it is not eligible for a DMCA safe harbor defense, Plaintiffs should not be permitted to introduce any evidence at trial related to the DMCA, including this Court's summary judgment ruling, the facts supporting that ruling, and Dr. McGarty's expert testimony. *See* Mot. at 3. However, Grande addressed these exact issues ***three times*** while briefing motions *in limine*. First, Grande moved *in limine* to exclude evidence related to the DMCA. *See* Dkt. 325 ("DMCA Mot."). Second, Grande opposed Plaintiffs' motion *in limine* to permit evidence or argument related to Grande's ineligibility for the DMCA's safe harbor defense. *See* Dkt. 339 ("DMCA Opp."). Third, Grande moved *in limine* to exclude Dr. McGarty's testimony. *See* Dkt. 309 ("McGarty Mot."). In all these filings, Grande argued that because the Court has already determined that Grande is not eligible for a DMCA safe harbor defense as a matter of law, all evidence related to the DMCA should be precluded at trial. *See* McGarty Mot. at 2; DMCA Mot. at 2; DMCA Opp. at 2.

The Court rejected Grande's arguments each time. *See* Dkt. 347, Order Regarding Motions In Limine ("MIL Order") at 7, 16-17, 20-21. There have been no relevant changes in the law or newly discovered evidence since the Court entered the MIL Order. Indeed, Grande's motion cites the same cases, statutes, and orders in this case that Grande cited when briefing motions *in limine*. *Compare* Mot. at 3-6, *with* DMCA Opp. at 2 (cases), DMCA Mot. at 2 (statutes), & McGarty Mot. at 2 (orders). Thus, the Court should summarily reject Grande's effort to repeat its unsuccessful arguments. *See, e.g.*, *Johnson v. CitiGroup Mortgage Loan Trust, Inc.*, No. 5:17-CV-1227-DAE, 2018 WL 6242152, at *2-3 (W.D. Tex. May 16, 2018) (denying reconsideration motion because arguments were "exactly the same" as previously raised by litigant).

4

Moreover, even if the Court were to consider Grande's arguments on their merits (which there is no need to do), the motion for reconsideration should still be denied. The Court properly rejected these arguments in resolving the parties' motions *in limine*.

## I. THE COURT SHOULD PERMIT EVIDENCE AND ARGUMENT RELATED TO GRANDE'S INELIGIBILITY FOR THE DMCA SAFE HARBOR DEFENSE.

Plaintiffs moved *in limine* for an order permitting them to rely at trial on the Court's safe harbor ruling and the facts supporting it. In their papers, Plaintiffs demonstrated that similar evidence was admitted in other recent contributory infringement trials against other ISPs. *See* Dkt. 315 at 1; *BMG Rights Mgmt. (US) LLC v. Cox Communications, Inc.*, 881 F.3d 293, 313 (4th Cir. 2018) (noting that in trial against Cox, "witnesses and documents often referred to the DMCA and its safe harbor provisions"). In their motion, Plaintiffs explained that the facts supporting the Court's ruling—namely, that during the relevant time period Grande lacked ***any*** termination policy for repeat copyright infringers and in fact did not terminate any subscriber for copyright infringement during that time—were relevant to two independent issues to be resolved at trial. *See* Dkt. 315 at 4-5. Plaintiffs also explained that the fact that Grande is not eligible for a safe harbor defense is relevant to rebutting an equitable argument Grande has raised throughout this litigation and will undoubtedly raise again at trial. *See id.* at 5-7.

First, Grande's termination policies (or in this case, the lack thereof) show that Grande was willfully blind to specific instances of direct copyright infringement by its users[3] and that Grande acted willfully for the purposes of calculating statutory damages. Plaintiffs will show at trial that

---

[3] Willful blindness is one way to prove actual knowledge of a specific instance of direct copyright infringement, which is an essential element of Plaintiffs' claim for contributory infringement. *See* Dkt. 268 at 41 n.7 (holding that willful blindness can "satisfy the requirement of actual knowledge"); *BMG Rights Mgmt.*, 881 F.3d at 308 (holding that willful blindness is a "well-established" method of proving the requisite intent in a contributory infringement claim).

5

Grande received more than 1.35 million notices of direct copyright infringement by its subscribers. That Grande's policy was *not* to terminate any such subscribers is powerful evidence that Grande was willfully blind.  Moreover, Grande's lack of a repeat infringer policy is directly relevant to Plaintiffs' position that Grande acted willfully in its contributory infringement, increasing the range of statutory damages to which Plaintiffs are entitled.  *See* 17 U.S.C. § 504(c)(1), (2).

The Court agreed.  *See* MIL Order at 16-17, 20-21.  In seeking reconsideration, Grande baselessly claims that Plaintiffs intend to argue to the jury that Grande is liable "*because* it failed to qualify for a DMCA safe harbor."  Mot. at 6 (emphasis added).  That claim grossly mischaracterizes Plaintiffs' position.  Plaintiffs do not contend that Grande is liable *because* it is ineligible for a DMCA safe harbor.  Rather, Plaintiffs intend to rely on Grande's undisputed lack of a repeat infringer policy to show that Grande was willfully blind and acted willfully for the purposes of calculating statutory damages.  Grande has never cited any authority, whether in its motion *in limine* briefing or in its motion for reconsideration, suggesting that evidence relevant to an issue to be tried should be excluded because it is also relevant to a different issue resolved before trial.

Second, Plaintiffs explained in their motion *in limine* that the Court's ruling that Grande is not eligible for a safe harbor defense and the factual underpinning of that ruling is relevant to issues that will be tried.  *See* Dkt. 315 at 5-7.  Grande has argued throughout this litigation—and will undoubtedly argue at trial—that it merely provides people with access to the internet and should not be held responsible for what people do with that access. That argument is obviously misleading because the DMCA's safe harbor provision offers ISPs like Grande a simple way to avoid economic liability for copyright infringement—by implementing a reasonable repeat infringer policy.  However, Grande did not take even the simple steps required by that statute.  Plaintiffs

must be allowed to explain that easily available safe harbor to the jury to rebut Grande's argument and to prevent jury confusion by presenting the proper statutory context to evaluate Grande's claim.

Grande now claims—exactly as it did in its motion *in limine* briefing—that 17 U.S.C. § 512(*l*) prohibits Plaintiffs from referencing the Court's safe harbor ruling. *See* Mot. at 5; DMCA Mot. at 2. However, the statutory prohibition is not nearly that broad. Section 512(*l*) merely provides that an ISP's failure to qualify for a safe harbor "shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense." 17 U.S.C. § 512(*l*). Thus, that statutory language may bar copyright plaintiffs from doing what Grande falsely accuses Plaintiffs of doing, namely, arguing that an ISP is liable for infringement simply because it fails to qualify for a safe harbor. But § 512(*l*) plainly does ***not*** bar plaintiffs from invoking the DMCA where it is relevant to remaining issues such as willful blindness or willfulness, or to rebut specific arguments raised by defendants. Otherwise, ISPs would be free to do exactly what Grande actually seeks to do here: mislead a jury into thinking that it would be inequitable to hold an ISP liable for its subscribers' conduct, despite the existence of a statutory mechanism by which ISPs can ensure they avoid that result. There is no basis for the relief Grande seeks herein.

## II.   DR. MCGARTY SHOULD BE PERMITTED TO TESTIFY.

As the Court has found, and the foregoing discussion underscores, the facts concerning Grande's repeat infringer policies are admissible. Because it goes directly to that issue, Dr. McGarty's proffered expert testimony is relevant and should be admitted, as it was in both previous contributory infringement trials against Cox. Dr. McGarty will testify that Grande had the technical, financial, and operational ability to process infringement notices, identify infringing

7

subscribers, and take action against them. That Grande had a policy not to terminate any repeat infringers during the relevant time period despite having the technical ability to do so shows that Grande was willfully blind and acted willfully for the purposes of calculating statutory damages.

Indeed, the scope of Dr. McGarty's testimony at trial will be consistent with his testimony in the two previous trials against Cox. In *BMG v. Cox*, Dr. McGarty was qualified as an "expert in the design and implementation of Internet telecommunications networks, including IP data networks in the operations of companies that use such networks."[4] By applying his expertise to the record evidence he analyzed, Dr. McGarty testified about his conclusion that Cox was capable of processing Rightscorp infringement notices, yet Cox ignored those notices and deliberately configured its system to minimize customer terminations.[5] Dr. McGarty also gave similar testimony in the recent *Sony v. Cox* trial. The court presiding over these trials permitted this testimony even though, like Grande here, Cox had lost on its safe harbor defense before trial.

None of Grande's reconsideration arguments, which simply rehash the same points Grande made in briefing its motions *in limine*, has any merit. Indeed, Grande's central claim—that Dr. McGarty's testimony should not be admitted because Grande's safe harbor defense has already been resolved—ignores that Dr. McGarty's testimony is also relevant to issues that remain to be tried.

Grande also mischaracterizes the order issued by Magistrate Judge Austin denying Grande's *Daubert* motion to manufacture a basis to exclude Dr. McGarty's testimony. *See* Mot. at 3-4. According to Grande, "Judge Austin determined that the Court's summary judgment ruling on Grande's DMCA safe harbor defense rendered McGarty's proposed testimony moot." *Id.* at 4.

---

[4] Dkt. 335-3, *BMG v. Cox*, 12/15/2015 (Vol. 9 p.m.) Trial Tr. [Dkt. 750], at 2000:15-2001:4.
[5] Dkt. 335-3, *BMG v. Cox*, 12/15/2015 (Vol. 9 p.m.) Trial Tr. [Dkt. 750], at 2001:27-2002:8, 2006:21-2007:22, 2024:21-2025:7.

That statement blatantly misstates the holding of the order and completely ignores the procedural context in which Magistrate Judge Austin issued that order.

When Grande filed its *Daubert* motion, the Court had not yet resolved the parties' cross-motions for summary judgment. Thus, Grande's eligibility for the safe harbor was an open issue in this case at the time Grande sought to exclude Dr. McGarty's testimony. As such, in drafting its *Daubert* motion, Grande made a strategic choice to describe Dr. McGarty's testimony as relating exclusively to its safe harbor defense, ignoring all other relevant subjects about which Dr. McGarty might testify. *See* Dkt. 221, Grande Mot. to Exclude T. McGarty, at 4 ("The purpose of Dr. McGarty's factual narrative is to suggest that Grande insufficiently implemented its own copyright infringement policies, and is therefore unable to satisfy the safe harbor requirements of the [DMCA]."). Thus, all of Grande's criticisms of Dr. McGarty flowed from what *it characterized* as the purpose of his testimony, namely whether Grande could invoke the DMCA safe harbor.

While Grande's *Daubert* motion was pending, the Court issued its rulings on summary judgment, holding among other things that Grande was ineligible for the safe harbor defense. *See* Dkt. 268. Since Grande's *Daubert* motion was focused exclusively on its erroneous contention that Dr. McGarty's testimony was limited to whether Grande was eligible for a safe harbor, Magistrate Judge Austin ***then*** held that this Court's Order denying Grande safe harbor protection rendered Grande's *Daubert* motion moot, and therefore denied the motion. Dkt. 280, July 16, 2019 Order at 9 ("Because summary judgment has been entered on this issue, the Court will deny the motion to exclude McGarty as moot."). Magistrate Judge Austin never addressed whether Dr. McGarty's testimony was relevant to remaining issues for trial but simply responded to the facts

9

that Grande's safe harbor defense had been denied and that Grande did not premise its motion on other relevant issues about which Dr. McGarty might testify.

Contrary to what Grande now claims, Magistrate Judge Austin did not hold that all of Dr. McGarty's *testimony* was moot. Had he intended to do so, he would have granted Grande's motion to exclude that testimony, not denied it. Thus, as this Court has already held, Dr. McGarty should be permitted to testify.

## CONCLUSION

The Court should deny Grande's motion for reconsideration.

Dated: May 20, 2020

Respectfully submitted,

By: */s/ Andrew H. Bart*
Andrew H. Bart (admitted *pro hac vice*)
Jacob L. Tracer (admitted *pro hac vice*)
**Jenner & Block LLP**
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
Kevin L. Attridge (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

>Daniel C. Bitting (State Bar No. 02362480)
>Paige A. Amstutz (State Bar No. 00796136)
>**Scott Douglass & McConnico LLP**
>303 Colorado Street, Suite 2400
>Austin, TX 78701
>Telephone: (512) 495-6300
>Facsimile: (512) 495-6399
>dbitting@scottdoug.com
>pamstutz@scottdoug.com
>
>*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 20, 2020 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

>*/s/ Daniel C. Bitting*
>Daniel C. Bitting