IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| GRANDE COMMUNICATIONS NETWORKS LLC, | § § § § | |
| *Defendant*. | § § § | |

**PLAINTIFFS' TRIAL MOTION *IN LIMINE* TO PERMIT THEM TO INTRODUCE CERTAIN EVIDENCE AND ARGUMENTS REGARDING THE *BMG V. COX* TRIAL**

**INTRODUCTION**

At trial, Plaintiffs intend to introduce emails and testimony referencing the December 2015 trial held in *BMG Rights Mgmt. (US) LLC et. al. v. Cox Enterprises, Inc. et al.*, No. 1:14-cv-01611-LO-JFA (E.D. Va.) ("*Cox*"). The fact of that trial, the use of Rightscorp evidence in that trial (indeed much of the same evidence at issue here), and the outcome in that trial are critically relevant to multiple material disputed issues of fact in this case and are essential to explain the conduct of both Grande and Plaintiffs.[1]

As Plaintiffs stated in their motion *in limine* on this subject before trial, Plaintiffs do not intend to discuss the findings of fact or conclusions of law in *Cox*, nor do Plaintiffs intend to introduce the verdict form, judgment, evidence, or testimony presented as exhibits in this case. However, it is impossible to accurately present the facts about Grande's processing of copyright infringement notices from Rightscorp, its decisions to first maintain and then completely rewrite

---

[1] This request is consistent with Plaintiffs' position set forth in their Opposition to Grande's motion in limine, *see* Dkt. No. 335 at 14-16, and the Court's ruling on that motion, *see* Dkt. No 347 at 11.

1

its policy for dealing with infringement notices or its state of mind in doing so without referring to the fact of the *Cox* trial, Rightscorp's role in that trial or the outcome of that trial—all facts that Grande itself repeatedly referenced internally.

Grande's internal emails and deposition admissions show that Grande was aware of the *Cox* litigation as it was occurring, that Grande was contemporaneously aware of the outcome of the *Cox* trial in December 2015, and that the outcome of the *Cox* trial directly influenced Grande's relevant course of conduct. In particular, despite having specific knowledge of the *Cox* outcome, the role of Rightscorp evidence in obtaining that result, and the fact that virtually identical claims could be made against Grande, Grande paused to consider what steps to take in response to the *Cox* verdict, but decided both to: (1) forward Rightscorp notices to its users; and (2) continue its policy of not terminating any of its subscribers for copyright infringement. In fact, while it changed its formal policy a year later, it failed to terminate a single user until after Plaintiffs filed this lawsuit. Plaintiffs' proof of these core factual issues is dependent on several Grande emails referencing the *Cox* case. Thus, it is critical that Plaintiffs be permitted to submit this evidence to the jury so it can accurately evaluate Grande's willful blindness, willfulness, and the amount of any statutory damages award.

Moreover, reference to those same facts is essential to rebut certain assertions Grande made in its opening statement and continues to press as themes throughout the trial. Indeed, the prejudice to Plaintiffs from allowing Grande's arguments to go unanswered despite the fact that evidence exists to rebut them entirely cannot be overstated.

During Grande's opening statement, counsel argued that Plaintiffs have "known for years and years" that Rightscorp's notices are illegitimate and purchased Rightscorp's notices, in

Grande's words, as a "lottery ticket."[2] Grande has pursued this same theme in questioning Plaintiffs' witnesses.[3] The dispositive response to this baseless argument is—as Plaintiffs' witnesses are prepared to testify—that the outcome of the *Cox* trial constituted a validation of the Rightscorp system and convinced Plaintiffs to obtain the relevant evidence from Rightscorp and bring this action. Testimony on this subject matter is the only way for Plaintiffs to rebut Grande's narrative that has already presented to the jury.

Plaintiffs submit that their use of this evidence is fully consistent with the Court's ruling on Grande's Motion *in Limine* No. 8, where the Court agreed that "Plaintiffs should be permitted to present the jury with the fact that Rightscorp sent notices to Cox, <u>and that Cox ultimately was found liable for copyright infringement based on those notices</u>[.]"[4]

For these reasons, the Court should permit Plaintiffs to introduce this *Cox*-related evidence to the jury. Indeed, Plaintiffs respectfully submit that being precluded from presenting this evidence to the jury will interfere with Plaintiffs' right to a fair trial.

I. **The Outcome in *Cox* is Relevant to Grande's Course of Conduct, Providing Proof of Both Grande's Willful Blindness and the Willfulness of its Conduct, Which is a Key Factor for Statutory Damages.**

A. **The *Cox*-related Emails are Highly Probative of Grande's Course of Conduct.**

Several internal Grande emails from 2014 through 2016 reveal that Grande was following news about the *Cox* litigation as it was occurring and that, in the wake of and with specific reference to the *Cox* verdict, Grande (1) considered whether the verdict should cause Grande to revisit its own infringement policies and practices, (2) examined its receipt and handling of Rightscorp notices, and nonetheless decided to forward such notices to Grande subscribers (until

---

[2] Oct. 12, 2022, Trial Tr. at 75:23-76:3 & 76:24-77:3.
[3] *See, e.g., id.* at 179:25-180:6.
[4] ECF 347 at 13 (emphasis added).

switching course again in 2017), and (3) contemplated that Grande, like Cox, had damning internal emails that could lead to Grande, like Cox, being found liable.[5]  Indeed, these documents include evidence the Court cited when denying Grande's motion for summary judgment on the question of willfulness.  *See* Dkt. 268, S.J. Order at 43 (citing Dkt. 172, Pls' Opp. and Cross-Mot. for S.J., at 33/38).  Accordingly, the relevant materials referencing the *Cox* case and verdict should be introduced to the jury through these independently admissible documents.

### B. The Emails At Issue Are Not Precluded by the Rule Against Hearsay.

Grande's own documents referring to the *Cox* outcome are not precluded by the rule against hearsay.

First, the emails are not hearsay since they are classic party admissions under Federal Rule of Evidence 801(d)(2)(D).  Indeed, these emails are statements made by Grande employees concerning matters within the scope of their employment (Grande's policies), and Plaintiffs seek to offer them against Grande on the subjects of willful blindness and willfulness.

Second, the statements made by Grande employees in the *Cox*-related emails are also admissible under Federal Rule of Evidence 803(3) as statements of those employees' then-existing state of mind because they are evidence of Grande's "intent, plan, motive, [or] design" to comply (or not) with federal copyright law.  The state of mind of Grande's employees is directly at issue in this case, because whether Grande committed willful infringement is a question for the jury. *See Malaco Inc. v. Cooper*, No. CIV.A. 300CV2648P, 2002 WL 1461927, at *5 (N.D. Tex. July 3, 2002) (holding that the "infringer's state of mind in committing the infringement" is relevant to copyright infringement damages).

---

[5] *See* PX 147, 148, 166, 206, 207, 214 & 216.  In particular, PX 216 refers to the amount of the *Cox* jury verdict.  Plaintiffs will not oppose a request to redact the dollar amount of the verdict.

4

### C. To the Extent Grande's Emails Contain Hearsay Within Hearsay, They Are Admissible Because Plaintiffs Rely on Them as Proof of Effect on the Listener, not for Truth of the Assertions.

Some of the emails at issue contain links to or excerpts from news articles about the *Cox* litigation and verdict. This material is not barred by the rule against hearsay because Plaintiffs are not offering the links or articles for the truth of the assertions contained therein, but rather for their effect on the listener (*i.e.*, Grande). Out-of-court statements, when only offered for their effect on the listener, are routinely admitted as non-hearsay. *See, e.g.*, *Escobedo v. Dynasty Insulation, Inc.*, 694 F. Supp. 2d 638, 645 (W.D. Tex. 2010); *Mick v. Big Sur Waterbeds, Inc.*, No. A-06-CA-115 LY, 2006 WL 8432099, at *7 (W.D. Tex. Dec. 18, 2006) (Austin, M.J.), *report and recommendation adopted sub nom. Mick v. Big Sur Waterbeds, Inc*, No. A-06-CA-115-LY, 2007 WL 9701141 (W.D. Tex. Jan. 24, 2007). These statements are especially relevant, where, as here, they had an effect on a defendant's decision making. *See, e.g.*, *Hovsepian v. State Farm Mut. Auto. Ins. Co.*, No. CV0908929MMMPLAX, 2011 WL 13213900, at *3 n.44 (C.D. Cal. Jan. 12, 2011).

## II. Testimony Referring to *Cox* is Necessary to Rebut Grande's Factual Claim Concerning Plaintiffs' Course of Conduct.

Grande asserted during its opening statement that Plaintiffs never hired Rightscorp and did not vet the Rightscorp notices before filing their lawsuit against Grande.[6] It went on to say that Plaintiffs avoided Rightscorp, and viewed the company's system as unreliable, right up until the filing of their lawsuit.[7] In particular, Grande told the jury in its opening statement that "the record labels, they're going to hope to trick you into thinking that the Rightscorp accusations are

---

[6] *See* Oct. 12, 2022, Trial Tr. at 75:18-77:12.
[7] *See id.* at 76:4-6 ("for a decade or more the record labels have known that Rightscorp is not a legitimate business."); *Id.* 76:14-16 (Plaintiffs "wanted to distance themselves from the company so no one thought they were in any way affiliated with Rightscorp or the e-mails that they were sending.")

5

legitimate, even though they've known for years and years that they aren't." But the reality is that the landscape changed beginning with the *Cox* verdict in late 2015. Thus, Grande's portrayal glaringly omits that Plaintiffs were aware of how Rightscorp notices were used in *Cox* and that the outcome of that litigation was a primary factor in their decision to file their own case.

The only way for Plaintiffs to correct Grande's misleading statement—and the questioning of Plaintiffs' witnesses following up on that same theme—is for Plaintiffs to be able to present testimony about how the validation of the Rightscorp system reflected in the *Cox* outcome caused Plaintiffs to decide to use the Rightscorp infringement detection system and evidence for their own lawsuit. Indeed, the fact that the same Rightscorp system served as the sole supporting evidence of direct infringement in a successful federal lawsuit rebuts Grande's accusation that the notices are nothing more than "a lottery ticket that [the Plaintiffs] purchased from the Rightscorp company."[8] In order to have a fair trial, Plaintiffs must have the right to rebut Grande's repeated and emphatic presentation of its baseless themes.

Therefore, the Court should allow Plaintiffs' witnesses to testify on this subject matter.

## CONCLUSION

For the foregoing reasons, the Court should permit Plaintiffs to present evidence referencing the *Cox* outcome and the significance to Plaintiffs of Rightscorp's role in that case.

---

[8] *Id.* at 75:23-24.

Dated: October 17, 2022　　　　　　　　　Respectfully submitted,

By: ___/s/ Andrew H. Bart___
Andrew H. Bart (admitted *pro hac vice*)
Jacob L. Tracer (admitted *pro hac vice*)
**JENNER & BLOCK**
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
Kevin J. Attridge (admitted *pro hac vice*)
**STEIN MITCHELL BEATO & MISSNER LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**SCOTT DOUGLASS & MCCONNICO LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 17, 2022 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Paige A. Amstutz*
Paige A. Amstutz