**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| UMG RECORDINGS, INC., *et al.*, | § § § | |
| *Plaintiffs,* | § § | Civil Action No. 1:17-cv-00365-DAE-AWA |
| vs. | § § | |
| GRANDE COMMUNICATIONS NETWORKS LLC, | § § § | |
| *Defendant.* | § § | |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND INTEREST**

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

BACKGROUND ..................................................................................................3

    A.  Grande Willfully Infringed Plaintiffs' Copyrighted Sound Recordings. .....................3

    B.  Grande's Litigation Strategy Made It Expensive For Plaintiffs To Prevail. ................4

    C.  The Jury Returned A Decisive Verdict For Plaintiffs. ..................................5

LEGAL STANDARDS ..........................................................................................6

ARGUMENT ......................................................................................................7

  I.  THE COURT SHOULD AWARD PLAINTIFFS THEIR REASONABLE ATTORNEYS' FEES. ...........7

    A.  Plaintiffs Should Be Awarded Their Reasonable Attorneys' Fees. ...........................8

      1.  The Jury's Willfulness Finding Conclusively Establishes Grande's Intention To Infringe And Is A Powerful Factor Favoring A Fee Award. .............8

      2.  Grande's Defenses And Litigation Conduct Were Objectively Unreasonable. .................................................................................9

        a.  Grande's Baseless DMCA Safe Harbor Defense ................................9

        b.  Grande's Unsubstantiated Attacks On Rightscorp .............................10

        c.  Grande's Unreasonable Litigation Conduct ...................................11

      3.  Grande's Intentional Flouting Of And Disdain For The Law Must Be Deterred. ..................................................................................13

    B.  Plaintiffs' Requested Attorneys' Fees Are Reasonable...................................14

      1.  Plaintiffs' Rates Are Reasonable And Comport With Prevailing Market Rates. ......................................................................................15

      2.  Plaintiffs' Hours Are Reasonable And Undercount The Hours Actually Spent. .....................................................................................16

      3.  The *Johnson* Factors Do Not Support A Downward Departure From The Lodestar. .................................................................................17

  II.  PLAINTIFFS ARE ENTITLED TO PRE-JUDGMENT INTEREST. .................................19

CONCLUSION ..................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

Cases

*Adobe Sys. Inc. v. SKH Sys., Inc.*,
No. 17-cv-018, 2017 WL 6611513 (W.D. Tex. Dec. 27, 2017)...................................................14

*Arocha v. Floresville Elec. Light & Power Sys.*,
No. 06-cv-847, 2006 WL 2987723 (W.D. Tex. Oct. 17, 2006) ................................................16

*Batiste v. Lewis*,
976 F.3d 493 (5th Cir. 2020) ......................................................................................................6

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
234 F. Supp. 3d 760 (E.D. Va. 2017) ...........................................................8, 10, 13, 14

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*,
881 F.3d 293 (4th Cir. 2018) .................................................................................8, 10

*Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human,*
*Res.*, 532 U.S. 598 (2001)...........................................................................................7

*Cable/Home Comm'n Corp. v. Network Prods., Inc.*,
902 F.2d 829 (11th Cir. 1990) ....................................................................................8

*Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*,
15 F.3d 1275 (5th Cir. 1994) ......................................................................................19

*Cengage Learning, Inc. v. Shi*,
No. 13-cv-7772, 2017 WL 1063463 (S.D.N.Y. Mar. 21, 2017) ...............................20

*Chi-Boy Music v. Charlie Club, Inc.*,
930 F.2d 1224 (7th Cir. 1991) ....................................................................................8

*Christus Health Care Sys., Inc. v. Am. Consultants RX, Inc.*,
No. 12-cv-1221-DAE, 2014 WL 1092096 (W.D. Tex. Mar. 18, 2014)................................6, 7

*Crane v. Rave Rest. Grp., Inc.*,
No. 20-cv-13, 2022 WL 403291 (E.D. Tex. Feb. 9, 2022) .......................................16

*Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*,
965 F.3d 365 (5th Cir. 2020) ......................................................................................6

*EMI Apr. Music Inc. v. 4MM Games, LLC*,
No. 12-cv-2080, 2014 WL 325933 (S.D.N.Y. Jan. 13, 2014)...................................20

*EMI Apr. Music Inc. v. Jet Rumeurs, Inc.*,
632 F. Supp. 2d 619 (N.D. Tex. 2008) ......................................................................19

iii

*EMI Apr. Music Inc. v. Rodriguez*,
    691 F. Supp. 2d 632 (M.D.N.C. 2010) ...................................................................18

*Farrar v. Hobby*,
    506 U.S. 103 (1992) .............................................................................................18

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ...............................................................................................6

*Ford Glob. Techs., LLC v. New World Int'l Inc.*,
    No. 3:17-CV-3201-N, 2021 WL 1233408 (N.D. Tex. Feb. 19, 2021) .......................2

*Friedheim v. Hoeber*,
    No. 20-cv-0335, 2022 WL 3699432 (N.D. Tex. May 9, 2022) ...............................17

*Heaven Medi Ltd., v. Rebecca Everts & Reset Nation, LLC*,
    No. 22-cv-00025, 2022 WL 17443627 (W.D. Tex. Dec. 6, 2022) ..........................15

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .............................................................18, 19

*John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*,
    No. 12-cv-4194, 2013 WL 1828671 (N.D. Tex. May 1, 2013) ...............................20

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) .............................................................................7, 18

*Kepner-Tregoe, Inc. v. Vroom*,
    186 F.3d 283 (2d Cir. 1999) ..................................................................................8

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    579 U.S. 197 (2016) ............................................................................................6, 9

*La. Power & Light Co. v. Kellstrom*,
    50 F.3d 319 (5th Cir. 1995) ..................................................................................15

*Lance v. Freddie Recs., Inc.*,
    986 F.2d 1419 (5th Cir. 1993) ................................................................................8

*MidCap Media Fin., LLC v. Pathway Data, Inc.*,
    No. 15-cv-00060, 2018 WL 7890668 (W.D. Tex. Dec. 19, 2018) ..........................15

*Music, Inc. v. NLC, Inc.*,
    No. 07-cv-2632, 2009 WL 10710626 (D.S.C. July 22, 2009) ...............................18

*Perdue v. Kenny A. ex rel. Winn*,
    559 U.S. 542 (2010) ..........................................................................................7, 15

*Powell v. Penhollow*,
    260 F. App'x 683 (5th Cir. 2007) ........................................................................ 19

*R A Guthrie Co., Inc. v. Boparai*,
    No. 18-cv-080, 2021 WL 1148957 (E.D. Tex. Mar. 1, 2021) ........................ 7, 19, 20

*Robbins Rsch. Int'l Inc. v. Doe*,
    *2022* WL 2032314 (C.D. Cal. May 23, 2022) ...................................................... 20

*Samsonite IP Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co.*,
    No. 19C-cv-02564, 2021 WL 9036273 (S.D.N.Y. Apr. 27, 2021) ........................ 20

*Shipes v. Trinity Indus.*,
    987 F.2d 311, 320 (5th Cir.1993) ........................................................................ 18

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*,
    74 F.3d 488 (4th Cir. 1996) .................................................................................... 8

*Tattoo Art, Inc. v. TAT Int'l, LLC*,
    794 F. Supp. 2d 634 (E.D. Va. 2011) .................................................................. 20

*Tollett v. City of Kemah*,
    285 F.3d 357 (5th Cir. 2002) ................................................................................ 15

*Virgin Records Am., Inc. v. Thompson*,
    512 F.3d 724 (5th Cir. 2008) .................................................................................. 6

*Virtual Chart Sols. I, Inc. v. Meredith*,
    No. 4:17-cv-546, 2020 WL 1902530 (E.D. Tex. Jan. 13, 2020) ........................ 6, 9

*Watkins v. Fordice*,
    7 F.3d 453 (5th Cir. 1993) .................................................................................... 17

*Williams v. Trader Publ'g Co.*,
    218 F.3d 481 (5th Cir. 2000) ................................................................................ 19

**INTRODUCTION**

Plaintiffs' years-long, hard-fought effort to hold Defendant Grande Communications Networks, LLC ("Grande") accountable for its decision to abandon its repeat infringer policy and replace it with a corporate policy of willful blindness to the rampant infringement of copyrighted content occurring through its high speed-internet service culminated in a resounding jury verdict in Plaintiffs' favor. The jury not only confirmed that Grande was liable, but found that Grande acted willfully in infringing Plaintiffs' copyrights. The evidence at trial amply supported that conclusion. Indeed, Grande's witnesses *admitted* that:

- The company once had a policy that addressed the activity of subscribers who used Grande's internet services to infringe copyrights by suspending and sometimes terminating their accounts;

- A private equity firm bought Grande in 2009 and installed a new management team to lead the company;

- In October 2010, that team eliminated Grande's subscriber infringement policy; and

- For the next seven years—including the time period at issue in this lawsuit—Grande allowed infringing customers to continue using Grande's internet services without terminating any of their accounts, no matter how many notices of infringement Grande received about them.

All of these facts were available to and known by Grande from the outset of this litigation. Nevertheless, rather than acknowledge its wrongdoing and address its role in contributing to the widespread infringement of Plaintiffs' copyrights, Grande litigated this case aggressively from start to finish. At trial, Grande *still* did not acknowledge any wrongdoing, but instead manufactured arguments about the reliability of the notices of infringement it received that were admittedly never asserted (or even considered) by Grande during the relevant time period. Grande never questioned the accuracy of such notices or took any steps to inquire about the technical systems that generated the notices. Further, the monitoring company at issue in this case, Rightscorp, Inc. ("Rightscorp"),

even sent Grande a letter during the relevant time period offering to meet with Grande and explain its technology, but Grande never met with Rightscorp and never even responded to the letter.

Unable to defend its own conduct, Grande resorted to a litigation strategy of attempting to deflect the focus from its own manifest liability, which imposed massive costs on Plaintiffs in the process. Before trial, that strategy included asserting defenses that were obviously inapplicable (in particular, the Digital Millennium Copyright Act ("DMCA") safe harbor defense); leveling meritless accusations of spoliation against Rightscorp; repeatedly reasserting arguments that the Court had previously rejected; and seeking to stymie Plaintiffs' ability to develop a record of Grande's misconduct to present to the jury. At trial, Grande continued its strategy by focusing its defense on Rightscorp while offering no explanation whatsoever for its own conduct. Most egregiously, Grande even argued to the jury that, if it were found not to be liable in this case, it would again ignore the infringing conduct of its subscribers.

Grande's underlying misconduct, coupled with its disingenuous litigation strategy, warrant a compensatory award of attorneys' fees and prejudgment interest in Plaintiffs' favor.[1] As explained more fully below, Plaintiffs seek $5,192,627.19 in attorneys' fees.[2] In the case most closely analogous to this one—*BMG v. Cox*—the district court awarded the prevailing party, BMG, a larger fee award even though the recovery was roughly half of that awarded here. Plaintiffs further seek an award of prejudgment interest in the amount of $7,367,278.24.

---

[1] Plaintiffs certify that they have met and conferred with Grande pursuant to Local Rule CV-54(b)(2) but were unable to reach agreement on any of the issues presented in this motion.

[2] In this motion, Plaintiffs seek attorneys' fees for time incurred through December 2022, but excluding time spent on Plaintiffs' motion for attorneys' fees and bill of costs. Plaintiffs reserve the right to seek a supplementary award of attorneys' fees, including for time spent on the instant motion and bill of costs, any other post-trial motions, any appeal, and for any success fee owed by Plaintiffs to counsel as a result of prevailing on appeal. *See Ford Glob. Techs., LLC v. New World Int'l Inc.*, No. 3:17-CV-3201-N, 2021 WL 1233408, at *3 (N.D. Tex. Feb. 19, 2021), *appeal dismissed*, No. 2021-1792, 2021 WL 4509150 (Fed. Cir. Apr. 22, 2021).

## BACKGROUND

### A. Grande Willfully Infringed Plaintiffs' Copyrighted Sound Recordings.

Between November 2011 and April 2017, thousands of subscribers of Grande's high-speed internet service made untold copies of Plaintiffs' copyrighted sound recordings available for others to illegally download using BitTorrent, a peer-to-peer file-sharing protocol. Rightscorp used its reliable proprietary technology to monitor this activity and then notified Grande of the infringements that Rightscorp detected via more than one million individual infringement notices, summary "roll-up" reports, and an interactive electronic dashboard containing details of every single infringement Rightscorp detected. PX 1, 2, 11, & 12. But Grande refused to act on this information and instead allowed its users to continue to infringe Plaintiffs' copyrighted works no matter how many times they were identified as copyright infringers. Dkt. 468 at 972:23-973:16.

Grande's decision to ignore Rightscorp notices was part of its broader policy of turning a blind eye to the massive infringement on its network. At trial, Grande's witnesses admitted that, before Grande was purchased by a private equity firm in 2009, Grande had a policy that addressed its infringing subscribers by immediately suspending and sometimes terminating their accounts. Dkt. 468 at 917:21-918:11 (L. Horton); Dkt. 470 at 1176:21-1177:2 (R. Fogle). However, in October 2010, the management team installed by Grande's new owners eliminated that policy. Dkt. 468 at 923:6-15 (L. Horton). While Grande made no effort to explain why that change was made, its General Manager, Matt Rohre, tellingly attributed it to "a change in management philosophy." Dkt. 471 at 1261:25-1262:5. Further, Grande's corporate representative admitted that, from 2010 to 2016, the company had *no* policy that provided for the termination of subscribers who were repeat copyright infringers. Dkt. 469 at 1020:22-1021:14 (S. Christianson). As a result, Grande's Vice President of Network Engineering (and DMCA Agent), Lamar Horton, had no choice but to admit at trial that, if the Rightscorp evidence was reliable, then Grande had continued

to provide internet service to users who were guilty of infringing conduct of which Grande had received notice. Dkt. 471 at 1418:12-18. Mr. Horton also admitted that before the lawsuit, he was unaware of any evidence supporting the defenses asserted by Grande at trial. *Id.* at 973:7-22.

The potential legal implications of Grande's policy change were evident even to Grande's employees. The DMCA provides internet service providers ("ISPs") like Grande with a "safe harbor" defense to claims of secondary liability for infringements on their networks, but only if they, among other things, adopt and implement "a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers." 17 U.S.C. § 512(i)(1)(A). Yet in 2013, one Grande employee, Richard Fogle, recognized that "we have users who are racking up DMCA take down requests and no process for remedy in place." PX 90 (R. Fogle email, Apr. 11. 2013). He went on to question whether he was seeing a broken process. *See id.* Another Grande employee, Roberto Chang, replied that if Grande did nothing more than what it was currently doing, "we might lose our safe harbor status." PX 91 (R. Chang email, Apr. 11, 2013).

Even when Grande became aware of a federal court's decision to *deny* another ISP the benefits of the DMCA's safe harbor defense based on the same Rightscorp notices Grande was receiving, Grande continued to flaunt the law and allow massive copyright infringement on its network. Dkt. 468 at 932:12-14 (L. Horton); PX 166 (R. Creel email, Dec. 18, 2015). Grande's motivation for this knowing violation of the law was evident. During the seven-year period at issue, when Grande followed a policy of *never* terminating repeat infringers, the company's value increased by $400 million. Dkt. 472 at 1483:10-12 (J. Feehan).

**B. Grande's Litigation Strategy Made It Expensive For Plaintiffs To Prevail.**

As explained above, Grande *never* proffered any justification for its misconduct. Instead, Grande defended against Plaintiffs' claims by manufacturing a litigation strategy designed to

deflect from its own culpability, which in turn required Plaintiffs to devote significant resources to rebut Grande's sideshows. In particular, Grande (1) asserted sham defenses that it knew were not supportable (most notably, asserting a DMCA safe harbor defense despite the fact that it had *no* policy to terminate repeat infringing subscribers); (2) mounted an all-out attack on Rightscorp that (as in *BMG v. Cox*), the jury appropriately rejected; (3) sought to prevent discovery into its practices and procedures for handling copyright infringement; and (4) employed an obstructionist litigation strategy that repeatedly attempted to relitigate unreasonable legal positions long after they had been rejected by the Court. Indeed, over the course of this litigation, both the Magistrate Judge and this Court have variously characterized Grande's legal positions as "annoying," "silly," "meritless," and "fallacy." Dkt. 198 at 1; Dkt. 279 at 2.

Before trial, the Court granted summary judgment to Plaintiffs on Grande's DMCA safe harbor defense; denied Grande's motion for summary judgment (except as to Plaintiffs' reproduction claim); denied Grande's *Daubert* challenges against Plaintiffs' experts; denied Grande's serial attempts to exclude or strike the Rightscorp evidence; and denied all of Grande's contested motions *in limine*.

### C.  The Jury Returned A Decisive Verdict For Plaintiffs.

After a nearly month-long trial, involving 25 witnesses (live and through deposition), the jury concluded that Grande infringed each of the 1,403 copyrighted sound recordings for which Plaintiffs sought statutory damages, found that such conduct was willful, and awarded Plaintiffs $46,766,200.[3]

---

[3] The jury's total verdict equates to an award of $33,333 per sound recording, which is in the heightened range of statutory damages awards permitted for willful infringements. *See* 17 U.S.C. § 504(c)(2).

## LEGAL STANDARDS

**Attorneys' Fees.** The Copyright Act permits district courts to award "a reasonable attorney's fee" to a prevailing party. 17 U.S.C. § 505. In the Fifth Circuit, such awards are "the rule rather than the exception and should be awarded routinely." *Digital Drilling Data Sys., L.L.C. v. Petrolink Servs., Inc.*, 965 F.3d 365, 386 (5th Cir. 2020) (quoting *Virgin Records Am., Inc. v. Thompson*, 512 F.3d 724, 726 (5th Cir. 2008)). In determining whether to award attorneys' fees, courts should consider nonexclusive factors such as "motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 202 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)). Among those factors, the objective unreasonableness of the losing party's positions should be given "substantial weight." *Batiste v. Lewis*, 976 F.3d 493, 507 (5th Cir. 2020) (quoting *Kirtsaeng*, 579 U.S. at 210). Courts can also award fees "because of a party's litigation misconduct, regardless of the reasonableness of his claims or defenses, or to deter repeated instances of copyright infringement." *Id.* (internal quotations omitted).

Where recovery of attorneys' fees is appropriate, district courts must then determine what fee is "reasonable." 17 U.S.C. § 505. District courts in the Fifth Circuit routinely apply the two-step "lodestar method" to make that determination. *See Christus Health Care Sys., Inc. v. Am. Consultants RX, Inc.*, No. 12-cv-1221-DAE, 2014 WL 1092096, at *6 (W.D. Tex. Mar. 18, 2014); *see also*, *e.g.*, *Virtual Chart Sols. I, Inc. v. Meredith*, No. 4:17-cv-546, 2020 WL 1902530, at *13 (E.D. Tex. Jan. 13, 2020), *report and recommendation adopted*, 2020 WL 896674 (E.D. Tex. Feb. 25, 2020). First, district courts must calculate the lodestar, which is "'the number of hours reasonably expended on the litigation" multiplied by "a reasonable hourly rate." *Christus Health Care Sys.*, 2014 WL 1092096, at *6 (internal quotations omitted). The lodestar is presumed to be

reasonable. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554-55 (2010). Second, district courts must determine whether the lodestar amount "should be adjusted upward or downward" by considering any of twelve factors first articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *Christus Health Care Sys.*, 2014 WL 1092096, at *6.

**Pre-Judgment Interest.** District courts in the Fifth Circuit apply a two-step test to determine whether pre-judgment interest can be awarded on a federal claim. *See R A Guthrie Co., Inc. v. Boparai*, No. 18-cv-080, 2021 WL 1148957, at *18 (E.D. Tex. Mar. 1, 2021), *report and recommendation adopted*, 2021 WL 1141667 (E.D. Tex. Mar. 25, 2021). First, they consider "whether the federal statute creating the cause of action precludes an award of pre-judgment interest." *Id.* Second, if not precluded, courts consider whether it "furthers the congressional policies of the federal act" at issue. *Id.* If pre-judgment interest is available, it is within a district court's discretion to award it. *Id.*

## ARGUMENT

### I.   THE COURT SHOULD AWARD PLAINTIFFS THEIR REASONABLE ATTORNEYS' FEES.

It is indisputable that Plaintiffs are the prevailing parties in this action and are thus entitled to seek their attorneys' fees under the Copyright Act. *See* 17 U.S.C. § 505. A prevailing party is one "in whose favor a judgment is rendered." *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 603 (2001). Here, the jury found Grande liable for willful contributory copyright infringement and awarded Plaintiffs $46.7 million in damages. Based on that verdict, the Court entered judgment in Plaintiffs' favor. *See* Dkt. 481.

For the reasons stated below, the Court should award Plaintiffs $5,192,627.19 in attorneys' fees to compensate them for the fees they incurred to vindicate their rights in this litigation and to deter Grande from engaging in unlawful conduct in the future.

## A. Plaintiffs Should Be Awarded Their Reasonable Attorneys' Fees.

The Court should award Plaintiffs their attorneys' fees for three principal reasons. First, the jury's finding that Grande is a willful infringer is a powerful factor in favor of a fee award. Second, Grande's defenses in this action—both before and at trial—were objectively unreasonable. Third, Grande's conduct throughout this litigation demonstrates the need for an award that will deter Grande from engaging in similar unlawful activity in the future. Accordingly, Grande should bear the expense of litigation necessary for Plaintiffs to vindicate their rights.

### 1. The Jury's Willfulness Finding Conclusively Establishes Grande's Intention To Infringe And Is A Powerful Factor Favoring A Fee Award.

Numerous circuit courts—including the Fifth Circuit—have long concluded that a copyright defendant's willfulness supports an award of attorneys' fees.[4] That is because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Comm'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990).

The jury in this case determined that Grande infringed Plaintiffs' copyrights willfully. In *BMG v. Cox*, the court held that a jury's finding that Cox infringed willfully demonstrated Cox's intention to infringe. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 234 F. Supp. 3d 760, 768 (E.D. Va. 2017), *vacated*, 881 F.3d 293 (4th Cir. 2018).[5] This Court should similarly conclude that the jury's finding of willfulness confirms that Grande intended to infringe Plaintiffs' copyrights and should award Plaintiffs their attorneys' fees as a result.

---

[4] *See, e.g.*, *Lance v. Freddie Recs., Inc.*, 986 F.2d 1419 (5th Cir. 1993); *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283 (2d Cir. 1999); *Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co.*, 74 F.3d 488, 498 (4th Cir. 1996); *Chi-Boy Music v. Charlie Club, Inc.*, 930 F.2d 1224 (7th Cir. 1991); *Cable/Home Comm'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990).

[5] Because the Fourth Circuit overturned the trial court judgment based on improper jury instructions, the award of attorneys' fees was vacated. *See BMG*, 881 F.3d at 301 n.1. However, the Fourth Circuit specifically noted that it did not address the merits of the district court's fee award. *Id.*

### 2.   Grande's Defenses And Litigation Conduct Were Objectively Unreasonable.

The objective reasonableness of a party's position—both factual and legal—is an important factor in deciding whether to award attorneys' fees. *See Kirtsaeng*, 579 U.S. at 207-208. To support an application for attorneys' fees, a prevailing party need not demonstrate "frivolity or bad faith," but only "that its opponent's copyright claims or defenses were objectively weak." *Virtual Chart Solutions I, Inc. v. Meredith*, No. 17-cv-546, 2020 WL 1902530, at *10 (E.D. Tex. Jan. 13, 2020) (internal quotations omitted). As part of this analysis, courts can also consider "a party's litigation misconduct, whatever the reasonableness of his claims or defenses." *Kirtsaeng*, 579 U.S. at 209.

In this case, Grande lacked any objectively reasonable explanation for or justification of its conduct for the time period critical to this case. Indeed, despite once having a policy to address repeat infringement on its network, Grande eliminated that policy and ignored Rightscorp's notices for the entire period at issue. Not only was Grande concededly unaware of any flaws in the Rightscorp system, but it rejected Rightscorp's offer to meet with Grande and explain its technology. After Plaintiffs filed this lawsuit, instead of taking accountability for its misconduct, Grande rolled the dice on a litigation strategy that consisted entirely of baseless post-hoc defenses never even contemplated during the time at issue. The Court, in line with its previous opinions and the jury's verdict, should find that these defenses were objectively unreasonable.

#### a.   Grande's Baseless DMCA Safe Harbor Defense

The most egregious example of Grande's pursuit of objectively unreasonable defenses is its assertion of a DMCA safe harbor defense. Tellingly, for the first six months of this litigation, Grande was unsure whether it would even pursue this defense.[6] However, Grande ultimately chose

---

[6] In response to Plaintiffs' motion to compel information relating to Grande's potential safe harbor defense, Grande argued that such discovery was "premature" because it had "not yet decided whether" it would assert that defense. Dkt. 60 at 2.

to assert the defense and opposed Plaintiffs' summary judgment motion on this issue. Dkt. 143 at 1. In doing so, Grande claimed it was "undisputed" that it had terminated some repeat infringing subscribers, but omitted the dispositive fact that all of those terminations occurred *after Plaintiffs initiated this action*. Dkt. 143 at 3-4.

Both Magistrate Judge Austin and this Court soundly rejected Grande's position. Indeed, in granting Plaintiffs summary judgment on this issue, this Court concluded that Grande did "the opposite" of adopting a repeat infringer policy and instead had engaged in a "complete abdication of [its] responsibilities." Dkt. 268 at 9, 14.[7] That holding confirms that Grande's invocation of the safe harbor defense was objectively unreasonable. In *BMG*, the court reached the same conclusion with regard to Cox's invocation of that defense. *See* 234 F. Supp. 3d at 767. Given that this Court determined that Grande "did even less than Cox," the same is true here. Dkt. 268 at 14.

Grande's baseless invocation of the safe harbor defense undeniably inflated Plaintiffs' attorneys' fees. Some examples include: motion practice, including summary judgment (involving two rounds of briefing), a motion *in limine*, and discovery motions; costly additional discovery geared toward disproving Grande's defense, including extensive written discovery and multiple Rule 30(b)(6) depositions on the core factual issues surrounding the defense (prompting motions to compel for lack of preparation of witnesses); and needless additional costs preparing and presenting expert testimony. *See* Ex. A, Decl. of Robert B. Gilmore ("Gilmore Decl.") ¶¶ 6, 12.

### b. Grande's Unsubstantiated Attacks On Rightscorp

The core of Grande's defense was to ignore its own misconduct entirely and instead to mount a post-hoc attack on Rightscorp's technology. But Grande's criticism of Rightscorp was

---

[7] At the pretrial hearing, the Court reiterated its rejection of Grande's safe harbor defense, stating that Grande's failure to qualify for the defense was "pretty clear" especially given that there have been multiple "federal judges who have looked at it who have said, no." Dkt. 463 at 15:1-8.

objectively unreasonable because it was not a concern that motivated any action Grande took or failed to take at the relevant time. Indeed, the jury heard evidence at trial demonstrating that Grande never engaged in any contemporaneous effort to investigate the capabilities of the Rightscorp system (despite Rightscorp's offer to meet with Grande and explain it), had no awareness of any factual basis that the Rightscorp system was not accurate, and could not point to a single instance in which it concluded that the alleged activity reflected in any Rightscorp notice did not occur. Dkt. 468 at 972:23-973:16; Dkt. 469 at 1017:7-10; Dkt. 471 at 1410:17-1411:23.

In another particularly improvident strategy, Grande moved for evidentiary sanctions, seeking to preclude Plaintiffs from relying on Rightscorp notices based on its assertion that Rightscorp destroyed data that was necessary to evaluate the reliability of its system. *See generally* Dkt. 247. The Court effectively rejected this argument in its summary judgment decision, concluding that Plaintiffs did not spoliate or direct Rightscorp to spoliate any evidence, and that Grande presented no evidence that Rightscorp acted in bad faith. Dkt. 268 at 29 n.4. For good measure, Magistrate Judge Austin then also denied Grande's sanctions motion. Dkt. 289. Nevertheless, Grande re-raised its twice-rejected argument at trial, but the jury's verdict confirmed that the evidence that Rightscorp collected and recorded was sufficient to establish infringement.

Grande's baseless attacks on Rightscorp affected nearly every aspect of the case and, consequently, inflated Plaintiffs' fees. *See* Gilmore Decl. ¶¶ 13-15.

### c.   Grande's Unreasonable Litigation Conduct

Throughout this litigation, Grande subjected Plaintiffs and the Court to a constant barrage of frivolous fights, including re-litigation of issues, unsupported arguments, sideshows, and discovery obstructionism. This conduct further supports granting Plaintiffs' application.

First, Grande repeatedly attempted to re-litigate issues that had already been resolved. Grande believed that simply by repeating arguments that had already been rejected, it would

somehow achieve a different result. This strategy of course proved false as *Grande lost all seven of its motions* seeking to relitigate issues that had already been decided.[8]

Second, Grande routinely advocated objectively unreasonable positions that had no support in the law. One of many examples was Grande's motion seeking to preclude Plaintiffs from filing a second motion for summary judgment. *See* Dkt. 174. Grande's motion "puzzled" the Court, and the Court further found Grande's focus on the issue to be "annoying," "silly," and something that "did not need to happen." Dkt. 198 at 1-2.

On another occasion, Grande filed a motion to strike the rebuttal report of Plaintiffs' expert, Barbara Frederiksen-Cross, claiming that the parties had not agreed to expert rebuttal reports. *See* Dkt. 176. But the Scheduling Order unambiguously memorialized that the parties *had* agreed to expert rebuttal reports, a fact that was conclusively demonstrated in emails between counsel. *See* Dkt. 66 ¶ 2. Accordingly, the Court found Grande's argument to be "meritless" and based on a "fallacy." Dkt. 279 at 2. The Court further ordered Grande to reimburse Plaintiffs for a portion of their attorneys' fees and costs associated with expert discovery, which Grande has not yet done, and which Plaintiffs now request. *See* Gilmore Decl. ¶ 18.[9]

---

[8] *See* Dkt. 74 (denying Grande's motion to dismiss); Dkt. 251 (granting Plaintiffs' summary judgment motion on Grande's DMCA safe harbor defense); Dkt. 252 (denying Grande's summary judgment motion on liability, damages, and sanctions); Dkt. 285 (denying Grande's motion to strike Barbara Frederiksen-Cross's second supplemental report); Dkt. 286 (denying motions to exclude expert testimony); Dkt. 290 (denying Grande's motion for evidentiary sanctions). Grande also unsuccessfully moved this Court to reconsider its ruling on three motions *in limine*. Dkt. 348.
[9] In particular, the Court ordered "Grande to reimburse Plaintiffs for attorneys' fees and expert costs" expended in connection with responding to the portions of Grande's expert's supplemental opinions that were not stricken. Dkt. 279 at 12. The $39,384.00 in related attorneys' fees are subsumed in the attorneys' fees sought by this motion; in addition, Plaintiffs request $191,618.00 in expert costs associated with the expert discovery in question, which is supported by the invoices found in Exhibit A-2 to the Gilmore Declaration.

Third, Grande requested relief that it had no interest in actually pursuing. This was best exemplified at trial when Grande demanded the right to depose Plaintiffs' expert, Ms. Frederiksen-Cross, on issues related to Audible Magic, which the Court allowed. *See* Dkt. 465 at 240:18-242:3. Grande's request caused Plaintiffs to prepare Ms. Frederiksen-Cross for deposition in the middle of trial, but Grande never deposed her. *See* Gilmore Decl. ¶ 22. Grande's request also required Ms. Frederiksen-Cross to travel back to Texas from the West Coast to testify at trial for a third time, yet Grande conducted no substantive cross-examination of her on this subject and even failed to have its expert on the subject listen to Ms. Frederiksen-Cross's testimony by phone (as the Court specifically permitted). *Id.*

Fourth, Grande engaged in a pattern of obstructionism involving both motion practice and document discovery:

- *Baseless Discovery Motions*. Grande engaged in numerous discovery fights that were objectively unreasonable. For example, Grande disingenuously changed its position on the relevance of discovery relating to other ISPs. At the start of discovery, Grande insisted that discovery related to other ISPs was irrelevant. *See* Gilmore Decl. ¶ 16. But after the Court granted Grande's request to preclude such discovery, Grande then moved to compel discovery from Plaintiffs related to other ISPs. *Id.* Magistrate Judge Austin denied Grande's request. *See* Dkt. 191, at 11.

- *Burdensome Document Discovery*. Refusing to review its own documents for relevance, Grande dumped more than 737,000 custodial documents (among other documents) on Plaintiffs, saddling Plaintiffs with the burden of the responsiveness review of documents that Grande produced. *See* Gilmore Decl. ¶ 17. The vast majority of these documents were completely non-responsive to Plaintiffs' requests for production and entirely irrelevant to the issues in this lawsuit. *Id.*

**3.   Grande's Intentional Flouting Of And Disdain For The Law Must Be Deterred.**

The need for deterrence provides an independent and powerful reason to award Plaintiffs their attorneys' fees. When a copyright defendant—like Grande—engages in long-standing willful infringement, that conduct must be deterred. Indeed, in *BMG*, the court reached that very conclusion, determining that Cox's "willful and large-scale practice of contributory infringement"

13

warranted an award of attorneys' fees so that Cox would be "incentivized to change its behavior." *BMG*, 234 F. Supp. 3d at 768. Courts in this district similarly find that "the need for deterrence is strong" when a copyright defendant engages in willful infringement for a "prolonged" period of time. *Adobe Sys. Inc. v. SKH Sys., Inc.*, No. 17-cv-018, 2017 WL 6611513, at *8 (W.D. Tex. Dec. 27, 2017) (granting fees in part because defendant's infringing business operations continued for at least two and a half years prior to the filing of the lawsuit).

As in the *BMG* case, an award of attorneys' fees is warranted to incentivize Grande to change its behavior. In this case, Grande's behavior of willfully blinding itself to copyright infringement on its network continued for nearly *seven years* and would have continued even longer had Plaintiffs not filed this lawsuit. Moreover, Grande made clear at trial that it would have continued to ignore its subscribers' infringing conduct but for being held to account for its conduct in cases like this one. Notably, in its opening statement at trial, Grande told the jury that they were in the "privileged position of deciding whether termination programs like the one Grande was forced to implement are necessary." Dkt. 464 at 95:4-6. That statement demonstrates that unless Grande is adequately deterred from contributorily infringing copyrights, it will continue to do so.

## B. Plaintiffs' Requested Attorneys' Fees Are Reasonable.

Because fee-shifting is appropriate, the Court must determine the amount of a reasonable attorneys' fee award by applying the lodestar method and then considering the lodestar amount in light of the *Johnson* factors. Plaintiffs submit that a reasonable fee award in this case is $5,192,627.19, which is less than the court awarded the plaintiffs in *BMG* and which would be less than the actual amount that Plaintiffs have paid their attorneys to litigate this case. Plaintiffs seek to recover for the following reasonable rates and fees paid to three separate law firms:

| Law Firm | Hourly Rate Range[10] | Hours | Fees |
|---|---|---|---|
| Stein Mitchell Beato & Missner, LLP ("Stein Mitchell") | $140 – $800 | 5,681.1 | $2,783,011.20 |
| Jenner & Block LLP ("Jenner") | $455 – $850 | 2,450.7 | $1,899,231.93 |
| Scott Douglass McConnico, LLP ("Scott Douglass") | $153 – $540 | 1,072.7 | $510,429.06 |
| **TOTAL** | **$140 – $850** | **9,204.5** | **$5,192,627.19** |

     1.   **Plaintiffs' Rates Are Reasonable And Comport With Prevailing Market Rates.**

In determining reasonable attorney rates, a court considers the attorney's regular rates as well as prevailing market rates. *See La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 328 (5th Cir. 1995).[11] The rates proposed by Plaintiffs are reasonable because they are the rates that Plaintiffs' counsel actually charged to Plaintiffs in this litigation. *See* Gilmore Decl. ¶ 24; Ex. B, Decl. of Andrew H. Bart ("Bart Decl.") ¶ 4; Ex. C, Decl. of Paige A. Amstutz ("Amstutz Decl.") ¶ 4. The Stein Mitchell rates listed above reflect a 20% discount from that law firm's standard rates, and the Jenner rates listed above reflect a 15% discount from that law firm's standard rates, which underscores the reasonableness of the rates Plaintiffs are seeking to collect. *See* Gilmore Decl. ¶ 24; Bart Decl. ¶ 4.

Further, these rates are within the reasonable range of market rates in the Austin Division of the Western District of Texas. The rates both fall within the scope of recent rates found to be appropriate in this district,[12] and are also supported by a declaration from an experienced local

---

[10] The rate ranges for Stein Mitchell and Scott Douglass include the rates for support staff.

[11] The prevailing rates are those that prevail within the relevant legal community for lawyers of similar skill, experience, and reputation. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). The relevant community for determining the market rate is the community where the district court sits. *See Tollett v. City of Kemah*, 285 F.3d 357, 369 (5th Cir. 2002).

[12] *See Heaven Medi Ltd., v. Rebecca Everts & Reset Nation, LLC*, No. 22-cv-00025, 2022 WL 17443627, at *6 (W.D. Tex. Dec. 6, 2022) (finding reasonable $860.50/hour for a partner with over 30 years' experience); *MidCap Media Fin., LLC v. Pathway Data, Inc.*, No. 15-cv-00060,

practitioner with knowledge of the local legal market. *See* Ex. D, Decl. of Louis T. Pirkey ("Pirkey Decl.").[13] In that declaration, Louis Pirkey, an Austin-based intellectual property attorney with over 45 years of experience, confirms that the rates charged by Plaintiffs' counsel are reasonable and consistent with rates prevailing in the market today. *See* Pirkey Decl. ¶¶ 2, 14, & 19.

### 2. Plaintiffs' Hours Are Reasonable And Undercount The Hours Actually Spent.

Plaintiffs seek to recover for 9,204.5 hours of attorney time, which reflect the hours that Plaintiffs' counsel reasonably billed to successfully litigate Plaintiffs' claims against Grande.[14] This figure is reasonable given the intense demands of this litigation (including the need to rebut Grande's many complex and unreasonable arguments), and because, as explained below, it significantly undercounts the hours Plaintiffs' counsel actually spent litigating this case.

It is beyond dispute that this case required an enormous amount of attorney time and resources. To prevail, Plaintiffs needed multiple attorneys to dedicate significant time over the course of more than five years: discovery included hundreds of written requests, millions of documents produced through 55 productions and 36 depositions; motion practice involved briefing 60 substantive motions, including three motions for summary judgment; and trial featured testimony from 25 witnesses over the course of ten trial days. Plaintiffs had to rebut Grande's technical challenges to Rightscorp's computerized method of identifying infringement, develop the factual record reflecting Grande's contribution to infringement by tens of thousands of its customers, and demonstrate chain-of-title copyright ownership for over 1,400 works in suit.

---

2018 WL 7890668, at *3 (W.D. Tex. Dec. 19, 2018) (approving hourly rates of $755/hour for partner in Austin area).

[13] Providing a declaration from a skilled local litigator provides sufficient evidence of the prevailing market rate. *See, e.g.*, *Crane v. Rave Rest. Grp., Inc.*, No. 20-cv-13, 2022 WL 403291, at *5 (E.D. Tex. Feb. 9, 2022); *Arocha v. Floresville Elec. Light & Power Sys.*, No. 06-cv-847, 2006 WL 2987723, at *2 (W.D. Tex. Oct. 17, 2006).

[14] In accordance with Local Rule CV-54(b)(2), the hours expended are reflected in the time records attached to the declarations supporting this motion for fees.

Further demonstrating the reasonableness of Plaintiffs' request, Plaintiffs' counsel actually spent materially more time litigating this case than Plaintiffs seek to recover. As an initial matter, Plaintiffs are not requesting fees for 2,867.9 hours that were expended by Stein Mitchell, which were subject to a fees cap provision in its retainer agreement with Plaintiffs. Gilmore Decl. ¶ 41. Next, after carefully reviewing their billing entries, Plaintiffs eliminated an additional 656.9 hours from their lodestar calculation. Of those, Plaintiffs do not seek to recover for 610.3 hours (separate from the 2,867.9 hours already eliminated) of time spent by Stein Mitchell and Scott Douglass that were attributable to (1) time expended by attorneys and support staff who did not consistently work on this case; (2) prosecuting claims against Grande's parent company, Patriot Media Consulting, LLC, which were dismissed; (3) work spent on Plaintiffs' unsuccessful motion for leave to file an amended complaint; (4) attendance at legal proceedings in cases similar to this one; and (5) certain travel time. Gilmore Decl. ¶¶ 42-48; Amstutz Decl. ¶¶ 14-17. To account for the dismissal of Plaintiffs' vicarious liability claim, Plaintiffs also reduced their hours through the dismissal of that claim by 10% to approximate for work done solely for that claim. Gilmore Decl. ¶ 45; Amstutz Decl. ¶ 16. The remaining 46.6 hours that Plaintiffs do not seek to recover were spent by Jenner to learn the case after the firm was retained. Bart Decl. ¶ 16.

### 3. The *Johnson* Factors Do Not Support A Downward Departure From The Lodestar.

Multiplying the reasonable rates of Plaintiffs' counsel by their reasonable hours spent yields a lodestar amount of $5,192,627.19. That figure "is presumptively reasonable and should be modified only in exceptional cases." *Friedheim v. Hoeber*, No. 20-cv-0335, 2022 WL 3699432, at *3 (N.D. Tex. May 9, 2022) (quoting *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993)).

Plaintiffs do not seek an upward modification of their lodestar amount, and no further downward adjustments, beyond those described above, are warranted. While the *Johnson* factors

demonstrate that any modification should result in an *increase* of Plaintiffs' lodestar amount to adequately deter Grande, at a minimum those factors confirm that Plaintiffs' lodestar amount is reasonable. Most importantly, Plaintiffs' lodestar amount is substantially lower than the attorneys' fee award granted to the plaintiff in *BMG. See Johnson*, 488 F.2d at 717-719 (considering "awards in similar cases" as a factor in determining fees). *BMG* involved substantially similar claims (secondary copyright infringement by an ISP, based on Rightscorp infringement evidence); approximately the same number of works in suit eligible for statutory damages (1,397 versus 1,403); and concluded in a jury verdict of willful infringement after a ten-day trial. Even though the plaintiffs in *BMG* obtained a lower jury verdict of $25 million, the court awarded BMG $8,383,468.06 in attorneys' fees.[15] Thus, Plaintiffs seek less than BMG obtained in attorneys' fees despite obtaining nearly twice the damages. *See Farrar v. Hobby*, 506 U.S. 103 (1992) (concluding that "the results obtained" is the most critical *Johnson* factor).

In addition to analyzing "the results obtained," "awards in similar cases," and the *Johnson* factors already reflected in the lodestar analysis,[16] the only remaining applicable[17] *Johnson* factor is "the nature and length of the professional relationship with the client." 488 F.2d at 717-719.

---

[15] While BMG sought $10,479,335.08 in fees, the court applied a 20% discount for improper billing entries and a reduced degree of success. *See* 234 F.Supp.3d at 785.

[16] Four of the *Johnson* factors are already presumably reflected in the lodestar amount: the novelty and complexity of the issues (factor 2); the special skill and experience of counsel and the quality of representation (factors 3 and 9); and the results obtained from the litigation (factor 8). *See Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir.1993). In addition, time limitations (factor 7) and the preclusion of other employment by the attorney (factor 4) generally are subsumed in the lodestar calculation.

[17] The sixth *Johnson* factor, "whether the fee is fixed or contingent," is inapplicable when addressing fee-shifting provisions of statutes. *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 757 (S.D. Tex. 2008) (citing cases). Also, the tenth factor, the "undesirability" of the case is not applicable here. *See, e.g., EMI Apr. Music Inc. v. Rodriguez*, 691 F. Supp. 2d 632, 638 (M.D.N.C. 2010) (awarding fees in willful infringement case, finding that the "[undesirability] factor does not apply in this case."); *Broad. Music, Inc. v. NLC, Inc.*, No. 07-cv-2632, 2009 WL 10710626, at *3 (D.S.C. July 22, 2009) (same).

This factor also weighs in favor of awarding Plaintiffs' full lodestar amount because counsels' relationship with Plaintiffs extends beyond this litigation. Since this case was filed, Plaintiffs retained counsel from Jenner and Stein Mitchell to litigate a case versus Grande's sibling company, RCN. *See UMG Recordings, Inc. et al. v. RCN Telecom Services, LLC*, No. 19-17272 (D.N.J.). Gilmore Decl. ¶ 26; Bart Decl. ¶ 2. Plaintiffs also have a long relationship with Jenner and have retained the firm, for example, to handle an upcoming trial in another copyright infringement lawsuit. *See Atlantic Recording Corp. et al. v. Spinrilla, LLC et al.*, No. 17-00431 (N.D. Ga.); Bart Decl. ¶ 8. Such an "increasing relationship" between counsel and a party "evidences the [party's] satisfaction with Lead Counsel's work and supports the reasonableness of the fee request." *In re Enron Corp.*, 586 F. Supp. 2d at 797–98.

## II.  PLAINTIFFS ARE ENTITLED TO PRE-JUDGMENT INTEREST.

Plaintiffs also ask the Court to exercise its discretion by awarding pre-judgment interest. *Boparai*, 2021 WL 1148957, at *19. To determine whether such interest is available, courts in the Fifth Circuit consider "(1) whether the federal statute creating the cause of action precludes an award of pre-judgment interest; and (2) if not, whether an award of pre-judgment interest furthers the congressional policies of the federal act." *Id.* at *18 (citing *Carpenters Dist. Council v. Dillard Dep't Stores, Inc.*, 15 F.3d 1275, 1288 (5th Cir. 1994)).

The first step is satisfied because the Copyright Act does not preclude pre-judgment interest. *Id.* (citing *Powell v. Penhollow*, 260 F. App'x 683, 691 (5th Cir. 2007)). With regard to the second step, the court in *Boparai* also held that pre-judgment interest is consistent with the Copyright Act's purpose to "deter copyright infringement." *Id.* (citing *Williams v. Trader Publ'g Co.*, 218 F.3d 481, 488 (5th Cir. 2000)); *see also EMI Apr. Music Inc. v. Jet Rumeurs, Inc.*, 632 F. Supp. 2d 619, 625 (N.D. Tex. 2008). Consistent with *Boparai*, courts from around the country have awarded pre-judgment interest when defendants are found liable for willful copyright

infringement.[18] Such an award is particularly important when the defendant is unrepentant as Grande manifestly was here: as noted above, Grande told the jury the company would resume allowing unlimited infringement if it prevailed at trial.

Accordingly, Plaintiffs request that the Court impose a pre-judgment interest rate of five percent (5%) per annum, to be calculated as simple interest,[19] accruing from April 21, 2017 (the date Plaintiffs filed their Complaint) to February 24, 2020 (the day before the trial date previously set in this action was cancelled) and from October 12, 2022 (the first day of trial) until January 29, 2023 (the day before entry of final judgment), totaling $7,367,278.24. This calculation will appropriately compensate Plaintiffs without creating a windfall due to the unavoidable delays in bringing this case to trial caused by the coronavirus pandemic.

## CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court award attorneys' fees in the amount of $5,192,627.19; pre-judgment interest in the amount of $7,367,278.24; and $191,618.00 in expert costs per the Court's prior Order related to supplemental expert reports (Dkt. 279).

Dated: February 20, 2023                    Respectfully submitted,

                                            By:      _/s/ Andrew H. Bart_____
                                            Andrew H. Bart (admitted *pro hac vice*)
                                            Jacob L. Tracer (admitted *pro hac vice*)

---

[18] *See, e.g., EMI Apr. Music Inc. v. 4MM Games, LLC*, No. 12-cv-2080, 2014 WL 325933 (S.D.N.Y. Jan. 13, 2014), *report and recommendation adopted*, 2014 WL 1383468 (S.D.N.Y. Apr. 7, 2014); *Samsonite IP Holdings S.ar.l. v. Shenzhen Liangyiyou E-Com. Co.*, No. 19C-cv-02564, 2021 WL 9036273 (S.D.N.Y. Apr. 27, 2021); *Robbins Rsch. Int'l Inc. v. Doe 1*, No. 21-cv-06065, 2022 WL 2032314 (C.D. Cal. May 23, 2022); *Cengage Learning, Inc. v. Shi*, No. 13-cv-7772, 2017 WL 1063463 (S.D.N.Y. Mar. 21, 2017); *John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc.*, No. 12-cv-4194, 2013 WL 1828671 (N.D. Tex. May 1, 2013); *Tattoo Art, Inc. v. TAT Int'l, LLC*, 794 F. Supp. 2d 634 (E.D. Va. 2011), *aff'd*, 498 F. App'x 341 (4th Cir. 2012).

[19] District courts in Texas regularly award pre-judgment interest at this rate, which derives from the pre-judgment interest rate imposed by Texas state courts. *See Boparai*, 2021 WL 1148957, at *19 (imposing 5% rate in copyright litigation and citing cases).

**Jenner & Block**
1155 Avenue of the Americas
New York, NY 10036
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
abart@jenner.com
jtracer@jenner.com

Robert B. Gilmore (admitted *pro hac vice*)
Philip J. O'Beirne (admitted *pro hac vice*)
Michael A. Petrino (admitted *pro hac vice*)
Kevin J. Attridge (admitted *pro hac vice*)
**Stein Mitchell Beato & Missner LLP**
901 15th Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
rgilmore@steinmitchell.com
pobeirne@steinmitchell.com
mpetrino@steinmitchell.com
kattridge@steinmitchell.com

Daniel C. Bitting (State Bar No. 02362480)
Paige A. Amstutz (State Bar No. 00796136)
**Scott Douglass & McConnico LLP**
303 Colorado Street, Suite 2400
Austin, TX 78701
Telephone: (512) 495-6300
Facsimile: (512) 495-6399
dbitting@scottdoug.com
pamstutz@scottdoug.com

***Attorneys for Plaintiffs***

21

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on February 20, 2023 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system pursuant to Local Rule CV-5(b)(1).

*/s/ Paige A. Amstutz*
Paige A. Amstutz