**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| UMG RECORDINGS, INC., et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) No. 1:17-cv-00365-DAE |
| | ) |
| GRANDE COMMUNICATIONS NETWORKS LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT GRANDE COMMUNICATIONS NETWORKS LLC'S RENEWED**
**MOTION FOR JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL**

Pursuant to Fed. R. Civ. P. 50(b) and 59(a), Defendant Grande Communications Networks LLC ("Grande") renews its motion for judgment as a matter of law ("JMOL") and, in the alternative, requests a new trial.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 50, a court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). If a court denies a Rule 50(a) motion made during trial (as occurred here), "[n]o later than 28 days after the entry of judgment . . . the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59." Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

"A motion for judgment as a matter of law in this context is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Correct RX Pharmacy Servs., Inc. v. Cornerstone Automation Sys., L.L.C.*, 945 F.3d 423, 428 (5th Cir. 2019). Evidence is legally insufficient "when the facts and inferences point so strongly and overwhelmingly in the movant's favor that jurors could not have reasonably reached a contrary verdict." *Ill. Tool Works, Inc. v. Rust-Oleum Corp.*, 955 F.3d 512, 514 (5th Cir. 2020) (cleaned up).

The standard for granting a new trial under Rule 59(a) is different. "District courts are 'free to weigh the evidence' when exercising their considerable discretion over whether to order a new trial." *Indel Food Prods. Inc. v. Dodson Int'l Parts Inc.*, No. 3:20-cv-00098, 2022 WL 18585884, at *5 (W.D. Tex. Sept. 21, 2022) (citing *Robin v. Wilson Bros. Drilling*, 719 F.2d 96,

98 (5th Cir. 1983)). "A new trial may be granted if the trial court finds that the verdict is against the weight of evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991) (cleaned up); *see also Cham v. Station Operators, Inc.*, 832 F. Supp. 2d 131, 139 (D.R.I. 2011), *aff'd*, 685 F.3d 87 (1st Cir. 2012) (granting motion for new trial because irrelevant evidence unfairly prejudiced defendant).

## ARGUMENT

### I. THE COURT SHOULD GRANT JMOL ON PLAINTIFFS' CONTRIBUTORY INFRINGEMENT CLAIM

#### A. There Was Insufficient Evidence of Direct Infringement.

To prove contributory infringement, Plaintiffs were obligated to prove underlying acts of direct copyright infringement—specifically, unauthorized distribution of Plaintiffs' works to third parties—for which Grande could be held liable. *See* Jury Instructions at 16 (ECF No. 449); SJ Order at 20 (ECF No. 268). Plaintiffs presented legally insufficient evidence of unauthorized distribution of the 1,403 sound recordings for which the jury awarded statutory damages.

Plaintiffs did not introduce evidence of the 1,403 sound recordings they contend were infringed—*i.e.*, copies of the original copyrighted sound recordings. Without this evidence to compare against alleged copies (*e.g.*, files allegedly downloaded from BitTorrent users), Plaintiffs cannot prove direct copyright infringement as a matter of law. *See, e.g.*, *King v. Ames*, 179 F.3d 370, 376 (5th Cir. 1999) ("[C]opying is an issue to be determined by comparison of works, not credibility. King's failure to adduce evidence for such a comparison vitiates her claim.") (internal citations omitted). Respectfully, the Court erred when it determined that Plaintiffs could rely solely on evidence from Recording Industry Association of America

2

("RIAA") witness Jeremy Landis and the outputs of a third-party software named Audible Magic to meet their burden of showing that songs allegedly shared by Grande's subscribers were copies of Plaintiffs' works.  *See id.*; Grande's Reply ISO MSJ at 3-6 (ECF No. 201); *see also* Grande's 4th MIL (ECF No. 311).

Additionally, Plaintiffs offered insufficient evidence of distribution at trial.  First, the evidence failed to show that any of the accused direct infringers were actually Grande subscribers, as opposed to unauthorized users of Grande's network, which was the express basis of Plaintiffs' claim.  Compl., ¶¶ 62, 64–65 (ECF No. 1).  Second, Plaintiffs' evidence of distribution from Rightscorp showed, at most, that users of Grande's network had offered to upload small segments of sound recordings to unidentified third parties, and that Rightscorp had downloaded files from some—but not nearly all—of those users.  Even if users of Grande's network passively allowed other persons to download files (which is how BitTorrent functions), that does not violate the distribution right.  *Atl. Recording Corp. v. Howell*, 554 F. Supp. 2d 976, 986 (D. Ariz. 2008).  Even if it does, the evidence must show an actual upload, not a mere offer to upload, because there is no attempt liability under the Copyright Act.  *See, e.g.*, *id.* at 981, 984.  At trial, it was undisputed that Rightscorp cannot detect—and therefore its notices did not evidence—actual file transfers.  Third, there was legally insufficient evidence that the music files presented as copies of Plaintiffs' sound recordings were in fact downloaded from Grande subscribers or other users of Grande's network.  At trial, there was no competent, properly admissible evidence of the origin of those music files or when they were obtained.

For these reasons, the Court should grant JMOL in favor of Grande on Plaintiffs' contributory infringement claim or, in the alternative, grant a new trial.

B.   **There Was Insufficient Evidence that Grande Knew of or Was Willfully Blind to Specific Instances of Direct Infringement.**

Under the Court's jury instruction regarding contributory infringement, the claim requires proof that the defendant knew of or was willfully blind to specific instances of direct copyright infringement. Jury Instructions at 17 (ECF No. 449).

At trial, the only evidence of actual knowledge was the collection of emails Rightscorp sent to Grande accusing certain Grande IP addresses of being the source of infringing activity. *See* PX1, PX6. This was legally insufficient because Plaintiffs presented no evidence that Grande could actually verify the accuracy of Rightscorp's accusations. In fact, the evidence conclusively established that Grande had no way of knowing whether Rightscorp's accusations were true. *See, e.g.*, Trial Tr. (Day 8), 1395:2-1399:9, 1402:17-22, 1407:10-12; Trial Tr. (Day 10), 1796:19-22. At trial, it was undisputed that Rightscorp's emails did not include, attach, or reference any actual evidence that an act of copyright infringement had occurred. *See* PX1, PX6. There was also no evidence that Grande had actual knowledge of any files Rightscorp downloaded from BitTorrent users on Grande's network. Rightscorp's emails provided Grande with accusations—at most, *circumstantial* evidence of unauthorized file sharing—which is insufficient as a matter of law to confer actual knowledge of specific instances of direct copyright infringement.[1]  *See, e.g.*, *Angell v. Allergan Sales, LLC*, No. 3:18-cv-282, 2019 WL 3958262, at *15 (M.D. Fla. Aug. 22, 2019) (information putting the defendant "on notice that some

---

[1] While Plaintiffs did present evidence that Rightscop personnel allegedly downloaded at least one copy of each of the songs at issue in the case from a Grande subscriber, Rightscorp never put Grande on notice of those downloads. Accordingly, that evidence—while potentially relevant to the direct infringement element of the claim—cannot be used to establish that Grande had *actual knowledge* of *specific instances* of infringement, a wholly separate element that Plaintiffs needed to prove and failed to prove.

4

impropriety may have been taking place . . . do[es] not create a plausible inference of actual knowledge" of specific fraudulent conduct). Furthermore, as discussed below, the Rightscorp evidence was tainted by the Court's erroneous admission of evidence regarding the jury verdict in *BMG v. Cox* and the exclusion of evidence regarding the ultimate outcome in *BMG v. Cox*— a case which also involved evidence provided by Rightscorp.

Additionally, Rightscorp's emails could not confer actual knowledge of the infringement of Plaintiffs' copyrights because none of the notices (1) identified a registered copyright or (2) identified a Plaintiff as the owner of the copyright. Indeed, it was undisputed that all the notices were sent on behalf of other third parties—not Plaintiffs. *See generally* PX1, PX6. As a matter of law, an email that identifies a song and contains a conclusory allegation of copyright infringement regarding a third party's copyright, without any information tying the song to a registered copyright or any Plaintiff, is insufficient to prove that Grande had actual knowledge of infringement of a Plaintiff's copyright.

The evidence at trial was also legally insufficient to prove that Grande was willfully blind to specific instances of direct copyright infringement. As defined by the Court, willful blindness "means that someone believes there is a high probability of a fact but deliberately takes steps to avoid learning it." Jury Instructions at 17 (ECF No. 449). The evidence failed on both points. First, there was no evidence from which a jury could reasonably conclude that any relevant Grande employee or representative subjectively believed that Rightscorp's complaints were highly likely to be accurate. In fact, while Grande *did* notify subscribers of other senders' accusations, Grande did *not* notify subscribers of Rightscorp's complaints or terminate subscriber accounts based on Rightscorp's complaints. *See, e.g.*, Trial Tr. (Day 8), 1405:7-17. Second, there was no evidence from which a jury could reasonably conclude that Grande took

5

deliberate steps to avoid learning about whether Rightscorp's complaints were accurate. As mentioned, there was no credible evidence that Grande could have done anything to verify whether individual Rightscorp accusations were true or false. Trial Tr. (Day 8), 1395:2-1399:9, 1402:17-22, 1407:10-12. Put simply, the record evidence was that Grande had no way to "unblind" itself. As a result, Grande was not—and could not be—willfully blind.

Accordingly, the Court should grant JMOL in favor of Grande on Plaintiffs' contributory infringement claim or, in the alternative, grant a new trial.

### C. There Was Insufficient Evidence that Grande Induced, Caused, or Materially Contributed to Direct Infringement.

As instructed by the Court, to prove contributory liability, Plaintiffs had to prove that Grande "induced, caused, or materially contributed to the infringing activity." Jury Instructions at 17 (ECF No. 449). The Court further instructed the jury that "[t]his standard is met when a defendant can take basic measures to prevent further damages to copyrighted works, yet intentionally continues to provide access to infringing sound recordings." *See id.*

Plaintiffs did not attempt to prove that Grande induced or caused any instance of direct infringement. There was no evidence of any "clear expression or other affirmative steps taken to foster infringement." *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005). As detailed in Grande's summary judgment briefing, objections to jury instructions, and elsewhere, Grande respectfully submits that this is the only potentially applicable standard for contributory liability. *See id.* at 942 (Ginsburg, J., concurring) ("Liability under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) or on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially

6

significant' noninfringing uses.") (citations omitted). Because the evidence at trial failed to satisfy this standard, the Court should grant JMOL in favor of Grande.

Even if the Court's instruction was a correct statement of the law (which Grande disputes), the Court should still grant JMOL. There was no evidence that Grande "materially" contributed to any infringement. Evidence that Grande could stop internet service to an entire household is not legally sufficient evidence that Grande had at its disposal "basic measures to prevent further damages to copyrighted works." Jury Instructions at 17 (ECF No. 449). Blind, indiscriminate termination of subscribers based on mere allegations sent by a third party on the internet—without any way for Grande to verify or validate those allegations—is not a reasonable "basic measure" under the law.

Furthermore, there was no evidence that Grande "intentionally continue[d] to provide access to infringing works." *Id.* The evidence showed that Grande provides internet access generally; there was no evidence that Grande ever provided or regulated access to specific content, or that it even had the ability to do so. There was also no evidence that Grande was even aware of how, specifically, users of its network could use BitTorrent to obtain "access" to the unauthorized copies of sound recordings at issue in this case. Moreover, the evidence at trial showed that Grande affirmatively took steps to *discourage* infringement, such as sending letters to subscribers accused of infringement and counseling subscribers on how to secure their WiFi connections. *See, e.g.,* Trial Tr. (Day 9), 1605:13-19.

The evidence of Grande inducing or materially contributing to infringement was also legally insufficient because of errors in the admission of evidence. Respectfully, the Court erred in (1) admitting evidence that a jury found Cox Communications contributorily liable for copyright infringement based on evidence provided by Rightscorp (and especially without permitting Grande

7

to show that the jury verdict was reversed on appeal), (2) admitting evidence and argument regarding the Digital Millennium Copyright Act ("DMCA") safe harbor for conduit ISPs, 17 U.S.C. § 512(a), including evidence that Grande failed to qualify for the safe harbor and that Grande began terminating accused subscribers after the filing of the lawsuit, and (3) admitting evidence regarding copyright complaints and alleged instances of copyright infringement not at issue in this case. This evidence should have been excluded as irrelevant and unfairly prejudicial. *See, e.g., Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 239 (5th Cir. 2001) (vacating jury's award of damages because it was based on irrelevant evidence); *see also Cham*, 685 F.3d at 97 (affirming district court's decision to grant motion for new trial because "the jury had been exposed to much evidence that was irrelevant, [which] could be both prejudicial and confusing").

Moreover, evidence regarding the DMCA safe harbor should have been excluded pursuant to 17 U.S.C. § 512(l), which provides that the failure to qualify for the safe harbor "shall not bear adversely upon the consideration of a defense by the service provider that the service provider's conduct is not infringing under this title or any other defense." Before trial, to convince the Court to admit DMCA-related evidence, Plaintiffs' counsel "categorically assure[d]" the Court that they would "never at any point in this case argue that because [Grande] didn't qualify for the safe harbor, they are liable and we have proven our case." Trial Tr. (Oct. 1, 2022 Pretrial Conference), 14:15-18 (ECF No. 463). Then, in closing, Plaintiffs' counsel did exactly that:

> And the DMCA gave them that option [to avoid a lawsuit]. It said if you take that simple step of terminating repeat infringers, and one or two other minor[] points, you can get on safe harbor. You don't have to do anything further. Okay? But they chose not to do it. ***And so now they are responsible because they were willfully blind.***

Trial Tr. (Day 12), 2144:17–23 (emphasis added). Throughout trial, Plaintiffs repeatedly used evidence regarding the DMCA to argue or imply that Grande was contributorily liable because it did not institute a sufficient DMCA safe harbor policy. *See, e.g.*, Trial Tr. (Day 8), 1331:8-1332:7

8

(record company executive testifying that ISPs "negotiated and lobbied for a safe harbor protection" so they should be expected to act in response to notices "to avoid liability"). This DMCA-related evidence and argument could not properly support any element of Plaintiffs' contributory infringement claim, as the Court recognized, and it should therefore have been excluded from trial.

The Court should therefore grant JMOL in favor of Grande due to the absence of legally sufficient evidence that Grande induced, caused, or materially contributed to any direct copyright infringement. In the alternative, the Court should grant a new trial.

**D.     There Was Insufficient Evidence that Any Contributory Infringement Was Willful.**

The Court's willfulness instruction required Plaintiffs to prove that "Grande had knowledge that its subscribers' actions constituted infringement of Plaintiffs' copyrights or that Grande acted with reckless disregard for or willful blindness to the Plaintiffs' rights." Jury Instructions at 23 (ECF No. 449).

Grande objected to this instruction at trial and maintains that Plaintiffs did not prove willful copyright infringement under the correct standard. Under the Court's instruction, the standard for willfulness (and the resulting increase in the statutory damages range) is the same as the standard for proving the knowledge element of contributory infringement—both are satisfied by proving that Grande either knew of or was willfully blind to its subscribers' infringement. Moreover, by introducing recklessness in a contributory infringement case, the Court lowered the bar even further—recklessness would not suffice to prove contributory liability, but it would suffice to prove willfulness. Respectfully, this cannot be an accurate statement of the law.

9

The case law is clear that the first prong of the willfulness standard (as distinguished from recklessness) requires proof that the defendant knew *its own conduct* constituted copyright infringement, which is a standard Plaintiffs did not satisfy. *See, e.g.*, SJ Order at 43 (ECF No. 268) ("Willfulness thus requires a showing that Grande knew its conduct constituted contributory infringement. . . ."); *Graper v. Mid-Continent Cas. Co.*, 756 F.3d 388, 395 (5th Cir. 2014) ("[W]hen willfulness is a statutory condition of civil liability, it covers . . . knowing violations of a standard . . . .") (cleaned up); *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 143 (2d Cir. 2010) ("A copyright holder seeking to prove that a copier's infringement was willful must show that the infringer had knowledge that its conduct represented infringement . . . .") (cleaned up); *Bridgeport Music, Inc. v. UMG Recordings, Inc.*, 585 F.3d 267, 278 (6th Cir. 2009) (approving jury instruction that "infringement is willful when a defendant . . . knew [its] actions may infringe the copyright"); *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511-12 (7th Cir. 1994) ("[O]ur caselaw establishes that a finding of willfulness is justified if the infringer knows that its conduct is an infringement . . . .") (cleaned up); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 851 (11th Cir. 1990) ("Willfully, in the context of section 504(c)(2), means that the defendant knows his actions constitute an infringement . . . ."). There was no evidence at trial from which a jury could reasonably conclude that Grande knew, at the time of any alleged infringing conduct or at any other relevant time, that its own conduct constituted contributory copyright infringement.

Even if the jury was properly instructed, the Court should still grant JMOL. First, for the reasons discussed above, there was legally insufficient evidence that Grande knew of, or was willfully blind to or recklessly disregarded, direct infringement. Second, the instruction required proof that Grande knew of, or was willfully blind to or recklessly disregarded, infringement of

10

"*Plaintiffs' copyrights.*"  Jury Instructions at 23 (ECF No. 449).  There was no evidence at trial that Grande had any knowledge, before this lawsuit was filed, that Plaintiffs' copyrights were in any way implicated by Rightscorp's copyright complaints.  It was undisputed that all of the notices were sent on behalf of other parties, and that none of them identified a Plaintiff or related entity as the copyright owner.  *See* PX1, PX6.

The evidence at trial was legally insufficient to prove that Grande willfully infringed the Plaintiffs' copyrights in the 1,403 sound recordings at issue.  Accordingly, the Court should grant JMOL in Grande's favor and order a new trial on the issue of statutory damages.

### E. There Was Insufficient Evidence that Each of the 1,403 Sound Recordings Was Eligible for a Separate Award of Statutory Damages.

At trial, the only form of damages Plaintiffs requested was statutory damages.  A copyright owner is only entitled to one "award of statutory damages for all infringements involved in the action, with respect to any one work."  17 U.S.C. § 504(c)(1).  For purposes of statutory damages, "all the parts of a compilation or derivative work constitute one work."  *Id.*  Many of the 1,403 sound recordings are parts of overlapping compilations because they were registered as parts of albums and/or because they were registered as "works made for hire."  *See, e.g.*, PX22 at SME_00000106-SME_00000109; *see also, e.g.*, *Bryant v. Media Rights Prods. Inc.*, 603 F.3d 135, 140–41 (2d Cir. 2010) ("An album falls within the Act's expansive definition of compilation. . . . . Based on a plain reading of the statute, therefore, infringement of an album should result in only one statutory damage award."); 17 U.S.C. § 101 (providing multiple definitions of "work made for hire," the only one of which arguably applicable here is "a work specially ordered or commissioned for use . . . as a compilation").

11

Additionally, separate from the requirements of section 504(c), Plaintiffs bore the burden of proving that each of the 1,403 sound recordings was eligible for an award of statutory damages under 17 U.S.C. § 412, which requires consideration of the dates of (1) the infringement, (2) the first publication of the work, and (3) the effective registration of the work. *See, e.g.*, *Didio v. Jones*, No. 2:13-cv-04949-PSG-AGR, 2017 WL 11636167, at *1 (C.D. Cal. Apr. 17, 2017) ("Plaintiffs therefore carry the burden of demonstrating that they complied with § 412's requirements.") (citing *Por Los Rios, Inc. v. Lions Gate Entm't., Inc.*, No. 2:13-cv-7640-CBM-PLA, 2014 WL 12605374, at *3 (C.D. Cal. May 21, 2014)); *Ushodaya Enters., Ltd. v. V.R.S. Int'l, Inc.*, 64 F. Supp. 2d 352, 353 (S.D.N.Y. 1999), *aff'd*, 2 F. App'x 128 (2d Cir. 2001) ("Plaintiff bears the burden of demonstrating that it complies with the prerequisite of section 412.") (citing *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 825 F. Supp. 361, 364 (D. Mass. 1993)).

Plaintiffs did not offer evidence sufficient to carry this burden. Thus, respectfully, the Court erred in not submitting these issues to the jury. There was legally insufficient evidence introduced at trial to prove that each of the 1,403 sound recordings at issue was entitled to a separate award of statutory damages under section 504(c) and eligible for statutory damages under section 412.

Grande also respectfully submits that the Court erred in concluding that Plaintiffs could satisfy section 504(c)'s "one award per work" rule based on evidence that the songs in suit had "independent economic value" because Plaintiffs sold them separately (for example, through iTunes). First, any legal gloss permitting multiple recoveries of statutory damages for parts of a single compilation is not supported by Fifth Circuit authority and is contrary to the plain language of sections 101 and 504. The Fifth Circuit has expressly cited *Bryant*'s holding that songs collected in an album are part of a single compilation, even if they have been separately

12

copyrighted. *Cullum v. Diamond A Hunting, Inc.*, 484 F. App'x 1000, 1002 n.6 (5th Cir. 2012). Second, Plaintiffs only offered vague testimony that they *offered* to sell the 1,403 sound recordings separately—there was no evidence that all of the songs **were actually sold** separately. Third, there was no evidence that each of the songs was sold separately (or otherwise had independent economic value) *at the time of* any act of infringement. *See EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79, 101 (2d Cir. 2016) (affirming per-song damages because "there was evidence at trial that all the songs in question were made available as singles on the date of infringement").

No factfinder has considered these issues and determined from the record evidence which of the 1,403 sound recordings at issue are entitled to and eligible for a separate award of statutory damages under sections 504(c) and 412. Accordingly, the Court should order a new trial on the issue of statutory damages.

### F. There Was Insufficient Evidence that Plaintiffs Own Each of the 1,403 Sound Recordings in Suit.

There is no order in this case under Rule 56 granting summary judgment that Plaintiffs own the copyrights to the 1,403 sound recordings for which statutory damages were awarded. The Court expressly "**DENIED**" Plaintiffs' Motion for Summary Judgment as to Liability in all respects. SJ Order at 53 (ECF No. 268). But then, in deciding the parties' motions *in limine*, the Court stated that it had "already ruled on ownership" and that "[o]wnership is not a remaining issue for trial." MIL Order at 21 (ECF No. 347). As noted previously, Grande respectfully submits that this was error.

At trial, there was no evidence from which a jury could reasonably conclude that Plaintiffs own the copyrights to the 1,403 sound recordings at issue. Plaintiffs did not seek, and

13

the Court did not grant, JMOL under Rule 50(a) on this issue. Accordingly, the Court should grant JMOL in favor of Grande on Plaintiffs' contributory infringement claim or, in the alternative, the Court should order a new trial.

## II. IF THE COURT DOES NOT GRANT JMOL, THE COURT SHOULD ORDER A NEW TRIAL

For any or all of the reasons set forth above, if the Court declines to enter JMOL in favor of Grande, the Court should instead grant a new trial pursuant to Fed. R. Civ. P. 59(a). *See Seidman*, 923 F.2d at 1140 ("A new trial may be granted if the trial court finds that the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed.") (cleaned up); *see also Cham*, 832 F. Supp. 2d at 139 (granting motion for new trial after irrelevant evidence unfairly prejudiced defendant).

Additionally, Grande respectfully submits that there were prejudicial errors in the admission and exclusion of evidence, resulting in an unfair trial, a verdict against the weight of the evidence, and excessive damages, such as: (1) admitting evidence regarding the jury verdict in favor of the plaintiff in *BMG v. Cox*, including the fact that the case involved evidence supplied by Rightscorp, (2) after admitting evidence of the *BMG v. Cox* verdict, excluding evidence that it was reversed on appeal, (3) admitting evidence and argument regarding the DMCA safe harbor, including evidence that Grande failed to qualify for the safe harbor and that Grande began terminating the accounts of accused subscribers after the filing of the lawsuit (the latter of which Plaintiffs offered to show that Grande believed the copyright complaints it received were reliable), (4) admitting evidence regarding copyright complaints and alleged instances of copyright infringement not at issue in this case, (5) admitting evidence regarding the Audible Magic software and outputs from the software for which no proper foundation was laid, (6) admitting expert

14

testimony from Barbara Frederiksen-Cross regarding the reliability of the Audible Magic software that was not properly disclosed in discovery, (7) admitting evidence regarding Grande's total profits, revenues, and overall value, as well evidence regarding the collective size and revenues of Grande and affiliated companies that are not defendants in this case, (8) admitting expert testimony from Dr. William Lehr that purported to value Grande's "economic incentives" to permit infringement generally, wholly divorced from the alleged acts of copyright infringement at issue in the case, (9) admitting evidence from Rightscorp employee Gregory Boswell regarding the origin of music files Rightscorp claimed to have been downloaded from users of Grande's network—evidence that was ostensibly based on underlying data not produced in discovery or offered into evidence at trial, and (10) admitting Rightscorp's copyright complaints without proper foundation and over Grande's hearsay and Fed. R. Evid. 1002 objections.

## CONCLUSION

For the foregoing reasons, the Court should grant judgment as a matter of law in favor of Grande on Plaintiffs' contributory infringement claim. In the alternative, the Court should grant a new trial.

Dated: February 27, 2023

By: */s/ Richard L. Brophy*
Richard L. Brophy
Zachary C. Howenstine
Mark A. Thomas
Margaret R. Szewczyk
Sydney K. Johnson
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
Telephone: 314.621.5070
Fax: 314.621.5065
rbrophy@atllp.com
zhowenstine@atllp.com
mathomas@atllp.com

15

mszewczyk@atllp.com
skjohnson@atllp.com

J. Stephen Ravel
Texas State Bar No. 16584975
Diana L. Nichols
Texas State Bar No. 00784682
KELLY HART & HALLMAN LLP
303 Colorado, Suite 2000
Austin, Texas 78701
Telephone: 512.495.6429
Fax: 512.495.6401
Email: steve.ravel@kellyhart.com
diana.nichols@kellyhart.com

*Attorneys for Defendant Grande Communications Networks LLC*